WILLIAM K. HARRINGTON
UNITED STATES TRUSTEE, REGION 2
Office of the United States Trustee
Alexander Hamilton U.S. Custom House
One Bowling Green, Rm 534
New York, NY 10004
Tel. (212) 510-0500
By:  Shara Cornell, Esq.
     Rachael E. Siegel, Esq.
     Trial Attorneys

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SPIRIT AVIATION HOLDINGS, INC., *et al.*,[1] | ) | Case No. 25-11897-SHL |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**OMNIBUS OBJECTION TO DEBTORS' MOTIONS FOR:**

**(1) ENTRY OF AN ORDER (I) APPROVING THE GLOBAL RESTRUCTURING TERM SHEET WITH AERCAP IRELAND LIMITED, (II) AUTHORIZING AND APPROVING ASSUMPTION AND REJECTION OF CERTAIN AIRCRAFT AGREEMENTS, (III) AUTHORIZING ENTRY INTO THE NEW LEASE AGREEMENTS AND DEFINITIVE DOCUMENTS, AND (IV) GRANTING RELATED RELIEF [ECF NO. 135]; AND**

**(2) ENTRY OF AN ORDER AUTHORIZING THE DEBTORS TO REDACT COMMERCIALLY SENSITIVE INFORMATION [ECF NO. 134]**

---

[1] The Debtors' names and last four digits of their respective employer identification numbers are as follows: Spirit Aviation Holdings, Inc. (1797); Spirit Airlines, LLC (7023); Spirit Finance Cayman 1 Ltd. (7020); Spirit Finance Cayman 2 Ltd. (7362); Spirit IP Cayman Ltd. (4732); and Spirit Loyalty Cayman Ltd. (4752). The Debtors' mailing address is 1731 Radiant Drive, Dania Beach, FL 33004.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... iii

I.    PRELIMINARY STATEMENT ....................................................................................... 1

II.   FACTUAL BACKGROUND ............................................................................................ 3

    *A.*   *Use of Cash Collateral* ............................................................................................... 5

    *B.*   *The 1110 Motion* ....................................................................................................... 5

    *C.*   *The Sealing Motion and the Motion to Shorten Time* ................................................ 6

    *D.*   *The 9019 Motion* ....................................................................................................... 6

III.  ARGUMENT ..................................................................................................................... 7

    **A.**   **The 9019 Motion Must be Denied** ........................................................................... 7

        **a.**   **Bankruptcy Rule 9019 Standard for Approval of a Settlement** ............................. 7

        **b.**   **The Debtors Fail To Satisfy Their Burden of Proving That The Settlement is Fair and Reasonable and in The Estate's Best Interests** ................................................ 9

        **c.**   **The Settlement Elevates AerCap Above Similarly Situated Claimants** ............... 11

        **d.**   **There is No Reason for the Settlement to be Approved at this Time**.................... 12

        **e.**   **The Accelerated Timeline Prevents Meaningful Discovery** ................................. 12

    **B.**   **The Sealing Motion Must be Denied** ..................................................................... 14

        **a.**   **Standard for Sealings and Redaction** ................................................................... 14

        **b.**   **The Debtors Fail to Meet Their Burden under Section 107** ................................. 17

IV.   RESERVATION OF RIGHTS ........................................................................................ 19

V.    CONCLUSION ................................................................................................................ 19

# TABLE OF AUTHORITIES

*Case Authorities*

*City of Hartford v. Chase*, 942 F.2d 130 (2d Cir. 1991) ……………………….. 15

*Geltzer v. Anderson Worldwide, S.C.*, Case No. 05-3339, 2007 WL 273526 (Bankr. S.D.N.Y. Jan. 30, 2007) ……………………………………………………………… 10 Fn 5

*Gitto v. Worcester Telegram & Gazette Corp. (In re Gitto Global Corp.)*, 422 F.3d. 1 (1st Cir. 2005) ………………………………………………………………………… 15, 16

*HSBC Bank USA v. Fane (In re MF Global Inc.),* 466 B.R. 244 (Bankr. S.D.N.Y. 2012) …………………………………………………………………………………… 8

*In re Adirondack Ry. Corp.*, 95 B.R. 867 (N.D.N.Y. 1988) …………………………. 9

*In re Babayoff,* 445 B.R. 64 (Bankr. E.D.N.Y. 2011) …………………………….. 18

*In re Bell & Beckwith,* 44 B.R. 661 (Bankr. N.D. Ohio 1984) ……………………… 16

*In re Borders Grp., Inc.*, 462 B.R. 42 (Bankr. S.D.N.Y. 2011) …………………….. 15, 16

*In re Dewey & LeBoeuf LLP*, Case No. 12-12321, 2012 Bankr. LEXIS 4727 (Bankr. S.D.N.Y. Oct. 9, 2012) ……………………………………………………... 8

