DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Tel.: (212) 450-4000
Marshall S. Huebner
Darren S. Klein
Christopher S. Robertson
Joseph W. Brown

*Proposed Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | **Chapter 11** |
| **SPIRIT AVIATION HOLDINGS, INC.,** *et al.*, | **Case No. 25-11897 (SHL)** |
| **Debtors.**[1] | **Jointly Administered** |

**MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER**
**(I) APPROVING THE GLOBAL RESTRUCTURING TERM SHEET WITH**
**AERCAP IRELAND LIMITED, (II) AUTHORIZING AND APPROVING**
**ASSUMPTION AND REJECTION OF CERTAIN AIRCRAFT AGREEMENTS,**
**(III) AUTHORIZING ENTRY INTO THE NEW LEASE AGREEMENTS**
**AND DEFINITIVE DOCUMENTS, AND (IV) GRANTING RELATED RELIEF**

Spirit Aviation Holdings, Inc. and its subsidiaries (collectively, the "**Debtors**"), each of

which is a debtor and debtor in possession in the above-captioned chapter 11 cases (the "**Chapter**

**11 Cases**"), hereby file this *Motion of the Debtors for Entry of an Order (I) Approving the Global*

*Restructuring Term Sheet with AerCap Ireland Limited, (II) Authorizing and Approving*

*Assumption and Rejection of Certain Aircraft Agreements, (III) Authorizing and Approving Entry*

*into the New Lease Agreements and Definitive Documents, and (IV) Granting Related Relief* (this

---

[1] The Debtors' names and last four digits of their respective employer identification numbers are as follows: Spirit Aviation Holdings, Inc. (1797); Spirit Airlines, LLC (7023); Spirit Finance Cayman 1 Ltd. (7020); Spirit Finance Cayman 2 Ltd. (7362); Spirit IP Cayman Ltd. (4732); and Spirit Loyalty Cayman Ltd. (4752). The Debtors' mailing address is 1731 Radiant Drive, Dania Beach, FL 33004.

"**Motion**").  This Motion is supported by the *Declaration of Fred Cromer in Support of (A) the Motion of the Debtors for Entry of an Order (I) Approving the Global Restructuring Term Sheet with AerCap Ireland Limited, (II) Authorizing and Approving Assumption and Rejection of Certain Aircraft Agreements, (III) Authorizing and Approving Entry into the New Lease Agreements and Definitive Documents, and (IV) Granting Related Relief and (B) Related Sealing Motion* (the "**Cromer Declaration**") filed contemporaneously herewith and incorporated herein by reference. In further support of this Motion, the Debtors respectfully state as follows:

## Relief Requested

1.      By this Motion, and pursuant to sections 362, 363, 365, 502, 503, 507, and 105(a) of title 11 of the United States Code (the "**Bankruptcy Code**") and rules 6004, 6006, and 9019 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "**Proposed Order**"), (a) approving the global restructuring term sheet (together with all exhibits, annexes, and schedules attached thereto, the "**Global Restructuring Term Sheet**") between the Debtors and AerCap Ireland Limited (together with its subsidiaries, affiliates, owner trusts, managed entities, and assignees, collectively, "**AerCap**" or the "**AerCap Parties**") attached to the Proposed Order as Exhibit 1, (b) authorizing the Debtors to (i) assume the Assumed Leases (as defined below) and (ii) reject the Rejected Leases (as defined below), (c) authorizing the Debtors to enter into (x) the New Lease Agreements with AerCap and (y) the other Definitive Documents (as defined in the Global Restructuring Term Sheet), (d) approving the settlement with AerCap of certain disputes and claims related to, among other things, termination of the Undelivered Leases (as defined below), and additional claims and causes of action arising out of AerCap's leasing arrangements with the Debtors, and (e) granting related relief.

**Jurisdiction and Venue**

2.      The United States Bankruptcy Court for the Southern District of New York (the "**Court**") has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference M-431*, dated January 31, 2012 (Preska, C.J.).

3.      This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b). The Debtors confirm their consent to the entry of a final order by the Court in connection with this Motion.

4.      Venue of the Chapter 11 Cases and related proceedings is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

**Background**

5.      On August 29, 2025 (the "**Petition Date**"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors remain in possession of their property and continue to operate and manage their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Chapter 11 Cases are being jointly administered, for procedural purposes only, pursuant to Bankruptcy Rule 1015(b), as ordered by the Court [ECF No. 35].

6.      On September 17, 2025, the United States Trustee for the Southern District of New York (the "**U.S. Trustee**") appointed an Official Committee of Unsecured Creditors (the "**Committee**") pursuant to section 1102 of the Bankruptcy Code [ECF No. 117].

7.      Additional information about the events leading up to the Petition Date and the Debtors' businesses, affairs, capital structure, and prepetition indebtedness can be found in the

Declaration of Fred Cromer in Support of the Chapter 11 Proceedings and First Day Pleadings [ECF No. 19] (the "**First Day Declaration**").[2]

### Preliminary Statement

8.     The Debtors commenced these Chapter 11 Cases to utilize the tools of chapter 11 to realize substantial operational improvements and position the Company for long-term growth. At the core of these operational improvement initiatives is the Company's fleet optimization process.  The Debtors, with the assistance of their advisors, are undertaking a comprehensive analysis of the Company's go-forward fleet needs, with the goals of achieving considerable cost savings and aligning the fleet to match capacity with profitable demand.

9.     The Global Restructuring Term Sheet, the transactions and settlement of claims embodied therein between Spirit and AerCap represents a tremendous leap forward on these fronts. After weeks of negotiations with AerCap, AerCap has committed to a significant liquidity infusion, which will provide meaningful funding to the Debtors in these Chapter 11 Cases and permit the Debtors to operate their business.  Moreover, the transactions contained in the Global Restructuring Term Sheet will assist the Debtors with their fleet optimization process, reduce equipment costs and provide critical liquidity to the Debtors and their estates.  Indeed, the Global Restructuring Term Sheet and the transactions contained therein, if approved by this Motion, will serve as a cornerstone of the Debtors' efforts to construct a new, slimmer fleet.

10.     Among other things, the Global Restructuring Term Sheet contemplates rejection of leases for certain aircraft that are currently grounded due to, among other things, powdered metal issues associated with the Pratt & Whitney GTF engines, as described herein.  The agreement

---

[2] Capitalized terms used but not defined herein shall have the meanings set forth in the First Day Declaration, the Motion, or the Global Restructuring Term Sheet, as applicable.

to consensually reject these leases avoids a potentially costly fight regarding the severability of these leases from others that are not affected by these issues, as well as potential cross-default obligations arising out of such rejection.  Moreover, in furtherance of Spirit's efforts to construct a smaller, more cost-efficient fleet, the settlement provides for delivery of new aircraft on a phased timeline, with aircraft to be delivered in ███████████████.  The Global Restructuring Term Sheet also authorizes (and is predicated upon) the Debtors' entry into an amendment of Spirit's purchase agreement with Airbus, which will enable the Debtors to retain certain of the Option Aircraft (as defined herein).

11.    And importantly, the Global Restructuring Term Sheet contemplates settling all claims and disputes between the Debtors and AerCap, including, without limitation, claims on account of AerCap's issuance of the Lease Termination and Default Notice, the validity of which Spirit disputes, and certain rejection damages claims of AerCap.

12.    The settlement contemplates (a) a stipulation as to the amount of AerCap's prepetition unsecured claim against Spirit and (b) a $150,000,000 payment from AerCap to the Debtors (such payment, the "**AerCap Liquidity Payment**"), which will assist the Debtors with conducting their operations in the ordinary course. While the Debtors continue to explore all potential avenues for operational improvement and sources of capital, the Global Restructuring Term Sheet sets the Debtors and their business on a path to achieve the goals set forth at the outset of the cases.  For the reasons set forth herein, the Debtors submit that the Motion should be granted and the Global Restructuring Term Sheet should be approved.

## The Debtors' Prepetition Agreements with AerCap

13.     As further described in the First Day Declaration, Spirit flies only single-aisle Airbus aircraft, which are commonly referred to as "A320 family" aircraft.[3]  In December 2019, Spirit entered into an A320 NEO Family Purchase Agreement (as amended, supplemented, or otherwise modified from time to time in accordance with its terms, the "**Spirit Purchase Agreement**") with Airbus S.A.S. ("**Airbus**") for the purchase of dozens of new Airbus A320 family aircraft, with options to purchase dozens more, in each case, scheduled for delivery between 2029–2031.  As of the Petition Date, the firm aircraft orders consisted of 52 A320 family aircraft with Airbus, including A320neos and A321neos (collectively, the "**Additional Aircraft**"), and the option to purchase 45 more (collectively, the "**Option Aircraft**").

14.     AerCap is Spirit's largest source of leased aircraft.  As of the Petition Date, Spirit's fleet of 214 Airbus A320 family aircraft included 166 leased aircraft, 37 of which were leased from AerCap (collectively, the "**Existing Aircraft**" and, the underlying leases, the "**Existing Leases**").[4]  Of the 37 Existing Aircraft, 25 aircraft are outfitted with the new generation Pratt & Whitney geared turbofan ("**GTF**") engine.  These engines suffered from powdered metal-related issues which have rendered the 25 aircraft inoperable (the "**Grounded Aircraft**").

15.     On July 30, 2024, Spirit entered into committed direct lease transaction with AerCap covering 36 aircraft that were originally part of Spirit's order book with Airbus and were

---

[3] A320 family aircraft include the A319, A320, and A321 models, which have broadly common design and equipment but differ most notably in fuselage length, service range, and seat capacity.  Within the A320 family of aircraft, models using older engine technology may carry the suffix "ceo," denoting the "current engine option," while models equipped with new-generation engines may carry the suffix "neo," denoting the "new engine option

[4] Each leasing arrangement is structured so that the aircraft is held in trust, with Wilmington Trust as the "owner trustee" and a controlled affiliate of AerCap as the beneficial owner of the aircraft.  Under each lease, Wilmington Trust Company ("**Wilmington Trust**") is the lessor, acting in its capacity as "owner trustee" of the aircraft.  AerCap controls, through instructions to Wilmington Trust, all material decisions regarding the lessor's performance under each lease.

assumed by AerCap (the "**Undelivered Aircraft**" and together with the Leased Aircraft, the "**AerCap Aircraft**").  The Undelivered Aircraft were slated to be delivered to Spirit in 2027 and 2028.  This transaction further provided for the return of certain pre-delivery payments previously made by Spirit to Airbus in respect of the Undelivered Aircraft.

16.     On July 29, 2024, the Debtors and certain of the AerCap Entities entered into that certain Framework Agreement (the "**Framework Agreement**") which purported to, among other things, integrate the leases for the 36 Undelivered Aircraft, the Existing Leases (which were previously governed under four distinct cross-default arrangements) and certain other agreements into a single agreement.

17.     On August 25, 2025, AerCap Ireland Limited sent written notice to the Company asserting certain events of default under the lease agreements for the Undelivered Aircraft and that it had terminated all of such lease agreements (the "**Lease Termination**").  Concurrently, AerCap sent written notice to the Company asserting identical events of default under the leases related to the Existing Aircraft (the "**Default Notice**").

18.     The Global Restructuring Term Sheet, if approved, will provide the Debtors an enormous benefit by resolving numerous issues arising out of the Debtors' arrangements with AerCap, each of which would likely have required time- and resource-intensive litigation to resolve.  As described in the First Day Declaration, the Debtors dispute the propriety of the Lease Termination and Default Notice, and the settlement will spare the Debtors the expense and uncertainty of litigation around that issue.

