**Hearing Date and Time: 11:00 a.m.[1] on November 10, 2025**
**Objection Deadline: 4:00 p.m. on October 31, 2025**

DEBEVOISE & PLIMPTON LLP
66 Hudson Boulevard
New York, New York 10001
Tel.: (212) 909-6000
Jasmine Ball
Elie J. Worenklein

*Proposed Fleet Counsel to the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| **SPIRIT AVIATION HOLDINGS, INC.,** *et al.*, | Case No. 25-11897 (SHL) |
| Debtors.[2] | Jointly Administered |

**NOTICE OF HEARING ON MOTION FOR ENTRY**
**OF AN ORDER (I) APPROVING THE RESTRUCTURING TERM**
**SHEET WITH CARLYLE AVIATION MANAGEMENT LIMITED,**
**(II) AUTHORIZING AND APPROVING THE AMENDMENT AND ASSUMPTION**
**OF CERTAIN AIRCRAFT AGREEMENTS, AND (III) GRANTING RELATED RELIEF**

    **PLEASE TAKE NOTICE** that, on October 17, 2025, the above-captioned debtors and debtors in possession (the "**Debtors**") filed the *Motion for Entry of an Order (I) Approving the Restructuring Term Sheet with Carlyle Aviation Management Limited, (II) Authorizing and Approving the Amendment and Assumption of Certain Aircraft Agreements, and (iii) Granting Related Relief* (the "**Motion**").

    **PLEASE TAKE FURTHER NOTICE** that a hearing (the "**Hearing**") has been scheduled for **11:00 a.m. on November 10, 2025**, before the Honorable Sean H. Lane, United States Bankruptcy Judge, in the United States Bankruptcy Court for the Southern District of New York (the "**Court**"), to consider the relief requested in this Motion.

---

[1]  All times herein and in the Carlyle Motion (as defined below) are expressed in prevailing Eastern Time.

[2]  The Debtors' names and last four digits of their respective employer identification numbers are as follows: Spirit Aviation Holdings, Inc. (1797); Spirit Airlines, LLC (7023); Spirit Finance Cayman 1 Ltd. (7020); Spirit Finance Cayman 2 Ltd. (7362); Spirit IP Cayman Ltd. (4732); and Spirit Loyalty Cayman Ltd. (4752). The Debtors' mailing address is 1731 Radiant Drive, Dania Beach, FL 33004.

**PLEASE TAKE FURTHER NOTICE** that the Hearing will be conducted via Zoom for Government. Parties wishing to appear at or attend the Hearing (whether "live" or "listen only") are required to register their appearance at https://ecf.nysb.uscourts.gov/cgi-bin/nysbAppearances.pl by **4:00 p.m. on November 9, 2025**. Instructions and additional information about the Court's remote attendance procedures can be found at https://www.nysb.uscourts.gov/ecourt-appearances.  The Court will circulate by email the Zoom link to the Hearing to those parties who properly made an electronic appearance prior to the Hearing.

**PLEASE TAKE FURTHER NOTICE** that the Hearing may be continued or adjourned from time to time by an announcement of the adjourned date or dates at the Hearing or a later hearing or by filing a notice with the Court.

**PLEASE TAKE FURTHER NOTICE** that responses or objections to the relief requested at the Hearing shall be (a) in writing, in English, and in text-searchable format, (b) filed with the Court electronically, and (c) served on the Debtors and the Notice Parties (as defined in the Motion) so as to be received no later than **4:00 p.m. on October 31, 2025** (the "**Objection Deadline**"), in each case, in accordance with the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**"), the Court's Order Implementing Certain Notice and Case Management Procedures [ECF No. 61], and the Court's Chambers' Rules (available at https://www.nysb.uscourts.gov/content/judge-sean-h-lane), to the extent applicable.

**PLEASE TAKE FURTHER NOTICE** that all objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted upon default.

**PLEASE TAKE FURTHER NOTICE** that, if no responses or objections are timely filed and served with respect to the Motion, the Debtors may, on or after the Objection Deadline, submit to the Court an order, substantially in the form of the proposed order attached to the Motion, under certification of counsel or certification of no objection, which order may be entered by the Court without further notice or opportunity to be heard.

**PLEASE TAKE FURTHER NOTICE** that copies of the Motion and any other document filed publicly in the above-captioned proceedings are available free of charge at https://dm.epiq11.com/SpiritAirlines.

Dated: October 17, 2025
New York, New York

By: /s/ Jasmine Ball
Jasmine Ball
Elie J. Worenklein
DEBEVOISE & PLIMPTON LLP
66 Hudson Boulevard East
New York, New York 10001
Tel.: (212) 909-6000

*Proposed Fleet Counsel to the Debtors and Debtors in Possession*

DEBEVOISE & PLIMPTON LLP
66 Hudson Boulevard
New York, New York 10001
Tel.: (212) 909-6000
Jasmine Ball
Elie J. Worenklein

*Proposed Fleet Counsel to the Debtors and
Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **SPIRIT AVIATION HOLDINGS, INC.**, *et al.*, | **Case No. 25-11897 (SHL)** |
| **Debtors.**[1] | **Jointly Administered** |

### MOTION FOR ENTRY OF AN ORDER (I) APPROVING THE RESTRUCTURING TERM SHEET WITH CARLYLE AVIATION MANAGEMENT LIMITED, (II) AUTHORIZING AND APPROVING THE AMENDMENT AND ASSUMPTION OF CERTAIN AIRCRAFT AGREEMENTS, AND (III) GRANTING RELATED RELIEF

Spirit Aviation Holdings, Inc. and its subsidiaries (collectively, the "**Debtors**"), each of which is a debtor and debtor in possession in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), hereby file this *Motion for Entry of an Order (I) Approving the Restructuring Term Sheet with Carlyle Aviation Management Limited, (II) Authorizing and Approving the Amendment and Assumption of Certain Aircraft Agreements, and (III) Granting Related Relief* (this "**Motion**"). This Motion is supported by the *Declaration of Fred Cromer in Support of (A) the Motion for*

---

[1]     The Debtors' names and last four digits of their respective employer identification numbers are as follows: Spirit Aviation Holdings, Inc. (1797); Spirit Airlines, LLC (7023); Spirit Finance Cayman 1 Ltd. (7020); Spirit Finance Cayman 2 Ltd. (7362); Spirit IP Cayman Ltd. (4732); and Spirit Loyalty Cayman Ltd. (4752). The Debtors' mailing address is 1731 Radiant Drive, Dania Beach, FL 33004.

*Entry of an Order (I) Approving the Restructuring Term Sheet with Carlyle Aviation Management Limited, (II) Authorizing and Approving the Amendment and Assumption of Certain Aircraft Agreements, and (III) Granting Related Relief and (B) the Related Sealing Motion* (the "**Cromer Declaration**") filed contemporaneously herewith and incorporated herein by reference.  In further support of this Motion, the Debtors respectfully state as follows:

### Relief Requested

1.      By this Motion, and pursuant to sections 105(a), 362, 363, 365, 502, 503, 507 and 1110(a) of title 11 of the United States Code (the "**Bankruptcy Code**") and rules 6004 and 9019 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "**Proposed Order**"), (a) approving the restructuring term sheet attached to the Proposed Order as Exhibit 1 (together with the exhibits and other attachments thereto, the "**Restructuring Term Sheet**") between the Debtors and Carlyle Aviation Management Limited, not in its individual capacity, but solely as servicer ("**Carlyle**"), on behalf of the Lessors (as defined in the Restructuring Term Sheet) of the aircraft equipment covered by the Restructuring Term Sheet, (b) authorizing the Debtors to amend and assume certain Leases (as defined below) and (c) granting related relief.

### Jurisdiction and Venue

2.      The United States Bankruptcy Court for the Southern District of New York (the "**Court**") has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference M-431*, dated January 31, 2012 (Preska, C.J.).

3.      This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b). The Debtors confirm their consent to the entry of a final order by the Court in connection with this Motion.

