Hearing Date and Time: October 29, 2025 at 11:00 a.m. ET
Reply Deadline: October 27, 2025 at 11:59 p.m. ET

Brett H. Miller
Todd M. Goren
James H. Burbage
Jessica D. Graber
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-8111

*Proposed Counsel for the Official Committee of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| **SPIRIT AVIATION HOLDINGS, INC.,** *et al.*, | Case No. 25-11897 (SHL) |
| Debtors.[1] | Jointly Administered |

**STATEMENT OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS IN SUPPORT OF THE DEBTORS' MOTION TO OBTAIN POSTPETITION FINANCING**

The Official Committee of Unsecured Creditors (the "Committee") of Spirit Aviation Holdings, Inc. and its debtor affiliates (collectively, the "Debtors") in the above-captioned chapter 11 cases, by and through its undersigned proposed counsel, hereby submits this statement in support of final approval of the *Motion of Debtors for Entry of (I) Interim and Final Orders, Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 503, 506, 507, and 552, (A) Authorizing the Debtors to Obtain Postpetition Financing; (B) Granting Senior Secured Liens and Superpriority Administrative Expense Claims; (C) Granting Adequate Protection; (D) Modifying the Automatic Stay; (E) Scheduling a Final Hearing on the Motion; and (F) Granting Related Relief;* and

---

[1] The Debtors' names and last four digits of their respective employer identification numbers are as follows: Spirit Aviation Holdings, Inc. (1797); Spirit Airlines, LLC (7023); Spirit Finance Cayman 1 Ltd. (7020); Spirit Finance Cayman 2 Ltd. (7362); Spirit IP Cayman Ltd. (4732); and Spirit Loyalty Cayman Ltd. (4752). The Debtors' mailing address is 1731 Radiant Drive, Dania Beach, FL 33004.

*(II) Third Interim Order (A) Authorizing the Debtors to Utilize Cash in Encumbered Accounts; (B) Granting Adequate Protection; (C) Modifying the Automatic Stay; (D) Scheduling a Final Hearing on the Motion; and (E) Granting Related Relief* [Docket No. 194] (the "DIP Motion").[2]

1. Since its appointment, the Committee has worked diligently with the Debtors and the DIP Lenders to resolve the Committee's concerns with the DIP Facility. Among the Committee's concerns were: (a) a significant roll up of the Debtors' Prepetition Secured Notes Obligations; (b) whether Local Rule 4001-2(g)(5) would apply to the Roll Up DIP Loans; (c) the DIP Lenders' proposed lien on Avoidance Proceeds; (d) an unduly short Challenge Period in which the Committee would need to complete its investigation of the Debtors' prepetition secured obligations; (e) releases of the DIP Lenders that were not subject to the Challenge Period; and (f) a lack of reporting rights for the Committee.

2. Prior to the October 10 hearing to consider approval of the DIP Motion on an interim basis (the "Interim DIP Hearing"), the Committee obtained a number of key concessions from the DIP Lenders relating to the DIP Facility. These concessions included: (a) a reduction of the Final Roll-Up from a 2:1 to 1.5:1 ratio in return for the Committee's agreement not to challenge the first $400 million of the Roll-Up DIP Loans under Local Rule 4001-2(g)(5); (b) granting the Committee the same reporting rights as the RCF Secured Parties; and (c) clarifying language preserving parties' rights to seek recharacterization of RCF Adequate Protection Payments.

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the DIP Motion or the *Interim Order (A) Authorizing the Debtors to Obtain Post-Petition Financing; (B) Granting Senior Secured Liens and Superpriority Administrative Expense Claims; (C) Granting Adequate Protection; (D) Modifying the Automatic Stay; (E) Scheduling a Final Hearing on the Motion; and (F) Granting Related Relief; and (II) Third Interim Order (A) Authorizing the Debtors to Utilize Cash in Encumbered Accounts; (B) Granting Adequate Protection; (C) Modifying the Automatic Stay; (D) Scheduling a Final Hearing on the Motion; and (E) Granting Relief* [Docket No. 250], as applicable.

Ultimately, the Committee and the DIP Lenders agreed to defer resolution of the Committee's remaining concerns until the hearing on final approval of the DIP Motion.

3. Following the Interim DIP Hearing, the Committee continued to work collaboratively and negotiate with the Debtors and the DIP Lenders to address those remaining concerns. Those negotiations proved fruitful, and the Committee was able to obtain the following additional concessions from the DIP Lenders relating to the DIP Facility, which will be memorialized in the amended DIP Credit Agreement and the proposed order granting the DIP Motion on a final basis (the "Final DIP Order"):

- Roll-Up. The DIP Lenders have agreed to further reduce the Final Roll-Up ratio from 1.5:1 to 1.25:1 and cap the total amount of Roll-Up DIP Loans at $750 million.

- Rights Under Local Rule 4001-2(g)(5). The DIP Lenders have agreed to remove language from the Final DIP Order waiving the Committee's challenge rights with respect to any Roll-Up DIP Loans above $550 million. In other words, the Committee retains its rights to challenge Roll-Up DIP Loans in excess of $550 million pursuant to Local Rule 4001-2(g)(5).

- Limitations on Collateral. The DIP Lenders have agreed to look last to Avoidance Proceeds when satisfying the DIP Obligations, other than any Avoidance Proceeds arising from a Challenge to any Secured Notes, Prepetition Secured Notes Liens, and/or Prepetition Secured Notes Obligations (the "Retained Avoidance Proceeds"). The DIP Lenders have also agreed not to look to the Retained Avoidance Proceeds to satisfy any DIP Obligations in connection with Roll-Up DIP Loans.

4. As with any negotiation, the list above hardly represents everything initially sought by the Committee. Nonetheless, the Committee believes that the revised Final DIP Order strikes an appropriate balance between the Debtors' urgent need for financing and the Committee's need to advocate for and protect the interests of the Committee's constituents to the greatest extent possible. Indeed, the Committee was mindful of the significant risks associated with objecting to the DIP Motion, including the negative impact that such an objection could have on the Debtors' ongoing business operations. The Committee believes that the concessions it negotiated will

significantly protect the interests of all general unsecured creditors in these chapter 11 cases, while providing the Debtors with financing necessary to operate their business and complete their restructuring. Accordingly, the Committee supports the DIP Motion on a final basis.

*[Remainder of Page Left Intentionally Blank]*

25-11897-shl    Doc 343    Filed 10/27/25    Entered 10/27/25 17:02:05    Main Document
                                    Pg 5 of 5

- 5 -

Dated: October 27, 2025
New York, New York

                          By: */s/ Brett H. Miller*
                               Brett H. Miller
                               Todd M. Goren
                               James H. Burbage
                               Jessica D. Graber
                               WILLKIE FARR & GALLAGHER LLP
                               787 Seventh Avenue
                               New York, New York 10019
                               Telephone: (212) 728-8000
                               Facsimile: (212) 728-8111

                               *Proposed Counsel for the Official Committee*
                               *of Unsecured Creditors*