DAVIS POLK & WARDWELL LLP                    **Re: ECF Nos. 194, 211, 226, 242, 250, 305**
450 Lexington Avenue
New York, New York 10017
Tel.: (212) 450-4000
Marshall S. Huebner
Darren S. Klein
Christopher S. Robertson
Joseph W. Brown

*Proposed Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | **Chapter 11** |
| **SPIRIT AVIATION HOLDINGS, INC.**, *et al.*, | **Case No. 25-11897 (SHL)** |
| Debtors.[1] | **Jointly Administered** |

### NOTICE OF REVISED PROPOSED FINAL ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING; (II) GRANTING SENIOR SECURED LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS; (III) AUTHORIZING THE DEBTORS TO UTILIZE CASH IN ENCUMBERED ACCOUNTS; (IV) GRANTING ADEQUATE PROTECTION; (V) MODIFYING THE AUTOMATIC STAY; AND (VI) GRANTING RELATED RELIEF

**PLEASE TAKE NOTICE** that, on October 1, 2025, the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") filed the *Motion of Debtors for Entry of (I) Interim and Final Orders, Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 503, 506, 507, and 552, (A) Authorizing the Debtors to Obtain Post-Petition Financing, (B) Granting Senior Secured Liens and Superpriority Administrative Expense Claims, (C) Granting Adequate Protection, (D) Modifying the Automatic Stay, (E) Scheduling a Final Hearing on the Motion; and (F) Granting Related Relief; and (II) Third Interim Order (A) Authorizing the Debtors to Utilize Cash in Encumbered Accounts; (B) Granting Adequate Protection; (C) Modifying the Automatic Stay; (D) Scheduling a Final Hearing on the Motion; and (E) Granting Related Relief* [ECF No. 194] (as supplemented by that certain Supplement to the DIP Motion [ECF No. 211], the "**DIP Motion**").[2]

---

[1] The Debtors' names and last four digits of their respective employer identification numbers are as follows: Spirit Aviation Holdings, Inc. (1797); Spirit Airlines, LLC (7023); Spirit Finance Cayman 1 Ltd. (7020); Spirit Finance Cayman 2 Ltd. (7362); Spirit IP Cayman Ltd. (4732); and Spirit Loyalty Cayman Ltd. (4752). The Debtors' mailing address is 1731 Radiant Drive, Dania Beach, FL 33004.

[2] Capitalized terms used but not defined herein have the meanings ascribed to such terms in the DIP Motion.

**PLEASE TAKE FURTHER NOTICE** that, on October 10, 2025, the Court entered the *(I) Interim Order (A) Authorizing the Debtors to Obtain Postpetition Financing; (B) Granting Senior Secured Liens and Superpriority Administrative Expense Claims; (C) Granting Adequate Protection; (D) Modifying the Automatic Stay; (E) Scheduling a Final Hearing on the Motion; and (F) Granting Related Relief; and (II) Third Interim Order (A) Authorizing the Debtors to Utilize Cash in Encumbered Accounts; (B) Granting Adequate Protection; (C) Modifying the Automatic Stay; (D) Scheduling a Final Hearing on the Motion; and (E) Granting Related Relief* [ECF No. 250] (the "**Interim DIP Order**") approving the DIP Motion on an interim basis and scheduling a final hearing.

**PLEASE TAKE FURTHER NOTICE** that, on October 23, 2025, the Debtors filed the *Notice of Proposed Final Order (I) Authorizing the Debtors to Obtain Post-Petition Financing; (II) Granting Senior Secured Liens and Superpriority Administrative Expense Claims; (III) Authorizing the Debtors to Utilize Cash in Encumbered Accounts; (IV) Granting Adequate Protection; (V) Modifying the Automatic Stay; and (VI) Granting Related Relief* [ECF No. 305]. Attached to the notice as Exhibit A was an initial form of the Proposed Final DIP Order (the "**Initial Proposed Final DIP Order**").

**PLEASE TAKE FURTHER NOTICE** that attached hereto as **Exhibit A** is a revised Proposed Final DIP Order (the "**Revised Proposed Final DIP Order**"). A redline comparing the Revised Proposed Final DIP Order against the Interim DIP Order is attached hereto as **Exhibit B**.

**PLEASE TAKE FURTHER NOTICE** that a change pages redline comparing the Revised Proposed Final DIP Order against the Initial Proposed Final DIP Order is attached hereto as **Exhibit C**.

**PLEASE TAKE FURTHER NOTICE** that a hearing has been scheduled for **October 29, 2025, at 11:00 a.m.** (prevailing Eastern Time), before the Honorable Sean H. Lane, United States Bankruptcy Judge for the Southern District of New York, to consider, among other things, the relief requested by the Debtors in the DIP Motion on a final basis (the "**Final Hearing**").

**PLEASE TAKE FURTHER NOTICE** that copies of the documents referenced herein, this notice, and all other documents publicly filed in the Chapter 11 Cases can be accessed free of charge at https://dm.epiq11.com/SpiritAirlines.

*[Remainder of page left intentionally blank]*

Dated:    October 28, 2025
          New York, New York

DAVIS POLK & WARDWELL LLP

By:        */s/ Darren S. Klein*
450 Lexington Avenue
New York, NY 10017
Tel.: (212) 450-4000
Marshall S. Huebner
Darren S. Klein
Christopher S. Robertson
Joseph W. Brown

*Proposed Counsel to the Debtors and Debtors in Possession*

## <u>Exhibit A</u>

**Revised Proposed Final DIP Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | **Chapter 11** |
| **SPIRIT AVIATION HOLDINGS, INC.**, *et al.*, | **Case No. 25-11897 (SHL)** |
| Debtors.[1] | **Jointly Administered** |

## FINAL ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING; (II) GRANTING SENIOR SECURED LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS; (III) AUTHORIZING THE DEBTORS TO UTILIZE CASH IN ENCUMBERED ACCOUNTS; (IV) GRANTING ADEQUATE PROTECTION; (V) MODIFYING THE AUTOMATIC STAY; AND (VI) GRANTING RELATED RELIEF

Upon the motion (including as supplemented by the Supplement to DIP Motion, the "**DIP Motion**")[2] of Spirit Aviation Holdings, Inc. and its direct and indirect subsidiaries (collectively, the "**Debtors**"), each of which is a debtor and debtor in possession in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), pursuant to sections 105, 361, 362, 363, 364, 503, 506, 507, and 552 of title 11 of the United States Code (the "**Bankruptcy Code**"), rules 2002, 4001, 6003, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and rules 2002-1, 4001-2, and 9013-1 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**") promulgated by the United States Bankruptcy Court for the Southern District of New York (the "**Court**"), seeking entry of an interim order (the "**Interim DIP Order**") and this final order (this "**Final Order**") providing, among other things,

---

[1] The Debtors' names and last four digits of their respective employer identification numbers are as follows: Spirit Aviation Holdings, Inc. (1797); Spirit Airlines, LLC (7023); Spirit Finance Cayman 1 Ltd. (7020); Spirit Finance Cayman 2 Ltd. (7362); Spirit IP Cayman Ltd. (4732); and Spirit Loyalty Cayman Ltd. (4752). The Debtors' mailing address is 1731 Radiant Drive, Dania Beach, FL 33004.

[2] Capitalized terms used but not defined herein (including **Annex A** hereto) shall have the meanings ascribed to them in the DIP Motion or the First Day Declaration, as applicable.

(a)    authorization for Debtor Spirit Airlines, LLC, as borrower (the "**Borrower**"), to obtain postpetition financing, and for each of the other Debtors to guarantee unconditionally, as guarantors (the "**Guarantors**"), on a joint and several basis, the Borrower's obligations in connection with a multi-draw senior secured non-amortizing superpriority priming debtor-in-possession facility (the "**DIP Facility**") in the aggregate principal amount of up to $1,225,000,000, comprising:

(i)    new money term loans in an aggregate principal amount of up to $475,000,000, available in four draws, of which (A) a principal amount of $200,000,000 was made available in a single draw (the "**Initial Draw**") upon satisfaction of the conditions set forth in the DIP Documents and the entry of the Interim DIP Order, comprising new money term loans (the "**Interim New Money DIP Loans**"), which was provided and funded through Barclays Bank, PLC, as fronting lender (the "**Fronting Lender**"),[3] in accordance with the terms of the DIP Credit Agreement (as defined below and attached hereto as **Exhibit 3**) and the Commitment Letter (as defined below), and (B) an additional principal amount of new money loans (the "**Final New Money DIP Loans**" and, together with the Interim New Money DIP Loans, the "**New Money DIP Loans**") equal to the undrawn portion of the DIP Facility available in three separate draws (each draw, the "**Second Draw**," "**Third Draw**," and "**Fourth Draw**"), in the amounts and upon satisfaction of the conditions related to each separate draw set forth in the DIP Documents (as defined below) and the entry of this Final Order, from the lenders (the "**DIP Lenders**") providing such New Money DIP Loans or taking such New Money DIP Loans by assignment from the Fronting Lender;

(ii)    upon the DIP Syndication Initial Closing Date and upon the DIP Syndication Final Closing Date, respectively, for Contingent Roll-Up Term Loans deemed to be outstanding under the DIP Credit Agreement in an amount not to exceed the aggregate amount of the Prepetition Secured Notes Obligations constituting principal and (i) accrued and unpaid interest thereon through the Petition Date and (ii) solely to the extent permitted under section 506(b) of the Bankruptcy Code, all interest accrued thereon after the Petition Date (the "**Prepetition Secured Notes P&I Obligations**") that are validly tendered in the DIP Syndication by the DIP Syndication Initial Closing Date or the DIP Syndication Final Closing Date, as applicable; and

---

[3]   So long as the Fronting Lender is a holder of New Money DIP Loans (as defined below), the Fronting Lender shall be included in the definition of DIP Lenders.  For the avoidance of doubt, and notwithstanding anything to the contrary herein, the Fronting Lender, by acting in such capacity, does not make any commitments, undertake any obligations, or waive any rights, including whether to take or not take any action or to exercise or seek to exercise any rights or remedies, in each case in connection with any other claims or interests it may hold against any of the Debtors.

2

(iii)    (A) upon entry of the Interim DIP Order, the DIP Syndication Initial Closing Date, and the DIP Syndication Final Closing Date, and subject to the terms and conditions set forth herein and in the DIP Documents, for Contingent Roll-Up Term Loans to be deemed exchanged for term loans deemed made by the DIP Lenders and borrowed by the Borrower under the DIP Credit Agreement (the "**Interim Roll-Up**") on a 2 to 1 ratio to Interim New Money DIP Loans actually funded (prior to accounting for any OID (as defined below)) (the "**Interim Roll-Up DIP Loans**") and (B) upon entry of this Final Order, and subject in each case to the terms and conditions set forth herein and in the DIP Documents, for Contingent Roll-Up Term Loans to be deemed exchanged (the "**Final Roll-Up**") for term loans deemed made by the DIP Lenders and borrowed by the Borrower under the DIP Credit Agreement (the "**Final Roll-Up DIP Loans**" and, together with the Interim Roll-Up DIP Loans, the "**Roll-Up DIP Loans**"[4] and, with all obligations related thereto and set forth in the DIP Documents, the "**Roll-Up DIP Obligations**"; and the Roll-Up DIP Loans, together with the New Money DIP Loans, the "**DIP Loans**"; and the commitments in respect of the New Money DIP Loans, the "**DIP Commitments**"; and all obligations related to the DIP Loans and the DIP Commitments, in each case as set forth in the DIP Documents, including the Roll-Up DIP Obligations, the "**DIP Obligations**"); *provided*, *however*, (i) with respect to the Second Draw (if applicable), Contingent Roll-Up Term Loans shall be deemed exchanged for Final Roll-Up DIP Loans on a 2 to 1 ratio to Final New Money DIP Loans actually funded, (ii) subject to the draw conditions set forth in the DIP Credit Agreement for the Second Draw, if such conditions are satisfied for an additional $25,000,000 or $75,000,000, as applicable in accordance with the DIP Credit Agreement, Contingent Roll-Up Term Loans shall be deemed exchanged for Final Roll-Up DIP Loans on a 1 to 1 ratio to Final New Money DIP Loans actually funded (such additional $25,000,000 or $75,000,000 draw, as applicable, the "**Incremental Second Draw**") (such Incremental Second Draw being included in the $475,000,000 aggregate new money amount of the DIP Facility), (iii) with respect to the Third Draw (if applicable), Contingent Roll-Up Term Loans shall be deemed exchanged for Final Roll-Up DIP Loans on a 1.25 to 1 ratio to Final New Money DIP Loans actually funded, and (iv) with respect to the Fourth Draw (if applicable), Contingent Roll-Up Term Loans shall be deemed exchanged for Final Roll-Up DIP Loans on a 1.25 to 1 ratio to Final New Money DIP Loans actually funded;

(b)    authorization for the Debtors to enter into the DIP Documents, the Commitment Letter, and any and all other documents related to the fronting or seasoning of the DIP Loans, and to perform their respective obligations thereunder and all such other

---

[4] The Roll-Up DIP Loans shall not exceed (and shall be capped at) the lesser of the total aggregate amount of Prepetition Secured Notes P&I Obligations that are validly tendered in the DIP Syndication and $750 million.

3

and further acts as may be necessary, appropriate, or desirable in connection with the DIP Documents;

(c)    authorization for the Debtors to use the proceeds of the DIP Commitments and the Prepetition Collateral (as defined below) and the continued use of Unencumbered Funds, to the extent authorization is necessary, and up to $120,000,000 of Encumbered Cash in the Specified Encumbered Accounts prior to the Satisfaction of Replenishment Obligations (as defined below) in accordance with the terms hereof, to pay fees and interest under the DIP Facility and to provide working capital for, and for other general corporate purposes of, the Debtors, including for funding the Carve Out (as defined below) and paying any Adequate Protection Obligations (as defined below);

(d)    approval, on a final basis, of the Debtors' replenishment of the Specified Encumbered Accounts in an amount equal to the amount used by the Debtors of the $120,000,000 of Encumbered Cash that was authorized to be used pursuant to the Second Interim Adequate Protection Order and the Interim DIP Order, upon the later to occur of the Debtors' receipt of (i) the Initial Draw and (ii) the proceeds from the AerCap Liquidity Payment (as defined below);

(e)    for the grant of adequate protection to the RCF Secured Parties (as defined below) and the Secured Notes Parties (as defined below);

(f)    authorization for the Debtors to pay, on a final and irrevocable basis, the principal, interest, fees, expenses, and other amounts payable under the DIP Documents as such become earned, due and payable, including, without limitation the OID (as defined below) and the Backstop Premium (as defined below), agency fees, audit fees, appraisal fees, valuation fees, administrative and collateral agents' fees, and the reasonable and documented fees and disbursements of the DIP Facility Agent's (as defined below) and the other DIP Secured Parties' (as defined below) attorneys, advisors, accountants, appraisers, bankers, and other consultants, all to the extent provided in, and in accordance with, the DIP Documents;

(g)    the grant to the DIP Facility Agent, for the benefit of itself and the other DIP Secured Parties, of automatically perfected, valid, enforceable, non-avoidable, and fully-perfected liens and security interests pursuant to sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code and priming liens pursuant to section 364(d)(1) of the Bankruptcy Code on the DIP Collateral (as defined below) and all proceeds thereof, including, upon entry of this Final Order, Avoidance Proceeds (as defined below and to the extent provided herein), subject and subordinate only to (i) the Carve Out, (ii) the Permitted Liens (as defined below), if any, (iii) the Secured Notes Cash Collateral Adequate Protection Liens (but solely until the Satisfaction of Replenishment Obligations) and (iv) in respect of the Revolving Priority Collateral (as defined herein), the prepetition and post-petition liens and security interests in favor of the RCF Secured Parties with respect to the Prepetition RCF Obligations and RCF Adequate Protection Obligations, in each case, on the terms

4

and conditions set forth in this Final Order (including the relative priorities set forth in **Exhibit 1** hereto) and the DIP Documents, to secure the DIP Obligations;

(h) the granting of superpriority administrative expense claims pursuant to section 364(c)(1) of the Bankruptcy Code against each of the Debtors' estates to the DIP Facility Agent and the other DIP Secured Parties, with respect to the DIP Obligations with priority over any and all administrative expenses of any kind or nature, subject, and subordinate only to the Carve Out, on the terms and conditions set forth herein and in the DIP Documents;

(i) effective upon entry of this Final Order, authorization for the waiver of (i) the Debtors' and the estates' rights to surcharge against the DIP Collateral or the Prepetition Collateral pursuant to section 506(c) of the Bankruptcy Code with respect to the DIP Secured Parties or the Secured Parties, (ii) the doctrine of "marshaling" and any other similar equitable doctrine with respect to the DIP Collateral and the Prepetition Collateral to the extent set forth herein, and (iii) the "equities of the case" exception under Bankruptcy Code 552(b) with respect to the proceeds, products, offsprings, or profits of the Prepetition Collateral;

(j) subject to the terms of this Final Order, authorization for the DIP Facility Agent and the other DIP Secured Parties to exercise remedies under the DIP Documents on the terms described herein upon the occurrence and during the continuance of a DIP Termination Event (as defined below);

(k) the modification of the automatic stay imposed pursuant to section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms of this Final Order; and

(l) that this Court schedule a final hearing (the "**Final Hearing**") to consider entry of this Final Order authorizing and approving, on a final basis, the terms set forth herein;

in each case, as and to the extent set forth herein; and the Court having held an interim hearing on September 8, 2025 (the "**First Interim Hearing**") on the relief requested in the *Motion of the Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to Use Cash Collateral, (II) Granting Adequate Protection, (III) Modifying the Automatic Stay, (IV) Scheduling a Further Hearing on the Motion, and (V) Granting Related Relief* [ECF No. 79] (the "**First Adequate Protection Motion**"); and the Court having considered the First Adequate Protection Motion, the *Declaration of Fred Cromer in Support of the Chapter 11 Proceedings and First Day Pleadings* [ECF No. 19] (the "**First Day Declaration**"), and the *Declaration of Fred Cromer in Support of*

*the Motion of the Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to Use Cash Collateral, (II) Granting Adequate Protection, (III) Modifying the Automatic Stay, (IV) Scheduling a Further Hearing on the Motion, and (V) Granting Related Relief* [ECF No. 79-1] (the "**Cromer Declaration**"); and the Court having entered the *Interim Order (I) Authorizing the Debtors to Utilize Cash Collateral, (II) Granting Adequate Protection, (III) Modifying the Automatic Stay, (IV) Scheduling a Further Hearing on the Motion, and (V) Granting Related Relief* [ECF No. 89] (the "**First Interim Adequate Protection Order**"); and the Court having held a second interim hearing on September 30, 2025 (the "**Second Interim Hearing**") on the relief requested in the First Adequate Protection Motion and the *Supplemental Motion of the Debtors for Entry of Second Interim and Final Orders (I) Authorizing the Debtors to Use Cash in Encumbered Accounts, (II) Granting Adequate Protection, (III) Modifying the Automatic Stay, (IV) Scheduling a Further Hearing on the Motion and the Supplemental Motion, and (V) Granting Related Relief* [ECF No. 141] (the "**Supplemental Adequate Protection Motion**"); and the Court having considered the First Adequate Protection Motion, Supplemental Adequate Protection Motion, the First Day Declaration, the Cromer Declaration, and the *Declaration of Scott Farnsworth in Support of the Supplemental Motion of the Debtors for Entry of Second Interim and Final Orders (I) Authorizing the Debtors to Use Cash in Encumbered Accounts, (II) Granting Adequate Protection, (III) Modifying the Automatic Stay, (IV) Scheduling a Further Hearing on the Motion and the Supplemental Motion, and (V) Granting Related Relief* [ECF No. 142] (the "**Farnsworth Declaration**"); and the Court having entered the *Second Interim Order (I) Authorizing the Debtors to Utilize Cash in Encumbered Accounts, (II) Granting Adequate Protection, (III) Modifying the Automatic Stay, (IV) Scheduling a Further Hearing on the Motion and Supplemental Motion, and (V) Granting Related Relief* [ECF No. 224] (the "**Second Interim**

6

**Adequate Protection Order**"); and the Court having held an interim hearing on October 10, 2025 on the relief requested in the DIP Motion (the "**Interim DIP Hearing**"); and the Court having considered the First Adequate Protection Motion, the Supplemental Adequate Protection Motion, the DIP Motion, the First Day Declaration, the Cromer Declaration, the Farnsworth Declaration, and *Declaration of Brent Herlihy in Support of Motion of Debtors for Entry of (I) Interim and Final Orders, Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 503, 506, 507, and 552, (A) Authorizing the Debtors to Obtain Postpetition Financing, (B) Granting Senior Secured Liens and Superpriority Administrative Expense Claims, (C) Granting Adequate Protection, (D) Modifying the Automatic Stay, (E) Scheduling a Final Hearing on the Motion, and (F) Granting Related Relief and (II) Third Interim Order (A) Authorizing the Debtors to Utilize Cash in Encumbered Accounts; (B) Granting Adequate Protection; (C) Modifying the Automatic Stay; (D) Scheduling a Final Hearing on the Motion; and (E) Granting Related Relief* [ECF No. 194] (the "**DIP Declaration**" and, collectively with the First Day Declaration, the Cromer Declaration, and the Farnsworth Declaration, the "**Declarations**"); and the Court having entered the *(I) Interim Order (A) Authorizing the Debtors to Obtain Postpetition Financing; (B) Granting Senior Secured Liens and Superpriority Administrative Expense Claims; (C) Granting Adequate Protection; (D) Modifying the Automatic Stay; (E) Scheduling a Final Hearing on the Motion; and (F) Granting Related Relief; and (II) Third Interim Order (A) Authorizing the Debtors to Utilize Cash in Encumbered Accounts; (B) Granting Adequate Protection; (C) Modifying the Automatic Stay; (D) Scheduling a Final Hearing on the Motion; and (E) Granting Related Relief* [ECF No. 250]; and the Court having considered the First Adequate Protection Motion, the Supplemental Adequate Protection Motion, the DIP Motion, the Declarations, and the evidence submitted and the arguments proffered or adduced at the First Interim Hearing, the Second Interim Hearing, the

Interim DIP Hearing, and the Final Hearing (the Final Hearing, collectively with the First Interim Hearing, the Second Interim Hearing, and the Interim DIP Hearing, the "**Hearings**"); and upon the record of the Chapter 11 Cases; and due and proper notice of the Final Hearing having been given in accordance with Bankruptcy Rule 4001, all applicable Local Rules, and the Case Management Procedures; and it appearing that no other or further notice need be provided; and all objections, if any, to the relief requested in the DIP Motion having been withdrawn, resolved or overruled by the Court; and it appearing to the Court that granting the relief requested in the Interim DIP Order was necessary to avoid immediate and irreparable harm to the Debtors and their estates and granting the relief request in this Final Order is fair and reasonable and in the best interests of the Debtors, their estates, their creditors, and all parties in interest, and is essential for the continued operation of the Debtors' businesses and the preservation of the value of the Debtors' estates; and it appearing that the Debtors' entry into the DIP Documents is a sound and prudent exercise of the Debtors' business judgment; after due deliberation and consideration, and for good and sufficient cause appearing therefor;

**BASED ON THE REPRESENTATIONS OF THE DEBTORS, THE CREDITORS' COMMITTEE, AND OTHER PARTIES, AND THE EVIDENCE PRESENTED, AT THE FINAL HEARING, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[5]**

---

[5] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

A.    *Petition Date*.  On August 29, 2025 (the "**Petition Date**"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code commencing the Chapter 11 Cases.

B.    *Debtors in Possession*.  The Debtors remain in possession of their property and continue to operate and manage their businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  The Chapter 11 Cases are being jointly administered, for procedural purposes only, pursuant to Bankruptcy Rule 1015(b), as ordered by the Court [ECF No. 35].

C.    *Committee Formation*.  On September 17, 2025, the United States Trustee for the Southern District of New York (the "**U.S. Trustee**") appointed an Official Committee of Unsecured Creditors (the "**Creditors' Committee**") pursuant to section 1102 of the Bankruptcy Code [ECF No. 117].

D.    *Jurisdiction and Venue*.  This Court has jurisdiction over the Chapter 11 Cases, the First Adequate Protection Motion, the Supplemental Adequate Protection Motion, and the DIP Motion, and the parties and property affected hereby pursuant to 28 U.S.C. § 1334.  This Court's consideration of the First Adequate Protection Motion, the Supplemental Adequate Protection Motion, and the DIP Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue for these Chapter 11 Cases and the proceedings on the First Adequate Protection Motion, the Supplemental Adequate Protection Motion, and the DIP Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

E.    *Statutory Predicates for Relief*.  The statutory predicates for the relief set forth herein are sections 105, 361, 362, 363, 364, 503, 506, 507, and 552 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6003, 6004, and 9014, and Local Rule 4001-2.

9

F.      *Cash Collateral*.  As used herein, the term "**Cash Collateral**" shall mean any of the Debtors' cash, wherever located and held, including cash in deposit accounts, that constitutes or will constitute "cash collateral" of any of the Secured Parties or the DIP Secured Parties within the meaning of section 363(a) of the Bankruptcy Code.

G.      *Debtors' Stipulations*.  Subject only to the rights of parties in interest contained in paragraph 15 of this Final Order (and subject to the limitations contained therein), the Debtors stipulate and agree as to the following (collectively, the "**Debtors' Stipulations**"):

(i)      <u>Secured Notes</u>.  Pursuant to that certain Indenture for the PIK Toggle Senior Secured Notes due 2030 (the "**Secured Notes**"), dated as of March 12, 2025 (as amended by that certain First Supplemental Indenture, dated as of March 12, 2025, and as further amended, restated, amended and restated, supplemented, or otherwise modified from time to time, the "**Secured Notes Indenture**"), by and among Spirit IP Cayman Ltd. and Spirit Loyalty Cayman Ltd. as co-issuers (together, the "**Secured Notes Issuers**"), Spirit Airlines, LLC (as successor-in-interest to Spirit Airlines, Inc.) as parent guarantor, Spirit Aviation Holdings, Inc. as guaranteeing parent, the other guarantors from time to time party thereto (collectively, the "**Secured Notes Guarantors**"), and Wilmington Trust, National Association, as trustee and collateral custodian (in such capacities, the "**Secured Notes Trustee**"), for the benefit of the holders of the Secured Notes (collectively, the "**Secured Noteholders**"), the Secured Notes Issuers issued the Secured Notes to the Secured Noteholders, and the Secured Notes Guarantors guaranteed on a joint and several basis the obligations of the Secured Notes Issuers under the Secured Notes Indenture.  Pursuant to that certain Amended and Restated Collateral Agency and Accounts Agreement dated as of March 12, 2025 (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time in accordance with its terms, the "**Secured Notes Collateral Agency & Accounts**

10

**Agreement**"; and, together with the Secured Notes Indenture and the other Senior Secured Debt Documents (as defined in the Secured Notes Collateral Agency & Accounts Agreement), the "**Secured Notes Documents**"), by and among the Secured Notes Issuers, the other grantors from time to time party thereto, the Secured Notes Trustee, Wilmington Trust, National Association, as depositary (in such capacity, the "**Secured Notes Depositary**") and collateral agent (in such capacity, the "**Secured Notes Collateral Agent**" and, together with the Secured Notes Trustee, the Secured Noteholders, the Secured Notes Depositary, and each of the other Senior Secured Parties (as defined in the Secured Notes Collateral Agency & Accounts Agreement), collectively the "**Secured Notes Parties**"), and the other senior secured debt representatives from time to time party thereto, the Secured Notes Collateral Agent was appointed to act as collateral agent for the Secured Notes Parties, including with respect to holding, maintaining, administering, and distributing the Prepetition Secured Notes Collateral.

(ii)    _Prepetition Secured Notes Obligations_. As of the Petition Date, the Secured Notes Issuers and the Secured Notes Guarantors, without defense, counterclaim, or offset of any kind, were jointly and severally indebted and liable to the Secured Notes Parties under the Secured Notes Documents in the aggregate principal amount of not less than $856,110,857.78 of the outstanding Secured Notes, _plus_ all other fees, costs, expenses, indemnification obligations, reimbursement obligations (including on account of issued and undrawn letters of credit), charges, premiums, if any, additional interest (including interest paid-in-kind), any other "Obligations" (as defined in the Secured Notes Indenture), and all other obligations of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable under the Secured Notes Documents (collectively, the "**Prepetition Secured Notes Obligations**"). The Prepetition Secured Notes Obligations constitute legal, valid, binding, and non-avoidable

11

obligations against each of the Secured Notes Issuers and the Secured Notes Guarantors and are not subject to any avoidance, recharacterization, counterclaim, defense, offset, subordination, other claim, cause of action, or other challenge of any kind under the Bankruptcy Code, under applicable non-bankruptcy law, or otherwise.  No payments made to or for the benefit of (or obligations (other than liens and security interests, which are addressed in paragraph G(iii) below) incurred to or for the benefit of) the Secured Notes Parties by, or on behalf of, any of the Debtors prior to the Petition Date under or in connection with the Secured Notes Documents are subject to avoidance, recharacterization, counterclaim, defense, offset, subordination, other claim, cause of action, or other challenge of any kind or nature under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise.

       (iii)    <u>Prepetition Secured Notes Liens</u>.  Pursuant to the Secured Notes Documents, prior to the Petition Date, the Secured Notes Issuers and the Secured Notes Guarantors each granted to the Secured Notes Collateral Agent, for the benefit of the holders of the Secured Notes and the other Secured Notes Parties, liens on and security interests in (the "**Prepetition Secured Notes Liens**") the "Collateral" (as defined in the Secured Notes Collateral Agency & Accounts Agreement) (the "**Prepetition Secured Notes Collateral**").  As of the Petition Date, the Prepetition Secured Notes Liens (i) are valid, binding, perfected (with respect to funds held in any deposit account (as defined in Section § 9-102 (29) of the UCC), solely to the extent such cash is (A) identifiable proceeds (within the meaning of §§ 9-315 (a) and (b) of the UCC) of Prepetition Secured Notes Collateral or (B) held subject to a control agreement for the benefit of the Secured Notes Parties), and enforceable (x) first priority liens and security interests in the Prepetition Secured Notes Collateral constituting Notes Priority Collateral (as defined in that certain Notes Priority Collateral Intercreditor Agreement, dated as of March 12, 2025, by and among the

Debtors, the RCF Administrative Agent, and the Secured Notes Collateral Agent (the "**Notes Priority Collateral ICA**")), which valid, binding, perfected, and enforceable Prepetition Secured Notes Liens extended to, among other things, (1) the following accounts and all assets contained therein as of the Petition Date, and the proceeds thereof: (A) the accounts in the name of Spirit Airlines, LLC with the last four digits 6877 and 1857, each maintained at JP Morgan Chase, N.A.; (B) the account in the name of Spirit Airlines, LLC with the last four digits 8796 maintained at U.S. Bank, N.A.; and (C) the accounts in the name of Spirit Loyalty Cayman Ltd. with the last four digits x5-000, x5-001, x5-002, x5-004, and x5-005, each maintained at Wilmington Trust, National Association (the "**Cayman Accounts**") (collectively, (A)-(C), the "**Encumbered Accounts**") and (2) the approximately $23,000,000 in post-petition amounts received or expected to be received from the Debtors' credit card processors on account of prepetition sales (the "**Straddle Credit Card Receipts**"), which as of the date hereof are held in the account in the name of Spirit Airlines, LLC with the last four digits 6877 maintained at JP Morgan Chase, N.A., and (y) second priority liens and security interests in the Prepetition Secured Notes Collateral constituting Revolving Priority Collateral (as defined in the RCF Priority Collateral ICA), junior only to the Prepetition RCF Liens on the Revolving Priority Collateral pursuant to the terms of the RCF Priority Collateral ICA and RCF Permitted Liens, (ii) except to the extent, if any, that certain liens or security interests in certain real property may be subject to avoidance under the Bankruptcy Code or other applicable law, are not subject, pursuant to the Bankruptcy Code or other applicable law, to avoidance, recharacterization, recovery, subordination, attack, offset, counterclaim, defense, or Claim of any kind, (iii) as of the Petition Date are subject and/or subordinate to certain permitted liens as permitted under the Secured Notes Indenture, to the extent such permitted liens are (a) valid, perfected, and non-avoidable liens on the Petition Date or (b) valid liens in existence

13

on the Petition Date that are perfected subsequent to the Petition Date in accordance with section 546(b) of the Bankruptcy Code (the "**Secured Notes Permitted Liens**"), and (iv) constitute the legal, valid, and binding obligation of the Secured Notes Issuers and the Secured Notes Guarantors, enforceable in accordance with the terms of the applicable Secured Notes Documents.  As of the Petition Date, there was $302,610,533 of cash, funds, investments, and securities in the Encumbered Accounts (together with the Straddle Credit Card Receipts and any amounts received post-petition into the Cayman Accounts, the "**Encumbered Cash**").

(iv)      _Intercompany Loan_.  Pursuant to that certain Second Amended and Restated Loyalty Program Intercompany Note, dated as of March 12, 2025 (the "**Intercompany Note**"), among Spirit Airlines, LLC (as successor-in-interest to Spirit Airlines, Inc.), as payor (in such capacity, the "**Intercompany Borrower**"), and Spirit IP Cayman Ltd. and Spirit Loyalty Cayman Ltd. or their respective registered assigns, as payees (in such capacities, the "**Intercompany Lenders**"), the Intercompany Lenders have extended unsecured credit to the Intercompany Borrower (the "**Intercompany Loan**").

(v)      _Intercompany Loan Obligations_.  As of the Petition Date, the Intercompany Borrower, without defense, counterclaim, or offset of any kind, was indebted and liable to the Intercompany Lenders under the Intercompany Note in the aggregate principal amount of not less than $1,110,000,000.00, _plus_ accrued and unpaid interest thereon as of the Petition Date (collectively, the "**Intercompany Loan Obligations**").  The Intercompany Loan Obligations constitute legal, valid, binding, and non-avoidable obligations against certain of the Debtors and are not subject to any avoidance, recharacterization, effect, counterclaim, defense, offset, subordination, other claim, cause of action, or other challenge of any kind under the Bankruptcy Code, under applicable non-bankruptcy law, or otherwise.  No payments made to or for the benefit

14

of (or obligations incurred to or for the benefit of) the Intercompany Borrower by or on behalf of any of the Debtors under or in connection with the Intercompany Loan prior to the Petition Date are subject to avoidance, recharacterization, effect, counterclaim, defense, offset, subordination, other claim, cause of action, or other challenge of any kind or nature under the Bankruptcy Code, under applicable non-bankruptcy law, or otherwise.

(vi)    <u>Revolving Credit Facility</u>.  Pursuant to that certain Amended and Restated Credit and Guaranty Agreement, dated as of March 12, 2025 (as amended to date, the "**Amended and Restated Revolving Credit Facility Agreement**"), among Spirit Airlines, LLC (as successor-in-interest to Spirit Airlines, Inc.) (the "**RCF Borrower**"), the guarantors from time to time party thereto ("**RCF Guarantors**"), the lenders from time to time party thereto (the "**RCF Lenders**"), and Citibank, N.A., as administrative agent ("**RCF Administrative Agent**"), and Wilmington Trust, National Association, as collateral agent ("**RCF Collateral Agent**" and, together with the RCF Administrative Agent, the "**RCF Agents**"), the RCF Lenders have extended credit in the form of revolving loans to the RCF Borrower.

(vii)    <u>Prepetition RCF Obligations</u>.  As of the Petition Date, the RCF Loan Obligors, without defense, counterclaim, or offset of any kind, were jointly and severally indebted and liable to the RCF Secured Parties under the RCF Loan Documents in the aggregate principal amount of not less than $275,000,000.00, which consists of not less than $275,000,000.00 in aggregate principal amount of revolving loans, *plus* accrued and unpaid interest thereon as of the Petition Date, *plus* all other fees, costs, expenses, indemnification obligations, reimbursement obligations, charges, premiums, if any, additional interest, any other "Obligations" (as defined in the Amended and Restated Revolving Credit Facility Agreement), and all other obligations of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due,

15

owing, or chargeable under the RCF Loan Documents (collectively, the "**Prepetition RCF Obligations**"). The Prepetition RCF Obligations constitute legal, valid, binding, and non-avoidable obligations against the RCF Loan Obligors and are not subject to any avoidance, recharacterization, effect, counterclaim, defense, offset, subordination, other claim, cause of action, or other challenge of any kind under the Bankruptcy Code, under applicable non-bankruptcy law, or otherwise. No payments made to or for the benefit of (or obligations (other than liens and security interests, which are addressed in paragraph G(viii) below) incurred to or for the benefit of) the RCF Secured Parties by or on behalf of any of the Debtors prior to the Petition Date under or in connection with the RCF Loan Documents are subject to avoidance, recharacterization, counterclaim, defense, offset, subordination, other claim, cause of action, or other challenge of any kind or nature under the Bankruptcy Code, under applicable non-bankruptcy law, or otherwise.

(viii)    <u>Prepetition RCF Liens</u>. Pursuant to the RCF Loan Documents, prior to the Petition Date, the RCF Borrower and the RCF Guarantors each granted to the RCF Collateral Agent, for the benefit of the holders of the RCF Lenders and the other RCF Secured Parties, liens on and security interests in (the "**Prepetition RCF Liens**") the "Collateral" (as defined in the Amended and Restated Revolving Credit Facility Agreement) (the "**Prepetition RCF Collateral**"). As of the Petition Date, the Prepetition RCF Liens (i) are valid, binding, perfected (with respect to funds held in any deposit account (as defined in Section § 9-102 (29) of the UCC), solely to the extent such cash is (A) identifiable proceeds (within the meaning of §§ 9-315 (a) and (b) of the UCC) of Prepetition RCF Collateral or (B) held subject to a control agreement for the benefit of the RCF Secured Parties), and enforceable (x) first priority liens and security interests in the Prepetition RCF Collateral constituting Revolving Priority Collateral (as defined in the

16

Revolving Priority Collateral Intercreditor Agreement, dated as of March 12, 2025 (the "**RCF Priority Collateral ICA**")) and (y) second priority liens and security interests in the Prepetition RCF Collateral constituting Notes Priority Collateral (as defined in the Notes Priority Collateral ICA), junior only to the Prepetition Secured Notes Liens on the Notes Priority Collateral pursuant to the terms of the Notes Priority Collateral ICA and Secured Notes Permitted Liens, (ii) except to the extent, if any, that certain liens or security interests in certain real property may be subject to avoidance under the Bankruptcy Code or other applicable law, are not subject, pursuant to the Bankruptcy Code or other applicable law, to avoidance, recharacterization, recovery, subordination, attack, offset, counterclaim, defense, or Claim of any kind, (iii) as of the Petition Date are subject and/or subordinate to certain permitted liens as permitted under the Amended and Restated Revolving Credit Facility Agreement to the extent such permitted liens are (a) valid, perfected, and non-avoidable liens on the Petition Date or (b) valid liens in existence on the Petition Date that are perfected subsequent to the Petition Date in accordance with section 546(b) of the Bankruptcy Code (the "**RCF Permitted Liens**"), and (iv) constitute the legal, valid, and binding obligation of the RCF Loan Obligors, enforceable in accordance with the terms of the applicable RCF Loan Documents.

      H.     *Findings Regarding DIP Facility and Use of Prepetition Collateral.*

      (i)     <u>Need to Use Cash in the Specified Encumbered Accounts</u>.  The Debtors had a need to use up to $120,000,000 of Encumbered Cash in the Specified Encumbered Accounts to, among other things, (i) permit the orderly continuation of their respective businesses, (ii) maintain business relationships with their vendors, suppliers, customers, and other parties, (iii) pay the costs of the administration of the Chapter 11 Cases, (iv) satisfy the Adequate Protection Obligations (as defined below), and (v) satisfy other working capital and general corporate purposes of the

Debtors. The Debtors' ability to obtain liquidity through the use of up to $120,000,000 of Encumbered Cash in the Specified Encumbered Accounts was vital to the Debtors' efforts to maximize the value of their assets. On October 27, 2025, in accordance with the Second Interim Adequate Protection Order and the Interim DIP Order, the Satisfaction of Replenishment Obligations occurred.

(ii)    <u>Need for Postpetition Financing</u>. The Debtors have a need to obtain the DIP Facility to, among other things, (i) permit the orderly continuation of their respective businesses, (ii) maintain business relationships with their vendors, suppliers, customers, and other parties, (iii) pay the costs of the administration of the Chapter 11 Cases, (iv) satisfy the Adequate Protection Obligations (as defined below), and (v) satisfy other working capital and general corporate purposes of the Debtors. The Debtors' ability to obtain liquidity through the incurrence of the new indebtedness for borrowed money and other financial accommodations under the DIP Facility is vital to the Debtors' efforts to maximize the value of their assets.

(iii)    <u>Inability to Obtain More Favorable Financing</u>. The Debtors are unable to obtain financing on more favorable terms from sources other than the DIP Lenders under the DIP Documents and are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. The Debtors also are unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2), and 364(c)(3) of the Bankruptcy Code for the purposes set forth in the DIP Documents without the Debtors (i) granting to the DIP Facility Agent, for the benefit of itself and the other DIP Secured Parties, the DIP Liens (as defined below) and (ii) incurring the Adequate Protection Obligations, in each case, under the terms and conditions set forth in the Interim DIP Order, this Final Order, and the DIP Documents, in each case of (i) and (ii), subject and subordinate to the Carve Out.

18

(iv)    <u>Business Judgment</u>.  The terms of the DIP Facility, the DIP Documents, and the terms on which the Debtors may continue to use the Prepetition Collateral (including the terms on which the Debtors used up to $120,000,000 of Encumbered Cash in the Specified Encumbered Accounts prior to the Satisfaction of Replenishment Obligations), in each case, pursuant to the DIP Documents are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties.

(v)    <u>Good Faith</u>.  The Interim DIP Order, this Final Order, the DIP Facility, the Adequate Protection Obligations, and the use of Prepetition Collateral have been negotiated in good faith and at arm's length among the Debtors, the DIP Facility Agent, and the other DIP Secured Parties, and all of the Debtors' DIP Obligations shall be deemed to have been extended by the DIP Facility Agent and the other DIP Secured Parties in good faith as that term is used in section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code.  The DIP Obligations, the DIP Liens, and the DIP Superpriority Claims shall be entitled to the full protection of section 364(e) of the Bankruptcy Code to the extent provided therein in the event that this Final Order or any provision hereof is vacated, reversed, or modified on appeal or otherwise, and any liens or claims granted, or payments made, in each case, to the DIP Secured Parties and arising prior to the effective date of any such vacatur, reversal, or modification of this Final Order shall be governed in all respects by the original provisions of this Final Order, including entitlement to all of the rights, remedies, privileges, and benefits granted herein.

(vi)    <u>Arm's Length, Good Faith Negotiations</u>.  Based on the representations of the Debtors and the evidence presented at the Hearings, the terms of this Final Order, including the Adequate Protection Obligations and the use of the Prepetition Collateral (including the terms

on which the Debtors used up to $120,000,000 of Encumbered Cash in the Specified Encumbered Accounts prior to the Satisfaction of Replenishment Obligations), have been negotiated in good faith and at arm's length between the Debtors, the DIP Secured Parties, and the Secured Parties. The DIP Secured Parties and the Secured Parties have acted in good faith in respect of all actions taken by them in negotiating, implementing, documenting, or obtaining requisite approvals of the Debtors' incurrence of the DIP Facility and use of up to $120,000,000 of Encumbered Cash in the Specified Encumbered Accounts prior to the Satisfaction of Replenishment Obligations and other Prepetition Collateral, including in respect of all of the terms of this Final Order, all documents related thereto, and all transactions contemplated by the foregoing.

(vii)    <u>Contingent Roll-Up Term Loans</u>.  Upon entry of the Interim DIP Order and as reaffirmed by this Final Order, Secured Noteholders that participate as lenders in the DIP Facility and timely tender their Secured Notes and satisfy the other requirements set forth in the DIP Documents shall be issued Contingent Roll-Up Term Loans as set forth in the DIP Documents.

(viii)    <u>Interim Roll-Up DIP Loans</u>.  Upon entry of the Interim DIP Order and as reaffirmed by this Final Order, the occurrence of the DIP Syndication Initial Closing Date and the DIP Syndication Final Closing Date, respectively, and the satisfaction of the other conditions set forth in the DIP Documents, a certain amount of Contingent Roll-Up Term Loans shall be and were deemed to have been exchanged for Interim Roll-Up DIP Loans as follows:  for every dollar of Interim New Money DIP Loans funded by the DIP Lenders, two dollars of Contingent Roll-Up Term Loans shall be deemed to have been exchanged into and shall constitute Roll-Up DIP Loans until the ratio of Interim New Money DIP Loans funded by such DIP Lenders to the Roll-Up DIP Loans reaches 1:2.  The Secured Notes Parties would not be and were not willing to provide the Interim New Money DIP Loans or extend credit to the Debtors under the DIP Facility, without the

20

inclusion of such Interim Roll-Up DIP Loans upon entry of the Interim DIP Order and satisfaction of the other conditions set forth in the DIP Documents.  The Roll-Up DIP Obligations related to the Interim Roll-Up shall be and was authorized as compensation for, in consideration for, and solely on account of, the agreement of the Secured Noteholders to fund the Initial Draw under the DIP Facility and not as adequate protection for, or otherwise on account of, any Prepetition Secured Notes Obligations.

(ix)    <u>Final Roll-Up DIP Loans</u>.  Upon entry of this Final Order, the occurrence of the DIP Syndication Initial Closing Date and the DIP Syndication Final Closing Date, respectively, and the satisfaction of the other conditions set forth in the DIP Documents, a certain amount of Contingent Roll-Up Term Loans shall be deemed to have been exchanged for Final Roll-Up DIP Loans as follows:  (a) for every new dollar of Final New Money DIP Loans funded by the DIP Lenders for the Second Draw, two dollars of Contingent Roll-Up Term Loans shall be deemed to have been exchanged into and shall constitute Roll-Up DIP Loans until the ratio of Final New Money DIP Loans funded by such DIP Lenders for the Second Draw to the new Roll-Up DIP Loans reaches 1:2; (b) for every new dollar of Final New Money DIP Loans funded by the DIP Lenders for the Incremental Second Draw, one dollar of Contingent Roll-Up Term Loans shall be deemed to have been exchanged into and shall constitute Roll-Up DIP Loans until the ratio of Final New Money DIP Loans funded by such DIP Lenders for the Incremental Second Draw to the new Roll-Up DIP Loans reaches 1:1; (c) for every new dollar of Final New Money DIP Loans funded by the DIP Lenders for the Third Draw, one dollar and twenty-five cents of Contingent Roll-Up Term Loans shall be deemed to have been exchanged into and shall constitute Roll-Up DIP Loans until the ratio of Final New Money DIP Loans funded by such DIP Lenders for the Third Draw to the new Roll-Up DIP Loans reaches 1:1.25; and (d) for every new dollar of

21

Final New Money DIP Loans funded by the DIP Lenders for the Fourth Draw, one dollar and twenty-five cents of Contingent Roll-Up Term Loans shall be deemed to have been exchanged into and shall constitute Roll-Up DIP Loans until the ratio of Final New Money DIP Loans funded by such DIP Lenders for the Fourth Draw to the new Roll-Up DIP Loans reaches 1:1.25; *provided, however*, notwithstanding the foregoing, the Roll-Up DIP Loans shall not exceed $750,000,000. The Secured Notes Parties would not be willing to provide the Final New Money DIP Loans or extend credit to the Debtors under the DIP Facility, without the inclusion of such Final Roll-Up DIP Loans upon entry of this Final Order and satisfaction of the other conditions set forth in the DIP Documents. The Roll-Up DIP Obligations related to the Final Roll-Up shall be authorized as compensation for, in consideration for, and solely on account of, the agreement of the Secured Noteholders to fund the Second Draw, the Third Draw, and the Fourth Draw, as applicable, under the DIP Facility and not as adequate protection for, or otherwise on account of, any Prepetition Secured Notes Obligations.

(x)    <u>Adequate Protection</u>. Each of the Secured Parties is entitled, pursuant to sections 105, 361, 362, and 363(e) of the Bankruptcy Code, to adequate protection for and equal in amount to any post-petition diminution in value of their respective valid, perfected, and non-avoidable liens and security interests in the Prepetition Collateral, including Cash Collateral (any such post-petition diminution, to the maximum extent permitted under the Bankruptcy Code, "**Diminution in Value**"), subject to the reservation of rights set forth in paragraph 21 hereof. Each of the Secured Parties is adequately protected to the extent of any diminution in the value of their respective interests in property of the estate resulting from the use of cash in the Specified Encumbered Accounts as authorized pursuant to the Second Interim Adequate Protection Order

22

and the Interim DIP Order by the value of the Prepetition Collateral, the DIP Collateral, the Owned Aircraft Surplus, and the Satisfaction of Replenishment Obligations.

I.    *Findings Regarding Backstop Premium*.    Based on the representations of the Debtors and the evidence presented at the Interim DIP Hearing and the Final Hearing, (i) the amount, terms and conditions of the Backstop Premium are reasonable and constitute actual and necessary costs and expenses to preserve the Debtors' estates and (ii) the Backstop Premium is a bargained-for and integral part of the transactions specified in the Commitment Letter and, without such inducements, the Backstop DIP Lenders would not have agreed to the terms and conditions of the backstop commitment.

J.    *Good Cause Shown; Best Interest*.    Good cause has been shown for entry of this Final Order, which is in the best interests of the Debtors' respective estates and creditors as its implementation will, among other things, allow for the continued operation of the Debtors' business and enhance the Debtors' prospects for a successful restructuring.    Absent the relief granted in the Interim DIP Order and this Final Order, the Debtors' estates would have been immediately and irreparably harmed.

K.    *Notice*.    In accordance with Bankruptcy Rules 2002, 4001(b) and (c), and 9014 and the Local Rules, notice of the Final Hearing and the emergency relief requested in the DIP Motion has been provided by the Debtors.    Under the circumstances, the Debtors' notice of the DIP Motion, the relief requested therein, and the Final Hearing complies with Bankruptcy Rules 2002, 4001(b) and (c), and 9014, the applicable Local Rules, and the Case Management Procedures.

L.    *Findings Regarding Roll-Up DIP Loans*.    Local Rule 4001-2(g)(5) applied to the relief granted in the Interim DIP Order, and based on the representations made and the evidence presented at the Interim DIP Hearing as reflected in the transcript, there are no Challenges with

respect to the Interim Roll-Up and the DIP Liens granted with respect thereto.  Local Rule 4001-2(g)(5) also applied to the relief granted in this Final Order, and based on the representations made and the evidence presented at the Final Hearing as reflected in the transcript, there are no Challenges with respect to an additional $150,000,000 of the Final Roll-Up and the DIP Liens granted with respect thereto.  For the avoidance of doubt, nothing in this Final Order impairs the right of the Creditors' Committee to seek to Challenge and for the Court to grant appropriate relief with respect to (i) any Roll-Up DIP Obligations in excess of the principal amount of $550,000,000 (plus interest, if any) or (ii) the extent of the Prepetition Secured Notes Liens securing the Prepetition Secured Notes Obligations after accounting for the Roll-Up DIP Loans.

M.    *Replenishment of Encumbered Cash*.  Based on the representations made by the Debtors at the Final Hearing, on October 27, 2025, the Debtors replenished all Encumbered Cash authorized to be used pursuant to the Second Interim Adequate Protection Order and the Interim DIP Order depositing (i) $37,753,772.85 into the account in the name of Spirit Airlines, LLC with the last four digits x1857 and (ii) $45,000,000.00 into the account in the name of Spirit Airlines, LLC with the last four digits x6877, and the Satisfaction of Replenishment Obligations therefore has occurred.

**NOW THEREFORE**, based upon the First Adequate Protection Motion, the Supplemental Adequate Protection Motion, the DIP Motion, the Declarations, the evidence adduced at the Hearings, and the record before the Court, and after due consideration, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.    *Motion Granted*.  The DIP Motion is hereby granted on a final basis as set forth herein.  The DIP Facility and the use of the Prepetition Collateral of the Secured Parties is hereby

authorized, in each case, upon the terms and conditions and to the extent set forth in this Final

Order and the DIP Documents.  All objections and reservations of rights filed or asserted in respect

of the relief set forth in this Final Order that have not been withdrawn, waived, or settled, are

hereby denied and overruled with prejudice.

2.      *Authorization of the DIP Facility, the DIP Documents, and the Use of DIP*

*Collateral.*

(a)      <u>Authorization of DIP Documents</u>.  The Debtors are hereby authorized and

empowered, on a final basis, to execute, enter into and deliver, and perform under the DIP

Documents and such additional documents, instruments, certificates, and agreements as may be

reasonably necessary or required to perform their obligations under the DIP Facility and this Final

Order and to implement the transactions contemplated thereunder and hereunder.

(b)      <u>Authorization to Borrow</u>.  The Debtors are hereby authorized, on a final

basis, to execute, deliver, enter into, and, as applicable, comply with and perform all of their

obligations under the DIP Documents and take other and further acts as may be necessary,

appropriate, or desirable in connection therewith.  The Borrower is authorized, on a final basis,

to borrow the DIP Loans pursuant to the DIP Credit Agreement and the Guarantors are authorized,

on a final basis, to provide a guarantee of payment and performance in respect of the DIP

Obligations, in each case, in accordance with the DIP Documents, and the DIP Obligations hereby

are approved, on a final basis, (as and when such amounts become earned, due, and payable in

accordance with the DIP Documents) without the need to seek further Court approval.

(c)      <u>Use of DIP Collateral and Prepetition Collateral</u>.  The Debtors are hereby

authorized, on a final basis, to use the proceeds of the DIP Collateral and the Prepetition Collateral

of the Secured Parties (excluding, for the avoidance of doubt, the $120,000,000 of Encumbered

Cash in the Specified Encumbered Accounts authorized to be used pursuant to the Second Interim Adequate Protection Order and the Interim DIP Order, as a result of the occurrence of the Satisfaction of Replenishment Obligations), upon the terms and conditions and to the extent set forth in this Final Order and the DIP Documents.  In accordance with the DIP Documents, upon the sale or other disposition of any DIP Collateral (excluding any Revolving Priority Collateral) that is required to repay the DIP Obligations (including, without limitation, the proceeds from any sale of the Headquarters), the proceeds thereof shall first be applied to repay the New Money DIP Loans, and thereafter, any remaining proceeds shall be used to repay the Roll-Up DIP Loans, in each case, in accordance with the terms and priorities set forth in this Final Order and the DIP Documents.

        (d)     <u>DIP Fees and Expenses; Indemnification</u>.  Subject to paragraph 2(b) of this Final Order, the Debtors are hereby authorized and empowered, on a final basis, to pay all DIP Obligations as such amounts become due and payable in accordance with this Final Order and the DIP Documents, without the need for further order of the Court, and any and all fees payable in respect of the Initial Draw, the Second Draw, the Incremental Second Draw, the Third Draw, and the Fourth Draw, including, without limitation, the original issue discount issued at 3.00% of the New Money DIP Loans (the "**OID**") and the backstop premium equal to 9.00% (payable in kind) on the New Money DIP Loans as such New Money DIP Loans are funded (the "**Backstop Premium**") in accordance with the Commitment Letter, are hereby approved on a final basis. Without limiting the foregoing, in accordance with this Final Order, the Debtors are hereby authorized and empowered, on a final basis, to:

        (i)     pay any and all fees payable under the DIP Documents;

        (ii)     jointly and severally pay or reimburse the reasonable and documented fees and out-of-pocket costs and expenses incurred, whether prepetition or post-petition, by (A) the DIP Facility Agent (including the fees and out-of-pocket

costs and expenses of Seward & Kissel LLP, as counsel to the DIP Facility Agent), (B) the Fronting Lender (including the fees and out-of-pocket costs and expenses of Dentons US LLP, as counsel to the Fronting Lender) and (C) the Ad Hoc Committee of Secured Noteholders (including the fees and out-of-pocket costs and expenses of the Ad Hoc Committee of Secured Noteholder Advisors), in each case, in connection with (1) the Chapter 11 Cases generally, (2) the preparation, negotiation, and execution of the DIP Documents, (3) the funding of the DIP Facility, (4) the creation, perfection, or protection of the liens under the DIP Documents (including all search, filing, and recording fees), (5) the on-going administration of the DIP Documents (including the preparation, negotiation, and execution of any amendments, consents, waivers, assignments, restatements, or supplements thereto), and (6) the enforcement of the DIP Documents (collectively, the "**DIP Fees and Expenses**"); and

(iii)     jointly and severally indemnify the (i) the DIP Facility Agent (including the fees and out-of-pocket costs and expenses of Seward & Kissel LLP, as counsel to the DIP Facility Agent), (ii) the Ad Hoc Committee of Secured Noteholders (solely in their capacity as DIP Lenders) (including the fees and out-of-pocket costs and expenses of the Ad Hoc Committee of Secured Noteholder Advisors), and (iii) the Fronting Lender, and each of their respective affiliates, successors, and assigns and the respective partners, officers, directors, employees, agents, advisors, controlling persons, and members of each of the foregoing and attorneys and representatives of each of the foregoing (each, an "**Indemnified Person**"), and hold them harmless from and against any and all losses, claims, damages, costs, expenses (including but not limited to reasonable and documented legal fees and expenses), and liabilities arising out of or relating to the execution or delivery of the DIP Documents, transactions contemplated hereby and thereby, and any actual or proposed use of the proceeds of any DIP Loans made under the DIP Facility in accordance with the terms of the DIP Documents; *provided* that no such person will be indemnified for costs, expenses, or liabilities to the extent determined by a final, non-appealable judgment of a court of competent jurisdiction to have been incurred solely by reason of the bad faith, actual fraud, gross negligence, or willful misconduct of such person (or their related persons). No Indemnified Person, in its capacity as such, shall have any liability (whether direct or indirect, in contract, tort, or otherwise) to the Debtors or any shareholders or creditors of the Debtors for or in connection with the transactions contemplated hereby, except to the extent such liability is found in an final non-appealable judgment by a court of competent jurisdiction to have resulted from such Indemnified Person's bad faith, actual fraud, gross negligence, or willful misconduct, and, in no event shall any Indemnified Person be liable under any theory for any special, indirect, consequential, or punitive damages, *provided*, for the avoidance of doubt, that nothing herein shall limit any person's liability, rights, or remedies under the Notes Priority Collateral ICA or RCF Priority Collateral ICA.

(e)    <u>Amendment of DIP Documents</u>.    The Debtors are hereby authorized and empowered, on a final basis, to execute, enter into and deliver, and perform under one or more amendments, waivers, consents, or other modifications to and under the DIP Documents (in each case, in accordance with the terms of the applicable DIP Document); *provided however*, that a copy of all amendments, waivers, consents, or other modifications to and under the DIP Documents shall be provided (which may be by electronic mail) to the U.S. Trustee, counsel to the Creditors' Committee, and counsel to the RCF Agents no later than two (2) business days prior to the anticipated date of effectiveness thereof; *provided further, however*, that all material amendments or modifications to and under the DIP Documents, including, but not limited to, amendments or modifications that materially and adversely affect or impact the rights of the Creditors' Committee or the RCF Secured Parties (the "**Material DIP Amendment**") shall be filed with the Court, and if no objection to the Material DIP Amendment is made within five (5) business days of the filing of the Material DIP Amendment, then, without further application to or order of the Court, such Material DIP Amendment shall automatically be deemed approved and effective; *provided further, however*, if an objection is made within such time period, then such Material DIP Amendment shall be subject to a hearing and approval of the Court.

(f)    <u>Performance of Other Acts</u>.    The Debtors are hereby authorized and empowered, on a final basis, to execute such other documents, and perform all such other acts, as may be reasonably necessary or required for the Debtors to perform under the DIP Facility and implement the transactions contemplated in this Final Order and the DIP Documents.

(g)    <u>DIP Syndication</u>.    Based on the representations of the Debtors and other parties, and the evidence presented, at the Interim DIP Hearing and the Final Hearing, the DIP Syndication and the DIP Syndication Materials are fair and reasonable and were and are being

28

implemented in good faith by the Debtors, the Information Agent, the DIP Facility Agent, the Secured Notes Trustee, and the other parties involved in the DIP Syndication. The Debtors, the Information Agent, the DIP Facility Agent, the Secured Notes Trustee, and the other parties involved in the DIP Syndication are hereby authorized, on a final basis, to take all actions they deem to be reasonably necessary or advisable to effect the DIP Syndication, including pursuant to the DIP Syndication Materials, and no such party shall be liable to any person or entity with respect to any act taken or omitted from being taken in connection with such syndication, including any actions taken prior to entry of the Interim DIP Order or this Final Order, which actions are hereby ratified. The Debtors, with the consent of the DIP Lenders and the Secured Notes Trustee (to the extent such modifications, amendments, or supplements affect the rights or obligations of the Secured Notes Trustee), reserve the right to modify, amend, or supplement the DIP Syndication Materials prior to consummation of the DIP Syndication.

3.    *DIP Obligations*.

(a)    Upon entry of the Interim DIP Order and as reaffirmed by this Final Order, the DIP Facility in respect of the Initial Draw and the Interim Roll-Up was approved. Upon entry of this Final Order, the DIP Facility in respect of the Second Draw, the Incremental Second Draw, the Third Draw, the Fourth Draw, and the Final Roll-Up are approved. The DIP Documents shall constitute valid, binding, enforceable, and non-avoidable obligations of each of the Debtors, and are fully enforceable against each of the Debtors, their estates, and any successors thereto, including, without limitation, any estate representative or trustee appointed in any of the Chapter 11 Cases, in any case under chapter 7 of the Bankruptcy Code upon the conversion of any of the Chapter 11 Cases, and/or upon the dismissal of any of the Chapter 11 Cases or any such successor

cases (collectively, the "**Successor Cases**"), in each case, in accordance with the terms of the DIP Documents and this Final Order.

(b)    The Debtors are jointly and severally liable for any and all DIP Obligations. The DIP Obligations shall be due and payable, without notice or demand, and the Debtors' use of the Cash Collateral of the Secured Parties shall automatically cease, on the DIP Termination Date (as defined below) (subject to paragraph 12 hereof).

(c)    All obligations incurred, payments made, and transfers or grants of liens and security interests set forth in the Interim DIP Order, this Final Order, and/or the DIP Documents by the Debtors are granted to or for the benefit of the DIP Secured Parties and the Secured Parties (as applicable) and were and are granted contemporaneously with the making of the loans and commitments and other financial accommodations secured thereby.  No obligation, payment, transfer, or grant of liens or security interests under the Interim DIP Order, this Final Order, or the DIP Documents in respect of the Interim New Money DIP Loans, Interim Roll-Up DIP Loans, the Final New Money DIP Loans, the Final Roll-Up DIP Loans, and other DIP Obligations to the DIP Secured Parties or, subject to paragraph 15, the Secured Parties, shall be limited, stayed, restrained, voidable, avoidable, or recoverable under the Bankruptcy Code or under any applicable law, or subject to any Challenge (subject, solely in the case of the DIP Fees and Expenses and the Adequate Protection Professional Fees and Expenses (as defined below), to the professional fee review procedures set forth in paragraph 9 of this Final Order).

4.    *Use of Funds.*

(a)    <u>Use of Unencumbered Funds</u>.  To the extent authorization is necessary, the Debtors are hereby further authorized to use, on a consensual basis, (a) the $275,000,000.00 in available cash drawn on August 21, 2025, under their Revolving Credit Facility (the "**Available**

**RCF Cash**"), (b) cash in the Foreign Accounts (as defined and further described in the *Motion of the Debtors for Entry of Interim and Final Orders (I) Authorizing (A) the Debtors to Maintain Their Existing Cash Management System, Bank Accounts, and Business Forms, (B) the Debtors to Open and Close Bank Accounts, and (C) Financial Institutions to Administer the Bank Accounts and Honor and Process Related Checks and Transfers, (II) Waiving Deposit and Investment Requirements, and (III) Allowing Intercompany Transactions and Affording Administrative Expense Priority to Post-Petition Intercompany Claims* [ECF No. 18] (the "**Cash Management Motion**"), (c) Post-Petition Cash, and (d) any other unencumbered cash, including the AerCap Liquidity Payment, not subject to any perfected lien or other security interest (which amounts in this clause (d), for the avoidance of doubt, shall exclude (w) the Encumbered Cash, (x) the Owned Aircraft Surplus (until such time as the Replenishment of Encumbered Cash, after which such Owned Aircraft Surplus may be used solely in accordance with this Final Order and the DIP Documents), (y) other than with respect to Revolving Priority Collateral, any other cash, funds, investments, or securities from the sale or disposition of Prepetition Collateral or DIP Collateral, in each case outside of the ordinary course of business, and (z) with respect to Revolving Priority Collateral, any proceeds thereof other than Spare Parts up to the Spare Parts Cap and sold in the ordinary course of business and consistent with past practice, (collectively, (a)-(d), the "**Unencumbered Funds**").    Notwithstanding the foregoing, (i) all Unencumbered Funds (including the AerCap Liquidity Payment as defined in the *Motion of Debtors for Entry of an Order (I) Approving the Global Restructuring Term Sheet with AerCap Ireland Limited, (II) Authorizing and Approving Assumption and Rejection of Certain Aircraft Agreements, (III) Authorizing Entry Into the New Lease Agreements and Definitive Documents, and (IV) Granting Related Relief* [ECF No. 135] (the "**AerCap Motion**") shall constitute DIP

31

Collateral and (ii) all parties' rights are reserved as to whether the Unencumbered Funds are encumbered by Prepetition Secured Notes Liens and Prepetition RCF Liens.

(b)    <u>Use of Encumbered Cash in the Specified Encumbered Accounts and Satisfaction of Replenishment Obligations</u>.  The Debtors were authorized pursuant to the Second Interim Adequate Protection Order and the Interim DIP Order to use, on a consensual basis, up to $120,000,000 of Encumbered Cash comprising (A) the amount in the account in the name of Spirit Airlines, LLC with the last four digits 6877 maintained at JP Morgan Chase, N.A. and (B) $37,536,270 of the amount in the account in the name of Spirit Airlines, LLC with the last four digits 1857 maintained at JP Morgan Chase, N.A. (such accounts, the "**Specified Encumbered Accounts**").  The satisfaction of the Secured Notes Adequate Protection Claim arising from the Diminution in Value in the amount equal to the amount of Encumbered Cash in the Specified Encumbered Accounts used by the Debtors pursuant to the Second Interim Adequate Protection Order and the Interim DIP Order through the replenishment in full thereof (the "**Replenishment of Encumbered Cash**") on the later of (a) the Debtors' receipt of the Initial Draw and (b) the receipt of the AerCap Liquidity Payment as defined in the AerCap Motion, which occurred on October 27, 2025, was authorized by the Interim DIP Order and is affirmed by this Final Order (the "**Satisfaction of Replenishment Obligations**").  As of the Satisfaction of Replenishment Obligations, the Debtors are not authorized to use, and shall not use, cash, funds, investments, or securities from the Specified Encumbered Accounts or any other Encumbered Cash in any other Encumbered Accounts (including any amounts on account of the Satisfaction of Replenishment Obligations) without the consent of the Required DIP Lenders (other than to fund the Carve Out Reserves to the extent provided herein).  Notwithstanding anything in this Final Order to the contrary, the Debtors are not authorized hereunder (or under any previously entered orders) to use

32

the proceeds of Revolving Priority Collateral (other than cash up to the Spare Parts Cap from the

sale or disposition of Spare Parts that are Revolving Priority Collateral, which sale or disposition

is in the ordinary course of business and consistent with past practice) except to fund the Carve

Out Reserves to the extent provided in this Final Order.

5.    *DIP Liens*.

(a)    As security for the DIP Obligations, effective as of the entry of the Interim

DIP Order and as reaffirmed by this Final Order (and without the necessity of the execution,

recordation or filing by the Debtors or the DIP Secured Parties of any pledge, collateral, or security

documents, mortgages, deeds of trust, financing statements, notations of certificates of title, control

agreements, or other similar documents, or the taking of any other action to take possession of or

control over any DIP Collateral), the DIP Facility Agent, for the benefit of the DIP Secured Parties,

is hereby granted, on a final basis, valid, binding, enforceable, non-avoidable, and automatically

and properly perfected liens and security interests (collectively, the "**DIP Liens**") in all DIP

Collateral, in each case, subject and subordinate to the Carve Out, and subject to the relative

priorities set forth in this Final Order (including **Exhibit 1** hereto).

(b)    The DIP Liens shall be subject to the following priorities (subject, in each

case, to the Carve Out):

(i)    <u>First Lien on Unencumbered Property</u>.  Pursuant to section 364(c)(2) of
the Bankruptcy Code, and subject and subordinate in all respects to the
Carve Out, valid, binding, continuing, enforceable, fully perfected first
priority senior security interests in and liens upon all DIP Collateral, to
the extent such DIP Collateral is not (a) Revolving Priority Collateral or
(b) subject to valid, perfected, and non-avoidable liens as of the Petition
Date or valid and non-avoidable liens in favor of third parties that were in
existence immediately prior to the Petition Date that are perfected as
permitted by section 546(b) of the Bankruptcy Code;

(ii)    <u>Liens Junior to Certain Other Liens</u>.  Pursuant to section 364(c)(3) of the
Bankruptcy Code, and subject and subordinate in all respects to the Carve
Out, valid, binding, continuing, enforceable, fully perfected junior

33

security interests in and liens on the DIP Collateral, to the extent such DIP Collateral is Revolving Priority Collateral or subject to Permitted Liens with the relative priorities as set forth in **Exhibit 1** attached hereto;

(iii) <u>Liens Priming the Prepetition Secured Notes Liens</u>.  Pursuant to section 364(d)(1) of the Bankruptcy Code, and subject and subordinate in all respects to the Carve Out, a valid, binding, continuing, enforceable, fully perfected priming senior security interests in and liens upon the Prepetition Secured Notes Collateral, which security interests and liens shall prime the Prepetition Secured Notes Liens; and

(iv) <u>Liens on the Owned Aircraft Surplus</u>.  Notwithstanding anything to the contrary in the Interim DIP Order or this Final Order, pursuant to section 364(c)(3) of the Bankruptcy Code, and subject and subordinate in all respects to the Carve Out, valid, binding, continuing, enforceable, fully perfected junior security interests in and liens upon the Owned Aircraft Surplus until the Satisfaction of Replenishment Obligations, and thereafter, as a result of the Satisfaction of Replenishment Obligations, pursuant to section 364(c)(2) of the Bankruptcy Code, and subject and subordinate in all respects to the Carve Out, valid, binding, continuing, enforceable, fully perfected first priority senior security interests in and liens upon the Owned Aircraft Surplus, in each case with the relative priorities as set forth in **Exhibit 1** attached hereto.

Other than as set forth above, the DIP Liens shall be senior to all security interests in, liens on, or claims against any of the DIP Collateral, including any lien or security interest that is avoided or preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code.

6.     *DIP Superpriority Claims*.  Subject only to the Carve Out, pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed superpriority administrative expense claims against each of the Debtors' estates to the extent set forth in the Bankruptcy Code (the "**DIP Superpriority Claims**"), without the need to file any proof of claim or request for payment of administrative expenses, with priority over any and all other administrative expense claims, adequate protection claims, and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, in each case, subject to the relative lien priorities set forth in **Exhibit 1**.  Subject to paragraph 14 with respect to the DIP Superpriority Claims on account of the Roll-Up DIP Loans (the "**Roll-Up Superpriority**

**Claims**"), the DIP Superpriority Claims shall, for purposes of section 1129(a)(9)(A) of the Bankruptcy Code, be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code and shall be payable by each of the Debtors on a joint and several basis.

7.    *Adequate Protection for the Secured Notes Parties*.  The Secured Notes Parties are entitled, pursuant to sections 361, 362, 363(e), 364(d)(1), and 507 of the Bankruptcy Code, to, and are hereby granted, on a final basis, adequate protection of the Secured Notes Parties' interests in the Prepetition Secured Notes Collateral (including the Cash Collateral of the Secured Notes Parties) as follows (the "**Secured Notes Adequate Protection Obligations**"):

(a)    Secured Notes Adequate Protection Claims.  The Secured Notes Collateral Agent, for the benefit of itself and the Secured Notes Parties, is hereby granted, in the amount of any Diminution in Value of their interests in the Prepetition Secured Notes Collateral from and after the Petition Date, superpriority administrative expense claims to the extent contemplated by section 507(b) of the Bankruptcy Code (the "**Secured Notes Adequate Protection Claims**") against each of the Debtors.  The Secured Notes Adequate Protection Claims against each of the Debtors shall be (a) subject and subordinate only to the Carve Out and the DIP Superpriority Claims, (b) *pari passu* with the RCF Adequate Protection Claims, and (c) senior to any and all other administrative expense claims and all other claims against the Debtors and their estates, now existing or hereafter arising, of any kind or nature whatsoever, in each case, subject to the relative lien priorities set forth in **Exhibit 1**.

(b)    Secured Notes Adequate Protection Liens.  The Secured Notes Collateral Agent, for the benefit of itself and the Secured Notes Parties, is hereby granted, effective and perfected as of the entry of the First Interim Adequate Protection Order (and without the necessity of the execution, recordation, or filing by the Debtors or the Secured Notes Parties of any pledge,

collateral, or security documents, mortgages, deeds of trust, financing statements, notations of certificates of title, control agreements, or other similar documents, or the taking of any other action to take possession of or control over any DIP Collateral), in the amount of any Diminution in Value of their interests in the Prepetition Secured Notes Collateral from and after the Petition Date, valid, binding, enforceable, and automatically perfected replacement and additional liens and security interests in the Owned Aircraft Surplus and the DIP Collateral (the "**Secured Notes Adequate Protection Liens**"). The Secured Notes Adequate Protection Liens shall be subordinate only to (a) the Carve Out and the DIP Liens, (b) with respect to the DIP Collateral constituting Revolving Priority Collateral, the RCF Adequate Protection Liens and the Prepetition RCF Liens, and (c) the Secured Notes Permitted Liens (if any) (and subject to the relative priorities set forth in **Exhibit 1**), it being understood that notwithstanding anything to the contrary in the First Interim Adequate Protection Order, the Second Interim Adequate Protection Order, the Interim DIP Order, or this Final Order to the contrary, other than with respect to the Owned Aircraft Surplus solely prior to the Satisfaction of Replenishment Obligations, in no circumstances and at no time in these Chapter 11 Cases shall the Secured Notes Adequate Protection Liens be senior to or *pari passu* with any DIP Liens, regardless of whether any such liens attach prior in time. Without limiting the foregoing, the Secured Notes Adequate Protection Liens shall otherwise be senior to all other security interests in, liens on, or claims against any of the DIP Collateral (subject to the relative priorities set forth in **Exhibit 1**), including (but subordinate and junior to the DIP Liens) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code.

(c)     Secured Notes Adequate Protection Liens on Owned Aircraft Surplus. Pursuant to the Second Interim Adequate Protection Order and the Interim DIP Order and as

reaffirmed by this Final Order, without limiting the adequate protection in paragraphs 7(a) and 7(b) above, the Secured Notes Collateral Agent, for the benefit of itself and the Secured Notes Parties, was granted, effective and perfected as of the entry of the Second Interim Adequate Protection Order (and without the necessity of the execution, recordation, or filing by the Debtors of any pledge, collateral, or security documents, mortgages, deeds of trust, financing statements, notations of certificates of title, control agreements, or other similar documents, or the taking of any other action to take possession of or control over any Owned Aircraft Surplus), in the amount of any Diminution in Value of their interests in Cash Collateral from and after the Petition Date resulting from the use of the Encumbered Cash in the Specified Encumbered Accounts as authorized pursuant to the Second Interim Adequate Protection Order and the Interim DIP Order valid, binding, enforceable, and automatically perfected replacement and additional liens and security interests (the "**Secured Notes Cash Collateral Adequate Protection Liens**") in the net proceeds of the refinancing, sale or other disposition of the twenty (20) aircraft held for sale identified in **Exhibit 2** hereof (the "**Owned Aircraft**") after satisfaction in full of any Aircraft Debt secured by such Owned Aircraft (collectively, the "**Owned Aircraft Surplus**"). The Secured Notes Cash Collateral Adequate Protection Liens were subordinate to only the Carve Out and were otherwise senior to all other security interests in, liens on, and claims against the Owned Aircraft Surplus. The Debtors' use of up to $120,000,000 of Encumbered Cash in the Specified Encumbered Accounts as authorized by the Second Interim Adequate Protection Order and the Interim DIP Order (net of any Replenishment of Encumbered Cash) constituted Diminution in Value in the amount equal to the amount of such cash so used; *provided* that as a result of the occurrence of the Satisfaction of Replenishment Obligations, the Debtors shall be permitted to use the Owned Aircraft Surplus solely in accordance with the terms of this Final Order and the DIP

Documents (including, for the avoidance of doubt, any mandatory prepayment provisions thereof).

Absent further court order on proper notice to the Aircraft Counterparties holding the Aircraft Debt

associated with the Owned Aircraft and Collateral Agent, and the Secured Notes Parties and the

RCF Agents, the Debtors are prohibited from incurring additional indebtedness secured by or in

respect of the Owned Aircraft, which notice would allow such parties to raise any adequate

protection issues and/or the issues arising under section 1110 of the Bankruptcy Code.

Notwithstanding anything to the contrary herein, following the Satisfaction of Replenishment

Obligations, without the consent of the Required DIP Lenders, the Debtors shall be prohibited

from granting any liens or security interests in the Owned Aircraft that are junior to the existing

liens and security interests securing the Aircraft Debt as of the Petition Date; *provided*, *however*,

that, the foregoing shall not prohibit the Debtors from refinancing such Aircraft Debt.

(d)      Secured Notes Adequate Protection Fees and Expenses.  The Debtors are

authorized and directed to pay all of the reasonable and documented out-of-pocket fees, costs, and

expenses related to these Chapter 11 Cases of the Secured Notes Trustee, the Secured Notes

Collateral Agent, the Secured Notes Depositary, and the Ad Hoc Committee of Secured

Noteholders, whether incurred prior to or after the Petition Date, including, without limitation, the

reasonable and documented fees and expenses of (i) the advisors (legal, financial, or otherwise),

including Seward & Kissel LLP, retained by the Secured Notes Trustee, the Secured Notes

Collateral Agent, and the Secured Notes Depositary and (ii) the Ad Hoc Committee of Secured

Noteholder Advisors, in each case, subject to the review procedures set forth in paragraph 9 of this

Final Order, including the notice provisions thereof (the "**Secured Notes Adequate Protection**

**Professional Fees and Expenses**").  For the avoidance of doubt, nothing in this Final Order

constitutes a waiver of, or otherwise impairs, any rights of any party in interest to seek

recharacterization as principal payments under the Secured Notes Indenture of any adequate protection fees and expenses payable to the Secured Notes Parties pursuant to this paragraph 7(d) or any other appropriate remedies.

(e)     *Additional Secured Notes Adequate Protection Information Rights*.  The Debtors shall provide the Ad Hoc Committee of Secured Noteholder Advisors at the same time as such reporting is provided to the RCF Administrative Agent and the RCF Administrative Agent Advisors, all reporting to be provided to the RCF Administrative Agent and the RCF Administrative Agent Advisors as set forth herein, which reporting shall be provided to the Ad Hoc Committee of Secured Noteholder Advisors on a professional eyes-only basis, unless otherwise agreed by the Debtors.

8.     *Adequate Protection for the RCF Secured Parties*.  The RCF Secured Parties are entitled, pursuant to sections 361, 362, 363(e), and 507 of the Bankruptcy Code, to, and are hereby granted, on a final basis, adequate protection of the RCF Secured Parties' interests in Prepetition RCF Collateral (including in any Cash Collateral of the RCF Secured Parties), as follows (the "**RCF Adequate Protection Obligations**"):

(a)     *RCF Adequate Protection Claims*.  The RCF Administrative Agent, for the benefit of the RCF Secured Parties, is hereby granted, in the amount of any Diminution in Value of the RCF Secured Parties' respective interests in the Prepetition RCF Collateral from and after the Petition Date, superpriority administrative expense claims to the extent contemplated by section 507(b) of the Bankruptcy Code (the "**RCF Adequate Protection Claims**").  The RCF Adequate Protection Claims shall be (a) subject and subordinate only to the Carve Out and the DIP Superpriority Claims, (b) *pari passu* with the Secured Notes Adequate Protection Claims, and (c) senior to any and all other administrative expense claims and all other claims against the

39

Debtors and their estates, now existing or hereafter arising, of any kind or nature whatsoever, in each case, subject to the relative lien priorities set forth in **Exhibit 1**.

(b)    RCF Adequate Protection Liens.  The RCF Agents, for the benefit of the RCF Secured Parties, are hereby granted, effective and perfected as of the entry of the First Interim Adequate Protection Order (and without the necessity of the execution, recordation, or filing by the Debtors or any RCF Secured Parties of any pledge, collateral, or security documents, mortgages, deeds of trust, financing statements, notations of certificates of title, control agreements, or other similar documents, or the taking of any other action to take possession of or control over any DIP Collateral), valid, binding, enforceable, and automatically perfected replacement and additional liens and security interests, (1) in all Spare Parts (the "**Spare Parts Collateral**"), and (2) in the amount corresponding to any Diminution in Value of their interests in the Prepetition RCF Collateral from and after the Petition Date, in the Owned Aircraft Surplus (the "**RCF Secured Parties Cash Collateral Adequate Protection Liens**" and, together with the Secured Notes Cash Collateral Adequate Protection Liens, the "**Cash Collateral Adequate Protection Liens**") and all other DIP Collateral (the liens and security interests described in clauses (1) and (2), collectively, the "**RCF Adequate Protection Liens**").  The RCF Adequate Protection Liens on the DIP Collateral shall be subordinate to (a) with respect to the DIP Collateral constituting Revolving Priority Collateral, the Professional Fee Carve Out (up to the RCF Professional Fee Carve Out Cap), (b) with respect to the DIP Collateral constituting Notes Priority Collateral, the Carve Out, the DIP Liens, the Secured Notes Adequate Protection Liens, and the Prepetition Secured Notes Liens, (c) with respect to DIP Collateral not constituting Notes Priority Collateral or Revolving Priority Collateral, the Carve Out and the DIP Liens, (d) with respect to the Owned Aircraft Surplus, prior to the Satisfaction of Replenishment Obligations, the Carve Out

and the Secured Notes Cash Collateral Adequate Protection Liens and upon the Satisfaction of Replenishment Obligations, solely the Carve Out and the DIP Liens, and (e) the RCF Permitted Liens (if any) (and subject to the relative priorities set forth in **Exhibit 1**), it being understood that notwithstanding anything in the First Interim Adequate Protection Order, the Second Interim Adequate Protection Order, the Interim DIP Order, or this Final Order to the contrary, in no circumstances and at no time in these Chapter 11 Cases shall the RCF Adequate Protection Liens on the DIP Collateral (other than in respect of Revolving Priority Collateral) be senior to or *pari passu* with any DIP Liens, regardless of whether any such liens attach prior in time.  The RCF Adequate Protection Liens on the Revolving Priority Collateral shall be subordinate only to (a) the Professional Fee Carve Out (up to the RCF Professional Fee Carve Out Cap) and (b) the RCF Permitted Liens (if any).  Without limiting the foregoing, the RCF Adequate Protection Liens shall otherwise be senior to all other security interests in, liens on, or claims against any of the DIP Collateral (subject to the relative priorities set forth in **Exhibit 1**), including (but, except with respect to Revolving Priority Collateral, subordinate and junior to the DIP Liens to the extent set forth herein) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code.

(c)   RCF Adequate Protection Fees and Expenses.  The Debtors shall pay to the RCF Administrative Agent, for the benefit of the RCF Secured Parties, cash payments equal to the amount of all accrued and unpaid fees arising under section 2.19 of the Amended and Restated Revolving Credit Facility Agreement or under the Administrative Agent Fee Letter (as defined in the Amended and Restated Revolving Credit Facility Agreement) on the dates set forth in the RCF Loan Documents.  The Debtors are authorized and directed to pay all of the reasonable and documented out-of-pocket fees, costs, and expenses related to these Chapter 11 Cases of the RCF

41

Secured Parties, whether incurred prior to or after the Petition Date, consisting of the reasonable and documented fees and expenses of (i) Milbank LLP, as counsel to the RCF Administrative Agent, (ii) Alston & Bird LLP, as counsel to the RCF Collateral Agent, (iii) one financial advisor to the RCF Secured Parties, (iv) an appraiser selected by Citibank N.A., as RCF Administrative Agent, or Wilmington Trust, National Association, as RCF Collateral Agent in accordance with the RCF Loan Documents, and (v) any other advisor (legal, financial, or otherwise) as reasonably deemed necessary by Citibank N.A. solely to the extent payable under the RCF Loan Documents (the "**RCF Advisors**"), subject to the review procedures set forth in paragraph 9 of this Final Order, including the notice provisions thereof (the "**RCF Adequate Protection Professional Fees**" and, together with the Secured Notes Adequate Protection Professional Fees and Expenses, the "**Adequate Protection Professional Fees and Expenses**").  For the avoidance of doubt, nothing in this Final Order constitutes a waiver of, or otherwise impairs, any rights of any party in interest to seek recharacterization as principal payments under the Amended and Restated Revolving Credit Facility Agreement of any adequate protection fees and expenses payable to the RCF Secured Parties pursuant to this paragraph 8(c) or any other appropriate remedies.

(d)    <u>Reporting</u>.  The Debtors shall (i) provide the RCF Administrative Agent and the RCF Administrative Agent Advisors with all reports, documents, and other information required to be delivered to (x) any of the RCF Secured Parties pursuant to the terms of the RCF Loan Documents, including, without limitation, Sections 5.01(a), (b), (d) (limited solely to a reasonably detailed calculation of the Collateral Coverage Ratio without any requirement to demonstrate, or be in, compliance with either Section 6.08 or Section 6.09(a)), (e) (limited solely to a reasonably detailed description of any such Disposition of Collateral without any requirement to demonstrate, or be in, compliance with Section 6.09(a)), (g), and (i) of the Amended and

42

Restated Revolving Credit Facility Agreement, all of which may be shared by the RCF Administrative Agent and the RCF Administrative Agent Advisors with the RCF Collateral Agent and/or the RCF Advisors to the RCF Collateral Agent, and (y) any provider of debtor-in-possession financing or any other Secured Party which may, to the extent such reports and/or information are reasonably necessary for the RCF Collateral Agent to perform its obligations under the RCF Loan Documents, be shared by the RCF Administrative Agent and the RCF Administrative Agent Advisors with the RCF Collateral Agent and/or the RCF Advisors to the RCF Collateral Agent with the Debtors' prior consent (not to be unreasonably withheld, conditioned or delayed), and (ii) comply with all provisions of the RCF Loan Documents which relate to providing appraisals or allowing inspection rights, including, without limitation, Sections 5.07 and 5.14 of the Amended and Restated Revolving Credit Facility Agreement, Sections 3.08 and 3.09 of the Spare Parts Security Agreement,[6] and Section 3.03 of the Aircraft and Spare Engine Security Agreement;[7] *provided* that, notwithstanding anything to the contrary set forth in the RCF Loan Documents, any such post-petition inspection rights shall be subject to a frequency limitation of one such post-petition inspection of Eligible Spare Parts in addition to one such post-petition inspection of Eligible Engines (as defined under the Amended and Restated Revolving Credit Facility Agreement), every twelve (12) months at all times.  The Debtors' advisors will, at the RCF Administrative Agent Advisors', Ad Hoc Committee of Secured Noteholder Advisors', or counsel to the Creditors' Committee's reasonable request, participate in calls with the RCF Administrative Agent Advisors, Ad Hoc Committee of Secured Noteholder Advisors, or counsel to the Creditors' Committee regarding the Debtors' businesses, their efforts to obtain debtor-in-possession

---

[6] "Spare Parts Security Agreement" means that certain Mortgage and Security Agreement (Spare Parts), dated as of May 20, 2020, by and between Spirit Airlines, Inc and Wilmington Trust, National Association.

[7] "Aircraft and Spare Engine Security Agreement" means that certain Mortgage and Security Agreement, dated as of March 30, 2020, between Spirit Airlines, Inc. and Wilmington Trust, National Association.

financing, or progress made towards confirmation of a chapter 11 plan or sale of the Debtors' assets.

(e)    RCF Adequate Protection Payments.  As further adequate protection, the RCF Agents shall receive, on behalf of the RCF Lenders, effective upon entry of the Interim DIP Order and approved hereunder on a final basis, adequate protection payments by the Debtors payable on the dates set forth in the RCF Loan Documents in an amount equal to the interest at the non-default rate that would otherwise be owed to the RCF Lenders under the RCF Loan Documents during such period in respect of the RCF Obligations, without prejudice to the rights of the RCF Secured Parties to assert claims for the payment of additional interest at the default rate and the rights of the Debtors or any other party-in-interest to contest any such additional claims.  For the avoidance of doubt, nothing in this Final Order constitutes a waiver of, or otherwise impairs, any rights of any party in interest to seek recharacterization as principal payments under the RCF Loan Documents of any adequate protection payments payable to the RCF Secured Parties pursuant to this paragraph 8(e) or any other appropriate remedies.

9.    *Review of Professional Fees and Expenses*.  The payment of all (i) DIP Fees and Expenses and (ii) Adequate Protection Professional Fees and Expenses hereunder shall be made without the necessity of filing fee applications with the Court or compliance with the U.S. Trustee's guidelines and shall not be subject to further application to or approval of the Court; *provided*, *however*, that each such professional shall provide summary copies of its invoices (which may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of their invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine) to counsel to the

44

Debtors, the U.S. Trustee, and counsel to the Creditors' Committee (collectively, the "**Review Parties**").  Any objections raised by any Review Party with respect to such invoices must be in writing and state with particularity the grounds therefor and must be submitted to the affected professional within ten (10) calendar days after delivery of such invoices to the Review Parties (such ten (10) day calendar period, the "**Review Period**").  Upon a request in writing by the U.S. Trustee to an applicable hourly professional within the Review Period, such hourly professional shall promptly provide additional reasonably requested detail regarding its invoice to the U.S. Trustee, including time entries if requested (which time entries may be redacted for privilege, provided that the U.S. Trustee may request unredacted time entries and all parties' rights to oppose such request for unredacted time entries are preserved).  If no written objection is received from the Review Parties prior to the expiration of the Review Period, the Debtors shall promptly pay such invoices following the expiration of the Review Period.  If an objection is received from the Review Parties within the Review Period, the Debtors shall promptly pay the undisputed amount of the invoice, and the disputed portion of such invoice shall not be paid until such dispute is resolved by agreement between the affected professional and the objecting party or by order of this Court.

10.     *Modification of Automatic Stay*.  The automatic stay imposed by section 362(a) of the Bankruptcy Code is hereby vacated and modified, on a final basis, without application to, or further order of, this Court, to permit:  (a) the Debtors to grant the DIP Liens and the DIP Superpriority Claims, and to perform such acts as the DIP Secured Parties may request to assure the perfection and priority of the DIP Liens, (b) the Debtors to incur all DIP Obligations as contemplated under this Final Order and the DIP Documents, (c) the Debtors to grant the Adequate Protection Liens, the Cash Collateral Adequate Protection Liens, and the Adequate Protection

45

Claims, and to perform such acts as the Secured Parties may reasonably request to ensure the perfection and priority of the Adequate Protection Liens and the Cash Collateral Adequate Protection Liens, (d) the Debtors to incur all liabilities and obligations to the Secured Parties, including all Adequate Protection Obligations, as contemplated under this Final Order, (e) subject to paragraph 12 of this Final Order, the DIP Secured Parties and the Secured Parties to exercise, upon the occurrence of any DIP Termination Event (as defined below), all rights and remedies provided for in this Final Order, the DIP Documents, the Secured Documents, or applicable law, and (f) the Debtors to perform under this Final Order and the DIP Documents and take any and all other actions that may be reasonably necessary or required for the performance by the Debtors under this Final Order and the DIP Documents and the implementation of the transactions contemplated hereunder and thereunder.

11.     *Perfection of the DIP Liens, Adequate Protection Liens, and Cash Collateral Adequate Protection Liens.*

(a)     The Interim DIP Order as reaffirmed by this Final Order was, and this Final Order shall be, sufficient and conclusive evidence of the attachment, validity, perfection, and priority of all liens and security interests granted therein and hereunder and/or under the DIP Documents, without the necessity of the execution, recordation, or filing of any pledge, collateral, or security agreements, mortgages, deeds of trust, control agreements, financing statements, notations of certificates of title for titled goods, or any other document or instrument, or the taking of any other action to take possession or control of any DIP Collateral, to attach, validate, perfect, or prioritize such liens and security interests, or to entitle the DIP Secured Parties and the Secured Parties to the priorities granted herein, including the relative priorities set forth in **Exhibit 1** (other than, to the extent applicable, any such filings required under applicable non-U.S. law to attach,

validate, perfect, or prioritize such liens), it being understood that with respect to the RCF Adequate Protection Liens, other than as explicitly set forth in **Exhibit 1**, in no circumstances and at no time in these Chapter 11 Cases shall the RCF Adequate Protection Liens be senior or *pari passu* with the DIP Liens, regardless of whether such liens attach prior in time.

(b)     The DIP Facility Agent and the Secured Parties are each authorized, but not required, to (and if requested by the DIP Facility Agent and/or the Secured Parties, the Debtors shall) execute, file, and record financing statements, trademark filings, copyright filings, mortgages, notices of lien, or similar instruments in any jurisdiction in order to validate, perfect, preserve, and enforce the liens and security interests granted to them hereunder or under the DIP Documents (each, a "**Perfection Action**").  Whether or not the DIP Facility Agent (at the direction of the Required DIP Lenders) or the Secured Parties determine, in their sole discretion, to take any Perfection Action with respect to any liens or security interests granted hereunder, such liens and security interests shall nonetheless be deemed valid, perfected, allowed, enforceable, non-avoidable, and not subject to challenge, dispute, or subordination (except, with respect to subordination, to the extent expressly contemplated herein).

12.     *Cash Collateral and DIP Termination Events; Exercise of Remedies*.

(a)     Cash Collateral and DIP Termination Events.  Subject to any obligations under the Carve Out and any applicable grace period under the DIP Documents and this Final Order and the Notice Period, the DIP Obligations shall accelerate and become immediately due and payable in full and the DIP Commitments shall terminate without further notice or action by the Court upon the earliest to occur of any of the following (each a "**DIP Termination Event**"): (a) the occurrence of an Event of Default (as defined in the DIP Credit Agreement), which Events of Default are explicitly incorporated by reference into this Final Order; (b) the Debtors' failure to

comply in any material respect with respect to any provision of this Final Order (a "**Final DIP Order Breach**"); or (c) the occurrence of the Maturity Date (as defined in the DIP Documents), in each case, unless waived in writing by the DIP Facility Agent (at the direction of the Required DIP Lenders), which waiver may be evidenced by electronic mail from counsel to the DIP Facility Agent or Required DIP Lenders.

(b)     Exercise of Remedies.   The Debtors shall immediately provide notice to counsel to the DIP Facility Agent, the other DIP Secured Parties, the Secured Notes Trustee, the Secured Noteholders, the RCF Agents, the RCF Lenders, and the Creditors' Committee, of the occurrence of any DIP Termination Event.  Upon the occurrence and during the continuation of a DIP Termination Event (regardless of whether the Debtors have given the notice described in the previous sentence) and following the giving of not less than seven (7) business days' advance written notice (which may be by electronic mail) (the "**Notice Period**") by the DIP Facility Agent, the Secured Notes Trustee, or the RCF Agents, as applicable (the "**Enforcement Notice**"), to counsel to the Debtors, the DIP Secured Parties, the Secured Notes Trustee, the RCF Agents, the U.S. Trustee, and counsel to the Creditors' Committee, (i) the DIP Facility Agent may exercise or enforce any rights and remedies against the DIP Collateral available to it under this Final Order, the DIP Documents, and applicable non-bankruptcy law, and the DIP Secured Parties may exercise such rights available to them under the DIP Documents and this Final Order (subject to the relative rights and priorities set forth in **Exhibit 1**); (ii) the Secured Notes Parties may terminate the ability (if any) of the Debtors to use any Encumbered Cash and may exercise any rights and remedies to satisfy the Prepetition Secured Notes Obligations and Secured Notes Adequate Protection Obligations, subject to the DIP Obligations, the DIP Superpriority Claims, the Permitted Liens (if any), the Carve Out, and the relative rights and priorities set forth in **Exhibit 1** attached hereto;

48

(iii) solely in the event of any Final DIP Order Breach that adversely impacts the rights or obligations of any of the RCF Secured Parties, the RCF Agents may terminate the ability (if any) of the Debtors to use any Cash Collateral of the RCF Secured Parties, and (iv) the commitment of each DIP Lender to make DIP Loans will be terminated to the extent any such commitment remains under the DIP Facility.  Notwithstanding the foregoing, the DIP Secured Parties and the Secured Notes Parties shall not exercise or enforce any rights or remedies against any Revolving Priority Collateral unless and until all Prepetition RCF Obligations and RCF Adequate Protection Obligations shall have received Payment in Full, and in each case, any such exercise of remedies shall be subject to the RCF Priority Collateral ICA and the Notes Priority Collateral ICA.  The automatic stay pursuant to section 362 of the Bankruptcy Code shall be automatically modified with respect to the DIP Secured Parties and the Secured Parties at the end of the Notice Period, without further notice to or order of the Court unless, (a) the DIP Facility Agent (acting at the direction of the Required DIP Lenders) and the Secured Notes Trustee (acting at the direction of the Required Noteholders), as applicable, elect otherwise in a written notice to the Debtors or (b) the Court orders otherwise or has determined that a DIP Termination Event has not occurred or is not occurring.  During the Notice Period, the Debtors may use the Unencumbered Funds, and solely to the extent the Unencumbered Funds are exhausted, proceeds of the DIP Facility (to the extent drawn prior to the occurrence of a DIP Termination Event) solely to (i) fund payroll and other operating expenses that are critically necessary to keep the Debtors' business operating, (ii) fund the Carve Out Reserves and, to the extent not already funded in the Administrative Claim Carve Out Segregated Account(s), the Administrative Claim Carve Out, and (iii) seek an Emergency Hearing before the Court as set forth in paragraph 13(c) hereto; *provided* that (x) Encumbered Cash may be used to fund the Carve Out Reserves and the Administrative Claim

49

Carve Out to the extent provided in this Final Order, (y) proceeds of Revolving Priority Collateral may be used to fund the Carve Out Reserves (up to the RCF Professional Fee Carve Out Cap) to the extent provided in this Final Order, and (z) neither Revolving Priority Collateral nor proceeds thereof (excluding proceeds of Spare Parts up to the Spare Parts Cap sold or disposed of in the ordinary course of business and consistent with past practice) shall be used to fund the Administrative Claim Carve Out or payroll or operating expenses.

(c)     <u>Emergency Hearing</u>. Upon delivery of an Enforcement Notice, each of the DIP Secured Parties, the Secured Parties, the Debtors, and the Creditors' Committee, as applicable, consent to a hearing on an expedited basis (an "**Emergency Hearing**") to consider (a) whether a DIP Termination Event has occurred and (b) any appropriate relief (including, without limitation, the Debtors' non-consensual use of any Cash Collateral); *provided* that if a request for such hearing is made prior to the end of the Notice Period, the Notice Period shall be continued until the Court hears and rules with respect thereto.  At the end of the Notice Period (the "**DIP Termination Date**"), unless the Court has entered an order to the contrary or otherwise fashioned an appropriate remedy, the Debtors' right to use Cash Collateral of the Secured Notes Parties shall immediately cease, and the DIP Facility Agent, the DIP Lenders, and the Secured Parties shall have the rights set forth in the paragraph immediately above, without the necessity of seeking relief from the automatic stay.

(d)     <u>No Waiver for Failure to Seek Relief</u>.  The failure or delay of the DIP Facility Agent, any of the other DIP Secured Parties, or any of the Secured Parties to exercise their respective rights and remedies under this Final Order, the DIP Documents, the Secured Documents, or applicable law, as the case may be, shall not constitute a waiver of their respective rights hereunder, thereunder, or otherwise.

13. *Carve Out*.

(a) <u>Priority of Carve Out</u>. Each of the DIP Liens, the DIP Superpriority Claims, the Prepetition Liens, the Adequate Protection Liens, and the Adequate Protection Claims shall be subject and subordinate to payment of the Carve Out to the extent set forth in **<u>Exhibit 1</u>**.

(b) <u>Professional Fee Carve Out</u>. "**Professional Fee Carve Out**" means the sum of (i) all unpaid fees required to be paid to the Clerk of the Court and the Office of the United States Trustee under 28 U.S.C. § 1930(a) plus interest at the statutory rate pursuant to 31 U.S.C. § 3717, (ii) all unpaid reasonable fees and expenses up to $200,000 incurred by a trustee appointed under section 726(b) of the Bankruptcy Code, (iii) to the extent allowed by the Court at any time, all accrued but unpaid fees and expenses (the "**Allowed Professional Fees**") incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "**Debtor Professionals**") and the Creditors' Committee pursuant to sections 328 and 1103 of the Bankruptcy Code (the "**Committee Professionals**") at any time on and before the date of delivery by the DIP Facility Agent (acting at the direction of the Required DIP Lenders) of a Carve Out Trigger Notice (as defined below) (the amounts set forth in the foregoing clauses (i), (ii), and (iii), the "**Pre-Carve Out Notice Amount**"), and (iv) Allowed Professional Fees of Professional Persons incurred after the date of delivery of the Carve Out Trigger Notice, in an aggregate amount not to exceed $18,000,000 (plus any "success fee" or "transaction fee" reasonably expected to be payable to the Debtors' and/or Creditors' Committee's investment banker or financial advisor in accordance with their respective engagement letters and pursuant to a final order of the Bankruptcy Court allowing such fees) (the amount set forth in this clause (iv), the "**Post-Carve Out Notice Amount**"); *provided*, *however*, that nothing herein shall be construed to impair the ability of any party-in-interest to object to the allowance of the fees applied for by Professional Persons.

(c)    <u>Carve Out Trigger Notice</u>.  For purposes of this Final Order, the "**Carve Out Trigger Notice**" shall mean a written notice (which may be via electronic mail) delivered by the DIP Facility Agent (acting at the direction of the Required DIP Lenders) to counsel to the Debtors, the U.S. Trustee, counsel to the Secured Notes Trustee, counsel to the RCF Agents, and counsel to the Creditors' Committee, which notice may only be delivered following the occurrence of a DIP Termination Event, stating that the Carve Out has been triggered and the Post-Carve Out Notice Amount has been invoked.  The Carve Out Trigger Notice may be included in the Enforcement Notice.

(d)    <u>Carve Out Reserves</u>.  On the date on which a Carve Out Trigger Notice is delivered (the "**Carve Out Trigger Date**"), the Carve Out Trigger Notice shall constitute a demand to the Debtors to utilize the Unencumbered Funds and, solely to the extent the Unencumbered Funds are exhausted, *first*, any other cash on hand as of such date and any available cash thereafter other than Encumbered Cash or any proceeds of Revolving Priority Collateral, *second*, only after such other cash is exhausted, the Encumbered Cash, and *third*, only after the Encumbered Cash is exhausted, (x) proceeds of Revolving Priority Collateral up to the RCF Professional Fee Carve Out Cap and (y) proceeds of any other DIP Collateral (other than Revolving Priority Collateral) (*provided,* that the first $10,000,000 utilized pursuant to this third clause shall be funded equally from proceeds of (x) and (y)), held by any Debtor to fund a reserve in an amount equal to the obligations accrued as of the Carve Out Trigger Date with respect to clauses (i) and (ii) of the definition of Professional Fee Carve Out, plus the Pre-Carve Out Notice Amount (the "**Additional Carve Out Obligations**") less any amount then held in the Pre-Carve Out Trigger Notice Reserve pursuant to this paragraph 13(d).  The Debtors shall deposit and hold such amounts in a segregated account (the "**Carve Out Account**") in a manner reasonably

acceptable to the DIP Facility Agent (acting at the direction of the Required DIP Lenders), the Secured Notes Trustee, and the RCF Agents in trust to pay such then unpaid Allowed Professional Fees and Additional Carve Out Obligations (the "**Pre-Carve Out Trigger Notice Reserve**") prior to the use of such reserve to pay any other claims.  On the Carve Out Trigger Date, after funding the Pre-Carve Out Trigger Notice Reserve, the Debtors shall utilize Unencumbered Funds and, solely to the extent the Unencumbered Funds are exhausted, *first*, any other cash on hand as of such date and any available cash thereafter other than Encumbered Cash or any proceeds of Revolving Priority Collateral, *second*, only after such other cash is exhausted, the Encumbered Cash, and *third*, only after the Encumbered Cash is exhausted, (x) proceeds of Revolving Priority Collateral up to the RCF Professional Fee Carve Out Cap and (y) proceeds of any other remaining DIP Collateral (other than Revolving Priority Collateral) (*provided,* that the first $10,000,000 utilized pursuant to this third clause shall be funded equally from proceeds of (x) and (y)), to fund a reserve in an amount equal to the Post-Carve Out Notice Amount (the "**Post-Carve Out Trigger Notice Reserve**") prior to the use of such reserve to pay any other claims.  All funds in the Pre-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clauses (i) through (iii) of the definition of Professional Fee Carve Out set forth above in paragraph 13(b) (the "**Pre-Carve Out Amounts**"), until paid in full, and then, to the extent the Pre-Carve Out Trigger Notice Reserve has not been reduced to zero, subject to the terms of this Final Order, to pay any other amounts (if owing) benefitted by the Professional Fee Carve Out.  All funds in the Post-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clause (iv) of the definition of Professional Fee Carve Out set forth above (the "**Post-Carve Out Amounts**"), and then, to the extent the Post-Carve Out Trigger Notice Reserve has not been reduced to zero, subject to the terms of this Final Order, to pay any other amounts (if owing)

benefitted by the Professional Fee Carve Out.  Notwithstanding anything to the contrary in this

Final Order, if either of the Carve Out Reserves is not funded in full in the amounts set forth in

this paragraph 13, then any excess funds in one of the Carve Out Reserves following the payment

of the Pre-Carve Out Amounts or Post-Carve Out Amounts, respectively, shall be used to fund the

other Carve Out Reserve, up to the applicable amount set forth in this paragraph 13.

Notwithstanding anything to the contrary in this Final Order, the DIP Documents, or the Secured

Documents, following delivery of a Carve Out Trigger Notice, the DIP Facility Agent and the

Secured Parties shall not sweep or foreclose on cash (including cash received as a result of the sale

or other disposition of any assets) of the Debtors until the Carve Out Account has been fully funded

in an amount equal to the Carve Out Amount as set forth herein.  The Carve Out Account shall not

be subject to the control of any of the DIP Secured Parties or the Secured Parties, and shall not be

subject to the DIP Liens, the Adequate Protection Liens, or the Cash Collateral Adequate

Protection Liens, nor shall the Professional Fee Carve Out constitute DIP Collateral or Prepetition

Collateral; *provided*, *however*, that the DIP Secured Parties and the Secured Parties shall have a

security interest in and lien on any residual cash in the Carve Out Account (in accordance with the

priorities set forth in **Exhibit 1**), with any excess cash paid to (i) the DIP Facility Agent for

application to the DIP Obligations in accordance with the DIP Documents until the DIP

Obligations are paid in full, (ii) to the Secured Notes Trustee for application to the Secured Notes

Adequate Protection Obligations and, then, to the Prepetition Secured Notes Obligations, and (iii)

the RCF Administrative Agent for application to the Prepetition RCF Obligations and the RCF

Adequate Protection Obligations, in each case to be paid in proportion to the amount of cash in the

Carve Out Account funded from DIP Collateral (that is not Revolving Priority Collateral), Notes

Priority Collateral, and Revolving Priority Collateral respectively, and any excess remaining

thereafter shall be applied in accordance with this Final Order.  For the avoidance of doubt, nothing herein shall affect the priority of the Professional Fee Carve Out as set forth in **Exhibit 1**.

(e)     Notwithstanding anything to the contrary in this Final Order, (i) disbursements by the Debtors from the Carve Out Account shall not constitute loans or indebtedness under the DIP Documents or the Secured Documents or otherwise increase or reduce the DIP Obligations or the Prepetition Secured Obligations, (ii) the failure of the Carve Out Account to satisfy in full the Allowed Professional Fees shall not affect the priority of the Professional Fee Carve Out, and (iii) nothing contained herein shall constitute a cap or limitation on the amount that the Professional Persons may assert as administrative expense claims or otherwise against the Debtors on account of Allowed Professional Fees incurred by such Professional Persons.

(f)     <u>Payment of Professional Fee Carve Out on or After the Carve Out Trigger Date</u>.  Any payment or reimbursement made after the occurrence of the Carve Out Trigger Date in respect of any Allowed Professional Fees incurred after the occurrence of the Carve Out Trigger Date shall permanently reduce the Post-Carve Out Notice Amount on a dollar-for-dollar basis.

(g)     <u>No Direct Obligation to Pay Allowed Professional Fees</u>.  None of the DIP Secured Parties or Secured Parties shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with the Chapter 11 Cases or any Successor Cases under any chapter of the Bankruptcy Code, regardless of whether such fees or expenses have been allowed by the Court.  Nothing in this Final Order or otherwise shall be construed to obligate the DIP Secured Parties or the Secured Parties, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

(h)      Professional Fee Escrow.  On a weekly basis, the Debtors shall transfer into the Pre-Carve Out Trigger Notice Reserve cash constituting Unencumbered Funds and, solely to the extent the Unencumbered Funds are exhausted, *first*, any other cash on hand as of such date other than Encumbered Cash or any proceeds of Revolving Priority Collateral, and, *second*, only after such other cash is exhausted, the Encumbered Cash, and *third*, only after the Encumbered Cash is exhausted, (x) proceeds of Revolving Priority Collateral up to the RCF Professional Fee Carve Out Cap and (y) proceeds of any other remaining DIP Collateral (other than Revolving Priority Collateral) (*provided,* that the first $10,000,000 utilized pursuant to this third clause shall be funded equally from proceeds of (x) and (y)), in an amount equal to the amount of cash such that the Pre-Carve Out Trigger Notice Reserve shall contain the sum of (a) accrued, unpaid actual Allowed Professional Fees through the end of the prior week; plus (b) an amount equal to the estimated Allowed Professional Fees for the next unfunded week; *provided, however*, the Debtors shall give prior notice to counsel for the Ad Hoc Committee of Secured Noteholders and counsel to the Creditors' Committee before using any Encumbered Cash, and prior notice to counsel to the RCF Agents before using any proceeds of Revolving Priority Collateral (other than cash up to the Spare Parts Cap from the sale or disposition of Spare Parts that are Revolving Priority Collateral which sale or disposition is in the ordinary course of business and consistent with past practice), to fund the Pre-Carve Out Trigger Notice Reserve.  The Debtors shall use such funds held in the Pre-Carve Out Trigger Notice Reserve to pay Allowed Professional Fees as they become allowed and payable pursuant to interim or final orders from the Court.  Funds transferred to the Pre-Carve Out Trigger Notice Reserve shall remain property of the Debtors unless and until they are paid to Professional Persons after Court approval of a fee application seeking approval thereof, and shall not be subject to any claim, lien, or security interest granted to any other party; *provided* that the

56

DIP Secured Parties and the Secured Parties shall have a security interest in and lien on any residual cash in the Pre-Carve Out Trigger Notice Reserve after all Allowed Professional Fees are paid in accordance with paragraph 13(b), with any excess cash paid to (i) the DIP Facility Agent for application to the DIP Obligations in accordance with the DIP Documents until the DIP Obligations are paid in full, (ii) to the Secured Notes Trustee for application to the Secured Notes Adequate Protection Obligations and, then, to the Prepetition Secured Notes Obligations, and (iii) the RCF Administrative Agent for application to the Prepetition RCF Obligations and the RCF Adequate Protection Obligations, in each case to be paid in proportion to the amount of cash in the Carve Out Account funded from DIP Collateral (that is not Revolving Priority Collateral), Notes Priority Collateral, and Revolving Priority Collateral respectively, and any excess remaining thereafter shall be applied in accordance with this Final Order.

(i)    Administrative Claim Carve Out.  "**Administrative Claim Carve Out**" means the amount deposited into the Utility Deposit Account, the PFC Account, payroll and related withholdings, and trust fund taxes accrued through termination of the DIP Facility (the "**Administrative Claim Carve Out Claims**"), which amount shall be (i) no greater than $150,000,000 at any time and  (ii) maintained by the Debtors at all times in a segregated account or accounts in an amount equal to the Debtors' good faith estimate of the amount of the Administrative Claim Carve Out Claims at such time, which accounts shall be used by the Debtors as the source for payment of the Administrative Claim Carve Out Claims (the "**Administrative Claim Carve Out Segregated Account(s)**").  The amounts constituting the Administrative Claim Carve Out that shall be maintained in the Administrative Claim Carve Out Segregated Account(s) shall not be used for any purpose other than satisfying the Administrative Claim Carve Out Claims until all such claims are paid in full.  The Administrative Claim Carve Out Segregated Account(s)

57

shall not be subject to the control of any of the DIP Secured Parties or the Secured Parties, and the DIP Secured Parties shall not be permitted to sweep or foreclose upon, or otherwise exercise or seek to exercise any remedies with respect to, the Administrative Claim Carve Out Segregated Account(s) until such time as any Administrative Claim Carve Out Claims are paid in full; *provided*, *however* and without limiting the foregoing or limiting in any way, the Debtors' rights to and interest in the Administrative Claim Carve Out, after payment or satisfaction or assumption by any third party of all Administrative Claim Carve Out Claims and any proceeds thereof shall constitute DIP Collateral.

14.     *Roll-Up DIP Loans and Contingent Roll-Up Term Loans.*

(a)     Roll-Up DIP Loans.  The Roll-Up DIP Loans shall bear interest on the outstanding principal amount thereof from the applicable borrowing date at a rate equal to 0.00% per annum; provided that if it is determined that the Prepetition Secured Notes Obligations are oversecured under section 506(b) of the Bankruptcy Code, the Roll-Up DIP Loans shall, in accordance with the terms and conditions set forth in the DIP Documents, instead bear interest on the outstanding principal amount thereof retroactively from the applicable borrowing date at a rate per annum equal to the interest rate applicable to the New Money DIP Loans.  Upon confirmation of a chapter 11 plan or consummation of a sale of the assets of the Debtors, all holders of Roll-Up DIP Loans (the "**Roll-Up DIP Lenders**") shall receive Payment in Full or such lesser consideration and treatment agreed to by the Required Roll-Up Lenders (such consideration and treatment, the "**Agreed Roll-Up Treatment**").  Notwithstanding sections 503, 507, and 1129 of the Bankruptcy Code, such Agreed Roll-Up Treatment shall be in full and final satisfaction and discharge of the Roll-Up Superpriority Claims.  For the avoidance of doubt, nothing in this paragraph shall constitute a determination or agreement that the Roll-Up DIP Loans must or will

be classified in any chapter 11 plan separately from any other claims that are *pari passu* with the Roll-Up DIP Loans.

(b)    <u>Treatment of Contingent Roll-Up Term Loans</u>.  Until such time (if ever) as the Contingent Roll-Up Term Loans become Roll-Up DIP Loans, the Contingent Roll-Up Term Loans shall (i) have identical substantive rights (including, without limitation, with respect to guarantees, collateral, lien priority, and claim treatment) to those of, and recover on a *pro rata* and *pari passu* basis with, the Secured Notes; (ii) be deemed to be Secured Notes under the Secured Notes Documents for the sole purpose of (x)  determining whether any Required Noteholder threshold (or any other threshold of Secured Noteholders) is met and (y) directing the Secured Notes Trustee; *provided*, that, for the avoidance of doubt, (A) the Secured Notes Trustee shall have no duties to holders of Contingent Roll-Up Term Loans other than acting on any direction provided by such Contingent Roll-Up Lenders (which shall be counted for purposes of determining Required Noteholders or other threshold of Secured Noteholders); (B) all rights and protections afforded to the Secured Notes Trustee under the Secured Notes Indenture relating to actions taken at Required Noteholders (or other threshold of Secured Noteholders) direction shall apply with respect to any directions provided by the holders of Contingent Roll-Up Term Loans as set forth herein; and (C) the Secured Notes Trustee shall be entitled to rely conclusively on confirmation from the Debtors regarding the amount of Contingent Roll-Up Term Loans held by each holder thereof in taking any actions pursuant to this clause (ii); (iii) be classified together with the Secured Notes in any plan pursuant to chapter 11 of the Bankruptcy Code and receive the same voting rights and distributions as the Secured Notes under any plan pursuant to chapter 11 of the Bankruptcy Code; and (iv) not constitute post-petition obligations and shall not be entitled to any DIP Liens or DIP Superpriority Claims on account of such Contingent Roll-Up Term Loans.  Upon

the deemed borrowing by the Borrower of the Roll-Up DIP Loans, an equivalent aggregate amount of Contingent Roll-Up Term Loans shall be deemed cancelled based upon such DIP Lender's Roll-Up DIP Loan Allocation and shall not entitle the Borrower to receive any cash or other consideration from any DIP Lender and, notwithstanding that no such cash is exchanged, the Borrower shall owe the aggregate principal amount of the Roll-Up DIP Loans to the DIP Lenders under the DIP Credit Agreement and not under the Secured Notes Indenture.

15.    *Effect of Stipulations on Third Parties.*

(a)    The Debtors' Stipulations shall be binding upon the Debtors and any successors thereto effective upon entry of the First Interim Adequate Protection Order.  The Debtors' Stipulations shall be binding upon all parties-in-interest, including, without limitation, the Creditors' Committee, any other statutory or non-statutory committees appointed or formed in the Chapter 11 Cases, and any other person or entity seeking to act on behalf of the Debtors' estates (collectively, "**Successor Entities**"),[8] unless the Creditors' Committee or such other party-in-interest (i) files a motion seeking the requisite standing and authority to bring the Challenge (if and to the extent standing is required under applicable law) prior to the Challenge Deadline, which motion shall describe the specific nature and basis of the Challenge and attach a draft complaint (the "**Standing Motion**"), and such standing is obtained pursuant to an order of the Court, (ii) timely and properly commences and serves an adversary proceeding or contested matter (subject to the limitations contained herein) (each, a "**Challenge Proceeding**") by no later than the Challenge Deadline, asserting a Challenge with respect to the amount, validity, perfection, enforceability, priority, scope, or extent of the Prepetition Secured Obligations, the Prepetition

---

[8] For purposes of this paragraph, any chapter 7 or chapter 11 trustee for any of the Debtors in the Chapter 11 Cases or any Successor Case will have standing to the extent provided for in the Bankruptcy Code, Bankruptcy Rules, or any other relevant statute or order.

Liens, the Prepetition Collateral, or the Secured Documents, or otherwise Challenging any of the Debtors' Stipulations, and (iii) obtains a final non-appealable order by a court of competent jurisdiction sustaining any such Challenge.

(b)    If no such Standing Motion (to the extent required) or Challenge Proceeding is timely and properly filed by the Challenge Deadline, or if the Court rules against or does not rule in favor of plaintiff in any such timely and properly filed Challenge Proceeding (or if such Standing Motion or Challenge Proceeding is withdrawn), then, without application to or further order of the Court, (i) each of the Debtors' Stipulations shall be binding on all parties-in-interest, including, without limitation, the Creditors' Committee, any other statutory or non-statutory committees appointed or formed in the Chapter 11 Cases, and any other party-in-interest (including, without limitation, any Successor Entities), (ii) the Prepetition Secured Obligations shall constitute allowed claims against each of the applicable Debtors in the Chapter 11 Cases and any Successor Cases, (iii) the Prepetition Liens shall forever be deemed to be legal, valid, binding, continuing, perfected, and enforceable, as of the Petition Date, against each of the applicable Debtors in the Chapter 11 Cases and any Successor Cases with the priorities set forth in this Final Order, (iv) the Prepetition Secured Obligations and the Prepetition Liens shall not be subject to any other or further Challenge by any person or entity, and all parties in interest shall be forever enjoined and barred from seeking to exercise the rights of the Debtors' estates or taking any such action (including any Successor Entity, whether such Successor Entity is appointed or elected prior to or following the expiration of the Challenge Period), and (v) any and all Challenges of the Prepetition Secured Obligations and the Prepetition Liens, of any kind or nature whatsoever, whether under the Bankruptcy Code, under applicable non-bankruptcy law, or otherwise, against any of the Secured Parties shall be deemed forever waived, released, and barred.

61

(c)     If any such Standing Motion (to the extent required) and Challenge Proceeding is timely filed by the Challenge Deadline, the Debtors' Stipulations shall nonetheless remain binding and preclusive on the Creditors' Committee, any non-statutory committees appointed or formed in the Chapter 11 Cases, and all other parties-in-interest (including, without limitation, any Successor Entities), except to the extent that any of the admissions, stipulations, findings, or releases contained in the Debtors' Stipulations were expressly challenged in such Challenge Proceeding (and solely as to the plaintiff party that timely filed such Challenge Proceeding and not, for the avoidance of doubt, any other party-in-interest).  The filing of the Standing Motion by the Creditors' Committee prior to the expiration of the Challenge Deadline shall automatically toll the Challenge Deadline for the Creditors' Committee solely in respect of such claims contained in the draft complaint attached to such Standing Motion until the date that is one (1) business day after the entry of an order of the Court ruling on such Standing Motion (or such later date as agreed in writing by (i) the DIP Facility Agent (acting at the direction of the Required DIP Lenders) and (ii) the Secured Notes Trustee (acting at the direction of the Required Noteholders), and/or the RCF Agents (acting at the direction of the requisite RCF Lenders), as applicable).

(d)     Nothing in this Final Order vests or confers on any person or entity, including the Creditors' Committee or any other statutory or non-statutory committee appointed or formed in the Chapter 11 Cases, or any other party-in-interest standing or authority to pursue any claims or Challenge belonging to the Debtors or their estates, and all rights to object to any request for such standing are expressly reserved.

(e)     Notwithstanding the Creditors' Committee's agreement that $550,000,000 in principal amount (plus interest, if any) of Roll-Up DIP Loans and the DIP Liens granted with

62

respect thereto are not subject to any Challenge, nothing in this Final Order impairs the right of the Creditors' Committee to seek to Challenge and for the Court to grant appropriate relief with respect to (i) any Roll-Up DIP Obligations in excess of the principal amount of $550,000,000 (plus interest, if any) or (ii) the extent of the Prepetition Secured Notes Liens securing the Prepetition Secured Notes Obligations after accounting for the Roll-Up DIP Loans, it being understood that (x) any such successful Challenge shall in no way modify, impair, affect, or limit the validity, priority, extent, or enforceability of, or give rise to any Challenge whatsoever in respect of, the $400,000,000 Interim Roll-Up or $150,000,000 of the Final Roll-Up and, in each case, the DIP Liens granted with respect thereto, (y) any Avoidance Proceeds arising from a Challenge to any Secured Notes, Prepetition Secured Notes Liens, and/or Prepetition Secured Notes Obligations shall be DIP Collateral subject to the DIP Liens securing both the New Money DIP Loans and Roll-Up DIP Loans and available to satisfy all DIP Obligations in respect thereof, and (z) in the event of any sale or other disposition of the Headquarters or any other DIP Collateral that is not Revolving Priority Collateral (including any DIP Collateral that also is Prepetition Secured Notes Collateral), the proceeds from such sale or other disposition shall be used to repay any DIP Obligations in respect of both the New Money DIP Loans and the Roll-Up DIP Loans, in each case, in accordance with the terms of the DIP Documents.

16.     *Limitations on Use of DIP Facility, DIP Collateral, Cash Collateral, and Carve Out*.  Except as may be used by the Creditors' Committee in accordance with this paragraph 16, none of (v) the DIP Facility, (w) the DIP Collateral or the proceeds thereof, (x) the Prepetition Collateral or the proceeds thereof, (y) the Owned Aircraft Surplus, or (z) the Carve Out may be used: (a) to investigate (except as expressly provided herein), initiate, prosecute, join, or finance the initiation or prosecution of any claim, counterclaim, action, suit, arbitration, proceeding,

application, motion, objection, defense, or other litigation of any type (i) against any of the DIP

Facility Agent, the other DIP Secured Parties, or the Secured Parties (in each case, in their

capacities as such) or seeking relief that would impair the rights or remedies of the DIP Facility

Agent, the other DIP Secured Parties, or the Secured Parties (in each case, in their capacities as

such) under the DIP Documents, the First Interim Adequate Protection Order, the Second Interim

Adequate Protection Order, the Interim DIP Order, this Final Order, the Secured Notes Indenture,

or the RCF Loan Documents, including, without limitation, for the payment of any services

rendered by the professionals retained by the Debtors or the Creditors' Committee in connection

with the assertion of or joinder in any claim, counterclaim, action, proceeding, application, motion,

objection, defense, or other contested matter, the purpose of which is to seek, or the result of which

would be to obtain, any order, judgment, determination, declaration, or similar relief that would

impair the ability of any of the DIP Facility Agent, the other DIP Secured Parties, or the Secured

Parties to recover on the DIP Collateral or the Prepetition Collateral or seeking affirmative relief

against any of the DIP Facility Agent, the other DIP Secured Parties, or the Secured Parties related

to the DIP Obligations or any of the Prepetition Secured Obligations or otherwise, (ii) seeking to

invalidate, set aside, avoid, or subordinate, in whole or in part, the DIP Obligations, the DIP

Superpriority Claims, or the DIP Facility Agent's and the other DIP Secured Parties' liens or

security interests in the DIP Collateral or the Prepetition Collateral, or the Prepetition Secured

Obligations, the Adequate Protection Claims, or the Secured Parties' liens or security interests in

the Prepetition Collateral or the DIP Collateral, or (iii) for monetary, injunctive, or other

affirmative relief against the DIP Facility Agent, the other DIP Secured Parties, or the Secured

Parties (in each case, in their capacities as such), or their respective liens on or security interests

in the DIP Collateral or the Prepetition Collateral or the DIP Superpriority Claims, that would

impair the ability of the DIP Facility Agent, the other DIP Secured Parties, or the Secured Parties to assert or enforce any lien, claim, right, or security interest or to realize or recover on the DIP Obligations, the Prepetition Secured Obligations, or the Adequate Protection Claims; (b) for objecting to or challenging in any way the legality, validity, priority, perfection, or enforceability of the claims, liens, or interests (including the Prepetition Liens) held by or on behalf of any of the Secured Parties related to any of the Prepetition Secured Obligations, or by or on behalf of the DIP Facility Agent and the other DIP Secured Parties related to the DIP Obligations; (c) for asserting, commencing, or prosecuting any claims or causes of action whatsoever, including, without limitation, any Avoidance Actions related to the DIP Liens, the DIP Superpriority Claims, the DIP Obligations, the Prepetition Liens or the Prepetition Secured Obligations; or (d) for prosecuting an objection to, contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of:  (x) any of the DIP Liens, the DIP Superpriority Claims, or any other rights or interests of the DIP Facility Agent or the other DIP Secured Parties related to the DIP Obligations or the DIP Liens, or (y) any of the Prepetition Liens, Adequate Protection Liens, Cash Collateral Adequate Protection Liens, Adequate Protection Claims, Prepetition Secured Obligations, or any other rights or interests of any of the Secured Parties; *provided* that no more than $200,000.00 (the "**Challenge Budget**") of the Owned Aircraft Surplus, any other DIP Collateral, the Prepetition Collateral (including Cash Collateral of the Secured Parties), or the DIP Facility, in the aggregate, may be used by (i) any chapter 11 trustee or chapter 7 trustee or similar responsible person appointed for the estate of any Debtor in the Chapter 11 Cases or any Successor Cases or (ii) the Creditors' Committee, solely to investigate (but not to prosecute) the foregoing matters with respect to the Prepetition Liens or the Prepetition Secured Obligations (but

65

not claims and/or liens of the DIP Facility Agent and the other DIP Secured Parties) within the Challenge Deadline.

17.    *Limitation on Charging Expenses Against Collateral; Waivers.*

(a)    <u>Limitations on Charging Expenses Against Collateral</u>.  Upon entry of this Final Order, except to the extent of the Carve Out, no costs or expenses of administration of the Chapter 11 Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the DIP Collateral, the Prepetition Collateral (including, without limitation, the Encumbered Cash in any of the Encumbered Accounts), the DIP Facility Agent, the other DIP Secured Parties, or the Secured Parties pursuant to sections 506(c) or 105(a) of the Bankruptcy Code, or any similar principle of law or equity, without the prior written consent of the DIP Facility Agent, the other DIP Secured Parties, and the Secured Parties, as applicable, and no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Facility Agent, the other DIP Secured Parties, or the Secured Parties.

(b)    <u>No Marshaling</u>.  Upon entry of this Final Order, the DIP Facility Agent, Secured Notes Trustee, and the RCF Agents shall be entitled to apply the payments or proceeds of the DIP Collateral, the Prepetition Secured Notes Collateral, and the Revolving Priority Collateral, as applicable, in accordance with the provisions of this Final Order, the DIP Documents, the Secured Notes Documents, and the RCF Loan Documents, as applicable, and in no event shall the DIP Facility Agent, the other DIP Secured Parties, or any of the Secured Parties be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or Prepetition Collateral (including, without limitation, the Encumbered Cash in any of the Encumbered Accounts).  Notwithstanding the foregoing, in applying payments or proceeds of

66

the DIP Collateral, the DIP Facility Agent shall first seek satisfaction of the DIP Obligations from DIP Collateral other than (i) Avoidance Proceeds (except to the extent such Avoidance Proceeds arise from Challenges to any Secured Notes, Prepetition Secured Notes Liens, and/or Prepetition Secured Notes Obligations (the "**Excluded Avoidance Proceeds**"), which Excluded Avoidance Proceeds (x) shall be DIP Collateral subject to the DIP Liens securing both the New Money DIP Loans and the Roll-Up DIP Loans and available to satisfy all DIP Obligations in respect thereof and (y) shall not be subject to any marshaling) and (ii) the proceeds of commercial tort claims; *provided*, *however*, and notwithstanding anything to the contrary in this Final Order, Avoidance Proceeds, other than Excluded Avoidance Proceeds, shall not be used to satisfy any Roll-Up DIP Obligations.

(c)     _Equities of the Case_.  Upon entry of this Final Order, the Secured Parties shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and no party shall invoke the "equities of the case" exception under section 552(b) of the Bankruptcy Code, in each case with respect to the proceeds, products, offspring, or profits of any of the Prepetition Collateral, including, without limitation, any Encumbered Cash held in the Encumbered Accounts.

18.     *Section 507(b) Reservation*.  Nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Secured Parties is insufficient to compensate for any Diminution in Value of their interests in the Prepetition Collateral during the Chapter 11 Cases.  Nothing contained herein shall be deemed a finding by the Court, or an acknowledgment by any of the Secured Parties, that the adequate protection granted herein does in fact adequately protect any of the Secured Parties against any Diminution in Value of their respective interests in the Prepetition Collateral; *provided*, *however*,

that any such additional section 507(b) claims shall be subject to the same relative priority as such

party's Adequate Protection Claims, as provided in this Final Order.

19.    *Binding Effect; Successors and Assigns*.  Immediately upon entry of the Interim

DIP Order and as reaffirmed by this Final Order, subject to paragraph 15 hereof, all findings of

fact and conclusions of law herein shall be binding upon all parties-in-interest in the Chapter 11

Cases and any Successor Cases, including, without limitation, the Debtors, the Creditors'

Committee, or any other statutory or non-statutory committee appointed or formed in the Chapter

11 Cases and any Successor Cases, and their respective successors and assigns (including any

chapter 11 trustee or chapter 7 trustee or examiner appointed or elected in the Chapter 11 Cases

or any Successor Cases, an examiner appointed pursuant to section 1104 of the Bankruptcy Code,

or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to

the property of the estate of any of the Debtors), and shall inure to the benefit of each of the

Debtors, the DIP Secured Parties, and the Secured Parties, and their respective successors and

assigns; *provided*, *however*, that, for the avoidance of doubt, the DIP Secured Parties and the

Secured Parties shall have no obligation to make any loan, permit the use of DIP Collateral or

Prepetition Collateral (including Cash Collateral), or extend any financing to any chapter 11

trustee, chapter 7 trustee, or similar responsible person appointed for the estate of any Debtor in

the Chapter 11 Cases or any Successor Cases.

20.    *Debtors', DIP Facility Agent's, Fronting Lenders', Other DIP Secured Parties',
and Secured Parties' Protections*.

(a)    *Reservation of Rights of the DIP Facility Agent, the Fronting Lender, Other
DIP Secured Parties, and the Secured Parties*.  Except as otherwise expressly set forth in this Final

Order (including the relative priorities set forth in **Exhibit 1**), the entry of this Final Order is

68

without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair: (a) any of the rights of any of the Secured Parties to seek any other or supplemental relief in respect of the Debtors, including the right to seek additional adequate protection; (b) any of the rights of the DIP Facility Agent, the Fronting Lender, the other DIP Secured Parties, or the Secured Parties under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right of the DIP Facility Agent (at the direction of the Required DIP Lenders), the other DIP Secured Parties, or the Secured Parties to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code, (ii) request dismissal of any of the Chapter 11 Cases, conversion of any of the Chapter 11 Cases to cases under chapter 7, or appointment of a chapter 11 trustee or examiner with expanded powers in any of the Chapter 11 Cases, or (iii) seek to propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans; or (c) any other rights, claims, or privileges (whether legal, equitable, or otherwise) of any of the DIP Facility Agent, the Fronting Lender, the other DIP Secured Parties, or any Secured Parties. Notwithstanding anything in this Final Order to the contrary, (i) this Final Order does not constitute an agreement for purposes of section 1110 of the Bankruptcy Code and (ii) the Debtors', the RCF Secured Parties', and the Secured Notes Parties' respective rights under section 1110 of the Bankruptcy Code are preserved; *provided*, that the Debtors shall not revise the terms of the Carve Out with respect to the Revolving Priority Collateral absent consent of the RCF Agents (acting at the direction of the requisite RCF Lenders).

(b)     *No Waiver for Failure to Seek Relief.*  The failure or delay of the DIP Facility Agent, the Fronting Lender, any of the other DIP Secured Parties, and/or any of the Secured Parties to exercise their respective rights and remedies under this Final Order, the DIP

Documents, the Secured Documents, or applicable law, as the case may be, shall not constitute a waiver of their respective rights hereunder, thereunder, or otherwise.

(c)    *Release*.  Upon entry of this Final Order, and subject to paragraph 15 solely regarding Challenges in respect of the Secured Parties, the Prepetition Liens and the Prepetition Secured Obligations, each of the Debtors and the Debtors' estates, on its own behalf and on behalf of each of their predecessors, successors, and assigns hereby to the maximum extent permitted by applicable law, unconditionally, irrevocably, and fully forever release, remise, acquit, relinquish, irrevocably waive, and discharge each of the DIP Facility Agent, the Fronting Lender, the other DIP Secured Parties, the Secured Parties (in each case, in their capacities as such), and each of their respective former, current, or future officers, employees, directors, agents, representatives, owners, members, partners, affiliated investment funds, or investment vehicles, managed, advised, or sub-advised accounts, funds, or other entities, investment advisors, sub-advisors or managers, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, and predecessors in interest, each in their capacity as such (collectively, the "**Released Parties**"), of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness, and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending, or threatened including, without limitation, all legal and equitable theories of recovery, arising under common law, statute, or regulation, or by contract, of every nature and description that exist on the date hereof including, without limitation, (i) any so-called "lender liability" or equitable subordination claims or defenses, (ii) any and all claims and causes of action arising under the Bankruptcy Code, (iii) any and all claims and causes

70

of action regarding the validity, priority, extent, enforceability, perfection, or avoidability of the liens or claims of the DIP Facility Agent, the Fronting Lender, and the other DIP Secured Parties, and (iv) any and all claims and causes of action regarding the validity, priority, extent, enforceability, perfection, or avoidability of the liens or claims of the Secured Parties; *provided* that (x) the release set forth in the foregoing clause (iii) in respect of the Interim New Money DIP Loans, Interim Roll-Up DIP Loans, the DIP Liens in respect of the Interim New Money DIP Loans and the Interim Roll-Up DIP Loans, and any other DIP Obligations approved by the Interim DIP Order were effective upon entry of the Interim DIP Order and are reaffirmed by this Final Order and (y) the release set forth in this paragraph shall not release any claims or liabilities against a Released Party that a court of competent jurisdiction pursuant to a final, non-appealable order determines primarily result from the bad faith, fraud, gross negligence, or willful misconduct of such Released Party. For the avoidance of doubt, nothing in this paragraph shall relieve the DIP Facility Agent, the Fronting Lender, the other DIP Secured Parties, the Secured Parties, or the Debtors of their obligations hereunder or under the DIP Documents.

(d)     *Limitation of Liability*.  In determining to make any loan under the DIP Documents, permitting the use of any Cash Collateral authorized to be used pursuant to the Second Interim Adequate Protection Order, the Interim DIP Order, and this Final Order, or exercising any rights or remedies as and when permitted pursuant to this Final Order, the DIP Documents, or the Secured Documents, the DIP Facility Agent, the Fronting Lender, the other DIP Secured Parties, and the Secured Parties (in each case, solely in their capacities as such) shall not be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors or their respective business (as such terms, or any similar terms, are used in the United States Comprehensive Environmental

71

Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601 *et seq.* as amended, or any similar federal or state statute), nor shall they owe any fiduciary duty to any of the Debtors or their creditors or estates, or constitute or be deemed to constitute a joint venture or partnership with any of the Debtors.  Furthermore, nothing in this Final Order, the DIP Documents, the Secured Notes Documents, or the RCF Loan Documents shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Facility Agent, the Fronting Lender, the other DIP Secured Parties, or any Secured Parties (solely in their capacities as such) of any liability for any claims arising from the prepetition or post-petition activities of any of the Debtors or their direct or indirect subsidiaries.

(e)    *Insurance.*  The Debtors shall maintain at all times casualty and loss insurance coverage for the Prepetition Collateral and the DIP Collateral on substantially the same basis as maintained prior to the Petition Date.  Upon entry of the Interim DIP Order and as reaffirmed by this Final Order, the DIP Facility Agent and the RCF Agents shall be deemed to be, without any further action or notice, named as an additional insured and lender's loss payee on each insurance policy maintained by the Debtors which in any way relates to the DIP Collateral.

21.    *Preservation of Rights Granted Under this Final Order.*

(a)    Subject to the Carve Out and to the extent provided in this Final Order and the priorities set forth in **Exhibit 1** and the Permitted Liens (if any), other than as set forth in this Final Order, (i) the DIP Liens shall not be made subject to or, absent further of order the Court in connection with any financing under section 364 of the Bankruptcy Code that is intended to repay or refinance, in whole or in part, the DIP Obligations (any such financing, an "**Alternative DIP Financing**") which provides for the repayment or refinancing, in whole or in part, of the DIP Obligations in accordance with the DIP Credit Agreement (with respect to which the DIP Secured

Parties and the Secured Parties reserve all rights), *pari passu* with any lien or security interest granted in any of the Chapter 11 Cases arising after the Petition Date, and the DIP Liens shall not be subject to or junior to or *pari passu* with any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code and (ii) no claim for any administrative expense, secured claim, or unsecured claim against any of the Debtors with priority superior to or, absent further order of the Court in connection with any Alternative DIP Financing which provides for the repayment or refinancing, in whole or in part, of the DIP Obligations in accordance with the DIP Credit Agreement (with respect to which the DIP Secured Parties and the Secured Parties reserve all rights) equal to the DIP Superpriority Claims shall be granted.

(b)     Subject to the Carve Out, the DIP Liens and the Permitted Liens (if any) each to the extent provided in this Final Order, and the priorities set forth in **Exhibit 1**, (i) absent further order of the Court in connection with Alternative DIP Financing which provides for the repayment or refinancing, in whole or in part, of the DIP Obligations in accordance with the DIP Credit Agreement (with respect to which the DIP Secured Parties and the Secured Parties reserve all rights), none of the Adequate Protection Liens, the Cash Collateral Adequate Protection Liens, the Prepetition Secured Notes Liens, or the Prepetition RCF Liens shall be made subject to and/or *pari passu* with any lien or security interest granted in any of the Chapter 11 Cases arising after the Petition Date, (ii) the Adequate Protection Liens and the Cash Collateral Adequate Protection Liens, shall not be subject to, junior to, or *pari passu* with any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code, and (iii) absent further order of the Court (with respect to which the Secured Parties reserve all rights), no claim for any administrative expense, secured claim, or unsecured claim against any

of the Debtors with priority superior or equal to the Adequate Protection Claims, the Prepetition Secured Notes Obligations, or the Prepetition RCF Obligations shall be granted.

(c)        In the event this Final Order or any provision hereof is vacated, reversed, or modified on appeal or otherwise, any liens or claims granted to the DIP Secured Parties or the Secured Parties hereunder arising prior to the effective date of any such vacatur, reversal, or modification of this Final Order shall be governed in all respects by the original provisions of this Final Order, including entitlement to all rights, remedies, privileges, and benefits granted herein, and the DIP Secured Parties and the Secured Parties shall be entitled to the protections afforded in section 363(m) of the Bankruptcy Code with respect to all uses of the DIP Collateral, the DIP Obligations, the Prepetition Collateral, and all Adequate Protection Obligations, as applicable.

(d)        Subject to the Carve Out to the extent provided in this Final Order, and, unless and until all DIP Obligations, Prepetition Secured Notes Obligations, Prepetition RCF Obligations, and Adequate Protection Obligations are indefeasibly paid in full, in cash or in kind, as applicable, and all commitments to extend credit under the DIP Facility are terminated, the Debtors irrevocably waive the right to seek and shall not seek or consent to, directly or indirectly: (i) except as permitted under the DIP Documents and with the prior written consent of Required DIP Lenders and, to the extent that the rights or obligations of any of the Secured Notes Parties or the RCF Secured Parties are adversely impacted, the Secured Notes Trustee (acting at the direction of the Required Noteholders) and the RCF Agents (acting at the direction of the requisite RCF Lenders), as applicable, any modification, stay, vacatur, or amendment of this Final Order; (ii) the use of Cash Collateral of the Secured Parties for any purpose other than as permitted in the DIP Documents and this Final Order; (iv) an order converting or dismissing any of the Chapter 11 Cases; (v) an order appointing a chapter 11 trustee in any of the Chapter 11 Cases; or (vi) an order

74

appointing an examiner with enlarged powers in any of the Chapter 11 Cases; *provided*, that nothing in the foregoing shall require the Debtors to take any action, or to refrain from taking any action, to the extent that the Debtors determine that taking such action or refraining from taking such action is required in the exercise of the Debtors' fiduciary duties.

(e)        Notwithstanding any order dismissing any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code or otherwise entered at any time, (x) the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens, the Cash Collateral Adequate Protection Liens, the Adequate Protection Claims, all Adequate Protection Obligations, and any other administrative claims granted pursuant to the Interim DIP Order and this Final Order shall continue in full force and effect and shall maintain their priorities as provided in this Final Order and the DIP Documents until all DIP Obligations and Adequate Protection Obligations are indefeasibly paid in full, in cash, or in kind, as applicable, and such DIP Liens, DIP Superpriority Claims, Adequate Protection Liens, Cash Collateral Adequate Protection Liens, Adequate Protection Claims, Adequate Protection Obligations, and the other administrative claims granted pursuant to the Interim DIP Order and this Final Order shall, notwithstanding such dismissal, remain binding on all parties in interest; and (y) the Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens, obligations, and security interests referred to in clause (x) above.

(f)        Except as expressly provided in this Final Order and the DIP Documents, the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens, the Cash Collateral Adequate Protection Liens, the Adequate Protection Claims, Adequate Protection Obligations, and all other rights and remedies of the DIP Facility Agent, the Fronting Lender, the other DIP Secured Parties, the Secured Notes Trustee, the Secured Notes Collateral Agent, the Secured Notes

75

Depositary, the Secured Notes Parties, and/or the RCF Secured Parties granted by the provisions of this Final Order and the DIP Documents shall survive, shall maintain their priority as provided in this Final Order, and shall not be modified, impaired or discharged by (i) the entry of an order converting any of the Chapter 11 Cases to a case under chapter 7, dismissing any of the Chapter 11 Cases, terminating the joint administration of these Chapter 11 Cases, or by any other act or omission, (ii) the entry of an order approving the sale of any DIP Collateral or Prepetition Collateral pursuant to section 363(b) of the Bankruptcy Code, or (iii) the entry of an order confirming a plan of reorganization in any of the Chapter 11 Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors have waived any discharge as to any remaining DIP Obligations or Adequate Protection Obligations.  The terms and provisions of this Final Order and the DIP Documents shall continue in these Chapter 11 Cases, and in any Successor Cases (including if these Chapter 11 Cases cease to be jointly administered or in any superseding chapter 7 cases under the Bankruptcy Code).

(g)     Nothing in this Final Order shall modify, prime, limit, alter, or expand any terms of any surety bonds, any related indemnity agreements, and/or any rights of the Debtors' sureties in any of their collateral.

(h)     Notwithstanding anything to the contrary contained in this Final Order, nothing herein shall impair, limit, restrict, or otherwise affect the rights and other agreements of the RCF Secured Parties and the Secured Notes Parties, as applicable, in the Secured Documents and the Intercreditor Agreements with respect to any debtor-in-possession financing or otherwise.

(i)     The Debtors are authorized to use Unencumbered Funds to make post-petition purchases of fuel from fuel-related vendors, including airline fuel consortiums (associations which manage fuel procurement, storage, and distribution at major airports),

suppliers of fuel (*e.g.*, jet gasoline, diesel, lubricants), and suppliers providing other fuel-related services (collectively, the "**Fuel Vendors**") on reasonable business terms and conditions (including pursuant to any existing agreements between the Debtors and a Fuel Vendor, which may include pre-payments).  In addition, the Debtors agree that the Fuel Vendors may apply pre-payments paid to the Fuel Vendors pre-Petition Date to the post-petition purchases of fuel from the Fuel Vendors.  Nothing in this Final Order shall alter, impair, condition, limit, release, or otherwise prejudice or diminish any setoff, recoupment, or similar rights under the Bankruptcy Code or other applicable law held by any Fuel Vendors against the Debtors, the Debtors' estates, or any collateral or credit assurance provided to any Fuel Vendor by or on behalf of the Debtors. All such rights are hereby preserved.

(j)    Nothing in this Final Order shall prime or otherwise modify any valid and enforceable statutory lien held by Broward County, the Broward County Tax Collector, Bexar County, Lone Star College System, Tarrant County, City of Houston, Grapevine-Colleyville ISD, and City of Grapevine.  All parties' rights to object to the priority, validity, and extent of the liens asserted by Broward County, the Broward County Tax Collector,  Bexar County, Lone Star College System, Tarrant County, City of Houston, Grapevine-Colleyville ISD, and City of Grapevine are fully preserved.

(k)    Nothing in this Final Order shall (a) create a lien or other security interest in U.S. Bank Account No. x8797 either senior or junior to the perfected security interest held in such account by U.S. Bank, (b) make U.S. Bank Account No. x8797 part of the DIP Collateral or effect a superpriority lien on such account, or (c) otherwise modify the terms of the Credit Card Processing Agreement between the Debtors and U.S. Bank and any exhibits or amendments thereto, including the Elavon Amendments (as such terms are defined in the First Day

77

Declaration), it being understood that the DIP Collateral shall include the Debtors' residual interest (if any) in such account.

(l)    For the avoidance of doubt, (a) neither the First Interim Adequate Protection Order, the Second Interim Adequate Protection Order, the Interim DIP Order, this Final Order, nor the DIP Documents shall authorize the Debtors to grant liens and/or security interests in (i) any property received and/or held by ACE American Insurance Company and/or any of its U.S.-based affiliates (collectively, together with each of their successors, and solely in their roles as insurers, "**Chubb**") or (ii) any insurance policy issued by Chubb; (b) neither the First Interim Adequate Protection Order, the Second Interim Adequate Protection Order, the Interim DIP Order, nor this Final Order grants the Debtors any right to use any property (or the proceeds thereof) held by Chubb as collateral to secure obligations under insurance policies and related agreements; (c) the proceeds of any insurance policy issued by Chubb shall only be considered to be DIP Collateral to the extent such proceeds are paid to the Debtors (as opposed to a third party claimant) pursuant to the terms of any such applicable insurance policy; and (d) nothing, including the First Interim Adequate Protection Order, the Second Interim Adequate Protection Order, the Interim DIP Order, this Final Order, and/or the DIP Documents alters or modifies the terms and conditions of any insurance policies or related agreements issued by Chubb.

(m)    Notwithstanding anything to the contrary in the First Interim Adequate Protection Order, the Second Interim Adequate Protection Order, the Interim DIP Order, or this Final Order any valid and enforceable post-petition liens held by AerSale, Inc. ("**AerSale**") shall not be altered, impaired, limited, primed, or otherwise modified or prejudiced by the terms of the First Interim Adequate Protection Order, the Second Interim Adequate Protection Order, the

78

Interim DIP Order, or this Final Order.  All parties' rights, if any, to object to the priority, validity, and extent of AerSale's post-petition liens, if any, are preserved.

(n)    Notwithstanding anything to the contrary herein, nothing in this Final Order shall impair (i) the Debtors' ability to pay the prepetition claims of NAI National Ltd. in accordance with the *Final Order (I) Authorizing the Debtors to Satisfy Prepetition Claims of (A) Critical Vendors, (B) Foreign Vendors, (C) Lien Claimants, and (D) 503(b)(9) Claimants, (II) Confirming Administrative Status of Outstanding Orders, (III) Authorizing Financial Institutions to Honor and Process Related Checks and Transfers, and (IV) Granting Related Relief* [ECF No. 217], should the Debtors determine to do so in accordance therewith, or (ii) the 503(b)(9) status of any claims arising from NAI National Ltd.'s delivery of goods that were received by the Debtors within twenty (20) days prior to the Petition Date.

22.    *Proofs of Claim*.  None of the DIP Facility Agent, the other DIP Secured Parties, or the Secured Parties shall be required to file proofs of claim in any of the Chapter 11 Cases or any Successor Cases for any claim allowed herein, and the stipulations in paragraph G shall be deemed to constitute a timely filed proof of claim with respect to the Prepetition Secured Obligations against each of the Debtors in the Chapter 11 Cases.  Notwithstanding any order entered by the Court in relation to the establishment of a bar date in any of the Chapter 11 Cases or any Successor Cases to the contrary, the DIP Facility Agent, on behalf of itself and the DIP Secured Parties, the Secured Notes Collateral Agent, on behalf of itself and the other Secured Notes Parties, and each of the RCF Agents, on behalf of itself and the RCF Secured Parties, are each authorized and entitled, but not required, to file (and amend and/or supplement, as the respective agents see fit) a master proof of claim on account of any and all of the respective claims arising under the DIP Facility or Secured Documents, as applicable (the "**Master Proof of**

**Claim**").  For administrative convenience, any Master Proof of Claim authorized herein may be filed in the case of Debtor Spirit Airlines, LLC with respect to all amounts asserted in such Master Proof of Claim, and such Master Proof of Claim shall be deemed to be filed and asserted by the applicable entity or entities against every Debtor asserted to be liable for the applicable claim.  For the avoidance of doubt, the provisions set forth in this paragraph and any Master Proof of Claim filed pursuant to the terms hereof are intended solely for the purpose of administrative convenience and shall not affect the substantive rights of any party in interest or their respective successors in interest, including, without limitation, not affecting the numerosity requirements set forth in section 1126 of the Bankruptcy Code.  Neither the DIP Facility Agent, the Secured Notes Collateral Agent, nor the RCF Agents shall be required to attach any instruments, agreements, or other documents evidencing the obligations owing by each of the Debtors to the DIP Facility Agent and other DIP Secured Parties, or the Secured Parties, as applicable, which instruments, agreements, or other documents will be provided (subject to any applicable confidentiality restrictions) upon written request to counsel to the DIP Facility Agent, the Secured Notes Collateral Agent, or RCF Agents, as applicable.  Any order entered by the Court in relation to the establishment of a bar date for any claim (including any administrative claim) in any of the Chapter 11 Cases or any Successor Cases shall not apply to the DIP Facility Agent, the other DIP Secured Parties, or Secured Parties.  For the avoidance of doubt, none of the DIP Facility Agent, the other DIP Secured Parties, or the Secured Parties will be required to file any request for allowance and/or payment of any administrative expenses, and this Final Order shall be deemed to constitute a timely filed request for allowance and/or payment of any Prepetition Secured Obligations or Adequate Protection Claims constituting administrative expenses or any DIP Obligations, as applicable.

23.     *Retention of Jurisdiction*.  The Court retains jurisdiction over any matter arising from or related to the implementation, interpretation, and enforcement of this Final Order.

24.     *Creditors' Committee Reporting Rights*.  The Debtors shall provide to the Creditors' Committee professionals all reporting provided to the RCF Administrative Agent and RCF Administrative Agent Advisors hereunder, substantially at the same time such reports are provided to the RCF Administrative Agent and RCF Administrative Agent Advisors.

25.     *DIP Lenders, Ad Hoc Committee of Secured Noteholder Advisors, and RCF Administrative Agent Advisors Information Rights.*  The Debtors shall provide the DIP Lenders, the Ad Hoc Committee of Secured Noteholder Advisors, and RCF Administrative Agent Advisors the same information rights, notice rights, reporting rights, or other similar rights provided to the Creditors' Committee pursuant to the final orders entered on the First Day Pleadings (as defined in the First Day Declaration).

26.     *Effectiveness*.  This Final Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable immediately upon entry hereof.  Notwithstanding Bankruptcy Rules 4001(a)(3), 4001(c)(1), 6004(h), 6006(d), 7062, or 9024, any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Final Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Final Order.

27.     *Use of Encumbered Cash Upon Repayment or Refinancing*.  Upon the Debtors' incurrence of Alternative DIP Financing, all outstanding DIP Obligations (excluding any DIP Obligations in respect of outstanding Roll-Up DIP Loans in excess of an aggregate principal amount of $400,000,000 of Roll-Up DIP Loans, which excess amount is not required to be repaid in connection therewith) shall be repaid in full from the proceeds of such Alternative DIP

Financing or, at the Debtors' option, the Encumbered Cash plus proceeds of such Alternative DIP Financing.

28.    *Final Order Governs*.  In the event of any inconsistency between the provisions of the Secured Documents, the DIP Documents, this Final Order, the Interim DIP Order, the First Interim Adequate Protection Order, the Second Interim Adequate Protection Order, the DIP Motion, the First Adequate Protection Motion, the Supplemental Adequate Protection Motion, or any other order entered by this Court, the provisions of this Final Order shall govern.  **Exhibit 1** of this Final Order shall govern in the event of any conflict with the remainder of this Final Order. Notwithstanding anything to the contrary in any other order entered by this Court, any payment made pursuant to any authorization contained in any other order entered by this Court shall be consistent with and subject to the requirements set forth in this Final Order and the DIP Documents.

Dated:    _____, 2025
            White Plains, New York

_____
THE HONORABLE SEAN H. LANE
UNITED STATES BANKRUPTCY JUDGE

**Exhibit 1**

**Lien Priorities on DIP Collateral**

The DIP Liens, the Adequate Protection Liens, Cash Collateral Adequate Protection Liens, the Prepetition Secured Notes Liens, the Prepetition RCF Liens, and the Carve Out shall have the following priority on the DIP Collateral and the applicable Prepetition Collateral at each Debtor entity obligated pursuant to the DIP Obligations, the Adequate Protection Obligations, or the applicable Prepetition Secured Obligations, it being understood that the Secured Parties agree that the foregoing shall apply at all times on and after the Petition Date, *provided* that the priorities set forth in Paragraphs 13(d) and 13(h) of this Final Order shall apply with respect to the funding of the Carve Out and the application of any excess from any Carve Out Account:

| Priority | Notes Priority Collateral | Revolving Priority Collateral | Owned Aircraft Surplus (Prior to Replenishment of Encumbered Cash) | Owned Aircraft Surplus (After Replenishment of Encumbered Cash) | Other DIP Collateral (Other than Owned Aircraft Surplus) |
|---|---|---|---|---|---|
| 1. | Carve Out | Professional Fee Carve Out (up to the RCF Professional Fee Carve Out Cap) | Carve Out | Carve Out | Carve Out |
| 2. | Secured Notes Permitted Liens | RCF Permitted Liens | Secured Notes Cash Collateral Adequate Protection Liens | DIP Liens | Permitted Liens |
| 3. | DIP Liens | RCF Adequate Protection Liens | DIP Lien | Secured Notes Adequate Protection Liens and RCF Adequate Protection Liens | DIP Liens |
| 4. | Secured Notes Adequate Protection Liens | Prepetition RCF Liens | RCF Secured Parties Cash Collateral Adequate Protection Liens | N/A | Secured Notes Adequate Protection Liens and RCF Adequate Protection Liens |
| 5. | Prepetition Secured Notes Liens | DIP Liens | N/A | N/A | NA |
| 6. | RCF Adequate Protection Liens | Secured Notes Adequate Protection Liens | N/A | N/A | N/A |

| 7. | Prepetition RCF Liens | Prepetition Secured Notes Liens | N/A | N/A | N/A |

## Exhibit 2

**Owned Aircraft**

**Exhibit 3**

**DIP Credit Agreement**

**Annex A**

**Defined Terms**

(i)      "**Ad Hoc Committee of Secured Noteholder Advisors**" means Akin Gump Strauss Hauer & Feld LLP, as counsel, Perella Weinberg Partners LP, as investment banker, SkyWorks Capital, LLC, as financial advisor, Watson Farley & Williams LLP, as aviation counsel, and any other advisor (legal, financial, or otherwise) retained by, or to provide services to, the Ad Hoc Committee of Secured Noteholders.

(ii)      "**Ad Hoc Committee of Secured Noteholders**" means that certain ad hoc committee of Secured Noteholders.

(iii)      "**Additional Carve Out Obligations**" has the meaning set forth in paragraph 13(d) of this Final Order.

(iv)      "**Adequate Protection Claims**" means, collectively, the RCF Adequate Protection Claims and the Secured Notes Adequate Protection Claims.

(v)      "**Adequate Protection Liens**" means, collectively, the RCF Adequate Protection Liens and the Secured Notes Adequate Protection Liens.

(vi)      "**Adequate Protection Obligations**" means the Adequate Protection Claims, the Adequate Protection Liens, the Cash Collateral Adequate Protection Liens, and all other forms of adequate protection provided to any of the Secured Parties under the Second Interim Adequate Protection Order, the Interim DIP Order, and this Final Order.

(vii)      "**Adequate Protection Professional Fees and Expenses**" has the meaning set forth in paragraph 8(c) of this Final Order.

(viii)      "**Administrative Claim Carve Out**" has the meaning set forth in paragraph 13(i) of this Final Order.

(ix)      "**Administrative Claim Carve Out Claims**" has meaning set forth in paragraph 13(i) of this Final Order.

(x)      "**Administrative Claim Carve Out Segregated Account(s)**" has the meaning set forth in paragraph 13(i) of this Final Order.

(xi)      "**AerCap Motion**" means the *Motion of Debtors for Entry of an Order (I) Approving the Global Restructuring Term Sheet with AerCap Ireland Limited, (II) Authorizing and Approving Assumption and Rejection of Certain Aircraft Agreements, (III) Authorizing Entry Into the New Lease Agreements and Definitive Documents, and (IV) Granting Related Relief* [ECF No. 135].

(xii)      "**AerSale**" has the meaning set forth in paragraph 21(m) of this Final Order.

(xiii)    "**Agreed Roll-Up Treatment**" has the meaning set forth in paragraph 14(a) of this Final Order.

(xiv)    "**Aircraft and Spare Engine Security Agreement**" has the meaning set forth in footnote 7 of this Final Order.

(xv)    "**Aircraft Counterparties**" has the meaning set forth in the *Motion of the Debtors for Entry of an Order (I) for Authority to (A) Enter into Agreements under Section 1110(a) of the Bankruptcy Code, (B) Enter into Stipulations to Extend the Time to Comply with Section 1110 of the Bankruptcy Code, and (C) File Redacted Versions of Such Agreements and Stipulations and (II) Approving Related Procedures* [ECF No. 78].

(xvi)    "**Aircraft Debt**" has the meaning set forth in the definition of "Excluded Assets" in this Annex A.

(xvii)    "**Allowed Professional Fees**" has the meaning set forth in paragraph 13(b) of this Final Order.

(xviii)    "**Alternative DIP Financing**" has the meaning set forth in paragraph 21(a) of this Final Order.

(xix)    "**Amended and Restated Revolving Credit Facility Agreement**" has the meaning set forth in paragraph G(vi) of this Final Order.

(xx)    "**Available RCF Cash**" has the meaning set forth in paragraph 4(a) of this Final Order.

(xxi)    "**Avoidance Action**" means any Claim or Cause of Action arising under chapter 5 of the Bankruptcy Code or any applicable state law adopting the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or similar statute or common law.

(xxii)    "**Avoidance Proceeds**" means any and all proceeds of or property recovered from Avoidance Actions, whether by adjudication, judgment, settlement, or otherwise.

(xxiii)    "**Backstop Premium**" has the meaning set forth in paragraph 2(d) of this Final Order.

(xxiv)    "**Bankruptcy Code**" has the meaning set forth in the introductory paragraph of this Final Order.

(xxv)    "**Bankruptcy Rules**" has the meaning set forth in the introductory paragraph of this Final Order.

(xxvi)    "**Borrower**" has the meaning set forth in subparagraph (a) of the introductory paragraph of this Final Order.

(xxvii)    "**Carve Out**" means the Professional Fee Carve Out and the Administrative Claim Carve Out.

(xxviii)    "**Carve Out Account**" has the meaning set forth in paragraph 13(d) of this Final Order.

(xxix)    "**Carve Out Amount**" means the Pre-Carve Out Notice Amount together with the Post-Carve Out Notice Amount.

(xxx)    "**Carve Out Reserves**" means the Post-Carve Out Trigger Notice Reserve together with the Pre-Carve Out Trigger Notice Reserve.

(xxxi)    "**Carve Out Trigger Date**" has the meaning set forth in paragraph 13(d) of this Final Order.

(xxxii)    "**Carve Out Trigger Notice**" has the meaning set forth in paragraph 13(c) of this Final Order.

(xxxiii)    "**Case Management Procedures**" has the meaning set forth in the *Order Implementing Certain Notice and Case Management Procedures* [ECF No. 61].

(xxxiv)    "**Cash Collateral**" has the meaning set forth in paragraph F of this Final Order.

(xxxv)    "**Cash Collateral Adequate Protection Liens**" has the meaning set forth in paragraph 8(b) of this Final Order.

(xxxvi)    "**Cash Management Motion**" has the meaning ascribed to it in paragraph 4(a) of this Final Order.

(xxxvii)    "**Cause of Action**" means any cause of action under law or equity, of any kind or nature whatsoever, whether arising under United States federal or state law, common law, or otherwise.

(xxxviii)    "**Challenge**" means any challenge, objection, defense, or Claim or Cause of Action, in each case, including, without limitation, any Avoidance Action or any Claim or Cause of Action asserting reduction, setoff, offset, recoupment, recharacterization, subordination (whether equitable, contractual, or otherwise), reclassification, disgorgement, disallowance, impairment, recovery, or other cause of action of any kind or nature whatsoever, whether arising under the Bankruptcy Code, under applicable non-bankruptcy law, or otherwise.

(xxxix)    "**Challenge Budget**" has the meaning set forth in paragraph 16 of this Final Order.

(xl)    "**Challenge Deadline**" means no later than the earlier of (a) the date of entry of an order confirming a chapter 11 plan in these Chapter 11 Cases and (b)(i) with respect to the Creditors' Committee, the date that is 75 days after entry of the Second Interim Adequate Protection Order or (ii) with respect to other parties in interest, no later than the date that is 79 days after the Petition Date; provided that in the event that, prior to the expiration of the Challenge Period, (x) these Chapter 11 Cases are converted to chapter 7 or (y) a chapter 11 trustee is appointed in these Chapter 11 Cases, then, in each such case, the Challenge Period shall be extended for a period of 60 days solely with respect to any such trustee, commencing on the occurrence of either

3

of the events described in the foregoing clauses (x) and (y); provided further that, for the avoidance of doubt, the Challenge Deadline shall apply solely to any Challenge to the rights of parties in interest as stipulated in the Debtors' Stipulations, and shall be subject to the limitations contained therein.  The Challenge Deadline may be extended in writing from time to time by the RCF Advisors, the Ad Hoc Committee of Secured Noteholder Advisors, and counsel to the Debtors and the Creditors' Committee, which extension may be evidenced by electronic mail.

(xli)    "**Challenge Period**" means the period of time before the Challenge Deadline.

(xlii)    "**Challenge Proceeding**" has the meaning set forth in paragraph 15(a) of this Final Order.

(xliii)    "**Chapter 11 Cases**" has the meaning set forth in the introductory paragraph of this Final Order.

(xliv)    "**Chubb**" has the meaning set forth in paragraph 21(l) of this Final Order.

(xlv)    "**Claim**" has the meaning set forth in the Bankruptcy Code.

(xlvi)    "**Collateral Coverage Ratio**" has the meaning set forth in the Amended and Restated Revolving Credit Facility Agreement.

(xlvii)    "**Commitment Letter**" means that certain Debtor-in-Possession Facility Commitment Letter, dated as of October 10, 2025, by and among the Borrower and each Person party thereto as a "Backstop Party."

(xlviii)    "**Committee Professionals**" has the meaning set forth in paragraph 13(b) of this Final Order.

(xlix)    "**Contingent Roll-Up Term Loans**" has the meaning set forth in the DIP Credit Agreement.

(l)    "**Court**" has the meaning set forth in the introductory paragraph of this Final Order.

(li)    "**Credit Card Processing Agreement**" has the meaning set forth in the First Day Declaration.

(lii)    "**Creditors' Committee**" has the meaning set forth in paragraph C of this Final Order.

(liii)    "**Cromer Declaration**" has the meaning set forth in the introductory paragraph of this Final Order.

(liv)    "**Debtor Professionals**" has the meaning set forth in paragraph 13(b) of this Final Order.

(lv)  "**Debtors**" has the meaning set forth in the introductory paragraph of this Final Order.

(lvi)  "**Debtors' Stipulations**" has the meaning set forth in paragraph G of this Final Order.

(lvii)  "**Declarations**" has the meaning set forth in the introductory paragraph of this Final Order.

(lviii)  "**Diminution in Value**" has the meaning set forth in paragraph H(x) of this Final Order.

(lix)  "**DIP Collateral**" means (i) the Debtors' interest in all assets and properties, whether tangible, intangible, real, personal, or mixed, whether now owned by or owing to, or hereafter acquired by, or arising in favor of, the Debtors (including under any trade names, styles, or derivations thereof), and whether owned or consigned by or to, or leased from or to, the Debtors, and regardless of where located, in each case to the extent such assets and properties constitute Prepetition Collateral; and (ii) property of the Debtors, whether existing on the Petition Date or thereafter acquired, including, without limitation, all unencumbered assets of the Debtors, all prepetition property and post-petition property of the Debtors' estates, and the proceeds, products, rents, and profits thereof, whether arising from section 552(b) of the Bankruptcy Code or otherwise, including, without limitation, unencumbered cash (and any investment of such cash) of the Debtors, all equipment, all goods, all accounts, cash, payment intangibles, bank accounts, and other deposit or securities accounts of the Debtors (including any accounts opened prior to, on, or after the Petition Date), insurance policies and proceeds thereof, equity interests, instruments, intercompany claims, accounts receivable, other rights to payment, all general intangibles, all contracts and contract rights, securities, investment property, letters of credit and letter of credit rights, chattel paper, all interest rate hedging agreements, all owned real estate, real property leaseholds, fixtures, patents, copyrights, trademarks, trade names, rights under license agreements, and other intellectual property, all commercial tort claims, all aircraft, slots, gates, spare parts and ground support equipment and all claims and causes of action, and any and all proceeds, products, rents, and profits of the foregoing, excluding the Excluded Assets but not, for the avoidance of doubt, the Avoidance Proceeds.  Notwithstanding anything to the contrary herein (x) to the extent a DIP Lien or an Adequate Protection Lien cannot attach to the DIP Collateral pursuant to applicable law, the DIP Liens and Adequate Protection Liens granted pursuant to the Interim DIP Order and/or this Final Order shall attach to the Debtors' economic rights therein, including, without limitation, any and all such proceeds of such DIP Collateral and any Excluded Assets and (y) for the avoidance of doubt, the Owned Aircraft Surplus constitutes DIP Collateral and any of the Debtors' aircraft with Aircraft Debt that is refinanced using Cash Collateral or the proceeds of the DIP Facility shall be "DIP Collateral" subject to a first lien mortgage and typical associated collateral protections.

(lx)  "**DIP Commitments**" has the meaning set forth in subparagraph (a)(iii) of the introductory paragraph of this Final Order.

(lxi)  "**DIP Credit Agreement**" has the meaning ascribed to such term in the DIP Motion.

5

(lxii)     "**DIP Documents**" means the DIP Credit Agreement and all guarantee, collateral, pledge and security agreements, and all other agreements, documents, certificates and instruments executed, recorded and/or delivered in connection therewith, including but not limited to the DIP Syndication Materials, in each case, as amended, supplemented or modified in accordance with the terms thereof and this Final Order.

(lxiii)    "**DIP Facility**" has the meaning set forth in subparagraph (a) of the introductory paragraph of this Final Order.

(lxiv)    "**DIP Facility Agent**" means Wilmington Trust, National Association, as administrative agent and collateral agent for the DIP Facility.

(lxv)     "**DIP Fees and Expenses**" has the meaning set forth in paragraph 2(d)(ii) of this Final Order.

(lxvi)    "**DIP Lenders**" has the meaning set forth in subparagraph (a)(i) of the introductory paragraph of this Final Order.

(lxvii)   "**DIP Loans**" has the meaning set forth in subparagraph (a)(ii) of the introductory paragraph of this Final Order.

(lxviii)  "**DIP Motion**" has the meaning set forth in the introductory paragraph of this Final Order.

(lxix)    "**DIP Obligations**" has the meaning set forth in subparagraph (a)(iii) of the introductory paragraph of this Final Order.

(lxx)     "**DIP Secured Parties**" means, collectively, the DIP Facility Agent and the DIP Lenders.

(lxxi)    "**DIP Superpriority Claims**" has the meaning set forth in paragraph 6 of this Final Order.

(lxxii)   "**DIP Syndication**" has the meaning specified to the term "Opportunity" in the DIP Syndication Materials.

"**DIP Syndication Final Closing Date**" has the meaning specified to the term "Final Closing Date" in the DIP Syndication Materials.

(lxxiii)  "**DIP Syndication Initial Closing Date**" has the meaning specified to the term "Initial Closing Date" in the DIP Syndication Materials.

(lxxiv)   "**DIP Syndication Materials**" means that certain Notice and Subscription Form to the Eligible Holders of PIK Toggle Senior Secured Notes due 2030 (CUSIP No. 84859BAC5 and CUSIP No. G83518AC7) of Spirit IP Cayman Ltd. and Spirit Loyalty Cayman Ltd. with respect to the Opportunity of each Eligible Holder to (i) participate as a lender in the DIP Credit Agreement and (ii) exchange and "roll up", based on participation in the New Money DIP Loans,

6

its Secured Notes for additional participation as a lender pursuant to the DIP Credit Agreement, substantially in the form filed at ECF No. 226, as modified by ECF No. 242.

(lxxv)    "**DIP Termination Date**" has the meaning set forth in paragraph 12(c) of this Final Order.

(lxxvi)    "**DIP Termination Event**" has the meaning set forth in paragraph 12(a) of this Final Order.

(lxxvii)    "**Elavon Amendments**" has the meaning set forth in the First Day Declaration.

(lxxviii)    "**Eligible Engine**" has the meaning set forth in the Amended and Restated Revolving Credit Facility Agreement.

(lxxix)    "**Eligible Holder**" has the meaning set forth in the DIP Syndication Materials.

(lxxx)    "**Eligible Spare Parts**" has the meaning set forth in the Amended and Restated Revolving Credit Facility Agreement.

(lxxxi)    "**Emergency Hearing**" has the meaning set forth in paragraph 12(c) of this Final Order.

(lxxxii)    "**Encumbered Accounts**" has the meaning set forth in paragraph G(iii) of this Final Order.

(lxxxiii)    "**Encumbered Cash**" has the meaning set forth in paragraph G(iii) of this Final Order.

(lxxxiv)    "**Excluded Assets**" means (a) any Avoidance Actions and (b) property that cannot be subject to liens pursuant to applicable law, rule, contract, or regulation (including any requirement to obtain the consent (after the use of commercially reasonable efforts to obtain such consent) of any governmental authority or third party, unless such consent has been obtained) or restrictions of contract (including, without limitation, federal concessions as well as equipment leases and financing arrangements but excluding any requirement to obtain consent) existing on the closing date or the time of entry of such contract (other than to the extent such restriction is ineffective under the UCC or other applicable law).  For the avoidance of doubt, Excluded Assets (A) will include (i) all assets which are collateral for any financing agreements (other than the Secured Documents) in connection with aircraft assets ("**Aircraft Debt**") and/or covered by a security agreement or other similar agreement related to the Aircraft Debt, including the proceeds thereof (but (a) only until such time as such applicable Aircraft Debt is satisfied in full, after which such proceeds shall no longer be Excluded Assets or (b) in the event that Cash Collateral or the proceeds of the DIP Facility are used to refinance the Aircraft Debt, the aircraft assets and all proceeds shall no longer be Excluded Assets), (ii) property that the Debtors are prohibited from granting liens on under the terms of a security agreement, lease or similar document (other than the Secured Documents) among the Debtors and any party entitled to the protections of section 1110 of the Bankruptcy Code, and (iii) the PFCs and all funds held in the PFC Account; *provided* that the DIP Secured Parties shall have a security interest in and the Adequate Protection Liens shall also be secured by any residual cash balance remaining in the PFC Account to the extent that

amounts held in the PFC Account exceed the amount of PFCs actually collected, and (B) does not include the Prepetition Secured Notes Collateral, the Prepetition RCF Collateral, or the Spare Parts Collateral.

(lxxxv)    "**Excluded Avoidance Proceeds**" has the meaning set forth in paragraph 17(b)of this Final Order.

(lxxxvi) "**Farnsworth Declaration**" has the meaning set forth in the introductory paragraph of this Final Order.

(lxxxvii) "**Final DIP Order Breach**" has the meaning set forth in paragraph 12(a) of this Final Order.

(lxxxviii) "**Final Hearing**" has the meaning set forth in subparagraph (l) of the introductory paragraph of this Final Order.

(lxxxix)   "**Final New Money DIP Loans**" has the meaning set forth in subparagraph (a)(ii) of the introductory paragraph of this Final Order.

(xc)        "**Final Order**" has the meaning set forth in the introductory paragraph of this Final Order.

(xci)       "**Final Roll-Up**" has the meaning set forth in subparagraph (a)(ii) of the introductory paragraph of this Final Order.

(xcii)      "**Final Roll-Up DIP Loans**" has the meaning set forth in subparagraph (a)(iii) (a)(ii) of the introductory paragraph of this Final Order.

(xciii)     "**First Adequate Protection Motion**" has the meaning set forth in the introductory paragraph of this Final Order.

(xciv)      "**First Day Declaration**" has the meaning set forth in the introductory paragraph of this Final Order.

(xcv)       "**First Day Pleadings**" has the meaning set forth in paragraph 25 of this Final Order.

(xcvi)      **First Interim Adequate Protection Order**" has the meaning set forth in the introductory paragraph of this Final Order.

(xcvii)     "**First Interim Hearing**" has the meaning set forth in the introductory paragraph of this Final Order.

(xcviii)    "**Fourth Draw**" has the meaning set forth in subparagraph (a)(i) of the introductory paragraph of this Final Order.

(xcix)      "**Foreign Accounts**" has the meaning set forth in the Cash Management Motion.

(c)      "**Fronting Lender**" has the meaning set forth in subparagraph (a)(i) of the introductory paragraph of this Final Order.

(ci)      "**Fuel Vendors**" has the meaning set forth in paragraph 21(i) of this Final Order.

(cii)      "**Guarantors**" has the meaning set forth in subparagraph (a) of the introductory paragraph of this Final Order.

(ciii)      "**Hearings**" has the meaning set forth in the introductory paragraph of this Final Order.

(civ)      "**Headquarters**" means the Debtors' headquarters located at 1731 Radiant Drive, Dania Beach, FL 33004.

(cv)      "**Incremental Second Draw**" has the meaning set forth in subparagraph (a)(iii) of the introductory paragraph of this Final Order.

(cvi)      "**Indemnified Person**" has the meaning set forth in paragraph 2(d)(iii) of this Final Order.

(cvii)      "**Information Agent**" means Epiq Corporate Restructuring, LLC.

(cviii)      "**Initial Draw**" has the meaning set forth in subparagraph (a)(i) of the introductory paragraph of this Final Order.

(cix)      "**Intercompany Borrower**" has the meaning set forth in paragraph G(iv) of this Final Order.

(cx)      "**Intercompany Lenders**" has the meaning set forth in paragraph G(iv) this Final Order.

(cxi)      "**Intercompany Loan**" has the meaning set forth in paragraph G(iv) of this Final Order.

(cxii)      "**Intercompany Loan Obligations**" has the meaning set forth in paragraph G(v) of this Final Order.

(cxiii)      "**Intercompany Note**" has the meaning set forth in paragraph G(iv) of this Final Order.

(cxiv)      "**Intercreditor Agreements**" means the Notes Priority Collateral ICA and the RCF Priority Collateral ICA.

(cxv)      "**Interim DIP Hearing**" has the meaning set forth in the introductory paragraph of this Final Order.

(cxvi)      "**Interim DIP Order**" has the meaning set forth in the introductory paragraph of this Final Order.

(cxvii)    "**Interim New Money DIP Loans**" has the meaning set forth in subparagraph (a)(i) of the introductory paragraph of this Final Order.

(cxviii)    "**Interim Roll-Up**" has the meaning set forth in subparagraph (a)(ii) of the introductory paragraph of this Final Order.

(cxix)    "**Interim Roll-Up DIP Loans**" has the meaning set forth in subparagraph (a)(ii) of the introductory paragraph of this Final Order.

(cxx)    "**Local Rules**" has the meaning set forth in the introductory paragraph of this Final Order.

(cxxi)    "**Master Proof of Claim**" has the meaning set forth in paragraph 22 of this Final Order.

(cxxii)    "**Material DIP Amendment**" has the meaning set forth in paragraph 2(e) of this Final Order.

(cxxiii)    "**New Money DIP Loans**" has the meaning set forth in subparagraph (a)(i) of the introductory paragraph of this Final Order.

(cxxiv)    "**Notes Priority Collateral**" has the meaning set forth in the Notes Priority Collateral ICA.

(cxxv)    "**Notes Priority Collateral ICA**" has the meaning set forth in paragraph G(iii) of this Final Order.

(cxxvi)    "**Notice Parties**" has the meaning set forth in the DIP Motion.

(cxxvii)    "**Notice Period**" has the meaning set forth in paragraph 12(b) of this Final Order.

(cxxviii)    "**OID**" has the meaning set forth in paragraph 2(d) of this Final Order.

(cxxix)    "**Other DIP Collateral**" means DIP Collateral, excluding all Notes Priority Collateral and Revolving Priority Collateral.

(cxxx)    "**Owned Aircraft**" has the meaning set forth in paragraph 7(c) of this Final Order.

(cxxxi)    "**Owned Aircraft Surplus**" has the meaning set forth in paragraph 7(c) of this Final Order.

(cxxxii)    "**Payment in Full**" means the indefeasible payment in full in cash of all applicable obligations, other than contingent indemnification and expense reimbursement obligations for which no claim or demand has been asserted, and all commitments under the applicable credit facility have been terminated or expired.

(cxxxiii)    "**Perfection Action**" has the meaning set forth in paragraph 11(b) of this Final Order.

10

(cxxxiv) "**Permitted Liens**" means, collectively, the RCF Permitted Liens and the Secured Notes Permitted Liens.

(cxxxv)  "**Petition Date**" has the meaning set forth in paragraph A of this Final Order.

(cxxxvi) "**PFC Account**" has the meaning set forth in the Cash Management Motion.

(cxxxvii) "**PFCs**" has the meaning set forth in the Cash Management Motion.

(cxxxviii)    "**Post-Carve Out Amounts**" has the meaning set forth in paragraph 13(d) of this Final Order.

(cxxxix)  "**Post-Carve Out Notice Amount**" has the meaning set forth in paragraph 13(b) of this Final Order.

(cxl)    "**Post-Carve Out Trigger Notice Reserve**" has the meaning set forth in paragraph 13(d) of this Final Order.

(cxli)    "**Post-Petition Cash**" means all funds, cash, investments, and/or securities generated by the Debtors' post-petition operations or the realization of post-petition or prepetition receivables (other than Straddle Credit Card Receipts); *provided*, *however*, for the avoidance of doubt, Post-Petition Cash does not include any funds, cash, investments, and/or securities in the Encumbered Accounts as of the Petition Date or any proceeds of Revolving Priority Collateral (other than cash up to the Spare Parts Cap from the sale or disposition of Spare Parts that are Revolving Priority Collateral which sale or disposition is in the ordinary course of business and consistent with past practice).

(cxlii)    "**Pre-Carve Out Amounts**" has the meaning set forth in paragraph 13(d) of this Final Order.

(cxliii)    "**Pre-Carve Out Notice Amount**" has the meaning set forth in paragraph 13(b) of this Final Order.

(cxliv)    "**Pre-Carve Out Trigger Notice Reserve**" has the meaning set forth in paragraph 13(d) of this Final Order.

(cxlv)    "**Prepetition Collateral**" means, collectively, the Prepetition RCF Collateral and the Prepetition Secured Notes Collateral.

(cxlvi)    "**Prepetition Liens**" means, collectively, the Prepetition RCF Liens and the Prepetition Secured Notes Liens.

(cxlvii)    "**Prepetition RCF Collateral**" has the meaning set forth in paragraph G(viii) of this Final Order.

(cxlviii)  "**Prepetition RCF Liens**" has the meaning set forth in paragraph G(viii) of this Final Order.

(cxlix)    "**Prepetition RCF Obligations**" has the meaning set forth in paragraph G(vii) of this Final Order.

(cl)    "**Prepetition Secured Notes Collateral**" has the meaning set forth in paragraph G(iii) of this Final Order.

(cli)    "**Prepetition Secured Notes Liens**" has the meaning set forth in paragraph G(iii) of this Final Order.

(clii)    "**Prepetition Secured Notes Obligations**" has the meaning set forth in paragraph G(ii) of this Final Order.

(cliii)    "**Prepetition Secured Notes P&I Obligations**" has the meaning set forth in paragraph (a)(ii) of this Final Order.

(cliv)    "**Prepetition Secured Obligations**" means, collectively, the Prepetition Secured Notes Obligations, the Prepetition RCF Obligations, and the Intercompany Loan Obligations.

(clv)    "**Professional Persons**" means, collectively, the Committee Professionals and the Debtor Professionals.

(clvi)    "**Professional Fee Carve Out**" has the meaning set forth in paragraph 13(b) of this Final Order.

(clvii)    "**RCF Adequate Protection Claims**" has the meaning set forth in paragraph 8(a) of this Final Order.

(clviii)    "**RCF Adequate Protection Liens**" has the meaning set forth in paragraph 8(b) of this Final Order.

(clix)    "**RCF Adequate Protection Obligations**" has the meaning set forth in paragraph 8 of this Final Order.

(clx)    "**RCF Adequate Protection Professional Fees**" has the meaning set forth in paragraph 8(c) of this Final Order.

(clxi)    "**RCF Administrative Agent**" has the meaning set forth in paragraph G(vi) of this Final Order.

(clxii)    "**RCF Administrative Agent Advisors**" means (i) Milbank LLP, as counsel to the RCF Administrative Agent, (ii) one financial advisor to the RCF Lenders and RCF Administrative Agent, (iii) an appraiser selected by Citibank N.A., as RCF Administrative Agent, in accordance with the RCF Loan Documents, and (iv) any other advisor (legal, financial, or otherwise) as reasonably deemed necessary by Citibank N.A. solely to the extent payable under the RCF Loan Documents.

(clxiii)    "**RCF Advisors**" has the meaning set forth in paragraph 8(c) of this Final Order.

(clxiv)   "**RCF Agents**" has the meaning set forth in paragraph G(vi) of this Final Order.

(clxv)   "**RCF Borrower**" has the meaning set forth in paragraph G(vi) of this Final Order.

(clxvi)   "**RCF Collateral Agent**" has the meaning set forth in paragraph G(vi) of this Final Order.

(clxvii)   "**RCF Guarantors**" has the meaning set forth in paragraph G(vi) of this Final Order.

(clxviii)   "**RCF Lenders**" has the meaning set forth in paragraph G(vi) of this Final Order.

(clxix)   "**RCF Loan Documents**" means "Loan Documents" as defined in the Amended and Restated Revolving Credit Facility Agreement.

(clxx)   "**RCF Loan Obligors**" means, collectively, the RCF Guarantors and the RCF Borrower.

(clxxi)   "**RCF Permitted Liens**" has the meaning set forth in paragraph G(viii) of this Final Order.

(clxxii)   "**RCF Priority Collateral ICA**" has the meaning set forth in paragraph G(viii) of this Final Order.

(clxxiii)   "**RCF Professional Fee Carve Out Cap**" means $5,000,000.

(clxxiv)   "**RCF Secured Parties**" means the "Secured Parties" as defined in the Amended and Restated Revolving Credit Facility Agreement.

(clxxv)   "**RCF Secured Parties Cash Collateral Adequate Protection Liens**" has the meaning set forth in paragraph 8(b) of this Final Order.

(clxxvi)   "**Released Parties**" has the meaning set forth in paragraph 20(c) of this Final Order.

(clxxvii)   "**Replenishment of Encumbered Cash**" has the meaning set forth in paragraph 4(b) of this Final Order.

(clxxviii)   "**Required DIP Lenders**" has the meaning set forth in the DIP Credit Agreement.

(clxxix)   "**Required Noteholders**" means the holders of more than 50% of the aggregate principal amount of the Prepetition Secured Notes Obligations.

(clxxx)   "**Required RCF Lenders**" means "Required Lenders" as defined in the RCF Loan Documents.

(clxxxi) "**Required Roll-Up Lenders**" has the meaning set forth in the DIP Credit Agreement.

(clxxxii) "**Review Parties**" has the meaning set forth in paragraph 9 of this Final Order.

(clxxxiii) "**Review Period**" has the meaning set forth in paragraph 9 of this Final Order.

(clxxxiv) "**Revolving Credit Facility**" has the meaning set forth in the First Day Declaration.

(clxxxv) "**Revolving Priority Collateral**" has the meaning set forth in the RCF Priority Collateral ICA.

(clxxxvi) "**Roll-Up DIP Loan Allocation**" has the meaning ascribed to the term "Roll-Up Term Loan Allocation" in the DIP Credit Agreement.

(clxxxvii)    "**Roll-Up DIP Lenders**" has the meaning set forth in paragraph 14(a) of this Final Order.

(clxxxviii)    "**Roll-Up DIP Loans**" has the meaning set forth in subparagraph (a)(iii)(a)(ii) of the introductory paragraph of this Final Order.

(clxxxix) "**Roll-Up DIP Obligations**" has the meaning set forth in subparagraph (a)(iii) of the introductory paragraph of this Final Order; *provided, however*, for the avoidance of doubt, unless and until any such Contingent Roll-Up Term Loans are exchanged for and converted to Roll-Up DIP Loans, obligations in respect of the Contingent Roll-Up Term Loans are not Roll-Up DIP Obligations.

(cxc)    "**Roll-Up Superpriority Claims**" has the meaning set forth in paragraph 6 of this Final Order.

(cxci)    "**Satisfaction of Replenishment Obligations**" has the meaning set forth paragraph 4(b)of this Final Order.

(cxcii)    "**Second Draw**" has the meaning set forth in subparagraph (a)(i) of the introductory paragraph of this Final Order.

(cxciii)    "**Second Interim Adequate Protection Order**" has the meaning set forth in the introductory paragraph of this Final Order.

(cxciv)    "**Second Interim Hearing**" has the meaning set forth in the introductory paragraph of this Final Order.

(cxcv)    "**Secured Documents**" means, collectively, the Amended and Restated Revolving Credit Facility Agreement together with all agreements, documents, instruments, and/or amendments executed and delivered in connection therewith and the Secured Notes Indenture together with all agreements, documents, instruments, and/or amendments executed and delivered in connection therewith.

(cxcvi)    "**Secured Noteholders**" has the meaning set forth in paragraph G(i) of this Final Order.

(cxcvii)    "**Secured Notes**" has the meaning set forth in paragraph G(i) of this Final Order.

(cxcviii)    "**Secured Notes Adequate Protection Claims**" has the meaning set forth in paragraph 7(a) of this Final Order.

(cxcix)    "**Secured Notes Adequate Protection Liens**" has the meaning set forth in paragraph 7(b) of this Final Order.

(cc)    "**Secured Notes Adequate Protection Obligations**" has the meaning set forth in paragraph 7 of this Final Order.

(cci)    "**Secured Notes Adequate Protection Professional Fees and Expenses**" has the meaning set forth in paragraph 7(d) of this Final Order.

(ccii)    "**Secured Notes Cash Collateral Adequate Protection Liens**" has the meaning set forth in paragraph 7(c) of this Final Order.

(cciii)    "**Secured Notes Collateral Agency & Accounts Agreement**" has the meaning set forth in paragraph G(i) of this Final Order.

(cciv)    "**Secured Notes Collateral Agent**" has the meaning set forth in paragraph G(i) of this Final Order.

(ccv)    "**Secured Notes Depositary**" has the meaning set forth in paragraph G(i) of this Final Order.

(ccvi)    "**Secured Notes Documents**" has the meaning set forth in paragraph G(i) of this Final Order.

(ccvii)    "**Secured Notes Guarantors**" has the meaning set forth in paragraph G(i) of this Final Order.

(ccviii)    "**Secured Notes Indenture**" has the meaning set forth in paragraph G(i) of this Final Order.

(ccix)    "**Secured Notes Issuers**" has the meaning set forth in paragraph G(i) of this Final Order.

(ccx)    "**Secured Notes Parties**" has the meaning set forth in paragraph G(i) of this Final Order.

(ccxi)    "**Secured Notes Permitted Liens**" has the meaning set forth in paragraph G(iii) of this Final Order.

(ccxii)    "**Secured Notes Trustee**" has the meaning set forth in paragraph G(i) of this Final Order.

(ccxiii)    "**Secured Parties**" means, collectively, the RCF Secured Parties and the Secured Notes Parties.

(ccxiv)    "**Senior Secured Debt Documents**" has the meaning set forth in the Secured Notes Collateral Agency & Accounts Agreement.

(ccxv)    "**Senior Secured Parties**" has the meaning set forth in the Secured Notes Collateral Agency & Accounts Agreement.

(ccxvi)    "**Spare Parts**" has the meaning set forth in the Amended and Restated Revolving Credit Facility Agreement.

(ccxvii)    "**Spare Parts Cap**" means, absent consent of the RCF Agents (acting at the direction of the requisite RCF Lenders) to, or further order of the Court providing for, an increase in amount, (x) up to $1,000,000 in proceeds from the sale or disposition of Spare Parts that are Revolving Priority Collateral from October 20, 2025 through and including December 31, 2025, and (y) $300,000 in proceeds from the sale or disposition of Spare Parts that are Revolving Priority Collateral in each fiscal quarter of the fiscal year thereafter; *provided*, that, to the extent the caps set forth in clauses (x) or (y) of this definition are not exhausted on or prior to the applicable dates set forth therein, the Debtors remain authorized to use the remaining amounts in any future periods.

(ccxviii)    "**Spare Parts Collateral**" has the meaning set forth in paragraph 8(b) of this Final Order.

(ccxix)    "**Spare Parts Security Agreement**" has the meaning set forth in footnote 6 of this Final Order.

(ccxx)    "**Specified Encumbered Accounts**" has the meaning set forth in paragraph 4(b) of this Final Order.

(ccxxi)    "**Standing Motion**" has the meaning set forth in paragraph 15(a) of this Final Order.

(ccxxii)    "**Straddle Credit Card Receipts**" has the meaning set forth in paragraph G(iii) of this Final Order.

(ccxxiii)    "**Successor Cases**" means, collectively, any case under chapter 7 of the Bankruptcy Code upon the conversion of any of the Chapter 11 Cases, and/or upon the dismissal of any of the Chapter 11 Cases or any such successor cases.

(ccxxiv)    "**Successor Entities**" has the meaning set forth in paragraph 15(a) of this Final Order.

(ccxxv)    "**Supplement to DIP Motion**" means the *Supplement to the Motion of Debtors for Entry of (I) Interim and Final Orders, Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 503, 506, 507, and 552, (A) Authorizing the Debtors to Obtain Post-Petition Financing, (B) Granting Senior Liens and Superpriority Administrative Expense Claims, (C) Granting Adequate Protection, (D) Modifying the Automatic Stay, (E) Scheduling a Final Hearing on the Motion; and*

16

*(F) Granting Related Relief; and (II) Third Interim Order (A) Authorizing the Debtors to Utilize Cash in Encumbered Accounts; (B) Granting Adequate Protection; (C) Modifying the Automatic Stay; (D) Scheduling a Final Hearing on the Motion; and (E) Granting Related Relief* [ECF No. 211].

(ccxxvi)  "**Supplemental Adequate Protection Motion**" has the meaning set forth in the introductory paragraph of this Final Order.

(ccxxvii) "**Third Draw**" has the meaning set forth in subparagraph (a)(i) of the introductory paragraph of this Final Order.

(ccxxviii)"**UCC**" means the Uniform Commercial Code.

(ccxxix)  "**Unencumbered Funds**" has the meaning set forth in paragraph 4(a) of this Final Order.

(ccxxx)   "**U.S. Trustee**" has the meaning set forth in paragraph C of this Final Order.

(ccxxxi)  "**Utility Deposit Account**" has the meaning ascribed to such term in the *Motion of the Debtors for Entry of Interim and Final Orders (I) Prohibiting Utilities from Altering, Refusing, or Discontinuing Service, (II) Deeming Utilities Adequately Assured of Future Performance, and (III) Establishing Procedures for Determining Requests for Additional Adequate Assurance* [ECF No. 9].

*** 

17

**<u>Exhibit B</u>**

**Revised Proposed Final DIP Order**

**(Redline against the Interim DIP Order)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| **SPIRIT AVIATION HOLDINGS, INC.**, *et al.*, | **Case No. 25-11897 (SHL)** |
| Debtors.[1] | **Jointly Administered** |

FINAL ORDER (I) ~~INTERIM ORDER (A)~~ AUTHORIZING THE
DEBTORS TO OBTAIN
POSTPETITION FINANCING;
(~~B~~II) GRANTING SENIOR
SECURED LIENS AND SUPERPRIORITY ~~ADMINISTRATIVE~~
ADMINISTRATIVE EXPENSE CLAIMS; (~~C) GRANTING ADEQUATE
PROTECTION;
(D) MODIFYING THE AUTOMATIC STAY; (E) SCHEDULING A FINAL
HEARING ON THE MOTION; AND (F) GRANTING RELATED RELIEF;
AND (II) THIRD INTERIM ORDER (A~~III) AUTHORIZING THE
DEBTORS TO
UTILIZE CASH IN ENCUMBERED ACCOUNTS;
(~~B~~IV) GRANTING ADEQUATE
PROTECTION; (~~C~~V) MODIFYING
THE AUTOMATIC STAY; (~~D) SCHEDULING
A FINAL HEARING ON THE MOTION;~~ AND (E~~VI) GRANTING RELATED RELIEF

Upon the motion (including as supplemented by the Supplement to DIP Motion, the "**DIP Motion**")[2] of Spirit Aviation Holdings, Inc. and its direct and indirect subsidiaries (collectively, the "**Debtors**"), each of which is a debtor and debtor in possession in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), pursuant to sections 105, 361, 362, 363, 364, 503, 506, 507, and 552 of title 11 of the United States Code (the "**Bankruptcy Code**"), rules 2002,

---

[1] The Debtors' names and last four digits of their respective employer identification numbers are as follows: Spirit Aviation Holdings, Inc. (1797); Spirit Airlines, LLC (7023); Spirit Finance Cayman 1 Ltd. (7020); Spirit Finance Cayman 2 Ltd. (7362); Spirit IP Cayman Ltd. (4732); and Spirit Loyalty Cayman Ltd. (4752). The Debtors' mailing address is 1731 Radiant Drive, Dania Beach, FL 33004.

[2] Capitalized terms used but not defined herein (including **Annex A** hereto) shall have the meanings ascribed to them in the DIP Motion or the First Day Declaration, as applicable.

4001, 6003, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and rules 2002-1, 4001-2, and 9013-1 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**") promulgated by the United States Bankruptcy Court for the Southern District of New York (the "**Court**"), seeking entry of an interim order (~~this~~the "**Interim DIP Order**") and ~~a~~this final order (~~the~~this "**Final Order**") providing, among other things,

(a)  authorization for Debtor Spirit Airlines, LLC, as borrower (the "**Borrower**"), to obtain postpetition financing, and for each of the other Debtors to guarantee unconditionally, as guarantors (the "**Guarantors**"), on a joint and several basis, the Borrower's obligations in connection with a multi-draw senior secured non-amortizing superpriority priming debtor-in-possession facility (the "**DIP Facility**") in the aggregate principal amount of up to $~~1,331,110,858~~1,225,000,000, comprising:

(i)  -new money term loans in an aggregate principal amount of up to $475,000,000, available in four draws, of which (A) a principal amount of $200,000,000 ~~will be~~was made available in a single draw (the "**Initial Draw**") upon satisfaction of the conditions set forth in the DIP Documents and the entry of ~~this~~the Interim DIP Order, comprising new money term loans (the "**Interim New Money DIP Loans**"), which ~~shall be~~was provided and funded through Barclays Bank, PLC, as fronting lender (the "**Fronting Lender**"),[3] in accordance with the terms of the DIP Credit Agreement (as defined below and attached hereto as **Exhibit 3**) and the Commitment Letter (as defined below), and (B) an additional principal amount of new money loans (the "**Final New Money DIP Loans**" and, together with the Interim New Money DIP Loans, the "**New Money DIP Loans**") equal to the undrawn portion of the DIP Facility available in three separate draws (each draw, the "**Second Draw**," "**Third Draw**," and "**Fourth Draw**"), in the amounts and upon satisfaction of the conditions related to each separate draw set forth in the DIP Documents (as defined below) and the entry of ~~the~~this Final Order, from the lenders (the "**DIP**

---

[3] So long as the Fronting Lender is a holder of New Money DIP Loans (as defined below), the Fronting Lender shall be included in the definition of DIP Lenders. For the avoidance of doubt, and notwithstanding anything to the contrary herein, the Fronting Lender, by acting in such capacity, does not make any commitments, undertake any obligations, or waive any rights, including whether to take or not take any action or to exercise or seek to exercise any rights or remedies, in each case in connection with any other claims or interests it may hold against any of the Debtors.

Lenders") providing such New Money DIP Loans or taking such New Money DIP Loans by assignment from the Fronting Lender;

(ii)    upon the DIP Syndication Initial Closing Date and upon the DIP Syndication Final Closing Date, respectively, for Contingent Roll-Up Term Loans deemed to be outstanding under the DIP Credit Agreement in an amount not to exceed the aggregate amount of the Prepetition Secured Notes Obligations constituting principal and (i) accrued and unpaid interest thereon through the Petition Date and (ii) solely to the extent permitted under section 506(b) of the Bankruptcy Code, all interest accrued thereon after the Petition Date (the "**Prepetition Secured Notes P&I Obligations**") that are validly tendered in the DIP Syndication by the DIP Syndication Initial Closing Date or the DIP Syndication Final Closing Date, as applicable; and

(iii)    (A) upon entry of ~~this~~the Interim DIP Order, the DIP Syndication Initial Closing Date, and the DIP Syndication Final Closing Date, and subject to the terms and conditions set forth herein and in the DIP Documents, for Contingent Roll-Up Term Loans to be deemed exchanged for term loans deemed made by the DIP Lenders and borrowed by the Borrower under the DIP Credit Agreement (the "**Interim Roll-Up**") on a 2 to 1 ratio to Interim New Money DIP Loans actually funded (prior to accounting for any OID (as defined below)) (the "**Interim Roll-Up DIP Loans**") and (B) upon entry of ~~the~~this Final Order, and subject in each case to the terms and conditions set forth herein and in the DIP Documents, for Contingent Roll-Up Term Loans to be deemed exchanged (the "**Final Roll-Up**") for term loans deemed made by the DIP Lenders and borrowed by the Borrower under the DIP Credit Agreement (the "**Final Roll-Up DIP Loans**" and, together with the Interim Roll-Up DIP Loans, the "**Roll-Up DIP Loans**"[4] and, with all obligations related thereto and set forth in the DIP Documents, the "**Roll-Up DIP Obligations**"; and the Roll-Up DIP Loans, together with the New Money DIP Loans, the "**DIP Loans**"; and the commitments in respect of the New Money DIP Loans, the "**DIP Commitments**"; and all obligations related to the DIP Loans and the DIP Commitments, in each case as set forth in the DIP Documents, including the Roll-Up DIP Obligations, the "**DIP Obligations**"); *provided*, *however*, (i) with respect to the Second Draw (if applicable), Contingent Roll-Up Term Loans shall be deemed exchanged for Final Roll-Up DIP Loans on a 2 to 1 ratio to Final New Money DIP Loans actually funded, (ii) subject to the draw conditions set forth in the DIP Credit Agreement for the Second Draw, if such conditions are satisfied for an additional $25,000,000 or $75,000,000, as applicable in accordance with the DIP Credit Agreement, Contingent Roll-Up Term Loans shall be deemed exchanged for Final Roll-Up DIP Loans on a 1 to 1 ratio to Final New Money DIP Loans

---

[4] The Roll-Up DIP Loans shall not exceed (and shall be capped at) the lesser of the total aggregate amount of Prepetition Secured Notes P&I Obligations that are validly tendered in the DIP Syndication and $750 million.

actually funded (such additional $25,000,000 or $75,000,000 draw, as applicable, the "**Incremental Second Draw**") (such Incremental Second Draw being included in the $475,000,000 aggregate new money amount of the DIP Facility), (iii) with respect to the Third Draw (if applicable), Contingent Roll-Up Term Loans shall be deemed exchanged for Final Roll-Up DIP Loans on a ~~1.~~51.25 to 1 ratio to Final New Money DIP Loans actually funded, and (iv) with respect to the Fourth Draw (if applicable), Contingent Roll-Up Term Loans shall be deemed exchanged for Final Roll-Up DIP Loans on a ~~1.~~51.25 to 1 ratio to Final New Money DIP Loans actually funded;

(b)     authorization for the Debtors to enter into the DIP Documents, the Commitment Letter, and any and all other documents related to the fronting or seasoning of the DIP Loans, and to perform their respective obligations thereunder and all such other and further acts as may be necessary, appropriate, or desirable in connection with the DIP Documents;

(c)     authorization for the Debtors to use the proceeds of the DIP Commitments and the Prepetition Collateral (as defined below) and the continued use of Unencumbered Funds, to the extent authorization is necessary, and up to $120,000,000 of Encumbered Cash ~~(as defined below)~~ in the Specified Encumbered Accounts prior to the Satisfaction of Replenishment Obligations (as defined below)~~,~~ in accordance with the terms hereof, to pay fees and interest under the DIP Facility and to provide working capital for, and for other general corporate purposes of, the Debtors, including for funding the Carve Out (as defined below) and paying any Adequate Protection Obligations (as defined below);

(d)     ~~authorization for~~ approval, on a final basis, of the Debtors ~~to replenish~~' replenishment of the Specified Encumbered Accounts in an amount equal to the amount used by the Debtors of the $120,000,000 of Encumbered Cash that was authorized to be used pursuant to the Second Interim Adequate Protection Order and ~~this~~the Interim DIP Order, upon the later to occur of the Debtors' receipt of (i) the Initial Draw and (ii) the proceeds from the AerCap Liquidity Payment (as defined below);

(e)     for the grant of adequate protection to the RCF Secured Parties (as defined below) and the Secured Notes Parties (as defined below);

(f)     authorization for the Debtors to pay, on a final and irrevocable basis, the principal, interest, fees, expenses, and other amounts payable under the DIP Documents as such become earned, due and payable, including, without limitation the OID (as defined below) and the Backstop Premium (as defined below), agency fees, audit fees, appraisal fees, valuation fees, administrative and collateral agents' fees, and the reasonable and documented fees and disbursements of the DIP Facility Agent's (as defined below) and the other DIP Secured Parties' (as defined below) attorneys, advisors, accountants, appraisers, bankers, and other

4

consultants, all to the extent provided in, and in accordance with, the DIP Documents;

(g)  the grant to the DIP Facility Agent, for the benefit of itself and the other DIP Secured Parties, of automatically perfected, valid, enforceable, non-avoidable, and fully-perfected liens and security interests pursuant to sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code and priming liens pursuant to section 364(d)(1) of the Bankruptcy Code on the DIP Collateral (as defined below) and all proceeds thereof, including, upon entry of the~~the~~this Final Order, Avoidance Proceeds (as defined below and to the extent provided herein), subject and subordinate only to (i) the Carve Out, (ii) the Permitted Liens (as defined below), if any, (iii) the Secured Notes Cash Collateral Adequate Protection Liens (but solely until ~~such time as the~~the Satisfaction of Replenishment ~~of the Encumbered Cash~~Obligations) and (iv) in respect of the Revolving Priority Collateral (as defined herein), the prepetition and post-petition liens and security interests in favor of the RCF Secured Parties with respect to the Prepetition RCF Obligations and RCF Adequate Protection Obligations, in each case, on the terms and conditions set forth in this ~~Interim DIP~~Final Order (including the relative priorities set forth in **Exhibit 1** hereto) and the DIP Documents, to secure the DIP Obligations;

(h)  the granting of superpriority administrative expense claims pursuant to section 364(c)(1) of the Bankruptcy Code against each of the Debtors' estates to the DIP Facility Agent and the other DIP Secured Parties, with respect to the DIP Obligations with priority over any and all administrative expenses of any kind or nature, subject, and subordinate only to the Carve Out, on the terms and conditions set forth herein and in the DIP Documents;

(i)  ~~subject to and~~ effective upon entry of the~~the~~this Final Order ~~(which relief is not being granted hereby)~~, authorization for the waiver of (i) the Debtors' and the estates' rights to surcharge against the DIP Collateral or the Prepetition Collateral pursuant to section 506(c) of the Bankruptcy Code with respect to the DIP Secured Parties or the Secured Parties, (ii) the doctrine of "marshaling" and any other similar equitable doctrine with respect to the DIP Collateral and the Prepetition Collateral to the extent set forth herein, and (iii) the "equities of the case" exception under Bankruptcy Code 552(b) with respect to the proceeds, products, offsprings, or profits of the Prepetition Collateral;

(j)  subject to the terms of this ~~Interim DIP~~Final Order, authorization for the DIP Facility Agent and the other DIP Secured Parties to exercise remedies under the DIP Documents on the terms described herein upon the occurrence and during the continuance of a DIP Termination Event (as defined below);

(k)  the modification of the automatic stay imposed pursuant to section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms of this ~~Interim DIP~~Final Order; and

5

(l) pursuant to Bankruptcy Rule 4001, that an interim hearing (the "**Interim Hearing**") on the DIP Motion be held before this Court to consider entry of this Interim DIP Order; and

(l)    (m) that this Court schedule a final hearing (the "**Final Hearing**") to consider entry of the~~this~~ Final Order authorizing and approving, on a final basis, the terms set forth herein;

in each case, as and to the extent set forth herein; and the Court having held an interim hearing on September 8, 2025 (the "**First Interim Hearing**") on the relief requested in the *Motion of the Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to Use Cash Collateral, (II) Granting Adequate Protection, (III) Modifying the Automatic Stay, (IV) Scheduling a Further Hearing on the Motion, and (V) Granting Related Relief* [ECF No. 79] (the "**First Adequate Protection Motion**"); and the Court having considered the First Adequate Protection Motion, the *Declaration of Fred Cromer in Support of the Chapter 11 Proceedings and First Day Pleadings* [ECF No. 19] (the "**First Day Declaration**"), and the *Declaration of Fred Cromer in Support of the Motion of the Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to Use Cash Collateral, (II) Granting Adequate Protection, (III) Modifying the Automatic Stay, (IV) Scheduling a Further Hearing on the Motion, and (V) Granting Related Relief* [ECF No. 79-1] (the "**Cromer Declaration**"); and the Court having entered the *Interim Order (I) Authorizing the Debtors to Utilize Cash Collateral, (II) Granting Adequate Protection, (III) Modifying the Automatic Stay, (IV) Scheduling a Further Hearing on the Motion, and (V) Granting Related Relief* [ECF No. 89] (the "**First Interim Adequate Protection Order**"); and the Court having held a second interim hearing on September 30, 2025 (the "**Second Interim Hearing**") on the relief requested in the First Adequate Protection Motion and the *Supplemental Motion of the Debtors for Entry of Second Interim and Final Orders (I) Authorizing the Debtors to Use Cash in Encumbered Accounts, (II) Granting Adequate*

*Protection, (III) Modifying the Automatic Stay, (IV) Scheduling a Further Hearing on the Motion and the Supplemental Motion, and (V) Granting Related Relief* [ECF No. 141] (the "**Supplemental Adequate Protection Motion**"); and the Court having considered the First Adequate Protection Motion, Supplemental Adequate Protection Motion, the First Day Declaration, the Cromer Declaration, and the *Declaration of Scott Farnsworth in Support of the Supplemental Motion of the Debtors for Entry of Second Interim and Final Orders (I) Authorizing the Debtors to Use Cash in Encumbered Accounts, (II) Granting Adequate Protection, (III) Modifying the Automatic Stay, (IV) Scheduling a Further Hearing on the Motion and the Supplemental Motion, and (V) Granting Related Relief* [ECF No. 142] (the "**Farnsworth Declaration**"); and the Court having entered the *Second Interim Order (I) Authorizing the Debtors to Utilize Cash in Encumbered Accounts, (II) Granting Adequate Protection, (III) Modifying the Automatic Stay, (IV) Scheduling a Further Hearing on the Motion and Supplemental Motion, and (V) Granting Related Relief* [ECF No. 224] (the "**Second Interim Adequate Protection Order**"); and the Court having held an interim hearing on October 10, 2025 on the relief requested in the DIP Motion (the "**Interim DIP Hearing**"); and the Court having considered the First Adequate Protection Motion, the Supplemental Adequate Protection Motion, the DIP Motion, the First Day Declaration, the Cromer Declaration, the Farnsworth Declaration, and *Declaration of Brent Herlihy in Support of Motion of Debtors for Entry of (I) Interim and Final Orders, Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 503, 506, 507, and 552, (A) Authorizing the Debtors to Obtain Postpetition Financing, (B) Granting Senior Secured Liens and Superpriority Administrative Expense Claims, (C) Granting Adequate Protection, (D) Modifying the Automatic Stay, (E) Scheduling a Final Hearing on the Motion, and (F) Granting Related Relief and (II) Third Interim Order (A) Authorizing the Debtors to Utilize Cash in*

7

*Encumbered Accounts; (B) Granting Adequate Protection; (C) Modifying the Automatic Stay;*
*(D) Scheduling a Final Hearing on the Motion; and (E) Granting Related Relief* [ECF No. 194]
(the "**DIP Declaration**" and, collectively with the First Day Declaration, the Cromer
Declaration, and the Farnsworth Declaration, the "**Declarations**"); and the Court having entered
the *(I) Interim Order (A) Authorizing the Debtors to Obtain Postpetition Financing; (B)*
*Granting Senior Secured Liens and Superpriority Administrative Expense Claims; (C) Granting*
*Adequate Protection; (D) Modifying the Automatic Stay; (E) Scheduling a Final Hearing on the*
*Motion; and (F) Granting Related Relief; and (II) Third Interim Order (A) Authorizing the*
*Debtors to Utilize Cash in Encumbered Accounts; (B) Granting Adequate Protection; (C)*
*Modifying the Automatic Stay; (D) Scheduling a Final Hearing on the Motion; and (E) Granting*
*Related Relief* [ECF No. 250]; and the Court having considered the First Adequate Protection
Motion, the Supplemental Adequate Protection Motion, the DIP Motion, the Declarations, and
the evidence submitted and the arguments proffered or adduced at the First Interim Hearing, the
Second Interim Hearing, ~~and~~ the ~~hearing on the DIP Motion (the "~~Interim DIP Hearing~~")~~, and the
Final Hearing (the Final Hearing, collectively with the First Interim Hearing ~~and~~, the Second
Interim Hearing, and the Interim DIP Hearing, the "**Hearings**"); and upon the record of the
Chapter 11 Cases; and due and proper notice of the ~~Interim DIP~~Final Hearing having been given
in accordance with Bankruptcy Rule 4001, all applicable Local Rules, and the Case Management
Procedures; and it appearing that no other or further notice need be provided; and all objections,
if any, to the relief requested in the DIP Motion having been withdrawn, resolved or overruled by
the Court; and it appearing to the Court that granting the relief requested ~~is~~ in the Interim DIP
Order was necessary to avoid immediate and irreparable harm to the Debtors and their estates
~~pending the Final Hearing and otherwise~~and granting the relief request in this Final Order is fair

and reasonable and in the best interests of the Debtors, their estates, their creditors, and all parties in interest, and is essential for the continued operation of the Debtors' businesses and the preservation of the value of the Debtors' estates; and it appearing that the Debtors' entry into the DIP Documents is a sound and prudent exercise of the Debtors' business judgment; after due deliberation and consideration, and for good and sufficient cause appearing therefor;

**BASED ON THE REPRESENTATIONS OF THE DEBTORS, THE CREDITORS' COMMITTEE, AND OTHER PARTIES, AND THE EVIDENCE PRESENTED, AT THE ~~INTERIM~~FINAL HEARING, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[5]**

A.      *Petition Date*.  On August 29, 2025 (the "**Petition Date**"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code commencing the Chapter 11 Cases.

B.      *Debtors in Possession*.  The Debtors remain in possession of their property and continue to operate and manage their businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  The Chapter 11 Cases are being jointly administered, for procedural purposes only, pursuant to Bankruptcy Rule 1015(b), as ordered by the Court [ECF No. 35].

C.      *Committee Formation*.  On September 17, 2025, the United States Trustee for the Southern District of New York (the "**U.S. Trustee**") appointed an Official Committee of

---

[5]   The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

Unsecured Creditors (the "**Creditors' Committee**") pursuant to section 1102 of the Bankruptcy Code [ECF No. 117].

D.      *Jurisdiction and Venue*.  This Court has jurisdiction over the Chapter 11 Cases, the First Adequate Protection Motion, the Supplemental Adequate Protection Motion, and the DIP Motion, and the parties and property affected hereby pursuant to 28 U.S.C. § 1334.  This Court's consideration of the First Adequate Protection Motion, the Supplemental Adequate Protection Motion, and the DIP Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue for these Chapter 11 Cases and the proceedings on the First Adequate Protection Motion, the Supplemental Adequate Protection Motion, and the DIP Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

E.      *Statutory Predicates for Relief*.  The statutory predicates for the relief set forth herein are sections 105, 361, 362, 363, 364, 503, 506, 507, and 552 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6003, 6004, and 9014, and Local Rule 4001-2.

F.      *Cash Collateral*.  As used herein, the term "**Cash Collateral**" shall mean any of the Debtors' cash, wherever located and held, including cash in deposit accounts, that constitutes or will constitute "cash collateral" of any of the Secured Parties or the DIP Secured Parties within the meaning of section 363(a) of the Bankruptcy Code.

G.      *Debtors' Stipulations*.  Subject only to the rights of parties in interest contained in paragraph 15 of this ~~Interim DIP~~Final Order (and subject to the limitations contained therein), the Debtors stipulate and agree as to the following (collectively, the "**Debtors' Stipulations**"):

(i)      Secured Notes.  Pursuant to that certain Indenture for the PIK Toggle Senior Secured Notes due 2030 (the "**Secured Notes**"), dated as of March 12, 2025 (as amended by that certain First Supplemental Indenture, dated as of March 12, 2025, and as further

10

amended, restated, amended and restated, supplemented, or otherwise modified from time to time, the "**Secured Notes Indenture**"), by and among Spirit IP Cayman Ltd. and Spirit Loyalty Cayman Ltd. as co-issuers (together, the "**Secured Notes Issuers**"), Spirit Airlines, LLC (as successor-in-interest to Spirit Airlines, Inc.) as parent guarantor, Spirit Aviation Holdings, Inc. as guaranteeing parent, the other guarantors from time to time party thereto (collectively, the "**Secured Notes Guarantors**"), and Wilmington Trust, National Association, as trustee and collateral custodian (in such capacities, the "**Secured Notes Trustee**"), for the benefit of the holders of the Secured Notes (collectively, the "**Secured Noteholders**"), the Secured Notes Issuers issued the Secured Notes to the Secured Noteholders, and the Secured Notes Guarantors guaranteed on a joint and several basis the obligations of the Secured Notes Issuers under the Secured Notes Indenture.  Pursuant to that certain Amended and Restated Collateral Agency and Accounts Agreement dated as of March 12, 2025 (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time in accordance with its terms, the "**Secured Notes Collateral Agency & Accounts Agreement**"; and, together with the Secured Notes Indenture and the other Senior Secured Debt Documents (as defined in the Secured Notes Collateral Agency & Accounts Agreement), the "**Secured Notes Documents**"), by and among the Secured Notes Issuers, the other grantors from time to time party thereto, the Secured Notes Trustee, Wilmington Trust, National Association, as depositary (in such capacity, the "**Secured Notes Depositary**") and collateral agent (in such capacity, the "**Secured Notes Collateral Agent**" and, together with the Secured Notes Trustee, the Secured Noteholders, the Secured Notes Depositary, and each of the other Senior Secured Parties (as defined in the Secured Notes Collateral Agency & Accounts Agreement), collectively the "**Secured Notes Parties**"), and the other senior secured debt representatives from time to time party thereto, the Secured Notes

11

Collateral Agent was appointed to act as collateral agent for the Secured Notes Parties, including with respect to holding, maintaining, administering, and distributing the Prepetition Secured Notes Collateral.

(ii)    <u>Prepetition Secured Notes Obligations</u>.    As of the Petition Date, the Secured Notes Issuers and the Secured Notes Guarantors, without defense, counterclaim, or offset of any kind, were jointly and severally indebted and liable to the Secured Notes Parties under the Secured Notes Documents in the aggregate principal amount of not less than $856,110,857.78 of the outstanding Secured Notes, *plus* all other fees, costs, expenses, indemnification obligations, reimbursement obligations (including on account of issued and undrawn letters of credit), charges, premiums, if any, additional interest (including interest paid-in-kind), any other "Obligations" (as defined in the Secured Notes Indenture), and all other obligations of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable under the Secured Notes Documents (collectively, the "**Prepetition Secured Notes Obligations**").    The Prepetition Secured Notes Obligations constitute legal, valid, binding, and non-avoidable obligations against each of the Secured Notes Issuers and the Secured Notes Guarantors and are not subject to any avoidance, recharacterization, counterclaim, defense, offset, subordination, other claim, cause of action, or other challenge of any kind under the Bankruptcy Code, under applicable non-bankruptcy law, or otherwise.    No payments made to or for the benefit of (or obligations (other than liens and security interests, which are addressed in paragraph ~~G~~G(iii) below) incurred to or for the benefit of) the Secured Notes Parties by, or on behalf of, any of the Debtors prior to the Petition Date under or in connection with the Secured Notes Documents are subject to avoidance, recharacterization, counterclaim, defense, offset, subordination, other claim, cause of action, or

12

other challenge of any kind or nature under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise.

(iii)    <u>Prepetition Secured Notes Liens</u>.    Pursuant to the Secured Notes Documents, prior to the Petition Date, the Secured Notes Issuers and the Secured Notes Guarantors each granted to the Secured Notes Collateral Agent, for the benefit of the holders of the Secured Notes and the other Secured Notes Parties, liens on and security interests in (the "**Prepetition Secured Notes Liens**") the "Collateral" (as defined in the Secured Notes Collateral Agency & Accounts Agreement) (the "**Prepetition Secured Notes Collateral**").    As of the Petition Date, the Prepetition Secured Notes Liens (i) are valid, binding, perfected (with respect to funds held in any deposit account (as defined in Section § 9-102 (29) of the UCC), solely to the extent such cash is (A) identifiable proceeds (within the meaning of §§ 9-315 (a) and (b) of the UCC) of Prepetition Secured Notes Collateral or (B) held subject to a control agreement for the benefit of the Secured Notes Parties), and enforceable (x) first priority liens and security interests in the Prepetition Secured Notes Collateral constituting Notes Priority Collateral (as defined in that certain Notes Priority Collateral Intercreditor Agreement, dated as of March 12, 2025, by and among the Debtors, the RCF Administrative Agent, and the Secured Notes Collateral Agent (the "**Notes Priority Collateral ICA**")), which valid, binding, perfected, and enforceable Prepetition Secured Notes Liens extended to, among other things, (1) the following accounts and all assets contained therein as of the Petition Date, and the proceeds thereof:  (A) the accounts in the name of Spirit Airlines, LLC with the last four digits 6877 and 1857, each maintained at JP Morgan Chase, N.A.; (B) the account in the name of Spirit Airlines, LLC with the last four digits 8796 maintained at U.S. Bank, N.A.; and (C) the accounts in the name of Spirit Loyalty Cayman Ltd. with the last four digits x5-000, x5-001, x5-002, x5-004, and x5-005,

each maintained at Wilmington Trust ~~N.A.~~, National Association (the "**Cayman Accounts**")
(collectively, (A)-(C), the "**Encumbered Accounts**") and (2) the approximately $23,000,000 in
post-petition amounts received or expected to be received from the Debtors' credit card
processors on account of prepetition sales (the "**Straddle Credit Card Receipts**"), which as of
the date hereof are held in the account in the name of Spirit Airlines, LLC with the last four
digits 6877 maintained at JP Morgan Chase, N.A., and (y) second priority liens and security
interests in the Prepetition Secured Notes Collateral constituting Revolving Priority Collateral
(as defined in the RCF Priority Collateral ICA), junior only to the Prepetition RCF Liens on the
Revolving Priority Collateral pursuant to the terms of the RCF Priority Collateral ICA and RCF
Permitted Liens, (ii) except to the extent, if any, that certain liens or security interests in certain
real property may be subject to avoidance under the Bankruptcy Code or other applicable law,
are not subject, pursuant to the Bankruptcy Code or other applicable law, to avoidance,
recharacterization, recovery, subordination, attack, offset, counterclaim, defense, or Claim of any
kind, (iii) as of the Petition Date are subject and/or subordinate to certain permitted liens as
permitted under the Secured Notes Indenture, to the extent such permitted liens are (a) valid,
perfected, and non-avoidable liens on the Petition Date or (b) valid liens in existence on the
Petition Date that are perfected subsequent to the Petition Date in accordance with section 546(b)
of the Bankruptcy Code (the "**Secured Notes Permitted Liens**"), and (iv) constitute the legal,
valid, and binding obligation of the Secured Notes Issuers and the Secured Notes Guarantors,
enforceable in accordance with the terms of the applicable Secured Notes Documents.  As of the
Petition Date, there was $302,610,533 of cash, funds, investments, and securities in the
Encumbered Accounts (together with the Straddle Credit Card Receipts and any amounts
received post-petition into the Cayman Accounts, the "**Encumbered Cash**").

(iv)    <u>Intercompany Loan</u>.    Pursuant to that certain Second Amended and Restated Loyalty Program Intercompany Note, dated as of March 12, 2025 (the "**Intercompany Note**"), among Spirit Airlines, LLC (as successor-in-interest to Spirit Airlines, Inc.), as payor (in such capacity, the "**Intercompany Borrower**"), and Spirit IP Cayman Ltd. and Spirit Loyalty Cayman Ltd. or their respective registered assigns, as payees (in such capacities, the "**Intercompany Lenders**"), the Intercompany Lenders have extended unsecured credit to the Intercompany Borrower (the "**Intercompany Loan**").

(v)    <u>Intercompany Loan Obligations</u>.    As of the Petition Date, the Intercompany Borrower, without defense, counterclaim, or offset of any kind, was indebted and liable to the Intercompany Lenders under the Intercompany Note in the aggregate principal amount of not less than $1,110,000,000.00, *plus* accrued and unpaid interest thereon as of the Petition Date (collectively, the "**Intercompany Loan Obligations**").  The Intercompany Loan Obligations constitute legal, valid, binding, and non-avoidable obligations against certain of the Debtors and are not subject to any avoidance, recharacterization, effect, counterclaim, defense, offset, subordination, other claim, cause of action, or other challenge of any kind under the Bankruptcy Code, under applicable non-bankruptcy law, or otherwise.  No payments made to or for the benefit of (or obligations incurred to or for the benefit of) the Intercompany Borrower by or on behalf of any of the Debtors under or in connection with the Intercompany Loan prior to the Petition Date are subject to avoidance, recharacterization, effect, counterclaim, defense, offset, subordination, other claim, cause of action, or other challenge of any kind or nature under the Bankruptcy Code, under applicable non-bankruptcy law, or otherwise.

(vi)    <u>Revolving Credit Facility</u>.  Pursuant to that certain Amended and Restated Credit and Guaranty Agreement, dated as of March 12, 2025 (as amended to date, the

"**Amended and Restated Revolving Credit Facility Agreement**"), among Spirit Airlines, LLC (as successor-in-interest to Spirit Airlines, Inc.) (the "**RCF Borrower**"), the guarantors from time to time party thereto ("**RCF Guarantors**"), the lenders from time to time party thereto (the "**RCF Lenders**"), and Citibank, N.A., as administrative agent ("**RCF Administrative Agent**"), and Wilmington Trust, National Association, as collateral agent ("**RCF Collateral Agent**" and, together with the RCF Administrative Agent, the "**RCF Agents**"), the RCF Lenders have extended credit in the form of revolving loans to the RCF Borrower.

(vii)    <u>Prepetition RCF Obligations</u>.   As of the Petition Date, the RCF Loan Obligors, without defense, counterclaim, or offset of any kind, were jointly and severally indebted and liable to the RCF Secured Parties under the RCF Loan Documents in the aggregate principal amount of not less than $275,000,000.00, which consists of not less than $275,000,000.00 in aggregate principal amount of revolving loans, *plus* accrued and unpaid interest thereon as of the Petition Date, *plus* all other fees, costs, expenses, indemnification obligations, reimbursement obligations, charges, premiums, if any, additional interest, any other "Obligations" (as defined in the Amended and Restated Revolving Credit Facility Agreement), and all other obligations of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable under the RCF Loan Documents (collectively, the "**Prepetition RCF Obligations**").   The Prepetition RCF Obligations constitute legal, valid, binding, and non-avoidable obligations against the RCF Loan Obligors and are not subject to any avoidance, recharacterization, effect, counterclaim, defense, offset, subordination, other claim, cause of action, or other challenge of any kind under the Bankruptcy Code, under applicable non-bankruptcy law, or otherwise.   No payments made to or for the benefit of (or obligations (other than liens and security interests, which are addressed in paragraph G(viii) below) incurred

16

to or for the benefit of)– the RCF Secured Parties by or on behalf of any of the Debtors prior to the Petition Date under or in connection with the RCF Loan Documents are subject to avoidance, recharacterization, counterclaim, defense, offset, subordination, other claim, cause of action, or other challenge of any kind or nature under the Bankruptcy Code, under applicable non-bankruptcy law, or otherwise.

(viii)    Prepetition RCF Liens.  Pursuant to the RCF Loan Documents, prior to the Petition Date, the RCF Borrower and the RCF Guarantors each granted to the RCF Collateral Agent, for the benefit of the holders of the RCF Lenders and the other RCF Secured Parties, liens on and security interests in (the "**Prepetition RCF Liens**") the "Collateral" (as defined in the Amended and Restated Revolving Credit Facility Agreement) (the "**Prepetition RCF Collateral**").  As of the Petition Date, the Prepetition RCF Liens (i) are valid, binding, perfected (with respect to funds held in any deposit account (as defined in Section § 9-102 (29) of the UCC), solely to the extent such cash is (A) identifiable proceeds (within the meaning of §§ 9-315 (a) and (b) of the UCC) of Prepetition RCF Collateral or (B) held subject to a control agreement for the benefit of the RCF Secured Parties), and enforceable (x) first priority liens and security interests in the Prepetition RCF Collateral constituting Revolving Priority Collateral (as defined in the Revolving Priority Collateral Intercreditor Agreement, dated as of March 12, 2025 (the "**RCF Priority Collateral ICA**")) and (y) second priority liens and security interests in the Prepetition RCF Collateral constituting Notes Priority Collateral (as defined in the Notes Priority Collateral ICA), junior only to the Prepetition Secured Notes Liens on the Notes Priority Collateral pursuant to the terms of the Notes Priority Collateral ICA and Secured Notes Permitted Liens, (ii) except to the extent, if any, that certain liens or security interests in certain real property may be subject to avoidance under the Bankruptcy Code or other applicable law,

17

are not subject, pursuant to the Bankruptcy Code or other applicable law, to avoidance, recharacterization, recovery, subordination, attack, offset, counterclaim, defense, or Claim of any kind, (iii) as of the Petition Date are subject and/or subordinate to certain permitted liens as permitted under the Amended and Restated Revolving Credit Facility Agreement to the extent such permitted liens are (a) valid, perfected, and non-avoidable liens on the Petition Date or (b) valid liens in existence on the Petition Date that are perfected subsequent to the Petition Date in accordance with section 546(b) of the Bankruptcy Code (the "**RCF Permitted Liens**"), and (iv) constitute the legal, valid, and binding obligation of the RCF Loan Obligors, enforceable in accordance with the terms of the applicable RCF Loan Documents.

   H.    *Findings Regarding DIP Facility and Use of Prepetition Collateral.*

   (i)    Need ~~for Postpetition Financing and~~ to Use Cash in the Specified Encumbered Accounts.  The Debtors ~~have~~had a need ~~to obtain the DIP Facility and continue~~ to use up to $120,000,000 of Encumbered Cash in the Specified Encumbered Accounts to, among other things, (i) permit the orderly continuation of their respective businesses, (ii) maintain business relationships with their vendors, suppliers, customers, and other parties, (iii) pay the costs of the administration of the Chapter 11 Cases, (iv) satisfy the Adequate Protection Obligations (as defined below), and (v) satisfy other working capital and general corporate purposes of the Debtors.  The Debtors' ability to obtain liquidity through the use of up to $120,000,000 of Encumbered Cash in the Specified Encumbered Accounts ~~and the incurrence of the new indebtedness for borrowed money and other financial accommodations under the DIP Facility is~~was vital to the Debtors' efforts to maximize the value of their assets.  On October 27, 2025, in accordance with the Second Interim Adequate Protection Order and the Interim DIP Order, the Satisfaction of Replenishment Obligations occurred.

18

(ii)    Need for Postpetition Financing.  The Debtors have a need to obtain the DIP Facility to, among other things, (i) permit the orderly continuation of their respective businesses, (ii) maintain business relationships with their vendors, suppliers, customers, and other parties, (iii) pay the costs of the administration of the Chapter 11 Cases, (iv) satisfy the Adequate Protection Obligations (as defined below), and (v) satisfy other working capital and general corporate purposes of the Debtors.  The Debtors' ability to obtain liquidity through the incurrence of the new indebtedness for borrowed money and other financial accommodations under the DIP Facility is vital to the Debtors' efforts to maximize the value of their assets.

(iii)    (ii) Inability to Obtain More Favorable Financing.  The Debtors are unable to obtain financing on more favorable terms from sources other than the DIP Lenders under the DIP Documents and are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense.  The Debtors also are unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2), and 364(c)(3) of the Bankruptcy Code for the purposes set forth in the DIP Documents without the Debtors (i) granting to the DIP Facility Agent, for the benefit of itself and the other DIP Secured Parties, the DIP Liens (as defined below) and (ii) incurring the Adequate Protection Obligations, in each case, under the terms and conditions set forth in this the Interim DIP Order, the this Final Order, and the DIP Documents, in each case of (i) and (ii), subject and subordinate to the Carve Out.

(iv)    (iii) Business Judgment.    The terms of the DIP Facility, the DIP Documents, and the terms on which the Debtors may continue to use the Prepetition Collateral (including the terms on which the Debtors used up to $120,000,000 of Encumbered Cash in the Specified Encumbered Accounts) prior to the Satisfaction of Replenishment Obligations), in

each case, pursuant to the DIP Documents are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties.

(v)    (iv)  Good Faith.   The Interim DIP Order, this Final Order, the DIP Facility, the Adequate Protection Obligations, and the use of Prepetition Collateral have been negotiated in good faith and at arm's length among the Debtors, the DIP Facility Agent, and the other DIP Secured Parties, and all of the Debtors' DIP Obligations shall be deemed to have been extended by the DIP Facility Agent and the other DIP Secured Parties in good faith as that term is used in section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code.  The DIP Obligations, the DIP Liens, and the DIP Superpriority Claims shall be entitled to the full protection of section 364(e) of the Bankruptcy Code to the extent provided therein in the event that this Interim DIPFinal Order or any provision hereof is vacated, reversed, or modified on appeal or otherwise, and any liens or claims granted, or payments made, in each case, to the DIP Secured Parties and arising prior to the effective date of any such vacatur, reversal, or modification of this Interim DIPFinal Order shall be governed in all respects by the original provisions of this Interim DIPFinal Order, including entitlement to all of the rights, remedies, privileges, and benefits granted herein.

(vi)    (v)  Arm's Length, Good Faith Negotiations.  Based on the representations of the Debtors and the evidence presented at the Hearings, the terms of this Interim DIPFinal Order, including the Adequate Protection Obligations and the use of the Prepetition Collateral (including the terms on which the Debtors used up to $120,000,000 of Encumbered Cash in the Specified Encumbered Accounts prior to the Satisfaction of Replenishment Obligations), have been negotiated in good faith and at arm's length between the Debtors, the DIP Secured Parties, and the Secured Parties.  The DIP Secured Parties and the Secured Parties have acted in good

20

faith in respect of all actions taken by them in negotiating, implementing, documenting, or obtaining requisite approvals of the Debtors' incurrence of the DIP Facility and use of up to $120,000,000 of Encumbered Cash in the Specified Encumbered Accounts prior to the Satisfaction of Replenishment Obligations and other Prepetition Collateral, including in respect of all of the terms of this ~~Interim DIP~~Final Order, all documents related thereto, and all transactions contemplated by the foregoing.

(vii)   ~~(vi)~~ Contingent Roll-Up Term Loans.  Upon entry of ~~this~~the Interim DIP Order and as reaffirmed by this Final Order, Secured Noteholders that participate as lenders in the DIP Facility and timely tender their Secured Notes and satisfy the other requirements set forth in the DIP Documents shall be issued Contingent Roll-Up Term Loans as set forth in the DIP Documents.

(viii)   ~~(vii)~~ Interim Roll-Up DIP Loans.  Upon entry of ~~this~~the Interim DIP Order and as reaffirmed by this Final Order, the occurrence of the DIP Syndication Initial Closing Date and the DIP Syndication Final Closing Date, respectively, and the satisfaction of the other conditions set forth in the DIP Documents, a certain amount of Contingent Roll-Up Term Loans shall be and were deemed to have been exchanged for Interim Roll-Up DIP Loans as follows:  for every dollar of Interim New Money DIP Loans funded by the DIP Lenders, two dollars of Contingent Roll-Up Term Loans shall be deemed to have been exchanged into and shall constitute Roll-Up DIP Loans until the ratio of Interim New Money DIP Loans funded by such DIP Lenders to the Roll-Up DIP Loans~~,~~ reaches 1:2.  The Secured Notes Parties would not be and were not willing to provide the Interim New Money DIP Loans or extend credit to the Debtors under the DIP Facility, without the inclusion of such Interim Roll-Up DIP Loans upon entry of ~~this~~the Interim DIP Order and satisfaction of the other conditions set forth in the DIP

21

Documents.   The Roll-Up DIP Obligations related to the Interim Roll-Up shall be and was authorized as compensation for, in consideration for, and solely on account of, the agreement of the Secured Noteholders to fund amountsthe Initial Draw under the DIP Facility and not as adequate protection for, or otherwise on account of, any Prepetition Secured Notes Obligations.

(ix)    Final Roll-Up DIP Loans.  Upon entry of this Final Order, the occurrence of the DIP Syndication Initial Closing Date and the DIP Syndication Final Closing Date, respectively, and the satisfaction of the other conditions set forth in the DIP Documents, a certain amount of Contingent Roll-Up Term Loans shall be deemed to have been exchanged for Final Roll-Up DIP Loans as follows:  (a) for every new dollar of Final New Money DIP Loans funded by the DIP Lenders for the Second Draw, two dollars of Contingent Roll-Up Term Loans shall be deemed to have been exchanged into and shall constitute Roll-Up DIP Loans until the ratio of Final New Money DIP Loans funded by such DIP Lenders for the Second Draw to the new Roll-Up DIP Loans reaches 1:2; (b) for every new dollar of Final New Money DIP Loans funded by the DIP Lenders for the Incremental Second Draw, one dollar of Contingent Roll-Up Term Loans shall be deemed to have been exchanged into and shall constitute Roll-Up DIP Loans until the ratio of Final New Money DIP Loans funded by such DIP Lenders for the Incremental Second Draw to the new Roll-Up DIP Loans reaches 1:1; (c) for every new dollar of Final New Money DIP Loans funded by the DIP Lenders for the Third Draw, one dollar and twenty-five cents of Contingent Roll-Up Term Loans shall be deemed to have been exchanged into and shall constitute Roll-Up DIP Loans until the ratio of Final New Money DIP Loans funded by such DIP Lenders for the Third Draw to the new Roll-Up DIP Loans reaches 1:1.25; and (d) for every new dollar of Final New Money DIP Loans funded by the DIP Lenders for the Fourth Draw, one dollar and twenty-five cents of Contingent Roll-Up Term Loans shall be deemed to have been

22

exchanged into and shall constitute Roll-Up DIP Loans until the ratio of Final New Money DIP Loans funded by such DIP Lenders for the Fourth Draw to the new Roll-Up DIP Loans reaches 1:1.25; *provided, however*, notwithstanding the foregoing, the Roll-Up DIP Loans shall not exceed $750,000,000.  The Secured Notes Parties would not be willing to provide the Final New Money DIP Loans or extend credit to the Debtors under the DIP Facility, without the inclusion of such Final Roll-Up DIP Loans upon entry of this Final Order and satisfaction of the other conditions set forth in the DIP Documents.  The Roll-Up DIP Obligations related to the Final Roll-Up shall be authorized as compensation for, in consideration for, and solely on account of, the agreement of the Secured Noteholders to fund the Second Draw, the Third Draw, and the Fourth Draw, as applicable, under the DIP Facility and not as adequate protection for, or otherwise on account of, any Prepetition Secured Notes Obligations.

(x)    (viii) Adequate Protection.    Each of the Secured Parties is entitled, pursuant to sections 105, 361, 362, and 363(e) of the Bankruptcy Code, to adequate protection for and equal in amount to any post-petition diminution in value of their respective valid, perfected, and non-avoidable liens and security interests in the Prepetition Collateral, including Cash Collateral (any such post-petition diminution, to the maximum extent permitted under the Bankruptcy Code, "**Diminution in Value**"), subject to the reservation of rights set forth in paragraph 21 hereof.  Each of the Secured Parties is adequately protected to the extent of any diminution in the value of their respective interests in property of the estate resulting from the use of cash in the Specified Encumbered Accounts as authorized pursuant to this the Second Interim Adequate Protection Order and the Interim DIP Order by the value of the Prepetition Collateral, the DIP Collateral, the Owned Aircraft Surplus, and the Debtors' Satisfaction of Replenishment of Encumbered Cash (as defined below) obligation Obligations.

I.      *Findings Regarding Backstop Premium*.   Based on the representations of the Debtors and the evidence presented at the Interim DIP Hearing and the Final Hearing, (i) the amount, terms and conditions of the Backstop Premium are reasonable and constitute actual and necessary costs and expenses to preserve the Debtors' estates and (ii) the Backstop Premium is a bargained-for and integral part of the transactions specified in the Commitment Letter and, without such inducements, the Backstop DIP Lenders would not have agreed to the terms and conditions of the backstop commitment.

J.      *Good Cause Shown; Best Interest*.   Good cause has been shown for entry of this ~~Interim DIP~~Final Order, which is in the best interests of the Debtors' respective estates and creditors as its implementation will, among other things, allow for the continued operation of the Debtors' business and enhance the Debtors' prospects for a successful restructuring.   Absent the relief ~~sought by this~~granted in the Interim DIP Order and this Final Order, the Debtors' estates ~~will be~~would have been immediately and irreparably harmed.

K.      *Notice*.   In accordance with Bankruptcy Rules 2002, 4001(b) and (c), and 9014 and the Local Rules, notice of the ~~Interim DIP~~Final Hearing and the emergency relief requested in the DIP Motion has been provided by the Debtors.   Under the circumstances, the Debtors' notice of the DIP Motion, the relief requested therein, and the ~~Interim DIP~~Final Hearing complies with Bankruptcy Rules 2002, 4001(b) and (c), and 9014, the applicable Local Rules, and the Case Management Procedures.

L.      *Findings Regarding ~~Interim~~ Roll-Up DIP Loans*.   Local Rule 4001-2(g)(5) applied to the relief granted in ~~this~~the Interim DIP Order, and based on the representations made and the evidence presented at the Interim DIP Hearing as reflected in the transcript, there are no Challenges with respect to the Interim Roll-Up and the DIP Liens granted with respect thereto.

Local Rule 4001-2(g)(5) also applied to the relief granted in this Final Order, and based on the representations made and the evidence presented at the Final Hearing as reflected in the transcript, there are no Challenges with respect to an additional $150,000,000 of the Final Roll-Up and the DIP Liens granted with respect thereto.  For the avoidance of doubt, nothing in this Final Order impairs the right of the Creditors' Committee to seek to Challenge and for the Court to grant appropriate relief with respect to (i) any Roll-Up DIP Obligations in excess of the principal amount of $550,000,000 (plus interest, if any) or (ii) the extent of the Prepetition Secured Notes Liens securing the Prepetition Secured Notes Obligations after accounting for the Roll-Up DIP Loans.

M.   *Replenishment of Encumbered Cash*.  Based on the representations made by the Debtors at the Final Hearing, on October 27, 2025, the Debtors replenished all Encumbered Cash authorized to be used pursuant to the Second Interim Adequate Protection Order and the Interim DIP Order depositing (i) $37,753,772.85 into the account in the name of Spirit Airlines, LLC with the last four digits x1857 and (ii) $45,000,000.00 into the account in the name of Spirit Airlines, LLC with the last four digits x6877, and the Satisfaction of Replenishment Obligations therefore has occurred.

**NOW THEREFORE**, based upon the First Adequate Protection Motion, the Supplemental Adequate Protection Motion, the DIP Motion, the Declarations, the evidence adduced at the Hearings, and the record before the Court, and after due consideration, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.   *Motion Granted*.  The DIP Motion is hereby granted on ~~an interim~~a final basis as set forth herein.  The DIP Facility and the use of the Prepetition Collateral of the Secured Parties

25

~~and up to $120,000,000 of Encumbered Cash in the Specified Encumbered Accounts~~ is hereby authorized, in each case, upon the terms and conditions and to the extent set forth in this ~~Interim DIP~~Final Order and the DIP Documents.  All objections and reservations of rights filed or asserted in respect of the relief set forth in this ~~Interim DIP~~Final Order that have not been withdrawn, waived, or settled, are hereby denied and overruled with prejudice.

2.    *Authorization of the DIP Facility, the DIP Documents, and the Use of DIP Collateral.*

(a)    <u>Authorization of DIP Documents</u>.  The Debtors are hereby authorized and empowered, <u>on a final basis,</u> to execute, enter into and deliver, and perform under the DIP Documents and such additional documents, instruments, certificates, and agreements as may be reasonably necessary or required to perform their obligations under the DIP Facility and this ~~Interim DIP~~<u>Final</u> Order and to implement the transactions contemplated thereunder and hereunder.

(b)    <u>Authorization to Borrow</u>.  The Debtors are hereby authorized, <u>on a final basis,</u> to execute, deliver, enter into, and, as applicable, comply with and perform all of their obligations under the DIP Documents and take other and further acts as may be necessary, appropriate, or desirable in connection therewith.  The Borrower is authorized, <u>on a final basis,</u> to borrow the DIP Loans pursuant to the DIP Credit Agreement and the Guarantors are authorized, <u>on a final basis,</u> to provide a guarantee of payment and performance in respect of the DIP Obligations, in each case, in accordance with the DIP Documents, and the DIP Obligations hereby are approved, <u>on a final basis,</u> (as and when such amounts become earned, due, and payable in accordance with the DIP Documents) without the need to seek further Court approval.

26

(c)    Use of DIP Collateral and Prepetition Collateral.  The Debtors are hereby authorized, on ~~an interim~~a final basis, to use the proceeds of the DIP Collateral and the Prepetition Collateral of the Secured Parties (~~including up to~~excluding, for the avoidance of doubt, the $120,000,000 of Encumbered Cash in the Specified Encumbered Accounts authorized to be used pursuant to the Second Interim Adequate Protection Order and the Interim DIP Order, as a result of the occurrence of the Satisfaction of Replenishment Obligations), upon the terms and conditions and to the extent set forth in this ~~Interim DIP~~Final Order and the DIP Documents.  In accordance with the DIP Documents, upon the sale or other disposition of any DIP Collateral (excluding any Revolving Priority Collateral) that is required to repay the DIP Obligations (~~excluding any Revolving Priority Collateral~~including, without limitation, the proceeds from any sale of the Headquarters), the proceeds thereof shall first be applied to repay the New Money DIP Loans, and thereafter, any remaining proceeds shall be used to repay the Roll-Up DIP Loans, in each case, in accordance with the terms and priorities set forth in this ~~Interim DIP~~Final Order and the DIP Documents.~~_~~

(d)    DIP Fees and Expenses; Indemnification.  Subject to paragraph 2(b) of this ~~Interim DIP~~Final Order, the Debtors are hereby authorized and empowered, on a final basis, to pay all DIP Obligations as such amounts become due and payable in accordance with this ~~Interim DIP~~Final Order and the DIP Documents, without the need for further order of the Court, and any and all fees payable in respect of the Initial Draw, the Second Draw, the Incremental Second Draw, the Third Draw, and the Fourth Draw, including, without limitation, the original issue discount issued at 3.00% of the ~~Interim~~New Money DIP Loans (the "**OID**") and the backstop premium equal to 9.00% (payable in kind) on the ~~Interim~~New Money DIP Loans as such ~~Interim~~New Money DIP Loans are funded (the "**Backstop Premium**") in accordance with

27

the Commitment Letter, are hereby approved on a final basis.  Without limiting the foregoing, in accordance with this ~~Interim DIP~~Final Order, the Debtors are hereby authorized and empowered, on a final basis, to:

(i)     pay any and all fees payable under the DIP Documents ~~in connection with the Initial Draw~~;

(ii)    jointly and severally pay or reimburse the reasonable and documented fees and out-of-pocket costs and expenses incurred, whether prepetition or post-petition, by (A) the DIP Facility Agent (including the fees and out-of-pocket costs and expenses of Seward & Kissel LLP, as counsel to the DIP Facility Agent), (B) the Fronting Lender (including the fees and out-of-pocket costs and expenses of Dentons US LLP, as counsel to the Fronting Lender) and (C) the Ad Hoc Committee of Secured Noteholders (including the fees and out-of-pocket costs and expenses of the Ad Hoc Committee of Secured Noteholder Advisors), in each case, in connection with (1) the Chapter 11 Cases generally, (2) the preparation, negotiation, and execution of the DIP Documents, (3) the funding of the DIP Facility, (4) the creation, perfection, or protection of the liens under the DIP Documents (including all search, filing, and recording fees), (5) the on-going administration of the DIP Documents (including the preparation, negotiation, and execution of any amendments, consents, waivers, assignments, restatements, or supplements thereto), and (6) the enforcement of the DIP Documents (collectively, the "**DIP Fees and Expenses**"); and

(iii)   jointly and severally indemnify the (i) the DIP Facility Agent (including the fees and out-of-pocket costs and expenses of Seward & Kissel LLP, as counsel to the DIP Facility Agent), (ii) the Ad Hoc Committee of Secured Noteholders (solely in their capacity as DIP Lenders) (including the fees and out-of-pocket costs and expenses of the Ad Hoc Committee of Secured Noteholder Advisors), and (iii) the Fronting Lender, and each of their respective affiliates, successors, and assigns and the respective partners, officers, directors, employees, agents, advisors, controlling persons, and members of each of the foregoing and attorneys and representatives of each of the foregoing (each, an "**Indemnified Person**"), and hold them harmless from and against any and all losses, claims, damages, costs, expenses (including but not limited to reasonable and documented legal fees and expenses), and liabilities arising out of or relating to the execution or delivery of the DIP Documents, transactions contemplated hereby and thereby, and any actual or proposed use of the proceeds of any DIP Loans made under the DIP Facility in accordance with the terms of the DIP Documents; *provided* that no such person will be indemnified for costs, expenses, or liabilities to the extent determined by a final, non-appealable judgment of a court of competent jurisdiction to

28

have been incurred solely by reason of the bad faith, actual fraud, gross negligence, or willful misconduct of such person (or their related persons). No Indemnified Person, in its capacity as such, shall have any liability (whether direct or indirect, in contract, tort, or otherwise) to the Debtors or any shareholders or creditors of the Debtors for or in connection with the transactions contemplated hereby, except to the extent such liability is found in an final non-appealable judgment by a court of competent jurisdiction to have resulted from such Indemnified Person's bad faith, actual fraud, gross negligence, or willful misconduct, and, in no event shall any Indemnified Person be liable under any theory for any special, indirect, consequential, or punitive damages, *provided*, for the avoidance of doubt, that nothing herein shall limit any person's liability, rights, or remedies under the Notes Priority Collateral ICA or RCF Priority Collateral ICA.

(e)    *Amendment of DIP Documents*.  The Debtors are hereby authorized and empowered, on a final basis, to execute, enter into and deliver, and perform under one or more amendments, waivers, consents, or other modifications to and under the DIP Documents (in each case, in accordance with the terms of the applicable DIP Document); *provided however*, that a copy of all amendments, waivers, consents, or other modifications to and under the DIP Documents shall be provided (which may be by electronic mail) to the U.S. Trustee, counsel to the Creditors' Committee, and counsel to the RCF Agents no later than two (2) business days prior to the anticipated date of effectiveness thereof; *provided further, however*, that all material amendments or modifications to and under the DIP Documents, including, but not limited to, amendments or modifications that materially and adversely affect or impact the rights of the Creditors' Committee or the RCF Secured Parties (the "**Material DIP Amendment**") shall be filed with the Court, and if no objection to the Material DIP Amendment is made within five (5) business days of the filing of the Material DIP Amendment, then, without further application to or order of the Court, such Material DIP Amendment shall automatically be deemed approved and effective; *provided further, however*, if an objection is made within such time period, then such Material DIP Amendment shall be subject to a hearing and approval of the Court.

29

(f)    <u>Performance of Other Acts</u>.    The Debtors are hereby authorized and empowered, on a final basis, to execute such other documents, and perform all such other acts, as may be reasonably necessary or required for the Debtors to perform under the DIP Facility and implement the transactions contemplated in this ~~Interim DIP~~Final Order and the DIP Documents.

(g)    <u>DIP Syndication</u>~~.~~.    Based on the representations of the Debtors and other parties, and the evidence presented, at the Interim DIP Hearing and the Final Hearing, the DIP Syndication and the DIP Syndication Materials are fair and reasonable and were and are being implemented in good faith by the Debtors, the Information Agent, the DIP Facility Agent, the Secured Notes Trustee, and the other parties involved in the DIP Syndication.    The Debtors, the Information Agent, the DIP Facility Agent, the Secured Notes Trustee, and the other parties involved in the DIP Syndication are hereby authorized, on a final basis, to take all actions they deem to be reasonably necessary or advisable to effect the DIP Syndication, including pursuant to the DIP Syndication Materials, and no such party shall be liable to any person or entity with respect to any act taken or omitted from being taken in connection with such syndication, including any actions taken prior to entry of ~~this~~the Interim DIP Order or this Final Order, which actions are hereby ratified.    The Debtors, with the consent of the DIP Lenders and the Secured Notes Trustee (to the extent such modifications, amendments, or supplements affect the rights or obligations of the Secured Notes Trustee), reserve the right to modify, amend, or supplement the DIP Syndication Materials prior to ~~commencement~~consummation of the DIP Syndication.

3.      *DIP Obligations.*

(a)      Upon entry of ~~this~~the Interim DIP Order and as reaffirmed by this Final Order, the DIP Facility in respect of the Initial Draw and the Interim Roll-Up ~~are~~was approved. Upon ~~execution and delivery thereof, the~~entry of this Final Order, the DIP Facility in respect of the Second Draw, the Incremental Second Draw, the Third Draw, the Fourth Draw, and the Final Roll-Up are approved.  The DIP Documents shall constitute valid, binding, enforceable, and non-avoidable obligations of each of the Debtors, and ~~shall be~~are fully enforceable against each of the Debtors, their estates, and any successors thereto, including, without limitation, any estate representative or trustee appointed in any of the Chapter 11 Cases, in any case under chapter 7 of the Bankruptcy Code upon the conversion of any of the Chapter 11 Cases, and/or upon the dismissal of any of the Chapter 11 Cases or any such successor cases (collectively, the "**Successor Cases**"), in each case, in accordance with the terms of the DIP Documents and this ~~Interim DIP~~Final Order.

(b)      ~~Upon execution and delivery thereof, the~~The Debtors ~~shall be~~are jointly and severally liable for any and all DIP Obligations.  The DIP Obligations shall be due and payable, without notice or demand, and the Debtors' use of the Cash Collateral of the Secured Parties shall automatically cease, on the DIP Termination Date (as defined below) (subject to paragraph ~~13~~12 hereof).

(c)      All obligations incurred, payments made, and transfers or grants of liens and security interests set forth in ~~this~~the Interim DIP Order, this Final Order, and/or the DIP Documents by the Debtors are granted to or for the benefit of the DIP Secured Parties and the Secured Parties (as applicable) and were and are granted contemporaneously with the making of the loans and commitments and other financial accommodations secured thereby.    No

31

obligation, payment, transfer, or grant of liens or security interests under ~~this~~the Interim DIP Order, this Final Order, or the DIP Documents in respect of the Interim New Money DIP Loans, Interim Roll-Up DIP Loans, the Final New Money DIP Loans, the Final Roll-Up DIP Loans, and other DIP Obligations to the DIP Secured Parties or, subject to paragraph 15, the Secured Parties, shall be limited, stayed, restrained, voidable, avoidable, or recoverable under the Bankruptcy Code or under any applicable law, or subject to any Challenge (subject, solely in the case of the DIP Fees and Expenses and the Adequate Protection Professional Fees and Expenses (as defined below), to the professional fee review procedures set forth in paragraph 9 of this ~~Interim DIP~~Final Order).

4.      *Use of Funds.*

(a)      <u>Use of Unencumbered Funds</u>.  To the extent authorization is necessary, the Debtors are hereby further authorized to use, on a consensual basis, (a) the $275,000,000.00 in available cash drawn on August 21, 2025, under their Revolving Credit Facility (the "**Available RCF Cash**"), (b) cash in the Foreign Accounts (as defined and further described in the *Motion of the Debtors for Entry of Interim and Final Orders (I) Authorizing (A) the Debtors to Maintain Their Existing Cash Management System, Bank Accounts, and Business Forms, (B) the Debtors to Open and Close Bank Accounts, and (C) Financial Institutions to Administer the Bank Accounts and Honor and Process Related Checks and Transfers, (II) Waiving Deposit and Investment Requirements, and (III) Allowing Intercompany Transactions and Affording Administrative Expense Priority to Post-Petition Intercompany Claims* [ECF No. 18] (the "**Cash Management Motion**"), (c) Post-Petition Cash, and (d) any other unencumbered cash, including the AerCap Liquidity Payment, not subject to any perfected lien or other security interest (which amounts in this clause (d), for the avoidance of doubt, shall exclude (w) the Encumbered Cash,

(x) the Owned Aircraft Surplus (until such time as the Replenishment of Encumbered Cash, after which such Owned Aircraft Surplus may be used solely in accordance with this ~~Interim DIP~~Final Order and the DIP Documents)~~ and~~, (y) other than with respect to Revolving Priority Collateral, any other cash, funds, investments, or securities from the sale or disposition of Prepetition Collateral or DIP Collateral, in each case outside of the ordinary course of business, and (z) with respect to Revolving Priority Collateral, any proceeds thereof other than Spare Parts up to the Spare Parts Cap and sold in the ordinary course of business and consistent with past practice, (collectively, (a)-(d), the "**Unencumbered Funds**").   Notwithstanding the foregoing, (i) all Unencumbered Funds (including the AerCap Liquidity Payment as defined in the *Motion of Debtors for Entry of an Order (I) Approving the Global Restructuring Term Sheet with AerCap Ireland Limited, (II) Authorizing and Approving Assumption and Rejection of Certain Aircraft Agreements, (III) Authorizing Entry Into the New Lease Agreements and Definitive Documents, and (IV) Granting Related Relief* [ECF No. 135] (the "**AerCap Motion**") shall constitute DIP Collateral and (ii) all parties' rights are reserved as to whether the Unencumbered Funds are encumbered by Prepetition Secured Notes Liens and Prepetition RCF Liens.

(b)      Use of Encumbered Cash in the Specified Encumbered Accounts and Satisfaction of Replenishment Obligations.  The Debtors ~~continue to be~~were authorized pursuant to the Second Interim Adequate Protection Order and the Interim DIP Order to use, on a consensual basis, up to $120,000,000 of Encumbered Cash ~~held as of the date hereof~~comprising (A) the amount in the account in the name of Spirit Airlines, LLC with the last four digits 6877 maintained at JP Morgan Chase, N.A. and (B) $37,536,270 of the amount in the account in the name of Spirit Airlines, LLC with the last four digits 1857 maintained at JP Morgan Chase, N.A. (such accounts, the "**Specified Encumbered Accounts**")~~ in accordance with this Interim DIP~~

33

Order; *provided, however,* as . The satisfaction of any the Secured Notes Adequate Protection Claim arising from the Diminution in Value in the amount equal to the amount of Encumbered Cash in the Specified Encumbered Accounts used by the Debtors pursuant to the Second Interim Adequate Protection Order and this the Interim DIP Order, any Encumbered Cash so used from the Specified Encumbered Accounts shall be replenished through the replenishment in full thereof (the "**Replenishment of Encumbered Cash**") on the later of (a) the Debtors' receipt of the Initial Draw and (b) the receipt of the AerCap Liquidity Payment as defined in the *Motion of Debtors for Entry of an Order (I) Approving the Global Restructuring Term Sheet with AerCap Ireland Limited, (II) Authorizing and Approving Assumption and Rejection of Certain Aircraft Agreements, (III) Authorizing Entry Into the New Lease Agreements and Definitive Documents, and (IV) Granting Related Relief* [ECF No. 135], and following the Replenishment of Encumbered Cash AerCap Motion, which occurred on October 27, 2025, was authorized by the Interim DIP Order and is affirmed by this Final Order (the "**Satisfaction of Replenishment Obligations**"). As of the Satisfaction of Replenishment Obligations, the Debtors are not authorized to use, and shall not use, cash, funds, investments, or securities from the Specified Encumbered Accounts or any other Encumbered Cash in any other Encumbered Accounts (including any amounts on account of the Satisfaction of Replenishment Obligations) without the consent of the Required DIP Lenders (other than to fund the Carve Out Reserves to the extent provided herein). Notwithstanding anything in this Interim DIP Final Order to the contrary, the Debtors are not authorized hereunder (or under any previously entered orders) to use the proceeds of Revolving Priority Collateral (other than cash up to the Spare Parts Cap from the sale or disposition of Spare Parts that are Revolving Priority Collateral, which sale or disposition

is in the ordinary course of business and consistent with past practice) except to fund the Carve

Out Reserves to the extent provided in this ~~Interim DIP~~Final Order._

5.      *DIP Liens*.

(a)      As security for the DIP Obligations, effective as of the entry of ~~this~~the

Interim DIP Order and as reaffirmed by this Final Order (and without the necessity of the

execution, recordation or filing by the Debtors or the DIP Secured Parties of any pledge,

collateral, or security documents, mortgages, deeds of trust, financing statements, notations of

certificates of title, control agreements, or other similar documents, or the taking of any other

action to take possession of or control over any DIP Collateral), the DIP Facility Agent, for the

benefit of the DIP Secured Parties, is hereby granted, on a final basis, valid, binding, enforceable,

non-avoidable, and automatically and properly perfected liens and security interests (collectively,

the "**DIP Liens**") in all DIP Collateral, in each case, subject and subordinate to the Carve Out,

and subject to the relative priorities set forth in this ~~Interim DIP~~Final Order (including **Exhibit 1**

hereto).

(b)      The DIP Liens shall be subject to the following priorities (subject, in each

case, to the Carve Out):

(i)      First Lien on Unencumbered Property.  Pursuant to section 364(c)(2) of
the Bankruptcy Code, and subject and subordinate in all respects to the
Carve Out, valid, binding, continuing, enforceable, fully perfected first
priority senior security interests in and liens upon all DIP Collateral, to
the extent such DIP Collateral is not (a) Revolving Priority Collateral or
(b) subject to valid, perfected, and non-avoidable liens as of the Petition
Date or valid and non-avoidable liens in favor of third parties that were
in existence immediately prior to the Petition Date that are perfected as
permitted by section 546(b) of the Bankruptcy Code;

(ii)      Liens Junior to Certain Other Liens.  Pursuant to section 364(c)(3) of the
Bankruptcy Code, and subject and subordinate in all respects to the
Carve Out, valid, binding, continuing, enforceable, fully perfected junior
security interests in and liens on the DIP Collateral, to the extent such
DIP Collateral is Revolving Priority Collateral or subject to Permitted

35

Liens with the relative priorities as set forth in **Exhibit 1** attached hereto;

(iii)    Liens Priming the Prepetition Secured Notes Liens. Pursuant to section 364(d)(1) of the Bankruptcy Code, and subject and subordinate in all respects to the Carve Out, a valid, binding, continuing, enforceable, fully perfected priming senior security interests in and liens upon the Prepetition Secured Notes Collateral, which security interests and liens shall prime the Prepetition Secured Notes Liens; and

(iv)    Liens on the Owned Aircraft Surplus. Notwithstanding anything to the contrary in ~~this~~the Interim DIP Order or this Final Order, pursuant to section 364(c)(3) of the Bankruptcy Code, and subject and subordinate in all respects to the Carve Out, valid, binding, continuing, enforceable, fully perfected junior security interests in and liens upon the Owned Aircraft Surplus until ~~such time as the~~the Satisfaction of Replenishment ~~of Encumbered Cash~~Obligations, and thereafter, as a result of the Satisfaction of Replenishment Obligations, pursuant to section 364(c)(2) of the Bankruptcy Code, and subject and subordinate in all respects to the Carve Out, valid, binding, continuing, enforceable, fully perfected first priority senior security interests in and liens upon the Owned Aircraft Surplus, in each case with the relative priorities as set forth in **Exhibit 1** attached hereto.

Other than as set forth above, the DIP Liens shall be senior to all security interests in, liens on, or claims against any of the DIP Collateral, including any lien or security interest that is avoided or preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code.

6.      *DIP Superpriority Claims*. Subject only to the Carve Out, pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed superpriority administrative expense claims against each of the Debtors' estates to the extent set forth in the Bankruptcy Code (the "**DIP Superpriority Claims**"), without the need to file any proof of claim or request for payment of administrative expenses, with priority over any and all other administrative expense claims, adequate protection claims, and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, in each case, subject to the

36

relative lien priorities set forth in **Exhibit 1**. Subject to paragraph 14 with respect to the DIP Superpriority Claims on account of the Roll-Up DIP Loans (the "**Roll-Up Superpriority Claims**"), the DIP Superpriority Claims shall, for purposes of section 1129(a)(9)(A) of the Bankruptcy Code, be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code and shall be payable by each of the Debtors on a joint and several basis.

7.    *Adequate Protection for the Secured Notes Parties*.  The Secured Notes Parties are entitled, pursuant to sections 361, 362, 363(e), 364(d)(1), and 507 of the Bankruptcy Code, to, and are hereby granted, on a final basis, adequate protection of the Secured Notes Parties' interests in the Prepetition Secured Notes Collateral (including the Cash Collateral of the Secured Notes Parties) as follows (the "**Secured Notes Adequate Protection Obligations**"):

(a)    Secured Notes Adequate Protection Claims.  The Secured Notes Collateral Agent, for the benefit of itself and the Secured Notes Parties, is hereby granted, in the amount of any Diminution in Value of their interests in the Prepetition Secured Notes Collateral from and after the Petition Date, superpriority administrative expense claims to the extent contemplated by section 507(b) of the Bankruptcy Code (the "**Secured Notes Adequate Protection Claims**") against each of the Debtors.  The Secured Notes Adequate Protection Claims against each of the Debtors shall be (a) subject and subordinate only to the Carve Out and the DIP Superpriority Claims, (b) *pari passu* with the RCF Adequate Protection Claims, and (c) senior to any and all other administrative expense claims and all other claims against the Debtors and their estates, now existing or hereafter arising, of any kind or nature whatsoever, in each case, subject to the relative lien priorities set forth in **Exhibit 1**.

(b)    Secured Notes Adequate Protection Liens.  The Secured Notes Collateral Agent, for the benefit of itself and the Secured Notes Parties, is hereby granted, effective and

perfected as of the entry of the First Interim Adequate Protection Order (and without the necessity of the execution, recordation, or filing by the Debtors or the Secured Notes Parties of any pledge, collateral, or security documents, mortgages, deeds of trust, financing statements, notations of certificates of title, control agreements, or other similar documents, or the taking of any other action to take possession of or control over any DIP Collateral), in the amount of any Diminution in Value of their interests in the Prepetition Secured Notes Collateral from and after the Petition Date, valid, binding, enforceable, and automatically perfected replacement and additional liens and security interests in the Owned Aircraft Surplus and the DIP Collateral (the "**Secured Notes Adequate Protection Liens**").  The Secured Notes Adequate Protection Liens shall be subordinate only to (a) the Carve Out and the DIP Liens, (b) with respect to the DIP Collateral constituting Revolving Priority Collateral, the RCF Adequate Protection Liens and the Prepetition RCF Liens, and (c) the Secured Notes Permitted Liens (if any) (and subject to the relative priorities set forth in **Exhibit 1**), it being understood that notwithstanding anything to the contrary in the First Interim Adequate Protection Order, the Second Interim Adequate Protection Order, ~~this~~the Interim DIP Order, or ~~the~~this Final Order to the contrary, other than with respect to the Owned Aircraft Surplus solely prior to the Satisfaction of Replenishment ~~of Encumbered Cash as set forth in paragraph 7(c) below~~Obligations, in no circumstances and at no time in these Chapter 11 Cases shall the Secured Notes Adequate Protection Liens be senior to or *pari passu* with any DIP Liens, regardless of whether any such liens attach prior in time.  Without limiting the foregoing, the Secured Notes Adequate Protection Liens shall otherwise be senior to all other security interests in, liens on, or claims against any of the DIP Collateral (subject to the relative priorities set forth in **Exhibit 1**), including (but subordinate and junior to the DIP Liens) any lien

38

or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code.

(c)     Secured Notes Adequate Protection Liens on Owned Aircraft Surplus.

Without Pursuant to the Second Interim Adequate Protection Order and the Interim DIP Order and as reaffirmed by this Final Order, without limiting the adequate protection in paragraphs 7(a) and 7(b) above, the Secured Notes Collateral Agent, for the benefit of itself and the Secured Notes Parties, is herebywas granted, effective and perfected as of the entry of the Second Interim Adequate Protection Order (and without the necessity of the execution, recordation, or filing by the Debtors of any pledge, collateral, or security documents, mortgages, deeds of trust, financing statements, notations of certificates of title, control agreements, or other similar documents, or the taking of any other action to take possession of or control over any Owned Aircraft Surplus), in the amount of any Diminution in Value of their interests in Cash Collateral from and after the Petition Date resulting from the use of the Encumbered Cash in the Specified Encumbered Accounts as authorized pursuant to the Second Interim Adequate Protection Order and thisthe Interim DIP Order, valid, binding, enforceable, and automatically perfected replacement and additional liens and security interests (the "**Secured Notes Cash Collateral Adequate Protection Liens**") in the net proceeds of the refinancing, sale or other disposition of the twenty (20) aircraft held for sale identified in **Exhibit 2** hereof (the "**Owned Aircraft**") after satisfaction in full of any Aircraft Debt secured by such Owned Aircraft (collectively, the "**Owned Aircraft Surplus**"). The Secured Notes Cash Collateral Adequate Protection Liens shall bewere subordinate to only the Carve Out and, following the Replenishment of Encumbered Cash, the DIP Liens. The Secured Notes Cash Collateral Adequate Protection Liens shall were otherwise be senior to all other security interests in, liens on, orand claims

against the Owned Aircraft Surplus.  The Debtors' use of up to $120,000,000 of Encumbered Cash in the Specified Encumbered Accounts as authorized by the Second Interim Adequate Protection Order and ~~this~~the Interim DIP Order (net of any Replenishment of Encumbered Cash) ~~shall constitute~~constituted Diminution in Value in the amount equal to the amount of such cash so used ~~and, upon receipt of the Owned Aircraft Surplus by the Debtors and until such time as the Replenishment of Encumbered Cash, such Owned Aircraft Surplus shall not be used by the Debtors absent express consent of the Secured Notes Parties and the DIP Lenders or further order of this Court; provided that following~~; *provided* that as a result of the occurrence of the Satisfaction of Replenishment ~~of Encumbered Cash~~Obligations, the Debtors shall be permitted to use the Owned Aircraft Surplus solely in accordance with the terms of this ~~Interim DIP~~Final Order and the DIP Documents (including, for the avoidance of doubt, any mandatory prepayment provisions thereof).  Absent further court order on proper notice to the Aircraft Counterparties holding the Aircraft Debt associated with the Owned Aircraft and Collateral Agent, and the Secured Notes Parties and the RCF Agents, the Debtors are prohibited from incurring additional indebtedness secured by or in respect of the Owned Aircraft, which notice would allow such parties to raise any adequate protection issues and/or the issues arising under section 1110 of the Bankruptcy Code.  Notwithstanding anything to the contrary herein, following the Satisfaction of Replenishment Obligations, without the consent of the ~~Secured Notes Parties and the RCF Secured Parties~~Required DIP Lenders, the Debtors shall be prohibited from granting any liens or security interests in the Owned Aircraft that are junior to the existing liens and security interests securing the Aircraft Debt as of the Petition Date~~, until such time as the Replenishment of Encumbered Cash occurs on account of the Encumbered Cash used from the Specified Encumbered Accounts in accordance with the Second Interim Adequate Protection Order and~~

this Interim DIP Order; *provided*, *however*, that, the foregoing shall not prohibit the Debtors from refinancing such Aircraft Debt.

(d) <u>Secured Notes Adequate Protection Fees and Expenses</u>.  The Debtors are authorized and directed to pay all of the reasonable and documented out-of-pocket fees, costs, and expenses related to these Chapter 11 Cases of the Secured Notes Trustee, the Secured Notes Collateral Agent, the Secured Notes Depositary, and the Ad Hoc Committee of Secured Noteholders, whether incurred prior to or after the Petition Date, including, without limitation, the reasonable and documented fees and expenses of (i) the advisors (legal, financial, or otherwise), including Seward & Kissel LLP, retained by the Secured Notes Trustee, the Secured Notes Collateral Agent, and the Secured Notes Depositary and (ii) the Ad Hoc Committee of Secured Noteholder Advisors, in each case, subject to the review procedures set forth in paragraph 109 of this Interim DIPFinal Order, including the notice provisions thereof (the "**Secured Notes Adequate Protection Professional Fees and Expenses**").  For the avoidance of doubt, nothing in this Interim DIPFinal Order constitutes a waiver of, or otherwise impairs, any rights of any party in interest to seek recharacterization as principal payments under the Secured Notes Indenture of any adequate protection fees and expenses payable to the Secured Notes Parties pursuant to this paragraph 7(d) or any other appropriate remedies.

(e) <u>Additional Secured Notes Adequate Protection Information Rights</u>.  The Debtors shall provide the Ad Hoc Committee of Secured Noteholder Advisors at the same time as such reporting is provided to the RCF Administrative Agent and the RCF <u>Administrative Agent </u>Advisors, all reporting to be provided to the RCF Administrative Agent and the RCF <u>Administrative Agent </u>Advisors as set forth herein, which reporting shall be provided to the Ad

Hoc Committee of Secured Noteholder Advisors on a professional eyes-only basis, unless otherwise agreed by the Debtors.

8.    *Adequate Protection for the RCF Secured Parties.*  The RCF Secured Parties are entitled, pursuant to sections 361, 362, 363(e), and 507 of the Bankruptcy Code, to, and are hereby granted, on a final basis, adequate protection of the RCF Secured Parties' interests in Prepetition RCF Collateral (including in any Cash Collateral of the RCF Secured Parties), as follows (the "**RCF Adequate Protection Obligations**"):

(a)    RCF Adequate Protection Claims.  The RCF Administrative Agent, for the benefit of the RCF Secured Parties, is hereby granted, in the amount of any Diminution in Value of the RCF Secured Parties' respective interests in the Prepetition RCF Collateral from and after the Petition Date, superpriority administrative expense claims to the extent contemplated by section 507(b) of the Bankruptcy Code (the "**RCF Adequate Protection Claims**").  The RCF Adequate Protection Claims shall be (a) subject and subordinate only to the Carve Out and the DIP Superpriority Claims, (b) *pari passu* with the Secured Notes Adequate Protection Claims, and (c) senior to any and all other administrative expense claims and all other claims against the Debtors and their estates, now existing or hereafter arising, of any kind or nature whatsoever, in each case, subject to the relative lien priorities set forth in **Exhibit 1**.

(b)    RCF Adequate Protection Liens.  The RCF Agents, for the benefit of the RCF Secured Parties, are hereby granted, effective and perfected as of the entry of the First Interim Adequate Protection Order (and without the necessity of the execution, recordation, or filing by the Debtors or any RCF Secured Parties of any pledge, collateral, or security documents, mortgages, deeds of trust, financing statements, notations of certificates of title, control agreements, or other similar documents, or the taking of any other action to take

possession of or control over any DIP Collateral), valid, binding, enforceable, and automatically perfected replacement and additional liens and security interests, (1) in all Spare Parts (the "**Spare Parts Collateral**"), and (2) in the amount corresponding to any Diminution in Value of their interests in the Prepetition RCF Collateral from and after the Petition Date, in the Owned Aircraft Surplus (the "**RCF Secured Parties Cash Collateral Adequate Protection Liens**" and, together with the Secured Notes Cash Collateral Adequate Protection Liens, the "**Cash Collateral Adequate Protection Liens**") and all other DIP Collateral (the liens and security interests described in clauses (1) and (2), collectively, the "**RCF Adequate Protection Liens**"). The RCF Adequate Protection Liens on the DIP Collateral shall be subordinate to (a) ~~the~~with respect to the DIP Collateral constituting Revolving Priority Collateral, the Professional Fee Carve Out (up to the RCF Professional Fee Carve Out Cap), (b) with respect to the DIP Collateral constituting Notes Priority Collateral, the Carve Out, the DIP Liens, the Secured Notes Adequate Protection Liens, and the Prepetition Secured Notes Liens, (c) with respect to DIP Collateral not constituting Notes Priority Collateral or Revolving Priority Collateral, the Carve Out and the DIP Liens, (d) with respect to the Owned Aircraft Surplus, prior to the Satisfaction of Replenishment Obligations, the Carve Out and the Secured Notes Cash Collateral Adequate Protection Liens (and, upon the Satisfaction of Replenishment ~~of Encumbered Cash~~Obligations, solely the Carve Out and the DIP Liens), and (e) the RCF Permitted Liens (if any) (and subject to the relative priorities set forth in **Exhibit 1**), it being understood that notwithstanding anything in the First Interim Adequate Protection Order, the Second Interim Adequate Protection Order, ~~this~~the Interim DIP Order, or ~~the~~this Final Order to the contrary, in no circumstances and at no time in these Chapter 11 Cases shall the RCF Adequate Protection Liens on the DIP Collateral (other than in respect of Revolving Priority Collateral) be senior to or *pari passu* with any DIP

43

Liens, regardless of whether any such liens attach prior in time.  The RCF Adequate Protection Liens on the Revolving Priority Collateral shall be subordinate only to (a) the Professional Fee Carve Out (up to the RCF Professional Fee Carve Out Cap) and (b) the ~~Prepetition~~ RCF Permitted Liens (if any).  Without limiting the foregoing, the RCF Adequate Protection Liens shall otherwise be senior to all other security interests in, liens on, or claims against any of the DIP Collateral (subject to the relative priorities set forth in **Exhibit 1**), including (but, except with respect to Revolving Priority Collateral, subordinate and junior to the DIP Liens to the extent set forth herein) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code.

(c)    <u>RCF Adequate Protection Fees and Expenses</u>.  The Debtors shall pay to the RCF Administrative Agent, for the benefit of the RCF Secured Parties, cash payments equal to the amount of all accrued and unpaid fees arising under section 2.19 of the Amended and Restated Revolving Credit Facility Agreement or under the Administrative Agent Fee Letter (as defined in the Amended and Restated Revolving Credit Facility Agreement) on the dates set forth in the RCF Loan Documents.  The Debtors are authorized and directed to pay all of the reasonable and documented out-of-pocket fees, costs, and expenses related to these Chapter 11 Cases of the RCF Secured Parties, whether incurred prior to or after the Petition Date, consisting of the reasonable and documented fees and expenses of (i) Milbank LLP, as counsel to the RCF Administrative Agent, (ii) Alston & Bird LLP, as counsel to the RCF Collateral Agent, (iii) one financial advisor to the RCF Secured Parties, (iv) an appraiser selected by Citibank N.A., as RCF Administrative Agent, or Wilmington Trust, National Association, as RCF Collateral Agent in accordance with the RCF Loan Documents, and (v) any other advisor (legal, financial, or otherwise) as reasonably deemed necessary by Citibank N.A. solely to the extent payable under

the RCF Loan Documents (the "**RCF Advisors**"), subject to the review procedures set forth in paragraph 9 of this ~~Interim DIP~~Final Order, including the notice provisions thereof (the "**RCF Adequate Protection Professional Fees**" and, together with the Secured Notes Adequate Protection Professional Fees and Expenses, the "**Adequate Protection Professional Fees and Expenses**").  For the avoidance of doubt, nothing in this ~~Interim DIP~~Final Order constitutes a waiver of, or otherwise impairs, any rights of any party in interest to seek recharacterization as principal payments under the Amended and Restated Revolving Credit Facility Agreement of any adequate protection fees and expenses payable to the RCF Secured Parties pursuant to this paragraph 8(c) or any other appropriate remedies.

(d)    <u>Reporting</u>.  The Debtors shall (i) provide the RCF Administrative Agent and the RCF Administrative Agent Advisors with all reports, documents, and other information required to be delivered to (x) any of the RCF Secured Parties pursuant to the terms of the RCF Loan Documents, including, without limitation, Sections 5.01(a), (b), (d) (limited solely to a reasonably detailed calculation of the Collateral Coverage Ratio without any requirement to demonstrate, or be in, compliance with either Section 6.08 or Section 6.09(a)), (e) (limited solely to a reasonably detailed description of any such Disposition of Collateral without any requirement to demonstrate, or be in, compliance with Section 6.09(a)), (g), and (i) of the Amended and Restated Revolving Credit Facility Agreement, ~~and~~all of which may be shared by the RCF Administrative Agent and the RCF Administrative Agent Advisors with the RCF Collateral Agent and/or the RCF Advisors to the RCF Collateral Agent, and (y) any provider of debtor-in-possession financing or any other Secured Party which may, to the extent such reports and/or information are reasonably necessary for the RCF Collateral Agent to perform its obligations under the RCF Loan Documents, be shared by the RCF Administrative Agent and the

45

RCF Administrative Agent Advisors with the RCF Collateral Agent and/or the RCF Advisors to the RCF Collateral Agent with the Debtors' prior consent (not to be unreasonably withheld, conditioned or delayed), and (ii) comply with all provisions of the RCF Loan Documents which relate to providing appraisals or allowing inspection rights, including, without limitation, Sections 5.07 and 5.14 of the Amended and Restated Revolving Credit Facility Agreement, Sections 3.08 and 3.09 of the Spare Parts Security Agreement,[6] and Section 3.03 of the Aircraft and Spare Engine Security Agreement;[7] *provided* that, notwithstanding anything to the contrary set forth in the RCF Loan Documents, any such post-petition inspection rights shall be subject to a frequency limitation of one such post-petition inspection of Eligible Spare Parts in addition to one such post-petition inspection of Eligible Engines (as defined under the Amended and Restated Revolving Credit Facility Agreement), every twelve (12) months at all times. The Debtors' advisors will, at the RCF Administrative Agent Advisors', Ad Hoc Committee of Secured Noteholder Advisors', or counsel to the Creditors' Committee's reasonable request, participate in calls with the RCF Administrative Agent Advisors, Ad Hoc Committee of Secured Noteholder Advisors, or counsel to the Creditors' Committee regarding the Debtors' businesses, their efforts to obtain debtor-in-possession financing, or progress made towards confirmation of a chapter 11 plan or sale of the Debtors' assets.

(e)     RCF Adequate Protection Payments. As further adequate protection, the RCF Agents shall receive, on behalf of the RCF Lenders, effective upon entry of ~~this~~the Interim DIP Order and approved hereunder on a final basis, adequate protection payments by the Debtors payable on the dates set forth in the RCF Loan Documents in an amount equal to the interest at

---

[6] "Spare Parts Security Agreement" means that certain Mortgage and Security Agreement (Spare Parts), dated as of May 20, 2020, by and between Spirit Airlines, Inc and Wilmington Trust, National Association.
[7] "Aircraft and Spare Engine Security Agreement" means that certain Mortgage and Security Agreement, dated as of March 30, 2020, between Spirit Airlines, Inc. and Wilmington Trust, National Association.

the non-default rate that would otherwise be owed to the RCF Lenders under the RCF Loan Documents during such period in respect of the RCF Obligations, without prejudice to the rights of the RCF Secured Parties to assert claims for the payment of additional interest at the default rate and the rights of the Debtors or any other party-in-interest to contest any such additional claims. For the avoidance of doubt, nothing in this ~~Interim DIP~~Final Order constitutes a waiver of, or otherwise impairs, any rights of any party in interest to seek recharacterization as principal payments under the RCF Loan Documents of any adequate protection payments payable to the RCF Secured Parties pursuant to this paragraph 8(e) or any other appropriate remedies.

9.      *Review of Professional Fees and Expenses*.  The payment of all (i) DIP Fees and Expenses and (ii) Adequate Protection Professional Fees and Expenses hereunder shall be made without the necessity of filing fee applications with the Court or compliance with the U.S. Trustee's guidelines and shall not be subject to further application to or approval of the Court; *provided*, *however*, that each such professional shall provide summary copies of its invoices (which may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of their invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine) to counsel to the Debtors, the U.S. Trustee, and counsel to the Creditors' Committee (collectively, the "**Review Parties**").  Any objections raised by any Review Party with respect to such invoices must be in writing and state with particularity the grounds therefor and must be submitted to the affected professional within ten (10) calendar days after delivery of such invoices to the Review Parties (such ten (10) day calendar period, the "**Review Period**").  Upon a request in writing by the U.S. Trustee to an applicable hourly professional within the Review Period, such hourly

professional shall promptly provide additional reasonably requested detail regarding its invoice to the U.S. Trustee, including time entries if requested (which time entries may be redacted for privilege, provided that the U.S. Trustee may request unredacted time entries and all parties' rights to oppose such request for unredacted time entries are preserved).  If no written objection is received from the Review Parties prior to the expiration of the Review Period, the Debtors shall promptly pay such invoices following the expiration of the Review Period.  If an objection is received from the Review Parties within the Review Period, the Debtors shall promptly pay the undisputed amount of the invoice, and the disputed portion of such invoice shall not be paid until such dispute is resolved by agreement between the affected professional and the objecting party or by order of this Court.

10.     *Modification of Automatic Stay*.  The automatic stay imposed by section 362(a) of the Bankruptcy Code is hereby vacated and modified, <u>on a final basis,</u> without application to, or further order of, this Court, to permit:  (a) the Debtors to grant the DIP Liens and the DIP Superpriority Claims, and to perform such acts as the DIP Secured Parties may request to assure the perfection and priority of the DIP Liens, (b) the Debtors to incur all DIP Obligations as contemplated under this ~~Interim DIP~~<u>Final</u> Order and the DIP Documents, (c) the Debtors to grant the Adequate Protection Liens, the Cash Collateral Adequate Protection Liens, and the Adequate Protection Claims, and to perform such acts as the Secured Parties may reasonably request to ensure the perfection and priority of the Adequate Protection Liens and the Cash Collateral Adequate Protection Liens, (d) the Debtors to incur all liabilities and obligations to the Secured Parties, including all Adequate Protection Obligations, as contemplated under this ~~Interim DIP~~<u>Final</u> Order, (e) subject to paragraph ~~13~~<u>12</u> of this ~~Interim DIP~~<u>Final</u> Order, the DIP Secured Parties and the Secured Parties to exercise, upon the occurrence of any DIP Termination Event

48

(as defined below), all rights and remedies provided for in this ~~Interim DIP~~Final Order, the DIP Documents, the ~~Prepetition~~ Secured Documents, or applicable law, and (f) the Debtors to perform under this ~~Interim DIP~~Final Order and the DIP Documents and take any and all other actions that may be reasonably necessary or required for the performance by the Debtors under this ~~Interim DIP~~Final Order and the DIP Documents and the implementation of the transactions contemplated hereunder and thereunder.

11. *Perfection of the DIP Liens, Adequate Protection Liens, and Cash Collateral Adequate Protection Liens.*

(a) ~~This~~The Interim DIP Order as reaffirmed by this Final Order was, and this Final Order shall be, sufficient and conclusive evidence of the attachment, validity, perfection, and priority of all liens and security interests granted therein and hereunder and/or under the DIP Documents, without the necessity of the execution, recordation, or filing of any pledge, collateral, or security agreements, mortgages, deeds of trust, control agreements, financing statements, notations of certificates of title for titled goods, or any other document or instrument, or the taking of any other action to take possession or control of any DIP Collateral, to attach, validate, perfect, or prioritize such liens and security interests, or to entitle the DIP Secured Parties and the Secured Parties to the priorities granted herein, including the relative priorities set forth in **Exhibit 1** (other than, to the extent applicable, any such filings required under applicable non-U.S. law to attach, validate, perfect, or prioritize such liens), it being understood that with respect to the RCF Adequate Protection Liens, other than as explicitly set forth in **Exhibit 1**, in no circumstances and at no time in these Chapter 11 Cases shall the RCF Adequate Protection Liens be senior or *pari passu* with the DIP Liens, regardless of whether such liens attach prior in time.

49

(b)      The DIP Facility Agent and the Secured Parties are each authorized, but not required, to (and if requested by the DIP Facility Agent and/or the Secured Parties, the Debtors shall) execute, file, and record financing statements, trademark filings, copyright filings, mortgages, notices of lien, or similar instruments in any jurisdiction in order to validate, perfect, preserve, and enforce the liens and security interests granted to them hereunder or under the DIP Documents (each, a "**Perfection Action**").   Whether or not the DIP Facility Agent (at the direction of the Required DIP Lenders) or the Secured Parties determine, in their sole discretion, to take any Perfection Action with respect to any liens or security interests granted hereunder, such liens and security interests shall nonetheless be deemed valid, perfected, allowed, enforceable, non-avoidable, and not subject to challenge, dispute, or subordination (except, with respect to subordination, to the extent expressly contemplated herein).

12.      *Cash Collateral and DIP Termination Events; Exercise of Remedies*.

(a)      <u>Cash Collateral and DIP Termination Events</u>.   Subject to any obligations under the Carve Out and any applicable grace period under the DIP Documents and this ~~Interim DIP~~<u>Final</u> Order and the Notice Period, the DIP Obligations shall accelerate and become immediately due and payable in full and the DIP Commitments shall terminate ~~and the Debtors' use of the up to $120,000,000 of Encumbered Cash in the Specified Encumbered Accounts as authorized pursuant to the Second Interim Adequate Protection Order and this Interim DIP Order shall terminate, in each case~~ without further notice or action by the Court upon the earliest to occur of any of the following (each a "**DIP Termination Event**"):   (a) the occurrence of an Event of Default (as defined in the DIP Credit Agreement), which Events of Default are explicitly incorporated ~~herein~~ by reference into this ~~Interim DIP~~<u>Final</u> Order; (b) the Debtors' failure to comply in any material respect with respect to any provision of this ~~Interim DIP~~<u>Final</u>

50

Order (a "~~Interim~~**Final DIP Order Breach**"); or (c) the ~~Debtors' failure to obtain, within thirty-five (35) days of entry of this Interim DIP Order (subject to the Court's availability), entry of the Final Order that is substantially in the form of the Interim DIP Order granting the relief~~ in the Interim DIP Order on a final basis, ~~(x) with only changes as are (1) necessary and appropriate to convert the Interim DIP Order into a final order or (2) otherwise satisfactory to the DIP Facility Agent and the Required DIP Lenders, and (y) with such other changes as reasonably requested by the DIP Facility Agent or the Required DIP Lenders; or (d) the~~ occurrence of the Maturity Date (as defined in the DIP Documents), in each case, unless waived in writing by the DIP Facility Agent (at the direction of the Required DIP Lenders), which waiver may be evidenced by electronic mail from counsel to the DIP Facility Agent or Required DIP Lenders.

(b)     *Exercise of Remedies.*  The Debtors shall immediately provide notice to counsel to the DIP Facility Agent, the other DIP Secured Parties, the Secured Notes Trustee, the Secured Noteholders, the RCF Agents, the RCF Lenders, and the Creditors' Committee, of the occurrence of any DIP Termination Event.  Upon the occurrence and during the continuation of a DIP Termination Event (regardless of whether the Debtors have given the notice described in the previous sentence) and following the giving of not less than seven (7) business days' advance written notice (which may be by electronic mail) (the "**Notice Period**") by the DIP Facility Agent, the Secured Notes Trustee, or the RCF Agents, as applicable (the "**Enforcement Notice**"), to counsel to the Debtors, the DIP Secured Parties, the Secured Notes Trustee, the RCF Agents, the U.S. Trustee, and counsel to the Creditors' Committee, (i) the DIP Facility Agent may exercise or enforce any rights and remedies against the DIP Collateral available to it under this ~~Interim DIP~~**Final** Order, the DIP Documents, and applicable non-bankruptcy law, and the DIP Secured Parties may exercise such rights available to them under the DIP Documents and

51

this ~~Interim DIP~~Final Order (subject to the relative rights and priorities set forth in **Exhibit 1**); (ii) the Secured Notes Parties may terminate the ability (if any) of the Debtors to use ~~the~~any Encumbered Cash ~~in any of the Specified Encumbered Accounts and~~and may exercise any rights and remedies to satisfy the Prepetition Secured Notes Obligations and Secured Notes Adequate Protection Obligations, subject to the DIP Obligations, the DIP Superpriority Claims, the Permitted Liens (if any), the Carve Out, and the relative rights and priorities set forth in **Exhibit 1** attached hereto; (iii) solely in the event of any ~~Interim~~Final DIP Order Breach that adversely impacts the rights or obligations of any of the RCF Secured Parties, the RCF Agents may terminate the ability (if any) of the Debtors to use any Cash Collateral of the RCF Secured Parties, and (iv) the commitment of each DIP Lender to make DIP Loans will be terminated to the extent any such commitment remains under the DIP Facility.  Notwithstanding the foregoing, the DIP Secured Parties and the Secured Notes Parties shall not exercise or enforce any rights or remedies against any Revolving Priority Collateral unless and until all Prepetition RCF Obligations and RCF Adequate Protection Obligations shall have received Payment in Full, and in each case, any such exercise of remedies shall be subject to the RCF Priority Collateral ICA and the Notes Priority Collateral ICA.  The automatic stay pursuant to section 362 of the Bankruptcy Code shall be automatically modified with respect to the DIP Secured Parties and the Secured Parties at the end of the Notice Period, without further notice to or order of the Court unless, (a) the DIP Facility Agent (acting at the direction of the Required DIP Lenders) and the Secured Notes Trustee (acting at the direction of the Required Noteholders), as applicable, elect otherwise in a written notice to the Debtors or (b) the Court orders otherwise or has determined that a DIP Termination Event has not occurred or is not occurring.  During the Notice Period, the Debtors may use the Unencumbered Funds, and solely to the extent the Unencumbered Funds are

exhausted, proceeds of the DIP Facility (to the extent drawn prior to the occurrence of a DIP Termination Event) ~~and, if all other cash other than proceeds of Revolving Priority Collateral (excluding proceeds of Spare Parts collateral sold or disposed of in the ordinary course of business and consistent with past practice) has been exhausted, the Encumbered Cash in the Specified Encumbered Accounts (solely to the extent authorized pursuant to the Second Interim Adequate Protection Order and this Interim DIP Order and solely to the extent the Replenishment of Encumbered Cash has not occurred (in which case, no such amounts may be used other than to fund the Carve Out Reserves to the extent provided herein)) and proceeds of Revolving Priority Collateral~~ solely to (i) fund payroll and other operating expenses that are critically necessary to keep the Debtors' business operating, (ii) fund the Carve Out Reserves and, to the extent not already funded in the Administrative Claim Carve Out Segregated Account(s), the Administrative Claim Carve Out, and (iii) seek an Emergency Hearing before the Court as set forth in paragraph 13(c) hereto~~.~~; *provided* that (x) Encumbered Cash may be used to fund the Carve Out Reserves and the Administrative Claim Carve Out to the extent provided in this Final Order, (y) proceeds of Revolving Priority Collateral may be used to fund the Carve Out Reserves (up to the RCF Professional Fee Carve Out Cap) to the extent provided in this Final Order, and (z) neither Revolving Priority Collateral nor proceeds thereof (excluding proceeds of Spare Parts up to the Spare Parts Cap sold or disposed of in the ordinary course of business and consistent with past practice) shall be used to fund the Administrative Claim Carve Out or payroll or operating expenses.

(c)   *Emergency Hearing*. Upon delivery of an Enforcement Notice, each of the DIP Secured Parties, the Secured Parties, the Debtors, and the Creditors' Committee, as applicable, consent to a hearing on an expedited basis (an "**Emergency Hearing**") to consider

(a) whether a DIP Termination Event has occurred and (b) any appropriate relief (including, without limitation, the Debtors' non-consensual use of any Cash Collateral); *provided* that if a request for such hearing is made prior to the end of the Notice Period, the Notice Period shall be continued until the Court hears and rules with respect thereto.  At the end of the Notice Period (the "**DIP Termination Date**"), unless the Court has entered an order to the contrary or otherwise fashioned an appropriate remedy, the Debtors' right to use Cash Collateral of the ~~Prepetition~~ Secured Notes Parties shall immediately cease, and the DIP Facility Agent, the DIP Lenders, and the Secured Parties shall have the rights set forth in the paragraph immediately above, without the necessity of seeking relief from the automatic stay.

(d)     No Waiver for Failure to Seek Relief.  The failure or delay of the DIP Facility Agent, any of the other DIP Secured Parties, or any of the Secured Parties to exercise their respective rights and remedies under this ~~Interim DIP~~Final Order, the DIP Documents, the Secured Documents, or applicable law, as the case may be, shall not constitute a waiver of their respective rights hereunder, thereunder, or otherwise.

13.     *Carve Out*.

(a)     Priority of Carve Out.  Each of the DIP Liens, the DIP Superpriority Claims, the Prepetition Liens, the Adequate Protection Liens, and the Adequate Protection Claims shall be subject and subordinate to payment of the Carve Out to the extent set forth in **Exhibit 1**.

(b)     Professional Fee Carve Out.  "**Professional Fee Carve Out**" means the sum of (i) all unpaid fees required to be paid to the Clerk of the Court and the Office of the United States Trustee under 28 U.S.C. § 1930(a) plus interest at the statutory rate pursuant to 31 U.S.C. § 3717, (ii) all unpaid reasonable fees and expenses up to $200,000 incurred by a

trustee appointed under section 726(b) of the Bankruptcy Code, (iii) to the extent allowed by the Court at any time, all accrued but unpaid fees and expenses (the "**Allowed Professional Fees**") incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "**Debtor Professionals**") and the Creditors' Committee pursuant to sections 328 and 1103 of the Bankruptcy Code (the "**Committee Professionals**") at any time on and before the date of delivery by the DIP Facility Agent (acting at the direction of the Required DIP Lenders) of a Carve Out Trigger Notice (as defined below) (the amounts set forth in the foregoing clauses (i), (ii), and (iii), the "**Pre-Carve Out Notice Amount**"), and (iv) Allowed Professional Fees of Professional Persons incurred after the date of delivery of the Carve Out Trigger Notice, in an aggregate amount not to exceed $18,000,000 (plus ~~subject to entry of the Final Order and if so providing,~~ any "success fee" or "transaction fee" <u>reasonably expected to be</u> payable to the Debtors' and/or Creditors' Committee's investment banker or financial advisor <u>in accordance with their respective engagement letters and pursuant to a final order of the Bankruptcy Court allowing such fees</u>) (the amount set forth in this clause (iv), the "**Post-Carve Out Notice Amount**"); *provided*, *however*, that nothing herein shall be construed to impair the ability of any party-in-interest to object to the allowance of the fees applied for by Professional Persons.

(c)    <u>Carve Out Trigger Notice</u>.  For purposes of this ~~Interim DIP~~<u>Final</u> Order, the "**Carve Out Trigger Notice**" shall mean a written notice (which may be via electronic mail) delivered by the DIP Facility Agent (acting at the direction of the Required DIP Lenders) to counsel to the Debtors, the U.S. Trustee, counsel to the Secured Notes Trustee, counsel to the RCF Agents, and counsel to the Creditors' Committee, which notice may only be delivered following the occurrence of a DIP Termination Event, stating that the Carve Out has been

triggered and the Post-Carve Out Notice Amount has been invoked. The Carve Out Trigger Notice may be included in the Enforcement Notice.

(d)     Carve Out Reserves. On the date on which a Carve Out Trigger Notice is delivered (the "**Carve Out Trigger Date**"), the Carve Out Trigger Notice shall constitute a demand to the Debtors to utilize the Unencumbered Funds and, solely to the extent the Unencumbered Funds are exhausted, _*first*, any other cash on hand as of such date and any available cash thereafter other than Encumbered Cash or any proceeds of Revolving Priority Collateral, ~~and,~~ *second*, only after such other cash is exhausted, the Encumbered Cash, and ~~any~~*third, only after the Encumbered Cash is exhausted, (x)* proceeds of Revolving Priority Collateral *up to the RCF Professional Fee Carve Out Cap and (y) proceeds of any other DIP Collateral (other than Revolving Priority Collateral) (provided, that the first $10,000,000 utilized pursuant to this third clause shall be funded equally from proceeds of (x) and (y)),* held by any Debtor to fund a reserve in an amount equal to the obligations accrued as of the Carve Out Trigger Date with respect to clauses (i) and (ii) of the definition of Professional Fee Carve Out, plus the Pre-Carve Out Notice Amount (the "**Additional Carve Out Obligations**") less any amount then held in the Pre-Carve Out Trigger Notice Reserve pursuant to this paragraph 13(d). The Debtors shall deposit and hold such amounts in a segregated account (the "**Carve Out Account**") in a manner reasonably acceptable to the DIP Facility Agent (acting at the direction of the Required DIP Lenders), the Secured Notes Trustee, and the RCF Agents in trust to pay such then unpaid Allowed Professional Fees and Additional Carve Out Obligations (the "**Pre-Carve Out Trigger Notice Reserve**") prior to the use of such reserve to pay any other claims. On the Carve Out Trigger Date, after funding the Pre-Carve Out Trigger Notice Reserve, the Debtors shall utilize Unencumbered Funds and, solely to the extent the Unencumbered Funds

56

are exhausted, *first*, any other cash on hand as of such date and any available cash thereafter other than Encumbered Cash or any proceeds of Revolving Priority Collateral and, *second*, only after such other cash is exhausted, the Encumbered Cash, and any*third, only after the Encumbered Cash is exhausted, (x)* proceeds of Revolving Priority Collateral *up to the RCF Professional Fee Carve Out Cap and (y) proceeds of any other remaining DIP Collateral (other than Revolving Priority Collateral) (provided, that the first $10,000,000 utilized pursuant to this third clause shall be funded equally from proceeds of (x) and (y)),* to fund a reserve in an amount equal to the Post-Carve Out Notice Amount (the "**Post-Carve Out Trigger Notice Reserve**") prior to the use of such reserve to pay any other claims. All funds in the Pre-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clauses (i) through (iii) of the definition of Professional Fee Carve Out set forth above in paragraph 13(b) (the "**Pre-Carve Out Amounts**"), until paid in full, and then, to the extent the Pre-Carve Out Trigger Notice Reserve has not been reduced to zero, subject to the terms of this Interim DIPFinal Order, to pay any other amounts (if owing) benefitted by the Professional Fee Carve Out. All funds in the Post-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clause (iv) of the definition of Professional Fee Carve Out set forth above (the "**Post-Carve Out Amounts**"), and then, to the extent the Post-Carve Out Trigger Notice Reserve has not been reduced to zero, subject to the terms of this Interim DIPFinal Order, to pay any other amounts (if owing) benefitted by the Professional Fee Carve Out. Notwithstanding anything to the contrary in this Interim DIPFinal Order, if either of the Carve Out Reserves is not funded in full in the amounts set forth in this paragraph 13, then any excess funds in one of the Carve Out Reserves following the payment of the Pre-Carve Out Amounts or Post-Carve Out Amounts, respectively, shall be used to fund the other Carve Out Reserve, up to the applicable amount set forth in this

paragraph 13.  Notwithstanding anything to the contrary in this ~~Interim DIP~~Final Order, the DIP

Documents, or the Secured Documents, following delivery of a Carve Out Trigger Notice, the

DIP Facility Agent and the Secured Parties shall not sweep or foreclose on cash (including cash

received as a result of the sale or other disposition of any assets) of the Debtors until the Carve

Out Account has been fully funded in an amount equal to the Carve Out Amount as set forth

herein.  The Carve Out Account shall not be subject to the control of any of the DIP Secured

Parties or the Secured Parties, and shall not be subject to the DIP Liens, the Adequate Protection

Liens, or the Cash Collateral Adequate Protection Liens, nor shall the Professional Fee Carve

Out constitute DIP Collateral or Prepetition Collateral; *provided*, *however*, that the DIP Secured

Parties and the Secured Parties shall have a security interest in and lien on any residual cash in

the Carve Out Account (in accordance with the priorities set forth in **Exhibit 1**), with any excess

cash paid to (i) the DIP Facility Agent for application to the DIP Obligations in accordance with

the DIP Documents until the DIP Obligations are paid in full, ~~and~~ (ii) to the Secured Notes

Trustee for application to the Secured Notes Adequate Protection Obligations and, then, to the

Prepetition Secured Notes Obligations, and (iii) the RCF Administrative Agent for application to

the Prepetition RCF Obligations and the RCF Adequate Protection Obligations, in each case to

be paid in proportion to the amount of cash in the Carve Out Account funded from DIP

Collateral (that is not Revolving Priority Collateral), Notes Priority Collateral, and Revolving

Priority Collateral respectively, and any excess remaining thereafter shall be applied in

accordance with this ~~Interim DIP~~Final Order.  For the avoidance of doubt, nothing herein shall

affect the priority of the Professional Fee Carve Out as set forth in **Exhibit 1**.

        (e)    Notwithstanding anything to the contrary in this ~~Interim DIP~~Final Order,

(i) disbursements by the Debtors from the Carve Out Account shall not constitute loans or

indebtedness under the DIP Documents or the Secured Documents or otherwise increase or reduce the DIP Obligations or the Prepetition Secured Obligations, (ii) the failure of the Carve Out Account to satisfy in full the Allowed Professional Fees shall not affect the priority of the Professional Fee Carve Out, and (iii) nothing contained herein shall constitute a cap or limitation on the amount that the Professional Persons may assert as administrative expense claims or otherwise against the Debtors on account of Allowed Professional Fees incurred by such Professional Persons.

(f)    <u>Payment of Professional Fee Carve Out on or After the Carve Out Trigger Date</u>.  Any payment or reimbursement made after the occurrence of the Carve Out Trigger Date in respect of any Allowed Professional Fees incurred after the occurrence of the Carve Out Trigger Date shall permanently reduce the Post-Carve Out Notice Amount on a dollar-for-dollar basis.

(g)    <u>No Direct Obligation to Pay Allowed Professional Fees</u>.  None of the DIP Secured Parties or Secured Parties shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with the Chapter 11 Cases or any Successor Cases under any chapter of the Bankruptcy Code, regardless of whether such fees or expenses have been allowed by the Court.  Nothing in this ~~Interim DIP~~Final Order or otherwise shall be construed to obligate the DIP Secured Parties or the Secured Parties, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

(h)    <u>Professional Fee Escrow</u>.  On a weekly basis, the Debtors shall transfer into the Pre-Carve Out Trigger Notice Reserve cash constituting Unencumbered Funds and, solely to the extent the Unencumbered Funds are exhausted, *first*, any other cash on hand as of

such date other than Encumbered Cash or any proceeds of Revolving Priority Collateral, and, *second*, only after such other cash is exhausted, the Encumbered Cash, and ~~any~~*third, only after the Encumbered Cash is exhausted, (x)* proceeds of Revolving Priority Collateral *up to the RCF Professional Fee Carve Out Cap and (y) proceeds of any other remaining DIP Collateral (other than Revolving Priority Collateral) (provided, that the first $10,000,000 utilized pursuant to this third clause shall be funded equally from proceeds of (x) and (y)),* in an amount equal to the amount of cash such that the Pre-Carve Out Trigger Notice Reserve shall contain the sum of (a) accrued, unpaid actual Allowed Professional Fees through the end of the prior week; plus (b) an amount equal to the estimated Allowed Professional Fees for the next unfunded week; *provided, however*, the Debtors shall give prior notice to counsel for the Ad Hoc Committee of Secured Noteholders and counsel to the Creditors' Committee before using any Encumbered ~~Funds~~ *Cash, and prior notice to counsel to the RCF Agents before using any proceeds of Revolving Priority Collateral (other than cash up to the Spare Parts Cap from the sale or disposition of Spare Parts that are Revolving Priority Collateral which sale or disposition is in the ordinary course of business and consistent with past practice),* to fund the Pre-Carve Out Trigger Notice Reserve. The Debtors shall use such funds held in the Pre-Carve Out Trigger Notice Reserve to pay Allowed Professional Fees as they become allowed and payable pursuant to interim or final orders from the Court. Funds transferred to the Pre-Carve Out Trigger Notice Reserve shall remain property of the Debtors unless and until they are paid to Professional Persons after Court approval of a fee application seeking approval thereof, and shall not be subject to any claim, lien, or security interest granted to any other party; *provided* that the DIP Secured Parties and the Secured Parties shall have a security interest in and lien on any residual cash in the Pre-Carve Out Trigger Notice Reserve after all Allowed Professional Fees are paid in accordance with

60

paragraph 13(b), with any excess cash paid to (i) the DIP Facility Agent for application to the DIP Obligations in accordance with the DIP Documents until the DIP Obligations are paid in full, ~~and~~ (ii) to the Secured Notes Trustee for application to the Secured Notes Adequate Protection Obligations and, then, to the Prepetition Secured Notes Obligations, and (iii) the RCF Administrative Agent for application to the Prepetition RCF Obligations and the RCF Adequate Protection Obligations, in each case to be paid in proportion to the amount of cash in the Carve Out Account funded from DIP Collateral (that is not Revolving Priority Collateral), Notes Priority Collateral, and Revolving Priority Collateral respectively, and any excess remaining thereafter shall be applied in accordance with this ~~Interim DIP~~Final Order.

(i)    Administrative Claim Carve Out.  "**Administrative Claim Carve Out**" means the amount deposited into the Utility Deposit Account, the PFC Account, payroll and related withholdings, and trust fund taxes accrued through termination of the DIP Facility (the "**Administrative Claim Carve Out Claims**"), which amount shall be (i) no greater than $150,000,000 at any time and  (ii) maintained by the Debtors at all times in a segregated account or accounts in an amount equal to the Debtors' good faith estimate of the amount of the Administrative Claim Carve Out Claims at such time, which accounts shall be used by the Debtors as the source for payment of the Administrative Claim Carve Out Claims (the "**Administrative Claim Carve Out Segregated Account(s)**").  The amounts constituting the Administrative Claim Carve Out that shall be maintained in the Administrative Claim Carve Out Segregated Account(s) shall not be used for any purpose other than satisfying the Administrative Claim Carve Out Claims until all such claims are paid in full.  The Administrative Claim Carve Out Segregated Account(s) shall not be subject to the control of any of the DIP Secured Parties or the Secured Parties, and the DIP Secured Parties shall not be permitted to sweep or foreclose

61

upon, or otherwise exercise or seek to exercise any remedies with respect to, the Administrative Claim Carve Out Segregated Account(s) until such time as any Administrative Claim Carve Out Claims are paid in full; *provided*, *however* and without limiting the foregoing or limiting in any way, the Debtors' rights to and interest in the Administrative Claim Carve Out, after payment or satisfaction or assumption by any third party of all Administrative Claim Carve Out Claims and any proceeds thereof shall constitute DIP Collateral.

14.     *Roll-Up DIP Loans and Contingent Roll-Up Term Loans*.

(a)     <u>Roll-Up DIP Loans</u>.  The Roll-Up DIP Loans shall bear interest on the outstanding principal amount thereof from the applicable borrowing date at a rate equal to 0.00% per annum; provided that if it is determined that the Prepetition Secured Notes Obligations are oversecured under section 506(b) of the Bankruptcy Code, the Roll-Up DIP Loans shall, in accordance with the terms and conditions set forth in the DIP Documents, instead bear interest on the outstanding principal amount thereof retroactively from the applicable borrowing date at a rate per annum equal to the interest rate applicable to the New Money DIP Loans.  Upon confirmation of a chapter 11 plan or consummation of a sale of the assets of the Debtors, all holders of Roll-Up DIP Loans (the "**Roll-Up DIP Lenders**") shall receive Payment in Full or such lesser consideration and treatment agreed to by the Required Roll-Up Lenders (such consideration and treatment, the "**Agreed Roll-Up Treatment**").  Notwithstanding sections 503, 507, and 1129 of the Bankruptcy Code, such Agreed Roll-Up Treatment shall be in full and final satisfaction and discharge of the Roll-Up Superpriority Claims.  For the avoidance of doubt, nothing in this paragraph shall constitute a determination or agreement that the Roll-Up DIP Loans must or will be classified in any chapter 11 plan separately from any other claims that are *pari passu* with the Roll-Up DIP Loans.

62

(b)    <u>Treatment of Contingent Roll-Up Term Loans</u>.  Until such time (if ever) as the Contingent Roll-Up Term Loans become Roll-Up DIP Loans, the Contingent Roll-Up Term Loans shall (i) have identical substantive rights (including, without limitation, with respect to guarantees, collateral, lien priority, and claim treatment) to those of, and recover on a *pro rata* and *pari passu* basis with, the Secured Notes; (ii) be deemed to be Secured Notes under the Secured Notes Documents for the sole purpose of (x) determining whether any Required Noteholder threshold (or any other threshold of Secured Noteholders) is met and (y) directing the Secured Notes Trustee; *provided*, that, for the avoidance of doubt, (A) the Secured Notes Trustee shall have no duties to holders of Contingent Roll-Up Term Loans other than acting on any direction provided by such Contingent Roll-Up Lenders (which shall be counted for purposes of determining Required Noteholders or other threshold of Secured Noteholders); (B) all rights and protections afforded to the Secured Notes Trustee under the Secured Notes Indenture relating to actions taken at Required Noteholders (or other threshold of Secured Noteholders) direction shall apply with respect to any directions provided by the holders of Contingent Roll-Up Term Loans as set forth herein; and (C) the Secured Notes Trustee shall be entitled to rely conclusively on confirmation from the Debtors regarding the amount of Contingent Roll-Up Term Loans held by each holder thereof in taking any actions pursuant to this clause (ii); (iii) be classified together with the Secured Notes in any plan pursuant to chapter 11 of the Bankruptcy Code and receive the same voting rights and distributions as the Secured Notes under any plan pursuant to chapter 11 of the Bankruptcy Code; and (iv) not constitute post-petition obligations and shall not be entitled to any DIP Liens or DIP Superiority Claims on account of such Contingent Roll-Up Term Loans.  Upon the deemed borrowing by the Borrower of the Roll-Up DIP Loans, an equivalent aggregate amount of Contingent Roll-Up Term Loans shall be deemed cancelled

63

based upon such DIP Lender's Roll-Up DIP Loan Allocation and shall not entitle the Borrower

to receive any cash or other consideration from any DIP Lender and, notwithstanding that no

such cash is exchanged, the Borrower shall owe the aggregate principal amount of the Roll-Up

DIP Loans to the DIP Lenders under the DIP Credit Agreement and not under the Secured Notes

Indenture.

15.    *Effect of Stipulations on Third Parties.*

(a)    The Debtors' Stipulations shall be binding upon the Debtors and any

successors thereto effective upon entry of the First Interim Adequate Protection Order.    The

Debtors' Stipulations shall be binding upon all parties-in-interest, including, without limitation,

the Creditors' Committee, any other statutory or non-statutory committees appointed or formed

in the Chapter 11 Cases, and any other person or entity seeking to act on behalf of the Debtors'

estates (collectively, "**Successor Entities**"),[8] unless the Creditors' Committee or such other

party-in-interest (i) files a motion seeking the requisite standing and authority to bring the

Challenge (if and to the extent standing is required under applicable law) prior to the Challenge

Deadline, which motion shall describe the specific nature and basis of the Challenge and attach a

draft complaint (the "**Standing Motion**"), and such standing is obtained pursuant to an order of

the Court, (ii) timely and properly commences and serves an adversary proceeding or contested

matter (subject to the limitations contained herein) (each, a "**Challenge Proceeding**") by no later

than the Challenge Deadline, asserting a Challenge with respect to the amount, validity,

perfection, enforceability, priority, scope, or extent of the Prepetition Secured Obligations, the

Prepetition Liens, the Prepetition Collateral, or the Secured Documents, or otherwise

---

[8] For purposes of this paragraph, any chapter 7 or chapter 11 trustee for any of the Debtors in the Chapter 11 Cases or any Successor Case will have standing to the extent provided for in the Bankruptcy Code, Bankruptcy Rules, or any other relevant statute or order.

Challenging any of the Debtors' Stipulations, and (iii) obtains a final non-appealable order by a court of competent jurisdiction sustaining any such Challenge.

(b)    If no such Standing Motion (to the extent required) or Challenge Proceeding is timely and properly filed by the Challenge Deadline, or if the Court rules against or does not rule in favor of plaintiff in any such timely and properly filed Challenge Proceeding (or if such Standing Motion or Challenge Proceeding is withdrawn), then, without application to or further order of the Court, (i) each of the Debtors' Stipulations shall be binding on all parties-in-interest, including, without limitation, the Creditors' Committee, any other statutory or non-statutory committees appointed or formed in the Chapter 11 Cases, and any other party-in-interest (including, without limitation, any Successor Entities), (ii) the Prepetition Secured Obligations shall constitute allowed claims against each of the applicable Debtors in the Chapter 11 Cases and any Successor Cases, (iii) the Prepetition Liens shall forever be deemed to be legal, valid, binding, continuing, perfected, and enforceable, as of the Petition Date, against each of the applicable Debtors in the Chapter 11 Cases and any Successor Cases with the priorities set forth in this ~~Interim DIP~~Final Order, (iv) the Prepetition Secured Obligations and the Prepetition Liens shall not be subject to any other or further Challenge by any person or entity, and all parties in interest shall be forever enjoined and barred from seeking to exercise the rights of the Debtors' estates or taking any such action (including any Successor Entity, whether such Successor Entity is appointed or elected prior to or following the expiration of the Challenge Period), and (v) any and all Challenges of the Prepetition Secured Obligations and the Prepetition Liens, of any kind or nature whatsoever, whether under the Bankruptcy Code, under applicable non-bankruptcy law, or otherwise, against any of the Secured Parties shall be deemed forever waived, released, and barred.

65

(c)      If any such Standing Motion (to the extent required) and Challenge Proceeding is timely filed by the Challenge Deadline, the Debtors' Stipulations shall nonetheless remain binding and preclusive on the Creditors' Committee, any non-statutory committees appointed or formed in the Chapter 11 Cases, and all other parties-in-interest (including, without limitation, any Successor Entities), except to the extent that any of the admissions, stipulations, findings, or releases contained in the Debtors' Stipulations were expressly challenged in such Challenge Proceeding (and solely as to the plaintiff party that timely filed such Challenge Proceeding and not, for the avoidance of doubt, any other party-in-interest).  The filing of the Standing Motion by the Creditors' Committee prior to the expiration of the Challenge Deadline shall automatically toll the Challenge Deadline for the Creditors' Committee solely in respect of such claims contained in the draft complaint attached to such Standing Motion until the date that is one (1) business day after the entry of an order of the Court ruling on such Standing Motion (or such later date as agreed in writing by (i) the DIP Facility Agent (acting at the direction of the Required DIP Lenders) and (ii) the Secured Notes Trustee (acting at the direction of the Required Noteholders), and/or the RCF Agents (acting at the direction of the requisite RCF Lenders), as applicable).

(d)      Nothing in this ~~Interim DIP~~Final Order vests or confers on any person or entity, including the Creditors' Committee or any other statutory or non-statutory committee appointed or formed in the Chapter 11 Cases, or any other party-in-interest standing or authority to pursue any claims or Challenge belonging to the Debtors or their estates, and all rights to object to any request for such standing are expressly reserved.

(e)      Notwithstanding the Creditors' Committee's agreement that $550,000,000 in principal amount (plus interest, if any) of Roll-Up DIP Loans and the DIP Liens granted with

66

respect thereto are not subject to any Challenge, nothing in this Final Order impairs the right of the Creditors' Committee to seek to Challenge and for the Court to grant appropriate relief with respect to (i) any Roll-Up DIP Obligations in excess of the principal amount of $550,000,000 (plus interest, if any) or (ii) the extent of the Prepetition Secured Notes Liens securing the Prepetition Secured Notes Obligations after accounting for the Roll-Up DIP Loans, it being understood that (x) any such successful Challenge shall in no way modify, impair, affect, or limit the validity, priority, extent, or enforceability of, or give rise to any Challenge whatsoever in respect of, the $400,000,000 Interim Roll-Up or $150,000,000 of the Final Roll-Up and, in each case, the DIP Liens granted with respect thereto, (y) any Avoidance Proceeds arising from a Challenge to any Secured Notes, Prepetition Secured Notes Liens, and/or Prepetition Secured Notes Obligations shall be DIP Collateral subject to the DIP Liens securing both the New Money DIP Loans and Roll-Up DIP Loans and available to satisfy all DIP Obligations in respect thereof, and (z) in the event of any sale or other disposition of the Headquarters or any other DIP Collateral that is not Revolving Priority Collateral (including any DIP Collateral that also is Prepetition Secured Notes Collateral), the proceeds from such sale or other disposition shall be used to repay any DIP Obligations in respect of both the New Money DIP Loans and the Roll-Up DIP Loans, in each case, in accordance with the terms of the DIP Documents.

16.      *Limitations on Use of DIP Facility, DIP Collateral, Cash Collateral, and Carve Out*.  Except as may be used by the Creditors' Committee in accordance with this paragraph 16, none of (v) the DIP Facility, (w) the DIP Collateral or the proceeds thereof, (x) the Prepetition Collateral or the proceeds thereof, (y) the Owned Aircraft Surplus, or (z) the Carve Out may be used: (a) to investigate (except as expressly provided herein), initiate, prosecute, join, or finance the initiation or prosecution of any claim, counterclaim, action, suit, arbitration, proceeding,

application, motion, objection, defense, or other litigation of any type (i) against any of the DIP Facility Agent, the other DIP Secured Parties, or the Secured Parties (in each case, in their capacities as such) or seeking relief that would impair the rights or remedies of the DIP Facility Agent, the other DIP Secured Parties, or the Secured Parties (in each case, in their capacities as such) under the DIP Documents, the First Interim Adequate Protection Order, the Second Interim Adequate Protection Order, ~~this~~the Interim DIP Order, this Final Order, the Secured Notes Indenture, or the RCF Loan Documents, including, without limitation, for the payment of any services rendered by the professionals retained by the Debtors or the Creditors' Committee in connection with the assertion of or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defense, or other contested matter, the purpose of which is to seek, or the result of which would be to obtain, any order, judgment, determination, declaration, or similar relief that would impair the ability of any of the DIP Facility Agent, the other DIP Secured Parties, or the Secured Parties to recover on the DIP Collateral or the Prepetition Collateral or seeking affirmative relief against any of the DIP Facility Agent, the other DIP Secured Parties, or the Secured Parties related to the DIP Obligations or any of the Prepetition Secured Obligations or otherwise, (ii) seeking to invalidate, set aside, avoid, or subordinate, in whole or in part, the DIP Obligations, the DIP Superpriority Claims, or the DIP Facility Agent's and the other DIP Secured Parties' liens or security interests in the DIP Collateral or the Prepetition Collateral, or the Prepetition Secured Obligations, the Adequate Protection Claims, or the Secured Parties' liens or security interests in the Prepetition Collateral or the DIP Collateral, or (iii) for monetary, injunctive, or other affirmative relief against the DIP Facility Agent, the other DIP Secured Parties, or the Secured Parties (in each case, in their capacities as such), or their respective liens on or security interests in the DIP Collateral or the Prepetition

68

Collateral or the DIP Superpriority Claims, that would impair the ability of the DIP Facility

Agent, the other DIP Secured Parties, or the Secured Parties to assert or enforce any lien, claim,

right, or security interest or to realize or recover on the DIP Obligations, the Prepetition Secured

Obligations, or the Adequate Protection Claims; (b) for objecting to or challenging in any way

the legality, validity, priority, perfection, or enforceability of the claims, liens, or interests

(including the Prepetition Liens) held by or on behalf of any of the Secured Parties related to any

of the Prepetition Secured Obligations, or by or on behalf of the DIP Facility Agent and the other

DIP Secured Parties related to the DIP Obligations; (c) for asserting, commencing, or

prosecuting any claims or causes of action whatsoever, including, without limitation, any

Avoidance Actions related to the DIP Liens, the DIP Superpriority Claims, the DIP Obligations,

the Prepetition Liens or the Prepetition Secured Obligations; or (d) for prosecuting an objection

to, contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection,

priority, or enforceability of:  (x) any of the DIP Liens, the DIP Superpriority Claims, or any

other rights or interests of the DIP Facility Agent or the other DIP Secured Parties related to the

DIP Obligations or the DIP Liens, or (y) any of the Prepetition Liens, Adequate Protection Liens,

Cash Collateral Adequate Protection Liens, Adequate Protection Claims, Prepetition Secured

Obligations, or any other rights or interests of any of the Secured Parties; *provided* that no more

than $200,000.00 (the "**Challenge Budget**") of the Owned Aircraft Surplus, any other DIP

Collateral, the Prepetition Collateral (including Cash Collateral of the Secured Parties), or the

DIP Facility, in the aggregate, may be used by (i) any chapter 11 trustee or chapter 7 trustee or

similar responsible person appointed for the estate of any Debtor in the Chapter 11 Cases or any

Successor Cases or (ii) the Creditors' Committee, solely to investigate (but not to prosecute) the

foregoing matters with respect to the Prepetition Liens or the Prepetition Secured Obligations

(but not claims and/or liens of the DIP Facility Agent and the other DIP Secured Parties) within the Challenge Deadline.

17.    *Limitation on Charging Expenses Against Collateral; Waivers.*

(a)    <u>Limitations on Charging Expenses Against Collateral</u>.    Upon entry of ~~the~~<u>this</u> Final Order, except to the extent of the Carve Out, no costs or expenses of administration of the Chapter 11 Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the DIP Collateral, the Prepetition Collateral (including, without limitation, the Encumbered Cash in any of the Encumbered Accounts), the DIP Facility Agent, the other DIP Secured Parties, or the Secured Parties pursuant to sections 506(c) or 105(a) of the Bankruptcy Code, or any similar principle of law or equity, without the prior written consent of the DIP Facility Agent, the other DIP Secured Parties, and the Secured Parties, as applicable, and no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Facility Agent, the other DIP Secured Parties, or the Secured Parties.

(b)    <u>No Marshaling</u>.    Upon entry of ~~the~~<u>this</u> Final Order, the DIP Facility Agent, Secured Notes Trustee, and the RCF Agents shall be entitled to apply the payments or proceeds of the DIP Collateral, the Prepetition Secured Notes Collateral, and the Revolving Priority Collateral, as applicable, in accordance with the provisions of ~~the~~<u>this</u> Final Order, the DIP Documents, the Secured Notes Documents, and the RCF Loan Documents, as applicable, and in no event shall the DIP Facility Agent, the other DIP Secured Parties, or any of the Secured Parties be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or Prepetition Collateral (including, without limitation, the Encumbered Cash in any of the Encumbered Accounts).  <u>Notwithstanding the foregoing, in</u>

applying payments or proceeds of the DIP Collateral, the DIP Facility Agent shall first seek satisfaction of the DIP Obligations from DIP Collateral other than (i) Avoidance Proceeds (except to the extent such Avoidance Proceeds arise from Challenges to any Secured Notes, Prepetition Secured Notes Liens, and/or Prepetition Secured Notes Obligations (the "**Excluded Avoidance Proceeds**"), which Excluded Avoidance Proceeds (x) shall be DIP Collateral subject to the DIP Liens securing both the New Money DIP Loans and the Roll-Up DIP Loans and available to satisfy all DIP Obligations in respect thereof and (y) shall not be subject to any marshaling) and (ii) the proceeds of commercial tort claims; *provided*, *however*, and notwithstanding anything to the contrary in this Final Order, Avoidance Proceeds, other than Excluded Avoidance Proceeds, shall not be used to satisfy any Roll-Up DIP Obligations.

(c)    *Equities of the Case*.  Upon entry of ~~the~~this Final Order, the Secured Parties shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and no party shall invoke the "equities of the case" exception under section 552(b) of the Bankruptcy Code, in each case with respect to the proceeds, products, offspring, or profits of any of the Prepetition Collateral, including, without limitation, any Encumbered Cash held in the Encumbered Accounts.

18.    *Section 507(b) Reservation*.  Nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Secured Parties is insufficient to compensate for any Diminution in Value of their interests in the Prepetition Collateral during the Chapter 11 Cases.  Nothing contained herein shall be deemed a finding by the Court, or an acknowledgment by any of the Secured Parties, that the adequate protection granted herein does in fact adequately protect any of the Secured Parties against any Diminution in Value of their respective interests in the Prepetition

Collateral; *provided*, *however*, that any such additional section 507(b) claims shall be subject to the same relative priority as such party's Adequate Protection Claims, as provided in this ~~Interim DIP~~Final Order.

19.    *Binding Effect; Successors and Assigns*.    Immediately upon entry of ~~this~~the Interim DIP Order~~,~~ and ~~during the period until the Final Hearing and entry of the~~as reaffirmed by this Final Order, subject to paragraph 15 hereof, all findings of fact and conclusions of law herein shall be binding upon all parties-in-interest in the Chapter 11 Cases and any Successor Cases, including, without limitation, the Debtors, the Creditors' Committee, or any other statutory or non-statutory committee appointed or formed in the Chapter 11 Cases and any Successor Cases, and their respective successors and assigns (including any chapter 11 trustee or chapter 7 trustee or examiner appointed or elected in the Chapter 11 Cases or any Successor Cases, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors), and shall inure to the benefit of each of the Debtors, the DIP Secured Parties, and the Secured Parties, and their respective successors and assigns; *provided*, *however*, that, for the avoidance of doubt, the DIP Secured Parties and the Secured Parties shall have no obligation to make any loan, permit the use of DIP Collateral or Prepetition Collateral (including Cash Collateral), or extend any financing to any chapter 11 trustee, chapter 7 trustee, or similar responsible person appointed for the estate of any Debtor in the Chapter 11 Cases or any Successor Cases.

20.    *Debtors', DIP Facility Agent's, Fronting Lenders', Other DIP Secured Parties',*
*and Secured Parties' Protections*.

(a)    *Reservation of Rights of the DIP Facility Agent, the Fronting Lender,*
*Other DIP Secured Parties, and the Secured Parties*.  Except as otherwise expressly set forth in
this ~~Interim DIP~~Final Order (including the relative priorities set forth in **Exhibit 1**), the entry of
this ~~Interim DIP~~Final Order is without prejudice to, and does not constitute a waiver of,
expressly or implicitly, or otherwise impair: (a) any of the rights of any of the Secured Parties to
seek any other or supplemental relief in respect of the Debtors, including the right to seek
additional adequate protection; (b) any of the rights of the DIP Facility Agent, the Fronting
Lender, the other DIP Secured Parties, or the Secured Parties under the Bankruptcy Code or
under non-bankruptcy law, including, without limitation, the right of the DIP Facility Agent (at
the direction of the Required DIP Lenders), the other DIP Secured Parties, or the Secured Parties
to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code,
(ii) request dismissal of any of the Chapter 11 Cases, conversion of any of the Chapter 11 Cases
to cases under chapter 7, or appointment of a chapter 11 trustee or examiner with expanded
powers in any of the Chapter 11 Cases, or (iii) seek to propose, subject to the provisions of
section 1121 of the Bankruptcy Code, a chapter 11 plan or plans; or (c) any other rights, claims,
or privileges (whether legal, equitable, or otherwise) of any of the DIP Facility Agent, the
Fronting Lender, the other DIP Secured Parties, or any Secured Parties.  Notwithstanding
anything in this ~~Interim DIP~~Final Order to the contrary, (i) this ~~Interim DIP~~Final Order does not
constitute an agreement for purposes of section 1110 of the Bankruptcy Code and (ii) the
Debtors', the RCF Secured Parties', and the Secured Notes Parties' respective rights under
section 1110 of the Bankruptcy Code~~, including, without limitation, with respect to the priority~~

73

of the Carve Out, are preserved are preserved; *provided*, that the Debtors shall not revise the terms of the Carve Out with respect to the Revolving Priority Collateral absent consent of the RCF Agents (acting at the direction of the requisite RCF Lenders).

(b)     *No Waiver for Failure to Seek Relief.*  The failure or delay of the DIP Facility Agent, the Fronting Lender, any of the other DIP Secured Parties, and/or any of the Secured Parties to exercise their respective rights and remedies under this Interim DIPFinal Order, the DIP Documents, the Secured Documents, or applicable law, as the case may be, shall not constitute a waiver of their respective rights hereunder, thereunder, or otherwise.

(c)     *Release.*   Subject toUpon entry of thethis Final Order, and subject to paragraph 15 solely regarding Challenges in respect of the Secured Parties, the Prepetition Liens and the Prepetition Secured Obligations, each of the Debtors and the Debtors' estates, on its own behalf and on behalf of each of their predecessors, successors, and assigns hereby to the maximum extent permitted by applicable law, unconditionally, irrevocably, and fully forever release, remise, acquit, relinquish, irrevocably waive, and discharge each of the DIP Facility Agent, the Fronting Lender, the other DIP Secured Parties, the Secured Parties (in each case, in their capacities as such), and each of their respective former, current, or future officers, employees, directors, agents, representatives, owners, members, partners, affiliated investment funds, or investment vehicles, managed, advised, or sub-advised accounts, funds, or other entities, investment advisors, sub-advisors or managers, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, and predecessors in interest, each in their capacity as such (collectively, the "**Released Parties**"), of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness, and obligations, rights, assertions, allegations, actions, suits, controversies,

74

proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending, or threatened including, without limitation, all legal and equitable theories of recovery, arising under common law, statute, or regulation, or by contract, of every nature and description that exist on the date hereof including, without limitation, (i) any so-called "lender liability" or equitable subordination claims or defenses, (ii) any and all claims and causes of action arising under the Bankruptcy Code, (iii) any and all claims and causes of action regarding the validity, priority, extent, enforceability, perfection, or avoidability of the liens or claims of the DIP Facility Agent, the Fronting Lender, and the other DIP Secured Parties, and (iv) any and all claims and causes of action regarding the validity, priority, extent, enforceability, perfection, or avoidability of the liens or claims of the Secured Parties; *provided* that (x) the release set forth in the foregoing clause (iii) in respect of the Interim New Money DIP Loans, Interim Roll-Up DIP Loans, the DIP Liens in respect of the Interim New Money DIP Loans and the Interim Roll-Up DIP Loans, and any other DIP Obligations approved by ~~this~~the Interim DIP Order ~~shall be~~were effective upon entry of ~~this~~the Interim DIP Order and are reaffirmed by this Final Order and (y) the release set forth in this paragraph shall not release any claims or liabilities against a Released Party that a court of competent jurisdiction pursuant to a final, non-appealable order determines primarily result from the bad faith, fraud, gross negligence, or willful misconduct of such Released Party.  For the avoidance of doubt, nothing in this paragraph shall relieve the DIP Facility Agent, the Fronting Lender, the other DIP Secured Parties, the Secured Parties, or the Debtors of their obligations hereunder or under the DIP Documents.

(d)    *Limitation of Liability*.  In determining to make any loan under the DIP Documents, permitting the use of any Cash Collateral authorized to be used pursuant to the Second Interim Adequate Protection Order ~~and this~~, the Interim DIP Order, and this Final Order, or exercising any rights or remedies as and when permitted pursuant to this ~~Interim DIP~~Final Order, the DIP Documents, or the Secured Documents, the DIP Facility Agent, the Fronting Lender, the other DIP Secured Parties, and the Secured Parties (in each case, solely in their capacities as such) shall not be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors or their respective business (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601 *et seq.* as amended, or any similar federal or state statute), nor shall they owe any fiduciary duty to any of the Debtors or their creditors or estates, or constitute or be deemed to constitute a joint venture or partnership with any of the Debtors.  Furthermore, nothing in this ~~Interim DIP~~Final Order, the DIP Documents, the Secured Notes Documents, or the RCF Loan Documents shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Facility Agent, the Fronting Lender, the other DIP Secured Parties, or any Secured Parties (solely in their capacities as such) of any liability for any claims arising from the prepetition or post-petition activities of any of the Debtors or their direct or indirect subsidiaries.

(e)    *Insurance.*  The Debtors shall maintain at all times casualty and loss insurance coverage for the Prepetition Collateral and the DIP Collateral on substantially the same basis as maintained prior to the Petition Date.  Upon entry of ~~this~~the Interim DIP Order and as reaffirmed by this Final Order, the DIP Facility Agent and the RCF Agents shall be deemed to

76

be, without any further action or notice, named as an additional insured and lender's loss payee on each insurance policy maintained by the Debtors which in any way relates to the DIP Collateral.

21.     *Preservation of Rights Granted Under ~~This Interim DIP~~this Final Order*.

(a)     Subject to the Carve Out and to the extent provided in this ~~Interim DIP~~Final Order and the priorities set forth in **Exhibit 1** and the Permitted Liens (if any), other than as set forth in this ~~Interim DIP~~Final Order, (i) the DIP Liens shall not be made subject to or, absent further of order the Court in connection with any financing under section 364 of the Bankruptcy Code that is intended to repay or refinance, in whole or in part, the DIP Obligations (any such financing, an "**Alternative DIP Financing**") which provides for the repayment or refinancing, in whole or in part, of the DIP Obligations in accordance with the DIP Credit Agreement (with respect to which the DIP Secured Parties and the Secured Parties reserve all rights), *pari passu* with any lien or security interest granted in any of the Chapter 11 Cases arising after the Petition Date, and the DIP Liens shall not be subject to or junior to or *pari passu* with any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code and (ii) no claim for any administrative expense, secured claim, or unsecured claim against any of the Debtors with priority superior to or, absent further order of the Court in connection with any Alternative DIP Financing which provides for the repayment or refinancing, in whole or in part, of the DIP Obligations in accordance with the DIP Credit Agreement (with respect to which the DIP Secured Parties and the Secured Parties reserve all rights) equal to the DIP Superpriority Claims shall be granted.

(b)     Subject to the Carve Out, the DIP Liens and the Permitted Liens (if any) each to the extent provided in this ~~Interim DIP~~Final Order, and the priorities set forth in **Exhibit**

**1**, (i) absent further order of the Court in connection with Alternative DIP Financing which provides for the repayment or refinancing, in whole or in part, of the DIP Obligations in accordance with the DIP Credit Agreement (with respect to which the DIP Secured Parties and the Secured Parties reserve all rights), none of the Adequate Protection Liens, the Cash Collateral Adequate Protection Liens, the Prepetition Secured Notes Liens, or the Prepetition RCF Liens shall be made subject to and/or *pari passu* with any lien or security interest granted in any of the Chapter 11 Cases arising after the Petition Date, (ii) the Adequate Protection Liens and the Cash Collateral Adequate Protection Liens, shall not be subject to, junior to, or *pari passu* with any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code, and (iii) absent further order of the Court (with respect to which the Secured Parties reserve all rights), no claim for any administrative expense, secured claim, or unsecured claim against any of the Debtors with priority superior or equal to the Adequate Protection Claims, the Prepetition Secured Notes Obligations, or the Prepetition RCF Obligations shall be granted.

(c)     In the event this ~~Interim DIP~~Final Order or any provision hereof is vacated, reversed, or modified on appeal or otherwise, any liens or claims granted to the DIP Secured Parties or the Secured Parties hereunder arising prior to the effective date of any such vacatur, reversal, or modification of this ~~Interim DIP~~Final Order shall be governed in all respects by the original provisions of this ~~Interim DIP~~Final Order, including entitlement to all rights, remedies, privileges, and benefits granted herein, and the DIP Secured Parties and the Secured Parties shall be entitled to the protections afforded in section 363(m) of the Bankruptcy Code with respect to all uses of the DIP Collateral, the DIP Obligations, the Prepetition Collateral, and all Adequate Protection Obligations, as applicable.

78

(d)    Subject to the Carve Out to the extent provided in this ~~Interim DIP~~Final

Order, and, unless and until all DIP Obligations, Prepetition Secured Notes Obligations,

Prepetition RCF Obligations, and Adequate Protection Obligations are indefeasibly paid in full,

in cash or in kind, as applicable, and all commitments to extend credit under the DIP Facility are

terminated, the Debtors irrevocably waive the right to seek and shall not seek or consent to,

directly or indirectly: (i) except as permitted under the DIP Documents and with the prior written

consent of Required DIP Lenders and, to the extent that the rights or obligations of any of the

Secured Notes Parties or the RCF Secured Parties are adversely impacted, the Secured Notes

Trustee (acting at the direction of the Required Noteholders) and the RCF Agents (acting at the

direction of the requisite RCF Lenders), as applicable, any modification, stay, vacatur, or

amendment of this ~~Interim DIP~~Final Order; (ii) the use of Cash Collateral of the Secured Parties

for any purpose other than as permitted in the DIP Documents and this ~~Interim DIP~~Final Order;

(iv) an order converting or dismissing any of the Chapter 11 Cases; (v) an order appointing a

chapter 11 trustee in any of the Chapter 11 Cases; or (vi) an order appointing an examiner with

enlarged powers in any of the Chapter 11 Cases; *provided*, that nothing in the foregoing shall

require the Debtors to take any action, or to refrain from taking any action, to the extent that the

Debtors determine that taking such action or refraining from taking such action is required in the

exercise of the Debtors' fiduciary duties.

(e)    Notwithstanding any order dismissing any of the Chapter 11 Cases under

section 1112 of the Bankruptcy Code or otherwise entered at any time, (x) the DIP Liens, the DIP

Superpriority Claims, the Adequate Protection Liens, the Cash Collateral Adequate Protection

Liens, the Adequate Protection Claims, all Adequate Protection Obligations, and any other

administrative claims granted pursuant to ~~this~~the Interim DIP Order and this Final Order shall

continue in full force and effect and shall maintain their priorities as provided in this ~~Interim DIP~~Final Order and the DIP Documents until all DIP Obligations and Adequate Protection Obligations are indefeasibly paid in full, in cash, or in kind, as applicable, and such DIP Liens, DIP Superpriority Claims, Adequate Protection Liens, Cash Collateral Adequate Protection Liens, Adequate Protection Claims, Adequate Protection Obligations, and the other administrative claims granted pursuant to ~~this~~the Interim DIP Order and this Final Order shall, notwithstanding such dismissal, remain binding on all parties in interest; and (y) the Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens, obligations, and security interests referred to in clause (x) above.

(f)    Except as expressly provided in this ~~Interim DIP~~Final Order and the DIP Documents, the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens, the Cash Collateral Adequate Protection Liens, the Adequate Protection Claims, Adequate Protection Obligations, and all other rights and remedies of the DIP Facility Agent, the Fronting Lender, the other DIP Secured Parties, the Secured Notes Trustee, the Secured Notes Collateral Agent, the Secured Notes Depositary, the Secured Notes Parties, and/or the RCF Secured Parties granted by the provisions of this ~~Interim DIP~~Final Order and the DIP Documents shall survive, shall maintain their priority as provided in this ~~Interim DIP~~Final Order, and shall not be modified, impaired or discharged by (i) the entry of an order converting any of the Chapter 11 Cases to a case under chapter 7, dismissing any of the Chapter 11 Cases, terminating the joint administration of these Chapter 11 Cases, or by any other act or omission, (ii) the entry of an order approving the sale of any DIP Collateral or Prepetition Collateral pursuant to section 363(b) of the Bankruptcy Code, or (iii) the entry of an order confirming a plan of reorganization in any of the Chapter 11 Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the

80

Debtors have waived any discharge as to any remaining DIP Obligations or Adequate Protection Obligations. The terms and provisions of this ~~Interim DIP~~Final Order and the DIP Documents shall continue in these Chapter 11 Cases, and in any Successor Cases (including if these Chapter 11 Cases cease to be jointly administered or in any superseding chapter 7 cases under the Bankruptcy Code).

(g)    Nothing in this ~~Interim DIP~~Final Order shall modify, prime, limit, alter, or expand any terms of any surety bonds, any related indemnity agreements, and/or any rights of the Debtors' sureties in any of their collateral.

(h)    Notwithstanding anything to the contrary contained in this ~~Interim DIP~~Final Order, nothing herein shall impair, limit, restrict, or otherwise affect the rights and other agreements of the RCF Secured Parties and the Secured Notes Parties, as applicable, in the Secured Documents and the Intercreditor Agreements with respect to any debtor-in-possession financing or otherwise.

(i)    The Debtors are authorized to use ~~(i)~~ Unencumbered Funds ~~or, (ii) prior to the Replenishment of Encumbered Cash, up to $120,000,000 of Encumbered Cash in the Specified Encumbered Accounts authorized by the Second Interim Adequate Protection Order and this Interim DIP Order~~ to make post-petition purchases of fuel from fuel-related vendors, including airline fuel consortiums (associations which manage fuel procurement, storage, and distribution at major airports), suppliers of fuel (*e.g.*, jet gasoline, diesel, lubricants), and suppliers providing other fuel-related services (collectively, the "**Fuel Vendors**") on reasonable business terms and conditions (including pursuant to any existing agreements between the Debtors and a Fuel Vendor, which may include pre-payments). In addition, the Debtors agree that the Fuel Vendors may apply pre-payments paid to the Fuel Vendors pre-Petition Date to the

post-petition purchases of fuel from the Fuel Vendors.  Nothing in this ~~Interim DIP~~Final Order shall alter, impair, condition, limit, release, or otherwise prejudice or diminish any setoff, recoupment, or similar rights under the Bankruptcy Code or other applicable law held by any Fuel Vendors against the Debtors, the Debtors' estates, or any collateral or credit assurance provided to any Fuel Vendor by or on behalf of the Debtors.  All such rights are hereby preserved.

(j)    Nothing in this ~~Interim DIP~~Final Order shall prime or otherwise modify any valid and enforceable statutory lien held by Broward County, the Broward County Tax Collector, Bexar County, Lone Star College System, Tarrant County, City of Houston, Grapevine-Colleyville ISD, and City of Grapevine.  All parties' rights to object to the priority, validity, and extent of the liens asserted by Broward County, the Broward County Tax Collector, Bexar County, Lone Star College System, Tarrant County, City of Houston, Grapevine-Colleyville ISD, and City of Grapevine are fully preserved.

(k)    Nothing in this ~~Interim DIP~~Final Order shall (a) create a lien or other security interest in U.S. Bank Account No. x8797 either senior or junior to the perfected security interest held in such account by U.S. Bank, (b) make U.S. Bank Account No. x8797 part of the DIP Collateral or effect a superpriority lien on such account, or (c) otherwise modify the terms of the Credit Card Processing Agreement between the Debtors and U.S. Bank and any exhibits or amendments thereto, including the Elavon Amendments (as such terms are defined in the First Day Declaration), it being understood that the DIP Collateral shall include the Debtors' residual interest (if any) in such account.

(l)    For the avoidance of doubt, (a) neither the First Interim Adequate Protection Order, the Second Interim Adequate Protection Order, ~~this~~the Interim DIP Order, this

82

Final Order, nor the DIP Documents shall authorize the Debtors to grant liens and/or security interests in (i) any property received and/or held by ACE American Insurance Company and/or any of its U.S.-based affiliates (collectively, together with each of their successors, and solely in their roles as insurers, "**Chubb**") or (ii) any insurance policy issued by Chubb; (b) neither the First Interim Adequate Protection Order, the Second Interim Adequate Protection Order, ~~nor this~~the Interim DIP Order, nor this Final Order grants the Debtors any right to use any property (or the proceeds thereof) held by Chubb as collateral to secure obligations under insurance policies and related agreements; (c) the proceeds of any insurance policy issued by Chubb shall only be considered to be DIP Collateral to the extent such proceeds are paid to the Debtors (as opposed to a third party claimant) pursuant to the terms of any such applicable insurance policy; and (d) nothing, including the First Interim Adequate Protection Order, the Second Interim Adequate Protection Order, ~~this~~the Interim DIP Order, this Final Order, and/or the DIP Documents alters or modifies the terms and conditions of any insurance policies or related agreements issued by Chubb.

(m)    Notwithstanding anything to the contrary in the First Interim Adequate Protection Order, the Second Interim Adequate Protection Order, ~~or this~~the Interim DIP Order, or this Final Order any valid and enforceable post-petition liens held by AerSale, Inc. ("**AerSale**") shall not be altered, impaired, limited, primed, or otherwise modified or prejudiced by the terms of the First Interim Adequate Protection Order, the Second Interim Adequate Protection Order, ~~or this~~the Interim DIP Order, or this Final Order.  All parties' rights, if any, to object to the priority, validity, and extent of AerSale's post-petition liens, if any, are preserved.

(n)    Notwithstanding anything to the contrary herein, nothing in this Final Order shall impair (i) the Debtors' ability to pay the prepetition claims of NAI National Ltd. in

accordance with the *Final Order (I) Authorizing the Debtors to Satisfy Prepetition Claims of (A) Critical Vendors, (B) Foreign Vendors, (C) Lien Claimants, and (D) 503(b)(9) Claimants, (II) Confirming Administrative Status of Outstanding Orders, (III) Authorizing Financial Institutions to Honor and Process Related Checks and Transfers, and (IV) Granting Related Relief* [ECF No. 217], should the Debtors determine to do so in accordance therewith, or (ii) the 503(b)(9) status of any claims arising from NAI National Ltd.'s delivery of goods that were received by the Debtors within twenty (20) days prior to the Petition Date.

22.    *Proofs of Claim.*  None of the DIP Facility Agent, the other DIP Secured Parties, or the Secured Parties shall be required to file proofs of claim in any of the Chapter 11 Cases or any Successor Cases for any claim allowed herein, and the stipulations in paragraph G shall be deemed to constitute a timely filed proof of claim with respect to the Prepetition Secured Obligations against each of the Debtors in the Chapter 11 Cases.  Notwithstanding any order entered by the Court in relation to the establishment of a bar date in any of the Chapter 11 Cases or any Successor Cases to the contrary, the DIP Facility Agent, on behalf of itself and the DIP Secured Parties, the Secured Notes Collateral Agent, on behalf of itself and the other Secured Notes Parties, and each of the RCF Agents, on behalf of itself and the RCF Secured Parties, are each authorized and entitled, but not required, to file (and amend and/or supplement, as the respective agents see fit) a master proof of claim on account of any and all of the respective claims arising under the DIP Facility or Secured Documents, as applicable (the "**Master Proof of Claim**").  For administrative convenience, any Master Proof of Claim authorized herein may be filed in the case of Debtor Spirit Airlines, LLC with respect to all amounts asserted in such Master Proof of Claim, and such Master Proof of Claim shall be deemed to be filed and asserted by the applicable entity or entities against every Debtor asserted to be liable for the applicable

84

claim.  For the avoidance of doubt, the provisions set forth in this paragraph and any Master Proof of Claim filed pursuant to the terms hereof are intended solely for the purpose of administrative convenience and shall not affect the substantive rights of any party in interest or their respective successors in interest, including, without limitation, not affecting the numerosity requirements set forth in section 1126 of the Bankruptcy Code.  Neither the DIP Facility Agent, the Secured Notes Collateral Agent, nor the RCF Agents shall be required to attach any instruments, agreements, or other documents evidencing the obligations owing by each of the Debtors to the DIP Facility Agent and other DIP Secured Parties, or the Secured Parties, as applicable, which instruments, agreements, or other documents will be provided (subject to any applicable confidentiality restrictions) upon written request to counsel to the DIP Facility Agent, the Secured Notes Collateral Agent, or RCF Agents, as applicable.  Any order entered by the Court in relation to the establishment of a bar date for any claim (including any administrative claim) in any of the Chapter 11 Cases or any Successor Cases shall not apply to the DIP Facility Agent, the other DIP Secured Parties, or Secured Parties.  For the avoidance of doubt, none of the DIP Facility Agent, the other DIP Secured Parties, or the Secured Parties will be required to file any request for allowance and/or payment of any administrative expenses, and this ~~Interim DIP~~Final Order shall be deemed to constitute a timely filed request for allowance and/or payment of any Prepetition Secured Obligations or Adequate Protection Claims constituting administrative expenses or any DIP Obligations, as applicable.

23.    *Retention of Jurisdiction*.  The Court retains jurisdiction over any matter arising from or related to the implementation, interpretation, and enforcement of this ~~Interim DIP~~Final Order.

24.     *Creditors' Committee Reporting Rights*.    The Debtors shall provide to the Creditors' Committee professionals all reporting provided to the RCF Administrative Agent and RCF ~~Administrative Agent~~ Advisors hereunder, substantially at the same time such reports are provided to the RCF Administrative Agent and RCF ~~Administrative Agent~~ Advisors.

25.     *DIP Lenders, Ad Hoc Committee of Secured Noteholder Advisors, and RCF Administrative Agent Advisors Information Rights*.    The Debtors shall provide the DIP Lenders, the Ad Hoc Committee of Secured Noteholder Advisors, and RCF ~~Administrative Agent~~ Advisors the same information rights, notice rights, reporting rights, or other similar rights provided to the Creditors' Committee pursuant to the final orders entered on the First Day Pleadings (as defined in the First Day Declaration).

26.     *Effectiveness*.    This ~~Interim DIP~~Final Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable immediately upon entry hereof. Notwithstanding Bankruptcy Rules 4001(a)(3), 4001(c)(1), 6004(h), 6006(d), 7062, or 9024, any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this ~~Interim DIP~~Final Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this ~~Interim DIP~~Final Order.

27.     *Use of Encumbered Cash Upon Repayment or Refinancing*.    Upon the Debtors' incurrence of Alternative DIP Financing, all outstanding DIP Obligations (excluding any DIP Obligations in respect of outstanding Roll-Up DIP Loans in excess of an aggregate principal amount of $400,000,000 of Roll-Up DIP Loans, which excess amount is not required to be repaid in connection therewith) shall be repaid in full from the proceeds of such Alternative DIP Financing or, at the Debtors' option, the Encumbered Cash plus proceeds of such Alternative DIP Financing.

86

28.     ~~*Interim DIP*~~*Final* Order Governs.  In the event of any inconsistency between the provisions of the Secured Documents, the DIP Documents, this Final Order, the Interim DIP Order, the First Interim Adequate Protection Order, the Second Interim Adequate Protection Order, the DIP Motion, the First Adequate Protection Motion, the Supplemental Adequate Protection Motion, or any other order entered by this Court ~~(other than the Final Order, when entered)~~, the provisions of this ~~Interim DIP~~Final Order shall govern.  **Exhibit 1** of this Final Order shall govern in the event of any conflict with the remainder of this Final Order. Notwithstanding anything to the contrary in any other order entered by this Court, any payment made pursuant to any authorization contained in any other order entered by this Court shall be consistent with and subject to the requirements set forth in this ~~Interim DIP Order (or~~ Final Order~~, when entered)~~ and the DIP Documents.

29. ~~*Final Hearing.*~~  ~~The Final Hearing is scheduled for October 29, 2025, at 11:00 a.m.~~ ~~(prevailing Eastern Time), and any objections to the final relief sought in the DIP Motion shall~~ ~~be filed with the Court no later than October 22, 2025, at 4:00 p.m. (prevailing Eastern Time),~~ ~~and served upon the Notice Parties.~~

Dated: _____, 2025
           White Plains, New York

_____
THE HONORABLE SEAN H. LANE
UNITED STATES BANKRUPTCY JUDGE

**Exhibit 1**

**Lien Priorities on DIP Collateral**

The DIP Liens, the Adequate Protection Liens, Cash Collateral Adequate Protection Liens, the Prepetition Secured Notes Liens, the Prepetition RCF Liens, and the Carve Out shall have the following priority on the DIP Collateral and the applicable Prepetition Collateral at each Debtor entity obligated pursuant to the DIP Obligations, the Adequate Protection Obligations, or the applicable Prepetition Secured Obligations, it being understood that the Secured Parties agree that the foregoing shall apply at all times on and after the Petition Date, *provided* that the priorities set forth in Paragraphs 13(d) and 13(h) of this Final Order shall apply with respect to the funding of the Carve Out and the application of any excess from any Carve Out Account:

| Priority | Notes Priority Collateral | Revolving Priority Collateral | Owned Aircraft Surplus (Prior to Replenishment of Encumbered Cash) | Owned Aircraft Surplus (After Replenishment of Encumbered Cash) | Other DIP Collateral (Other than Owned Aircraft Surplus) |
|---|---|---|---|---|---|
| 1. | Carve Out | Professional Fee Carve Out (up to the RCF Professional Fee Carve Out Cap) | Carve Out | Carve Out | Carve Out |
| 2. | Secured Notes Permitted Liens | RCF Permitted Liens | Secured Notes Cash Collateral Adequate Protection Liens | DIP Liens | Permitted Liens |
| 3. | DIP Liens | RCF Adequate Protection Liens | DIP Liens | Secured Notes Adequate Protection Liens and RCF Adequate Protection Liens | DIP Liens |
| 4. | Secured Notes Adequate Protection Liens | Prepetition RCF Liens | RCF Secured Parties Cash Collateral Adequate Protection Liens | N/A | Secured Notes Adequate Protection Liens and RCF Adequate Protection Liens |
| 5. | Prepetition Secured Notes Liens | DIP Liens | N/A | N/A | NA |

| 6. | RCF Adequate Protection Liens | Secured Notes Adequate Protection Liens | N/A | N/A | N/A |
|----|---|---|---|---|---|
| 7. | Prepetition RCF Liens | Prepetition Secured Notes Liens | N/A | N/A | N/A |

**Exhibit 2**

**Owned Aircraft**

**Exhibit 3**

**DIP Credit Agreement**

~~**Commitment Letter**~~

**Annex A**

**Defined Terms**

(i)    "**Ad Hoc Committee of Secured Noteholder Advisors**" means Akin Gump Strauss Hauer & Feld LLP, as counsel, Perella Weinberg Partners LP, as investment banker, SkyWorks Capital, LLC, as financial advisor, Watson Farley & Williams LLP, as aviation counsel, and any other advisor (legal, financial, or otherwise) retained by, or to provide services to, the Ad Hoc Committee of Secured Noteholders.

(ii)    "**Ad Hoc Committee of Secured Noteholders**" means that certain ad hoc committee of Secured Noteholders.

(iii)    "**Additional Carve Out Obligations**" has the meaning set forth in paragraph 13(d) of this ~~Interim DIP~~Final Order.

(iv)    "**Adequate Protection Claims**" means, collectively, the RCF Adequate Protection Claims and the Secured Notes Adequate Protection Claims.

(v)    "**Adequate Protection Liens**" means, collectively, the RCF Adequate Protection Liens and the Secured Notes Adequate Protection Liens.

(vi)    "**Adequate Protection Obligations**" means the Adequate Protection Claims, the Adequate Protection Liens, the Cash Collateral Adequate Protection Liens, and all other forms of adequate protection provided to any of the Secured Parties under the Second Interim Adequate Protection Order ~~and this~~, the Interim DIP Order, and this Final Order.

(vii)    "**Adequate Protection Professional Fees and Expenses**" has the meaning set forth in paragraph 8(c) of this ~~Interim DIP~~Final Order.

(viii)    "**Administrative Claim Carve Out**" has the meaning set forth in paragraph 13(i) of this ~~Interim DIP~~Final Order.

(ix)    "**Administrative Claim Carve Out Claims**" has meaning set forth in paragraph 13(i) of this ~~Interim DIP~~Final Order.

(x)    "**Administrative Claim Carve Out Segregated Account(s)**" has the meaning set forth in paragraph 13(i) of this ~~Interim DIP~~Final Order.

(xi)    "**AerCap Motion**" means the *Motion of Debtors for Entry of an Order (I) Approving the Global Restructuring Term Sheet with AerCap Ireland Limited, (II) Authorizing and Approving Assumption and Rejection of Certain Aircraft Agreements, (III) Authorizing Entry Into the New Lease Agreements and Definitive Documents, and (IV) Granting Related Relief* [ECF No. 135].

(xii)    ~~(xi)~~ "**AerSale**" has the meaning set forth in paragraph 21(~~o~~m) of this ~~Interim DIP~~Final Order.

(xiii)   (xii) "**Agreed Roll-Up Treatment**" has the meaning set forth in paragraph 14(a) of this ~~Interim DIP~~Final Order.

(xiv)   (xiii) "**Aircraft and Spare Engine Security Agreement**" has the meaning set forth in footnote 7 of this ~~Interim DIP~~Final Order.

(xv)   (xiv) "**Aircraft Counterparties**" has the meaning set forth in the *Motion of the Debtors for Entry of an Order (I) for Authority to (A) Enter into Agreements under Section 1110(a) of the Bankruptcy Code, (B) Enter into Stipulations to Extend the Time to Comply with Section 1110 of the Bankruptcy Code, and (C) File Redacted Versions of Such Agreements and Stipulations and (II) Approving Related Procedures* [ECF No. 78].

(xvi)   (xv) "**Aircraft Debt**" has the meaning set forth in the definition of "Excluded Assets" in this Annex A.

(xvii)   (xvi) "**Allowed Professional Fees**" has the meaning set forth in paragraph 13(b) of this ~~Interim DIP~~Final Order.

(xviii)   (xvii) "**Alternative DIP Financing**" has the meaning set forth in paragraph 21(a) of this ~~Interim DIP~~Final Order.

(xix)   (xviii) "**Amended and Restated Revolving Credit Facility Agreement**" has the meaning set forth in paragraph G(vi) of this ~~Interim DIP~~Final Order.

(xx)   (xix) "**Available RCF Cash**" has the meaning set forth in paragraph 4(a) of this ~~Interim DIP~~Final Order.

(xxi)   (xx) "**Avoidance Action**" means any Claim or Cause of Action arising under chapter 5 of the Bankruptcy Code or any applicable state law adopting the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or similar statute or common law.

(xxii)   (xxi) "**Avoidance Proceeds**" means any and all proceeds of or property recovered from Avoidance Actions, whether by adjudication, judgment, settlement, or otherwise.

(xxiii)   (xxii) "**Backstop Premium**" has the meaning set forth in paragraph 2(d) of this ~~Interim DIP~~Final Order.

(xxiv)   (xxiii) "**Bankruptcy Code**" has the meaning set forth in the introductory paragraph of this ~~Interim DIP~~Final Order.

(xxv)   (xxiv) "**Bankruptcy Rules**" has the meaning set forth in the introductory paragraph of this ~~Interim DIP~~Final Order.

(xxvi)   (xxv) "**Borrower**" has the meaning set forth in subparagraph (a) of the introductory paragraph of this ~~Interim DIP~~Final Order.

2

(xxvii) (xxvi) "**Carve Out**" means the Professional Fee Carve Out and the Administrative Claim Carve Out.

(xxviii) (xxvii) "**Carve Out Account**" has the meaning set forth in paragraph 13(d) of this Interim DIPFinal Order.

(xxix) (xxviii) "**Carve Out Amount**" means the Pre-Carve Out Notice Amount together with the Post-Carve Out Notice Amount.

(xxx) (xxix) "**Carve Out Reserves**" means the Post-CarvePost-Carve Out Trigger Notice Reserve together with the Pre-Carve Out Trigger Notice Reserve.

(xxxi) (xxx) "**Carve Out Trigger Date**" has the meaning set forth in paragraph 13(d) of this Interim DIPFinal Order.

(xxxii) (xxxi) "**Carve Out Trigger Notice**" has the meaning set forth in paragraph 13(c) of this Interim DIPFinal Order.

(xxxiii) (xxxii) "**Case Management Procedures**" has the meaning set forth in the *Order Implementing Certain Notice and Case Management Procedures* [ECF No. 61].

(xxxiv) (xxxiii) "**Cash Collateral**" has the meaning set forth in paragraph F of this Interim DIPFinal Order.

(xxxv) (xxxiv) "**Cash Collateral Adequate Protection Liens**" has the meaning set forth in paragraph 8(b) of this Interim DIPFinal Order.

(xxxvi) (xxxv) "**Cash Management Motion**" has the meaning ascribed to it in paragraph 4(a) of this Interim DIPFinal Order.

(xxxvii) (xxxvi) "**Cause of Action**" means any cause of action under law or equity, of any kind or nature whatsoever, whether arising under United States federal or state law, common law, or otherwise.

(xxxviii) (xxxvii) "**Challenge**" means any challenge, objection, defense, or Claim or Cause of Action, in each case, including, without limitation, any Avoidance Action or any Claim or Cause of Action asserting reduction, setoff, offset, recoupment, recharacterization, subordination (whether equitable, contractual, or otherwise), reclassification, disgorgement, disallowance, impairment, recovery, or other cause of action of any kind or nature whatsoever, whether arising under the Bankruptcy Code, under applicable non-bankruptcy law, or otherwise.

(xxxix) (xxxviii) "**Challenge Budget**" has the meaning set forth in paragraph 16 of this Interim DIPFinal Order.

(xl) (xxxix) "**Challenge Deadline**" means no later than the earlier of (a) the date of entry of an order confirming a chapter 11 plan in these Chapter 11 Cases and (b)(i) with respect to the Creditors' Committee, the date that is 75 days after entry of the Second Interim Adequate Protection Order or (ii) with respect to other parties in interest, no later than the date that is 79

3

days after the Petition Date; provided that in the event that, prior to the expiration of the Challenge Period, (x) these Chapter 11 Cases are converted to chapter 7 or (y) a chapter 11 trustee is appointed in these Chapter 11 Cases, then, in each such case, the Challenge Period shall be extended for a period of 60 days solely with respect to any such trustee, commencing on the occurrence of either of the events described in the foregoing clauses (x) and (y); provided, further that, for the avoidance of doubt, the Challenge Deadline shall apply solely to any Challenge to the rights of parties in interest as stipulated in the Debtors' Stipulations, and shall be subject to the limitations contained therein.  The Challenge Deadline may be extended in writing from time to time by the RCF Advisors, the Ad Hoc Committee of Secured Noteholder Advisors, and counsel to the Debtors and the Creditors' Committee, which extension may be evidenced by electronic mail.

(xli)   (xl) "**Challenge Period**" means the period of time before the Challenge Deadline.

(xlii)   (xli) "**Challenge Proceeding**" has the meaning set forth in paragraph 15(a) of this ~~Interim DIP~~Final Order.

(xliii)   (xlii) "**Chapter 11 Cases**" has the meaning set forth in the introductory paragraph of this ~~Interim DIP~~Final Order.

(xliv)   (xliii) "**Chubb**" has the meaning set forth in paragraph 21(~~n~~l) of this ~~Interim DIP~~Final Order.

(xlv)   (xliv) "**Claim**" has the meaning set forth in the Bankruptcy Code.

(xlvi)   (xlv) "**Collateral Coverage Ratio**" has the meaning set forth in the Amended and Restated Revolving Credit Facility Agreement.

(xlvii)   (xlvi) "**Commitment Letter**" means that certain Debtor-in-Possession Facility Commitment Letter, dated as of October 10, 2025, by and among the Borrower and each Person party thereto as a "Backstop Party."

(xlviii)   (xlvii) "**Committee Professionals**" has the meaning set forth in paragraph 13(b) of this ~~Interim DIP~~Final Order.

(xlix)   (xlviii) "**Contingent Roll-Up Term Loans**" has the meaning set forth in the DIP Credit Agreement.

(l)   (xlix) "**Court**" has the meaning set forth in the introductory paragraph of this ~~Interim DIP~~Final Order.

(li)   (l) "**Credit Card Processing Agreement**" has the meaning set forth in the First Day Declaration.

(lii)   (li) "**Creditors' Committee**" has the meaning set forth in paragraph C of this ~~Interim DIP~~Final Order.

4

(liii)    (liii) "**Cromer Declaration**" has the meaning set forth in the introductory paragraph of this ~~Interim DIP~~Final Order.

(liv)    (liii) "**Debtor Professionals**" has the meaning set forth in paragraph 13(b) of this ~~Interim DIP~~Final Order.

(lv)    (liv) "**Debtors**" has the meaning set forth in the introductory paragraph of this ~~Interim DIP~~Final Order.

(lvi)    (lv) "**Debtors' Stipulations**" has the meaning set forth in paragraph G of this ~~Interim DIP~~Final Order.

(lvii)    (lvi) "**Declarations**" has the meaning set forth in the introductory paragraph of this ~~Interim DIP~~Final Order.

(lviii)    (lvii) "**Diminution in Value**" has the meaning set forth in paragraph H(~~viii~~x) of this ~~Interim DIP~~Final Order.

(lix)    (lviii) "**DIP Collateral**" means (i) the Debtors' interest in all assets and properties, whether tangible, intangible, real, personal, or mixed, whether now owned by or owing to, or hereafter acquired by, or arising in favor of, the Debtors (including under any trade names, styles, or derivations thereof), and whether owned or consigned by or to, or leased from or to, the Debtors, and regardless of where located, in each case to the extent such assets and properties constitute Prepetition Collateral; and (ii) property of the Debtors, whether existing on the Petition Date or thereafter acquired, including, without limitation, all unencumbered assets of the Debtors, all prepetition property and post-petition property of the Debtors' estates, and the proceeds, products, rents, and profits thereof, whether arising from section 552(b) of the Bankruptcy Code or otherwise, including, without limitation, unencumbered cash (and any investment of such cash) of the Debtors, all equipment, all goods, all accounts, cash, payment intangibles, bank accounts, and other deposit or securities accounts of the Debtors (including any accounts opened prior to, on, or after the Petition Date), insurance policies and proceeds thereof, equity interests, instruments, intercompany claims, accounts receivable, other rights to payment, all general intangibles, all contracts and contract rights, securities, investment property, letters of credit and letter of credit rights, chattel paper, all interest rate hedging agreements, all owned real estate, real property leaseholds, fixtures, patents, copyrights, trademarks, trade names, rights under license agreements, and other intellectual property, all commercial tort claims, all aircraft, slots, gates, spare parts and ground support equipment and all claims and causes of action, and any and all proceeds, products, rents, and profits of the foregoing, excluding ~~(i)~~ the Excluded Assets ~~and (ii) Avoidance Actions. The Debtors have requested that the DIP Collateral include, subject to and effective only upon entry of the Final Order, all~~but not, for the avoidance of doubt, the Avoidance Proceeds. ~~Notwithstanding anything to the contrary in the DIP Motion or this Interim DIP Order (including all annexes or exhibits attached hereto), such request will be heard at the Final Hearing and will be subject to and effective only upon entry of the Final Order so providing.~~ Notwithstanding anything to the contrary herein (x) to the extent a DIP Lien or an Adequate Protection Lien cannot attach to the DIP Collateral pursuant to applicable law, the DIP Liens and Adequate Protection Liens granted pursuant to ~~this~~the Interim DIP Order and/or this Final Order shall attach to the Debtors' economic rights therein, including, without limitation,

any and all such proceeds of such DIP Collateral and any Excluded Assets and (y) for the avoidance of doubt, the Owned Aircraft Surplus constitutes DIP Collateral and any of the Debtors' aircraft with Aircraft Debt that is refinanced using Cash Collateral or the proceeds of the DIP Facility shall be "DIP Collateral" subject to a first lien mortgage and typical associated collateral protections.

(lx)    ~~(lix)~~ "**DIP Commitments**" has the meaning set forth in subparagraph (a)(iii) of the introductory paragraph of this ~~Interim DIP~~Final Order.

(lxi)    ~~(lx)~~ "**DIP Credit Agreement**" has the meaning ascribed to such term in the DIP Motion.

(lxii)    ~~(lxi)~~ "**DIP Documents**" means the DIP Credit Agreement and all guarantee, collateral, pledge and security agreements, and all other agreements, documents, certificates and instruments executed, recorded and/or delivered in connection therewith, including but not limited to the DIP Syndication Materials, in each case, as amended, supplemented or modified in accordance with the terms thereof and this ~~Interim DIP~~Final Order.

(lxiii)    ~~(lxii)~~ "**DIP Facility**" has the meaning set forth in subparagraph (a) of the introductory paragraph of this ~~Interim DIP~~Final Order.

(lxiv)    ~~(lxiii)~~ "**DIP Facility Agent**" means Wilmington Trust, National Association, as administrative agent and collateral agent for the DIP Facility.

(lxv)    ~~(lxiv)~~ "**DIP Fees and Expenses**" has the meaning set forth in paragraph 2(d)(ii) of this ~~Interim DIP~~Final Order.

(lxvi)    ~~(lxv)~~ "**DIP Lenders**" has the meaning set forth in subparagraph (a)(i) of the introductory paragraph of this ~~Interim DIP~~Final Order.

(lxvii)    ~~(lxvi)~~ "**DIP Loans**" has the meaning set forth in subparagraph (a)(ii) of the introductory paragraph of this ~~Interim DIP~~Final Order.

(lxviii)    ~~(lxvii)~~ "**DIP Motion**" has the meaning set forth in the introductory paragraph of this ~~Interim DIP~~Final Order.

(lxix)    ~~(lxviii)~~ "**DIP Obligations**" has the meaning set forth in subparagraph (a)(iii) of the introductory paragraph of this ~~Interim DIP~~Final Order.

(lxx)    ~~(lxix)~~ "**DIP Secured Parties**" means, collectively, the DIP Facility Agent and the DIP Lenders.

(lxxi)    ~~(lxx)~~ "**DIP Superpriority Claims**" has the meaning set forth in paragraph 6 of this ~~Interim DIP~~Final Order.

(lxxii)    ~~(lxxi)~~ "**DIP Syndication**" has the meaning specified to the term "Opportunity" in the DIP Syndication Materials.

6

"**DIP Syndication Final Closing Date**" has the meaning specified to the term "Final Closing Date" in the DIP Syndication Materials.

(lxxiii)    (lxxii) "**DIP Syndication Initial Closing Date**" has the meaning specified to the term "Initial Closing Date" in the DIP Syndication Materials.

(lxxiv)    (lxxiii) "**DIP Syndication Materials**" means that certain Notice and Subscription Form to the Eligible Holders of PIK Toggle Senior Secured Notes due 2030 (CUSIP No. 84859BAC5 and CUSIP No. G83518AC7) of Spirit IP Cayman Ltd. and Spirit Loyalty Cayman Ltd. with respect to the Opportunity of each Eligible Holder to (i) participate as a lender in the DIP Credit Agreement and (ii) exchange and "roll up", based on participation in the New Money DIP Loans, its Secured Notes for additional participation as a lender pursuant to the DIP Credit Agreement, substantially in the form filed at ECF No. 226, as modified by ECF No. 242.

(lxxv)    (lxxiv) "**DIP Termination Date**" has the meaning set forth in paragraph 12(c) of this ~~Interim DIP~~Final Order.

(lxxvi)    (lxxv) "**DIP Termination Event**" has the meaning set forth in paragraph 12(a) of this ~~Interim DIP~~Final Order.

(lxxvii)    (lxxvi) "**Elavon Amendments**" has the meaning set forth in the First Day Declaration.

(lxxviii)    (lxxvii) "**Eligible Engine**" has the meaning set forth in the Amended and Restated Revolving Credit Facility Agreement.

(lxxix)    (lxxviii) "**Eligible Holder**" has the meaning set forth in the DIP Syndication Materials.

(lxxx)    (lxxix) "**Eligible Spare Parts**" has the meaning set forth in the Amended and Restated Revolving Credit Facility Agreement.

(lxxxi)    (lxxx) "**Emergency Hearing**" has the meaning set forth in paragraph 12(c) of this ~~Interim DIP~~Final Order.

(lxxxii)    (lxxxi) "**Encumbered Accounts**" has the meaning set forth in paragraph G(iii) of this ~~Interim DIP~~Final Order.

(lxxxiii)    (lxxxii) "**Encumbered Cash**" has the meaning set forth in paragraph G(iii) of this ~~Interim DIP~~Final Order.

(lxxxiv)    (lxxxiii) "**Excluded Assets**" means (a) any Avoidance Actions, and (b) the Avoidance Proceeds, and (c) property that cannot be subject to liens pursuant to applicable law, rule, contract, or regulation (including any requirement to obtain the consent (after the use of commercially reasonable efforts to obtain such consent) of any governmental authority or third party, unless such consent has been obtained) or restrictions of contract (including, without limitation, federal concessions as well as equipment leases and financing arrangements but

7

excluding any requirement to obtain consent) existing on the closing date or the time of entry of such contract (other than to the extent such restriction is ineffective under the UCC or other applicable law). ~~The Debtors have requested that the DIP Collateral include, subject to and effective only upon entry of the Final Order, all Avoidance Proceeds. Notwithstanding anything to the contrary in the DIP Motion or this Interim DIP Order (including all annexes or exhibits attached hereto), such request will be heard at the Final Hearing and will be subject to and effective only upon entry of the Final Order so providing.~~ For the avoidance of doubt, Excluded Assets (A) will include (i) all assets which are collateral for any financing agreements (other than the Secured Documents) in connection with aircraft assets ("**Aircraft Debt**") and/or covered by a security agreement or other similar agreement related to the Aircraft Debt, including the proceeds thereof (but (a) only until such time as such applicable Aircraft Debt is satisfied in full, after which such proceeds shall no longer be Excluded Assets or (b) in the event that Cash Collateral or the proceeds of the DIP Facility are used to refinance the Aircraft Debt, the aircraft assets and all proceeds shall no longer be Excluded Assets), (ii) property that the Debtors are prohibited from granting liens on under the terms of a security agreement, lease or similar document (other than the Secured Documents) among the Debtors and any party entitled to the protections of section 1110 of the Bankruptcy Code, and (iii) the PFCs and all funds held in the PFC Account; *provided* that the DIP Secured Parties shall have a security interest in and the Adequate Protection Liens shall also be secured by any residual cash balance remaining in the PFC Account to the extent that amounts held in the PFC Account exceed the amount of PFCs actually collected, and (B) does not include the Prepetition Secured Notes Collateral, the Prepetition RCF Collateral, or the Spare Parts Collateral.

(lxxxv)   "**Excluded Avoidance Proceeds**" has the meaning set forth in paragraph 17(b)of this Final Order.

(lxxxvi)   ~~(lxxxiv)~~ "**Farnsworth Declaration**" has the meaning set forth in the introductory paragraph of this ~~Interim DIP~~Final Order.

(lxxxvii)   "**Final DIP Order Breach**" has the meaning set forth in paragraph 12(a) of this Final Order.

(lxxxviii)~~(lxxxv)~~ "**Final Hearing**" has the meaning set forth in subparagraph (~~m~~l) of the introductory paragraph of this ~~Interim DIP~~Final Order.

(lxxxix)   ~~(lxxxvi)~~ "**Final New Money DIP Loans**" has the meaning set forth in subparagraph (a)(ii) of the introductory paragraph of this ~~Interim DIP~~Final Order.

(xc)   ~~(lxxxvii)~~ "**Final Order**" has the meaning set forth in the introductory paragraph of this ~~Interim DIP~~Final Order.

(xci)   ~~(lxxxviii)~~ "**Final Roll-Up**" has the meaning set forth in subparagraph (a)(ii) of the introductory paragraph of this ~~Interim DIP~~Final Order.

(xcii)   ~~(lxxxix)~~ "**Final Roll-Up DIP Loans**" has the meaning set forth in subparagraph (a)(iii) (a)(ii) of the introductory paragraph of this ~~Interim DIP~~Final Order.

(xciii)   (xc) "**First Adequate Protection Motion**" has the meaning set forth in the introductory paragraph of this ~~Interim DIP~~Final Order.

(xciv)   (xci) "**First Day Declaration**" has the meaning set forth in the introductory paragraph of this ~~Interim DIP~~Final Order.

(xcv)   (xcii) "**First Day Pleadings**" has the meaning set forth in paragraph 25 of this ~~Interim DIP~~Final Order.

(xcvi)   (xciii) "**First Interim Adequate Protection Order**" has the meaning set forth in the introductory paragraph of this ~~Interim DIP~~Final Order.

(xcvii)   (xciv) "**First Interim Hearing**" has the meaning set forth in the introductory paragraph of this ~~Interim DIP~~Final Order.

(xcviii)   (xcv) "**Fourth Draw**" has the meaning set forth in subparagraph (a)(i) of the introductory paragraph of this ~~Interim DIP~~Final Order.

(xcix)   (xcvi) "**Foreign Accounts**" has the meaning set forth in the Cash Management Motion.

(c)   (xcvii) "**Fronting Lender**" has the meaning set forth in subparagraph (a)(i) of the introductory paragraph of this ~~Interim DIP~~Final Order.

(ci)   (xcviii) "**Fuel Vendors**" has the meaning set forth in paragraph 21(~~k~~i) of this ~~Interim DIP~~Final Order.

(cii)   (xcix) "**Guarantors**" has the meaning set forth in subparagraph (a) of the introductory paragraph of this ~~Interim DIP~~Final Order.

(ciii)   (c) "**Hearings**" has the meaning set forth in the introductory paragraph of this ~~Interim DIP~~Final Order.

(civ)   "**Headquarters**" means the Debtors' headquarters located at 1731 Radiant Drive, Dania Beach, FL 33004.

(cv)   (ci) "**Incremental Second Draw**" has the meaning set forth in subparagraph (a)(iii) of the introductory paragraph of this ~~Interim DIP~~Final Order.

(cvi)   (cii) "**Indemnified Person**" has the meaning set forth in paragraph 2(d)(iii) of this ~~Interim DIP~~Final Order.

(cvii)   (ciii) "**Information Agent**" means Epiq Corporate Restructuring, LLC.

(cviii)   (civ) "**Initial Draw**" has the meaning set forth in subparagraph (a)(i) of the introductory paragraph of this ~~Interim DIP~~Final Order.

9

(cix)    (cv) "**Intercompany Borrower**" has the meaning set forth in paragraph G(iv) of this ~~Interim DIP~~Final Order.

(cx)    (cvi) "**Intercompany Lenders**" has the meaning set forth in paragraph G(iv) ~~of~~ this ~~Interim DIP~~Final Order.

(cxi)    (cvii) "**Intercompany Loan**" has the meaning set forth in paragraph G(iv) of this ~~Interim DIP~~Final Order.

(cxii)    (cviii) "**Intercompany Loan Obligations**" has the meaning set forth in paragraph G(v) of this ~~Interim DIP~~Final Order.

(cxiii)    (cix) "**Intercompany Note**" has the meaning set forth in paragraph G(iv) of this ~~Interim DIP~~Final Order.

(cxiv)    (cx) "**Intercreditor Agreements**" means the Notes Priority Collateral ICA and the RCF Priority Collateral ICA.

(cxv)    (cxi) "**Interim DIP Hearing**" has the meaning set forth in the introductory paragraph of this ~~Interim DIP~~Final Order.

(cxvi)    (cxii) "**Interim DIP Order**" has the meaning set forth in the introductory paragraph of this ~~Interim DIP~~Final Order.

~~(cxiii) "**Interim DIP Order Breach**" has the meaning set forth in paragraph 12(a) of this Interim DIP Order.~~

~~(cxiv) "**Interim Hearing**" has the meaning set forth in subparagraph (l) of the introductory paragraph of this Interim DIP Order.~~

(cxvii)    (cxv) "**Interim New Money DIP Loans**" has the meaning set forth in subparagraph (a)(i) of the introductory paragraph of this ~~Interim DIP~~Final Order.

(cxviii)    (cxvi) "**Interim Roll-Up**" has the meaning set forth in subparagraph (a)(ii) of the introductory paragraph of this ~~Interim DIP~~Final Order.

(cxix)    (cxvii) "**Interim Roll-Up DIP Loans**" has the meaning set forth in subparagraph (a)(ii) of the introductory paragraph of this ~~Interim DIP~~Final Order.

(cxx)    (cxviii) "**Local Rules**" has the meaning set forth in the introductory paragraph of this ~~Interim DIP~~Final Order.

(cxxi)    (cxix) "**Master Proof of Claim**" has the meaning set forth in paragraph 22 of this ~~Interim DIP~~Final Order.

(cxxii)    (cxx) "**Material DIP Amendment**" has the meaning set forth in paragraph 2(e) of this ~~Interim DIP~~Final Order.

(cxxiii)   (cxxi) "**New Money DIP Loans**" has the meaning set forth in subparagraph (a)(i) of the introductory paragraph of this ~~Interim DIP~~Final Order.

(cxxiv)   (cxxii) "**Notes Priority Collateral**" has the meaning set forth in the Notes Priority Collateral ICA.

(cxxv)   (cxxiii) "**Notes Priority Collateral ICA**" has the meaning set forth in paragraph G(iii) of this ~~Interim DIP~~Final Order.

(cxxvi)   (cxxiv) "**Notice Parties**" has the meaning set forth in the DIP Motion.

(cxxvii)   (cxxv) "**Notice Period**" has the meaning set forth in paragraph 12(b) of this ~~Interim DIP~~Final Order.

(cxxviii)   (cxxvi) "**OID**" has the meaning set forth in paragraph 2(d) of this ~~Interim DIP~~Final Order.

(cxxix)   (cxxvii) "**Other DIP Collateral**" means DIP Collateral, excluding all Notes Priority Collateral and Revolving Priority Collateral.

(cxxx)   (cxxviii) "**Owned Aircraft**" has the meaning set forth in paragraph 7(c) of this ~~Interim DIP~~Final Order.

(cxxxi)   (cxxix) "**Owned Aircraft Surplus**" has the meaning set forth in paragraph 7(c) of this ~~Interim DIP~~Final Order.

(cxxxii)   (cxxx) "**Payment in Full**" means the indefeasible payment in full in cash of all applicable obligations, other than contingent indemnification and expense reimbursement obligations for which no claim or demand has been asserted, and all commitments under the applicable credit facility have been terminated or expired.

(cxxxiii)   (cxxxi) "**Perfection Action**" has the meaning set forth in paragraph 11(b) of this ~~Interim DIP~~Final Order.

(cxxxiv)   (cxxxii) "**Permitted Liens**" means, collectively, the RCF Permitted Liens and the Secured Notes Permitted Liens.

(cxxxv)   (cxxxiii) "**Petition Date**" has the meaning set forth in paragraph A of this ~~Interim DIP~~Final Order.

(cxxxvi)   (cxxxiv) "**PFC Account**" has the meaning set forth in the Cash Management Motion.

(cxxxvii)   (cxxxv) "**PFCs**" has the meaning set forth in the Cash Management Motion.

(cxxxviii)   (cxxxvi) "**Post-Carve Out Amounts**" has the meaning set forth in paragraph 13(d) of this ~~Interim DIP~~Final Order.

11

(cxxxix) (cxxxvii) "**Post-Carve Out Notice Amount**" has the meaning set forth in paragraph 13(b) of this ~~Interim DIP~~Final Order.

(cxl) (cxxxviii) "**Post-Carve Out Trigger Notice Reserve**" has the meaning set forth in paragraph 13(d) of this ~~Interim DIP~~Final Order.

(cxli) (cxxxix) "**Post-Petition Cash**" means all funds, cash, investments, and/or securities generated by the Debtors' post-petition operations or the realization of post-petition or prepetition receivables (other than Straddle Credit Card Receipts); *provided*, *however*, for the avoidance of doubt, Post-Petition Cash does not include any funds, cash, investments, and/or securities in the Encumbered Accounts as of the Petition Date or any proceeds of Revolving Priority Collateral (other than cash up to the Spare Parts Cap from the sale or disposition of Spare Parts that are Revolving Priority Collateral which sale or disposition is in the ordinary course of business and consistent with past practice).

(cxlii) (cxl) "**Pre-Carve Out Amounts**" has the meaning set forth in paragraph 13(d) of this ~~Interim DIP~~Final Order.

(cxliii) (cxli) "**Pre-Carve Out Notice Amount**" has the meaning set forth in paragraph 13(b) of this ~~Interim DIP~~Final Order.

(cxliv) (cxlii) "**Pre-Carve Out Trigger Notice Reserve**" has the meaning set forth in paragraph 13(d) of this ~~Interim DIP~~Final Order.

(cxlv) (cxliii) "**Prepetition Collateral**" means, collectively, the Prepetition RCF Collateral and the Prepetition Secured Notes Collateral.

(cxlvi) (cxliv) "**Prepetition Liens**" means, collectively, the Prepetition RCF Liens and the Prepetition Secured Notes Liens.

(cxlvii) (cxlv) "**Prepetition RCF Collateral**" has the meaning set forth in paragraph G(viii) of this ~~Interim DIP~~Final Order.

(cxlviii) (cxlvi) "**Prepetition RCF Liens**" has the meaning set forth in paragraph G(viii) of this ~~Interim DIP~~Final Order.

(cxlix) (cxlvii) "**Prepetition RCF Obligations**" has the meaning set forth in paragraph G(vii) of this ~~Interim DIP~~Final Order.

(cl) (cxlviii) "**Prepetition Secured Notes Collateral**" has the meaning set forth in paragraph G(iii) of this ~~Interim DIP~~Final Order.

(cli) (cxlix) "**Prepetition Secured Notes Liens**" has the meaning set forth in paragraph G(iii) of this ~~Interim DIP~~Final Order.

(clii) (cl) "**Prepetition Secured Notes Obligations**" has the meaning set forth in paragraph G(ii) of this ~~Interim DIP~~Final Order.

(cliii)    (cli) "**Prepetition Secured Notes P&I Obligations**" has the meaning set forth in paragraph (a)(ii) of this ~~Interim DIP~~Final Order.

(cliv)    (clii) "**Prepetition Secured Obligations**" means, collectively, the Prepetition Secured Notes Obligations, the Prepetition RCF Obligations, and the Intercompany Loan Obligations.

(clv)    (cliii)  "**Professional Persons**" means, collectively, the Committee Professionals and the Debtor Professionals.

(clvi)    (cliv) "**Professional Fee Carve Out**" has the meaning set forth in paragraph 13(b) of this ~~Interim DIP~~Final Order.

(clvii)    (clv) "**RCF Adequate Protection Claims**" has the meaning set forth in paragraph 8(a) of this ~~Interim DIP~~Final Order.

(clviii)    (clvi) "**RCF Adequate Protection Liens**" has the meaning set forth in paragraph 8(b) of this ~~Interim DIP~~Final Order.

(clix)    (clvii) "**RCF Adequate Protection Obligations**" has the meaning set forth in paragraph 8 of this ~~Interim DIP~~Final Order.

(clx)    (clviii) "**RCF Adequate Protection Professional Fees**" has the meaning set forth in paragraph 8(c) of this ~~Interim DIP~~Final Order.

(clxi)    (clix) "**RCF Administrative Agent**" has the meaning set forth in paragraph G(vi) of this ~~Interim DIP~~Final Order.

(clxii)    "**RCF Administrative Agent Advisors**" means (i) Milbank LLP, as counsel to the RCF Administrative Agent, (ii) one financial advisor to the RCF Lenders and RCF Administrative Agent, (iii) an appraiser selected by Citibank N.A., as RCF Administrative Agent, in accordance with the RCF Loan Documents, and (iv) any other advisor (legal, financial, or otherwise) as reasonably deemed necessary by Citibank N.A. solely to the extent payable under the RCF Loan Documents.

(clxiii)    (clx) "**RCF Advisors**" has the meaning set forth in paragraph 8(c) of this ~~Interim DIP~~Final Order.

(clxiv)    (clxi) "**RCF Agents**" has the meaning set forth in paragraph G(vi) of this ~~Interim DIP~~Final Order.

(clxv)    (clxii) "**RCF Borrower**" has the meaning set forth in paragraph G(vi) of this ~~Interim DIP~~Final Order.

(clxvi)    (clxiii) "**RCF Collateral Agent**" has the meaning set forth in paragraph G(vi) of this ~~Interim DIP~~Final Order.

13

(clxvii) (clxiv) "**RCF Guarantors**" has the meaning set forth in paragraph G(vi) of this ~~Interim DIP~~Final Order.

(clxviii) (clxv) "**RCF Lenders**" has the meaning set forth in paragraph G(vi) of this ~~Interim DIP~~Final Order.

(clxix) (clxvi) "**RCF Loan Documents**" means "Loan Documents" as defined in the Amended and Restated Revolving Credit Facility Agreement.

(clxx) (clxvii) "**RCF Loan Obligors**" means, collectively, the RCF Guarantors and the RCF Borrower.

(clxxi) (clxviii) "**RCF Permitted Liens**" has the meaning set forth in paragraph G(viii) of this ~~Interim DIP~~Final Order.

(clxxii) (clxix) "**RCF Priority Collateral ICA**" has the meaning set forth in paragraph G(viii) of this ~~Interim DIP~~Final Order.

(clxxiii) "**RCF Professional Fee Carve Out Cap**" means $5,000,000.

(clxxiv) (clxx) "**RCF Secured Parties**" means the "Secured Parties" as defined in the Amended and Restated Revolving Credit Facility Agreement.

(clxxv) (clxxi) "**RCF Secured Parties Cash Collateral Adequate Protection Liens**" has the meaning set forth in paragraph 8(b) of this ~~Interim DIP~~Final Order.

(clxxvi) (clxxii) "**Released Parties**" has the meaning set forth in paragraph 20(c) of this ~~Interim DIP~~Final Order.

(clxxvii) (clxxiii) "**Replenishment of Encumbered Cash**" has the meaning set forth in paragraph 4(b) of this ~~Interim DIP~~Final Order.

(clxxviii) (clxxiv) "**Required DIP Lenders**" has the meaning set forth in the DIP Credit Agreement.

(clxxix) (clxxv) "**Required Noteholders**" means the holders of more than 50% of the aggregate principal amount of the Prepetition Secured Notes Obligations.

(clxxx) (clxxvi) "**Required RCF Lenders**" means "Required Lenders" as defined in the RCF Loan Documents.

(clxxxi) (clxxvii) "**Required Roll-Up Lenders**" has the meaning set forth in the DIP Credit Agreement.

(clxxxii) (clxxviii) "**Review Parties**" has the meaning set forth in paragraph 9 of this ~~Interim DIP~~Final Order.

(clxxxiii) (clxxix) "**Review Period**" has the meaning set forth in paragraph 9 of this Interim DIPFinal Order.

(clxxxiv) (clxxx) "**Revolving Credit Facility**" has the meaning set forth in the First Day Declaration.

(clxxxv) (clxxxi) "**Revolving Priority Collateral**" has the meaning set forth in the RCF Priority Collateral ICA.

(clxxxvi) (clxxxii) "**Roll-Up DIP Loan Allocation**" has the meaning ascribed to the term "Roll-Up Term Loan Allocation" in the DIP Credit Agreement.

(clxxxvii)     (clxxxiii) "**Roll-Up DIP Lenders**" has the meaning set forth in paragraph 14(a) of this Interim DIPFinal Order.

(clxxxviii)     (clxxxiv) "**Roll-Up DIP Loans**" has the meaning set forth in subparagraph (a)(iii)(a)(ii) of the introductory paragraph of this Interim DIPFinal Order.

(clxxxix) (clxxxv) "**Roll-Up DIP Obligations**" has the meaning set forth in subparagraph (a)(iii) of the introductory paragraph of this Interim DIPFinal Order; *provided, however*, for the avoidance of doubt, unless and until any such Contingent Roll-Up Term Loans are exchanged for and converted to Roll-Up DIP Loans, obligations in respect of the Contingent Roll-Up Term Loans are not Roll-Up DIP Obligations.

(cxc)     (clxxxvi) "**Roll-Up Superpriority Claims**" has the meaning set forth in paragraph 6 of this Interim DIPFinal Order.

(cxci)     "**Satisfaction of Replenishment Obligations**" has the meaning set forth paragraph 4(b)of this Final Order.

(cxcii)     (clxxxvii) "**Second Draw**" has the meaning set forth in subparagraph (a)(i) of the introductory paragraph of this Interim DIPFinal Order.–

(cxciii)     (clxxxviii) "**Second Interim Adequate Protection Order**" has the meaning set forth in the introductory paragraph of this Interim DIPFinal Order.

(cxciv)     (clxxxix) "**Second Interim Hearing**" has the meaning set forth in the introductory paragraph of this Interim DIPFinal Order.

(cxcv)     (cxc) "**Secured Documents**" means, collectively, the Amended and Restated Revolving Credit Facility Agreement together with all agreements, documents, instruments, and/or amendments executed and delivered in connection therewith and the Secured Notes Indenture together with all agreements, documents, instruments, and/or amendments executed and delivered in connection therewith.

(cxcvi)     (cxci) "**Secured Noteholders**" has the meaning set forth in paragraph G(i) of this Interim DIPFinal Order.

15

(cxcvii)    (cxcii)  "**Secured Notes**" has the meaning set forth in paragraph G(i) of this Interim DIPFinal Order.

(cxcviii)    (cxciii)  "**Secured Notes Adequate Protection Claims**" has the meaning set forth in paragraph 7(a) of this Interim DIPFinal Order.

(cxcix)    (cxciv)  "**Secured Notes Adequate Protection Liens**" has the meaning set forth in paragraph 7(b) of this Interim DIPFinal Order.

(cc)    (cxcv)  "**Secured Notes Adequate Protection Obligations**" has the meaning set forth in paragraph 7 of this Interim DIPFinal Order.

(cci)    (cxcvi)  "**Secured Notes Adequate Protection Professional Fees and Expenses**" has the meaning set forth in paragraph 7(d) of this Interim DIPFinal Order.

(ccii)    (cxcvii)  "**Secured Notes Cash Collateral Adequate Protection Liens**" has the meaning set forth in paragraph 7(c) of this Interim DIPFinal Order.

(cciii)    (cxcviii)  "**Secured Notes Collateral Agency & Accounts Agreement**" has the meaning set forth in paragraph G(i) of this Interim DIPFinal Order.

(cciv)    (cxcix)  "**Secured Notes Collateral Agent**" has the meaning set forth in paragraph G(i) of this Interim DIPFinal Order.

(ccv)    (cc)  "**Secured Notes Depositary**" has the meaning set forth in paragraph G(i) of this Interim DIPFinal Order.

(ccvi)    (cci)  "**Secured Notes Documents**" has the meaning set forth in paragraph G(i) of this Interim DIPFinal Order.

(ccvii)    (ccii)  "**Secured Notes Guarantors**" has the meaning set forth in paragraph G(i) of this Interim DIPFinal Order.

(ccviii)    (cciii)  "**Secured Notes Indenture**" has the meaning set forth in paragraph G(i) of this Interim DIPFinal Order.

(ccix)    (cciv)  "**Secured Notes Issuers**" has the meaning set forth in paragraph G(i) of this Interim DIPFinal Order.

(ccx)    (ccv)  "**Secured Notes Parties**" has the meaning set forth in paragraph G(i) of this Interim DIPFinal Order.

(ccxi)    (ccvi)  "**Secured Notes Permitted Liens**" has the meaning set forth in paragraph G(iii) of this Interim DIPFinal Order.

(ccxii)    (ccvii)  "**Secured Notes Trustee**" has the meaning set forth in paragraph G(i) of this Interim DIPFinal Order.

(ccxiii)    (ccviii) "**Secured Parties**" means, collectively, the RCF Secured Parties and the Secured Notes Parties.

(ccxiv)    (ccix) "**Senior Secured Debt Documents**" has the meaning set forth in the Secured Notes Collateral Agency & Accounts Agreement.

(ccxv)    (ccx) "**Senior Secured Parties**" has the meaning set forth in the Secured Notes Collateral Agency & Accounts Agreement.

(ccxvi)    (ccxi) "**Spare Parts**" has the meaning set forth in the Amended and Restated Revolving Credit Facility Agreement.

(ccxvii)    "**Spare Parts Cap**" means, absent consent of the RCF Agents (acting at the direction of the requisite RCF Lenders) to, or further order of the Court providing for, an increase in amount, (x) up to $1,000,000 in proceeds from the sale or disposition of Spare Parts that are Revolving Priority Collateral from October 20, 2025 through and including December 31, 2025, and (y) $300,000 in proceeds from the sale or disposition of Spare Parts that are Revolving Priority Collateral in each fiscal quarter of the fiscal year thereafter; *provided*, that, to the extent the caps set forth in clauses (x) or (y) of this definition are not exhausted on or prior to the applicable dates set forth therein, the Debtors remain authorized to use the remaining amounts in any future periods.

(ccxviii)    (ccxii) "**Spare Parts Collateral**" has the meaning set forth in paragraph 8(b) of this Interim DIPFinal Order.

(ccxix)    (ccxiii) "**Spare Parts Security Agreement**" has the meaning set forth in footnote 6 of this Interim DIPFinal Order.

(ccxx)    (ccxiv) "**Specified Encumbered Accounts**" has the meaning set forth in paragraph 4(b) of this Interim DIPFinal Order.

(ccxxi)    (ccxv) "**Standing Motion**" has the meaning set forth in paragraph 15(a) of this Interim DIPFinal Order.

(ccxxii)    (ccxvi) "**Straddle Credit Card Receipts**" has the meaning set forth in paragraph G(iii) of this Interim DIPFinal Order.

(ccxxiii)    (ccxvii) "**Successor Cases**" means, collectively, any case under chapter 7 of the Bankruptcy Code upon the conversion of any of the Chapter 11 Cases, and/or upon the dismissal of any of the Chapter 11 Cases or any such successor cases.

(ccxxiv)    (ccxviii) "**Successor Entities**" has the meaning set forth in paragraph 15(a) of this Interim DIPFinal Order.

(ccxxv)    (ccxix) "**Supplement to DIP Motion**" means the *Supplement to the Motion of Debtors for Entry of (I) Interim and Final Orders, Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 503, 506, 507, and 552, (A) Authorizing the Debtors to Obtain Post-Petition Financing, (B) Granting Senior Liens and Superpriority Administrative Expense Claims, (C) Granting Adequate*

17

*Protection, (D) Modifying the Automatic Stay, (E) Scheduling a Final Hearing on the Motion; and (F) Granting Related Relief; and (II) Third Interim Order (A) Authorizing the Debtors to Utilize Cash in Encumbered Accounts; (B) Granting Adequate Protection; (C) Modifying the Automatic Stay; (D) Scheduling a Final Hearing on the Motion; and (E) Granting Related Relief* [ECF No. 211].

(ccxxvi) ~~(ccxx)~~ "**Supplemental Adequate Protection Motion**" has the meaning set forth in the introductory paragraph of this ~~Interim DIP~~Final Order.

(ccxxvii) ~~(ccxxi)~~ "**Third Draw**" has the meaning set forth in subparagraph (a)(i) of the introductory paragraph of this ~~Interim DIP~~Final Order.

(ccxxviii)        ~~(ccxxii)~~ "**UCC**" means the Uniform Commercial Code.

(ccxxix) ~~(ccxxiii)~~ "**Unencumbered Funds**" has the meaning set forth in paragraph 4(a) of this ~~Interim DIP~~Final Order.

(ccxxx) ~~(ccxxiv)~~ "**U.S. Trustee**" has the meaning set forth in paragraph C of this ~~Interim DIP~~Final Order.

(ccxxxi) ~~(ccxxv)~~ "**Utility Deposit Account**" has the meaning ascribed to such term in the *Motion of the Debtors for Entry of Interim and Final Orders (I) Prohibiting Utilities from Altering, Refusing, or Discontinuing Service, (II) Deeming Utilities Adequately Assured of Future Performance, and (III) Establishing Procedures for Determining Requests for Additional Adequate Assurance* [ECF No. 9].

***

**<u>Exhibit C</u>**

**Revised Proposed Final DIP Order**

**(Change Pages against the Initial Proposed Final DIP Order)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| **SPIRIT AVIATION HOLDINGS, INC.,** *et al.*, | Case No. 25-11897 (SHL) |
| Debtors.[1] | Jointly Administered |

**FINAL ORDER (I) AUTHORIZING THE
DEBTORS TO OBTAIN POSTPETITION FINANCING;
(II) GRANTING SENIOR SECURED LIENS AND SUPERPRIORITY
ADMINISTRATIVE EXPENSE CLAIMS; (III) AUTHORIZING THE
DEBTORS TO UTILIZE CASH IN ENCUMBERED ACCOUNTS;
(IV) GRANTING ADEQUATE PROTECTION; (V) MODIFYING
THE AUTOMATIC STAY; AND (VI) GRANTING RELATED RELIEF**[1]

Upon the motion (including as supplemented by the Supplement to DIP Motion, the

"**DIP Motion**")[22] of Spirit Aviation Holdings, Inc. and its direct and indirect subsidiaries

(collectively, the "**Debtors**"), each of which is a debtor and debtor in possession in the

above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), pursuant to sections 105, 361, 362,

363, 364, 503, 506, 507, and 552 of title 11 of the United States Code (the "**Bankruptcy**

**Code**"), rules 2002, 4001, 6003, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure

(the "**Bankruptcy Rules**"), and rules 2002-1, 4001-2, and 9013-1 of the Local Bankruptcy Rules

for the Southern District of New York (the "**Local Rules**") promulgated by the United States

Bankruptcy Court for the Southern District of New York (the "**Court**"), seeking entry of an

---

[1] The Debtors' names and last four digits of their respective employer identification numbers are as follows: Spirit Aviation Holdings, Inc. (1797); Spirit Airlines, LLC (7023); Spirit Finance Cayman 1 Ltd. (7020); Spirit Finance Cayman 2 Ltd. (7362); Spirit IP Cayman Ltd. (4732); and Spirit Loyalty Cayman Ltd. (4752). The Debtors' mailing address is 1731 Radiant Drive, Dania Beach, FL 33004.

[1] ~~The proposed Final DIP Order remains subject to ongoing review and negotiation by the Debtors, the DIP Lenders, the Secured Parties, and the Creditors' Committee.~~

[22] Capitalized terms used but not defined herein (including **Annex A** hereto) shall have the meanings ascribed to them in the DIP Motion or the First Day Declaration, as applicable.

interim order (the "**Interim DIP Order**") and this final order (this "**Final Order**") providing,

among other things,

(a)   authorization for Debtor Spirit Airlines, LLC, as borrower (the "**Borrower**"), to obtain postpetition financing, and for each of the other Debtors to guarantee unconditionally, as guarantors (the "**Guarantors**"), on a joint and several basis, the Borrower's obligations in connection with a multi-draw senior secured non-amortizing superpriority priming debtor-in-possession facility (the "**DIP Facility**") in the aggregate principal amount of up to $1,225,000,000, comprising:

(i)   new money term loans in an aggregate principal amount of up to $475,000,000, available in four draws, of which (A) a principal amount of $200,000,000 was made available in a single draw (the "**Initial Draw**") upon satisfaction of the conditions set forth in the DIP Documents and the entry of the Interim DIP Order, comprising new money term loans (the "**Interim New Money DIP Loans**"), which was provided and funded through Barclays Bank, PLC, as fronting lender (the "**Fronting Lender**"),[33] in accordance with the terms of the DIP Credit Agreement (as defined below and attached hereto as **Exhibit 3**) and the Commitment Letter (as defined below), and (B) an additional principal amount of new money loans (the "**Final New Money DIP Loans**" and, together with the Interim New Money DIP Loans, the "**New Money DIP Loans**") equal to the undrawn portion of the DIP Facility available in three separate draws (each draw, the "**Second Draw**," "**Third Draw**," and "**Fourth Draw**"), in the amounts and upon satisfaction of the conditions related to each separate draw set forth in the DIP Documents (as defined below) and the entry of this Final Order, from the lenders (the "**DIP Lenders**") providing such New Money DIP Loans or taking such New Money DIP Loans by assignment from the Fronting Lender;

(ii)   upon the DIP Syndication Initial Closing Date and upon the DIP Syndication Final Closing Date, respectively, for Contingent Roll-Up Term Loans deemed to be outstanding under the DIP Credit Agreement in an amount not to exceed the aggregate amount of the Prepetition Secured Notes Obligations constituting principal and (i) accrued and unpaid interest thereon through the Petition Date and (ii) solely to the extent permitted under section 506(b) of the Bankruptcy Code, all interest accrued thereon after the Petition Date (the "**Prepetition Secured Notes P&I Obligations**") that are validly tendered in the DIP Syndication by the

---

[33]   So long as the Fronting Lender is a holder of New Money DIP Loans (as defined below), the Fronting Lender shall be included in the definition of DIP Lenders.  For the avoidance of doubt, and notwithstanding anything to the contrary herein, the Fronting Lender, by acting in such capacity, does not make any commitments, undertake any obligations, or waive any rights, including whether to take or not take any action or to exercise or seek to exercise any rights or remedies, in each case in connection with any other claims or interests it may hold against any of the Debtors.

DIP Syndication Initial Closing Date or the DIP Syndication Final Closing Date, as applicable; and

(iii)    (A) upon entry of the Interim DIP Order, the DIP Syndication Initial Closing Date, and the DIP Syndication Final Closing Date, and subject to the terms and conditions set forth herein and in the DIP Documents, for Contingent Roll-Up Term Loans to be deemed exchanged for term loans deemed made by the DIP Lenders and borrowed by the Borrower under the DIP Credit Agreement (the "**Interim Roll-Up**") on a 2 to 1 ratio to Interim New Money DIP Loans actually funded (prior to accounting for any OID (as defined below)) (the "**Interim Roll-Up DIP Loans**") and (B) upon entry of this Final Order, and subject in each case to the terms and conditions set forth herein and in the DIP Documents, for Contingent Roll-Up Term Loans to be deemed exchanged (the "**Final Roll-Up**") for term loans deemed made by the DIP Lenders and borrowed by the Borrower under the DIP Credit Agreement (the "**Final Roll-Up DIP Loans**" and, together with the Interim Roll-Up DIP Loans, the "**Roll-Up DIP Loans**")[44] and, with all obligations related thereto and set forth in the DIP Documents, the "**Roll-Up DIP Obligations**"; and the Roll-Up DIP Loans, together with the New Money DIP Loans, the "**DIP Loans**"; and the commitments in respect of the New Money DIP Loans, the "**DIP Commitments**"; and all obligations related to the DIP Loans and the DIP Commitments, in each case as set forth in the DIP Documents, including the Roll-Up DIP Obligations, the "**DIP Obligations**"); *provided*, *however*, (i) with respect to the Second Draw (if applicable), Contingent Roll-Up Term Loans shall be deemed exchanged for Final Roll-Up DIP Loans on a 2 to 1 ratio to Final New Money DIP Loans actually funded, (ii) subject to the draw conditions set forth in the DIP Credit Agreement for the Second Draw, if such conditions are satisfied for an additional $25,000,000 or $75,000,000, as applicable in accordance with the DIP Credit Agreement, Contingent Roll-Up Term Loans shall be deemed exchanged for Final Roll-Up DIP Loans on a 1 to 1 ratio to Final New Money DIP Loans actually funded (such additional $25,000,000 or $75,000,000 draw, as applicable, the "**Incremental Second Draw**") (such Incremental Second Draw being included in the $475,000,000 aggregate new money amount of the DIP Facility), (iii) with respect to the Third Draw (if applicable), Contingent Roll-Up Term Loans shall be deemed exchanged for Final Roll-Up DIP Loans on a 1.25 to 1 ratio to Final New Money DIP Loans actually funded, and (iv) with respect to the Fourth Draw (if applicable), Contingent Roll-Up Term Loans shall be deemed exchanged for Final Roll-Up DIP Loans on a 1.25 to 1 ratio to Final New Money DIP Loans actually funded;

---

[44] The Roll-Up DIP Loans shall not exceed (and shall be capped at) the lesser of the total aggregate amount of Prepetition Secured Notes P&I Obligations that are validly tendered in the DIP Syndication and $750 million.

3

(b)     authorization for the Debtors to enter into the DIP Documents, the Commitment Letter, and any and all other documents related to the fronting or seasoning of the DIP Loans, and to perform their respective obligations thereunder and all such other and further acts as may be necessary, appropriate, or desirable in connection with the DIP Documents;

(c)     authorization for the Debtors to use the proceeds of the DIP Commitments and the Prepetition Collateral (as defined below) and the continued use of Unencumbered Funds, to the extent authorization is necessary, and up to $120,000,000 of Encumbered Cash in the Specified Encumbered Accounts prior to the Satisfaction of Replenishment Obligations (as defined below) in accordance with the terms hereof, to pay fees and interest under the DIP Facility and to provide working capital for, and for other general corporate purposes of, the Debtors, including for funding the Carve Out (as defined below) and paying any Adequate Protection Obligations (as defined below);

(d)     approval, on a final basis, of the Debtors' replenishment of the Specified Encumbered Accounts in an amount equal to the amount used by the Debtors of the $120,000,000 of Encumbered Cash that was authorized to be used pursuant to the Second Interim Adequate Protection Order and the Interim DIP Order, upon the later to occur of the Debtors' receipt of (i) the Initial Draw and (ii) the proceeds from the AerCap Liquidity Payment (as defined below);

(e)     for the grant of adequate protection to the RCF Secured Parties (as defined below) and the Secured Notes Parties (as defined below);

(f)     authorization for the Debtors to pay, on a final and irrevocable basis, the principal, interest, fees, expenses, and other amounts payable under the DIP Documents as such become earned, due and payable, including, without limitation the OID (as defined below) and the Backstop Premium (as defined below), agency fees, audit fees, appraisal fees, valuation fees, administrative and collateral agents' fees, and the reasonable and documented fees and disbursements of the DIP Facility Agent's (as defined below) and the other DIP Secured Parties' (as defined below) attorneys, advisors, accountants, appraisers, bankers, and other consultants, all to the extent provided in, and in accordance with, the DIP Documents;

(g)     the grant to the DIP Facility Agent, for the benefit of itself and the other DIP Secured Parties, of automatically perfected, valid, enforceable, non-avoidable, and fully-perfected liens and security interests pursuant to sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code and priming liens pursuant to section 364(d)(1) of the Bankruptcy Code on the DIP Collateral (as defined below) and all proceeds thereof, including, upon entry of this Final Order, Avoidance Proceeds (as defined below and to the extent provided herein), subject and subordinate only to (i) the Carve Out, (ii) the Permitted Liens (as defined below), if any, (iii) the Secured Notes Cash Collateral Adequate Protection Liens (but solely until the Satisfaction of Replenishment Obligations) and (iv) in respect of the Revolving Priority

4

*Related Relief* [ECF No. 250]; and the Court having considered the First Adequate Protection Motion, the Supplemental Adequate Protection Motion, the DIP Motion, the Declarations, and the evidence submitted and the arguments proffered or adduced at the First Interim Hearing, the Second Interim Hearing, the Interim DIP Hearing, and the Final Hearing (the Final Hearing, collectively with the First Interim Hearing, the Second Interim Hearing, and the Interim DIP Hearing, the "**Hearings**"); and upon the record of the Chapter 11 Cases; and due and proper notice of the Final Hearing having been given in accordance with Bankruptcy Rule 4001, all applicable Local Rules, and the Case Management Procedures; and it appearing that no other or further notice need be provided; and all objections, if any, to the relief requested in the DIP Motion having been withdrawn, resolved or overruled by the Court; and it appearing to the Court that granting the relief requested in the Interim DIP Order was necessary to avoid immediate and irreparable harm to the Debtors and their estates and granting the relief request in this Final Order is fair and reasonable and in the best interests of the Debtors, their estates, their creditors, and all parties in interest, and is essential for the continued operation of the Debtors' businesses and the preservation of the value of the Debtors' estates; and it appearing that the Debtors' entry into the DIP Documents is a sound and prudent exercise of the Debtors' business judgment; after due deliberation and consideration, and for good and sufficient cause appearing therefor;

**BASED ON THE REPRESENTATIONS OF THE DEBTORS, THE CREDITORS' COMMITTEE, AND OTHER PARTIES, AND THE EVIDENCE PRESENTED, AT THE FINAL HEARING, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**[55]

---

[55] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

8

interests in the Prepetition Secured Notes Collateral constituting Notes Priority Collateral (as defined in that certain Notes Priority Collateral Intercreditor Agreement, dated as of March 12, 2025, by and among the Debtors, the RCF Administrative Agent, and the Secured Notes Collateral Agent (the "**Notes Priority Collateral ICA**")), which valid, binding, perfected, and enforceable Prepetition Secured Notes Liens extended to, among other things, (1) the following accounts and all assets contained therein as of the Petition Date, and the proceeds thereof: (A) the accounts in the name of Spirit Airlines, LLC with the last four digits 6877 and 1857, each maintained at JP Morgan Chase, N.A.; (B) the account in the name of Spirit Airlines, LLC with the last four digits 8796 maintained at U.S. Bank, N.A.; and (C) the accounts in the name of Spirit Loyalty Cayman Ltd. with the last four digits x5-000, x5-001, x5-002, x5-004, and x5-005, each maintained at Wilmington Trust ~~N.A.~~, National Association (the "**Cayman Accounts**") (collectively, (A)-(C), the "**Encumbered Accounts**") and (2) the approximately $23,000,000 in post-petition amounts received or expected to be received from the Debtors' credit card processors on account of prepetition sales (the "**Straddle Credit Card Receipts**"), which as of the date hereof are held in the account in the name of Spirit Airlines, LLC with the last four digits 6877 maintained at JP Morgan Chase, N.A., and (y) second priority liens and security interests in the Prepetition Secured Notes Collateral constituting Revolving Priority Collateral (as defined in the RCF Priority Collateral ICA), junior only to the Prepetition RCF Liens on the Revolving Priority Collateral pursuant to the terms of the RCF Priority Collateral ICA and RCF Permitted Liens, (ii) except to the extent, if any, that certain liens or security interests in certain real property may be subject to avoidance under the Bankruptcy Code or other applicable law, are not subject, pursuant to the Bankruptcy Code or other applicable law, to avoidance, recharacterization, recovery, subordination, attack, offset, counterclaim, defense, or Claim of any

13

businesses, (ii) maintain business relationships with their vendors, suppliers, customers, and other parties, (iii) pay the costs of the administration of the Chapter 11 Cases, (iv) satisfy the Adequate Protection Obligations (as defined below), and (v) satisfy other working capital and general corporate purposes of the Debtors.  The Debtors' ability to obtain liquidity through the use of up to $120,000,000 of Encumbered Cash in the Specified Encumbered Accounts was vital to the Debtors' efforts to maximize the value of their assets.   On [October [•]27, 2025], in accordance with the Second Interim Adequate Protection Order and the Interim DIP Order, the Satisfiaction Satisfaction of Replenishment Obligations occurred.

(ii)    Need for Postpetition Financing.  The Debtors have a need to obtain the DIP Facility to, among other things, (i) permit the orderly continuation of their respective businesses, (ii) maintain business relationships with their vendors, suppliers, customers, and other parties, (iii) pay the costs of the administration of the Chapter 11 Cases, (iv) satisfy the Adequate Protection Obligations (as defined below), and (v) satisfy other working capital and general corporate purposes of the Debtors.  The Debtors' ability to obtain liquidity through the incurrence of the new indebtedness for borrowed money and other financial accommodations under the DIP Facility is vital to the Debtors' efforts to maximize the value of their assets.

(iii)    Inability to Obtain More Favorable Financing.  The Debtors are unable to obtain financing on more favorable terms from sources other than the DIP Lenders under the DIP Documents and are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense.  The Debtors also are unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2), and 364(c)(3) of the Bankruptcy Code for the purposes set forth in the DIP Documents without the Debtors (i) granting to the DIP Facility Agent, for the benefit of itself and the other DIP Secured Parties, the

18

DIP Motion, the relief requested therein, and the Final Hearing complies with Bankruptcy Rules 2002, 4001(b) and (c), and 9014, the applicable Local Rules, and the Case Management Procedures.

L.      *Findings Regarding Roll-Up DIP Loans*.  Local Rule 4001-2(g)(5) applied to the relief granted in the Interim DIP Order, and based on the representations made and the evidence presented at the Interim DIP Hearing as reflected in the transcript, there are no Challenges with respect to the Interim Roll-Up and the DIP Liens granted with respect thereto.  Local Rule 4001-2(g)(5) also applied to the relief granted in this Final Order, and based on the representations made and the evidence presented at the Final Hearing as reflected in the transcript, there are no Challenges with respect to an additional $150,000,000 of the Final Roll-Up and the DIP Liens granted with respect thereto.  For the avoidance of doubt, nothing in this Final Order impairs the right of the Creditors' Committee to seek to Challenge and for the Court to grant appropriate relief with respect to (i) any Roll-Up DIP Obligations in excess of the principal amount of $550,000,000 (plus interest, if any) or (ii) the extent of the Prepetition Secured Notes Liens securing the Prepetition Secured Notes Obligations after accounting for the Roll-Up DIP Loans.

M.      *Replenishment of Encumbered Cash*.  Based on the representations made by the Debtors at the Final Hearing, on October [●]27, 2025, the Debtors replenished all Encumbered Cash authorized to be used pursuant to the Second Interim Adequate Protection Order and the Interim DIP Order by depositing (i) $[ ]37,753,772.85 into the account in the name of Spirit Airlines, LLC with the last four digits [ ]x1857 and (ii) $45,000,000.00 into the account in the name of Spirit Airlines, LLC with the last four digits x6877, and the Satisfaction of Replenishment Obligations therefore has occurred.

24

authorized, on a final basis, to provide a guarantee of payment and performance in respect of the DIP Obligations, in each case, in accordance with the DIP Documents, and the DIP Obligations hereby are approved, on a final basis, (as and when such amounts become earned, due, and payable in accordance with the DIP Documents) without the need to seek further Court approval.

(c)    Use of DIP Collateral and Prepetition Collateral.  The Debtors are hereby authorized, on a final basis, to use the proceeds of the DIP Collateral and the Prepetition Collateral of the Secured Parties (excluding, for the avoidance of doubt, the $120,000,000 of Encumbered Cash in the Specified Encumbered Accounts authorized to be used pursuant to the Second Interim Adequate Protection Order and the Interim DIP Order, as a result of the occurrence of the Satisfaction of Replenishment Obligations), upon the terms and conditions and to the extent set forth in this Final Order and the DIP Documents.  In accordance with the DIP Documents, upon the sale or other disposition of any DIP Collateral (excluding any Revolving Priority Collateral) that is required to repay the DIP Obligations (including, without limitation, the proceeds from any sale of the Headquarters), the proceeds thereof shall first be applied to repay the New Money DIP Loans, and thereafter, any remaining proceeds shall be used to repay the Roll-Up DIP Loans, in each case, in accordance with the terms and priorities set forth in this Final Order and the DIP Documents.

(d)    DIP Fees and Expenses; Indemnification.  Subject to paragraph 2(b) of this Final Order, the Debtors are hereby authorized and empowered, on a final basis, to pay all DIP Obligations as such amounts become due and payable in accordance with this Final Order and the DIP Documents, without the need for further order of the Court, and any and all fees payable in respect of the Initial Draw, the Second Draw, the Incremental Second Draw, the

26

Interim Roll-Up DIP Loans, the Final New Money DIP Loans, the Final Roll-Up DIP Loans, and other DIP Obligations to the DIP Secured Parties or, subject to paragraph 15, the Secured Parties, shall be limited, stayed, restrained, voidable, avoidable, or recoverable under the Bankruptcy Code or under any applicable law, or subject to any Challenge (subject, solely in the case of the DIP Fees and Expenses and the Adequate Protection Professional Fees and Expenses (as defined below), to the professional fee review procedures set forth in paragraph 9 of this Final Order).

4. *Use of Funds.*

(a) Use of Unencumbered Funds. To the extent authorization is necessary, the Debtors are hereby further authorized to use, on a consensual basis, (a) the $275,000,000.00 in available cash drawn on August 21, 2025, under their Revolving Credit Facility (the "**Available RCF Cash**"), (b) cash in the Foreign Accounts (as defined and further described in the *Motion of the Debtors for Entry of Interim and Final Orders (I) Authorizing (A) the Debtors to Maintain Their Existing Cash Management System, Bank Accounts, and Business Forms, (B) the Debtors to Open and Close Bank Accounts, and (C) Financial Institutions to Administer the Bank Accounts and Honor and Process Related Checks and Transfers, (II) Waiving Deposit and Investment Requirements, and (III) Allowing Intercompany Transactions and Affording Administrative Expense Priority to Post-Petition Intercompany Claims* [ECF No. 18] (the "**Cash Management Motion**"), (c) Post-Petition Cash, and (d) any other unencumbered cash, including the AerCap Liquidity Payment, not subject to any perfected lien or other security interest (which amounts in this clause (d), for the avoidance of doubt, shall exclude (w) the Encumbered Cash, (x) the Owned Aircraft Surplus (until such time as the Replenishment of Encumbered Cash, after which such Owned Aircraft Surplus may be used solely in accordance with this Final Order and

the DIP Documents), (y) other than with respect to Revolving Priority Collateral, any other cash, funds, investments, or securities from the sale or disposition of Prepetition Collateral or DIP Collateral, in each case outside of the ordinary course of business, and (z) with respect to Revolving Priority Collateral, any proceeds thereof other than Spare Parts up to the Spare Parts Cap and sold in the ordinary course of business and consistent with past practice, (collectively, (a)-(d), the "**Unencumbered Funds**").  Notwithstanding the foregoing, (i) all Unencumbered Funds (including the AerCap Liquidity Payment as defined in the *Motion of Debtors for Entry of an Order (I) Approving the Global Restructuring Term Sheet with AerCap Ireland Limited, (II) Authorizing and Approving Assumption and Rejection of Certain Aircraft Agreements, (III) Authorizing Entry Into the New Lease Agreements and Definitive Documents, and (IV) Granting Related Relief* [ECF No. 135] (the "**AerCap Motion**") shall constitute DIP Collateral and (ii) all parties' rights are reserved as to whether the Unencumbered Funds are encumbered by Prepetition Secured Notes Liens and Prepetition RCF Liens.

(b)      Use of Encumbered Cash in the Specified Encumbered Accounts and Satisfaction of Replenishment Obligations.  The Debtors were authorized pursuant to the Second Interim Adequate Protection Order and the Interim DIP Order to use, on a consensual basis, up to $120,000,000 of Encumbered Cash comprising (A) the amount in the account in the name of Spirit Airlines, LLC with the last four digits 6877 maintained at JP Morgan Chase, N.A. and (B) $37,536,270 of the amount in the account in the name of Spirit Airlines, LLC with the last four digits 1857 maintained at JP Morgan Chase, N.A. (such accounts, the "**Specified Encumbered Accounts**").  The satisfaction of the Secured Notes Adequate Protection Claim arising from the Diminution in Value in the amount equal to the amount of Encumbered Cash in the Specified Encumbered Accounts used by the Debtors pursuant to the Second Interim

32

Adequate Protection Order and the Interim DIP Order through the replenishment in full thereof (the "**Replenishment of Encumbered Cash**") on the later of (a) the Debtors' receipt of the Initial Draw and (b) the receipt of the AerCap Liquidity Payment as defined in the AerCap Motion, which occurred on October [●]27, 2025, was authorized by the Interim DIP Order and is affirmed by this Final Order (the "**Satisfaction of Replenishment Obligations**").  As of the Satisfaction of Replenishment Obligations, the Debtors are not authorized to use, and shall not use, cash, funds, investments, or securities from the Specified Encumbered Accounts or any other Encumbered Cash in any other Encumbered Accounts (including any amounts on account of the Satisfaction of Replenishment Obligations) without the consent of the Required DIP Lenders (other than to fund the Carve Out Reserves to the extent provided herein). Notwithstanding anything in this Final Order to the contrary, the Debtors are not authorized hereunder (or under any previously entered orders) to use the proceeds of Revolving Priority Collateral (other than cash up to the Spare Parts Cap from the sale or disposition of Spare Parts that are Revolving Priority Collateral, which sale or disposition is in the ordinary course of business and consistent with past practice) except to fund the Carve Out Reserves to the extent provided in this Final Order.

5.      *DIP Liens*.

(a)      As security for the DIP Obligations, effective as of the entry of the Interim DIP Order and as reaffirmed by this Final Order (and without the necessity of the execution, recordation or filing by the Debtors or the DIP Secured Parties of any pledge, collateral, or security documents, mortgages, deeds of trust, financing statements, notations of certificates of title, control agreements, or other similar documents, or the taking of any other action to take possession of or control over any DIP Collateral), the DIP Facility Agent, for the benefit of the

(a)    <u>Secured Notes Adequate Protection Claims</u>.  The Secured Notes Collateral Agent, for the benefit of itself and the Secured Notes Parties, is hereby granted, in the amount of any Diminution in Value of their interests in the Prepetition Secured Notes Collateral from and after the Petition Date, superpriority administrative expense claims to the extent contemplated by section 507(b) of the Bankruptcy Code (the "**Secured Notes Adequate Protection Claims**") against each of the Debtors.  The Secured Notes Adequate Protection Claims against each of the Debtors shall be (a) subject and subordinate only to the Carve Out and the DIP Superpriority Claims, (b) *pari passu* with the RCF Adequate Protection Claims, and (c) senior to any and all other administrative expense claims and all other claims against the Debtors and their estates, now existing or hereafter arising, of any kind or nature whatsoever, in each case, subject to the relative lien priorities set forth in **Exhibit 1**.

(b)    <u>Secured Notes Adequate Protection Liens</u>.  The Secured Notes Collateral Agent, for the benefit of itself and the Secured Notes Parties, is hereby granted, effective and perfected as of the entry of the First Interim Adequate Protection Order (and without the necessity of the execution, recordation, or filing by the Debtors or the Secured Notes Parties of any pledge, collateral, or security documents, mortgages, deeds of trust, financing statements, notations of certificates of title, control agreements, or other similar documents, or the taking of any other action to take possession of or control over any DIP Collateral), in the amount of any Diminution in Value of their interests in the Prepetition Secured Notes Collateral from and after the Petition Date, valid, binding, enforceable, and automatically perfected replacement and additional liens and security interests in the Owned Aircraft Surplus and the DIP Collateral (the "**Secured Notes Adequate Protection Liens**").  The Secured Notes Adequate Protection Liens shall be subordinate only to (a) the Carve Out and the DIP Liens, (b) with respect to the DIP

36

in the amount of any Diminution in Value of their interests in Cash Collateral from and after the Petition Date resulting from the use of the Encumbered Cash in the Specified Encumbered Accounts as authorized pursuant to the Second Interim Adequate Protection Order and the Interim DIP Order valid, binding, enforceable, and automatically perfected replacement and additional liens and security interests (the "**Secured Notes Cash Collateral Adequate Protection Liens**") in the net proceeds of the refinancing, sale or other disposition of the twenty (20) aircraft held for sale identified in **Exhibit 2** hereof (the "**Owned Aircraft**") after satisfaction in full of any Aircraft Debt secured by such Owned Aircraft (collectively, the "**Owned Aircraft Surplus**").  The Secured Notes Cash Collateral Adequate Protection Liens were subordinate to only the Carve Out and were otherwise senior to all other security interests in, liens on, and claims against the Owned Aircraft Surplus.  The Debtors' use of up to $120,000,000 of Encumbered Cash in the Specified Encumbered Accounts as authorized by the Second Interim Adequate Protection Order and the Interim DIP Order (net of any Replenishment of Encumbered Cash) constituted Diminution in Value in the amount equal to the amount of such cash so used; *provided* that as a result of the occurrence of the ~~Satisfiaction~~Satisfaction of Replenishment Obligations, the Debtors shall be permitted to use the Owned Aircraft Surplus solely in accordance with the terms of this Final Order and the DIP Documents (including, for the avoidance of doubt, any mandatory prepayment provisions thereof).  Absent further court order on proper notice to the Aircraft Counterparties holding the Aircraft Debt associated with the Owned Aircraft and Collateral Agent, and the Secured Notes Parties and the RCF Agents, the Debtors are prohibited from incurring additional indebtedness secured by or in respect of the Owned Aircraft, which notice would allow such parties to raise any adequate protection issues and/or the issues arising under section 1110 of the Bankruptcy Code.  Notwithstanding anything

to the contrary herein, following the Satisfaction of Replenishment Obligations, without the consent of the Required DIP Lenders, the Debtors shall be prohibited from granting any liens or security interests in the Owned Aircraft that are junior to the existing liens and security interests securing the Aircraft Debt as of the Petition Date; *provided*, *however*, that, the foregoing shall not prohibit the Debtors from refinancing such Aircraft Debt.

(d)　Secured Notes Adequate Protection Fees and Expenses.  The Debtors are authorized and directed to pay all of the reasonable and documented out-of-pocket fees, costs, and expenses related to these Chapter 11 Cases of the Secured Notes Trustee, the Secured Notes Collateral Agent, the Secured Notes Depositary, and the Ad Hoc Committee of Secured Noteholders, whether incurred prior to or after the Petition Date, including, without limitation, the reasonable and documented fees and expenses of (i) the advisors (legal, financial, or otherwise), including Seward & Kissel LLP, retained by the Secured Notes Trustee, the Secured Notes Collateral Agent, and the Secured Notes Depositary and (ii) the Ad Hoc Committee of Secured Noteholder Advisors, in each case, subject to the review procedures set forth in paragraph 9 of this Final Order, including the notice provisions thereof (the "**Secured Notes Adequate Protection Professional Fees and Expenses**").  For the avoidance of doubt, nothing in this Final Order constitutes a waiver of, or otherwise impairs, any rights of any party in interest to seek recharacterization as principal payments under the Secured Notes Indenture of any adequate protection fees and expenses payable to the Secured Notes Parties pursuant to this paragraph 7(d) or any other appropriate remedies.

(e)　Additional Secured Notes Adequate Protection Information Rights.  The Debtors shall provide the Ad Hoc Committee of Secured Noteholder Advisors at the same time as such reporting is provided to the RCF Administrative Agent and the RCF Administrative

Agent Advisors, all reporting to be provided to the RCF Administrative Agent and the RCF Administrative Agent Advisors as set forth herein, which reporting shall be provided to the Ad Hoc Committee of Secured Noteholder Advisors on a professional eyes-only basis, unless otherwise agreed by the Debtors.

8.    *Adequate Protection for the RCF Secured Parties.*  The RCF Secured Parties are entitled, pursuant to sections 361, 362, 363(e), and 507 of the Bankruptcy Code, to, and are hereby granted, on a final basis, adequate protection of the RCF Secured Parties' interests in Prepetition RCF Collateral (including in any Cash Collateral of the RCF Secured Parties), as follows (the "**RCF Adequate Protection Obligations**"):

(a)    RCF Adequate Protection Claims.  The RCF Administrative Agent, for the benefit of the RCF Secured Parties, is hereby granted, in the amount of any Diminution in Value of the RCF Secured Parties' respective interests in the Prepetition RCF Collateral from and after the Petition Date, superpriority administrative expense claims to the extent contemplated by section 507(b) of the Bankruptcy Code (the "**RCF Adequate Protection Claims**").  The RCF Adequate Protection Claims shall be (a) subject and subordinate only to the Carve Out and the DIP Superpriority Claims, (b) *pari passu* with the Secured Notes Adequate Protection Claims, and (c) senior to any and all other administrative expense claims and all other claims against the Debtors and their estates, now existing or hereafter arising, of any kind or nature whatsoever, in each case, subject to the relative lien priorities set forth in **Exhibit 1**.

(b)    RCF Adequate Protection Liens.  The RCF Agents, for the benefit of the RCF Secured Parties, are hereby granted, effective and perfected as of the entry of the First Interim Adequate Protection Order (and without the necessity of the execution, recordation, or filing by the Debtors or any RCF Secured Parties of any pledge, collateral, or security

documents, mortgages, deeds of trust, financing statements, notations of certificates of title, control agreements, or other similar documents, or the taking of any other action to take possession of or control over any DIP Collateral), valid, binding, enforceable, and automatically perfected replacement and additional liens and security interests, (1) in all Spare Parts (the "**Spare Parts Collateral**"), and (2) in the amount corresponding to any Diminution in Value of their interests in the Prepetition RCF Collateral from and after the Petition Date, in the Owned Aircraft Surplus (the "**RCF Secured Parties Cash Collateral Adequate Protection Liens**" and, together with the Secured Notes Cash Collateral Adequate Protection Liens, the "**Cash Collateral Adequate Protection Liens**") and all other DIP Collateral (the liens and security interests described in clauses (1) and (2), collectively, the "**RCF Adequate Protection Liens**"). The RCF Adequate Protection Liens on the DIP Collateral shall be subordinate to (a) the with respect to the DIP Collateral constituting Revolving Priority Collateral, the Professional Fee Carve Out (up to the RCF Professional Fee Carve Out Cap), (b) with respect to the DIP Collateral constituting Notes Priority Collateral, the Carve Out, the DIP Liens, the Secured Notes Adequate Protection Liens, and the Prepetition Secured Notes Liens, (c) with respect to DIP Collateral not constituting Notes Priority Collateral or Revolving Priority Collateral, the Carve Out and the DIP Liens, (d) with respect to the Owned Aircraft Surplus, prior to the Satisfaction of Replenishment Obligations, the Carve Out and the Secured Notes Cash Collateral Adequate Protection Liens and upon the Satisfaction of Replenishment Obligations, solely the Carve Out and the DIP Liens), and (e) the RCF Permitted Liens (if any) (and subject to the relative priorities set forth in **Exhibit 1**), it being understood that notwithstanding anything in the First Interim Adequate Protection Order, the Second Interim Adequate Protection Order, the Interim DIP Order, or this Final Order to the contrary, in no circumstances and at no time in

41

these Chapter 11 Cases shall the RCF Adequate Protection Liens on the DIP Collateral (other than in respect of Revolving Priority Collateral) be senior to or *pari passu* with any DIP Liens, regardless of whether any such liens attach prior in time.  The RCF Adequate Protection Liens on the Revolving Priority Collateral shall be subordinate only to (a) the Professional Fee Carve Out (up to the RCF Professional Fee Carve Out Cap) and (b) the ~~Prepetition~~ RCF Permitted Liens (if any).  Without limiting the foregoing, the RCF Adequate Protection Liens shall otherwise be senior to all other security interests in, liens on, or claims against any of the DIP Collateral (subject to the relative priorities set forth in **Exhibit 1**), including (but, except with respect to Revolving Priority Collateral, subordinate and junior to the DIP Liens to the extent set forth herein) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code.

(c)    RCF Adequate Protection Fees and Expenses.  The Debtors shall pay to the RCF Administrative Agent, for the benefit of the RCF Secured Parties, cash payments equal to the amount of all accrued and unpaid fees arising under section 2.19 of the Amended and Restated Revolving Credit Facility Agreement or under the Administrative Agent Fee Letter (as defined in the Amended and Restated Revolving Credit Facility Agreement) on the dates set forth in the RCF Loan Documents.  The Debtors are authorized and directed to pay all of the reasonable and documented out-of-pocket fees, costs, and expenses related to these Chapter 11 Cases of the RCF Secured Parties, whether incurred prior to or after the Petition Date, consisting of the reasonable and documented fees and expenses of (i) Milbank LLP, as counsel to the RCF Administrative Agent, (ii) Alston & Bird LLP, as counsel to the RCF Collateral Agent, (iii) one financial advisor to the RCF Secured Parties, (iv) an appraiser selected by Citibank N.A., as RCF Administrative Agent, or Wilmington Trust, National Association, as RCF Collateral Agent

42

in accordance with the RCF Loan Documents, and (v) any other advisor (legal, financial, or otherwise) as reasonably deemed necessary by Citibank N.A. solely to the extent payable under the RCF Loan Documents (the "**RCF Advisors**"), subject to the review procedures set forth in paragraph 9 of this Final Order, including the notice provisions thereof (the "**RCF Adequate Protection Professional Fees**" and, together with the Secured Notes Adequate Protection Professional Fees and Expenses, the "**Adequate Protection Professional Fees and Expenses**"). For the avoidance of doubt, nothing in this Final Order constitutes a waiver of, or otherwise impairs, any rights of any party in interest to seek recharacterization as principal payments under the Amended and Restated Revolving Credit Facility Agreement of any adequate protection fees and expenses payable to the RCF Secured Parties pursuant to this paragraph 8(c) or any other appropriate remedies.

(d)    <u>Reporting</u>.  The Debtors shall (i) provide the RCF Administrative Agent and the RCF Administrative Agent Advisors with all reports, documents, and other information required to be delivered to (x) any of the RCF Secured Parties pursuant to the terms of the RCF Loan Documents, including, without limitation, Sections 5.01(a), (b), (d) (limited solely to a reasonably detailed calculation of the Collateral Coverage Ratio without any requirement to demonstrate, or be in, compliance with either Section 6.08 or Section 6.09(a)), (e) (limited solely to a reasonably detailed description of any such Disposition of Collateral without any requirement to demonstrate, or be in, compliance with Section 6.09(a)), (g), and (i) of the Amended and Restated Revolving Credit Facility Agreement, all of which may be shared by the RCF Administrative Agent and the RCF Administrative Agent Advisors with the RCF Collateral Agent and/or the RCF Advisors to the RCF Collateral Agent, and (y) any provider of debtor-in-possession financing or any other Secured Party which may, to the extent such reports

43

and/or information are reasonably necessary for the RCF Collateral Agent to perform its obligations under the RCF Loan Documents, be shared by the RCF Administrative Agent and the RCF Administrative Agent Advisors with the RCF Collateral Agent and/or the RCF Advisors to the RCF Collateral Agent with the Debtors' prior consent (not to be unreasonably withheld, conditioned or delayed), and (ii) comply with all provisions of the RCF Loan Documents which relate to providing appraisals or allowing inspection rights, including, without limitation, Sections 5.07 and 5.14 of the Amended and Restated Revolving Credit Facility Agreement, Sections 3.08 and 3.09 of the Spare Parts Security Agreement,[66] and Section 3.03 of the Aircraft and Spare Engine Security Agreement;[77] *provided* that, notwithstanding anything to the contrary set forth in the RCF Loan Documents, any such post-petition inspection rights shall be subject to a frequency limitation of one such post-petition inspection of Eligible Spare Parts in addition to one such post-petition inspection of Eligible Engines (as defined under the Amended and Restated Revolving Credit Facility Agreement), every twelve (12) months at all times.  The Debtors' advisors will, at the RCF Administrative Agent Advisors', Ad Hoc Committee of Secured Noteholder Advisors', or counsel to the Creditors' Committee's reasonable request, participate in calls with the RCF Administrative Agent Advisors, Ad Hoc Committee of Secured Noteholder Advisors, or counsel to the Creditors' Committee regarding the Debtors' businesses, their efforts to obtain debtor-in-possession financing, or progress made towards confirmation of a chapter 11 plan or sale of the Debtors' assets.

(e)     <u>RCF Adequate Protection Payments</u>.  As further adequate protection, the RCF Agents shall receive, on behalf of the RCF Lenders, effective upon entry of the Interim DIP

---

[66] "Spare Parts Security Agreement" means that certain Mortgage and Security Agreement (Spare Parts), dated as of May 20, 2020, by and between Spirit Airlines, Inc and Wilmington Trust, National Association.

[77] "Aircraft and Spare Engine Security Agreement" means that certain Mortgage and Security Agreement, dated as of March 30, 2020, between Spirit Airlines, Inc. and Wilmington Trust, National Association.

(e) subject to paragraph 12 of this Final Order, the DIP Secured Parties and the Secured Parties to exercise, upon the occurrence of any DIP Termination Event (as defined below), all rights and remedies provided for in this Final Order, the DIP Documents, the ~~Prepetition~~ Secured Documents, or applicable law, and (f) the Debtors to perform under this Final Order and the DIP Documents and take any and all other actions that may be reasonably necessary or required for the performance by the Debtors under this Final Order and the DIP Documents and the implementation of the transactions contemplated hereunder and thereunder.

11.    *Perfection of the DIP Liens, Adequate Protection Liens, and Cash Collateral Adequate Protection Liens.*

(a)    The Interim DIP Order as reaffirmed by this Final Order was, and this Final Order shall be, sufficient and conclusive evidence of the attachment, validity, perfection, and priority of all liens and security interests granted therein and hereunder and/or under the DIP Documents, without the necessity of the execution, recordation, or filing of any pledge, collateral, or security agreements, mortgages, deeds of trust, control agreements, financing statements, notations of certificates of title for titled goods, or any other document or instrument, or the taking of any other action to take possession or control of any DIP Collateral, to attach, validate, perfect, or prioritize such liens and security interests, or to entitle the DIP Secured Parties and the Secured Parties to the priorities granted herein, including the relative priorities set forth in **Exhibit 1** (other than, to the extent applicable, any such filings required under applicable non-U.S. law to attach, validate, perfect, or prioritize such liens), it being understood that with respect to the RCF Adequate Protection Liens, other than as explicitly set forth in **Exhibit 1**, in no circumstances and at no time in these Chapter 11 Cases shall the RCF Adequate

terminate the ability (if any) of the Debtors to use any Cash Collateral of the RCF Secured Parties, and (iv) the commitment of each DIP Lender to make DIP Loans will be terminated to the extent any such commitment remains under the DIP Facility.  Notwithstanding the foregoing, the DIP Secured Parties and the Secured Notes Parties shall not exercise or enforce any rights or remedies against any Revolving Priority Collateral unless and until all Prepetition RCF Obligations and RCF Adequate Protection Obligations shall have received Payment in Full, and in each case, any such exercise of remedies shall be subject to the RCF Priority Collateral ICA and the Notes Priority Collateral ICA.  The automatic stay pursuant to section 362 of the Bankruptcy Code shall be automatically modified with respect to the DIP Secured Parties and the Secured Parties at the end of the Notice Period, without further notice to or order of the Court unless, (a) the DIP Facility Agent (acting at the direction of the Required DIP Lenders) and the Secured Notes Trustee (acting at the direction of the Required Noteholders), as applicable, elect otherwise in a written notice to the Debtors or (b) the Court orders otherwise or has determined that a DIP Termination Event has not occurred or is not occurring.  During the Notice Period, the Debtors may use the Unencumbered Funds, and solely to the extent the Unencumbered Funds are exhausted, proceeds of the DIP Facility (to the extent drawn prior to the occurrence of a DIP Termination Event) solely to (i) fund payroll and other operating expenses that are critically necessary to keep the Debtors' business operating, (ii) fund the Carve Out Reserves and, to the extent not already funded in the Administrative Claim Carve Out Segregated Account(s), the Administrative Claim Carve Out, and (iii) seek an Emergency Hearing before the Court as set forth in paragraph 13(c) hereto; *provided* that (x) Encumbered Cash may be used to fund the Carve Out Reserves and the Administrative Claim Carve Out to the extent provided in this Final Order, (y) proceeds of Revolving Priority Collateral may be used to fund the Carve Out Reserves

50

(up to the RCF Professional Fee Carve Out Cap) to the extent provided in this Final ~~DIP~~ Order, and (z) neither Revolving Priority Collateral nor proceeds thereof (excluding proceeds of Spare Parts up to the Spare Parts Cap sold or disposed of in the ordinary course of business and consistent with past practice) shall be used to fund the Administrative Claim Carve Out or payroll or operating expenses.

(c)    Emergency Hearing. Upon delivery of an Enforcement Notice, each of the DIP Secured Parties, the Secured Parties, the Debtors, and the Creditors' Committee, as applicable, consent to a hearing on an expedited basis (an "**Emergency Hearing**") to consider (a) whether a DIP Termination Event has occurred and (b) any appropriate relief (including, without limitation, the Debtors' non-consensual use of any Cash Collateral); *provided* that if a request for such hearing is made prior to the end of the Notice Period, the Notice Period shall be continued until the Court hears and rules with respect thereto.  At the end of the Notice Period (the "**DIP Termination Date**"), unless the Court has entered an order to the contrary or otherwise fashioned an appropriate remedy, the Debtors' right to use Cash Collateral of the ~~Prepetition~~ Secured Notes Parties shall immediately cease, and the DIP Facility Agent, the DIP Lenders, and the Secured Parties shall have the rights set forth in the paragraph immediately above, without the necessity of seeking relief from the automatic stay.

(d)    No Waiver for Failure to Seek Relief.  The failure or delay of the DIP Facility Agent, any of the other DIP Secured Parties, or any of the Secured Parties to exercise their respective rights and remedies under this Final Order, the DIP Documents, the Secured Documents, or applicable law, as the case may be, shall not constitute a waiver of their respective rights hereunder, thereunder, or otherwise.

51

13.    *Carve Out*.

(a)    <u>Priority of Carve Out</u>.    Each of the DIP Liens, the DIP Superpriority Claims, the Prepetition Liens, the Adequate Protection Liens, and the Adequate Protection Claims shall be subject and subordinate to payment of the Carve Out <u>to the extent set forth in</u> **<u>Exhibit 1</u>**.

(b)    <u>Professional Fee Carve Out</u>.    "**Professional Fee Carve Out**" means the sum of (i) all unpaid fees required to be paid to the Clerk of the Court and the Office of the United States Trustee under 28 U.S.C. § 1930(a) plus interest at the statutory rate pursuant to 31 U.S.C. § 3717, (ii) all unpaid reasonable fees and expenses up to $200,000 incurred by a trustee appointed under section 726(b) of the Bankruptcy Code, (iii) to the extent allowed by the Court at any time, all accrued but unpaid fees and expenses (the "**Allowed Professional Fees**") incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "**Debtor Professionals**") and the Creditors' Committee pursuant to sections 328 and 1103 of the Bankruptcy Code (the "**Committee Professionals**") at any time on and before the date of delivery by the DIP Facility Agent (acting at the direction of the Required DIP Lenders) of a Carve Out Trigger Notice (as defined below) (the amounts set forth in the foregoing clauses (i), (ii), and (iii), the "**Pre-Carve Out Notice Amount**"), and (iv) Allowed Professional Fees of Professional Persons incurred after the date of delivery of the Carve Out Trigger Notice, in an aggregate amount not to exceed $18,000,000 (plus any "success fee" or "transaction fee" reasonably expected to be payable to the Debtors' and/or Creditors' Committee's investment banker or financial advisor in accordance with their respective engagement letters and pursuant to a final order of the Bankruptcy Court allowing such fees) (the amount set forth in this clause (iv), the "**Post-Carve Out Notice Amount**"); *provided*, *however*,

that nothing herein shall be construed to impair the ability of any party-in-interest to object to the allowance of the fees applied for by Professional Persons.

(c)     <u>Carve Out Trigger Notice</u>.  For purposes of this Final Order, the "**Carve Out Trigger Notice**" shall mean a written notice (which may be via electronic mail) delivered by the DIP Facility Agent (acting at the direction of the Required DIP Lenders) to counsel to the Debtors, the U.S. Trustee, counsel to the Secured Notes Trustee, counsel to the RCF Agents, and counsel to the Creditors' Committee, which notice may only be delivered following the occurrence of a DIP Termination Event, stating that the Carve Out has been triggered and the Post-Carve Out Notice Amount has been invoked.  The Carve Out Trigger Notice may be included in the Enforcement Notice.

(d)     <u>Carve Out Reserves</u>.  On the date on which a Carve Out Trigger Notice is delivered (the "**Carve Out Trigger Date**"), the Carve Out Trigger Notice shall constitute a demand to the Debtors to utilize the Unencumbered Funds and, solely to the extent the Unencumbered Funds are exhausted, *first*, any other cash on hand as of such date and any available cash thereafter other than Encumbered Cash or any proceeds of Revolving Priority Collateral, ~~and,~~ *second*, only after such other cash is exhausted, the Encumbered Cash, and ~~any~~*third, only after the Encumbered Cash is exhausted, (x)* proceeds of Revolving Priority Collateral *up to the RCF Professional Fee Carve Out Cap and (y) proceeds of any other DIP Collateral (other than Revolving Priority Collateral) (provided, that the first $10,000,000 utilized pursuant to this third clause shall be funded equally from proceeds of (x) and (y)),* held by any Debtor to fund a reserve in an amount equal to the obligations accrued as of the Carve Out Trigger Date with respect to clauses (i) and (ii) of the definition of Professional Fee Carve Out, plus the Pre-Carve Out Notice Amount (the "**Additional Carve Out Obligations**") less any

amount then held in the Pre-Carve Out Trigger Notice Reserve pursuant to this paragraph 13(d). The Debtors shall deposit and hold such amounts in a segregated account (the "**Carve Out Account**") in a manner reasonably acceptable to the DIP Facility Agent (acting at the direction of the Required DIP Lenders), the Secured Notes Trustee, and the RCF Agents in trust to pay such then unpaid Allowed Professional Fees and Additional Carve Out Obligations (the "**Pre-Carve Out Trigger Notice Reserve**") prior to the use of such reserve to pay any other claims.  On the Carve Out Trigger Date, after funding the Pre-Carve Out Trigger Notice Reserve, the Debtors shall utilize Unencumbered Funds and, solely to the extent the Unencumbered Funds are exhausted, *first*, any other cash on hand as of such date and any available cash thereafter other than Encumbered Cash or any proceeds of Revolving Priority Collateral and, *second*, only after such other cash is exhausted, the Encumbered Cash, and any *third, only after the Encumbered Cash is exhausted, (x)* proceeds of Revolving Priority Collateral *up to the RCF Professional Fee Carve Out Cap and (y) proceeds of any other remaining DIP Collateral (other than Revolving Priority Collateral) (provided, that the first $10,000,000 utilized pursuant to this third clause shall be funded equally from proceeds of (x) and (y)),* to fund a reserve in an amount equal to the Post-Carve Out Notice Amount (the "**Post-Carve Out Trigger Notice Reserve**") prior to the use of such reserve to pay any other claims.  All funds in the Pre-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clauses (i) through (iii) of the definition of Professional Fee Carve Out set forth above in paragraph 13(b) (the "**Pre-Carve Out Amounts**"), until paid in full, and then, to the extent the Pre-Carve Out Trigger Notice Reserve has not been reduced to zero, subject to the terms of this Final Order, to pay any other amounts (if owing) benefitted by the Professional Fee Carve Out.  All funds in the Post-Carve Out Trigger Notice Reserve shall be used first to pay the

54

obligations set forth in clause (iv) of the definition of Professional Fee Carve Out set forth above (the "**Post-Carve Out Amounts**"), and then, to the extent the Post-Carve Out Trigger Notice Reserve has not been reduced to zero, subject to the terms of this Final Order, to pay any other amounts (if owing) benefitted by the Professional Fee Carve Out.  Notwithstanding anything to the contrary in this Final Order, if either of the Carve Out Reserves is not funded in full in the amounts set forth in this paragraph 13, then any excess funds in one of the Carve Out Reserves following the payment of the Pre-Carve Out Amounts or Post-Carve Out Amounts, respectively, shall be used to fund the other Carve Out Reserve, up to the applicable amount set forth in this paragraph 13.  Notwithstanding anything to the contrary in this Final Order, the DIP Documents, or the Secured Documents, following delivery of a Carve Out Trigger Notice, the DIP Facility Agent and the Secured Parties shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtors until the Carve Out Account has been fully funded in an amount equal to the Carve Out Amount as set forth herein.  The Carve Out Account shall not be subject to the control of any of the DIP Secured Parties or the Secured Parties, and shall not be subject to the DIP Liens, the Adequate Protection Liens, or the Cash Collateral Adequate Protection Liens, nor shall the Professional Fee Carve Out constitute DIP Collateral or Prepetition Collateral; *provided*, *however*, that the DIP Secured Parties and the Secured Parties shall have a security interest in and lien on any residual cash in the Carve Out Account (in accordance with the priorities set forth in **Exhibit 1**), with any excess cash paid to (i) the DIP Facility Agent for application to the DIP Obligations in accordance with the DIP Documents until the DIP Obligations are paid in full ~~and thereafter~~, (ii) to the Secured Notes Trustee for application to the Secured Notes Adequate Protection Obligations and, then, to the Prepetition Secured Notes Obligations ~~and the Secured Notes Adequate Protection Obligations~~,

and (iiiii) the RCF Administrative Agent for application to the Prepetition RCF Obligations and the RCF Adequate Protection Obligations, in each case to be paid in proportion to the amount of cash in the Carve Out Account funded from DIP Collateral (that is not Revolving Priority Collateral), Notes Priority Collateral, and Revolving Priority Collateral respectively, and any excess remaining thereafter shall be applied in accordance with this Final Order.  For the avoidance of doubt, nothing herein shall affect the priority of the Professional Fee Carve Out as set forth in **Exhibit 1**.

(e)    Notwithstanding anything to the contrary in this Final Order, (i) disbursements by the Debtors from the Carve Out Account shall not constitute loans or indebtedness under the DIP Documents or the Secured Documents or otherwise increase or reduce the DIP Obligations or the Prepetition Secured Obligations, (ii) the failure of the Carve Out Account to satisfy in full the Allowed Professional Fees shall not affect the priority of the Professional Fee Carve Out, and (iii) nothing contained herein shall constitute a cap or limitation on the amount that the Professional Persons may assert as administrative expense claims or otherwise against the Debtors on account of Allowed Professional Fees incurred by such Professional Persons.

(f)    Payment of Professional Fee Carve Out on or After the Carve Out Trigger Date.  Any payment or reimbursement made after the occurrence of the Carve Out Trigger Date in respect of any Allowed Professional Fees incurred after the occurrence of the Carve Out Trigger Date shall permanently reduce the Post-Carve Out Notice Amount on a dollar-for-dollar basis.

(g)    No Direct Obligation to Pay Allowed Professional Fees.  None of the DIP Secured Parties or Secured Parties shall be responsible for the payment or reimbursement of any

56

fees or disbursements of any Professional Person incurred in connection with the Chapter 11 Cases or any Successor Cases under any chapter of the Bankruptcy Code, regardless of whether such fees or expenses have been allowed by the Court. Nothing in this Final Order or otherwise shall be construed to obligate the DIP Secured Parties or the Secured Parties, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

(h)    _Professional Fee Escrow_.  On a weekly basis, the Debtors shall transfer into the Pre-Carve Out Trigger Notice Reserve cash constituting Unencumbered Funds and, solely to the extent the Unencumbered Funds are exhausted, _first_, any other cash on hand as of such date other than Encumbered Cash or any proceeds of Revolving Priority Collateral, and, _second_, only after such other cash is exhausted, the Encumbered Cash, and ~~any~~_third, only after the Encumbered Cash is exhausted, (x)_ proceeds of Revolving Priority Collateral up to the RCF Professional Fee Carve Out Cap and (y) proceeds of any other remaining DIP Collateral (other than Revolving Priority Collateral) (_provided,_ that the first $10,000,000 utilized pursuant to this third clause shall be funded equally from proceeds of (x) and (y)), in an amount equal to the amount of cash such that the Pre-Carve Out Trigger Notice Reserve shall contain the sum of (a) accrued, unpaid actual Allowed Professional Fees through the end of the prior week; plus (b) an amount equal to the estimated Allowed Professional Fees for the next unfunded week; _provided, however_, the Debtors shall give prior notice to counsel for the Ad Hoc Committee of Secured Noteholders and counsel to the Creditors' Committee before using any Encumbered ~~Funds~~Cash, and prior notice to counsel to the RCF Agents before using any proceeds of Revolving Priority Collateral (other than cash up to the Spare Parts Cap from the sale or disposition of Spare Parts that are Revolving Priority Collateral which sale or disposition is in the ordinary course of

business and consistent with past practice), to fund the Pre-Carve Out Trigger Notice Reserve. The Debtors shall use such funds held in the Pre-Carve Out Trigger Notice Reserve to pay Allowed Professional Fees as they become allowed and payable pursuant to interim or final orders from the Court. Funds transferred to the Pre-Carve Out Trigger Notice Reserve shall remain property of the Debtors unless and until they are paid to Professional Persons after Court approval of a fee application seeking approval thereof, and shall not be subject to any claim, lien, or security interest granted to any other party; *provided* that the DIP Secured Parties and the Secured Parties shall have a security interest in and lien on any residual cash in the Pre-Carve Out Trigger Notice Reserve after all Allowed Professional Fees are paid in accordance with paragraph 13(b), with any excess cash paid to (i) the DIP Facility Agent for application to the DIP Obligations in accordance with the DIP Documents until the DIP Obligations are paid in full and thereafter, (ii) to the Secured Notes Trustee for application to the Secured Notes Adequate Protection Obligations and, then, to the Prepetition Secured Notes Obligations and the Secured Notes Adequate Protection Obligations, and (iiiii) the RCF Administrative Agent for application to the Prepetition RCF Obligations and the RCF Adequate Protection Obligations, in each case to be paid in proportion to the amount of cash in the Carve Out Account funded from DIP Collateral (that is not Revolving Priority Collateral), Notes Priority Collateral, and Revolving Priority Collateral respectively, and any excess remaining thereafter shall be applied in accordance with this Final Order.

(i)       Administrative Claim Carve Out.  "**Administrative Claim Carve Out**" means the amount deposited into the Utility Deposit Account, the PFC Account, payroll and related withholdings, and trust fund taxes accrued through termination of the DIP Facility (the "**Administrative Claim Carve Out Claims**"), which amount shall be (i) no greater than

58

Noteholders) direction shall apply with respect to any directions provided by the holders of Contingent Roll-Up Term Loans as set forth herein; and (C) the Secured Notes Trustee shall be entitled to rely conclusively on confirmation from the Debtors regarding the amount of Contingent Roll-Up Term Loans held by each holder thereof in taking any actions pursuant to this clause (ii); (iii) be classified together with the Secured Notes in any plan pursuant to chapter 11 of the Bankruptcy Code and receive the same voting rights and distributions as the Secured Notes under any plan pursuant to chapter 11 of the Bankruptcy Code; and (iv) not constitute post-petition obligations and shall not be entitled to any DIP Liens or DIP Superpriority Claims on account of such Contingent Roll-Up Term Loans.   Upon the deemed borrowing by the Borrower of the Roll-Up DIP Loans, an equivalent aggregate amount of Contingent Roll-Up Term Loans shall be deemed cancelled based upon such DIP Lender's Roll-Up DIP Loan Allocation and shall not entitle the Borrower to receive any cash or other consideration from any DIP Lender and, notwithstanding that no such cash is exchanged, the Borrower shall owe the aggregate principal amount of the Roll-Up DIP Loans to the DIP Lenders under the DIP Credit Agreement and not under the Secured Notes Indenture.

15.    *Effect of Stipulations on Third Parties*.

(a)    The Debtors' Stipulations shall be binding upon the Debtors and any successors thereto effective upon entry of the First Interim Adequate Protection Order.   The Debtors' Stipulations shall be binding upon all parties-in-interest, including, without limitation, the Creditors' Committee, any other statutory or non-statutory committees appointed or formed in the Chapter 11 Cases, and any other person or entity seeking to act on behalf of the Debtors' estates (collectively, "**Successor Entities**"),[88] unless the Creditors' Committee or such other

---

[88] For purposes of this paragraph, any chapter 7 or chapter 11 trustee for any of the Debtors in the Chapter 11 Cases or any Successor Case will have standing to the extent provided for in the Bankruptcy Code, Bankruptcy Rules, or any other relevant statute or order.

Required Noteholders), and/or the RCF Agents (acting at the direction of the requisite RCF Lenders), as applicable).

(d)    Nothing in this Final Order vests or confers on any person or entity, including the Creditors' Committee or any other statutory or non-statutory committee appointed or formed in the Chapter 11 Cases, or any other party-in-interest standing or authority to pursue any claims or Challenge belonging to the Debtors or their estates, and all rights to object to any request for such standing are expressly reserved.

(e)    Notwithstanding the Creditors' Committee's agreement that $550,000,000 in principal amount (plus interest, if any) of Roll-Up DIP Loans and the DIP Liens granted with respect thereto are not subject to any Challenge, nothing in this Final Order impairs the right of the Creditors' Committee to seek to Challenge and for the Court to grant appropriate relief with respect to (i) any Roll-Up DIP Obligations in excess of the principal amount of $550,000,000 (plus interest, if any) or (ii) the extent of the Prepetition Secured Notes Liens securing the Prepetition Secured Notes Obligations after accounting for the Roll-Up DIP Loans, it being understood that (x) any such successful Challenge shall in no way modify, impair, affect, or limit the validity, priority, extent, or enforceability of, or give rise to any Challenge whatsoever in respect of, the $400,000,000 Interim Roll-Up or $150,000,000 of the Final Roll-Up and, in each case, the DIP Liens granted with respect thereto, (y) any Avoidance Proceeds arising from a Challenge to any Secured Notes, Prepetition Secured Notes Liens, and/or Prepetition Secured Notes Obligations shall be DIP Collateral subject to the DIP Liens securing both the New Money DIP Loans and Roll-Up DIP Loans and available to satisfy all DIP Obligations in respect thereof, and (z) in the event of any sale or other disposition of the Headquarters or any other DIP Collateral that is not Revolving Priority Collateral (including any DIP Collateral that also is

64

Prepetition Secured Notes Collateral), the proceeds from such sale or other disposition shall be used to repay any DIP Obligations in respect of both the New Money DIP Loans and the Roll-Up DIP Loans, in each case, in accordance with the terms of the DIP Documents.

16.     *Limitations on Use of DIP Facility, DIP Collateral, Cash Collateral, and Carve Out*.  Except as may be used by the Creditors' Committee in accordance with this paragraph 16, none of (v) the DIP Facility, (w) the DIP Collateral or the proceeds thereof, (x) the Prepetition Collateral or the proceeds thereof, (y) the Owned Aircraft Surplus, or (z) the Carve Out may be used: (a) to investigate (except as expressly provided herein), initiate, prosecute, join, or finance the initiation or prosecution of any claim, counterclaim, action, suit, arbitration, proceeding, application, motion, objection, defense, or other litigation of any type (i) against any of the DIP Facility Agent, the other DIP Secured Parties, or the Secured Parties (in each case, in their capacities as such) or seeking relief that would impair the rights or remedies of the DIP Facility Agent, the other DIP Secured Parties, or the Secured Parties (in each case, in their capacities as such) under the DIP Documents, the First Interim Adequate Protection Order, the Second Interim Adequate Protection Order, the Interim DIP Order, this Final Order, the Secured Notes Indenture, or the RCF Loan Documents, including, without limitation, for the payment of any services rendered by the professionals retained by the Debtors or the Creditors' Committee in connection with the assertion of or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defense, or other contested matter, the purpose of which is to seek, or the result of which would be to obtain, any order, judgment, determination, declaration, or similar relief that would impair the ability of any of the DIP Facility Agent, the other DIP Secured Parties, or the Secured Parties to recover on the DIP Collateral or the Prepetition Collateral or seeking affirmative relief against any of the DIP Facility Agent, the other DIP

Parties, or any Secured Parties.  Notwithstanding anything in this Final Order to the contrary, (i) this Final Order does not constitute an agreement for purposes of section 1110 of the Bankruptcy Code and (ii) the Debtors', the RCF Secured Parties', and the Secured Notes Parties' respective rights under section 1110 of the Bankruptcy Code, including, without limitation, with respect to the priority of the Carve Out, are preserved are preserved; *provided*, that the Debtors shall not revise the terms of the Carve Out with respect to the Revolving Priority Collateral absent consent of the RCF Agents (acting at the direction of the requisite RCF Lenders).

(b)     *No Waiver for Failure to Seek Relief.*  The failure or delay of the DIP Facility Agent, the Fronting Lender, any of the other DIP Secured Parties, and/or any of the Secured Parties to exercise their respective rights and remedies under this Final Order, the DIP Documents, the Secured Documents, or applicable law, as the case may be, shall not constitute a waiver of their respective rights hereunder, thereunder, or otherwise.

(c)     *Release.*  Upon entry of this Final Order, and subject to paragraph 15 solely regarding Challenges in respect of the Secured Parties, the Prepetition Liens and the Prepetition Secured Obligations, each of the Debtors and the Debtors' estates, on its own behalf and on behalf of each of their predecessors, successors, and assigns hereby to the maximum extent permitted by applicable law, unconditionally, irrevocably, and fully forever release, remise, acquit, relinquish, irrevocably waive, and discharge each of the DIP Facility Agent, the Fronting Lender, the other DIP Secured Parties, the Secured Parties (in each case, in their capacities as such), and each of their respective former, current, or future officers, employees, directors, agents, representatives, owners, members, partners, affiliated investment funds, or investment vehicles, managed, advised, or sub-advised accounts, funds, or other entities, investment advisors, sub-advisors or managers, financial advisors, legal advisors, shareholders,

71

their roles as insurers, "**Chubb**") or (ii) any insurance policy issued by Chubb; (b) neither the First Interim Adequate Protection Order, the Second Interim Adequate Protection Order, the Interim DIP Order, nor this Final Order grants the Debtors any right to use any property (or the proceeds thereof) held by Chubb as collateral to secure obligations under insurance policies and related agreements; (c) the proceeds of any insurance policy issued by Chubb shall only be considered to be DIP Collateral to the extent such proceeds are paid to the Debtors (as opposed to a third party claimant) pursuant to the terms of any such applicable insurance policy; and (d) nothing, including the First Interim Adequate Protection Order, the Second Interim Adequate Protection Order, the Interim DIP Order, this Final Order, and/or the DIP Documents alters or modifies the terms and conditions of any insurance policies or related agreements issued by Chubb.

(m)     Notwithstanding anything to the contrary in the First Interim Adequate Protection Order, the Second Interim Adequate Protection Order, the Interim DIP Order, or this Final Order any valid and enforceable post-petition liens held by AerSale, Inc. ("**AerSale**") shall not be altered, impaired, limited, primed, or otherwise modified or prejudiced by the terms of the First Interim Adequate Protection Order, the Second Interim Adequate Protection Order, the Interim DIP Order, or this Final Order.  All parties' rights, if any, to object to the priority, validity, and extent of AerSale's post-petition liens, if any, are preserved.

(n)     Notwithstanding anything to the contrary herein, nothing in this Final Order shall impair (i) the Debtors' ability to pay the prepetition claims of NAI National Ltd. in accordance with the *Final Order (I) Authorizing the Debtors to Satisfy Prepetition Claims of (A) Critical Vendors, (B) Foreign Vendors, (C) Lien Claimants, and (D) 503(b)(9) Claimants, (II) Confirming Administrative Status of Outstanding Orders, (III) Authorizing Financial Institutions*

*to Honor and Process Related Checks and Transfers, and (IV) Granting Related Relief* [ECF No. 217], should the Debtors determine to do so in accordance therewith, or (ii) the 503(b)(9) status of any claims arising from NAI National Ltd.'s delivery of goods that were received by the Debtors within twenty (20) days prior to the Petition Date.

22.    *Proofs of Claim*.  None of the DIP Facility Agent, the other DIP Secured Parties, or the Secured Parties shall be required to file proofs of claim in any of the Chapter 11 Cases or any Successor Cases for any claim allowed herein, and the stipulations in paragraph G shall be deemed to constitute a timely filed proof of claim with respect to the Prepetition Secured Obligations against each of the Debtors in the Chapter 11 Cases.  Notwithstanding any order entered by the Court in relation to the establishment of a bar date in any of the Chapter 11 Cases or any Successor Cases to the contrary, the DIP Facility Agent, on behalf of itself and the DIP Secured Parties, the Secured Notes Collateral Agent, on behalf of itself and the other Secured Notes Parties, and each of the RCF Agents, on behalf of itself and the RCF Secured Parties, are each authorized and entitled, but not required, to file (and amend and/or supplement, as the respective agents see fit) a master proof of claim on account of any and all of the respective claims arising under the DIP Facility or Secured Documents, as applicable (the "**Master Proof of Claim**").  For administrative convenience, any Master Proof of Claim authorized herein may be filed in the case of Debtor Spirit Airlines, LLC with respect to all amounts asserted in such Master Proof of Claim, and such Master Proof of Claim shall be deemed to be filed and asserted by the applicable entity or entities against every Debtor asserted to be liable for the applicable claim.  For the avoidance of doubt, the provisions set forth in this paragraph and any Master Proof of Claim filed pursuant to the terms hereof are intended solely for the purpose of administrative convenience and shall not affect the substantive rights of any party in interest or

their respective successors in interest, including, without limitation, not affecting the numerosity requirements set forth in section 1126 of the Bankruptcy Code. Neither the DIP Facility Agent, the Secured Notes Collateral Agent, nor the RCF Agents shall be required to attach any instruments, agreements, or other documents evidencing the obligations owing by each of the Debtors to the DIP Facility Agent and other DIP Secured Parties, or the Secured Parties, as applicable, which instruments, agreements, or other documents will be provided (subject to any applicable confidentiality restrictions) upon written request to counsel to the DIP Facility Agent, the Secured Notes Collateral Agent, or RCF Agents, as applicable. Any order entered by the Court in relation to the establishment of a bar date for any claim (including any administrative claim) in any of the Chapter 11 Cases or any Successor Cases shall not apply to the DIP Facility Agent, the other DIP Secured Parties, or Secured Parties. For the avoidance of doubt, none of the DIP Facility Agent, the other DIP Secured Parties, or the Secured Parties will be required to file any request for allowance and/or payment of any administrative expenses, and this Final Order shall be deemed to constitute a timely filed request for allowance and/or payment of any Prepetition Secured Obligations or Adequate Protection Claims constituting administrative expenses or any DIP Obligations, as applicable.

23.    *Retention of Jurisdiction*. The Court retains jurisdiction over any matter arising from or related to the implementation, interpretation, and enforcement of this Final Order.

24.    *Creditors' Committee Reporting Rights*. The Debtors shall provide to the Creditors' Committee professionals all reporting provided to the RCF Administrative Agent and RCF Administrative Agent Advisors hereunder, substantially at the same time such reports are provided to the RCF Administrative Agent and RCF Administrative Agent Advisors.

25. *DIP Lenders, Ad Hoc Committee of Secured Noteholder Advisors, and RCF Administrative Agent Advisors Information Rights*. The Debtors shall provide the DIP Lenders, the Ad Hoc Committee of Secured Noteholder Advisors, and RCF Administrative Agent Advisors the same information rights, notice rights, reporting rights, or other similar rights provided to the Creditors' Committee pursuant to ~~this Final Orders~~the final orders entered on the First Day Pleadings (as defined in the First Day Declaration).

26. *Effectiveness*. This Final Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable immediately upon entry hereof. Notwithstanding Bankruptcy Rules 4001(a)(3), 4001(c)(1), 6004(h), 6006(d), 7062, or 9024, any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Final Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Final Order.

27. *Use of Encumbered Cash Upon Repayment or Refinancing*. Upon the Debtors' incurrence of Alternative DIP Financing, all outstanding DIP Obligations (excluding any DIP Obligations in respect of outstanding Roll-Up DIP Loans in excess of an aggregate principal amount of $400,000,000 of Roll-Up DIP Loans, which excess amount is not required to be repaid in connection therewith) shall be repaid in full from the proceeds of such Alternative DIP Financing or, at the Debtors' option, the Encumbered Cash plus proceeds of such Alternative DIP Financing.

28. *Final Order Governs*. In the event of any inconsistency between the provisions of the Secured Documents, the DIP Documents, this Final Order, the Interim DIP Order, the First Interim Adequate Protection Order, the Second Interim Adequate Protection Order, the DIP Motion, the First Adequate Protection Motion, the Supplemental Adequate Protection Motion, or

any other order entered by this Court, the provisions of this Final ~~DIP~~ Order shall govern. **Exhibit 1** of this Final Order shall govern in the event of any conflict with the remainder of this Final Order. Notwithstanding anything to the contrary in any other order entered by this Court, any payment made pursuant to any authorization contained in any other order entered by this Court shall be consistent with and subject to the requirements set forth in this Final Order and the DIP Documents.

Dated:      _____, 2025
            White Plains, New York

            _____
            THE HONORABLE SEAN H. LANE
            UNITED STATES BANKRUPTCY JUDGE

**Exhibit 1**

**Lien Priorities on DIP Collateral**

The DIP Liens, the Adequate Protection Liens, Cash Collateral Adequate Protection Liens, the Prepetition Secured Notes Liens, the Prepetition RCF Liens, and the Carve Out shall have the following priority on the DIP Collateral and the applicable Prepetition Collateral at each Debtor entity obligated pursuant to the DIP Obligations, the Adequate Protection Obligations, or the applicable Prepetition Secured Obligations, it being understood that the Secured Parties agree that the foregoing shall apply at all times on and after the Petition Date, *provided* that the priorities set forth in Paragraphs 13(d) and 13(h) of this Final Order shall apply with respect to the funding of the Carve Out and the application of any excess from any Carve Out Account:

| Priority | Notes Priority Collateral | Revolving Priority Collateral | Owned Aircraft Surplus (Prior to Replenishment of Encumbered Cash) | Owned Aircraft Surplus (After Replenishment of Encumbered Cash) | Other DIP Collateral (Other than Owned Aircraft Surplus) |
|---|---|---|---|---|---|
| 1. | Carve Out | Professional Fee Carve Out (up to the RCF Professional Fee Carve Out Cap) | Carve Out | Carve Out | Carve Out |
| 2. | Secured Notes Permitted Liens | RCF Permitted Liens | Secured Notes Cash Collateral Adequate Protection Liens | DIP Liens | Permitted Liens |
| 3. | DIP Liens | RCF Adequate Protection Liens | DIP Liens | Secured Notes Adequate Protection Liens and RCF Adequate Protection Liens | DIP Liens |
| 4. | Secured Notes Adequate Protection Liens | Prepetition RCF Liens | RCF Secured Parties Cash Collateral Adequate Protection Liens | N/A | Secured Notes Adequate Protection Liens and RCF Adequate Protection Liens |
| 5. | Prepetition Secured Notes Liens | DIP Liens | N/A | N/A | NA |
| 6. | RCF Adequate Protection Liens | Secured Notes Adequate Protection Liens | N/A | N/A | N/A |

(xiii)    "**Agreed Roll-Up Treatment**" has the meaning set forth in paragraph 14(a) of this Final Order.

(xiv)    "**Aircraft and Spare Engine Security Agreement**" has the meaning set forth in footnote [7] of this Final Order.

(xv)    "**Aircraft Counterparties**" has the meaning set forth in the *Motion of the Debtors for Entry of an Order (I) for Authority to (A) Enter into Agreements under Section 1110(a) of the Bankruptcy Code, (B) Enter into Stipulations to Extend the Time to Comply with Section 1110 of the Bankruptcy Code, and (C) File Redacted Versions of Such Agreements and Stipulations and (II) Approving Related Procedures* [ECF No. 78].

(xvi)    "**Aircraft Debt**" has the meaning set forth in the definition of "Excluded Assets" in this Annex A.

(xvii)    "**Allowed Professional Fees**" has the meaning set forth in paragraph 13(b) of this Final Order.

(xviii)    "**Alternative DIP Financing**" has the meaning set forth in paragraph 21(a) of this Final Order.

(xix)    "**Amended and Restated Revolving Credit Facility Agreement**" has the meaning set forth in paragraph G(vi) of this Final Order.

(xx)    "**Available RCF Cash**" has the meaning set forth in paragraph 4(a) of this Final Order.

(xxi)    "**Avoidance Action**" means any Claim or Cause of Action arising under chapter 5 of the Bankruptcy Code or any applicable state law adopting the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or similar statute or common law.

(xxii)    "**Avoidance Proceeds**" means any and all proceeds of or property recovered from Avoidance Actions, whether by adjudication, judgment, settlement, or otherwise.

(xxiii)    "**Backstop Premium**" has the meaning set forth in paragraph 2(d) of this Final Order.

(xxiv)    "**Bankruptcy Code**" has the meaning set forth in the introductory paragraph of this Final Order.

(xxv)    "**Bankruptcy Rules**" has the meaning set forth in the introductory paragraph of this Final Order.

(xxvi)    "**Borrower**" has the meaning set forth in subparagraph (a) of the introductory paragraph of this Final Order.

(xxvii)    "**Carve Out**" means the Professional Fee Carve Out and the Administrative Claim Carve Out.

(xxviii)    "**Carve Out Account**" has the meaning set forth in paragraph 13(d) of this Final Order.

(xxix)    "**Carve Out Amount**" means the Pre-Carve Out Notice Amount together with the Post-Carve Out Notice Amount.

(xxx)    "**Carve Out Reserves**" means the ~~Post Carve~~Post-Carve Out Trigger Notice Reserve together with the Pre-Carve Out Trigger Notice Reserve.

(xxxi)    "**Carve Out Trigger Date**" has the meaning set forth in paragraph 13(d) of this Final Order.

(xxxii)    "**Carve Out Trigger Notice**" has the meaning set forth in paragraph 13(c) of this Final Order.

(xxxiii)    "**Case Management Procedures**" has the meaning set forth in the *Order Implementing Certain Notice and Case Management Procedures* [ECF No. 61].

(xxxiv)    "**Cash Collateral**" has the meaning set forth in paragraph F of this Final Order.

(xxxv)    "**Cash Collateral Adequate Protection Liens**" has the meaning set forth in paragraph 8(b) of this Final Order.

(xxxvi)    "**Cash Management Motion**" has the meaning ascribed to it in paragraph 4(a) of this Final Order.

(xxxvii)    "**Cause of Action**" means any cause of action under law or equity, of any kind or nature whatsoever, whether arising under United States federal or state law, common law, or otherwise.

(xxxviii)    "**Challenge**" means any challenge, objection, defense, or Claim or Cause of Action, in each case, including, without limitation, any Avoidance Action or any Claim or Cause of Action asserting reduction, setoff, offset, recoupment, recharacterization, subordination (whether equitable, contractual, or otherwise), reclassification, disgorgement, disallowance, impairment, recovery, or other cause of action of any kind or nature whatsoever, whether arising under the Bankruptcy Code, under applicable non-bankruptcy law, or otherwise.

(xxxix)    "**Challenge Budget**" has the meaning set forth in paragraph 16 of this Final Order.

(xl)    "**Challenge Deadline**" means no later than the earlier of (a) the date of entry of an order confirming a chapter 11 plan in these Chapter 11 Cases and (b)(i) with respect to the Creditors' Committee, the date that is 75 days after entry of the Second Interim Adequate Protection Order or (ii) with respect to other parties in interest, no later than the date that is 79 days after the Petition Date; provided that in the event that, prior to the expiration of the

3

(lx)    "**DIP Commitments**" has the meaning set forth in subparagraph (a)(iii) of the introductory paragraph of this Final Order.

(lxi)    "**DIP Credit Agreement**" has the meaning ascribed to such term in the DIP Motion.

(lxii)    "**DIP Documents**" means the DIP Credit Agreement and all guarantee, collateral, pledge and security agreements, and all other agreements, documents, certificates and instruments executed, recorded and/or delivered in connection therewith, including but not limited to the DIP Syndication Materials, in each case, as amended, supplemented or modified in accordance with the terms thereof and this Final ~~DIP~~ Order.

(lxiii)    "**DIP Facility**" has the meaning set forth in subparagraph (a) of the introductory paragraph of this Final Order.

(lxiv)    "**DIP Facility Agent**" means Wilmington Trust, National Association, as administrative agent and collateral agent for the DIP Facility.

(lxv)    "**DIP Fees and Expenses**" has the meaning set forth in paragraph 2(d)(ii) of this Final Order.

(lxvi)    "**DIP Lenders**" has the meaning set forth in subparagraph (a)(i) of the introductory paragraph of this Final Order.

(lxvii)    "**DIP Loans**" has the meaning set forth in subparagraph (a)(ii) of the introductory paragraph of this Final Order.

(lxviii)    "**DIP Motion**" has the meaning set forth in the introductory paragraph of this Final Order.

(lxix)    "**DIP Obligations**" has the meaning set forth in subparagraph (a)(iii) of the introductory paragraph of this Final Order.

(lxx)    "**DIP Secured Parties**" means, collectively, the DIP Facility Agent and the DIP Lenders.

(lxxi)    "**DIP Superpriority Claims**" has the meaning set forth in paragraph 6 of this Final Order.

(lxxii)    "**DIP Syndication**" has the meaning specified to the term "Opportunity" in the DIP Syndication Materials.

"**DIP Syndication Final Closing Date**" has the meaning specified to the term "Final Closing Date" in the DIP Syndication Materials.

(lxxiii)    "**DIP Syndication Initial Closing Date**" has the meaning specified to the term "Initial Closing Date" in the DIP Syndication Materials.

Debtors are prohibited from granting liens on under the terms of a security agreement, lease or similar document (other than the Secured Documents) among the Debtors and any party entitled to the protections of section 1110 of the Bankruptcy Code, and (iii) the PFCs and all funds held in the PFC Account; *provided* that the DIP Secured Parties shall have a security interest in and the Adequate Protection Liens shall also be secured by any residual cash balance remaining in the PFC Account to the extent that amounts held in the PFC Account exceed the amount of PFCs actually collected, and (B) does not include the Prepetition Secured Notes Collateral, the Prepetition RCF Collateral, or the Spare Parts Collateral.

(lxxxv) "**Excluded Avoidance Proceeds**" has the meaning set forth in paragraph 17(b)of this Final ~~DIP~~ Order.

(lxxxvi) "**Farnsworth Declaration**" has the meaning set forth in the introductory paragraph of this Final Order.

(lxxxvii) "**Final DIP Order Breach**" has the meaning set forth in paragraph 12(a) of this Final Order.

(lxxxviii) "**Final Hearing**" has the meaning set forth in subparagraph (l) of the introductory paragraph of this Final Order.

(lxxxix) "**Final New Money DIP Loans**" has the meaning set forth in subparagraph (a)(ii) of the introductory paragraph of this Final Order.

(xc)     "**Final Order**" has the meaning set forth in the introductory paragraph of this Final Order.

(xci)    "**Final Roll-Up**" has the meaning set forth in subparagraph (a)(ii) of the introductory paragraph of this Final Order.

(xcii)    "**Final Roll-Up DIP Loans**" has the meaning set forth in subparagraph (a)(iii) (a)(ii) of the introductory paragraph of this Final Order.

(xciii)   "**First Adequate Protection Motion**" has the meaning set forth in the introductory paragraph of this Final Order.

(xciv)    "**First Day Declaration**" has the meaning set forth in the introductory paragraph of this Final Order.

(xcv)     "**First Day Pleadings**" has the meaning set forth in paragraph 25 of this Final Order.

(xcvi)    **First Interim Adequate Protection Order**" has the meaning set forth in introductory paragraph of this Final Order.

(xcvii)   "**First Interim Hearing**" has the meaning set forth in the introductory paragraph of this Final Order.

8

(cxxxi)   "**Owned Aircraft Surplus**" has the meaning set forth in paragraph 7(c) of this Final Order.

(cxxxii)   "**Payment in Full**" means the indefeasible payment in full in cash of all applicable obligations, other than contingent indemnification and expense reimbursement obligations for which no claim or demand has been asserted, and all commitments under the applicable credit facility have been terminated or expired.

(cxxxiii)   "**Perfection Action**" has the meaning set forth in paragraph 11(b) of this Final Order.

(cxxxiv)   "**Permitted Liens**" means, collectively, the RCF Permitted Liens and the Secured Notes Permitted Liens.

(cxxxv)   "**Petition Date**" has the meaning set forth in paragraph A of this Final Order.

(cxxxvi)   "**PFC Account**" has the meaning set forth in the Cash Management Motion.

(cxxxvii)   "**PFCs**" has the meaning set forth in the Cash Management Motion.

(cxxxviii)   "**Post-Carve Out Amounts**" has the meaning set forth in paragraph 13(d) of this Final Order.

(cxxxix)   "**Post-Carve Out Notice Amount**" has the meaning set forth in paragraph 13(b) of this Final Order.

(cxl)   "**Post-Carve Out Trigger Notice Reserve**" has the meaning set forth in paragraph 13(d) of this Final Order.

(cxli)   "**Post-Petition Cash**" means all funds, cash, investments, and/or securities generated by the Debtors' post-petition operations or the realization of post-petition or prepetition receivables (other than Straddle Credit Card Receipts); *provided*, *however*, for the avoidance of doubt, Post-Petition Cash does not include any funds, cash, investments, and/or securities in the Encumbered Accounts as of the Petition Date or any proceeds of Revolving Priority Collateral (other than cash up to the Spare Parts Cap from the sale or disposition of Spare Parts that are Revolving Priority Collateral which sale or disposition is in the ordinary course of business and consistent with past practice).

(cxlii)   "**Pre-Carve Out Amounts**" has the meaning set forth in paragraph 13(d) of this Final Order.

(cxliii)   "**Pre-Carve Out Notice Amount**" has the meaning set forth in paragraph 13(b) of this Final Order.

(cxliv)   "**Pre-Carve Out Trigger Notice Reserve**" has the meaning set forth in paragraph 13(d) of this Final Order.

11

(clxi)    "**RCF Administrative Agent**" has the meaning set forth in paragraph G(vi) of this Final Order.

(clxii)    "**RCF Administrative Agent Advisors**" means (i) Milbank LLP, as counsel to the RCF Administrative Agent, (ii) one financial advisor to the RCF Lenders and RCF Administrative Agent, (iii) an appraiser selected by Citibank N.A., as RCF Administrative Agent, in accordance with the RCF Loan Documents, and (iv) any other advisor (legal, financial, or otherwise) as reasonably deemed necessary by Citibank N.A. solely to the extent payable under the RCF Loan Documents.

(clxiii)    (clxii) "**RCF Advisors**" has the meaning set forth in paragraph 8(c) of this Final Order.

(clxiv)    (clxiii) "**RCF Agents**" has the meaning set forth in paragraph G(vi) of this Final Order.

(clxv)    (clxiv) "**RCF Borrower**" has the meaning set forth in paragraph G(vi) of this Final Order.

(clxvi)    (clxv) "**RCF Collateral Agent**" has the meaning set forth in paragraph G(vi) of this Final Order.

(clxvii)    (clxvi) "**RCF Guarantors**" has the meaning set forth in paragraph G(vi) of this Final Order.

(clxviii)    (clxvii) "**RCF Lenders**" has the meaning set forth in paragraph G(vi) of this Final Order.

(clxix)    (clxviii) "**RCF Loan Documents**" means "Loan Documents" as defined in the Amended and Restated Revolving Credit Facility Agreement.

(clxx)    (clxix) "**RCF Loan Obligors**" means, collectively, the RCF Guarantors and the RCF Borrower.

(clxxi)    (clxx) "**RCF Permitted Liens**" has the meaning set forth in paragraph G(viii) of this Final Order.

(clxxii)    (clxxi) "**RCF Priority Collateral ICA**" has the meaning set forth in paragraph G(viii) of this Final Order.

(clxxiii)    "**RCF Professional Fee Carve Out Cap**" means $5,000,000.

(clxxiv)    (clxxii) "**RCF Secured Parties**" means the "Secured Parties" as defined in the Amended and Restated Revolving Credit Facility Agreement.

(clxxv)    (clxxiii) "**RCF Secured Parties Cash Collateral Adequate Protection Liens**" has the meaning set forth in paragraph 8(b) of this Final Order.

(clxxvi) (clxxiv) "**Released Parties**" has the meaning set forth in paragraph 20(c) of this Final Order.

(clxxvii) (clxxv) "**Replenishment of Encumbered Cash**" has the meaning set forth in paragraph 4(b) of this Final Order.

(clxxviii) (clxxvi) "**Required DIP Lenders**" has the meaning set forth in the DIP Credit Agreement.

(clxxix) (clxxvii) "**Required Noteholders**" means the holders of more than 50% of the aggregate principal amount of the Prepetition Secured Notes Obligations.

(clxxx) (clxxviii) "**Required RCF Lenders**" means "Required Lenders" as defined in the RCF Loan Documents.

(clxxxi) (clxxix) "**Required Roll-Up Lenders**" has the meaning set forth in the DIP Credit Agreement.

(clxxxii) (clxxx) "**Review Parties**" has the meaning set forth in paragraph 9 of this Final Order.

(clxxxiii) (clxxxi) "**Review Period**" has the meaning set forth in paragraph 9 of this Final Order.

(clxxxiv) (clxxxii) "**Revolving Credit Facility**" has the meaning set forth in the First Day Declaration.

(clxxxv) (clxxxiii) "**Revolving Priority Collateral**" has the meaning set forth in the RCF Priority Collateral ICA.

(clxxxvi) (clxxxiv) "**Roll-Up DIP Loan Allocation**" has the meaning ascribed to the term "Roll-Up Term Loan Allocation" in the DIP Credit Agreement.

(clxxxvii) (clxxxv) "**Roll-Up DIP Lenders**" has the meaning set forth in paragraph 14(a) of this Final Order.

(clxxxviii) (clxxxvi) "**Roll-Up DIP Loans**" has the meaning set forth in subparagraph (a)(iii)(a)(ii) of the introductory paragraph of this Final Order.

(clxxxix) (clxxxvii) "**Roll-Up DIP Obligations**" has the meaning set forth in subparagraph (a)(iii) of the introductory paragraph of this Final Order; *provided, however*, for the avoidance of doubt, unless and until any such Contingent Roll-Up Term Loans are exchanged for and converted to Roll-Up DIP Loans, obligations in respect of the Contingent Roll-Up Term Loans are not Roll-Up DIP Obligations.

(cxc) (clxxxviii) "**Roll-Up Superpriority Claims**" has the meaning set forth in paragraph 6 of this Final Order.

(cxci)    (clxxxix) "**Satisfaction of Replenishment Obligations**" has the meaning set forth paragraph 4(b)of this Final Order.

(cxcii)    (cxc) "**Second Draw**" has the meaning set forth in subparagraph (a)(i) of the introductory paragraph of this Final Order.

(cxciii)    (cxci) "**Second Interim Adequate Protection Order**" has the meaning set forth in the introductory paragraph of this Final Order.

(cxciv)    (cxcii) "**Second Interim Hearing**" has the meaning set forth in the introductory paragraph of this Final Order.

(cxcv)    (cxciii) "**Secured Documents**" means, collectively, the Amended and Restated Revolving Credit Facility Agreement together with all agreements, documents, instruments, and/or amendments executed and delivered in connection therewith and the Secured Notes Indenture together with all agreements, documents, instruments, and/or amendments executed and delivered in connection therewith.

(cxcvi)    (cxciv) "**Secured Noteholders**" has the meaning set forth in paragraph G(i) of this Final Order.

(cxcvii)    (cxcv) "**Secured Notes**" has the meaning set forth in paragraph G(i) of this Final Order.

(cxcviii)    (cxcvi) "**Secured Notes Adequate Protection Claims**" has the meaning set forth in paragraph 7(a) of this Final Order.

(cxcix)    (cxcvii) "**Secured Notes Adequate Protection Liens**" has the meaning set forth in paragraph 7(b) of this Final Order.

(cc)    (cxcviii) "**Secured Notes Adequate Protection Obligations**" has the meaning set forth in paragraph 7 of this Final Order.

(cci)    (cxcix) "**Secured Notes Adequate Protection Professional Fees and Expenses**" has the meaning set forth in paragraph 7(d) of this Final Order.

(ccii)    (cc) "**Secured Notes Cash Collateral Adequate Protection Liens**" has the meaning set forth in paragraph 7(c) of this Final Order.

(cciii)    (cci) "**Secured Notes Collateral Agency & Accounts Agreement**" has the meaning set forth in paragraph G(i) of this Final Order.

(cciv)    (ccii) "**Secured Notes Collateral Agent**" has the meaning set forth in paragraph G(i) of this Final Order.

(ccv)    (cciii) "**Secured Notes Depositary**" has the meaning set forth in paragraph G(i) of this Final Order.

(ccvi)    ~~(cciv)~~ "**Secured Notes Documents**" has the meaning set forth in paragraph G(i) of this Final Order.

(ccvii)    ~~(ccv)~~ "**Secured Notes Guarantors**" has the meaning set forth in paragraph G(i) of this Final Order.

(ccviii)    ~~(ccvi)~~ "**Secured Notes Indenture**" has the meaning set forth in paragraph G(i) of this Final Order.

(ccix)    ~~(ccvii)~~ "**Secured Notes Issuers**" has the meaning set forth in paragraph G(i) of this Final Order.

(ccx)    ~~(ccviii)~~ "**Secured Notes Parties**" has the meaning set forth in paragraph G(i) of this Final Order.

(ccxi)    ~~(ccix)~~ "**Secured Notes Permitted Liens**" has the meaning set forth in paragraph G(iii) of this Final Order.

(ccxii)    ~~(ccx)~~ "**Secured Notes Trustee**" has the meaning set forth in paragraph G(i) of this Final Order.

(ccxiii)    ~~(ccxi)~~ "**Secured Parties**" means, collectively, the RCF Secured Parties and the Secured Notes Parties.

(ccxiv)    ~~(ccxii)~~ "**Senior Secured Debt Documents**" has the meaning set forth in the Secured Notes Collateral Agency & Accounts Agreement.

(ccxv)    ~~(ccxiii)~~ "**Senior Secured Parties**" has the meaning set forth in the Secured Notes Collateral Agency & Accounts Agreement.

(ccxvi)    ~~(ccxiv)~~ "**Spare Parts**" has the meaning set forth in the Amended and Restated Revolving Credit Facility Agreement.

(ccxvii)    "**Spare Parts Cap**" means, absent consent of the RCF Agents (acting at the direction of the requisite RCF Lenders) to, or further order of the Court providing for, an increase in amount, (x) up to $1,000,000 in proceeds from the sale or disposition of Spare Parts that are Revolving Priority Collateral from October 20, 2025 through and including December 31, 2025, and (y) $300,000 in proceeds from the sale or disposition of Spare Parts that are Revolving Priority Collateral in each fiscal quarter of the fiscal year thereafter; *provided*, that, to the extent the caps set forth in clauses (x) or (y) of this definition are not exhausted on or prior to the applicable dates set forth therein, the Debtors remain authorized to use the remaining amounts in any future periods.

(ccxviii)    ~~(ccxv)~~ "**Spare Parts Collateral**" has the meaning set forth in paragraph 8(b) of this Final Order.

16

(ccxix)    (ccxvi) "**Spare Parts Security Agreement**" has the meaning set forth in footnote [6] of this Final Order.

(ccxx)    (ccxvii) "**Specified Encumbered Accounts**" has the meaning set forth in paragraph 4(b) of this Final Order.

(ccxxi)    (ccxviii) "**Standing Motion**" has the meaning set forth in paragraph 15(a) of this Final Order.

(ccxxii)    (ccxix) "**Straddle Credit Card Receipts**" has the meaning set forth in paragraph G(iii) of this Final Order.

(ccxxiii)    (ccxx) "**Successor Cases**" means, collectively, any case under chapter 7 of the Bankruptcy Code upon the conversion of any of the Chapter 11 Cases, and/or upon the dismissal of any of the Chapter 11 Cases or any such successor cases.

(ccxxiv)    (ccxxi) "**Successor Entities**" has the meaning set forth in paragraph 15(a) of this Final Order.

(ccxxv)    (ccxxii) "**Supplement to DIP Motion**" means the *Supplement to the Motion of Debtors for Entry of (I) Interim and Final Orders, Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 503, 506, 507, and 552, (A) Authorizing the Debtors to Obtain Post-Petition Financing, (B) Granting Senior Liens and Superpriority Administrative Expense Claims, (C) Granting Adequate Protection, (D) Modifying the Automatic Stay, (E) Scheduling a Final Hearing on the Motion; and (F) Granting Related Relief; and (II) Third Interim Order (A) Authorizing the Debtors to Utilize Cash in Encumbered Accounts; (B) Granting Adequate Protection; (C) Modifying the Automatic Stay; (D) Scheduling a Final Hearing on the Motion; and (E) Granting Related Relief* [ECF No. 211].

(ccxxvi)    (ccxxiii) "**Supplemental Adequate Protection Motion**" has the meaning set forth in the introductory paragraph of this Final Order.

(ccxxvii)    (ccxxiv) "**Third Draw**" has the meaning set forth in subparagraph (a)(i) of the introductory paragraph of this Final Order.

(ccxxviii)        (ccxxv) "**UCC**" means the Uniform Commercial Code.

(ccxxix)    (ccxxvi) "**Unencumbered Funds**" has the meaning set forth in paragraph 4(a) of this Final Order.

(ccxxx)    (ccxxvii) "**U.S. Trustee**" has the meaning set forth in paragraph C of this Final Order.

(ccxxxi)    (ccxxviii) "**Utility Deposit Account**" has the meaning ascribed to such term in the *Motion of the Debtors for Entry of Interim and Final Orders (I) Prohibiting Utilities from Altering, Refusing, or Discontinuing Service, (II) Deeming Utilities Adequately Assured of*