*In re Dreier LLP*, 485 B.R. 821 (Bankr. S.D.N.Y. 2013) ………………………….. 17

*In re Drexel Burnham Lambert Group.* 995 F.2d 1138 2d Cir. 1993) ……………… 8

*In re Food Mgmt. Grp., LLC*, 359 B.R. 543 (Bankr. S.D.N.Y. 2007) ……………… 15, 16

*In re HyLoft, Inc.*, 451 B.R. 104 (Bankr. D. Nev. 2011) ……………………………. 9

*In re Masters, Inc.*, 141 B.R. 13 (Bankr. E.D.N.Y. 1992) ………………………….. 7

*In re Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414 (1986) ……………………………………………… 9

*In re Refco Inc.*, 505 F.3d 109 (2d Cir. 2007) ……………………………………. 12

*In re Smart World Tech., LLC*, 423 B.R. 166 (2d Cir. 2005) ……………………….. 13

*In re The Present Co., Inc.*, 141 B.R. 18 (Bankr. W.D.N.Y. 1992) ………………… 13

*Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452 (2d Cir. 2007) …………………………………………….. 7

*Motors Liquidation Co. Avoidance Action Trust v. JP Morgan Chase Bank, N.A. (In re Motors Liquidation Co.)*, 561 B.R. 36 (Bankr. S.D.N.Y. 2016) ………………… 15

*Nixon v. Warner Commc'ns Inc.*, 435 U.S. 589 (1978) ……………………………... 14

*Official Comm. of Unsecured Creditors v. Pardee (In re Stanwich Fin. Servs. Corp.),* 377 B.R. 432 (Bankr. D. Conn. 2007) …………………………………… 8

*Orion Pictures Corp. v. Video Software Dealers Assoc. (In re Orion Pictures Corp.)*, 21 F.3d 24  (2d Cir. 1994) …………………………………………………... 15, 17, 18

*Togut v. Deutsche Bank AG (In re Anthracite Capital Inc.)*, 492 B.R. 162 (Bankr.
S.D.N.Y. 2013) …………………………………………………………………… 16

*United States v. Amodeo*, 71 F.3d 1044 (2d Cir. 1995) …………………………... 15

**Statutory Authorities**

11 U.S.C. § 107 …………………………………………………………………... 16, 17, 18

11 U.S.C. § 1109 …………………………………………………………………. 12 Fn 8

TO THE HONORABLE SEAN H. LANE
UNITED STATES BANKRUPTCY JUDGE:

William K. Harrington, the United States Trustee for Region 2 (the "**United States Trustee**"), by and through the undersigned counsel, files this Objection (the "**Objection**") to Spirit Aviation Holdings, Inc., *et al*.'s (the "**Debtors**" or "**Spirit**") (1) *Motion for Entry of an Order (I) Approving the Global Restructuring Term Sheet with AerCap Ireland Limited, (II) Authorizing and Approving Assumption and Rejection of Certain Aircraft Agreements, (III) Authorizing and Approving Entry into the New Lease Agreements and Definitive Documents, and (IV) Granting Related Relief* (the "**9019 Motion**") [ECF No. 135]; and (2) *Motion for Entry of an Order Authorizing the Debtors to Redact Commercially Sensitive Information* (the "**Sealing Motion**") [ECF No. 134] (the 9019 Motion and the Sealing Motion together, the "**Motions**"). In support thereof, the United States Trustee states as follows:

## I.    PRELIMINARY STATEMENT

The Debtors filed a heavily redacted motion[2] seeking authority to execute a global settlement (the "**Settlement**") with AerCap Ireland Limited ("**AerCap**") that would, among other things, obligate the Debtors to stipulate to AerCap's prepetition claim in advance of any claim objection or rejection/assumption process pursuant to 11 U.S.C. § 1110 (which there is a pending motion), elevate AerCap's position in these bankruptcy proceedings above similarly situated creditors, and release any and all of the Debtors' prepetition claims against AerCap without providing a valuation for those claims. The Debtors seek to have a settlement of this magnitude heard on shortened notice with substantial redactions and sealing of critical information. The Debtors have failed to meet their burden to establish that the Settlement is fair

---

[2] The United States Trustee received unredacted copies of the 9019 Motion.

and reasonable and in the best interests of the Debtors' estate. Specifically problematic are the following:

1. The Debtors have agreed to allow AerCap's general unsecured claim in the amount of $696,461,890[3] (the "**AerCap Claim Allowance**")–without the need for AerCap to file a proof of claim. No information is provided as to (1) how this claim amount was derived, (2) whether there has been any third-party investigation into AerCap's actions prepetition, (3) whether those actions rise to the level of an actionable claims, and (4) what value those claims may be worth. Without this information, parties cannot determine if the AerCap Claim Allowance is fair and reasonable and in the best interests of creditors.

2. AerCap will provide compensation to the Debtors, less AerCap's professional fees–the amount and terms of which are redacted. The Debtors claim that "AerCap has committed to a *significant* liquidity infusion, which will provide meaningful funding to the Debtors in these Chapter 11 Cases and permit the Debtors to operate their business." 9019 Motion at ¶ 9 (emphasis added). The Debtors need to explain (1) how this amount is "significant", (2) when the amount will be paid, and (3) whether it will be paid in cash.[4] Moreover, simultaneously with the filing of the Motion, the Debtors are also seeking use of cash collateral in the amount of $120 million. *See Motion for entry of an order (I) Authorizing the Debtors to Use Cash in Encumbered Accounts, (II) Granting Adequate Protection, (III) Modifying the Automatic Stay, (IV) Scheduling a Further Hearing on the Motion and the Supplemental Motion, and (V) Granting Related Relief* (the "**Cash Collateral Motion**") [ECF No. 132]. No budget or financial forecast has been provided in conjunction with the Motions.