19.     Furthermore, the Debtors' fleet optimization process would have necessitated assumption or rejection of a portion of the AerCap Aircraft.  This inevitably would have resulted in disputes regarding both (a) the enforceability of and cure requirements associated with any

cross-default provisions in the Existing Leases, and (b) the severability of the Existing Leases comprising the Debtors' suite of leased aircraft. The 60-day timeframe prescribed under Section 1110 of the Bankruptcy Code would have brought these issues to the fore in the immediate term, creating a costly distraction at this critical juncture of the Chapter 11 Cases. The settlement, if approved, will spare the Debtors from expending significant costs and resources litigating these issues.

## The Global Restructuring Term Sheet

20.    The Global Restructuring Term Sheet provides for, among other things,    (a) rejection of the Rejected Leases, which includes all leases for the Grounded Aircraft, (b) assumption of the Assumed Leases on favorable terms to the Debtors and satisfaction of cure obligations associated therewith, (c) rightsizing the quantity and delivery terms for the aircraft governed by the New Leases, and (d) payment of the AerCap Liquidity Payment by AerCap to the Debtors to fund the Chapter 11 Cases. A summary of the key terms of the settlement is set forth in the table below:

| Term[5] | Detail |
|---|---|
| *AerCap Liquidity Payment* | In consideration for the terms and conditions agreed by AerCap and Spirit, and provided that the Spirit-Airbus Amendments (as defined in the Term Sheet) and the AerCap-Airbus Amendments (as defined in the Term Sheet) have been executed by the parties thereto, AerCap shall pay to Spirit an amount equal to $150 million (the "AerCap Liquidity Payment") ██████████████████████████████████████ ████████████████████████ within three (3) business days from the date of entry of the Approval Order (such date that the Approval Order is entered, "Approval Date"). It shall be an Event of Default under Assumed Leases and this Term Sheet if the Debtors fail to execute the New Leases within fifteen (15) business days from the Approval Date. |

---

[5] The terms set forth in this table (the "**Summary Table**") are intended to be summary in nature. To the extent of any conflicts between the terms set forth in the Summary Table and the provisions of the Global Restructuring Term Sheet, the Global Restructuring Term Sheet shall govern. Capitalized terms used in the Summary Table but not otherwise defined therein or in the Motion shall have the meanings ascribed to such terms in the Global Restructuring Term Sheet.

| | |
|---|---|
| *Settlement and Mutual Releases* | Each party to the Term Sheet acknowledges and agrees that under the transactions contemplated by this Term Sheet, each party is receiving (i) new value that is intended to be, and in fact is part of, a contemporaneous exchange of new value, (ii) fair value, (iii) fair, full and adequate consideration and (iv) reasonably equivalent value for each transfer.<br><br>All discovery requests by AerCap and the Debtors are deemed withdrawn. |
| *Lease Assumptions* | Spirit shall assume the lease agreements relating to the ten (10) Aircraft set forth on Schedule 1 to the Term Sheet (each such lease agreement, together with the "Operative Documents" under and as defined therein, an "<u>Assumed Lease</u>") in their entirety and such assumption will be effective on the Approval Date.<br><br>Spirit shall cure all payment defaults in respect of each Assumed Lease on or prior to the date AerCap Liquidity Payment is paid by AerCap to the Debtors.  All other defaults shall be deemed waived upon payment of the cure amounts and the other amounts provided in the Term Sheet.<br><br>The Assumed Leases, and the obligations thereunder, and any related guarantees shall become binding obligations on the Debtors and shall thereafter not be assigned or subleased without the express written consent of AerCap other than in accordance with the terms of the applicable Assumed Lease or as otherwise permitted by the Bankruptcy Code. Notwithstanding the foregoing, nothing herein shall limit or impair AerCap's right (i) to adequate assurance of future performance under Section 365 of the Bankruptcy Code or (ii) object to any proposed assignment or proposed plan, sale or transaction that would result in a Change of Control (as defined in the Assumed Leases) on any grounds (including its inability to complete required "know your customer" or anti-money laundering procedures); provided that Spirit reserves all rights with respect hereto. |
| *Lease Rejections* | Spirit shall reject the lease agreements relating to the twenty-seven (27) Aircraft set forth on Schedule 2 to the Term Sheet (each such lease agreement, together with the "Operative Documents" under and as defined therein, a "<u>Rejected Lease</u>") pursuant to section 365 of the Bankruptcy Code, on terms and conditions (including schedule of redelivery, return conditions, effective date of rejection) mutually agreed to between the parties prior to the Approval Date. |
| *New Lease Agreements* | As part of the global settlement reflected in the Term Sheet, AerCap and Spirit will enter into, pursuant to section 363 of the Bankruptcy Code, thirty (30) new lease agreements (the "<u>New Leases</u>"), on identical terms and conditions as the Undelivered Leases (as defined |

| | |
|---|---|
| | below), except as set forth on Schedule 6 hereto, with delivery dates to be ████████████████████████████ and such other changes to be mutually agreed.<br><br>The New Leases will be for ████████████████ ██████████████████████████████ by Airbus. |
| **Undelivered Leases** | With respect to each of the thirty-six (36) lease agreements set forth on Schedule 3 to the Term Sheet (each such lease agreement, together with the "Operative Documents" under and as defined therein, an "Undelivered Lease") that were the subject of termination notices sent by AerCap prior to the Petition Date, to the extent that the Debtors retained any legal or equitable interests in the Undelivered Leases or the Framework Agreement dated July 29, 2024 by and between Spirit and some of the AerCap Parties as of the Petition Date, such interests shall be deemed rejected as of the Petition Date.[6] |
| **Claims Settlement** | AerCap shall be granted one or more allowed general unsecured claim in the total aggregate amount of $696,461,890 (the "Allowed Unsecured Claims") against Spirit Airlines, LLC, which shall not be subject to setoff, subordination or reduction.<br><br>AerCap agrees to waive any prepetition termination fees against the Debtors.<br><br>Spirit and the claims agent shall take any necessary steps to reflect this claims settlement (the "Claims Settlement") on the claims register in the Chapter 11 Cases, and AerCap shall not be required to file proofs of claim with respect to the Allowed Unsecured Claims. |
| **Purchase Options** | In connection with the Definitive Documents:<br><br>• AerCap consents to Spirit's entry into one or more amendments (the "Spirit-Airbus Amendments") to Spirit's purchase agreement with Airbus (the "Spirit Purchase Agreement"), ████████████████████████████ ████████████████ ████████████ AerCap will consent to such amendments.<br><br>• Spirit consents to AerCap's entry into one or more amendments of the AerCap purchase agreement with Airbus (the "AerCap-Airbus Amendments") to add the Remaining Aircraft (as defined therein), which ████████████████ |

---

[6] Nothing shall impair the rights of the Debtors to challenge the validity of prepetition termination of the Undelivered Leases if the Approval Order is not entered by the Bankruptcy Court

|  | ████████████████  ████████████ |
|  | ████████████████████████████ |
|  | The terms and required consents in the AerCap-Airbus Amendments shall be substantially similar to those contained in the 2024 Transaction. |
|  | • Spirit consents to the entry of International Lease Finance Corporation and International Aero Engines, LLC into the Backstop Engine Support Agreement Amendment. |
|  | • Other than the Spirit-Airbus Amendments, Spirit will not, without AerCap's prior written consent, enter into any amendment, modification or supplement to, or waive any right under (or consent to any of the foregoing) the Spirit Purchase Agreement to the extent relating to the Additional Aircraft. |
|  | • Up to ████████████ will be removed from the Spirit Purchase Agreement. |
| ***Allowed Administrative Expense Claims*** | Upon entry of the Approval Order, all post-petition obligations under the Assumed Leases and any New Leases shall be entitled to treatment as administrative expense claims pursuant to sections 503 and 507 of the Bankruptcy Code; *provided*, in the event that Spirit, acting in good faith, disputes any invoiced post-petition amount, Spirit will notify AerCap of the disputed amount and will submit payment for all undisputed amounts in accordance with this section; the unpaid disputed amount will be resolved by mutual negotiations of the parties. |
| ***Complying Plan*** | A chapter 11 plan which satisfies the following conditions shall be a "Complying Plan": |
|  | • AerCap shall be properly solicited in accordance with the Bankruptcy Code and any applicable orders of the Bankruptcy Court. |
|  | • AerCap will receive substantially similar treatment on account of its Allowed Unsecured Claims as that provided to any other unsecured claimant whose claim runs solely against Spirit Airlines, LLC other than any convenience class that may be included in the chapter 11 plan. |
|  | The plan provides for the vesting pursuant to section 1141 of the Bankruptcy Code of the Assumed Leases and the New Leases in reorganized Spirit. |

| *Definitive Documents* | The "Definitive Documents" are: (i) the Term Sheet, (ii) the Spirit-Airbus Amendments and the AerCap-Airbus Amendments, (iii) the Approval Order, (iv) the New Leases and (v) such other agreements and documentation reasonably necessary to consummate and document the transactions contemplated by this Term Sheet and the Approval Order. |
| | The Definitive Documents shall reflect the terms and conditions set forth in this Term Sheet, the Approval Order and any other terms acceptable to Spirit and AerCap to the extent such other terms are necessary or appropriate to effect the transactions contemplated by this Term Sheet or the Approval Order. |

## Basis for Relief

### A. The Court Should Authorize the Assumption of the Assumed Leases and Rejection of the Rejected Leases Under Sections 365(a) and 105(a) of the Bankruptcy Code

21.     Section 365 of the Bankruptcy Code allows a debtor in possession (with bankruptcy court approval) to maximize the value of its estates by, among other things, assuming and rejecting executory contracts and unexpired leases.  11 U.S.C. § 365(a); *see also NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 521 (1984); *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1098 (2d Cir. 1993).  An executory contract is a "contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other." *Sharon Steel Corp. v. Nat'l Fuel Gas Distribution Corp.*, 872 F.2d 36, 39 (3d Cir. 1989) (internal citations omitted); *see also In re Keren Ltd. P'ship*, 225 B.R. 303, 307 (S.D.N.Y. 1997), *aff'd*, 189 F.3d 86 (2d Cir. 1999) (same).

22.     In determining whether to permit a debtor to assume or reject a contract or lease, "the debtor's interests are paramount." *COR Route 5 Co. v. Penn Traffic Co. (In re Penn Traffic Co.)*, 524 F.3d 373, 383 (2d Cir. 2008).  Accordingly, the decision to assume or reject an executory contract or unexpired lease is governed by the business judgment rule, which requires that a debtor

determine that the requested assumption would be beneficial to its estates. *See Grp. of Institutional Invs. v. Chicago, M., St. P. & P. R. Co.*, 318 U.S. 523, 550 (1943) (finding that the question of assumption "is one of business judgment"); *In re Penn Traffic*, 524 F.3d at 383; *In re Old Carco LLC*, 406 B.R. 180, 188 (Bankr. S.D.N.Y. 2009); *In re Helm*, 335 B.R. 528, 538 (Bankr. S.D.N.Y. 2006); *In re MF Global Inc.*, No. 11-2790, 2011 WL 6792758, at *2 (Bankr. S.D.N.Y. Dec. 20, 2011) ("The assumption or rejection of an executory contract may be approved if such action would benefit the debtor's estate and is an exercise of sound business judgment."); *Sharon Steel*, 872 F.2d at 40. A debtor's decision to assume an executory contract or unexpired lease based on its business judgment will generally not be disturbed absent a showing of "bad faith or abuse of business discretion." *In re Old Carco*, 406 B.R. at 188 (quoting *In re G Survivor Corp.*, 171 B.R. 755, 757 (Bankr. S.D.N.Y. 1994), *aff'd sub nom. John Forsyth Co., Inc. v. G Licensing, Ltd.*, 187 B.R. 111 (S.D.N.Y. 1995)). The party opposing a debtor's exercise of its business judgment has the burden of rebutting the presumption of validity. *See Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993).