4.      Venue of the Chapter 11 Cases and related proceedings is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

5.      On August 29, 2025 (the "**Petition Date**"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors remain in possession of their property and continue to operate and manage their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Chapter 11 Cases are being jointly administered, for procedural purposes only, pursuant to Bankruptcy Rule 1015(b), as ordered by the Court [ECF No. 35].

6.      On September 17, 2025, the United States Trustee for the Southern District of New York (the "**U.S. Trustee**") appointed an Official Committee of Unsecured Creditors (the "**Committee**") pursuant to section 1102 of the Bankruptcy Code [ECF No. 117].

7.      Additional information about the events leading up to the Petition Date and the Debtors' businesses, affairs, capital structure, and prepetition indebtedness can be found in the *Declaration of Fred Cromer in Support of the Chapter 11 Proceedings and First Day Pleadings* [ECF No. 19] (the "**First Day Declaration**").[2]

## Preliminary Statement

8.      As the Court is aware, the Debtors commenced these Chapter 11 Cases to utilize the tools of chapter 11 to realize substantial operational improvements and position the Company for long-term growth.  At the core of these operational improvement initiatives is the Company's

---

[2]    Capitalized terms used but not defined herein shall have the meanings set forth in the First Day Declaration, the Motion, or the Restructuring Term Sheet, as applicable.

fleet optimization process.  The Debtors, with the assistance of their advisors, are undertaking a comprehensive analysis of the Company's go-forward fleet needs, with the goals of achieving considerable cost savings and aligning the fleet to match capacity with profitable demand.

9.      The Restructuring Term Sheet and the transactions embodied therein between the Debtors and Carlyle, on behalf of the Lessors, are key steps in that process.  As noted on the record during the September 30, 2025, hearing, the Debtors hope that other aircraft lessors and lenders will likewise engage in constructive negotiations with respect to the Debtors' go-forward fleet needs.  In the instant case, the Restructuring Term Sheet contemplates the amendment and later assumption of certain leases (collectively, the "**Leases**") for five (5) Airbus A320-200 aircraft (the "**Aircraft**"), each equipped with IAE V2500 (Select) Engines (the "**Engines**").  The agreement to consensually amend and, absent the occurrence of a Material Change Condition (as defined in the Restructuring Term Sheet), assume the Leases by the Assumption Effective Date (as defined in the Restructuring Term Sheet), enables the Debtors to retain the Aircraft that the Debtors require for their revitalized fleet, while providing key flexibility if certain events occur prior to the Assumption Effective Date.  The Restructuring Term Sheet also settles certain claims with the Lessors, avoiding potential costly fights with the Lessors with respect to claims, events of default or other breaches that may have occurred.  In addition, and importantly, pursuant to the Restructuring Term Sheet, the Lessors have committed to a significant liquidity infusion in respect of certain maintenance events with respect to the Engines of up to ███████ in total, which will provide meaningful funding to the Debtors in these Chapter 11 Cases and assist in the continued operation of the Debtors' business.  Moreover, the amendments to the Leases will assist the Debtors with their fleet optimization process by providing additional flexibility with regards to certain commercial terms, including lease duration, rental rates, security deposits and maintenance

4

obligations.  In sum, the Restructuring Term Sheet, if approved by this Motion, will serve to bolster the Debtors' efforts to construct an efficient and dependable fleet that aligns with the Debtors' revised business plan.

10.     More generally, the Restructuring Term Sheet sets the Debtors and their business on a path to achieve the goals set forth at the outset of the Chapter 11 Cases.  Together with the recently filed settlement with AerCap Ireland Limited [ECF No. 135] and the Debtors' first omnibus motion to reject certain aircraft leases [ECF No. 204], the Debtors hope that this settlement with Carlyle will serve as a roadmap and a catalyst for additional settlements as the Debtors seek to reposition and optimize their go-forward fleet.  Accordingly, for the reasons set forth herein, the Debtors submit that the Motion should be granted and the Restructuring Term Sheet should be approved.

### The Debtors' Prepetition Agreements with Carlyle

11.     As further described in the First Day Declaration, the Debtors fly only single-aisle Airbus aircraft, which are commonly referred to as "A320 family" aircraft.  On September 28, 2012, and October 22, 2012, the Debtors originally entered into the Leases and related documents with the Lessors in respect of the Aircraft.  The leasing of the Aircraft continued in an orderly fashion through the Petition Date.  Thereafter, Carlyle on behalf of the Lessors and the Debtors mutually engaged in constructive and arm's-length discussions to negotiate a go-forward plan with respect to the Aircraft and Engines and the Leases to which they are subject.

12.     The Restructuring Term Sheet, if approved, will provide the Debtors with amended commercially reasonable and beneficial terms for the Aircraft, which will serve as an important component of the Debtors' fleet for years to come.  By settling the improved go-forward terms for

5

the Leases with the Lessors, the Debtors will receive an extra liquidity infusion in 2026 and are spared the expense and uncertainty of protracted negotiations and potential litigation with respect to the terms and potential continued use of the Aircraft.  In exchange, as part of the negotiated transaction, including the assumption of the amended Leases and certain concessions from the Lessors, the Debtors agreed to provide the Lessors with an allowed general unsecured claim against the Debtors in an amount equal to 80% of the Lessor Contributions to be provided pursuant to the Restructuring Term Sheet.

13.    Were it not for the Restructuring Term Sheet, the Debtors' fleet optimization process may have necessitated the rejection of all or a portion of the Leases.  This may have resulted in disputes regarding (a) the enforceability of and cure requirements associated with any event of default provisions in the Leases, (b) potential significant rejection damages claims, and (c) disputes regarding the return conditions.  The 60-day timeframe prescribed under Section 1110 of the Bankruptcy Code would have brought these issues to the fore in the immediate term, creating a costly distraction at this critical juncture of the Chapter 11 Cases.  The Restructuring Term Sheet, if approved, will spare the Debtors from expending significant costs and resources litigating these issues, while also providing the Debtors with the optionality to use the Aircraft to generate additional revenue pending the Assumption Effective Date.

## The Restructuring Term Sheet

14.    The Restructuring Term Sheet provides for, among other things, (a) the amendment of the Leases to account for a liquidity infusion in connection with certain maintenance events with regards to the Engines and additional flexibility with respect to the lease terms for the Aircraft, (b) reduction of rent and security deposits, and (c) the near-term assumption of the Leases on favorable terms to the Debtors and consensual agreement of cure obligations associated therewith. A summary of the key terms of the settlement is set forth in the table below:

| Term[3] | Detail |
|---|---|
| *Lessor Contribution for Engine Shop Visits* | With respect to each Engine, Lessor to contribute an amount equal to U.S. ██ million per next occurring Performance Restoration Shop Visit ("**Second PRSV Event**" and each such contribution, a "**Lessor Contribution**"), totaling a maximum of U.S. ██ million across the five Aircraft.  The Lessor Contribution for each Engine will be paid ████████████████████████████████████████████████ The "Payment Date" means the third business day following the earlier to occur of (x) the date of Spirit's emergence from the Chapter 11 Cases pursuant to a chapter 11 plan of reorganization and ████████████████████████████ |
| *Lease Extensions* | Lease terms for Aircraft with the serial numbers ████████ (each, a "**Specified Aircraft**" and collectively, the "**Specified Aircraft**") shall be extended for ██████ (the "**Extension Term**") at a reduced monthly rent per Specified Aircraft. |
| *Additional Lease Extension Option* | Lease for each Aircraft shall be amended to add an extension option for the Debtors, ████████████████████████ |

---

3    The terms set forth in this table (the "**Summary Table**") are intended to be summary in nature.  To the extent of any conflicts between the terms set forth in the Summary Table and the provisions of the Restructuring Term Sheet, the Restructuring Term Sheet shall govern.  Capitalized terms used in the Summary Table but not otherwise defined therein or in the Motion shall have the meanings ascribed to such terms in the Restructuring Term Sheet.