   Furthermore, there is no explanation as to what the "Liquidity Payment" constitutes. Parties cannot evaluate if the Liquidity Payment is fair and reasonable unless they know what it is compensating the Debtors for, if anything.

3. The Settlement provides for the Debtors to enter into new leases, assume old leases, and reject certain leases. The number of leases in each of these three buckets is redacted. Also pending is a separate motion (the "**1110 Motion**") [ECF No. 78] implementing procedures for the assumption and rejection of leases pursuant to 11 U.S.C. § 1110. The Settlement effectively exempts AerCap from the 1110 Motion that will apply to every other lessor.

4. The Settlement upgrades certain prepetition leases into post-petition leases in advance of all other parties and provides AerCap with rights under 11 U.S.C § 503. Parties cannot evaluate if this is fair and reasonable without understanding what the Debtors are gaining in exchange for these significant rights given to AerCap.

---

[3] Schedules have not yet been filed.

[4] The 9019 Motion states that AerCap shall pay "an amount equal to [redacted]" not that AerCap will pay cash to the Debtors.

5.  All business terms and relevant information have been redacted from the 9019 Motion.

The Debtors have asked the Court to approve this agreement on less than seven days' notice. That is not nearly enough time for the Court and parties in interest to understand and evaluate this arrangement that will have a significant impact on this case.

This Settlement does not merely impact the Debtors and AerCap, but it will impact the trajectory of these bankruptcy cases, the Spirit "ecosystem", and ultimately any plan that is proposed. The Debtors have made clear that "rightsizing" their fleet through the assumption and rejection process is going to be a critical component of these bankruptcy cases. However, the Debtors are binding themselves to an agreement in advance of any of these processes that will dictate the trajectory of the Debtors' restructuring efforts and ultimately a plan of reorganization in exchange for a redacted liquidity infusion from AerCap.

Accordingly, for these and the reasons stated below, the Motions must be denied.

## II.    FACTUAL BACKGROUND

1.  On August 29, 2025 (the "**Petition Date**"), each of the Debtors filed voluntary petitions (each, a "**Petition**" and together, the "**Petitions**") for relief under chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**"). *See* ECF No. 1.

2.  The Petition is signed under penalty of perjury by Fred Cromer in his capacity as Chief Financial Officer of the Debtors. *Id*. at p. 22.

3.  Also on the Petition Date, the Debtors filed a *Declaration of Fred Cromer in Support of Chapter 11 Proceedings and First Day Pleadings* (the "**Cromer Declaration**") [ECF No. 19].

4.  The Cromer Declaration states in part,

3

> In line with the redesigned network, Spirit intends to rightsize its fleet to match capacity with profitable demand. Doing so will significantly shrink Spirit's overall fleet, which in turn will materially lower Spirit's debt and lease obligations, leading to hundreds of millions of dollars in annual operating savings.

Cromer Declaration at ¶ 4.

5.      The Cromer Declaration further states that, "Chapter 11 will allow Spirit to renegotiate or reject leases on certain of these and other aircraft, positioning Spirit for a rightsized fleet of operating aircraft that will allow Spirit to reduce its operating costs by hundreds of millions of dollars." *Id*. at ¶ 7.

6.      On September 2, 2025, the Court conducted a hearing (the "**Sept. 2 Hearing**") on certain First Day Motions filed on behalf of the Debtors. During the Sept. 2 Hearing, the Debtors stated in relevant part with respect to AerCap that,

> Spirit most assuredly does not agree that any termination right or event of default exists under any of these leases. And if we are unable to reach an agreement with AerCap on all of these issues and all these leases, you can expect to see very material litigation about the events of last Monday and its consequences on Spirit and its ecosystem.

Sept. 2 Tr. at 41:11-16.

7.      Spirit further stated that, "Despite being current on all obligations with AerCap and disagreeing that any default had occurred[,]" that "AerCap['s], [] actions forced Spirit's filing." *Id*. at 41:18-19 and 50:21-22.

8.      Spirit further stated with respect to its aircraft leases that,

> Many of our lessors may have a vested interest in quickly offering us straight up liquidity or unusually attractive financing as part of the resolution of our relationship with them and which, if any, of their aircraft we keep and on what terms.

*Id*. at 44:5-9.

9. The Debtors continue to operate their business as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

10. On September 17, 2025, the United States Trustee appointed an Official Committee of Unsecured Creditors Committee (the "**Committee**"). *See* Notice of Appointment of Official Committee of Unsecured Creditors [ECF No. 117].

### A. Use of Cash Collateral

11. On September 2, 2025, the Debtors filed a *Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Use Cash Collateral, (II) Granting Adequate Protection, (III) Modifying the Automatic Stay, (IV) Scheduling a Further Hearing on the Motion, and (V) Granting Related Relief* (the "**Cash Collateral Motion**") [ECF No. 79].