23.     Upon finding that the debtor has exercised its sound business judgment in determining that the assumption or rejection of a contract or lease is in the best interests of the debtor, its creditors, and all parties in interest, the court should approve the assumption or rejection under section 365(a) of the Bankruptcy Code. *See, e.g., In re Child World, Inc.*, 142 B.R. 87, 89 (Bankr. S.D.N.Y. 1992); *In re Gucci*, 193 B.R. at 417. Moreover, section 105(a) of the Bankruptcy Code confers the Court with broad equitable powers to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

24.     The Debtors respectfully submit that the relief requested herein is fair, equitable, reasonable, and in the best interests of the Debtors' estates and is, thus, justified under sections 365(a) and 105(a) of the Bankruptcy Code.  As described above and in the Cromer Declaration, the assumption and rejection of leases as set forth in the Global Restructuring Term Sheet are an integral component of the overall settlement and the Debtors' broader restructuring strategy.  *See* Cromer Decl. ¶ 14.  The settlement between the Debtors and AerCap, their largest lessor, represents a significant step forward in the Debtors' fleet optimization efforts by eliminating leases that are not cost-effective and assuming numerous favorable leases.  *See* Cromer Decl. ¶ 21.  In addition, the settlement contemplates assumption of the Assumed Leases, which are leased on favorable terms to the Debtors.  *See* Cromer Decl. ¶ 14.

25.     In light of the foregoing, the Debtors respectfully submit that the assumption of the Assumed Leases and rejection of the Rejected Leases, in each case as set forth in the Global Restructuring Term Sheet, (a) would be the result of the Debtors exercising their sound business judgment in accordance with their fiduciary duties, (b) would be in the best interests of their estates and economic stakeholders, and (c) would further serve to maximize value for the benefit of all creditors.  Accordingly, the Debtors respectfully request that the Court authorize, the Debtors to assume the Assumed Leases and reject the Rejected Leases.

**B.  The Court Should Authorize the Debtors' Entry into the New Lease Agreements and Definitive Documents**

26.     Section 363(b)(1) of the Bankruptcy Code empowers the Court to allow a debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). A debtor's decision to use, sell, or lease assets outside the ordinary course of business must be based upon the sound business judgment of the debtor. *See In re Chateaugay Corp.*, 973 F.2d 141, 143 (2d Cir. 1992) (holding that a judge determining a section 363(b) application must

find from the evidence presented before him a good business reason to grant such application); *see also Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983) (same); *In re Glob. Crossing Ltd.*, 295 B.R. 726, 743 (Bankr. S.D.N.Y. 2003); *In re Ionosphere Clubs, Inc.*, 100 B.R. 670, 674 (Bankr. S.D.N.Y. 1989) (noting that the standard for determining a section 363(b) motion is "good business reason").

27.    The business judgment rule is satisfied "when the following elements are present: (1) a business decision, (2) disinterestedness, (3) due care, (4) good faith, and (5) according to some courts and commentators, no abuse of discretion or waste of corporate assets." *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992), appeal dismissed, 3 F.3d 49 (2d Cir. 1993) (internal quotations omitted). In fact, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *Comm. of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986). Once the debtor articulates sound business reasons, "a strong presumption arises" that the debtor's directors are acting in the best interest of the company and thus that the court should approve the transaction.  *In re GOL Linhas Aereas Inteligentes S.A.*, 661 B.R. 330, 339 (Bankr. S.D.N.Y. 2024). Courts in this district have consistently and appropriately been loath to interfere with corporate decisions absent a showing of bad faith, self-interest, or gross negligence and will uphold a board's decisions as long as they are attributable to any "rational business purpose." *In re Integrated Res. Inc.*, 147 B.R. at 656.

28.    The Debtors respectfully submit that entry into the New Lease Agreements and the Definitive Documents represents a sound exercise of their business judgment and is justified under

section 363(b) of the Bankruptcy Code. The Debtors have determined that entry into the New Leases, which will provide for the lease of 30 aircraft on substantially identical terms and conditions as the Undelivered Leases, will provide significant value to the Debtors, and will appropriately fit the needs of the Debtors and their reorganized fleet. *See* Cromer Decl. ¶ 19. Moreover, entry into the Definitive Documents (in accordance with the terms of the Global Restructuring Term Sheet) will concretize the settlement by, among other things, enabling the Debtors to retain ███ of the Option Aircraft, and is required by AerCap as a condition to effectiveness of the settlement. *See* Cromer Decl. ¶ 18.

29.    Accordingly, the Debtors request that the Court authorize the Debtors' entry into the New Lease Agreement and the Definitive Documents.

## C. The Court Should Approve the Settlement of Claims Under Bankruptcy Rule 9019

30.    By this Motion, the Debtors seek approval of the Global Restructuring Term Sheet between the Debtors and the AerCap Parties. The Debtors and the AerCap Parties engaged in good-faith negotiations at arm's length, which led to the Global Restructuring Term Sheet that settles potentially costly disputes with AerCap and provides the Debtors with a significant liquidity injection. See Cromer Decl. ¶ 4.

31.    A court should exercise its discretion to approve the settlement "in light of the general public policy favoring settlements." *In re Hibbard Brown & Co.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998). Indeed, courts in this district have made clear that "[a]s a general matter, 'settlements and compromises are favored in bankruptcy as they minimize costly litigation and further parties' interests in expediting the administration of the bankruptcy estate.'" *In re Republic Airways Holdings, Inc.*, 2016 WL 2616717, No. 16-10429 (SHL) at *3 (Bankr. S.D.N.Y. May 4, 2016) (citing *In re Dewey & LeBouef LLP*, 478 B.R. 626, 640 (Bankr. S.D.N.Y. 2012)); *see also Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d

452, 455 (2d Cir. 2007) (stating that settlements "help clear a path for the efficient administration

of the bankrupt estate").

33. Under Bankruptcy Rule 9019 and governing case law, a court should approve a

compromise or settlement where it makes an independent determination that the compromise or

settlement is fair and equitable, reasonable, and in the best interests of the debtor's estate. *See,*

*e.g.*, *In re Republic Airways*, 2016 WL 2616717 at *3; *see also In re Genesis Glob. Holdco, LLC,*

*2023 WL 6543250, at *5 (Bankr. S.D.N.Y. Oct. 6, 2023); Ionosphere Clubs, Inc. v. Am. Nat'l Bank*

*& Trust Co. of Chicago (In re Ionosphere Clubs, Inc.)*, 156 B.R. 414, 426 (S.D.N.Y. 1993), *aff'd*,

17 F.3d 600 (2d Cir. 1994); *Nellis v. Shugrue*, 165 B.R. 115, 122–23 (S.D.N.Y. 1994). In so doing,

a court may consider the opinions of the trustee or debtor in possession that the settlement is fair

and equitable. *See id.*; *see also In re Purofied Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y.

1993).

33. In assessing whether to approve a settlement, a court need not decide the issues of

law and fact raised by the settlement, but rather should "canvass the issues and see whether the

settlement fall[s] below the lowest point in the range of reasonableness." *In re W.T. Grant Co.*,

699 F.2d 599, 608 (2d Cir. 1983) (alteration in original) (citations and quotations omitted). Put

differently, "the court need not conduct a 'mini-trial' to determine the merits of the underlying

litigation." *In re Purofied Down Prods.*, 150 B.R. at 522. In this regard, "[t]he 'reasonableness'

of [a] settlement depends upon all factors, including probability of success, the length and cost of

the litigation, and the extent to which the settlement is truly the product of 'arms-length'

bargaining, and not fraud or collusion." *In re Ionosphere Clubs, Inc.*, 156 B.R. at 428.

34. Courts in the Second Circuit have described the following seven interrelated factors

that a bankruptcy court should consider in exercising its discretion under Rule 9019: (1) the

balance between the litigation's possibility of success and the settlement's future benefits; (2) the likelihood of complex and protracted litigation, with its attendant expense, inconveniences, and delay; (3) the paramount interest of the creditors; (4) whether other parties in interest affirmatively support the proposed settlement; (5) the nature and breadth of releases to be obtained by officers and directors; (6) whether the competency and experience of counsel support the settlement; and (7) the extent to which the settlement is the product of arm's-length bargaining. *See In re Iridium Operating LLC*, 478 F.3d 452, 462 (2d Cir. 2007); *see also Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 292 (2d Cir. 1992); *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 427 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994). When assessing a global settlement of claims, "[t]he appropriate inquiry is whether the [s]ettlement [a]greement is **in its entirety** appropriate for the [] estate." *In re Ionosphere Clubs*, 156 B.R. at 430 (emphasis added).

35.     The Debtors respectfully submit that the *Iridium* factors weigh overwhelmingly in favor of approval of the settlements and compromises contained in the Global Restructuring Term Sheet, satisfying the range of reasonableness test and settlement standard described above. As to the first and second *Iridium* factors, the likelihood of success on the merits of Spirit's various claims against the AerCap Entities – which would require costly litigation of various complex issues, including certain issues of first impression – is speculative and uncertain. Weighing the uncertainty of success on the merits against the value provided by the compromise, the Debtors believe that the transactions, settlement and compromise of claims and disputes contained in the Global Restructuring Term Sheet is highly favorable to the Debtors and their constituents. *See* Cromer Decl. ¶ 4. On the third factor, the settlement benefits the interest of creditors by serving as the cornerstone of the Debtors' fleet optimization process, injecting material liquidity into the Debtors' businesses, and avoiding the cost and distraction of protracted litigation, each of which

are essential to the Debtors' broader restructuring efforts.  The fifth factor is inapplicable, as the Global Restructuring Term Sheet do not contemplate releases to be obtained by directors and officers.  And the sixth and seventh factors indisputably weigh in favor of approval, as the transactions contained in the Global Restructuring Term Sheet is the product of arm's-length bargaining amongst parties represented by highly experienced counsel.  *See* Cromer Decl. ¶ 4.

36.     Moreover, viewed in its entirety, the settlement of claims and disputes is entirely appropriate and is far above the lowest range of reasonableness.  *See* Cromer Decl. ¶ 33. Accordingly, the Debtors respectfully request that the Court approve the Global Restructuring Term Sheet.

## Waiver of Bankruptcy Rules 6004(a), 6004(h), and 6006(f)

37.     To implement successfully the relief sought herein, the Debtors request that the Court find that notice of the Motion is adequate under Bankruptcy Rule 6004(a) under the circumstances and that the contents of the Order (including Schedule 3 thereto) is compliant with Bankruptcy Rule 6006(f).  The Debtors also request that, to the extent applicable to the relief requested in this Motion, the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[u]nless the court orders otherwise, an order authorizing the use, sale, or lease of property (other than cash collateral) is stayed for 14 days after the order is entered."  Fed. R. Bankr. P. 6004(h).  As described above, the relief requested in this Motion is necessary for the Debtors to operate their businesses without interruption and to preserve and maximize value for their estates and parties in interest.  Accordingly, the Debtors respectfully submit that ample cause exists to justify the (a) finding that the notice requirements under Bankruptcy Rule 6004(a) have been satisfied and (b) waiving of the 14-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

## **Notice**

38.     Notice of this Motion will be provided to the following parties (or their counsel) (collectively, the "**Notice Parties**"):  (a) the U.S. Trustee; (b) the Committee; (c) certain holders of the Debtors' secured notes; (d) each agent or trustee under the Debtors' secured notes indenture or revolving credit facility; (e) the AerCap Entities; and (f) any other party that is entitled to notice under the Court's *Order Implementing Certain Notice and Case Management Procedures* [ECF No. 61].  A copy of this Motion and any order entered in respect thereto will also be made available on the Debtors' case information website located at https://dm.epiq11.com/SpiritAirlines.  Based on the circumstances surrounding this Motion and the nature of the relief requested herein, the Debtors respectfully submit that no other or further notice is required.

*[Remainder of page intentionally left blank]*

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other and further relief as the Court deems just and proper.