| | |
|---|---|
| ***Section 1110(a) Election*** | Upon the earlier of (i) the approval of this transaction by the Bankruptcy Court and (ii) October 27, 2025 (such earlier date, the "**Election Date**"), Debtors shall make an election under section 1110(a)(2) of the Bankruptcy Code, pursuant to which the Debtors shall agree to perform all obligations under each of the five (5) Leases (as amended to the extent contemplated in the Restructuring Term Sheet, if the approval of this transaction by the Bankruptcy Court has occurred before October 27, 2025) and cure all defaults (other than any *ipso facto* default) arising under any such Lease (as amended to the extent contemplated in the Restructuring Term Sheet, if the approval of this transaction by the Bankruptcy Court has occurred before October 27, 2025). |
| ***Lease Assumptions*** | On the Assumption Effective Date (as defined in the Restructuring Term Sheet), each amended Lease shall automatically, without further court order, be assumed by the Debtors under section 365 of the Bankruptcy Code; provided that nothing in the Restructuring Term Sheet shall be deemed to restrict or impair the Debtors' right to reject any Lease for an Aircraft if a Material Change Condition (as defined in the Restructuring Term Sheet) occurs prior to the Assumption Effective Date. If an Aircraft is rejected in accordance with the Restructuring Term Sheet, the Debtors shall be responsible for [REDACTED] |
| ***Other Terms*** | All other lease conditions not amended as provided in the Restructuring Term Sheet are to remain as originally provided in the Leases. |

| | |
|---|---|
| **Unsecured Claims** | Lessor shall have an allowed general unsecured claim against the Debtors in the amount set forth in the Restructuring Term Sheet. |
| **Return Conditions** | In the event of any rejection of any Lease of any Aircraft and related equipment (together with all constituent equipment, parts and appurtenances thereto, "**Rejected Aircraft**"), Debtors shall use their reasonable commercial efforts to comply with the return procedures set forth in Exhibit C to the Restructuring Term Sheet. |
| **Other Terms and Conditions** | Arrears of scheduled rent (if any) during the bankruptcy period are to be fully repaid on or about October 27, 2025. ██████████████████████████████████ ██████████████████████████████████ The Bankruptcy Court shall enter an order consistent with the Restructuring Term Sheet and otherwise acceptable to Carlyle (the "**Approval Order**") no later than October 31, 2025 (or such later date as the parties may mutually agree). |

**Basis for Relief**

**A.    The Court Should Authorize the Debtors' Amendments to the Leases**

15.    Section 363(b)(1) of the Bankruptcy Code empowers the Court to allow a debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). A debtor's decision to use, sell, or lease assets outside the ordinary course of business must be based upon the sound business judgment of the debtor. *See In re Chateaugay Corp.*, 973 F.2d 141, 143 (2d Cir. 1992) (holding that a judge determining a section 363(b) application must find from the evidence presented before him a good business reason to grant such application); *see also Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983) (same); *In re GOL Linhas Aereas Inteligentes S.A.*, 661 B.R. 330, 339 (Bankr. S.D.N.Y. 2024) ("To approve the use of estate property under section 363(b)(1) of the Bankruptcy Code, the Second Circuit requires a debtor to show that the decision was based on the

debtor's sound business judgment."); *In re Glob. Crossing Ltd.*, 295 B.R. 726, 743 (Bankr. S.D.N.Y. 2003).

16.    The business judgment rule is satisfied "when the following elements are present: (1) a business decision, (2) disinterestedness, (3) due care, (4) good faith, and (5) according to some courts and commentators, no abuse of discretion or waste of corporate assets." *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992), appeal dismissed, 3 F.3d 49 (2d Cir. 1993) (internal quotations omitted).  In fact, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *Comm. of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986). Once the debtor articulates sound business reasons, "a strong presumption arises" that the debtor's directors are acting in the best interest of the company and thus that the court should approve the transaction.  *In re GOL Linhas Aereas Inteligentes S.A.*, 661 B.R. at 339.  Courts in this district have consistently and appropriately been loath to interfere with corporate decisions absent a showing of bad faith, self-interest, or gross negligence and will uphold a board's decisions as long as they are attributable to any "rational business purpose." *In re Integrated Res. Inc.*, 147 B.R. at 656.

17.    The Debtors respectfully submit that the amendments to the Leases represent a sound exercise of their business judgment and are justified under section 363(b) of the Bankruptcy Code.  The Debtors have determined that (a) the extra liquidity to be provided by the Lessors in 2026, (b) the reduction of rent and security deposits for the Leases, and (c) additional flexibility with respect to the terms of the Leases for the Aircraft, will provide significant value to the

Debtors, and will appropriately fit the needs of the Debtors and their reorganized fleet. *See* Cromer
Decl. ¶ 8-9. Moreover, entry into the amended Leases (in accordance with the terms of the
Restructuring Term Sheet) will memorialize the settlement by, among other things, providing the
Debtors with the ability to utilize the Aircraft and the flexibility to determine whether to retain the
Aircraft pursuant to the amended Leases if a Material Change Condition occurs prior to the
Assumption Effective Date. *See* Cromer Decl. ¶ 7, 9. Without the amendments to the Leases, the
Debtors may have to reject the Leases, thereby losing the ability to continue their productive
relationship with Carlyle and the Lessors in connection with the five Aircraft that would otherwise
make up a crucial component of the Debtors' go-forward fleet. *See* Cromer Decl. ¶ 12.
Accordingly, the Debtors request that the Court authorize the Debtors' entry into the amendments
to the Leases.

## B. The Court Should Authorize the Assumption of the Amended Leases Under Sections 365(a) and 105(a) of the Bankruptcy Code

18.    Section 365 of the Bankruptcy Code allows a debtor in possession (with bankruptcy
court approval) to maximize the value of its estates by, among other things, assuming and rejecting
executory contracts and unexpired leases. 11 U.S.C. § 365(a); *see also In re Avianca Holdings SA,*
127 F.4th 414, 420 (2d Cir. 2025); *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 521 (1984); *Orion
Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1098 (2d
Cir. 1993). An executory contract is a "contract under which the obligation of both the bankrupt
and the other party to the contract are so far unperformed that the failure of either to complete
performance would constitute a material breach excusing performance of the other." *Sharon Steel
Corp. v. Nat'l Fuel Gas Distribution Corp.*, 872 F.2d 36, 39 (3d Cir. 1989) (internal citations
omitted); *see also In re Keren Ltd. P'ship*, 225 B.R. 303, 307 (S.D.N.Y. 1997), *aff'd*, 189 F.3d 86
(2d Cir. 1999) (same).

19.     In determining whether to permit a debtor to assume or reject a contract or lease, "the debtor's interests are paramount." C*OR Route 5 Co. v. Penn Traffic Co. (In re Penn Traffic Co.)*, 524 F.3d. 373, 383 (2d Cir. 2008).  Accordingly, the decision to assume or reject an executory contract or unexpired lease is governed by the business judgment rule, which requires that a debtor determine that the requested assumption would be beneficial to its estates.  *See Mission Prod. Holdings, Inc. v. Tempnology, LLC,* 587 U.S. 370, 374 (2019) (noting that "bankruptcy court will generally approve [the debtor's] choice [to assume or assign a contract], under the deferential 'business judgment' rule."); *In re Penn Traffic*, 524 F.3d at 383; *In re Old Carco LLC*, 406 B.R. 180, 188 (Bankr. S.D.N.Y. 2009); *In re Helm*, 335 B.R. 528, 538 (Bankr. S.D.N.Y. 2006); *In re MF Global Inc.*, No. 11-2790, 2011 WL 6792758, at *2 (Bankr. S.D.N.Y. Dec. 20, 2011) ("The assumption or rejection of an executory contract may be approved if such action would benefit the debtor's estate and is an exercise of sound business judgment."); *Sharon Steel*, 872 F.2d at 40.  A debtor's decision to assume an executory contract or unexpired lease based on its business judgment will generally not be disturbed absent a showing of "bad faith or abuse of business discretion." *In re Old Carco*, 406 B.R. at 188 (quoting *In re G Survivor Corp.*, 171 B.R. 755, 757 (Bankr. S.D.N.Y. 1994), *aff'd sub nom. John Forsyth Co., Inc. v. G Licensing, Ltd.*, 187 B.R. 111 (S.D.N.Y. 1995)).  The party "opposing the proposed exercise of a debtor's business judgment [has] the burden of rebutting the presumption of validity." *See In re 8 West 58TH Street Hospitality, LLC,* No. Case No. 14–11524-SHL, 2017 WL 3575856, at *3 (Bankr. S.D.N.Y. August 4, 2017) (quoting *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993)).