12. On September 10, 2025, the Court entered the *Order Authorizing the Debtors to use Cash Collateral* (the "**Interim Cash Collateral Order**") [ECF No. 89]. The Interim Cash Collateral Order *inter alia* authorized the Debtors to use $250 million in cash collateral. *Id.*

13. On September 23, 2025, the Debtors filed the *Supplemental Motion to Authorize/Supplemental Motion of the Debtors for Entry of Second Interim and Final Orders (I) Authorizing the Debtors to Use Cash in Encumbered Accounts, (II) Granting Adequate Protection, (III) Modifying the Automatic Stay, (IV) Scheduling a Further Hearing on the Motion and the Supplemental Motion, and (V) Granting Related Relief* (the "**Supplemental Cash Collateral Motion**") [ECF No. 141]. The Supplemental Cash Collateral Motion seeks authority to use *an additional* $120 million in cash collateral. *Id.* No budget was attached to either the Cash Collateral Motion or the Supplemental Cash Collateral Motion.

### B. The 1110 Motion

14. On September 5, 2025, the Debtors filed the 1110 Motion.

15.     The 1110 Motion requests authority for the Debtors to (1) agree to perform certain obligations under certain leases, subleases, secured financings, and other related agreements, (2) pay to cure any defaults, and/or (3) enter into any stipulations with aircraft counterparties under section 1110. To accomplish this, the 1110 Motion also provides detailed procedures to effectuate section 1110.

16.     The 1110 Motion is pending with a hearing scheduled for September 30, 2025. *Id*.

### C.  *The Sealing Motion and the Motion to Shorten Time*

17.     On September 23, 2025 at 4:20 a.m., the Debtors filed the Sealing Motion with a hearing scheduled for September 30, 2025.

18.     Also on September 23, 2025, the Debtors filed the Motion to Shorten Time requesting authority to shorten the time to notice the Motions [ECF No. 136].

### D.  *The 9019 Motion*

19.     On September 23, 2025 at 5:53 a.m., the Debtors filed the 9019 Motion with a hearing scheduled for September 30, 2025.

20.     The 9019 Motion appears to settle all issues and claims between AerCap and the Debtors in addition to having AerCap committing to provide a one-time liquidity infusion (the "**Liquidity Payment**"). The value of the Liquidity Payment is redacted.

21.     The 9019 Motion states in relevant part, "[t]he Global Restructuring Term Sheet, if approved, will provide the Debtors an enormous benefit by resolving numerous issues arising out of the Debtors' arrangements with AerCap, each of which would likely have required time- and resource-intensive litigation to resolve." 9019 Motion at ¶ 18. The 9019 Motion does not list the outstanding issues and claims between the Debtors and AerCap.

6

22.     The 9019 Motion also states that "the Debtors' fleet optimization process would have necessitated assumption or rejection of a portion of the AerCap Aircraft." *Id.* at ¶ 19.

23.     The 9019 Motion also states that, "[t]he settlement, if approved, will spare the Debtors from expending significant costs and resources litigating these issues." *Id*. The 9019 Motion does not value the costs and resources associated with litigation.

24.     The 9019 Motion further states that the Settlement will "rightsiz[] the quantity and delivery terms for the aircraft governed by the New Leases." *Id*. at ¶ 20. The 9019 Motion does not state how many new leases there will be or the terms thereof.

25.     The term sheet affixed to the 9019 Motion states in relevant part that, "Upon entry of the Approval Order, all post-petition obligations under the Assumed Leases and any New Leases shall be entitled to treatment as administrative expenses claims pursuant to sections 503 and 507 of the Bankruptcy Code." *Id*. at p. 14 of 47. The 9019 Motion does not state how many leases will be assumed, rejected, or newly executed.

26.     The 9019 Motion also states that, "AerCap shall be granted one or more allowed general unsecured claim in the total aggregate amount of $696,461,890 (the 'Allowed Unsecured Claims') against Spirit Airlines, LLC, which shall not be subject to setoff, subordination or reduction." *Id*. at p. 13 of 47.

### III.     ARGUMENT

#### A.  The 9019 Motion Must be Denied

##### a.   <u>Bankruptcy Rule 9019 Standard for Approval of a Settlement</u>

Rule 9019 has a "clear purpose ... to prevent the making of concealed agreements which are unknown to the creditors and unevaluated by the court." *In re Masters, Inc*., 141 B.R. 13, 16 (Bankr. E.D.N.Y. 1992). Accordingly, settlements outside of a plan of reorganization must be