Dated:    September 23, 2025
          New York, New York

                                      DAVIS POLK & WARDWELL LLP

                                      */s/ Darren S. Klein*
                                      450 Lexington Avenue
                                      New York, NY 10017
                                      Tel.: (212) 450-4000
                                      Marshall S. Huebner
                                      Darren S. Klein
                                      Christopher S. Robertson
                                      Joseph W. Brown

                                      *Proposed Counsel to the Debtors and Debtors in Possession*

## **Exhibit A**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | **Chapter 11** |
| | **Case No. 25-11897 (SHL)** |
| **SPIRIT AVIATION HOLDINGS, INC.,** *et al.,* | |
| Debtors.[1] | **Jointly Administered** |

## ORDER (I) APPROVING THE GLOBAL RESTRUCTURING TERM SHEET WITH AERCAP IRELAND LIMITED, (II) AUTHORIZING AND APPROVING ASSUMPTION AND REJECTION OF CERTAIN AIRCRAFT AGREEMENTS, (III) AUTHORIZING AND APPROVING ENTRY INTO THE NEW LEASE AGREEMENTS AND DEFINITIVE DOCUMENTS, AND (IV) GRANTING RELATED RELIEF

Upon the motion (the "**Motion**")[2] of Spirit Aviation Holdings, Inc. and its direct and indirect subsidiaries (collectively, the "**Debtors**"), each of which is a debtor and debtor in possession in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), for entry of an order (this "**Order**") pursuant to sections 105(a), 363, 365, 502, 503, 507 and 553 of the Bankruptcy Code, Bankruptcy Rules 6004, 6006, and 9019, and Local Rule 6006-1, (a) approving the Global Restructuring Term Sheet attached hereto as Exhibit 1, (b) authorizing the Debtors to (i) assume the Assumed Leases and (ii) reject the Rejected Leases and, (c) authorizing the Debtors to enter into (x) the New Lease Agreements and (y) the Definitive Documents, (d) approving the settlement with AerCap of certain disputes and claims related to, among other things, rejection and return of the Rejected Leases (as

---

[1]    The Debtors' names and last four digits of their respective employer identification numbers are as follows: Spirit Aviation Holdings, Inc. (1797); Spirit Airlines, LLC (7023); Spirit Finance Cayman 1 Ltd. (7020); Spirit Finance Cayman 2 Ltd. (7362); Spirit IP Cayman Ltd. (4732); and Spirit Loyalty Cayman Ltd. (4752).  The Debtors' mailing address is 1731 Radiant Drive, Dania Beach, FL 33004.

[2]    Unless defined herein, all defined terms shall have the meaning ascribed to them as contained in the Global Restructuring Term Sheet.

defined below), and additional claims of the Debtors related to the Undelivered Leases, and (e) granting related relief, each as set forth more fully in the Global Restructuring Term Sheet, Motion and Cromer Declaration; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference M-431*, dated January 31, 2012 (Preska, C.J.); and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157; and the Court having found that it may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue of the Chapter 11 Cases and related proceedings being proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to the Notice Parties, such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and the Court having reviewed and considered the Motion, the Cromer Declaration and the First Day Declaration; and the Court having determined that the legal and factual bases set forth in the Motion and the Cromer Declaration and at the Hearing establish just cause for the relief granted herein; and the Court having found that the relief requested in the Motion represents a sound exercise of the Debtors' business judgment, and is in the best interests of the Debtors, their creditors, their estates, and all other parties in interest; and all objections and reservations of rights filed or asserted in respect of the Motion, if any, having been withdrawn, resolved, or overruled with prejudice; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor,[3]

---

[3]    Unless defined herein, all defined terms shall have the meaning ascribed to them as contained in the Global Restructuring Term Sheet.

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is granted as set forth herein.

2.      The Global Restructuring Term Sheet, attached hereto has **Exhibit 1**, and all the terms and conditions thereof, and all the transactions and agreements contemplated thereby or embodied therein are hereby approved pursuant to Bankruptcy Rule 9019(a) in all respects and (a) represent a valid exercise of the Debtors' business judgment, (b) are supported by reasonable consideration, and (c) are fair and equitable and in the best interest of the Debtors' estates.

3.      The Debtors are authorized to (i) execute and deliver all documentation, (including, without limitation, the Definitive Documents)  necessary to implement and effectuate the terms and conditions of the Global Restructuring Term Sheet and this Order, (ii) comply with all obligations and make all payments provided for in the Assumed Leases, the New Leases and the Global Restructuring Term Sheet and the other Definitive Documents, (iii) take any additional actions as are reasonably necessary or appropriate to implement and effectuate the entry into and performance under the Assumed Leases, the New Leases, the Spirit-Airbus Amendments and the Global Restructuring Term Sheet and the other Definitive Documents, it being the intent of this Court that the Assumed Leases, the New Leases and the Global Restructuring  Term Sheet, the Spirit-Airbus Amendments and the other Definitive Documents be approved in their entirety, and the failure to specifically describe or include any provision in the Global Restructuring Term Sheet or the other Definitive Documents shall not diminish or impair the effectiveness of such provision.

4.      Pursuant to section 365 of the Bankruptcy Code, the Debtors are authorized to assume the Assumed Leases listed on **Schedule 1** attached hereto, as may be amended by the Global Restructuring Term Sheet, on the terms, as applicable, consistent with the Global Restructuring Term Sheet and the Definitive Documents.  The Assumed Leases, and each of the terms and conditions contained therein, are hereby approved in their entirety and shall be deemed assumed effective as of the date of entry of this Order, and the requirements of section 365 of the Bankruptcy Code with respect to the assumption of the Assumed Leases shall be deemed satisfied.

5.      The Debtors are permitted to satisfy the obligation to cure monetary defaults under section 365 of the Bankruptcy Code under the Assumed Leases as set forth in the Global Restructuring Term Sheet and, upon payment, all cure obligations under section 365 and all other defaults under the Assumed Leases are deemed waived and satisfied.

6.      Pursuant to section 363 of the Bankruptcy Code, the Debtors are authorized to enter into the New Leases, Spirit-Airbus Amendment and the other Definitive Documents, as applicable, and in each case as described in the Global Restructuring  Term Sheet, and all payment obligations owed by the Debtors and arising the New Leases shall be entitled to administrative expense priority pursuant to sections 503 and 507 of the Bankruptcy Code.

7.      Upon entry of this Order, all payment obligations arising under the Assumed Leases and the New Leases, shall be entitled to administrative expense priority pursuant to sections 503 and 507 of the Bankruptcy Code; *provided, however*, that in the event that the Debtors, acting in good faith, dispute any invoiced post-petition amount, the Debtors will notify AerCap of the disputed amount and will submit payment for all

undisputed amounts in accordance with the terms of the Global Restructuring Term Sheet, with such undisputed amount to be resolved by mutual negotiations between the Debtors and AerCap.

8.      The automatic stay imposed under section 362(a) of the Bankruptcy Code, to the extent applicable, is hereby modified and lifted to permit (i) the parties to enter into New Leases and the other Definitive Documents and (ii) the AerCap Parties to, upon an Event of Default under the Assumed Leases, the New Leases or the Global Restructuring Term Sheet to exercise any rights and remedies under the Assumed Leases and the New Leases, without further order of the Court.

9.      Pursuant to sections 365 and 105 of the Bankruptcy Code, the Debtors are authorized, but not directed, to reject the Rejected Leases, effective as of the Rejection Date set forth in the schedule attached hereto as **Schedule 2**.

10.     To the extent the Debtors retained any legal or equitable interests in the Undelivered Leases as of the date of filing of the Motion, the Undelivered Leases are deemed rejected *nunc pro tunc* to the Petition Date.

11.     AerCap or the applicable holder of any Allowed Unsecured Claim (or any portion thereof) shall support any Complying Plan proposed by the Debtors, including by voting in favor thereof.  The obligations under this Order, including the obligation to vote the Allowed Unsecured Claims in favor of a Complying Plan, shall be binding on the Debtors, AerCap, any successor or assignee, or the transferee of any Allowed Unsecured Claim (or any portion thereof).

12.     AerCap or the applicable holder of any Allowed Unsecured Claim (or any portion thereof) shall support any Complying Plan proposed by the Debtors, including by

voting in favor thereof. The obligations under this Order, including the obligation to vote the Allowed Unsecured Claims in favor of a Complying Plan, shall be binding on the Debtors, AerCap, any successor or assignee, or the transferee of any Allowed Unsecured Claim (or any portion thereof).

13.     The Assumed Leases, the New Leases, and the other Definitive Documents and the other transaction instruments, agreements, and documents related thereto may be modified, amended, or supplemented by the parties thereto in a writing signed by the parties thereto, and in accordance with the terms thereof, without further order of the Court.

14.     No prepetition or postpetition payment made by the Debtors to AerCap, or any setoff or application of proceeds of letters of credit by, or any lien granted to, AerCap, including, without limitation, any payments or transfers made by the Debtors to the AerCap Parties under any instrument or agreement by and between the Debtors and the AerCap Parties, or pursuant to this Order or the Definitive Documents or claims (including administrative expense claims) allowed or granted under this Order shall be stayed, restrained, voidable, avoidable, or recoverable under the Bankruptcy Code or any applicable law (including, without limitation, under sections 502(d), 544, or 547 through 550 of the Bankruptcy Code or under any applicable state Uniform Voidable Transactions Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or similar statute or common law), or subject to any contest, attack, rejection, defense, avoidance, reduction, setoff, recoupment, recharacterization, or subordination (whether equitable, contractual, or otherwise), disallowance, impairment, claim, counterclaim, cross-claim, or any other challenge under the Bankruptcy Code, any other order of the Court or applicable law, or regulation by any person or entity.

15.     Notwithstanding any subsequent appointment of any trustee(s) under any chapter of the Bankruptcy Code, this Order and the terms and conditions of the Global Restructuring Term Sheet, the Assumed Leases, New Leases, the Spirit-AerCap Amendment and the other Definitive Documents shall be binding in all respects upon, and shall inure to the benefit of, the Debtors, their estates, and their creditors, their respective affiliates, successors, and assigns, and any affected third parties, including, but not limited to, the AerCap Parties, its affiliates and subsidiaries, and all other persons asserting interests in the AerCap Aircraft.

16.     AerCap shall be granted an allowed general unsecured claim in the total amount of $696,461,890 against Spirit Airlines, LLC, which shall not be subject to setoff, subordination or reduction (the "**Allowed Unsecured Claim**").  Notwithstanding the foregoing, nothing herein waives the Debtors' rights to contest claims other than the Allowed Unsecured Claim (including requests for the payment of administrative expenses) that are subject to a bona fide dispute or any available defenses to the extent not inconsistent with the Global Restructuring Term Sheet, the Assumed Leases, the New Leases, or the Definitive Documents.  The Debtors and the Debtors' claims agent are authorized to take any reasonably necessary steps to reflect the allowance of the Allowed Unsecured Claim against Spirit Airlines, LLC in favor of AerCap and designate claim number(s) on the claims register in the Chapter 11 Cases.

17.     The Debtors, on behalf of themselves and their estates, and the AerCap Parties and finance parties to be identified, unconditionally and irrevocably release, waive and discharge, and agree there shall be deemed satisfied and covenant not to sue the other party and its affiliates, and any of their respective heirs, successors, assigns, affiliates,

officers, directors, shareholders, associates, parents, subsidiaries, predecessors, employees, attorneys and agents (including, for the avoidance of doubt, the Owner Trustees under the Leases), with respect to any and all losses, costs, expenses, liabilities, fees, taxes, obligations, damages or claims (including, any avoidance or recovery actions arising under chapter 5 of title 11 of the Bankruptcy Code or other applicable law) of any kind and nature, character and description, whether sounding in tort, contract or under other applicable state law, whether known or unknown, whether anticipated or unanticipated, whether presently existing or existing at any time in the future, whether or not asserted, and whether founded in fact or law or in equity, related to, arising under or in any way connected to any lease or other related transaction document, any lease termination, or any Aircraft or Engine, or any transaction contemplated thereby or related thereto and attributable to the period prior to the entry of the Approval Order; provided, however, that the release provided for in this paragraph shall not apply to any obligations that arise out of or relate to any post-petition transactions entered into by and between AerCap and Debtors.