20.     Upon finding that the debtor has exercised its sound business judgment in determining that the assumption or rejection of a contract or lease is in the best interests of the debtor, its creditors, and all parties in interest, the court should approve the assumption or rejection under section 365(a) of the Bankruptcy Code. *See, e.g., In re Child World, Inc.*, 142 B.R. 87, 89 (Bankr. S.D.N.Y. 1992); *In re Gucci*, 193 B.R. at 417.  Moreover, section 105(a) of the Bankruptcy Code confers the Court with broad equitable powers to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

21.     The Debtors respectfully submit that the relief requested herein is fair, equitable, reasonable, and in the best interests of the Debtors' estates and is, thus, justified under sections 365(a) and 105(a) of the Bankruptcy Code.  As described above and in the Cromer Declaration, the assumption of the amended Leases as set forth in the Restructuring Term Sheet is an integral component of the overall settlement and the Debtors' broader restructuring strategy. *See* Cromer Decl. ¶ 10, 12.  The settlement between the Debtors and Carlyle  represents a positive step forward in the Debtors' fleet optimization efforts by amending the Leases to provide extra liquidity and favorable terms and assuming the amended Leases to provide certainty with respect to the Debtors' go-forward fleet. *See* Cromer Decl. ¶ 9.  Importantly, the Restructuring Term Sheet provides that nothing therein shall be deemed to restrict or impair the Debtors' ability to reject any Lease prior to the Assumption Effective Date if a Material Change Condition occurs.  *Id*.  This flexibility to make a determination whether to assume the amended Leases through the Assumption Effective Date if the direction of the Debtors' Chapter 11 Cases changes materially during that time period provides a significant benefit to the Debtors as they continue their fleet optimization process and in light of the uncertainty regarding the Debtors' exit strategy at this early stage of the cases.  *Id*.

22.     In light of the foregoing, the Debtors respectfully submit that the assumption of the amended Leases as set forth in the Restructuring Term Sheet, (a) is the result of the Debtors exercising their sound business judgment in accordance with their fiduciary duties, (b) is in the best interests of their estates and economic stakeholders, and (c) further serves to maximize value for the benefit of all creditors.    Accordingly, the Debtors respectfully request that the Court authorize the Debtors to assume the amended Leases.

## C.  The Court Should Approve the Settlement of Claims Under Bankruptcy Rule 9019

23.     By this Motion, the Debtors seek approval of the Restructuring Term Sheet between the Debtors and Carlyle pursuant to Bankruptcy Rule 9019.    The Debtors and Carlyle engaged in good-faith negotiations at arm's length, which led to the Restructuring Term Sheet that settles potentially costly disputes with Carlyle on behalf of the Lessors and provides the Debtors with significant benefits. *See* Cromer Decl. ¶ 6-7, 10.

24.     Generally, "settlements or compromises are favored in bankruptcy and, in fact, encouraged." *In re Wythe Berry Fee Owner LLC*, 660 B.R. 534, 554 (Bankr. S.D.N.Y. 2024). Indeed, courts in this district have made clear that "[a]s a general matter, 'settlements and compromises are favored in bankruptcy as they minimize costly litigation and further parties' interests in expediting the administration of the bankruptcy estate.'" *In re Republic Airways Holdings, Inc.*, 2016 WL 2616717, No. 16-10429 (SHL) at *3 (Bankr. S.D.N.Y. May 4, 2016) (*citing In re Dewey & LeBouef LLP*, 478 B.R. 626, 640 (Bankr. S.D.N.Y. 2012)); *In re Wythe Berry*, 660 B.R. at 536 ("Settlements are welcome in bankruptcy because they prevent costly litigation between parties and contribute to the efficient administration of the bankruptcy estate."); *see also Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 455 (2d Cir. 2007) (stating that settlements "help clear a path for the efficient administration of the bankrupt estate").

14

25.     Under Bankruptcy Rule 9019 and governing case law, a court should approve a compromise or settlement where it makes an independent determination that the compromise or settlement is fair and equitable, reasonable, and in the best interests of the debtor's estate. *See, e.g., In re Republic Airways*, 2016 WL 2616717 at *3; *see also In re Genesis Glob. Holdco, LLC*, 2023 WL 6543250, at *5 (Bankr. S.D.N.Y. Oct. 6, 2023). In so doing, a court may consider the opinions of the trustee or debtor in possession that the settlement is fair and equitable. *See In re Wythe Berry,* 660 B.R. at 555 ("the court may give weight to the informed judgments of the trustee or debtor-in-possession and their counsel that a compromise is fair and equitable."). In assessing whether to approve a settlement, a court need not decide the issues of law and fact raised by the settlement, but rather should "canvass the issues and see whether the settlement fall[s] below the lowest point in the range of reasonableness." *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983) (alteration in original) (citations and quotations omitted).

26.     Courts in the Second Circuit have described the following seven interrelated factors that a bankruptcy court should consider in exercising its discretion under Rule 9019: (1) the balance between the litigation's possibility of success and the settlement's future benefits; (2) the likelihood of complex and protracted litigation, with its attendant expense, inconveniences, and delay; (3) the paramount interest of the creditors; (4) whether other parties in interest affirmatively support the proposed settlement; (5) the nature and breadth of releases to be obtained by officers and directors; (6) whether the competency and experience of counsel support the settlement; and (7) the extent to which the settlement is the product of arm's-length bargaining. *See In re Iridium Operating LLC*, 478 F.3d 452, 462 (2d Cir. 2007); *see also In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 427 (S.D.N.Y. 1993), aff'd, 17 F.3d 600 (2d Cir. 1994). When assessing a global settlement

15

of claims, "[t]he appropriate inquiry is whether the [s]ettlement [a]greement is in its entirety appropriate for the [] estate." *Id.* at 430 (emphasis added).

27.    The Debtors respectfully submit that the *Iridium* factors weigh overwhelmingly in favor of approval of the amendments and compromises contained in the Restructuring Term Sheet. The first and second *Iridium* factors—the likelihood of success on the merits of the various claims at issue balanced with the settlement's future benefits, and the likelihood and burdens of protracted litigation—weigh heavily in favor of the Debtors.   The Restructuring Term Sheet represents a settlement of potential claims as part of an overall deal between the Debtors and Carlyle on behalf of the Lessors regarding the go-forward terms of the Leases. *See* Cromer Decl. ¶ 10.  A breach of the Leases, beyond exposing the Debtors to costly litigation on various complex issues, would also delay or prevent the Debtors from achieving certainty and beneficial terms for their continued use of the Aircraft.  *Id.*  Weighing the uncertainty of success on the merits against the value provided by the compromise embodied in the Restructuring Term Sheet, the Debtors believe that the transactions and settlement of claims contained in the Restructuring Term Sheet are highly favorable to the Debtors and their constituents. *See* Cromer Decl. ¶ 10, 12.  On the third factor, the settlement benefits the interest of creditors by supporting and progressing the Debtors' fleet optimization process, injecting liquidity into the Debtors' business over time, and avoiding the cost and distraction of protracted litigation, each of which are essential to the Debtors' broader restructuring efforts. *See* Cromer Decl. ¶ 8-10, 12.  Moreover, the Debtors are hopeful that the settlement with Carlyle on behalf of the Lessors will motivate other lessors to likewise engage in good faith negotiations regarding the treatment of their aircraft and leases. *See* Cromer Decl. ¶ 11. The fifth factor is inapplicable, as the Restructuring Term Sheet does not contemplate releases to be obtained by directors and officers.  And the sixth and seventh factors indisputably weigh in

favor of approval, as the amendments to the Leases contained in the Restructuring Term Sheet are

the product of arm's-length bargaining amongst parties represented by highly experienced counsel.