approved by the bankruptcy court. *Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 455 (2d Cir. 2007). A court may not simply defer to a debtor's business judgment with respect to a proposed settlement, but rather must evaluate the settlement to make a considered and independent determination as to whether the settlement is "fair, equitable, and in the best interests of the estate." *HSBC Bank USA v. Fane (In re MF Global Inc.)*, 466 B.R. 244, 247 (Bankr. S.D.N.Y. 2012); *In re Dewey & LeBoeuf LLP*, Case No. 12-12321, 2012 Bankr. LEXIS 4727 at *31-34 (Bankr. S.D.N.Y. Oct. 9, 2012). To determine whether a proposed settlement is "fair and equitable," and thus in the best interests of the estate, courts consider the seven factors articulated by the Second Circuit in *Iridium*. Those factors include: (1) the likelihood of success in litigation compared to the benefits of the settlement, (2) the likelihood of protracted and expensive litigation, (3) the interests of creditors, (4) whether other parties in interest support the settlement. (5) the competency and experience of counsel, (6) the scope of releases granted to officers and directors, and (7) whether the settlement was the product of arm's length negotiations. *Id*. The burden of establishing that the "*Iridium* factors" weigh in favor of approving a settlement lies with the settlement proponent. *See MF Global* 466 B.R. at 248. Here, the Debtors fail to satisfy that burden.

Furthermore, the Court also must consider the interests of non-settling third parties. *See Official Comm. of Unsecured Creditors v. Pardee (In re Stanwich Fin. Servs. Corp.),* 377 B.R. 432, 437 (Bankr. D. Conn. 2007) (citing *In re Drexel Burnham Lambert Group.* 995 F.2d 1138, 1146-47 (2d Cir. 1993)). Here, the Settlement conceals basic information that would allow the Court and interested parties to determine if the Settlement is in the best interests of the Debtors and their creditors, and whether the terms are unfair to non-settling creditors.

**b.** **The Debtors Fail To Satisfy Their Burden of Proving That The Settlement is Fair and Reasonable and in The Estate's Best Interests**

A compromise under Rule 9019 is only appropriate if the compromise is fair and equitable and is in the best interest of the debtor's estate. *In re Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 424 (1986). The Debtors make blanket assertions of best interests, but fail to provide any evidence that the Settlement is indeed "fair and equitable" and that it should be approved because it is in the best interest of the estate. Indeed, financial terms are redacted throughout the documents, making it impossible to understand the benefit of the Settlement to the Debtors' estate. Moreover, there is no explanation as to why certain provisions are included, *i.e.* the Liquidity Payment, or how payment provisions were derived.

Further, a Rule 9019 motion should be denied without "an agreement to terminate a controversy, demonstrating a meeting of the minds between the adversaries, *complete with specific and concrete terms*." *In re Adirondack Ry. Corp.*, 95 B.R. 867, 873 (N.D.N.Y. 1988) (emphasis added). A proposed settlement agreement should be rejected when it is unclear precisely what claims are being released. *See In re HyLoft, Inc.*, 451 B.R. 104, 116 (Bankr. D. Nev. 2011) (holding that settlement proponent bears burden of showing what claims are being settled under a compromise and declining to approve a settlement under Rule 9019 where the scope of a release was unclear).

Here, the Settlement and 9019 Motion lack baseline details to determine whether the Settlement is fair and reasonable and in the best interests of the Debtors' estate. Specifically, the Settlement establishes a binding claim amount for AerCap, regardless of later investigation or decisions regarding Spirit's fleet, which, as the Cromer Declaration established, will be a cornerstone of these bankruptcy proceedings. There is no way to determine if this amount is fair

and reasonable without understanding the claims between the Debtors and AerCap, what AerCap leases will be rejected or assumed, and what damages (if any) can be attributed to AerCap with respect to the bankruptcy filing.

The Settlement also does not establish that the rejection, assumption, or execution of new leases with AerCap outside of the 1110 procedures is fair and reasonable. Upon information and belief, the Debtors are still undergoing an extensive review process of their fleet by binding the Debtors to AerCap early in the case will ultimately prevent the Debtors from utilizing all the tools available to debtors in bankruptcy, *i.e.*, claims objection process and assumption/rejection process.

Critically, the Debtors have redacted all business terms from the Settlement and 9019 Motion, making it impossible to determine if the Settlement is fair and reasonable.[5] Indeed, full paragraphs are redacted from the Motion. *See, e.g.,* Motion at ¶ 10. Examples of redacted and critical information are:

- The value of the Liquidity Payment;
- The terms associated with the professionals' fees related to the Liquidity Payment; and
- What Definitive Documents are available.

Examples of information that is not included in the 9019 Motion are:

- How many AerCap leases will be assumed;
- How many AerCap leases will be rejected;
- How many AerCap new leases will be executed;
- A description of claims the Debtors are releasing;
- A valuation for the claims the Debtors are releasing;

---

[5] *See, e.g.,* *Geltzer v. Anderson Worldwide, S.C.*, Case No. 05-3339, 2007 WL 273526 (Bankr. S.D.N.Y. Jan. 30, 2007) (denying motion to approve settlement pursuant to Rule 9019 and corresponding redactions under 11 U.S.C. § 107(b) because *inter alia* "the amount of the settlement is the critical factor in the Court's ability to assess whether the settlement should be approved.")

- What level of investigation the Debtors undertook to determine valuations of claims and leases; and

- How the Debtors intend to use the Liquidity Payment.

Without this information to analyze the Settlement terms in the context of the entire bankruptcy case, the Debtors have failed to meet their burden in establishing that the Settlement is fair and reasonable and in the best interests of the estate.