18.     The AerCap Parties shall be entitled to the protections afforded under section 363(m) of the Bankruptcy Code with respect to all of the transactions set forth in the Global Restructuring Term Sheet or as otherwise provided for herein.

19.     Notice of the Motion is adequate under Bankruptcy Rule 6004(a). Notwithstanding the provisions of Bankruptcy Rule 6004(h), this Order shall be immediately effective and enforceable upon its entry.

20.     The Debtors are authorized to take, or refrain from taking, any action necessary or appropriate to implement and effectuate the terms of, and the relief granted in, this Order without seeking further order of the Court.

21.    The AerCap Liquidity Payment shall, upon receipt by the Debtors, constitute "Unencumbered Funds" as that term is used in the *Interim Order (I) Authorizing the Debtors to Utilize Cash Collateral, (II) Granting Adequate Protection, (III) Modifying the Automatic Stay, (IV) Scheduling a Further Hearing on the Motion, and (V) Granting Related Relief* [ECF No. 89].

22.    During the pendency of the Chapter 11 Cases, this Court shall retain exclusive jurisdiction over any and all matters arising from or related to the implementation, interpretation, and enforcement of this Order and the Global Restructuring Term Sheet.

Dated: _____, 2025
         New York, New York

_____
THE HONORABLE SEAN H. LANE
UNITED STATES BANKRUPTCY JUDGE

**Exhibit 1**

**Global Restructuring Term Sheet**

## Global Restructuring Term Sheet

Below are the terms of a proposed global restructuring of certain aircraft leases and other related agreements and interlocking settlements of claims and disputes by and between Spirit Airlines, LLC, on behalf of itself, its subsidiaries, and Spirit Aviation Holdings, Inc., as debtors and debtors-in-possession (collectively, "Spirit" or the "Debtors" ), and AerCap Ireland Limited, on behalf of itself and its subsidiaries, affiliates, owner trusts, managed entities and assignees (collectively, "AerCap" or the "AerCap Parties"). The terms set out herein (this "Term Sheet") are not intended to describe or include all of the terms and conditions of the restructuring transactions described herein.

The transactions described herein shall be implemented in the chapter 11 cases filed by Spirit on August 29, 2025 (the "Chapter 11 Cases"), and are expressly subject to (i) the execution of this Term Sheet in form and substance reasonably acceptable to AerCap and Spirit, (ii) the entry of order(s) by the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") approving this Term Sheet and the transactions contained herein (the "Approval Order" and, the motion seeking entry of the same, the "Approval Motion"), and (iii) the other conditions precedent contained herein.

| Term | Detail |
|---|---|
| **Transaction Overview** | • AerCap and Spirit will (i) agree on arrangements in respect of the aircraft and engines set forth on the schedules hereto (the "Aircraft" and "Engines," respectively), (ii) agree to the assumption and rejection of certain leases in respect thereof, (iii) enter into new, post-petition leases, (iv) settle claims and disputes and agree to the terms of the mutual releases in exchange for, among other things, certain payments and allowed unsecured claims and administrative expense claims as further described below, and (v) agree to the terms of the transfer of purchase rights and options in respect of certain Aircraft, in each case as further described below. |
| | • Upon the execution of this Term Sheet, AerCap and Spirit will negotiate in good faith to finalize and file the Approval Motion, pursuant to sections 362, 363, 365, 502, 503, 507 and 1110 of the Bankruptcy Code and Bankruptcy Rule 9019 and any other motion or declaration necessary or appropriate to implement the relief sought therein (e.g., a sealing motion) and agree to any redactions with respect to such motion. AerCap and Spirit will negotiate in good faith to execute the Definitive Documents reflecting the terms and conditions specified in this Term Sheet. The New Leases and the other Definitive Documentation (██████ ██ █ ████ ██████████ ████████████████████████████████████████████████████ will be prepared by AerCap's counsel using precedent forms as agreed by the parties. |

| Term | Detail |
|------|--------|
| **AerCap Liquidity Payment** | • In consideration for the terms and conditions agreed by AerCap and Spirit herein, and provided that the Spirit-Airbus Amendments (as defined herein) and the AerCap-Airbus Amendments (as defined herein) have been executed by the parties thereto, AerCap shall pay to Spirit an amount equal to $150 million (the "<u>AerCap Liquidity Payment</u>") ██████████████████████████ ██████████████████ within three (3) business days from the date of entry of the Approval Order (such date that the Approval Order is entered, "<u>Approval Date</u>"). It shall be an Event of Default under Assumed Leases and this Term Sheet if the Debtors fail to execute the New Leases within fifteen (15) business days from the Approval Date. |
| **Settlement and Mutual Releases** | • Each party hereto acknowledges and agrees that under the transactions contemplated by this Term Sheet, each party is receiving (i) new value that is intended to be, and in fact is part of, a contemporaneous exchange of new value, (ii) fair value, (iii) fair, full and adequate consideration and (iv) reasonably equivalent value for each transfer.<br><br>• The Approval Order shall include mutual release provisions agreed to by Spirit and AerCap, including releases of the Owner Trustees under the Leases and certain AerCap-related finance parties.<br><br>• All discovery requests by AerCap and the Debtors are deemed withdrawn. |
| **Lease Assumptions** | • Spirit shall assume the lease agreements relating to the ten (10) Aircraft set forth on Schedule 1 hereto (each such lease agreement, together with the "Operative Documents" under and as defined therein, an "<u>Assumed Lease</u>") in their entirety and such assumption will be effective on the Approval Date.<br><br>• Spirit shall cure all payment defaults in respect of each Assumed Lease on or prior to the date AerCap Liquidity Payment is paid by AerCap to the Debtors. All other defaults shall be deemed waived upon payment of the cure amounts and the other amounts provided herein.<br><br>• The Assumed Leases, and the obligations thereunder, and any related guarantees shall become binding obligations on the Debtors and shall thereafter not be assigned or subleased without the express written consent of AerCap other than in accordance with the terms of the applicable Assumed Lease or as otherwise permitted by the Bankruptcy Code. Notwithstanding the foregoing, nothing herein |

| Term | Detail |
|------|--------|
| | shall limit or impair AerCap's right (i) to adequate assurance of future performance under Section 365 of the Bankruptcy Code or (ii) object to any proposed assignment or proposed plan, sale or transaction that would result in a Change of Control (as defined in the Assumed Leases) on any grounds (including its inability to complete required "know your customer" or anti-money laundering procedures); provided that Spirit reserves all rights with respect hereto. |
| **Lease Rejections** | • Spirit shall reject the lease agreements relating to the twenty-seven (27) Aircraft set forth on Schedule 2 hereto (each such lease agreement, together with the "Operative Documents" under and as defined therein, a "<u>Rejected Lease</u>") pursuant to section 365 of the Bankruptcy Code, on terms and conditions (including schedule of redelivery, return conditions, effective date of rejection) mutually agreed to between the parties prior to the Approval Date. |
| **New Lease Agreements** | • As part of the global settlement reflected herein, AerCap and Spirit will enter into, pursuant to section 363 of the Bankruptcy Code, thirty (30) new lease agreements (the "<u>New Leases</u>"), on identical terms and conditions as the Undelivered Leases (as defined below), except as set forth on Schedule 6 hereto, with delivery dates ████████ ████████ and such other changes to be mutually agreed.<br><br>• The New Leases will be for ████████ ████████ Airbus S.A.S. ("<u>Airbus</u>"). |
| **Undelivered Leases** | • With respect to each of the thirty-six (36) lease agreements set forth on Schedule 3 hereto (each such lease agreement, together with the "Operative Documents" under and as defined therein, an "<u>Undelivered Lease</u>") that were the subject of termination notices sent by AerCap prior to the Petition Date, to the extent that the Debtors retained any legal or equitable interests in the Undelivered Leases or the Framework Agreement dated July 29, 2024 by and between Spirit and some of the AerCap Parties as of the Petition Date, such interests shall be deemed rejected as of the Petition Date.[1] |
| **Claims Settlement** | • AerCap shall be granted one or more allowed general unsecured claim in the total aggregate amount of $696,461,890 (the "<u>Allowed</u> |

---

[1] Nothing shall impair the rights of the Debtors to challenge the validity of prepetition termination of the Undelivered Leases if the Approval Order is not entered by the Bankruptcy Court

| Term | Detail |
|------|--------|
| | Unsecured Claims") against Spirit Airlines, LLC, which shall not be subject to setoff, subordination or reduction. |
| | • AerCap agrees to waive any prepetition termination fees against the Debtors. |
| | • Spirit and the claims agent shall take any necessary steps to reflect this claims settlement (the "Claims Settlement") on the claims register in the Chapter 11 Cases, and AerCap shall not be required to file proofs of claim with respect to the Allowed Unsecured Claims. |
| **Purchase Options** | In connection with the Definitive Documents:<br><br>• AerCap consents to Spirit's entry into one or more amendments (the "Spirit-Airbus Amendments") to Spirit's purchase agreement with Airbus (the "Spirit Purchase Agreement"), ███████ ██████████████████████████████ ████████████████████ AerCap will consent to such amendments.<br><br>• Spirit consents to AerCap's entry into one or more amendments of the AerCap purchase agreement with Airbus (the "AerCap-Airbus Amendments") to add the Remaining Aircraft (as defined therein), which ███████████████████████ ██████████████████████████████ ██████████████████████████████ ████ The terms and required consents in the AerCap-Airbus Amendments shall be substantially similar to those contained in the 2024 Transaction.<br><br>• Spirit consents to the entry of International Lease Finance Corporation and International Aero Engines, LLC into the Backstop Engine Support Agreement Amendment.<br><br>• Other than the Spirit-Airbus Amendments, Spirit will not, without AerCap's prior written consent, enter into any amendment, modification or supplement to, or waive any right under (or consent to any of the foregoing) the Spirit Purchase Agreement to the extent relating to the Additional Aircraft.<br><br>• Up to ████████████████ will be removed from the Spirit Purchase Agreement. |

| Term | Detail |
|---|---|
| **Allowed Administrative Expense Claims** | • Upon entry of the Approval Order, all post-petition obligations under the Assumed Leases and any New Leases shall be entitled to treatment as administrative expense claims pursuant to sections 503 and 507 of the Bankruptcy Code; *provided*, in the event that Spirit, acting in good faith, disputes any invoiced post-petition amount, Spirit will notify AerCap of the disputed amount and will submit payment for all undisputed amounts in accordance with this section; the unpaid disputed amount will be resolved by mutual negotiations of the parties. |
| **Complying Plan** | A chapter 11 plan which satisfies the following conditions shall be a "Complying Plan": <br><br> • AerCap shall be properly solicited in accordance with the Bankruptcy Code and any applicable orders of the Bankruptcy Court. <br><br> • AerCap will receive substantially similar treatment on account of its Allowed Unsecured Claims as that provided to any other unsecured claimant whose claim runs solely against Spirit Airlines, LLC other than any convenience class that may be included in the chapter 11 plan. <br><br> • The plan provides for the vesting pursuant to section 1141 of the Bankruptcy Code of the Assumed Leases and the New Leases in reorganized Spirit. |
| **Fees and Expenses** | • Notwithstanding anything to the contrary in any Definitive Document or Rejected Lease, each party hereto shall bear its own costs and expenses (including legal fees) in connection with the transactions contemplated by this Term Sheet; provided that, upon entry of the Approval Order, Spirit agrees that an amount equal to $▮▮▮▮▮ may be netted from the AerCap Liquidity Payment and applied towards the payment of AerCap's legal fees in respect of the transactions contemplated by this Term Sheet. |
| **Confidentiality** | • This Term Sheet and its contents are subject to the terms and conditions of the Confidentiality Agreement dated as of June 5, 2024 (the "Confidentiality Agreement"), between AerCap Holdings N.V. and Spirit. For the avoidance of doubt, any party hereto that is not a party to the Confidentiality Agreement shall comply with all terms and conditions of the Confidentiality Agreement *mutatis mutandis*, as if it were a party thereto. |