*See* Cromer Decl. ¶ 6.

28.     In sum, viewed in its entirety, the settlement of claims and disputes integrated into

the commercial compromises between the Debtors and Carlyle on behalf of the Lessors as

provided in the Restructuring Term Sheet is entirely appropriate and is far above the lowest range

of reasonableness. *See* Cromer Decl. ¶ 12.  Accordingly, the Debtors respectfully request that the

Court approve the Restructuring Term Sheet.

### Waiver of Bankruptcy Rule 6004(h)

29.     To implement successfully the relief sought herein, the Debtors request that, to the

extent applicable to the relief requested in this Motion, the Court waive the stay imposed by

Bankruptcy Rule 6004(h), which provides that "[u]nless the court orders otherwise, an order

authorizing the use, sale, or lease of property (other than cash collateral) is stayed for 14 days after

the order is entered."  Fed. R. Bankr. P. 6004(h).  As described above, the relief requested in this

Motion is necessary for the Debtors to operate their businesses without interruption and to preserve

and maximize value for their estates and parties in interest.  Accordingly, the Debtors respectfully

submit that ample cause exists to justify waiving the 14-day stay imposed by Bankruptcy Rule

6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

### Notice

30.     Notice of this Motion will be provided to the following parties (or their counsel)

(collectively, the "**Notice Parties**"):  (a) the U.S. Trustee; (b) the Committee; (c) certain holders

of the Debtors' secured notes; (d) each agent or trustee under the Debtors' secured notes indenture

or revolving credit facility; (e) Carlyle; and (f) any other party that is entitled to notice under the

17

Court's *Order Implementing Certain Notice and Case Management Procedures* [ECF No. 61].  A copy of this Motion and any order entered in respect thereto will also be made available on the Debtors' case information website located at https://dm.epiq11.com/SpiritAirlines.  Based on the circumstances surrounding this Motion and the nature of the relief requested herein, the Debtors respectfully submit that no other or further notice is required.

*[Remainder of page intentionally left blank]*

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other and further relief as the Court deems just and proper.

Dated:    October 17, 2025
          New York, New York

DEBEVOISE & PLIMPTON LLP

*/s/ Jasmine Ball*
66 Hudson Boulevard
New York, New York 10001
Tel.: (212) 909-6000
Jasmine Ball
Elie J. Worenklein

*Proposed Fleet Counsel to the Debtors and*
*Debtors in Possession*

**Exhibit A**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| **SPIRIT AVIATION HOLDINGS, INC.**, *et al.*, | Case No. 25-11897 (SHL) |
| Debtors.[1] | Jointly Administered |

### ORDER (I) APPROVING THE
### RESTRUCTURING TERM SHEET WITH CARLYLE
### AVIATION MANAGEMENT LIMITED, (II) AUTHORIZING AND
### APPROVING THE AMENDMENT AND ASSUMPTION OF CERTAIN
### AIRCRAFT AGREEMENTS, AND (III) GRANTING RELATED RELIEF

Upon the motion (the "**Motion**")[2] of Spirit Aviation Holdings, Inc. and its direct and indirect subsidiaries (collectively, the "**Debtors**"), each of which is a debtor and debtor in possession in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), for entry of an order (this "**Order**") pursuant to sections 105(a), 363, 365, 502, 503, 507, and 553 of the Bankruptcy Code, Bankruptcy Rule 9019, and Local Rule 6006-1, (a) approving the transactions described in the Restructuring Term Sheet attached hereto as Exhibit 1, (b) authorizing the Debtors to amend and assume the leases described in Schedule 1 hereto (each, a "**Lease**"), and (c) granting related relief, each as set forth more fully in the Restructuring Term Sheet, the Motion and Cromer Declaration; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference M-431*, dated January 31, 2012 (Preska, C.J.); and the Court having found that this is a core proceeding pursuant

---

[1] The Debtors' names and last four digits of their respective employer identification numbers are as follows: Spirit Aviation Holdings, Inc. (1797); Spirit Airlines, LLC (7023); Spirit Finance Cayman 1 Ltd. (7020); Spirit Finance Cayman 2 Ltd. (7362); Spirit IP Cayman Ltd. (4732); and Spirit Loyalty Cayman Ltd. (4752). The Debtors' mailing address is 1731 Radiant Drive, Dania Beach, FL 33004.

[2] Unless defined herein, all capitalized terms shall have the meaning ascribed to them as contained in the Restructuring Term Sheet.

to 28 U.S.C. § 157; and the Court having found that it may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue of the Chapter 11 Cases and related proceedings being proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to the Notice Parties, such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and the Court having reviewed and considered the Motion, the Cromer Declaration and the First Day Declaration; and the Court having determined that the legal and factual bases set forth in the Motion and the Cromer Declaration and at the Hearing establish just cause for the relief granted herein; and the Debtors having made an election under section 1110(a) of the Bankruptcy Code with respect to each Lease on or before October 27, 2025; and the Court having found that the relief requested in the Motion represents a sound exercise of the Debtors' business judgment, and is in the best interests of the Debtors, their creditors, their estates, and all other parties in interest; and all objections and reservations of rights filed or asserted in respect of the Motion, if any, having been withdrawn, resolved, or overruled with prejudice; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is granted as set forth herein.

2.      The Restructuring Term Sheet, attached hereto as **<u>Exhibit 1</u>**, and all the terms and conditions thereof, and all the transactions and agreements contemplated thereby or embodied therein are hereby approved in all respects and (a) represent a valid exercise of the Debtors' business judgment, (b) are supported by reasonable consideration, and (c) are fair and equitable and in the best interest of the Debtors' estates.

2

3.      The Debtors are authorized to (i) execute and deliver all documentation necessary to implement and effectuate the terms and conditions of the Restructuring Term Sheet and this Order, including, without limitation, amendments to each Lease consistent with the Restructuring Term Sheet (each, a "**Lease Amendment**" and, each Lease as amended by a Lease Amendment, an "**Amended Lease**"), (ii) comply with all obligations and make all payments provided for in the Amended Leases and the Restructuring Term Sheet, and (iii) take any additional actions as are reasonably necessary or appropriate to implement and effectuate the entry into and performance under the Amended Leases and the Restructuring Term Sheet.  It being the intent of this Court that the Amended Leases and the Restructuring Term Sheet be approved in their entirety, and the failure to specifically describe or include any provision from the Restructuring Term Sheet in this Order shall not diminish or impair the effectiveness of such provision.

4.      Pursuant to section 363 of the Bankruptcy Code, the Debtors are authorized to enter into the Lease Amendments.

5.      Pursuant to section 365 of the Bankruptcy Code, the Debtors are authorized to assume the Amended Leases.  The Amended Leases, and each of the terms and conditions contained therein, are hereby approved in their entirety and shall be deemed (automatically, without further order of the Court or action by any party) assumed effective as of the Assumption Effective Date, unless rejected by the Debtors prior to the Assumption Effective Date following the occurrence of a Material Change Condition, and the requirements of section 365 of the Bankruptcy Code with respect to the assumption of the Amended Leases shall be deemed satisfied subject to the Debtors curing, or providing adequate assurance that they will promptly cure, all defaults as and to the extent required by section 365(b) of the Bankruptcy Code.

6.      Notwithstanding the foregoing, prior to the Assumption Effective Date, nothing in this Order or the Restructuring Term Sheet shall be deemed to restrict or impair the Debtors' right to reject any Lease for an Aircraft following the occurrence of a Material Change Condition (provided that, for the avoidance of doubt, the Debtors shall not be permitted to reject any Lease absent the occurrence of a Material Change Condition).  In the event that any of the Debtors (i) seek to reject (or, in fact, reject) any Lease or Amended Lease, as the case may be, or (ii) breach the Restructuring Term Sheet or violate this Order, no Lessor Contributions shall be required to be made after such occurrence.  In the event that any Lease or Amended Lease is rejected, the Debtors shall use their commercially reasonable efforts to comply with the return procedures set forth in Exhibit C to the Restructuring Term Sheet.