### c. The Settlement Elevates AerCap Above Similarly Situated Claimants

The Settlement provides for the Debtors to enter into new leases, assume old leases, and reject certain releases with AerCap in advance of adjudication of the 1110 Motion. The number of each of the three buckets of leases is redacted. Not only is AerCap exempted from section 1110 procedures that will apply to every other lessor, but the Settlement will upgrade an unknown number of AerCap's prepetition leases to post-petition leases in advance of all other parties. Significantly, all post-petition obligations under AerCap's new and assumed leases will be treated as administrative expense claims pursuant to sections 503 and 507. This gives AerCap an elevated financial position compared to other lessors. Moreover, by committing to AerCap now, AerCap has a significant advantage in these cases than other lessors. This advantage when viewed in light of the Debtors' previous comments that AerCap actually caused this bankruptcy filing, is particularly egregious. Moreover, the Debtors have agreed to a binding unsecured claim for AerCap of $696,461,890. 9019 Motion at p. 38 of 47. This substantial claim will now be binding on the estate to the potential detriment of the other general unsecured creditors as well as to equityholders, whose recoveries may be drastically diluted in favor of the substantial AerCap claim.[6]

---

[6] Indeed, the Settlement makes clear that any proposed plan must comply with the terms of the Settlement. *See* Settlement Term Sheet, at p. 40 of 47 ("A chapter 11 plan must satisfy the following conditions …").

**d.   <u>There is No Reason for the Settlement to be Approved at this Time</u>**

There is nothing in the 9019 Motion or the Settlement to suggest that time is of the essence or that immediate entry into the Settlement will otherwise favorably impact this bankruptcy case.[7] There is also nothing to suggest that a deferral of the Settlement will be detrimental to the estate or the interests of creditors. Indeed, deferring the approval of the Settlement to give parties time to understand how the AerCap leases will ultimately impact other leases and the Debtors' financial wherewithal is prudent given the Debtors' previously comments that a major strategy in this bankruptcy case is to "rightsize" its fleet.

Additionally, the Settlement is premature while the 1110 Motion is pending and the corresponding assumption and rejection process is underway. The assumption, rejection, and execution of new leases between the Debtors and AerCap is going to profoundly impact this bankruptcy case. Making determinations on the necessity of those leases in advance of the process requested *by the Debtors* is inapposite. Accordingly, the Debtors have not met their burden establishing that this Settlement must be approved now.

**e.   <u>The Accelerated Timeline Prevents Meaningful Discovery</u>**

Moreover, this artificially accelerated timeline prevents a meaningful settlement review process. When a proposed settlement is submitted to the Bankruptcy Court for approval under Rule 9019, any "party in interest" is "entitled to object to the Settlement *and conduct discovery*." *In re Refco Inc.*, 505 F.3d 109, 119 (2d Cir. 2007) (emphasis added).[8] Indeed, the lack of

---

[7] The 9019 Motion and Settlement have redacted when the 9019 Motion Order must be entered. *See* Settlement Term Sheet at p. 41 of 47 ("… and the Approval Order must be entered by the Bankruptcy Court on or before [redacted]")

[8] "Parties in interest" include "the debtor, the trustee, a creditors' committee, an equity security holders' committee, *a creditor,* an equity security holder, or any indenture trustee" and states that such party in interest "may raise and may appear and be heard *on any issue* in a case under this chapter." 11 U.S.C. §1109(b) (emphasis added). There is no question here that lessors (as creditors and parties in interest), among others, are entitled to object and conduct discovery with regard to the proposed Settlement here.

sufficient discovery by itself is grounds for denying a settlement, or subsequently overturning a settlement's approval. *See In re Smart World Tech., LLC*, 423 F.3d 166, 179 (2d Cir. 2005) (vacating and remanding District Court's affirmation of Bankruptcy Court's approval of a settlement where the objecting party was denied discovery and an opportunity to develop the record with regard to the value of underlying claims); *In re The Present Co., Inc.*, 141 B.R. 18, 23-24 (Bankr. W.D.N.Y. 1992) (rejecting settlement where party "refused to provide to [the objector] full disclosure of materials pertaining to the transactions that [were] sought to be compromised and released").

In *Smart World Tech.*, the Second Circuit found that the bankruptcy court had improperly approved a settlement after wrongly concluding "that any discussion, and presumably meaningful evaluation, of the merits of [the debtors'] claims were unnecessary." *Smart World Tech.*, 423 F.3d at 173. In its efforts to encourage and ultimately approve a settlement, the Court found that the bankruptcy court had improperly denied Smart World's efforts to conduct discovery into the settling parties' conduct. *Id*. In vacating the lower court's order, the Second Circuit found that "the bankruptcy court was apparently under the impression that settlement was possible without discovery, but... [i]n the absence of a more fully developed record, we fail to see how the bankruptcy court, let alone Smart World, could have weighed the proposed settlement against the potential value of its claims." *Id*. at 179.