| Term | Detail |
|---|---|
| **Governing Law and Forum Selection** | • This Term Sheet will be governed by the laws of New York and shall be construed in accordance with New York law.<br><br>• Each party to this Term Sheet agrees that it shall bring any action or proceeding in respect of any claim or other dispute arising out of or related to this Term Sheet, to the extent possible, in the Bankruptcy Court and: (i) irrevocably submits to the exclusive jurisdiction of the Bankruptcy Court during the Chapter 11 Cases; (ii) waives any objection to laying venue in any such action or proceeding in the Bankruptcy Court; and (iii) waives any objection that the Bankruptcy Court is an inconvenient forum or does not have jurisdiction over any party to this Term Sheet. |
| **Definitive Documents** | • The "Definitive Documents" are: (i) the Term Sheet, (ii) the Spirit-Airbus Amendments and the AerCap-Airbus Amendments, (iii) the Approval Order, (iv) the New Leases and (v) such other agreements and documentation reasonably necessary to consummate and document the transactions contemplated by this Term Sheet and the Approval Order.<br><br>• The Definitive Documents shall reflect the terms and conditions set forth in this Term Sheet, the Approval Order and any other terms acceptable to Spirit and AerCap to the extent such other terms are necessary or appropriate to effect the transactions contemplated by this Term Sheet or the Approval Order. |
| **Bankruptcy Matters** | • The Approval Motion must be filed with the Bankruptcy Court on or before September 22, 2025, and the Approval Order must be entered by the Bankruptcy Court on or before October 16, 2025.<br><br>• The Approval Order shall provide for, among other things:<br><br>   o Approval of this Term Sheet and the transactions contained in this Term Sheet.<br><br>   o Assumption of the Assumed Leases.<br><br>   o Approval of the New Leases.<br><br>   o Approval of the Spirit-Airbus Amendments.<br><br>   o Rejection of the Rejected Leases as of the agreed-upon effective date of rejection and approval of the return procedures and return conditions and any administrative expense claims for post-petition usage, damage or missing |

| Term | Detail |
|------|--------|
| | parts and equipment in connection with the Rejected Aircraft as will be mutually agreed prior to the Approval Date. |
| | o  Granting of allowed administrative expense priority claims for all post-petition obligations under the Assumed Leases and the New Leases. |
| | o  Granting relief from the automatic stay to exercise remedies permitted under the Assumed Leases and the New Leases resulting from an Event of Default under the Leases and this Term Sheet. |
| | o  A "good faith lessor" finding under section 363(m) for AerCap with respect to the Assumed Leases, the Undelivered Leases, and the New Leases. |
| | • The terms contained in the Approval Order shall be deemed incorporated into this Term Sheet and shall constitute an integral part of the terms of settlement and restructuring transactions. |
| | • If the Approval Order is not entered by the expiration of section 1110 60-day Grace Period, nothing shall impair the rights of AerCap under section 1110 or the Bankruptcy Code. |
| **Events of Default** | The occurrence of any of the following shall constitute an Event of Default under all the Assumed Leases and any New Leases as well as a material breach of, and Event of Default under, Spirit's obligations under this Term Sheet: (i) an event of default (other than any ipso facto default) shall have occurred and be continuing under any Assumed Lease and any New Leases between Spirit and any AerCap Party entered into pursuant to this Term Sheet, and (ii) during the Chapter 11 Case, ███████████ ███████████████████████████████████████ ███████████████████████████████████████ ███████████████████████████████████████ ███████████████████████████████████████ ███████████████████████████████████████ ████████████████████ |

***

7

**SIGNATURE PAGE – GLOBAL RESTRUCTURING TERM SHEET**

IN WITNESS WHEREOF, the Parties hereto have caused this Term Sheet to be duly executed by their respective authorized officers or representatives as of September [●], 2025.

**SPIRIT AIRLINES, LLC**

By: _____

Title: _____

**AERCAP IRELAND LIMITED**

By: _____

Title: _____

8

## SCHEDULE 1
## (LEASES TO BE ASSUMED)

1. Aircraft Lease Agreement dated as of September 24, 2021, between Wilmington Trust Company (except as otherwise expressly provided therein, acting not in its individual capacity but solely as Owner Trustee for Aircraft ███████ (Delaware) Trust) as lessor and Spirit Airlines, LLC (formerly known as Spirit Airlines, Inc.), as lessee with respect to one Airbus A321-200N aircraft bearing manufacturer's serial number ███;

2. Aircraft Lease Agreement dated as of September 24, 2021, between Wilmington Trust Company (except as otherwise expressly provided therein, acting not in its individual capacity but solely as Owner Trustee for Aircraft ███████ (Delaware) Trust) as lessor and Spirit Airlines, LLC (formerly known as Spirit Airlines, Inc.), as lessee with respect to one Airbus A321-200N aircraft bearing manufacturer's serial number ████

3. Aircraft Lease Agreement dated as of September 24, 2021, between Wilmington Trust Company (except as otherwise expressly provided therein, acting not in its individual capacity but solely as Owner Trustee for Aircraft ███████ (Delaware) Trust) as lessor and Spirit Airlines, LLC (formerly known as Spirit Airlines, Inc.), as lessee with respect to one Airbus A321-200N aircraft bearing manufacturer's serial number ████

4. Aircraft Lease Agreement dated as of September 24, 2021, between Wilmington Trust Company (except as otherwise expressly provided therein, acting not in its individual capacity but solely as Owner Trustee for Aircraft ███████ (Delaware) Trust) as lessor and Spirit Airlines, LLC (formerly known as Spirit Airlines, Inc.), as lessee with respect to one Airbus A321-200N aircraft bearing manufacturer's serial number ███;

5. Aircraft Lease Agreement dated as of September 24, 2021, between Wilmington Trust Company (except as otherwise expressly provided therein, acting not in its individual capacity but solely as Owner Trustee for Aircraft ███████ (Delaware) Trust) as lessor and Spirit Airlines, LLC (formerly known as Spirit Airlines, Inc.), as lessee with respect to one Airbus A321-200N aircraft bearing manufacturer's serial number ████

6. Aircraft Lease Agreement dated as of September 24, 2021, between Wilmington Trust Company (except as otherwise expressly provided therein, acting not in its individual capacity but solely as Owner Trustee for Aircraft ███████ (Delaware) Trust) as lessor and Spirit Airlines, LLC (formerly known as Spirit Airlines, Inc.), as lessee with respect to one Airbus A321-200N aircraft bearing manufacturer's serial number ███;

7. Aircraft Lease Agreement dated as of September 24, 2021, between Wilmington Trust Company (except as otherwise expressly provided therein, acting not in its individual capacity but solely as Owner Trustee for Aircraft ███████ (Delaware) Trust) as lessor and Spirit Airlines, LLC (formerly known as Spirit Airlines, Inc.), as lessee with respect to one Airbus A321-200N aircraft bearing manufacturer's serial number ███;

8. Aircraft Lease Agreement dated as of September 24, 2021, between Wilmington Trust Company (except as otherwise expressly provided therein, acting not in its individual capacity

but solely as Owner Trustee for Aircraft ██████████ (Delaware) Trust) as lessor and Spirit Airlines, LLC (formerly known as Spirit Airlines, Inc.), as lessee with respect to one Airbus A321-200N aircraft bearing manufacturer's serial number ██████;

9.  Aircraft Lease Agreement dated as of September 24, 2021, between Wilmington Trust Company (except as otherwise expressly provided therein, acting not in its individual capacity but solely as Owner Trustee for Aircraft ██████████ (Delaware) Trust) as lessor and Spirit Airlines, LLC (formerly known as Spirit Airlines, Inc.), as lessee with respect to one Airbus A321-200N aircraft bearing manufacturer's serial number ██████; and

10. Aircraft Lease Agreement dated as of September 24, 2021, between Wilmington Trust Company (except as otherwise expressly provided therein, acting not in its individual capacity but solely as Owner Trustee for Aircraft ██████████ (Delaware) Trust) as lessor and Spirit Airlines, LLC (formerly known as Spirit Airlines, Inc.), as lessee with respect to one A321-200N aircraft bearing manufacturer's serial number ████████

## SCHEDULE 2
## (LEASES TO BE REJECTED)

1.  Aircraft Lease Agreement dated as of November 21, 2013, between Wilmington Trust Company (except as otherwise expressly provided therein, acting not in its individual capacity but solely as Owner Trustee for Aircraft ███████ (Delaware) Trust) as lessor and Spirit Airlines, LLC (formerly known as Spirit Airlines, Inc.), as lessee with respect to one Airbus A320-200N aircraft bearing manufacturer's serial number ███

2.  Aircraft Lease Agreement dated as of November 21, 2013, between Wilmington Trust Company (except as otherwise expressly provided therein, acting not in its individual capacity but solely as Owner Trustee for Aircraft ███████ (Delaware) Trust) as lessor and Spirit Airlines, LLC (formerly known as Spirit Airlines, Inc.), as lessee with respect to one Airbus A320-200N aircraft bearing manufacturer's serial number ███;

3.  Aircraft Lease Agreement dated as of November 21, 2013, between Wilmington Trust Company (except as otherwise expressly provided therein, acting not in its individual capacity but solely as Owner Trustee for Aircraft ███████ (Delaware) Trust) as lessor and Spirit Airlines, LLC (formerly known as Spirit Airlines, Inc.), as lessee with respect to one Airbus A320-200N aircraft bearing manufacturer's serial number ███

4.  Aircraft Lease Agreement dated as of November 21, 2013, between Wilmington Trust Company (except as otherwise expressly provided therein, acting not in its individual capacity but solely as Owner Trustee for Aircraft ███████ (Delaware) Trust) as lessor and Spirit Airlines, LLC (formerly known as Spirit Airlines, Inc.), as lessee with respect to one Airbus A320-200N aircraft bearing manufacturer's serial number ███

5.  Aircraft Lease Agreement dated as of November 21, 2013, between Wilmington Trust Company (except as otherwise expressly provided therein, acting not in its individual capacity but solely as Owner Trustee for Aircraft ███████ (Delaware) Trust) as lessor and Spirit Airlines, LLC (formerly known as Spirit Airlines, Inc.), as lessee with respect to one Airbus A320-200N aircraft bearing manufacturer's serial number ███

6.  Aircraft Lease Agreement dated as of September 5, 2018, between Wilmington Trust Company (except as otherwise expressly provided therein, acting not in its individual capacity but solely as Owner Trustee for Aircraft ███████ (Delaware) Trust) as lessor and Spirit Airlines, LLC (formerly known as Spirit Airlines, Inc.), as lessee with respect to one Airbus A320-200N aircraft bearing manufacturer's serial number ███

7.  Aircraft Lease Agreement dated as of September 5, 2018, between Wilmington Trust Company (except as otherwise expressly provided therein, acting not in its individual capacity but solely as Owner Trustee for Aircraft ███████ (Delaware) Trust) as lessor and Spirit Airlines, LLC (formerly known as Spirit Airlines, Inc.), as lessee with respect to one Airbus A320-200N aircraft bearing manufacturer's serial number ███

8.  Aircraft Lease Agreement dated as of September 5, 2018, between Wilmington Trust Company (except as otherwise expressly provided therein, acting not in its individual



capacity but solely as Owner Trustee for Aircraft ██████ (Delaware) Trust) as lessor and Spirit Airlines, LLC (formerly known as Spirit Airlines, Inc.), as lessee with respect to one Airbus A320-200N aircraft bearing manufacturer's serial number ████