7.      Upon entry of this Order, all payment and other obligations accruing under the Amended Leases from the Petition Date through to the date of rejection, if any, of the applicable Lease or Amended Lease (collectively, the "**Post-Petition Obligations**") shall be entitled to administrative expense priority pursuant to sections 503 and 507 of the Bankruptcy Code and shall be paid in full in cash in accordance with the terms of the Restructuring Term Sheet and the additional lease terms set forth in Schedule 2 hereto.  In the event that the Debtors, acting in good faith, dispute any invoiced post-petition amount, the Debtors will notify Carlyle of the disputed amount and will submit payment for all undisputed amounts in accordance with the terms of the Amended Leases and the Restructuring Term Sheet, with such disputed amount to be resolved by mutual negotiations between the Debtors and Carlyle or otherwise determined by the Court.

8.      The automatic stay imposed under section 362(a) of the Bankruptcy Code, to the extent applicable, is hereby modified and lifted to permit the parties to (a) enter into the Lease Amendments and otherwise effectuate the transactions contemplated by the Restructuring Term

Sheet and (b) enforce the Amended Leases and any other transaction instruments, agreements, or documents related thereto in accordance with their respective terms.

9. The Amended Leases and the other transaction instruments, agreements, and documents related thereto may be modified, amended, or supplemented by the parties thereto in a writing signed by the parties thereto, and in accordance with the terms thereof, without further order of the Court.

10. No prepetition or postpetition payment made by the Debtors to Carlyle, any Lessor, any other non-debtor counterparty in respect of any Lease, or any affiliate or related party thereof (each, a "**Counterparty**") or any setoff or application of proceeds of letters of credit or security deposits by, or any lien granted to, any Counterparty, including, without limitation, any payments or transfers made by the Debtors to any Counterparty under any instrument or agreement by and between the Debtors and any Counterparty, or pursuant to this Order, or claims (including administrative expense claims) allowed or granted under this Order, shall be stayed, restrained, voidable, avoidable, or recoverable under the Bankruptcy Code or any applicable law (including, without limitation, under sections 502(d), 544, or 547 through 550 of the Bankruptcy Code or under any applicable state Uniform Voidable Transactions Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or similar statute or common law), or subject to any contest, attack, rejection, defense, avoidance, reduction, setoff, recoupment, recharacterization, or subordination (whether equitable, contractual, or otherwise), disallowance, impairment, claim, counterclaim, cross-claim, or any other challenge under the Bankruptcy Code, any other order of the Court or applicable law, or regulation by any person or entity.

11. Notwithstanding any subsequent appointment of any trustee(s) under any chapter of the Bankruptcy Code, this Order and the terms and conditions of the Restructuring Term Sheet

5

and the Amended Leases shall be binding in all respects upon, and shall inure to the benefit of, the Debtors, their estates, and their creditors, their respective affiliates, successors, and assigns, and any affected third parties, including, but not limited to, Carlyle and each other Counterparty, and all other persons asserting interests in the Aircraft. Each Counterparty shall be entitled to the protections afforded under section 363(m) of the Bankruptcy Code with respect to all of the transactions set forth in the Restructuring Term Sheet or as otherwise provided for herein.

12.     Each Lessor is hereby granted an allowed general unsecured claim against Spirit Airlines, LLC in an amount equal to 80% of the total Lessor Contribution contemplated in respect of its Lease, which claim shall not be subject to setoff, subordination or reduction (the "**Allowed Unsecured Claim**"). Notwithstanding the foregoing, nothing herein waives the Debtors' rights to contest claims other than the Allowed Unsecured Claim and the Partial Lessee Repayment Administrative Expense (including requests for the payment of additional administrative expenses) that are subject to a bona fide dispute or any available defenses to the extent not inconsistent with the Restructuring Term Sheet or the Amended Leases. The Debtors and the Debtors' claims agent are authorized to take any reasonably necessary steps to reflect the allowance of the Allowed Unsecured Claim and the Partial Lessee Repayment Administrative Expense against Spirit Airlines, LLC in favor of the Lessors and designate claim number(s) on the claims register in the Chapter 11 Cases.

13.     Notice of the Motion is adequate under Bankruptcy Rule 6004(a). Notwithstanding the provisions of Bankruptcy Rule 6004(h), this Order shall be immediately effective and enforceable upon its entry.

14.     The Debtors are authorized to take, or refrain from taking, any action necessary or appropriate to implement and effectuate the terms of, and the relief granted in, this Order without seeking further order of the Court.

15.     During the pendency of the Chapter 11 Cases, this Court shall retain exclusive jurisdiction over any and all matters arising from or related to the implementation, interpretation, and enforcement of this Order and the Restructuring Term Sheet.

Dated: _____, 2025
        New York, New York

_____
THE HONORABLE SEAN H. LANE
UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit 1</u>**

**Restructuring Term Sheet**

**Subject to FRE 408 & its Equivalents**

**Spirit Airlines, LLC**
1731 Radiant Drive
Dania Beach, FL 33004
United States of America

**FTI Advisors**
350 S. Grand Avenue
Suite 3000
Los Angeles, CA 90071
United States of America

Attention:
Dave Davis, Chief Executive Officer, Spirit Airlines, LLC
Marc Bilbao, Senior Managing Director, FTI Consulting

**VIA E-MAIL**

2 October 2025

**Proposal for restructuring of five (5) Airbus A320-200s**

Dear Dave, Marc,

Carlyle Aviation Management Limited, not in its individual capacity, but solely as Servicer ("Carlyle"), is sending this proposal to Spirit Airlines, LLC ("Spirit") on behalf of the lessors of the Aircraft (the "Lessors") described herein.

This proposal does not purport to summarize all of the terms, conditions, representations, warranties, and other provisions with respect to the transactions described herein, which transactions shall be subject to the completion of definitive documents incorporating the terms set forth herein and otherwise acceptable to the parties and satisfaction of the other conditions described herein.

Subject to FRE 408 & its Equivalents

**Restructuring Heads of Terms**

The transactions described herein shall be implemented in the chapter 11 cases filed by Spirit and certain of its affiliates on August 29, 2025 (the "Chapter 11 Cases").

| | |
|---|---|
| **Aircraft:** | Five (5) Airbus A320-200 aircraft (the "Aircraft"), each equipped with IAE V2500 (Select) Engines (the "Engines"), as further detailed (including forecasted Performance Restoration Shop Visits ("PRSV") event dates) in Exhibit A hereto. |
| **Restructuring Terms:** | Lessor Contribution for Engine Shop Visits: With respect to each Engine, Lessor parties to contribute an amount equal to ████████ per next occurring PRSV event for such Engine (the "Second PRSV Event"), totaling a maximum of ████████ across the five Aircraft (each, a "Lessor Contribution"). The Lessor Contribution for each Engine shall be paid by Lessor as follows: |

████████████████████████████████████████

Lease Extensions: The lease terms for the Aircraft bearing manufacturer's serial numbers ████████████ (each, a "Specified Aircraft" and collectively, the "Specified Aircraft") shall be extended for ████████ (the "Extension Term") at ████████ per month per Specified Aircraft.

Additional Lease Extension Option: The lease for each Aircraft shall be amended to add the following additional extension option of Spirit:

████████████████████████████████████████



**Conditions:**
Terms are contingent on the following:
a) Each Engine shall have a PRSV ███████████████ ████████████████ with a reasonably agreed service provider and/or Pratt & Whitney;
b) An induction schedule to be reasonably agreed by both parties;
c) Each Engine's PRSV work scope shall be in compliance with the current leases; and
d) Each Engine's LLPs to be replaced with new LLPs under Spirit's commercial terms with Pratt & Whitney.

**Other Terms:**
The terms of the leases will remain as per the lease agreements, except as described herein, or as otherwise mutually agreed between the parties. The parties shall have agreed on substantially final forms of the lease amendments, which shall be consistent with this proposal and otherwise acceptable to the parties, by no later than the date of entry of the Approval Order.