Similarly, in *The Present Co.*, a debtor proposed to settle a fraudulent conveyance action with insiders. The creditors' committee objected. The defendants refused to provide any discovery with regard to the transactions to be released, and instead offered only discovery related to the reasonableness and "arms-length" nature of the settlement itself. *The Present Co.*, 141 B.R. at 24. The Court found this insufficient, and rejected the settlement. *Id*. at 23-25 ("The

13

[insider/defendants] have refused to provide the Creditors' Committee full disclosure of materials pertaining to the transactions that are here sought to be compromised and released" and "whatever 'arms-length bargaining' occurred that led to this compromise occurred among insiders and their counsel.").

Here, with less than one week's notice, parties are asked to review a heavily redacted Settlement with limited information and no time for meaningful discovery. Within a month of the Petition Date, the Debtors have gone from telling parties that AerCap caused the second bankruptcy filing and that the Debtors would likely be filing substantial litigation to now proposing a Settlement that, among other deficiencies, does not even identify what claims exist, their value, or which of those claims the Debtors are going to release pursuant to the Settlement.

## B. The Sealing Motion Must be Denied

In connection with the 9019 Motion, the Debtors sought authority to redact and file certain information in the 9019 Motion under seal. Specifically, the Debtors redacted a number of material terms of their settlement with AerCap (the "**Redacted Information**"), including: (1) the amount of the Liquidity Payment, (2) what modifications are being made to the Debtors' fleet by way of lease rejections, assumptions, and entry into new leases, and (3) how the Debtors are addressing defaults alleged by AerCap. This relief, again, is being sought on an extremely expedited basis. The Debtors are asking parties not only to evaluate an extensive settlement with drastic implications for the future of the Debtors and these cases in less than a week, but to do so with incomplete information.

### a.  <u>Standard for Sealings and Redaction</u>

There is a long-standing, common law right of public access to court records. *See Nixon v. Warner Commc'ns Inc.*, 435 U.S. 589, 597 (1978) ("It is clear that the courts of this country

recognize a general right to inspect and copy public records and documents, including judicial

records and documents."); *see also Motors Liquidation Co. Avoidance Action Trust v. JP*

*Morgan Chase Bank, N.A. (In re Motors Liquidation Co.)*, 561 B.R. 36, 41 (Bankr. S.D.N.Y.

2016) ("[this] right of public access is rooted in the public's First Amendment right to know

about the administration of justice." *(*quoting *In re Food Mgmt. Grp., LLC*, 359 B.R. 543, 553

(Bankr. S.D.N.Y. 2007)). The Second Circuit has described this right as "firmly entrenched and

well supported by policy and practical considerations[.]" *Orion Pictures Corp. v. Video Software*

*Dealers Assoc. (In re Orion Pictures, Corp.)*, 21 F.3d 24, 27 (2d Cir. 1994).

The right of public access has given rise to "a strong presumption and public policy in

favor of public access to court records." *In re Borders Grp., Inc.*, 462 B.R. 42, 46 (Bankr.

S.D.N.Y. 2011) (citations omitted). This presumption "is based on the need for federal courts…

to have a measure of accountability and for the public to have confidence in the administration of

justice… [P]ublic monitoring is an essential feature of democratic control." *United States v.*

*Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995). On this point, the Second Circuit has stated:

> There must be a strong presumption against sealing any document that is filed
> with the court. Our courts do not operate in secrecy. Except on rare occasions and
> for compelling reasons, everything that courts do is subject to public scrutiny. To
> hide from the public entire proceedings, or even particular documents or
> testimony forming a basis for judicial action that may directly and significantly
> affect public interests, would be contrary to the premises underling a free,
> democratic society.

*City of Hartford v. Chase*, 942 F.2d 130, 137 (2d Cir. 1991) (Pratt, J., concurring).

In the United States bankruptcy system, it is widely acknowledged that the governmental

interest in safeguarding public access to judicial records is "of special importance . . . , as

unrestricted access to judicial records fosters confidence among creditors regarding fairness in

the bankruptcy system." *Motors Liquidation*, 561 B.R. at 41 (quoting *Gitto v. Worcester*

15

*Telegram & Gazette Corp. (In re Gitto Global Corp.)*, 422 F.3d. 1, 7 (1st Cir. 2005)). Described as "fundamental to the operation of the bankruptcy system and . . . the best means of avoiding any suggestion of impropriety that might or could be raised," the policy of open inspection, as applied in this Court, cannot be underestimated. *See id.* at 41-42 (citing *In re Bell & Beckwith,* 44 B.R. 661, 664 (Bankr. N.D. Ohio 1984)). Public access is especially significant in the integrity of bankruptcy courts because it fosters confidence in creditors that the system is fair. *See Food Mgmt. Grp.*, 359 B.R. at 553-55 ("The public interest in openness of court proceedings is at its zenith when issues concerning the integrity and transparency of bankruptcy court proceedings are involved").

The common law right of public access to judicial records has been codified in section 107(a) of the Bankruptcy Code. *See Togut v. Deutsche Bank AG (In re Anthracite Capital Inc.)*, 492 B.R. 162, 170-173 (Bankr. S.D.N.Y. 2013); *see also Gitto Global*, 422 F.3d at 7-8 (noting that section 107 supplants the common law of public access). Pursuant to section 107(a), papers filed in bankruptcy cases and the Court's dockets are "public records, open to examination by an entity at reasonable times without charge." 11 U.S.C. § 107(a); *Anthracite*, 492 B.R. at 170.