9.     Aircraft Lease Agreement dated as of September 5, 2018, between Wilmington Trust Company (except as otherwise expressly provided therein, acting not in its individual capacity but solely as Owner Trustee for Aircraft ██████ (Delaware) Trust) as lessor and Spirit Airlines, LLC (formerly known as Spirit Airlines, Inc.), as lessee with respect to one Airbus A320-200N aircraft bearing manufacturer's serial number ████

10.    Aircraft Lease Agreement dated as of September 5, 2018, between Wilmington Trust Company (except as otherwise expressly provided therein, acting not in its individual capacity but solely as Owner Trustee for Aircraft ██████ (Delaware) Trust) as lessor and Spirit Airlines, LLC (formerly known as Spirit Airlines, Inc.), as lessee with respect to one Airbus A320-200N aircraft bearing manufacturer's serial number ████

11.    Aircraft Lease Agreement dated as of September 5, 2018, between Wilmington Trust Company (except as otherwise expressly provided therein, acting not in its individual capacity but solely as Owner Trustee for Aircraft ██████(Delaware) Trust) as lessor and Spirit Airlines, LLC (formerly known as Spirit Airlines, Inc.), as lessee with respect to one Airbus A320-200N aircraft bearing manufacturer's serial number ████

12.    Aircraft Lease Agreement dated as of September 5, 2018, between Wilmington Trust Company (except as otherwise expressly provided therein, acting not in its individual capacity but solely as Owner Trustee for Aircraft ██████(Delaware) Trust) as lessor and Spirit Airlines, LLC (formerly known as Spirit Airlines, Inc.), as lessee with respect to one Airbus A320-200N aircraft bearing manufacturer's serial number ███

13.    Aircraft Lease Agreement dated as of July 2, 2019, between Wilmington Trust Company (except as otherwise expressly provided therein, acting not in its individual capacity but solely as Owner Trustee for Aircraft ██████ (Delaware) Trust) as lessor and Spirit Airlines, LLC (formerly known as Spirit Airlines, Inc.), as lessee with respect to one Airbus A320-200N aircraft bearing manufacturer's serial number ████

14.    Aircraft Lease Agreement dated as of July 2, 2019, between Wilmington Trust Company (except as otherwise expressly provided therein, acting not in its individual capacity but solely as Owner Trustee for Aircraft ██████ (Delaware) Trust) as lessor and Spirit Airlines, LLC (formerly known as Spirit Airlines, Inc.), as lessee with respect to one Airbus A320-200N aircraft bearing manufacturer's serial number ████

15.    Aircraft Lease Agreement dated as of July 2, 2019, between Wilmington Trust Company (except as otherwise expressly provided therein, acting not in its individual capacity but solely as Owner Trustee for Aircraft ██████ (Delaware) Trust) as lessor and Spirit Airlines, LLC (formerly known as Spirit Airlines, Inc.), as lessee with respect to one Airbus A320-200N aircraft bearing manufacturer's serial number ████

16.    Aircraft Lease Agreement dated as of July 2, 2019, between Wilmington Trust Company (except as otherwise expressly provided therein, acting not in its individual capacity but

solely as Owner Trustee for Aircraft ███████ (Delaware) Trust) as lessor and Spirit Airlines, LLC (formerly known as Spirit Airlines, Inc.), as lessee with respect to one Airbus A320-200N aircraft bearing manufacturer's serial number ████

17.     Aircraft Lease Agreement dated as of July 2, 2019, between Wilmington Trust Company (except as otherwise expressly provided therein, acting not in its individual capacity but solely as Owner Trustee for Aircraft ███████(Delaware) Trust) as lessor and Spirit Airlines, LLC (formerly known as Spirit Airlines, Inc.), as lessee with respect to one Airbus A320-200N aircraft bearing manufacturer's serial number ████

18.     Aircraft Lease Agreement dated as of September 24, 2021, between Wilmington Trust Company (except as otherwise expressly provided therein, acting not in its individual capacity but solely as Owner Trustee for Aircraft ███████ (Delaware) Trust) as lessor and Spirit Airlines, LLC (formerly known as Spirit Airlines, Inc.), as lessee with respect to one Airbus A320-200N aircraft bearing manufacturer's serial number ████

19.     Aircraft Lease Agreement dated as of September 24, 2021, between Wilmington Trust Company (except as otherwise expressly provided therein, acting not in its individual capacity but solely as Owner Trustee for Aircraft ███████(Delaware) Trust) as lessor and Spirit Airlines, LLC (formerly known as Spirit Airlines, Inc.), as lessee with respect to one Airbus A320-200N aircraft bearing manufacturer's serial number ████

20.     Aircraft Lease Agreement dated as of September 24, 2021, between Wilmington Trust Company (except as otherwise expressly provided therein, acting not in its individual capacity but solely as Owner Trustee for Aircraft ███████(Delaware) Trust) as lessor and Spirit Airlines, LLC (formerly known as Spirit Airlines, Inc.), as lessee with respect to one Airbus A321-200N aircraft bearing manufacturer's serial number ████

21.     Aircraft Lease Agreement dated as of September 24, 2021, between Wilmington Trust Company (except as otherwise expressly provided therein, acting not in its individual capacity but solely as Owner Trustee for Aircraft ███████ (Delaware) Trust) as lessor and Spirit Airlines, LLC (formerly known as Spirit Airlines, Inc.), as lessee with respect to one Airbus A321-200N aircraft bearing manufacturer's serial number ████

22.     Aircraft Lease Agreement dated as of September 24, 2021, between Wilmington Trust Company (except as otherwise expressly provided therein, acting not in its individual capacity but solely as Owner Trustee for Aircraft ███████ (Delaware) Trust) as lessor and Spirit Airlines, LLC (formerly known as Spirit Airlines, Inc.), as lessee with respect to one Airbus A321-200N aircraft bearing manufacturer's serial number ████

23.     Aircraft Lease Agreement dated as of September 24, 2021, between Wilmington Trust Company (except as otherwise expressly provided therein, acting not in its individual capacity but solely as Owner Trustee for Aircraft ███████ (Delaware) Trust) as lessor and Spirit Airlines, LLC (formerly known as Spirit Airlines, Inc.), as lessee with respect to one Airbus A321-200N aircraft bearing manufacturer's serial number ████

24.     Aircraft Lease Agreement dated as of September 24, 2021, between Wilmington Trust Company (except as otherwise expressly provided therein, acting not in its individual

capacity but solely as Owner Trustee for Aircraft ▮▮▮▮ (Delaware) Trust) as lessor and Spirit Airlines, LLC (formerly known as Spirit Airlines, Inc.), as lessee with respect to one Airbus A321-200N aircraft bearing manufacturer's serial number ▮▮▮▮

25.    Aircraft Lease Agreement dated as of September 24, 2021, between Wilmington Trust Company (except as otherwise expressly provided therein, acting not in its individual capacity but solely as Owner Trustee for Aircraft ▮▮▮▮ (Delaware) Trust) as lessor and Spirit Airlines, LLC (formerly known as Spirit Airlines, Inc.), as lessee with respect to one Airbus A321-200N aircraft bearing manufacturer's serial number ▮▮▮▮

26.    Aircraft Lease Agreement dated as of September 24, 2021, between Wilmington Trust Company (except as otherwise expressly provided therein, acting not in its individual capacity but solely as Owner Trustee for Aircraft ▮▮▮▮ (Delaware) Trust) as lessor and Spirit Airlines, LLC (formerly known as Spirit Airlines, Inc.), as lessee with respect to one Airbus A321-200N aircraft bearing manufacturer's serial number ▮▮▮▮ and

27.    Aircraft Lease Agreement dated as of September 24, 2021, between Wilmington Trust Company (except as otherwise expressly provided therein, acting not in its individual capacity but solely as Owner Trustee for Aircraft ▮▮▮▮ (Delaware) Trust) as lessor and Spirit Airlines, LLC (formerly known as Spirit Airlines, Inc.), as lessee with respect to one Airbus A321-200N aircraft bearing manufacturer's serial number ▮▮▮▮

## SCHEDULE 3
### (UNDELIVERED LEASES)













**SCHEDULE 4**



**SCHEDULE 5**

## SCHEDULE 6
### APPLICABLE CHANGES TO NEW LEASES

**Schedule I**

**Assumed Leases**

1. Aircraft Lease Agreement dated as of September 24, 2021, between Wilmington Trust Company (except as otherwise expressly provided therein, acting not in its individual capacity but solely as Owner Trustee for Aircraft ▇▇▇▇ (Delaware) Trust) as lessor and Spirit Airlines, LLC (formerly known as Spirit Airlines, Inc.), as lessee with respect to one Airbus A321-200N aircraft bearing manufacturer's serial number ▇▇▇;

2. Aircraft Lease Agreement dated as of September 24, 2021, between Wilmington Trust Company (except as otherwise expressly provided therein, acting not in its individual capacity but solely as Owner Trustee for Aircraft ▇▇▇▇ (Delaware) Trust) as lessor and Spirit Airlines, LLC (formerly known as Spirit Airlines, Inc.), as lessee with respect to one Airbus A321-200N aircraft bearing manufacturer's serial number ▇▇▇

3. Aircraft Lease Agreement dated as of September 24, 2021, between Wilmington Trust Company (except as otherwise expressly provided therein, acting not in its individual capacity but solely as Owner Trustee for Aircraft ▇▇▇▇ (Delaware) Trust) as lessor and Spirit Airlines, LLC (formerly known as Spirit Airlines, Inc.), as lessee with respect to one Airbus A321-200N aircraft bearing manufacturer's serial number ▇▇▇

4. Aircraft Lease Agreement dated as of September 24, 2021, between Wilmington Trust Company (except as otherwise expressly provided therein, acting not in its individual capacity but solely as Owner Trustee for Aircraft ▇▇▇▇ (Delaware) Trust) as lessor and Spirit Airlines, LLC (formerly known as Spirit Airlines, Inc.), as lessee with respect to one Airbus A321-200N aircraft bearing manufacturer's serial number ▇▇▇;

5. Aircraft Lease Agreement dated as of September 24, 2021, between Wilmington Trust Company (except as otherwise expressly provided therein, acting not in its individual capacity but solely as Owner Trustee for Aircraft ▇▇▇▇ (Delaware) Trust) as lessor and Spirit Airlines, LLC (formerly known as Spirit Airlines, Inc.), as lessee with respect to one Airbus A321-200N aircraft bearing manufacturer's serial number ▇▇▇

6. Aircraft Lease Agreement dated as of September 24, 2021, between Wilmington Trust Company (except as otherwise expressly provided therein, acting not in its individual capacity but solely as Owner Trustee for Aircraft ▇▇▇▇ (Delaware) Trust) as lessor and Spirit Airlines, LLC (formerly known as Spirit Airlines, Inc.), as lessee with respect to one Airbus A321-200N aircraft bearing manufacturer's serial number ▇▇▇;

7. Aircraft Lease Agreement dated as of September 24, 2021, between Wilmington Trust Company (except as otherwise expressly provided therein, acting not in its individual capacity but solely as Owner Trustee for Aircraft ▇▇▇▇ (Delaware) Trust) as lessor and Spirit Airlines, LLC (formerly known as Spirit Airlines, Inc.), as lessee with respect to one Airbus A321-200N aircraft bearing manufacturer's serial number ▇▇▇;

8. Aircraft Lease Agreement dated as of September 24, 2021, between Wilmington Trust Company (except as otherwise expressly provided therein, acting not in its individual capacity

9

but solely as Owner Trustee for Aircraft ██████ (Delaware) Trust) as lessor and Spirit Airlines, LLC (formerly known as Spirit Airlines, Inc.), as lessee with respect to one Airbus A321-200N aircraft bearing manufacturer's serial number ████;