**Other:**
Arrears of scheduled rent (if any) through ████████████ to be fully repaid on or about ████████████ (as provided below). Security deposits for the Specified Aircraft will step down to ███████ upon approval of this transaction by the Bankruptcy Court pursuant to an order consistent with this proposal and otherwise acceptable to Lessor (the "Approval Order"). The Bankruptcy Court shall enter the Approval Order by no later than ████████████ (or such later date as the parties may mutually agree). There will be no need to replenish any security deposit in connection with the transactions contemplated under this proposal.

Rentals for the leases for the Specified Aircraft will step down (as referenced on Exhibit A) upon approval of this transaction by the Bankruptcy Court pursuant to the Approval Order ████████████████

███████████████████████████████

Each party shall bear its own costs and expenses (including legal fees) in connection with the transactions contemplated by this proposal.

Upon the earlier of (i) the approval of this transaction by the Bankruptcy Court and (ii) October 27, 2025 (such earlier date, the "Election Date"), Lessee shall make an election under section 1110(a)(2) of the Bankruptcy Code, pursuant to which Lessee shall agree to perform all of its obligations under each Aircraft lease (as amended to the extent contemplated herein, if the approval of this transaction by the Bankruptcy Court has occurred on or before the Election Date) and cure all defaults (other than any ipso facto default) arising under any such lease (as amended to the extent contemplated herein, if the approval of this transaction by the Bankruptcy Court has occurred on or before the Election Date). Pursuant to the Approval Order, on the Assumption Effective Date (as defined below), each Aircraft lease (as amended to the extent contemplated herein) shall automatically, without further court order, be assumed by Lessee under section 365 of the Bankruptcy Code (the "Assumption"); provided that nothing in this proposal shall be deemed to restrict or impair Lessee's right to reject any lease for an Aircraft prior to the Assumption if a Material Change Condition occurs. ███████████████████████████ If an Aircraft lease is so rejected, Lessee and each of its affiliated debtors (collectively, the "Debtors") shall be responsible for the ███



As used herein:

"Assumption Effective Date" ████████████████████████

"Material Change Condition" ██████████████

"Utility Reduction Amount" means the amounts set forth on Exhibit B attached hereto.

**Return Conditions:**    The Approval Order shall provide that, in the event of any rejection of any lease of any Aircraft and related equipment (together with all constituent equipment, parts, and appurtenances thereto, "Rejected Aircraft"), the Lessee shall use its reasonable commercial efforts to comply with the return procedures set forth in Exhibit C hereto.

| | |
|---|---|
| **Unsecured Claims:** | Without limiting their other claims or entitlements, Lessor parties shall have an allowed general unsecured claim against Lessee in an amount equal to 80% of the total Lessor Contribution ████████████████████ ████ |
| **Governing Law, Jurisdiction, and Waiver of Right to Jury Trial:** | This proposal and any claims arising out of this proposal shall be governed by and construed in accordance with the laws of the State of New York, without giving effect to its conflict of law principles, and each of the parties submits to the exclusive jurisdiction of the Bankruptcy Court and federal and state courts sitting in the Borough of Manhattan, and any appellate court therefrom, in connection with any claims arising out of this proposal, and the parties irrevocably waive any right to raise forum non conveniens or any other argument that any proceeding filed in any such court was not brought in the proper venue.  EACH OF THE PARTIES HERETO IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY SUIT, ACTION, OR PROCEEDING ARISING OUT OF OR RELATING TO THIS PROPOSAL. |

This proposal is strictly confidential and must not be revealed by Spirit or any of its affiliates or Carlyle or any of its affiliates or any Lessor to any person other than their respective employees, directors, officers, and professional advisers who are responsible for analyzing, negotiating and approving this proposal and who are made aware of and instructed to maintain the confidential nature of this proposal, provided that the terms of this proposal may be disclosed to the extent required by law or any applicable governmental authority, including in connection with seeking relevant consents and approvals as a condition to the consummation of the transactions contemplated in this proposal (provided that Spirit shall use commercially reasonable efforts to implement redactions in any public filings to the extent reasonably requested by Carlyle).

Please note that this proposal and the terms contained herein are non-binding, subject to corporate approvals, court approval and execution of definitive documentation, except for the provisions herein regarding (a) confidentiality and (b) with respect to the interpretation and enforcement of such confidentiality provisions, governing law, jurisdiction, and waiver of the right to jury trial, which shall be enforceable between the parties upon the parties hereto each executing this proposal.

*[Signature page follows]*

Yours faithfully,

**CARLYLE AVIATION MANAGEMENT LIMITED, NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS SERVICER, AND ON BEHALF OF THE LESSORS DESCRIBED HEREIN**

By:    _____

Name:

Title:

Accepted and Agreed:

**SPIRIT AIRLINES, LLC**

By:    _____

Name:

Title:

*Execution Version*

**Exhibit A –** ███████████████████████

████████████████████████████████



█████████████████████

███████████████████████

███████████████████████

█████████████████████████████

**Exhibit B** ▮▮▮▮▮▮▮▮▮▮▮

*Execution Version*



Exhibit C – Return Procedures

## AIRCRAFT EQUIPMENT RETURN PROCEDURES

Unless otherwise agreed by the Debtors and Carlyle Aviation Management Limited, not in its individual capacity, but solely as Servicer (together with Lessors of the Aircraft Equipment[1] and its subsidiaries, affiliates and owner trusts and managed entities (collectively, "**Carlyle**")), the following return procedures shall apply to any Aircraft Equipment which becomes Rejected Aircraft (as defined in the Restructuring Term Sheet) (any such rejected Aircraft Equipment, "**Rejected Aircraft Equipment**"). With respect to an item of Rejected Aircraft Equipment, the date the rejection of such Rejected Aircraft Equipment becomes effective shall be its "**Rejection Date**". Each of the Debtors and Carlyle shall use its reasonable commercial efforts to complete an orderly redelivery process as follows:

██████Debtors shall use their commercially reasonable efforts █████████
██████████████████
██████████████████
███

2.      Subject to entering into a mutually acceptable ferry flight agreement or shipment agreement (as applicable), the Debtors shall, upon Carlyle's request and at Carlyle's sole cost and expense, in a commercially reasonable manner, as soon as reasonably practicable following the applicable Rejection Date, deliver the Rejected Aircraft Equipment and the Technical Records (as defined below) relating to such Rejected Aircraft Equipment from its or their then-current location to the location in the continental United States as may be agreed between the Debtors and Carlyle via a ferry flight and/or shipment in the case of Rejected Aircraft Equipment that are engines (the timing, manner and scheduling of such ferry flight and/or shipment to be subject to a commercial reasonableness standard, taking into account the Debtors' operational and commercial limitations as to feasibility, timing and manner of redelivery); and, in connection therewith, take all actions reasonably required (provided that Carlyle will cooperate with the Debtors, where such cooperation is required in order for the Debtors to take such actions) to satisfy any customs, deregistration and/or export requirements, regulations and/or directives to permanently move such aircraft from the current state of registration (in each case, to the extent applicable) to the agreed return location, *provided*, *however*, Carlyle shall compensate the Debtors, promptly on demand, for any costs and expenses incurred by the Debtors as a result of such ferry flight (including, for the avoidance of doubt, and without limitation, the costs of pilots, crew, if necessary, and fuel), shipment and related actions and as otherwise mutually agreed in the relevant

---

[1] Define from 1110 order

ferry flight agreement or shipment agreement (as applicable). The Debtors will, at their own cost, cause all liens on the Rejected Aircraft Equipment attributable to the Debtors in favor of third parties to be extinguished prior to return.

3.      After 10 days of the Aircraft Equipment being made available for return to Carlyle in accordance herewith, all risk of damage, injury, loss and liability of the Rejected Aircraft Equipment shall pass to Carlyle, and the Debtors shall have no further obligations or liability whatsoever with respect to such Rejected Aircraft Equipment except for any reasonable cooperation pursuant to paragraphs 4, 4 and 5.