Section 107(b)(1) of the Bankruptcy Code provides an exception to the general rule of public access and directs courts to protect trade secrets, confidential research, and confidential commercial information of entities. *See* 11 U.S.C. § 107(b)(1). However, this "exception to the general right of access in section 107(b) is narrow" and should only be entered when necessary to protect a party from harm. *Borders*, 462 B.R. at 47. "A court's ability to limit the public's right to access remains *an extraordinary measure* that is warranted *only under rare circumstances* as public monitoring is an essential feature of democratic control." *Anthracite Cap.*, 492 B.R. at 171 (internal quotations omitted) (emphasis added).

16

Under Section 107(b), "commercial information" has been defined as information which would cause an "unfair advantage to competitors by providing them information as to the commercial operations" of the requesting party. *Orion Pictures*, 21 F.3d at 27 (internal quotations omitted); *accord Borders*, 462 B.R. at 47.

"The 'commercial information' exception is not intended to offer a safe harbor for those who crave privacy or secrecy for its own sake." *Motors Liquidation*, 561 B.R. at 43 (quoting *In re Dreier LLP*, 485 B.R. 821, 822-23 (Bankr. S.D.N.Y. 2013)). "Evidence–not just argument–is required to support the extraordinary remedy of sealing." *Id.* at 43; *accord Dreier*, 485 B.R. at 823 (finding that "conclusory statements in [a declaration] are not probative").

**b.  <u>The Debtors Fail to Meet Their Burden under Section 107</u>**

Critically, the amount of the Liquidity Payment should not be redacted. The 9019 Motion informs parties that AerCap is paying Spirit "an amount equal to $[REDACTED] million, [approximately two lines of redacted text] within three (3) business days from the date of entry of the Approval Order". 9019 Motion at ¶ 20. First, even if these redactions were taken out, the details of the Liquidity Payment are unclear. What is "an amount equal to" a certain number of millions of dollars? Is this a cash payment that will be deposited directly into the Debtors' debtor-in-possession bank account? Does AerCap have the option to provide the Debtors with aircraft in lieu of cash? Are the Debtors required to pay AerCap back? These questions should all be clearly answered within the Motion, if not in the Settlement itself, a copy of which has **<u>not</u>** been provided.

And, importantly, the Liquidity Payment, according to the Debtors, is an essential component of not just the Settlement, but the Debtors' entire restructuring process. The Liquidity Payment "will provide meaningful funding to the Debtors in these Chapter 11 Cases and permit

the Debtors to operate their business" and will "provide critical liquidity to the Debtors and their estates." 9019 Motion at ¶ 9. As discussed *supra* the Debtors have not filed a budget in these cases, nor have they filed any monthly operating reports yet. *See* Dkt. The amount and other details regarding the Liquidity Payment must be made public to preserve interested parties' rights to sufficient information concerning the Debtors' ongoing financial condition.

Transparency is a cornerstone of chapter 11. "The policy of open inspection, codified generally in Section 107(a) of the Bankruptcy Code, evidences Congress's strong desire to preserve the public's right of access to judicial records in a bankruptcy proceeding." *Orion Pictures*, 21 F.3d at 26; *see also In re Babayoff*, 445 B.R. 64, 81 (Bankr. E.D.N.Y. 2011) ("current information [must be] regularly and easily available to anyone with an interest in monitoring the progress of a case toward confirmation") (dismissing case due to debtor's failure to comply with reporting obligations). This information also must be provided to interested parties so they can evaluate whether the Settlement falls above the lowest point in the range of reasonableness. The Debtors are giving up potentially billions of dollars in claims against AerCap as well as their opportunity to contest the allowance of AerCap Allowed Claim (which is approximately $700 million) by the Debtors against AerCap. And they tout the Liquidity Payment as a significant benefit in exchange for these sacrifices–but this is meaningless without the context of the amount of liquidity that AerCap is infusing in the Debtors.

Accordingly, the Debtors have not met their burden, and the Sealing Motion must be denied. The United States Trustee urges this Court to deny the relief sought in the Sealing Motion or, in the alternative, adjourn consideration of the Sealing Motion until a future time when parties have an adequate timeframe for evaluating the appropriateness of the scope of the redactions.

## IV.    RESERVATION OF RIGHTS

The United States Trustee reserves his rights to amend, supplement, or modify this objection should the Debtors provide additional information before or during any hearing on the Motions.

## V.    CONCLUSION

**WHEREFORE**, the United States Trustee requests this Court to enter an order denying (1) the Settlement Motion and (2) the Motion to Shorten Time, and granting such other and further relief as the Court finds just and appropriate.

Dated: September 29, 2025          WILLIAM K. HARRINGTON
New York, New York           UNITED STATES TRUSTEE

                                              */s/ Shara Cornell*
                                              Shara Cornell, Esq.
                                              Rachael E. Siegel, Esq.
                                              Trial Attorneys
                                              Office of the United States Trustee
                                              One Bowling Green
                                              New York, NY 10004
                                              (212) 510-0500