9. Aircraft Lease Agreement dated as of September 24, 2021, between Wilmington Trust Company (except as otherwise expressly provided therein, acting not in its individual capacity but solely as Owner Trustee for Aircraft ██████ (Delaware) Trust) as lessor and Spirit Airlines, LLC (formerly known as Spirit Airlines, Inc.), as lessee with respect to one Airbus A321-200N aircraft bearing manufacturer's serial number ████; and

10. Aircraft Lease Agreement dated as of September 24, 2021, between Wilmington Trust Company (except as otherwise expressly provided therein, acting not in its individual capacity but solely as Owner Trustee for Aircraft ██████ (Delaware) Trust) as lessor and Spirit Airlines, LLC (formerly known as Spirit Airlines, Inc.), as lessee with respect to one A321-200N aircraft bearing manufacturer's serial number ██████

Schedule 2

## Rejected Leases

1.    Aircraft Lease Agreement dated as of November 21, 2013, between Wilmington Trust Company (except as otherwise expressly provided therein, acting not in its individual capacity but solely as Owner Trustee for Aircraft ██████ (Delaware) Trust) as lessor and Spirit Airlines, LLC (formerly known as Spirit Airlines, Inc.), as lessee with respect to one Airbus A320-200N aircraft bearing manufacturer's serial number ██████

2.    Aircraft Lease Agreement dated as of November 21, 2013, between Wilmington Trust Company (except as otherwise expressly provided therein, acting not in its individual capacity but solely as Owner Trustee for Aircraft ██████ (Delaware) Trust) as lessor and Spirit Airlines, LLC (formerly known as Spirit Airlines, Inc.), as lessee with respect to one Airbus A320-200N aircraft bearing manufacturer's serial number ████ ;

3.    Aircraft Lease Agreement dated as of November 21, 2013, between Wilmington Trust Company (except as otherwise expressly provided therein, acting not in its individual capacity but solely as Owner Trustee for Aircraft ██████ (Delaware) Trust) as lessor and Spirit Airlines, LLC (formerly known as Spirit Airlines, Inc.), as lessee with respect to one Airbus A320-200N aircraft bearing manufacturer's serial number ██████

4.    Aircraft Lease Agreement dated as of November 21, 2013, between Wilmington Trust Company (except as otherwise expressly provided therein, acting not in its individual capacity but solely as Owner Trustee for Aircraft ██████ (Delaware) Trust) as lessor and Spirit Airlines, LLC (formerly known as Spirit Airlines, Inc.), as lessee with respect to one Airbus A320-200N aircraft bearing manufacturer's serial number ██████

5.    Aircraft Lease Agreement dated as of November 21, 2013, between Wilmington Trust Company (except as otherwise expressly provided therein, acting not in its individual capacity but solely as Owner Trustee for Aircraft ██████ (Delaware) Trust) as lessor and Spirit Airlines, LLC (formerly known as Spirit Airlines, Inc.), as lessee with respect to one Airbus A320-200N aircraft bearing manufacturer's serial number ██████

6.    Aircraft Lease Agreement dated as of September 5, 2018, between Wilmington Trust Company (except as otherwise expressly provided therein, acting not in its individual capacity but solely as Owner Trustee for Aircraft ██████ (Delaware) Trust) as lessor and Spirit Airlines, LLC (formerly known as Spirit Airlines, Inc.), as lessee with respect to one Airbus A320-200N aircraft bearing manufacturer's serial number ██████

7.    Aircraft Lease Agreement dated as of September 5, 2018, between Wilmington Trust Company (except as otherwise expressly provided therein, acting not in its individual capacity but solely as Owner Trustee for Aircraft ██████ (Delaware) Trust) as lessor and Spirit Airlines, LLC (formerly known as Spirit Airlines, Inc.), as lessee with respect to one Airbus A320-200N aircraft bearing manufacturer's serial number ██████

8.    Aircraft Lease Agreement dated as of September 5, 2018, between Wilmington Trust Company (except as otherwise expressly provided therein, acting not in its individual

11

capacity but solely as Owner Trustee for Aircraft  (Delaware) Trust) as lessor and Spirit Airlines, LLC (formerly known as Spirit Airlines, Inc.), as lessee with respect to one Airbus A320-200N aircraft bearing manufacturer's serial number ███

9.      Aircraft Lease Agreement dated as of September 5, 2018, between Wilmington Trust Company (except as otherwise expressly provided therein, acting not in its individual capacity but solely as Owner Trustee for Aircraft ███ (Delaware) Trust) as lessor and Spirit Airlines, LLC (formerly known as Spirit Airlines, Inc.), as lessee with respect to one Airbus A320-200N aircraft bearing manufacturer's serial number ███

10.     Aircraft Lease Agreement dated as of September 5, 2018, between Wilmington Trust Company (except as otherwise expressly provided therein, acting not in its individual capacity but solely as Owner Trustee for Aircraft ███ (Delaware) Trust) as lessor and Spirit Airlines, LLC (formerly known as Spirit Airlines, Inc.), as lessee with respect to one Airbus A320-200N aircraft bearing manufacturer's serial number ███

11.     Aircraft Lease Agreement dated as of September 5, 2018, between Wilmington Trust Company (except as otherwise expressly provided therein, acting not in its individual capacity but solely as Owner Trustee for Aircraft ███(Delaware) Trust) as lessor and Spirit Airlines, LLC (formerly known as Spirit Airlines, Inc.), as lessee with respect to one Airbus A320-200N aircraft bearing manufacturer's serial number ███

12.     Aircraft Lease Agreement dated as of September 5, 2018, between Wilmington Trust Company (except as otherwise expressly provided therein, acting not in its individual capacity but solely as Owner Trustee for Aircraft ███(Delaware) Trust) as lessor and Spirit Airlines, LLC (formerly known as Spirit Airlines, Inc.), as lessee with respect to one Airbus A320-200N aircraft bearing manufacturer's serial number██

13.     Aircraft Lease Agreement dated as of July 2, 2019, between Wilmington Trust Company (except as otherwise expressly provided therein, acting not in its individual capacity but solely as Owner Trustee for Aircraft ███ (Delaware) Trust) as lessor and Spirit Airlines, LLC (formerly known as Spirit Airlines, Inc.), as lessee with respect to one Airbus A320-200N aircraft bearing manufacturer's serial number ███

14.     Aircraft Lease Agreement dated as of July 2, 2019, between Wilmington Trust Company (except as otherwise expressly provided therein, acting not in its individual capacity but solely as Owner Trustee for Aircraft ███ (Delaware) Trust) as lessor and Spirit Airlines, LLC (formerly known as Spirit Airlines, Inc.), as lessee with respect to one Airbus A320-200N aircraft bearing manufacturer's serial number ███

15.     Aircraft Lease Agreement dated as of July 2, 2019, between Wilmington Trust Company (except as otherwise expressly provided therein, acting not in its individual capacity but solely as Owner Trustee for Aircraft ███ (Delaware) Trust) as lessor and Spirit Airlines, LLC (formerly known as Spirit Airlines, Inc.), as lessee with respect to one Airbus A320-200N aircraft bearing manufacturer's serial number ███

16.     Aircraft Lease Agreement dated as of July 2, 2019, between Wilmington Trust Company (except as otherwise expressly provided therein, acting not in its individual capacity but

solely as Owner Trustee for Aircraft ███████ (Delaware) Trust) as lessor and Spirit Airlines, LLC (formerly known as Spirit Airlines, Inc.), as lessee with respect to one Airbus A320-200N aircraft bearing manufacturer's serial number ████

17.    Aircraft Lease Agreement dated as of July 2, 2019, between Wilmington Trust Company (except as otherwise expressly provided therein, acting not in its individual capacity but solely as Owner Trustee for Aircraft ███████(Delaware) Trust) as lessor and Spirit Airlines, LLC (formerly known as Spirit Airlines, Inc.), as lessee with respect to one Airbus A320-200N aircraft bearing manufacturer's serial number ████

18.    Aircraft Lease Agreement dated as of September 24, 2021, between Wilmington Trust Company (except as otherwise expressly provided therein, acting not in its individual capacity but solely as Owner Trustee for Aircraft ███████ (Delaware) Trust) as lessor and Spirit Airlines, LLC (formerly known as Spirit Airlines, Inc.), as lessee with respect to one Airbus A320-200N aircraft bearing manufacturer's serial number ████

19.    Aircraft Lease Agreement dated as of September 24, 2021, between Wilmington Trust Company (except as otherwise expressly provided therein, acting not in its individual capacity but solely as Owner Trustee for Aircraft ███████(Delaware) Trust) as lessor and Spirit Airlines, LLC (formerly known as Spirit Airlines, Inc.), as lessee with respect to one Airbus A320-200N aircraft bearing manufacturer's serial number ████

20.    Aircraft Lease Agreement dated as of September 24, 2021, between Wilmington Trust Company (except as otherwise expressly provided therein, acting not in its individual capacity but solely as Owner Trustee for Aircraft ███████(Delaware) Trust) as lessor and Spirit Airlines, LLC (formerly known as Spirit Airlines, Inc.), as lessee with respect to one Airbus A321-200N aircraft bearing manufacturer's serial number ████

21.    Aircraft Lease Agreement dated as of September 24, 2021, between Wilmington Trust Company (except as otherwise expressly provided therein, acting not in its individual capacity but solely as Owner Trustee for Aircraft ███████ (Delaware) Trust) as lessor and Spirit Airlines, LLC (formerly known as Spirit Airlines, Inc.), as lessee with respect to one Airbus A321-200N aircraft bearing manufacturer's serial number ████

22.    Aircraft Lease Agreement dated as of September 24, 2021, between Wilmington Trust Company (except as otherwise expressly provided therein, acting not in its individual capacity but solely as Owner Trustee for Aircraft ███████ (Delaware) Trust) as lessor and Spirit Airlines, LLC (formerly known as Spirit Airlines, Inc.), as lessee with respect to one Airbus A321-200N aircraft bearing manufacturer's serial number ████

23.    Aircraft Lease Agreement dated as of September 24, 2021, between Wilmington Trust Company (except as otherwise expressly provided therein, acting not in its individual capacity but solely as Owner Trustee for Aircraft ███████ (Delaware) Trust) as lessor and Spirit Airlines, LLC (formerly known as Spirit Airlines, Inc.), as lessee with respect to one Airbus A321-200N aircraft bearing manufacturer's serial number ████

24.    Aircraft Lease Agreement dated as of September 24, 2021, between Wilmington Trust Company (except as otherwise expressly provided therein, acting not in its individual

capacity but solely as Owner Trustee for Aircraft ███████ (Delaware) Trust) as lessor and Spirit Airlines, LLC (formerly known as Spirit Airlines, Inc.), as lessee with respect to one Airbus A321-200N aircraft bearing manufacturer's serial number ███

25.    Aircraft Lease Agreement dated as of September 24, 2021, between Wilmington Trust Company (except as otherwise expressly provided therein, acting not in its individual capacity but solely as Owner Trustee for Aircraft ███████ (Delaware) Trust) as lessor and Spirit Airlines, LLC (formerly known as Spirit Airlines, Inc.), as lessee with respect to one Airbus A321-200N aircraft bearing manufacturer's serial number ███

26.    Aircraft Lease Agreement dated as of September 24, 2021, between Wilmington Trust Company (except as otherwise expressly provided therein, acting not in its individual capacity but solely as Owner Trustee for Aircraft ███████ (Delaware) Trust) as lessor and Spirit Airlines, LLC (formerly known as Spirit Airlines, Inc.), as lessee with respect to one Airbus A321-200N aircraft bearing manufacturer's serial number ███ and

27.    Aircraft Lease Agreement dated as of September 24, 2021, between Wilmington Trust Company (except as otherwise expressly provided therein, acting not in its individual capacity but solely as Owner Trustee for Aircraft ███████ (Delaware) Trust) as lessor and Spirit Airlines, LLC (formerly known as Spirit Airlines, Inc.), as lessee with respect to one Airbus A321-200N aircraft bearing manufacturer's serial number ███