4.      Upon Carlyle's reasonable request and at its sole cost and expense, the Debtors shall reasonably cooperate in taking all actions (including filings) and signing and providing all documents reasonably required by Carlyle with regard to lease termination, deregistration and export from the current state of registration or country of previous importation (in each case, to the extent applicable).

5.      To the extent not returned together with the Rejected Aircraft Equipment pursuant to paragraph 1 above, the Debtors shall make available for retrieval at their then-current location, or at such other location as may be agreed upon by Carlyle and the Debtors (with the cost of transfer to such other location at the cost of Carlyle), technical records, documents, reports and statements relating to the Rejected Aircraft Equipment that are in the Debtors' possession or control (the "**Technical Records**"), in as-is-where-is condition, without performing any independent verification or audit thereof, except that the Debtors will (a) provide dirty fingerprint records corresponding to the period operated by the Debtors stamped and signed by the relevant Debtor, (b) prepare and sign an accident-incident clearance statement, (c) sign and return all maintenance summaries in the Debtors' possession, and (d) provide reasonable on-site access to technical records at the Debtors' facilities at Dania Beach, Florida during regular business hours and without disturbing ordinary course business activities of the Debtors, *provided that* Carlyle shall promptly on demand reimburse the Debtors for the reasonable out-of-pocket costs incurred by the Debtors in connection with such certification, signature or actions, including the cost of procuring outside consultants for purpose of implementing or taking such action.

6.      In connection with the return of any Rejected Aircraft Equipment in accordance with the procedures set forth in paragraphs 1-5 above, the Debtors shall, upon Carlyle's request and at Carlyle's sole cost and expense, in a commercially reasonable manner:



[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

7.        Carlyle shall, within 15 days of receipt of the Debtors' summary of charges therefor, reimburse the Debtors for their actual and reasonable costs and expenses of (i) storing, insuring and maintaining the Rejected Aircraft Equipment as set forth above and (ii) performing any other services or taking any other actions described in this Schedule or otherwise agreed between Carlyle and the Debtors.  For the avoidance of doubt, any amounts charged by the Debtors to Carlyle pursuant to the terms of these Aircraft Equipment Return Procedures for storage, maintenance or other services shall be determined as follows: (A) if performed or provided by parties other than the Debtors, such costs shall be the actual amounts invoiced to the Debtors for such services (including any related tax) without any added profit or other mark-up and (B) if performed by the Debtors, be charged in accordance with the Debtors' standard rates charged to unaffiliated third parties for such services.  All payments to the Debtors under these Aircraft Equipment Return Procedures shall be made by wire transfer in United States Dollars in immediately available funds, without any withholding, deduction, set-off or counterclaim.

8.        For the sole purpose of implementing the actions set forth in paragraphs 1 through 7, the [Aircraft Agreements] shall be deemed to continue in effect through the date as applicable, that either (a) if Carlyle and the Debtors enter into a mutually acceptable ferry flight agreement or shipment agreement (as applicable) to return the Rejected Aircraft Equipment to a return location in accordance herewith, the relevant Rejected Aircraft Equipment is tendered for return to Carlyle upon such ferry flight or shipment or (b) the relevant Rejected Aircraft Equipment otherwise is tendered for return to Carlyle, in each case, solely for the purpose of enabling the Debtors to comply with their obligations hereunder.  For the avoidance of doubt, except as expressly set forth herein or as otherwise agreed between the Debtors and Carlyle, (y) except as specifically set forth in paragraphs 1 through 7 herein or as otherwise specifically agreed between the Debtors and Carlyle, any and all obligations of the Debtors under the [Aircraft Agreements] shall terminate upon the tender of the Aircraft for return to Carlyle and any liability incurred by the Debtors after such tender (except in the case of gross negligence or willful misconduct) shall be the responsibility of Carlyle, and (z) the Rejected Aircraft Equipment and Technical Records shall be returned in "as is, where is" condition.

9.        Carlyle shall execute a return receipt in a form reasonably agreed by Carlyle and the Debtors in respect of each returned item of Rejected Aircraft Equipment.

10.        Notwithstanding anything to the contrary herein, the return procedures set forth in these Aircraft

Equipment Return Procedures may be modified, in whole or in part, by mutual agreement of the Debtors and Carlyle.

## **Schedule 1**

**Leases**

**Description of Leases – Carlyle**

| MSN | Lease Description |
|---|---|
| ▮ | **Aircraft**: one (1) Airbus A320-200 Aircraft bearing manufacturer's serial number ▮ and ▮ including two (2) International Aero Engines AG (IAE) V2527-A5 Select One engines bearing manufacturer's serial numbers ▮<br><br>**Lease**: Aircraft Lease Agreement, dated as of September 28, 2012, between WILMINGTON TRUST COMPANY (not in its individual capacity, but solely as owner trustee) and SPIRIT AIRLINES, INC. (as assigned, supplemented, and amended from time to time) which incorporates by reference that New Common Terms Agreement dated as of December 9, 2011 among GE Capital Aviation Services LLC (formerly known as NAS Holdings LLC) and Lessee (as assigned, supplemented, novated and amended from time to time). |
| ▮ | **Aircraft**: one (1) Airbus A320-200 Aircraft bearing manufacturer's serial number ▮ and ▮ including two (2) International Aero Engines AG (IAE) V2527-A5 Select One engines bearing manufacturer's serial numbers ▮<br><br>**Lease**: Aircraft Lease Agreement, dated as of September 28, 2012, between the WILMINGTON TRUST COMPANY (not in its individual capacity, but solely as owner trustee) and SPIRIT AIRLINES, INC. (as assigned, supplemented, and amended from time to time) which incorporates by reference that New Common Terms Agreement dated as of December 9, 2011 among GE Capital Aviation Services LLC (formerly known as NAS Holdings LLC) and Lessee (as assigned, supplemented, novated and amended from time to time). |
| ▮ | **Aircraft**: one (1) Airbus A320-200 aircraft bearing manufacturer's serial number ▮ and ▮, together with two (2) International Aero Engines AG (IAE) model V2527-A5 Select One engines respectively bearing manufacturer's serial numbers ▮.<br><br>**Lease**: Aircraft Lease Agreement, dated as of September 28, 2012, between WILMINGTON TRUST COMPANY (not in its individual capacity, but solely as owner trustee) and SPIRIT AIRLINES, INC. (as assigned, supplemented, and amended from time to time) which incorporates by reference that New Common Terms Agreement dated as of December 9, 2011 among GE Capital Aviation Services LLC (formerly known as NAS Holdings LLC) and Lessee (as assigned, supplemented, novated and amended from time to time). |
| ▮ | **Aircraft:** one (1) Airbus A320-200 aircraft bearing manufacturer's serial number ▮ and ▮, together with two (2) International Aero Engines AG (IAE) model V2527-A5 Select One engines bearing manufacturer's serial numbers ▮. |

|  | **Lease**: Amended and Restated Aircraft Lease Agreement, dated as of May 31, 2022 between UMB BANK, N.A., not in its individual capacity but solely as owner trustee, as Lessor and SPIRIT AIRLINES, INC. as Lessee (as assigned, supplemented, and amended from time to time) (the "███████"). The ███ Lease amends and restates in its entirety the original Aircraft Lease Agreement dated 22 October 2012. |
|---|---|
| ███ | **Aircraft**:  one (1) Airbus A320-200 aircraft bearing manufacturer's serial number ███ and ██████████████, together with two (2) International Aero Engines AG (IAE) model V2527-A5 Select One engines bearing manufacturer's serial numbers ████████.<br><br>**Lease**:  Amended and Restated Aircraft Lease Agreement, dated as of May 31, 2022 between UMB BANK, N.A., not in its individual capacity but solely as owner trustee, as Lessor and SPIRIT AIRLINES, INC. as Lessee (as assigned, supplemented, and amended from time to time) (the "███████"). The ███ Lease amends and restates in its entirety the original Aircraft Lease Agreement dated 22 October 2012. |

## <u>Schedule 2</u>

