UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - -x

In the Matter of:

SPIRIT AVIATION HOLDINGS, INC., ET AL.,   Main Case No.

      Debtors.                              25-11897-shl

- - - - - - - - - - - - - - - - - - - - -x

              United States Bankruptcy Court

              One Bowling Green

              New York, New York

              October 10, 2025

              10:06 AM

B E F O R E:

HON. SEAN H. LANE

U.S. BANKRUPTCY JUDGE

ECRO:  GRT


www.escribers.net | 800-257-0885

Doc #228 Notice of Agenda

Doc. #194 Motion To Authorize / Motion of Debtors For Entry Of (I) Interim And Final Orders, Pursuant To 11 U.S.C. 105, 361, 362, 363, 364, 503, 506, 507, And 552, (A) Authorizing The Debtors To Obtain Post-Petition Financing; (B) Granting Senior Secured Liens And Superpriority Administrative Expense Claims; (C) Granting Adequate Protection; (D) Modifying The Automatic Stay (E) Scheduling A Final Hearing On The Motion; And (F) Granting Related Relief; And (II) Third Interim Order (A) Authorizing The Debtors To Utilize Cash In Encumbered Accounts; (B) Granting Adequate Protection; (C) Modifying The Automatic Stay; (D) Scheduling A Final Hearing On The Motion; And (E) Granting Relief

Doc. #134 Motion of the Debtors For Entry Of An Order Authorizing The Debtors To Redact Commercially Sensitive Information



www.escribers.net | 800-257-0885

Doc. #135 Motion Of The Debtors For Entry Of An Order (I) Approving Restructuring Term Sheet With Aercap Ireland Limited, (II) Authorizing And Approving Assumption And Rejection Of Certain Aircraft Agreements, (III) Authorizing Entry Into The New Lease Agreements And Definitive Documents, And (IV) Granting Related Relief

Transcribed by:  River Wolfe

eScribers, LLC

7227 North 16th Street, Suite #207

Phoenix, AZ 85020

(800) 257-0885

operations@escribers.net



A P P E A R A N C E S (All present by video or telephone):

DAVIS POLK & WARDWELL LLP

 Attorneys for Spirit Aviation Holdings, Inc.

 450 Lexington Avenue

 New York, NY 10017

BY: JOSEPH S. BROWN, ESQ.

 MARSHALL S. HUEBNER, ESQ.

 BENJAMIN S. KAMINETZKY, ESQ.

 DARREN S. KLEIN, ESQ.

 MOSHE MELCER, ESQ.

 CHRISTOPHER ROBERTSON, ESQ.

 REBECCA SATTAUR, ESQ.

 NOAH Z. SOSNICK, ESQ.



www.escribers.net | 800-257-0885

DEBEVOISE & PLIMPTON LLP

    Attorneys for Spirit Aviation Holdings, Inc.

    66 Hudson Boulevard

    New York, NY 10001


BY:   JASMINE BALL, ESQ.

    THAIS DERJANGOCYAN, ESQ.

    DMITRY KARAMYSLOV, ESQ.

    BRIAN E. LIU, ESQ.

    EMILY MACKAY, ESQ.

    BENJAMIN MISHKIN, ESQ.

    JUNHO PARK, ESQ.


U.S. DEPARTMENT OF JUSTICE

    Attorneys for Office of the U.S. Trustee

    1 Bowling Green

    New York, NY 10004


BY:   SHARA C. CORNELL, ESQ.



PILLSBURY WINTHROP SHAW PITTMAN LLP

     Attorneys for AerCap

     31 West 52nd Street

     New York, NY 10019


BY:   MICHAEL G. BURKE, ESQ.



PILLSBURY WINTHROP SHAW PITTMAN LLP

     Attorneys for Airbus

     324 Royal Palm Way

     Suite 220

     Palm Beach, FL 33480


BY:   MARK LESSARD, ESQ.

     DANIA SLIM, ESQ.



WILLKIE FARR & GALLAGHER LLP

        Attorneys for Official Committee of Unsecured Creditors

        787 Seventh Avenue

        New York, NY 10019


BY:    JAMES BURBAGE, ESQ.

        PHILIP DALGAMO, ESQ.

        MISHA EMANOIL, ESQ.

        TODD M. GOREN, ESQ.

        JESSICA D. GRABER, ESQ.

        BRETT H. MILLER, ESQ.



AKIN GUMP STRAUSS HAUER & FELD LLP

        Attorneys for Ad Hoc Committee of Senior Secured

          Noteholders

        1 Bryant Park

        New York, NY 10036


BY:    GABRIEL KORN, ESQ.

        AVI LUFT, ESQ.

        ABID QURESHI, ESQ.

        JASON P. RUBIN, ESQ.

        MICHAEL S. STAMER, ESQ.



AKIN GUMP STRAUSS HAUER & FELD LLP

    Attorneys for Ad Hoc Committee of Senior Secured

      Noteholders

    2001 K Street, Northwest

    Washington, DC 20006

BY:   EMMA SANZOTTA, ESQ.

AKIN GUMP STRAUSS HAUER & FELD LLP

    Attorneys for Ad Hoc Committee of Senior Secured

      Noteholders

    2300 North Field Street, Suite 1800

    Dallas, TX 75201

BY:   RACHEL BIBLO BLOCK, ESQ.



SEWARD & KISSEL LLP

Attorneys for Wilmington Trust National Association

One Battery Park Plaza

New York, NY 10004

BY:   JOHN R. ASHMEAD, ESQ.

ANDREW J. MATOTT, ESQ.

MOORE & VAN ALLEN, PLLC

Attorneys for Wilmington Trust Company, not in its

individual capacity

100 North Tryon Street

Charlotte, NC 28202

BY:   HALEE M. SMITH, ESQ.

ZACHARY H. SMITH, ESQ.



www.escribers.net | 800-257-0885

ALSTON & BIRD LLP

    Attorneys for Wilmington Trust

    90 Park Avenue

    New York, NY 10016

BY:   DYLAN S. CASSIDY, ESQ.

    GERARD S. CATALANELLO, ESQ.

    WILLIAM HAO, ESQ.

    BRIAN M. LAINE, ESQ.

MORRIS JAMES LLP

    Attorneys for Wilmington Trust Company

    3205 Avenue North Boulevard

    Suite 100

    Wilmington, DE 19803

BY:   JASON S. LEVIN, ESQ.



MILBANK LLP

     Attorneys for Citibank

     55 Hudson Yards

     39th Floor

     New York, NY 10001


BY:   NICHOLAS CONNOLLY, ESQ.

     ANDREW HARMEYER, ESQ.

     JASON KESTECHER, ESQ.

     TYSON LOMAZOW, ESQ.


DORSEY & WHITNEY LLP

     Attorneys for U.S. Bank N.A. and Elavon Financial

     Services

     51 West 52nd Street

     New York, NY 10019


BY:   MICHAEL GALEN, ESQ.

     SAMUEL S. KOHN, ESQ.



ALPA LEGAL DEPARTMENT

   Attorneys for Air Line Pilots Association, International

   7950 Jones Branch Drive

   Suite 400S

   McLean, VA 22102


BY:   JOSHUA ELLISON, ESQ.

   ELIZABETH M. SPEAR, ESQ.




PARKINS & RUBIO LLP

   Attorneys for Association of Flight Attendants-CWA, AFL-

      CIO

   100 Park Avenue

   Suite 1600

   New York, NY 10017


BY:   CHARLES M. RUBIO, ESQ.



www.escribers.net | 800-257-0885

PARKINS & RUBIO LLP

 Attorneys for Association of Flight Attendants-CWA, AFL-CIO

 708 Main Street

 Floor 10

 Houston, TX 77002


BY:   LENARD M. PARKINS, ESQ.

 ROMAN A. PORSCHE, ESQ.

 JACOB T. TOWLES, ESQ.




DUANE MORRIS LLP

 Attorneys for Chubb Companies

 335 Madison Avenue

 New York, NY 10017


BY:   JESSICA R. KENNEY BONTEQUE, ESQ.



www.escribers.net | 800-257-0885

LATHAM & WATKINS LLP

    Attorneys for American Airlines

    1271 Avenue of the Americas

    New York, NY 10020

BY:   NIKHIL GULATI, ESQ.

     JONATHAN J. WEICHSELBAUM, ESQ.

LATHAM & WATKINS LLP

    Attorneys for American Airlines

    555 Eleventh Street, Northwest

    Suite 1000

    Washington, DC 20004

BY:   ANDREW SORKIN, ESQ.



WHITE & CASE LLP

        Attorneys for Apple Bank/Banco de Sabadell

        1221 Avenue of the Americas

        New York, NY 10020


BY:   RICHARD A. GRAHAM

        ANDREW ZATZ, ESQ.




WHITE & CASE LLP

        Attorneys for Interested Party

        200 S. Biscayne Blvd

        Miami, FL 33131


BY:   GABRIELA DELGADO, ESQ.

        ANDREA KROPP, ESQ.



www.escribers.net | 800-257-0885

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

    Attorneys for Party-in-Interest

    1201 North Market Street

    Suite 1600

    Wilmington, DE 19899

BY:   SOPHIE ROGERS CHURCHILL, ESQ.

    ROBERT J. DEHNEY, ESQ.

    MATTHEW O. TALMO, ESQ.

HAYNES AND BOONE, LLP

    Attorneys for AerSale, Inc.

    1221 McKinney Street

    Suite 4000

    Houston, TX 77010

BY:   KOURTNEY P. LYDA, ESQ.



FROST BROWN TODD LLC

 Attorneys for Marathon Petroleum Company LO

 301 East 4th Street

 Cincinnati, OH 45202

BY:   ERIN P. SEVERINI, ESQ.

KAPLAN KIRSCH LLP

 Attorneys for Airport Consortium

 1634 I Street Northwest

 Suite 300

 Washington, DC 20006

BY:   STEPHANIE GRIFFIN MATEO, ESQ.



HOLLAND & KNIGHT, LLP

     Attorneys for Various Aircraft Lessors

     1722 Routh Street

     Suite 1500

     Dallas, TX 75218

BY:   BARBARA R. PARLIN, ESQ.

     BRIAN SMITH, ESQ.

MARKOWITZ, RINGEL TRUSTY + HARTOG

     Attorneys for AGI Ground, LLC

     9130 S. Dadeland Blvd

     Suite 1800

     Miami, FL 33156

BY:   JERRY M. MARKOWITZ, ESQ.



BAYNE LAW GROUP LLC

     Attorneys for NAI National, Ltd.

     PO Box 3036

     Princton, NJ 08543

BY:   ANDREW J. BAYNE, ESQ.

VOUTE, LOHRFINK, MCANDREW, MEISNER & ROBERTS, LLP

     Attorneys for NIA National, Ltd.

     170 Hamilton Avenue

     Suite 315

     White Plains, NY 1060

BY:   THOMAS E. LAMB, ESQ.

COOLEY LLP

     Attorneys for Interested Party

     55 Hudson Yards

     New York, NY 10001

BY:   DANIEL SHAMAH, ESQ.

     JEREMIAH P. LEDWIDGE, ESQ.


www.escribers.net | 800-257-0885

POLSINELLI PC

      Attorneys for Kimco Realty Corporation, Dania Live 1748 '

        II, LLC

      600 Third Avenue

      42nd Floor

      New York, NY 10019

BY:   BRETT D. GOODMAN, ESQ.

DAY PITNEY LLP

      Attorneys for Pratt & Whitney

      195 Church Street

      15th Floor

      New Haven, CT 06510

BY:   JOSHUA W. COHEN, ESQ.



SUGARMAN, SUSSKIND, BRASWELL & HERRERA P.A.

Attorneys for PAFCA

150 Alhambra Circle

Suite 725

Coral Gables, FL 33134


BY:   D. MARCUS BRASWELL, ESQ.




MAYER BROWN LLP

1221 Avenue of the Americas

New York, NY 10020


BY:   DANIELLE A. SIGAL, ESQ.




FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP

1 New York Plaza

New York, NY 10004


BY:   CHRISTOPHER A. LIVINGSTON, ESQ.



HOULIHAN LOKEY

225 South Sixth Street

Minneapolis, MN 55401


BY:   SHESH PRASAD, ESQ.

DAN TOBIN, ESQ.

FRED VESCIO, ESQ.




BIELLI & KLAUDER, LLC

1905 Spruce Street

Philadelphia, PA 19103


BY:   THOMAS D. BIELLI, ESQ.




SQUIRE PATTON BOGGS (US) LLP

201 East Fourth Street

Suite 1900

Cincinnati, OH 45202


BY:   KYLE F. ARENDSEN, ESQ.



CLIFFORD CHANCE US LLP

        Two Manhattan West

        New York, NY 10001


BY:   MICHELLE M. MCGREAL, ESQ.



ALSO PRESENT:

        FERAS ABUJUMAIZA

        RICK ARCHER

        NEGISA BALLUKU

        PHILIP BRENDEL

        BENJAMIN Y. BRIGGS

        LOUIS N. BROWN

        HILLARY CACANANDO

        MARIA CHUTCHIAN

        CATHERINE COREY

        FRED CROMER

        THOMAS DUNN

        KEVIN ECKHARDT

        SCOTT FLAHERTY

        CHAD FLICK

        CLARA E. GEOGHEGAN

        THOMAS M. GERARDO



ALSO PRESENT (Cont'd):

SCOTT GOODMAN

UDAY GORREPATI

TAYLOR HARRISON

BILL HENRY

BRENT HERLIHY

LESLIE JOSEPHS

RILEY JASSER

JEFF KAPLAN

STACEY KERELSKA

LUCIA KASSAI

J. GARY KOSINSKI

DEREK D. LANG

MIKE LEE

DAVID LOPEZ

CARLOS LUDOWIEG

JASON MANDEL

CHRISTOPHER MCGIL

ARMANDO MENDOZA

MADELEINE MENKES

RUDY MERLIN

TYSON MICHELS

ANDREW J. MILER

LUKE MILLMAN



www.escribers.net | 800-257-0885

ALSO PRESENT (Cont'd):

    JAMES A. NEWTON, ESQ.

    SHANE O'REILLY

    CHARLOTTE O'TOOLE

    OLIVER PALIERAKIS

    BRIAN A. PETTINATO

    DIMITRI L. POLITANO

    JONATHAN RANDLES

    DAVID ROSENSTEIN

    MIRANDA RUSSELL, ESQ.

    LESLIE SHIGAKI

    IAN SILVERBRAND

    ELIZABETH SPEAR

    ANDREW L. STOLE

    VINCE SULLIVAN

    RANDY SYMANSKI

    KELLY TANNADY

    JOSEPH TISCH

    ANDREW TRACY

    WILL TURNER

    KELLI WALSH

    KAMERON WALTON

    ALEX WITTENBERG

    DAVID XIA



SPIRIT AVIATION HOLDINGS, INC., ET AL.

P R O C E E D I N G S

THE COURT:  Good morning.  This is Judge Sean Lane in the United States Bankruptcy court for the Southern District of New York.  And we're here for a 10 o'clock hearing in Spirit Aviation Holdings, Inc., a Chapter 11 case.

Consistent with prior practice, let's start with appearances first, starting with debtors' counsel.

MR. HUEBNER:  Good morning, Your Honor.  For the record, Marshall Huebner of Davis Polk.  If it is okay with the Court, due to electronic constraints, although I'm doing very little of the talking today, I will not be on video.  As you know, I am not much to look at.  And obviously, Mr. Klein is here as well to do more of the important work, along with Mr. Robertson, who is on video.

THE COURT:  All right.  That's perfectly fine.  I just saw Mr. Klein waive.  And so that's all good.

So let me find out who's here on behalf of the committee.

MR. MILLER:  Thank you, Your Honor.  Brett Miller, Todd Goren, James Burbage, Willkie Farr & Gallagher, proposed counsel for the official committee of unsecured creditors.

THE COURT:  All right.  Good morning.

MR. MILLER:  Morning.

THE COURT:  And on behalf of Aercap.

MR. BURKE:  Good morning, Your Honor.  Michael Burke,



www.escribers.net | 800-257-0885

SPIRIT AVIATION HOLDINGS, INC., ET AL.

Pillsbury, on behalf of Aercap Ireland Limited.

THE COURT:  All right.  Good morning.

And as is always the case, we have many, many pages of people who have logged onto Zoom, and it would take us a decent part of the morning to go through those.  So I may just call out some people that I see on the Zoom screen and then ask for everyone else to chime in.

So let's find out who's here for the AHC.

MR. STAMER:  Good morning, Your Honor.  Mike Stamer and Jason Rubin from Akin Gump on behalf of the ad hoc secured noteholder group and the proposed backstop DIP lenders.

THE COURT:  All right.  Good morning.

And Ms. Ball, let me get your appearance.

MS. BALL:  Thank you, Your Honor.  Jasmine Ball from Debevoise & Plimpton, proposed fleet counsel for the debtors.

THE COURT:  All right.  Good morning.

And Mr. Rubio.

MR. RUBIO:  Good morning, Your Honor.  Charles Rubio and my partner Lenny Parkins are on, on behalf of the Association of Flight Attendants.

THE COURT:  All right.  Good morning.

MR. RUBIO:  Good morning.

THE COURT:  On behalf of the United States Trustee's office.

MS. CORNELL:  Good morning, Your Honor.  You have



www.escribers.net | 800-257-0885

SPIRIT AVIATION HOLDINGS, INC., ET AL.

Shara Cornell here on behalf of the United States Trustee.

THE COURT:  All right.  Good morning.

And at this point, I will open it up to other folks who anticipate speaking today, with the understanding that if someone doesn't enter an appearance now because they don't anticipate speaking but do speak, I'll get their appearance at that time.  So with that, let me get any other appearances.

All right.  That actually worked as hoped.  All right.  So we are here this morning, consistent with the amended agenda that was filed which has several matters, and that was dated October 10th, dated today, and is the most up-to-date version.  I have a copy of the amended agenda.  I don't have a copy that notes where it is on the docket, but it was filed this morning.

So with that, I'll turn it over to debtors' counsel.

Well, let me back up for a second.  I also wanted to make clear that in chambers, we had seen not only the amended agenda but also the official committee of unsecured creditors' resrvation of rights to the debtors' motion to obtain post-petition financing at docket 231 and also seeing a number of certificates of no objection regarding the motions that are on for today.  Those are at dockets 243 and 244.  Just so that you know what I have seen, even if it was filed fairly recently.

So with that, I will turn it over to debtors' counsel.

MR. HUEBNER:  Good morning, Your Honor.  Just sound check.  Can you hear me clearly?



SPIRIT AVIATION HOLDINGS, INC., ET AL.

THE COURT:  Can hear you just fine.  Thank you.

MR. HUEBNER:  Thank you, Your Honor.  So for the record again, Marshall Huebner of Davis Polk & Wardwell, proposed counsel to the debtors.  Your Honor, as is typically the case in many cases, I'd like to start with a brief and entirely positive kind of status update for the Court and for all parties.

As we made clear at the first day and every subsequent hearing, unlike last year's bankruptcy, where we did virtually nothing, as we told the Court from the opening moments, and in fact, equitized bonds in a virtually fully consensual way and our bondholders put in 350 of new equity, this case was and is and is going to be completely different.  And we will be availing ourselves of virtually all the tools of Chapter 11.  There is a wonderful company that is going to be saved but through these proceedings, and we're going to do all the things that we need to to make sure that that happens.

And so today's docket is extremely important.  Between the two motions, they represent hundreds of millions of dollars of near-term liquidity coming into the company.  The DIP, obviously, will speak for itself in a few moments, as will the Aercap deal.  And equally importantly, they are both totally uncontested, which is a really important, encouraging, and positive sign that many stakeholders in our ecosystem understand that we all need to be and will continue to be



www.escribers.net | 800-257-0885

SPIRIT AVIATION HOLDINGS, INC., ET AL.

rowing in the same direction.  And that is the way through and out the other side of this in the best interest of all parties.

Your Honor, a couple of things that are not on the docket for this morning that I want to briefly tap, and then I will turn the podium over so that we can get to the two really wonderful motions that we have on for today.  There's more good news coming.

We've reached a very positive for Spirit definitive deal with another lessor of a number of our aircraft to keep those aircraft in the fleet and expect to be filing a motion to approve that transaction in the next few days.  There's another one coming hot on the heels of that one, which is in the sort of final laps of finalization, which also will deal with a significant number of aircraft fleet.  Between those two filings, hopefully both will come within a week, that's going to be tens of millions of dollars of additional savings, in addition to the things that are on for today.

As we have said at every hearing, and I want there to be no confusion about it, the slots in our new go-forward fleet are swiftly filling up from counterparties who understand that the first people to come to us with the right economic deals get a good outcome for both of us, and the ones that don't are going to be left behind.  We filed an omnibus aircraft rejection motion last week, and anyone who is not taken off that list is going to see their aircraft rejected.



SPIRIT AVIATION HOLDINGS, INC., ET AL.

And so we are very grateful that many participants in the lessor community understand what makes sense, both for Spirit and for them.  And we continue to encourage the next few for the remaining spots to come forward, and let's get deals done.  And then we will know what our fleet looks like going forward.

There are other positive things happening as well. Your Honor, in the background.  A great number of people are working literally day and night on a variety of fronts, and the momentum is very notable.  I do want to thank a few constituents, and then I'm going to turn the podium over.

Obviously, Ms. Cornell and the U.S. Trustee's office withdrew their objection to the Aercap motion.  To be fair to them, their objection was filed at a time where there were a huge number of redactions, and it was on very shortened notice, both of which got taken care of with the passage of time and unredacted.  And we had productive calls with them.

And our ad hoc committee of noteholders and our creditors committee, both of whom worked very hard, in particular the creditors committee jumping in the last of those three, the debtors, the ad hoc group, and the committee, and working very productively, both with Aercap and with the lenders, as you will hear in a few minutes, to get appropriate and helpful, certainly to the estates' concessions but ultimately also to allow us to proceed today consensually.



SPIRIT AVIATION HOLDINGS, INC., ET AL.

So I don't want to front run either of the motions any longer.  And so if it pleases the Court, I would propose to turn the podium over to Mr. Klein, I believe, if assuming the -- no, that was wrong.  To Mr. Robertson, who is going to be handling the motion and then after that, to Mr. Klein for the Aercap settlement.

Your Honor, the one thing I would ask is because both of these transactions are uncontested and both represent material near-term infusions of liquidity, we will ask that, despite the government shutdown, if it is at all possible, it's actually quite important to us to have both of those orders entered today.  When it doesn't have to be today, we say that. But when it does, it does.  And those are today issues, both so we can close the DIP and get funded and begin the clock to get funded, hopefully virtually immediately, on the uncontested Aercap settlement.

THE COURT:  All right.  Thank you very much.  And with that, I'll turn it over to your colleague.

MR. HUEBNER:  Thank you.

Mr. Robertson, the virtual podium is yours.

MR. ROBERTSON:  Thank you, Mr. Huebner.

Good morning, Your Honor.  For the record, Chris Robertson of Davis Polk & Wardwell on behalf of the debtors. Can I be heard clearly in the courtroom?

THE COURT:  Clear as a bell.



www.escribers.net | 800-257-0885

SPIRIT AVIATION HOLDINGS, INC., ET AL.

MR. ROBERTSON: Fantastic. So when we were last before Your Honor on Tuesday, September 30th, for a second day hearing, the Court approved the debtors' use of up to 120 million dollars of cash collateral in the terms set forth in the second interim adequate protection order, which is entered at docket 224. And at that time, we also reported the extremely positive news that we had reached agreement on the terms of a DIP facility with the ad hoc committee of secured noteholders, who had agreed to provide up to 475 million dollars of new liquidity to the company.

At the time, we previewed that this facility would be a multi-tranche facility, with draw conditions on some of the later tranches tied to where we expect to be as these cases progress, and would provide for 200 million dollars available immediately upon entry of the interim order. We also previewed that the DIP would provide for a roll-up, with ratio differentiation for different tranches, based in part on the risk profiles of those tranches. And finally, we committed to filing our DIP motion the very next day, on October 1st.

We're pleased to be back before Your Honor today with more great news. An uncontested DIP motion seeking authorization to enter into the proposed DIP facility that will provide necessary funding and support for Spirit's operations during these cases, as we continue to pursue the overall restructuring and seek to preserve and maximize the value of



www.escribers.net | 800-257-0885

SPIRIT AVIATION HOLDINGS, INC., ET AL.

the debtors' estates for the benefit of all parties-in-interest.

As promised, the debtors filed a motion October 1st at ECF number 194.  Since the filing of the motion last week, the debtors and their advisors have negotiated extensively with various stakeholders on the terms of the DIP financing and the DIP documents.  On Tuesday the 7th, we filed a supplemental notice to the DIP motion at ECF number 211, which attached forms the DIP credit agreement and the DIP commitment letter.  At the time, those documents were still subject to further negotiation.

On the 8th, we filed drafts of the notice and subscription forms, which I'll touch on in a little bit.  These forms are identified in the proposed interim order as the syndication materials.  They provide each noteholder that tenders its notes to the DIP's -- into the DIP's syndication, an opportunity to participate as a lender in the DIP and to fund new money DIP loans and to exchange or roll-up their pre-petition loans.  The mechanics are a little bit complicated, but they're there because we're rolling up pre-petition notes into DIP loans.

In the very early hours, I guess, this morning, we subsequently filed a final form or near-final form, the DIP credit agreement, the commitment letter, the syndication materials, and an updated interim proposed order, with



SPIRIT AVIATION HOLDINGS, INC., ET AL.

blacklines against the previous filed versions. That's at docket number 242. As I mentioned at the outset, the motion is uncontested.

The debtors received two reservations of rights. One from the UCC. I think, importantly, the UCC states in their reservation of rights that they do not object to entry of the proposed interim DIP order as is on the docket. And it reflects various agreements with the UCC that I'll touch on momentarily. There was one reservation of rights from NAI National, Limited. We don't read this as an objection to the DIP, and in fact, it says on its face that it's not an objection to entry of the interim DIP order.

In support of the motion, the debtors filed declaration of Brent Herlihy of PJT Partners, the proposed investment banker. It's exhibit A to the DIP motion at docket number 194. Mr. Herlihy is in the conference room with me today and is available if any party wishes to cross-examine him on the contents of his declaration. And at this time, I'd like to move Mr. Herlihy's declaration into evidence.

THE COURT: All right. Thank you very much.

Any party wish to be heard on the request to move that declaration into evidence for purposes of today's hearing?

All right. Hearing no response and seeing no objection on the docket, I'm happy to receive that declaration as evidence for today's hearing. Thank you.



SPIRIT AVIATION HOLDINGS, INC., ET AL.

(Declaration of Mr. Herlihy was hereby received into evidence as Debtors' Exhibit --, as of this date.)

MR. ROBERTSON:  Thank you, Your Honor.

So the proposed DIP order seeks authorization for the debtors to obtain and guarantee the multi-draw senior secure DIP facility in the aggregate principal amount of up to 1.33 billion dollars.  That includes, on the new money side, up to 475 million dollars of new money loans.  200 million would be available upon entry of the interim DIP order.  Fifty million would be available as a second draw on November 8th.

And there are certain mechanics, which I'm happy to get into if Your Honor has questions, around the size of that draw, depending on subsequent sale or other transaction involving certain owned aircraft.  There's a third draw of a hundred million, which would be available on December 13th, and then a fourth, available towards completion of M&A or a standalone plan of reorganization.

I would flag for Your Honor here.  It probably doesn't jump out in the motion materials, but it's in the credit agreement.  There are conditions to the subsequent tranches, which are set forth -- the DIP credit agreement's on page 36.  It's, I think, PDF page 276 of docket 242.

But the point I want to make here -- and I'll touch on them briefly, but the point I want to make here is we negotiated very heavily in this DIP that there are certain

SPIRIT AVIATION HOLDINGS, INC., ET AL.

conditions that are described or that are conditions to subsequent draws.  In many other financings that you'd see, these would be covenants.  Here, they're not.  Right.  So they would prevent a subsequent draw on the DIP.  But a failure to satisfy these conditions wouldn't default the outstanding facility.

So amongst these conditions, for every subsequent draw after today's, the Aercap liquidity payment will have been approved by the bankruptcy court and received.  We'll get to Aercap.  My colleague Mr. Klein will handle that motion after this one.  There's a condition around reaching agreement in principle with Spirit's unions or commencing an 1113 process.  That's a condition to everything after the first draw.  Four, and there's additional conditions around sort of progress in that process towards the fourth draw.

There's also a liquidity test which again, it's not a -- it's not a covenant.  Right.  It's a test for subsequent draws, which is laid out in the credit agreement.  And then there's also a variance test, which is a variance test of the thirteen week, based on receipts.

There's also the roll-up component of the DIP.  The proposed order contemplates a roll-up of pre-petition secured notes on the following terms.  At upon entry of the interim, pre-petition secured notes of the DIP lenders, participants would be rolled up at a at a two-to-one ratio.  As I believe



www.escribers.net | 800-257-0885

SPIRIT AVIATION HOLDINGS, INC., ET AL.

it's clear in our papers and is made clear in the UCC's

reservation as well, we are asking that the roll-up at interim

is approved at interim and not subject to subsequent challenge.

And I just want to be clear for Your Honor.

The second draw would roll-up at a two-to-one ratio.

Other than certain incremental second draw elements, which

again are tied to whether we have a draw based on the

subsequent sale of certain of the owned aircraft.  If there is

additional amounts that are drawn in respect of those

transactions, the amount would be one to one.

And then on the third and fourth draws, the rollup

ratio is one and a half to one.  Our original proposal was two

to one, and in discussions with the committee the lenders

agreed to reduce that ratio to one and a half to one.

THE COURT:  Quick question.

MR. ROBERTSON:  Go ahead.

THE COURT:  Should I be giving you -- well, there may

be a comment or two that I may give you as you go, just so I

don't lose the thread.

And so you just mentioned the roll-up approved at

interim, not subject to further challenge.  And certainly, I

know the UCC referenced one of the Local Rules.  It's an

objection -- I'm sorry, a limited reservation.  So and that's

Rule 4001-2 and (g)(5), I believe it is, and that talks about a

proposed order approving things like a roll-up shall include



www.escribers.net | 800-257-0885

SPIRIT AVIATION HOLDINGS, INC., ET AL.

language that reserves the right of the Court to unwind or partially unwind the post-petition protection provided to the pre-petition lenders or the paydown pre-petition debt in the event there's a timely and successful challenge.

So the committee just made reference to the Rule and without further explanation, which is entirely understandable and consistent with the kind of pleading it filed in the middle of many discussions.  But certainly, that's a question I had for purposes of what you just said.

MR. ROBERTSON:  Sure.  Sure, Your Honor.  And I see Mr. Stamer's on camera also, but if you'd allow me a couple of minutes to respond and then if Mr. Stamer would like to speak as well.

There is Local Rule 4001-2(g)(5), as you accurately state, provides that a proposed order approving a roll-up should include language reserving the court's right to unwind the post-petition protection, subject to challenge.  The Second Circuit has opined that the court has the inherent power to decide when a departure from its Local Rules should be excused or overlooked.

THE COURT:  But here's the problem.  The problem is, then, it's not a rule at all.  Right.  So everything we do in the court is precedential.  And if it's approved in one case, and I understand we're all focused on this case, as we should be.  You're litigating this case.  But it's not a rule at all.



www.escribers.net | 800-257-0885

SPIRIT AVIATION HOLDINGS, INC., ET AL.

So now, I will note that some of these have an out in them.  Right.  So if you look at the period of time for a -- so if you look at 4, the one just in front of 5, stipulations, investigation period, it has certain periods of time.  But it says, provided that these periods of time may be shortened for cause shown, and then mentions pre-packed and prearranged cases.  And so it has an out built into it.

And so this one doesn't, and I think the theory behind it is it gives the Court and parties some comfort in approving things like roll-ups, with appropriate guardrails because otherwise, I mean, and if the Rule isn't followed, then there's really not a whole lot of protection for anybody.  Right.  It's a pretty -- again, maybe I'm making the committee's speech for it, and we'll hear from the committee in a minute.  But that's my concern.

I mean, the court, as you know, we don't have a lot of Rules on specific substance.  A lot of this Rule, for example, is just please flag for us things that we want to make sure to be able to take a look at.  And that really isn't substantive at all.  So the court in its Local Rules doesn't speak very often to particular legal substantive points.  Right.  It does it for on rare occasion.  And this is one of them.  So and it's the collective wisdom of our court.

So I guess I'll stop my speech there.  And I don't know if it makes sense to hear from anybody else, or let me



www.escribers.net | 800-257-0885

SPIRIT AVIATION HOLDINGS, INC., ET AL.

hear from you first in terms of thoughts about it.  I mean, I know what my authority is, and I know a Local Rule is a Local Rule, but again, it's not a Local Rule for very long if it gets thrown to the side in the interest of what parties want to do in a case.

And again, I'm saying that all with the understanding that each case has its own challenges.  And I'm not doubting anybody's good faith or the amount of people negotiating in good faith and trying to work these things out.  My comments are not intended to send any messages, explicit or implicit, on that.  It's just a question of the substance of what should happen in a circumstance like this.

MR. ROBERTSON:  Sure.  Sure, Your Honor.  Very, very briefly.  I think the one -- I think an important distinguishing factor here is that in ninety-nine percent of the cases, when there is an interim DIP on, it's on the first day.  The committee hasn't been formed.  Right.  We filed on a -- you file on a Sunday.  You're in court on Tuesday.  And you're asking for interim approval of the DIP.

Here, we've been in the Chapter 11 process for, I guess, the better part of a month or so.  The committee is formed.  They're fully up to speed.  They've taken a look at this.  And they have had a chance to weigh in and have filed on the record their reservation that says they don't have an objection to proceeding in this manner.



www.escribers.net | 800-257-0885

SPIRIT AVIATION HOLDINGS, INC., ET AL.

And so if you view the Local Rule as being there to protect the status quo.  Protect folks rights when they haven't had a chance to see anything.  They've gotten paper dumped on them in the first day.  This is a very different case on a very different posture.  I see Mr. Miller on as well.  I don't want to speak for the committee's position --

THE COURT:  Well, that's a fair --

MR. ROBERTSON:  -- but that's (indiscernible) --

THE COURT:  -- that's a fair point.  And that's a fair point.  I did see the committee saying that they've come to terms with the interim order, and they're continuing to work on a final order.  So I'll hear from them in a minute.  But let me hear anything else you want to say on that point, since we're talking about it.  Once you're done, maybe I will hear from the committee, since we're having this discussion now.

MR. ROBERTSON:  No.  No, Your Honor.  I don't have anything more to add.  I think, if you have specific -- as we go through this, if you have concerns or questions around the (indiscernible) roll-up of the mechanics, I can always circle back to that.  But I'll let others speak.

THE COURT:  All right.  So on this particular point, I'm happy to hear from the committee, and again, having read the filing that was provided, I guess, yesterday, which has the reservation of rights.

MR. GOREN:  Yes.  Thank you, Your Honor.  Todd Goren,



www.escribers.net | 800-257-0885

SPIRIT AVIATION HOLDINGS, INC., ET AL.

Willkie Farr, proposed counsel to the committee. Look, this was a tough one for us too. We did closely analyze this issue. I think, ultimately -- and you did steal a little bit of the thunder of what we would have likely argued --

THE COURT: My apologies.

MR. GOREN: -- in a final order. But it's helpful to hear it today because certainly, we would deal with it at that point. But I think, due to the nature of this case, this is a pretty unique set of circumstances, where the debt was issued five months ago under a plan confirmed by this Court. And the lenders held pretty close to 400 million of cash collateral. I think it's 330 million. There was, like, really very little question there was at least 400 million of valid secured debt here. Whether there's a lot above and beyond that, the committee is still analyzing, which is why we reserved our rights beyond that.

But ultimately, the committee got comfortable saying that there was likely no basis here to challenge the 400-million-dollar roll-up under this interim order, subject to a reservation of any additional roll-up beyond that. And whether the Local Rule should apply to any additional roll-up is still a very important issue for the committee and something we intend to discuss with the lenders. But the lenders expressed to us that they were not willing to fund this interim draw, which is highly important to the company, absent some agreement

SPIRIT AVIATION HOLDINGS, INC., ET AL.

that this money -- that they would get their roll-up sort of without question.

The committee did take some time and look at it over the course of the last week and a half and ultimately concluded that in exchange for some of the concessions the lenders made in this order, including reducing their ask on the roll-up, which really serves as a ceiling, in our view, for future negotiations, and making it clear that the releases were subject to the final order in our investigation period, that consenting to this roll-up here was not detrimental to the estates in any way and that we would reserve our rights to argue about application of the Local Rule and the size of any additional roll-up for purposes of the final hearing.

THE COURT:  All right.  Thank you very much.

So I think, at this point, there's probably not a whole lot else to say on this particular issue.  And we can move on to, I think, the rest of the debtors' presentation. But if I'm misreading that and somebody else has something to say, particularly on the issue of subsection 5 that we're chatting about here, I'm happy to hear it now.

MR. STAMER:  Your Honor, if I could be heard very briefly?  Again, it's Mike Stamer from Akin Gump on behalf of the ad hoc committee secured noteholders and the proposed DIP backstop parties.  Look, I don't want to repeat what you've already heard from the company and the committee.  This is a



SPIRIT AVIATION HOLDINGS, INC., ET AL.

bit of a unicorn DIP hearing and a bit of a unicorn case, so I don't think whatever the Court does here will have precedential value as we move forward.

The only point I would like to make, Your Honor, is --

THE COURT:  I will say, I can tell you, having sat in this seat for fifteen years, that I have no doubt that you are sincere in your statement that way.  But I will tell you, it will be cited up, down, and sideways.  And again, I understand that, I think, as Mr. Goren very ably articulated, the notion is from his point of view that their view is really based on their assessment of the challenge, right, which does make it a bit of a unicorn, given the timing, that they're in that position to make that assessment.  But perhaps that means that the Local Rule --

Well, I'll leave it at that, but all right.  Mr. Stamer, what else do you want to tell me?

MR. STAMER:  The only other thing, Your Honor, which I think bears repeating is the roll-up is a fundamental economic term to the DIP.

THE COURT:  But I don't think the Rule says otherwise. The Rule says it is fundamental and that you can do it, but you just do it with a certain caveat.  And one could make the argument, couldn't one, to say that, well, if the committee's already reached the view that it seems highly unlikely.

And in fact, standing here right now, they don't have



www.escribers.net | 800-257-0885

SPIRIT AVIATION HOLDINGS, INC., ET AL.

a challenge to the amount up to 400 million.  What's the problem for the lenders here.  Right.  That the committee has basically told you that.  Has actually stated in open court.  So it means that you don't have an issue.  And so it's just a reservation in the Rule to make sure that things proceed in good order and everybody's rights are appropriately preserved.

I understand, procedurally, we're at a different spot here, given when this request is being made and given that the committee can actually make the kind of statement it made on the record.  But I think, if you think of it, again, as I said, from a different perspective than yours, you can say, well, then that means 5 won't be an issue for you and for what's being approved on an interim basis.  I mean, that's not a -- that's not a crazy way to look at it, is it?

MR. STAMER:  Your Honor, I understand the point.  And maybe it would be helpful to repeat some context.  As you read in the Herlihy declaration, the company was unable to find any alternative DIP on debtor terms where both were (indiscernible) --

THE COURT:  But so Mr. Stamer, I think you probably don't want to go there because that's a statement that is always true when a DIP is presented to me.  Your Honor, this is the best set of terms we can get.  So that argument always proves too much.

Again, I'm not trying to give people a hard time here.


www.escribers.net | 800-257-0885

SPIRIT AVIATION HOLDINGS, INC., ET AL.

I understand you all are working on very challenging case.

Lots of moving parts.  And I get it.

But again, this is a Local Rule that the court came up with.  And as you sit here in this chair, you see DIP financing motions, and they are always made to say, Your Honor, this is the best we can do.  And those are statements made.  They're accurate.  They're sincere.  They're all said in good faith.  I get it.

This is just a guardrail.  And so what I would suggest to you is, from what the has committee said in open court, that you don't have a problem under 5.  5 basically says it's not an issue.  We're far enough along that we can tell you, looking at the proposed roll-up, that there's 400 million that we're really not concerned about.  And that's why we're okay with today.

And so not having the -- having an order that's consistent with 5 does you no harm.  And again, I'm speaking for Mr. Goren here, so I apologize for taking the liberty.  But I don't think Mr. Goren would say that out loud on the record unless the committee had gotten to a high degree of comfort.  So again, the idea that this is the DIP that the debtors are able to get, I get it, and I understand the terms.  But it always puts the Court, frankly, in this exact same situation of having these discussions.

So but I don't want to cut you off, Mr. Stamer,



www.escribers.net | 800-257-0885

SPIRIT AVIATION HOLDINGS, INC., ET AL.

although I just did.  My apologies.  Anything else you want to tell me?

MR. STAMER:  By all means, feel free to cut me off any time.  The only other piece of context I'll add is the clients we represent are the same noteholders that were actively involved.  Substantially the same noteholders that were actively involved in the prior Chapter 11.  Those noteholders equitized hundreds of millions of dollars of debt and backstopped a 350-million-dollar equity rights offering.  Your Honor, I don't know offhand exactly where the equity is trading, but I assume it is at a very substantial discount to where it was priced in the last bankruptcy.  And I appreciate and understand the Court's comments and the reassurance from committee counsel.

Your Honor, in this situation where the noteholders want to be and have been incredibly supportive of this company, the noteholders are very focused on risk.  And as Your Honor has read, this is a very favorable DIP from the company's perspective.  Actually, from all stakeholders' perspective.  It is --

THE COURT:  Listen, let me back up.  I'm not challenging that.  And I certainly am not challenging the importance of the actions of the group that turns its debt into equity.  But again, in every case, every case has its own history.  Its own story.  Roll-ups are by definition folks who



SPIRIT AVIATION HOLDINGS, INC., ET AL.

have a stake in the company, in the reorganization, and who have already have been partners with the debtor. So I get it.

Again, what I'm noodling through is whether there's some in a more -- well, whether there's a way Mr. Goren can state what he just basically said on the record to give the noteholders comfort that essentially you don't have a 5 problem for the 400 million dollars and that therefore we, don't have this issue. But I really am having trouble wrapping my noodle saying this Rule, which is pretty recent and I think very well thought out, we're just going to chuck it. I'm really having a serious challenge with that.

Again, I think there is unique factual circumstances here given where this comes in the case, but I think that dovetails very nicely with Mr. Goren's statement saying, based on what the committee has assessed thus far, they really don't think that there is any issue with the 400 million dollars, which is exactly the amount that would be rolled up on the interim basis. And if that's the case, then that can be put in an order that, based on the representation of the committee -- again, I'm putting words into Mr. Goren's mouth. I may be going further than he went. So again, I apologize, but I'm trying to think out loud as to another way to accomplish this, based on, as you all have noted, the unique facts and circumstances here.

But I'm having trouble throwing the guardrail out



www.escribers.net | 800-257-0885

SPIRIT AVIATION HOLDINGS, INC., ET AL.

that's 5 because I think, if I do it here, there's not a case in America where someone won't say, Judge, we have unique circumstances because every case is a set of unique circumstances.  So again, I'm not trying to give anybody a hard time for making that argument.  It's always true.

And so but that's one of the challenges of this is a lot of the things that people are telling me in this case about the need for the DIP.  That the DIP is a very good result here.  All those things are pretty much always going to be things that can be said under different facts and circumstances in other cases so --

MR. HUEBNER:  So Your Honor, just to --

MR. STAMER:  Your Honor, just --

Wait.  Wait.  Wait.  If I might --

THE COURT:  Yeah.

MR. STAMER:  -- Marshall.

Just two last points.  We're not asking you to chuck the Local Rule for all eternity.  What we're asking is under the facts and circumstances -- facts and circumstances of this case, of this motion, which, as you heard it, is fully consensual, that --

THE COURT:  I understand.  I understand all that.  And again, I'm thinking out loud, so I'm being very transparent and candid.  So I apologize.  That may be a little -- may present challenges for you.  But again, from your perspective, it's not


www.escribers.net | 800-257-0885

SPIRIT AVIATION HOLDINGS, INC., ET AL.

throwing the Rule out the door.  But I think, from the

perspective of the bankruptcy bar who may be listening in in

other cases, it's throwing the Rule out the door.  It's just,

that's just the argument that I'll get presented in every case.

And then in every case, the question will be whether the Rule

is justified or not.  And that's just the practical reality.

MR. STAMER:  If I could make one last point, Your

Honor, and then I'll let others speak.  A DIP loan, especially

this one, is a complicated, comprehensive economic deal, and if

I might --

THE COURT:  Mr. Stamer, you're crossing a line here.

I'm familiar with how complicated they are.  I get it.  I get

it.  So maybe let's stop there because I think we're going to

cross the Rubicon of some sort.  I get it.

So let me hear from anybody else who wants to weigh

in.  I think I heard debtors' counsel wanted to chime in and

maybe close out the loop on this discussion.

MR. HUEBNER:  Yeah.  Your Honor, with apologies to Mr.

Robertson, we're not in the same room.  So I apologize for

helping, but that's what I do.

So I think, frankly, Mr. Robertson had it exactly

right.  And that's actually what I want to talk about and

expand on.  The Rule is meant for the interim hearing, which

virtually always is two or three days into the case with no

committee.  We are actually six weeks into this case, and we



SPIRIT AVIATION HOLDINGS, INC., ET AL.

have a fully functioning creditors committee. But then, Your Honor, even more importantly than that, this is not our first or second. I think it's either our third or fourth hearing on cash collateral/DIP, which is all kind of essentially analytically the same thing. Right.

And so I think that the real answer is not that this is appropriate and needed and that the core benefit of the economic bargain, all of which happen to be true, because we have very little incremental collateral to pledge for this DIP loan because virtually everything is already pledged to this exact group. And so there is a real reason why the roll-up is (indiscernible). That's actually not the real answer here. The real answer is that, conceptually, this is kind of not quite an interim hearing at all because it is six whole weeks into the case --

THE COURT: No, no. I think that is -- I think Mr. Robertson correctly identified early on that the answer is a procedural one and that that's the best argument you have. But again, my response to that is if Mr. Goren can put some more details on his representation, you end up in the same place anyway, without having to throw the Rule to the side. And it does now.

And what you've also said does make me think that I'm happy to go back to the judges and talk about perhaps we should revise the Rule to consider different procedural postures,


www.escribers.net | 800-257-0885

SPIRIT AVIATION HOLDINGS, INC., ET AL.

right, and that the appointment of a committee, the committee's consent, and things of that sort, which I think would be consistent with common sense.  And I understand where you're all coming from, but I cut you off, Mr. Huebner.

MR. HUEBNER:  Yeah, Your Honor, I was just going to say one last small thing, which is the reason why this is actually not, in fact, a violation of the spirit of the Rule at all is because what actually happens, as Your Honor knows in every case, is that when the debtor makes stipulations or agreements, they are subject to a challenge period that invariably is essentially handed to the creditors committee and functionally no one else.  Like, I don't even think I've ever seen a case in my career where anybody other than the committee did a stip to extend and then ultimately resolved or moved forward with respect to its challenge.

Here, that process has already happened, which is what makes the Rule, frankly, functionally inapplicable.

THE COURT:  Well, but --

MR. HUEBNER:  The committee has already done the analysis of the 400 and is comfortable and is telling you they have waived their right to be the successor to the debtors' challenge and are ready to give that up today for this first tranche of the roll-up --

THE COURT:  Right.

MR. HUEBNER:  -- not for anything else.



SPIRIT AVIATION HOLDINGS, INC., ET AL.

THE COURT:  But I'm more comfortable doing it on that basis, which allows me to not have to mess with the Rule at all.  In other words, you are not asking for relief beyond the Rule.  What you're doing is solving it by saying that the committee is representing that, as to its challenge, it's not going to have a challenge for 400 million dollars.  That checks that box a different way.

And to get to your first point about how this is a unicorn, it is, but there may be a herd of unicorn in that what happens if you have a committee on for two weeks, three weeks, four weeks?  Their investigation is simple.  Not simple.  Complicated.  Evolving.  They can make or can't make representations.  Then you're going to end up having a fight in each one of those cases.  And certainly, it's not unheard of, and I've had plenty of instances where people have come in for financing not on day one about whether this Rule is applicable at all.  And so from my perspective, I can see this becoming a real challenge and again, the Rule not really holding water.

I think it's a much more elegant and appropriate situation to say, if the committee has come to a conclusion on its challenge period, that, again, the Rule says in the event that there's a timely and successful challenge.  If the committee says, we can represent there will be no challenge as to 400 million dollars, and therefore the 400 million dollars that's going to be subject to this interim order is not an



www.escribers.net | 800-257-0885

SPIRIT AVIATION HOLDINGS, INC., ET AL.

issue.  And therefore, we don't have any concerns under the Rule, and the Rule truly is inapplicable.

MR. HUEBNER:  Yeah.  So Your Honor, why don't we do this, since I think the committee has already functionally said that, and you're just looking them to say it in a more sort of focused way so that the record is perfectly clear.  Why don't we just -- if it sounds right to the Court in particular, why don't we just hand the podium back to Mr. Goren, since I assume he's willing to say, yes, Your Honor, the committee officially represents that they have no challenge and have settled it as part of the other concessions on the DIP.

THE COURT:  Now, I think that's wise, although I recognize, Mr. Huebner, we may be trying to solve your problem and my problem by giving Mr. Goren a problem.

But with that caveat --

MR. HUEBNER:  No.

THE COURT:  -- Mr. Goren, I'd be happy to hear from you.

MR. HUEBNER:  He is lovely.  I think it's going to go really well.  Let's just do it and see what happens.

MR. GOREN:  Thank you, Marshall.

Look, as I think I basically already said this, the committee, this is a difficult one, but the committee -- look, particularly as somebody who serves as counsel to creditors committees in a lot of cases, a lot of what you said about the



SPIRIT AVIATION HOLDINGS, INC., ET AL.

Local Rule really hits home to us, Your Honor.  But in this case, this was made clear to us that this particular provision in the roll-up of the 400 million was a key economic factor for the lenders, and they were unwilling to make the loan without it.

The committee did undertake an investigation.  And judging from the fact that this was debt issued five months ago under a confirmed plan by this Court.  UCC-1s were filed on behalf of the that debt shortly thereafter.  There is 330 million sitting in encumbered securities accounts.  The committee concluded that there was no viable challenge to at least the first 400 million of the lender's debt.

There may very well be challenges above and beyond that.  We haven't yet made those conclusions.  And the application of the Local Rule to anything above and beyond the 400, I think, to us is a very live question.  And whether we have challenges there is a very live question.  But as to the first 400, the committee has concluded that agreeing that that money could come in without challenge was reasonable in light of the other concessions and to move forward in these cases.

THE COURT:  All right.  All right.  So I think -- I appreciate, Mr. Goren, your flexibility on this particular issue.  I suspected that you'd be able to get there, given that I think you probably thought very carefully about your initial statement and what you're willing to share.  So I was taking my



SPIRIT AVIATION HOLDINGS, INC., ET AL.

cue from you, and I'm glad to realize that I took the right cue and didn't put you in an impossible situation.

And so with that, I think someone can make a tweak to the order that basically says, based on the representations at the hearing, or if you want to put some more precise language, I'll let you all figure out what you're comfortable with.  But that means that there is no timely -- there will be no timely and successful challenge, or any challenge at all, to the validity and enforceability of the 500 million dollars that's subject to the interim hearing.  And on that basis, I'm happy to consider that issue resolved.

And that, I think, keeps the integrity of the Rule in place and frankly puts it -- there are occasions when courts think about these things in a way that will drive parties crazy because they're trying to get a deal done, and they're trying to get a lot of practical things happen.  But this Rule does exist for a reason, and I think it's important to keep the Rule in place and address things in the context of the Rule, which I think we've just done, which keeps some rules to the road, not only for debtors, but for committees going forward.  And I appreciate everybody's willingness to try to, and I think we have, successfully noodled it out in real time.

So thank you very much for that.  It's one of the great benefits of this job is to take advantage of the smarts in the room.  So thank you very much.



SPIRIT AVIATION HOLDINGS, INC., ET AL.

So that was a very long discussion. And with that, we can go back to Mr. Robertson on anything else the debtors wanted to address in the presentation. And I will give people the solace of knowing that we were going to get to this in the proposed order anyway, so we've shortened that discussion by the same length of time that we've done it here.

So take it away, Counsel.

MR. ROBERTSON: No, thank you very much, Your Honor. Again, for the record, Christopher Robertson, Davis Polk & Wardwell, on behalf of the debtors. I intend to hit on a few additional points that the order either does or does not today approve and then talk a bit about process and some recent changes that popped up in the blackline and then conclude my presentation on what is in fact an uncontested matter.

So moving along, the order approves certain solicitation procedures, which I do want to touch on briefly towards the end of this. It approves the continued use of the 120 million dollars from the specified encumbered accounts that was approved at the prior hearing. That 120 will be replenished upon the later of funding of this debt but realistically upon the closing of the transaction and the receipt of the Aercap transaction and proceed with the Aercap liquidity payment, which we'll talk about later.

There is a, I think, customary adequate protection for the secured bondholders and the RCF. In substance, the

SPIRIT AVIATION HOLDINGS, INC., ET AL.

adequate protection is very similar to what was in the prior order.  I think the one addition is the payment of -- it's essentially interest or payments in lieu of interest as one due to the revolver.  The committee requested that those payments be subject to recharacterization to the extent that the revolver is unsecured, which is acceptable and frankly is what the Code says.  And that's reflected in the order.

There are customary, I think, fees for the lenders that are set forth in our papers.

And this order does not grant 506(c), 552 marshaling waivers.  Those are reserved for final order.

And then finally, on the carve-outs, there is the carve-out you see in every DIP order for professional fees. There's a separate administrative carve-out.  That carve-out is the utilities account.  The PFC account, which is segregated by regulation.

And then it also reserves for trust fund taxes and other amounts, frankly, that it's not really estate property. Right.  It's property held in trust for third parties.  We think it's important for a couple reasons.  One, it gives comfort to those parties, that they will get paid and there's a reservation for them.  And in addition, I think it's just demonstrates the debtors and frankly, their lenders as well dedication to running this airline responsibly throughout the Chapter 11 process.



SPIRIT AVIATION HOLDINGS, INC., ET AL.

THE COURT:  All right.

MR. ROBERTSON:  And importantly, that account also reserves for payroll.  So it's not just trust fund payroll taxes.  It's payroll for the next payroll cycle.

I want to touch briefly on the syndication procedures. I don't want to go into detail on the procedures but just as far as sort of why they're in there and what they do.  So on Tuesday, assuming that the order is entered, the company will launch effectively a tender offer process.  Holders can elect to participate in the opportunity to participate in the DIP. And they'll have the tender offer period to do that.  I think there's a bifurcation.  The first ten days, you kind of get the treatment everyone gets to kind of get people into the deal if they want to come in.

The pre-petition indenture provides that the noteholders' obligations can be subordinated to the DIP if you have sixty-seven percent of the notes, as long as everyone's offered a chance to come in.  So we're satisfying that provision in the indenture.  We also need these sort of -- these procedures because again, we're rolling notes into loans.

And so there's a mechanic for that, and the way that mechanic works is that in order to effectuate the exchange, the notes would tender -- the holder would tender their notes prior to the settlement of the tender into, like, the -- into the DTC process.  And they would receive contingent roll-up loans.


www.escribers.net | 800-257-0885

SPIRIT AVIATION HOLDINGS, INC., ET AL.

Then those contingent roll-up loans would be exchanged into DIP roll-up loans, as and when there is a subsequent funding under the DIP and they actually --

THE COURT:  Right.

MR. ROBERTSON:  -- get rolled up.  So it's a purely procedural step in order to effectuate this process.  And there's a lot of language, frankly, in the order that lays out the steps that occur.  That all came in fairly late as we worked through this process.  And so you'll see a lot of blacklining, but it's all effectuating that mechanic.

THE COURT:  Yeah, I took it that way, as it was all tethered to this concept and how it was going to be accomplished.

MR. ROBERTSON:  Thank you, Your Honor.

So the last thing I would propose to do -- again, there's a lot of blacklining in the order.  If it's helpful for Your Honor, I can walk through -- not every change between the initial version that we filed and the one we filed last night. I think that would put a bunch of folks to sleep.  But I can hit on some of the major points and then address any questions.

THE COURT:  Yeah, I think that that makes sense.

MR. ROBERTSON:  Sure.  So in the order in finding (a)(3), you'll just see the changes to the roll-up ratios, which were agreed as amongst the lenders and the committee.  In paragraph -- bear with me -- paragraph 4(c), you'll see --



www.escribers.net | 800-257-0885

SPIRIT AVIATION HOLDINGS, INC., ET AL.

THE COURT: So can I ask you --

MR. ROBERTSON: I'm sorry. Go ahead, Your Honor.

THE COURT: -- for the big favor of just giving me the page number because the paragraphs do go on a bit so and are a little hard to find? So I think there's a page whatever it is of 603, looking at docket 242, if I'm looking at the right thing, which I think I am, to the revised proposed interim DIP order redline version.

MR. ROBERTSON: Absolutely, Your Honor. Give me one second to get the --

THE COURT: Sure.

MR. ROBERTSON: -- paper in front of me. I've got a bunch of papers on a fairly small podium.

THE COURT: I can appreciate the problem. And if it's easier with the -- if you already have a version and you're using the page numbers at the bottom, 12 or 34, whatever it is, I'm sure I can figure it out that way as well.

MR. ROBERTSON: No. No, Your Honor, it's no problem at all. I was going to paragraph 4(c), which is --

THE COURT: I think 120 -- let's see. 130. 4(c). For use of --

MR. ROBERTSON: Your Honor, I will have to -- I can cite to the pages of the blackline. Unfortunately, I don't have the as-filed copy in this binder, so I don't have the PDF pages. I have the order blackline page.



www.escribers.net | 800-257-0885

SPIRIT AVIATION HOLDINGS, INC., ET AL.

THE COURT:  That's fine.  We can do that.

MR. ROBERTSON:  And apologies, Your Honor.  In paragraph 4(c), again, it's page 31 of the blackline that was filed last night.  You'll see that there is language there that says that debtors are not authorized to use the proceeds of revolving priority collateral, other than the sale of spare parts in the ordinary course, consistent with past practices.  That was agreed with with the RCF lenders.

THE COURT:  All right.

MR. ROBERTSON:  You'll see in -- and I'm going -- and I'm going backwards here to 2(g).  It's really just a flag for Your Honor that we have a finding in the order with respect to the syndication procedures.  I just wanted to flag that for Your Honor that we were asking the Court to bless those.

THE COURT:  Yeah, I did see that.  And I certainly understand why you'd want that finding.  And I think one of my changes is just to put in the standard language I put in before findings, that it's based on the record in front of the Court and the representations of the parties and just because you all are in a better position to explain that.  But I understand why you need those findings as to the procedures.

MR. ROBERTSON:  Thank you, Your Honor.

Moving along to paragraph 14 in the carve-out, this is at, like, page 51, 50/51.

THE COURT:  Thank you.  Got it.



www.escribers.net | 800-257-0885

SPIRIT AVIATION HOLDINGS, INC., ET AL.

MR. ROBERTSON:  You'll see some changes that just basically create a -- is essentially a waterfall for funding into the carve-out that you use unencumbered funds and use DIP funds and use encumbered funds.  And there is language in there that sort of defines how the revolver priority collateral, really proceeds with revolver priority collateral, are treated with respect to that waterfall.  And that was also agreed amongst the lenders in the very recent past that (indiscernible) kind of flow through the carve-out paragraph.

THE COURT:  Right.

MR. ROBERTSON:  And you'll see in paragraph 22, which is the release paragraph, this is on page 67 of my blackline --

THE COURT:  Got it.

MR. ROBERTSON:  -- that the releases are subject to the committee challenge period that was also flagged in the committee's ROR.

THE COURT:  Right.

MR. ROBERTSON:  And then finally, in the defined terms in the annex, you'll see in post-petition cash, the definition of post-petition cash, the same language pops up other places that it's is effectively, I just wanted to flag for Your Honor, that the revolving lenders have allowed for the use of proceeds from the sale of spare parts in the ordinary course, consistent with past practice.  It pops up there as well, which is the agreement we struck with them.

SPIRIT AVIATION HOLDINGS, INC., ET AL.

And then there is a cleanup change in the definition of roll-up DIP obligations, which, again, kind of goes to what I was saying before, because there is a complicated mechanic around when those are exchanged, when they become roll-up obligations, and when they're contingent.  But it just clarifies that basically nothing is rolled up until the new money funds.  And it effectuates the roll-up into a roll-up DIP loan.

THE COURT:  All right.  Yeah.  Yeah, I see that in the roll-up DIP obligations definition.  Yep.

MR. ROBERTSON:  So that brings me very close to the end of my presentation, Your Honor.  There are a few additional changes that we worked out, I mean, literally, after 3 a.m. last night and then this morning.  I want to at least spend some time flipping through, and if you bear with me for a minute, just to make sure there's nothing that I need to flag for Your Honor.

I would say, you'll see it in the blackline we submit to Your Honor after the hearing, assuming that you grant the relief.  We're happy to file it as well on the docket.  The vast majority of these are additional cleanup changes to effectuate the roll-up exchange concept.

There are, I think, one or two changes that actually, as I flip through, they go to the same -- they go either to the same concept that I just described, which is delineating the

escribers
www.escribers.net | 800-257-0885

SPIRIT AVIATION HOLDINGS, INC., ET AL.

waterfall of which funds are used to fund the carve-out and the like..  But they're sort of more, I don't know, I guess in line with the changes I have already described.  There are a couple of changes that you'll see in paragraph -- this is 14(b), I believe, that are protections, essentially, for the notes trustee who has to mechanically deal with these issues as they exchange the pre-petition notes into DIP loans.

And that's really it, Your Honor.  I don't think that any of those changes will substantively change the relief that that Your Honor has already reviewed and that I've discussed.

THE COURT:  All right.  Thank you very much.  So anything else from the debtors on this particular motion before I circle the virtual room?

All right.  Hearing nothing else, I guess we can start with the committee.  We've already started our discussion.  So anything else the committee wanted to address as to this motion, again, recognizing that they filed their reservation of rights?

MR. GOREN:  Thank you, Your Honor.  Todd Goren, Willkie Farr, proposed counsel to the committee.  I think we've really covered our position in my previous statements.

Obviously, the committee has consented to this order being entered and reserved its rights for the final order.  And we'll do our best to work through the remaining issues we have with the DIP over the course of the next several weeks.  And



SPIRIT AVIATION HOLDINGS, INC., ET AL.

hopefully that one will be consensual as well.  But we do still have a little bit of wood to chop to get to the final order.

THE COURT:  All right.  Fair enough.  Thank you very much.

And anything from the AHC?

MR. STAMER:  Your Honor, thank you.  Nothing further.

THE COURT:  All right.  Thank you very much.

And anything from any other party as to the debtors' motion to obtain post-petition financing and related relief at that is the subject of our discussion?

MR. HARMEYER:  Your Honor, may I be heard just for a few minutes?

THE COURT:  Sure.

MR. HARMEYER:  It's Andrew Harmeyer of Milbank.  I'm here on behalf of Citi, which is the agent under the RCF.  As was alluded to in the presentation under this order, Your Honor, the debtors are not authorized to use proceeds of RCF priority collateral, which consists of engine, slots, and spare parts.  If our collateral is sold, we'd expect the debtors to come talk to us, and we'll figure it out.

But the one exception to that, which Mr. Robertson noted, is proceeds of spare parts that are sold in the ordinary course of business, consistent with past practice.  We understand from Spirit's counsel that the proceeds of those sales are very de minimis.  Approximately 10,000 dollars per



SPIRIT AVIATION HOLDINGS, INC., ET AL.

month.  And so we've tried to be pragmatic here for purposes of this order, Your Honor.  And so based on those representations, we haven't asked for a segregation of those particular proceeds.  We understand that when those parts are sold, they flow into the general operating account.

And so for purposes of this order, we're not asking for any particular relief.  We do have -- we do expect to have further conversations with the debtors about it.  But for today, we have no objection, just based on our understanding of how those sales are dealt with in the ordinary course and the fact that they are de minimis in nature.

THE COURT:  All right.  Thank you very much.

Mr. Robertson, anything you wanted to add on that particular topic that you have not already said?

MR. ROBERTSON:  Yeah, just to kind of clarify, I totally agree with Mr. Harmeyer that the spare part sales are de minimis.  I think we're getting information real time from the company exactly on the sizing.  It's probably a little bit more than 10,000 a month.  But again, I would still characterize it as de minimis.  We'll talk to Mr. Harmeyer and make sure that he has the latest as well.

THE COURT:  All right.  Thank you very much.

Anyone else that wishes to be heard in connection with the request today for an interim order on post-petition financing and related relief?



SPIRIT AVIATION HOLDINGS, INC., ET AL.

MR. GALEN:  Yes, Your Honor.  Just very briefly, Michael Galen at Dorsey & Whitney for U.S. Bank and the Elavon entities, which are the credit card processors for the majority of the debtors' ticket sales.

Just wanted to flag that we had discussions with the debtor.  There's some language in the revised order.  It's shown in the redline at paragraph 21(k), which is page 76 and into 77 of the redline document, just making just some clarifying changes with respect to one of the accounts at U.S. Bank, just saying that it's not -- clarifying it's not part of the collateral and there's no lien on that account as part of the DIP.

And so we had productive discussions on that with the debtor with respect to the -- in this interim order, and we just have reserved our rights pending final hearing and final order on that.  So just wanted to clarify that.

THE COURT:  All right.  Thank you very much.

Mr. Robertson, anything on that particular issue?

MR. ROBERTSON:  No, just to apologize to Mr. Galen and the Court that it had slipped my mind that that was not in the prior cash collateral order, that it's new to the DIP order, but it does show up in the blackline.

THE COURT:  All right.  Thank you very much.

Anyone else that wishes to be heard?

MR. HUEBNER:  Your Honor, Marshall Huebner, just for



www.escribers.net | 800-257-0885

SPIRIT AVIATION HOLDINGS, INC., ET AL.

ten more seconds.  I want to give Ms. Cornell a shout out.  So literally thirty seconds before the Court said that this is how you would like to proceed, she sent an email to me and to Mr. Goren, saying, why don't you just add language that says, based on the representations of the committee and the evidence presented at the hearing.  And then thirty seconds later, you used those exact words.  It was almost freakish.

So credit where credit is due.  It looks like the two of you were coming to the exact same resolution of the problem.  So we will go DOJ.  Nothing further from me, Your Honor.

THE COURT:  All right.  Well, it makes me think of what my grandmother always used to say is you can either say that great minds think alike or fools seldom differ, but I'm going to go with the first there.  And again, I do appreciate everybody working together on trying to keep the integrity of the Local Rule, so which I think ultimately is for the benefit of the bankruptcy system.

So all right.  Anything from any other party on this particular motion and the request for an interim order?

All right.  Hearing nothing else, I just want to go through my comments to the version of the order that I had, which is the one at docket 194.  And I think a bunch of them have been addressed.  We've had a lot of discussions about some things.  And so moving right along, so you'll have to give me a second as I look at these comments to see whether they are



SPIRIT AVIATION HOLDINGS, INC., ET AL.

still things we need to talk about.

I guess, the first one, I think, is something that you're fixing as you go along.  There are a bunch of global paragraph cross-references, which I'm sure you're working on. I'll point them out as I see them, for what it's worth.

There was a -- I didn't see the fronting fee letter, which is mentioned on page 2 for the first time, in the DIP, but I guess it's defined in the DIP credit agreement.  And I just want to make sure there's nothing that is worth putting on the record as to the fronting fee letter, just because it's not so much in the DIP, but more in the credit agreement.

MR. ROBERTSON:  I don't have anything to put on the record on the fronting fee letter.

THE COURT:  All right.  So going to page 4, so page 79 of 171, there is -- and frankly, this is a matter of phrasing. It talks about -- paragraph (g) talks about including upon entry of the final order avoidance proceeds as defined below. And it's all talking about the very common issue we talk about. Liens on avoidance actions for purposes of motions like this.

I am definitely a fan of the way it's stated in page 155 of 171, way back in the definition section, that says, so you all don't have to look it up, the debtors have requested that the DIP collateral include, subject to and effective only upon entry of the final order, all avoidance proceeds.  So the concept is in there.  And in various other places, it's stated



www.escribers.net | 800-257-0885

SPIRIT AVIATION HOLDINGS, INC., ET AL.

in a way that I don't think an argument could be made that it's any different than what's said on page 155.  But I think there might be, like, a language tweak.

But here, it says avoidance proceeds as defined below.  That's defined on page 155.  So I think it's all subject to that.  And I think that's the intent.  And I just want to make that -- I just want to confirm that on the record.  Again, that's how I read it.  But again, when there's so many references to it in so many different contexts, there's always a potential for somebody reading it or making some arguments some other way.  But I wanted to make sure we're all on the same page.

MR. ROBERTSON:  No, we are, Your Honor.

THE COURT:  All right.  So just for purposes of the record, whenever we're talking about avoidance actions in this order, I read it consistent with the definition on page 155 and the statement that I just mentioned on the record.  So rather than have to wordsmith it in every particular instance, which Mr. Robertson, you already talked about putting people to sleep.  I think that would definitely do it.

So the same, I think, is true for also on page 4(i), it says subject to and effective upon entry of the final order.  This one is about all the usual bundle of rights, 506(c), equities of the case, and marshaling.

And to try to deal with it all in one fell swoop here,



www.escribers.net | 800-257-0885

SPIRIT AVIATION HOLDINGS, INC., ET AL.

as opposed to every particular place where it's mentioned, I just want to make it clear that subject to and effective upon entry of the final order means that a request will be made that the final order should include this relief.  It's not being granted today.  And that's my one comment.  And my second comment is, I think, as you may know from other cases, the equities of the case, I followed Judge Glenn's lead in talking about, certainly, the debtors can waive equities in the case, but certainly, no one can waive it on behalf of the court.

And so those are my two comments.  And again, I would sort of carry those forward in the order generally speaking. And so maybe one way to do it is to tweak the language here or put in a footnote here, however you want to do, it that basically says, regardless of anything anywhere else, that the request here as to little (i) through (iii) in number I talking about 506(c), marshaling, equities of the case, again all a request that'll be made for that relief in the final order.

So again, I think noncontroversial.  That's just a matter of wordsmithing.

MR. ROBERTSON:  Okay.

THE COURT:  All right.  Just trying to make it a little bit easier for all of us, rather than mentioning every instance where those terms are used.

So on page 91 of 171 or page 16 of the blackline, its findings regarding DIP facility and use of pre-petition


www.escribers.net | 800-257-0885

SPIRIT AVIATION HOLDINGS, INC., ET AL.

collateral.  Consistent with my usual practice, I always say, based on the entire record, including the representations of the parties.  Again, I have no doubt about the appropriateness of the procedures that you've mentioned in terms of solicitation, but certainly, I am relying on your expertise and knowledge of those in connection with making these findings.

So on page 92 of 171, the next page, 17, I did see in paragraph (iii), so this is H(iii), talks about business judgment has standard language, all of which is not only not objectionable but good, sound practice that the terms of the DIP loan are fair and reasonable.  Reflect the debtors' exercise of prudent business judgment, consistent with fiduciary duties.

But then there's a sentence here that just seems to be at -- a clause it seems to be out of place to say that.  So if you read sort of the beginning of the terms of the DIP facility DIP documents and terms constitute reasonably equivalent value and fair consideration.  I'm not quite sure why we need that.  It seems to be something that's different than the test that we have.  Right.  We have the test under the law for approval of DIP financing, both for interim and final.  And it doesn't --

So my inclination would be just take it out.  It is what it is.  It's an exercise of your reasonable business judgment.  Fair and reasonable.  So this pops up, I think, this language, in maybe one other spot.  So I'd be inclined to just


www.escribers.net | 800-257-0885

take it out, unless I'm missing something.

MR. ROBERTSON: Yeah. No, I don't think you are, Your Honor. Your Honor, as a -- were Your Honor to approve the DIP, I don't think that we need this particular funding.

THE COURT: All right. And I will say, maybe consistent with our discussion about the Local Rule, judges tend to worry about these things, just in case they take on life in other contexts.

All right. So moving right along, I think we've had a sufficient discussion of the DIP fees. The interest and expenses. And I think it's reasonably clear on the record.

So my only question about that is I wanted to understand -- and I'm looking at page 98 of 171 versus -- or page 23 at the bottom. So usually, I've seen fees that are in connection with the motion and anything else relating to the motion. This actually covers, if I'm understanding this right, in double (ii) at the top, it's for the Chapter 11 cases generally. And so it did lead me -- well, I wanted to make sure I'm understanding that right.

And so I guess then there's a list of other things going on here. I'm not even sure if they are necessarily needed if that's as broad as the Chapter 11 case is reasonably. But I just wanted to make sure I understood that correctly. So we're looking at paragraph (ii), about halfway down, where it talks about jointly and severally pay or reimburse reasonable



SPIRIT AVIATION HOLDINGS, INC., ET AL.

and documented and out-of-pocket expenses, costs and expenses, for, in connection with, and then halfway in the paragraph, it says the Chapter 11 cases generally.

MR. ROBERTSON: So Your Honor, these are the fees for Akin and Milbank kind of generally related to this case. And I think that was negotiated that it was appropriate.

THE COURT: All right. All right. On that same page, for (iii), it talks about an indemnification. And then if you go down, it has the standard, provided that no one will be indemnified for costs, et cetera, et cetera, et cetera, and no indemnified person shall have liability. Et cetera. Et cetera. Et cetera.

And then -- one, two, three -- four lines from the bottom, it says liability is found in a final nonappealable judgment by a court of competent jurisdiction to result in solely from such indemnified persons bad faith, actual fraud, gross negligence, or willful misconduct. I'm not a fan of the word solely in that context. In the sense, I say this in jest, certainly there's not a suggestion that a little fraud is okay.

So my thought would be to get rid of solely. And people can make whatever argument they want to make about apportionment, if the very unfortunate and likely circumstance we ever end up there. But I thought solely was probably not an appropriate limitation.

MR. ROBERTSON: I mean, from our perspective,



www.escribers.net | 800-257-0885

SPIRIT AVIATION HOLDINGS, INC., ET AL.

obviously, that's perfectly okay.

THE COURT:  All right.  So I'm going to take that out, unless somebody wants to make an argument that a little fraud is okay.

All right.  Moving right along, so I had earlier comments on page 100 of 171, but I think they are all addressed because it's all the 4001-2(g)(5) discussion.  And give me a second to make sure that there's nothing I'm missing here.

Oh, this paragraph (c) at the bottom also has that language about everything done is for fair and reasonably equivalent value.  Again, I know it's sort of the I think it's 548 language, but I don't know that it really belongs here.  So I'd be inclined to take that out.  And this is, I guess, one of the -- on this page, I have two paragraph references that are probably now different, paragraph 13 and (b), which I think should have been 12 and 14, and paragraph (c), which would probably be 15.  But those may have changed, once again, in light of other changes that have been made.  So I just throw that out, for what that's worth.

MR. ROBERTSON:  No, I appreciate it, Your Honor.

THE COURT:  All right.  So I assume we'll just take out fair consideration reasonably equivalent value.

And with that, moving right along.  On page 102 of 171, page 27 at the bottom, on paragraph (a), the last line talks about all parties' rights are reserved as to whether the



SPIRIT AVIATION HOLDINGS, INC., ET AL.

unencumbered funds are encumbered by pre-petition secured notes liens and pre-petition RCF liens. I'm assuming that, essentially, that's just a reservation of rights consistent with other reservations I've heard and that there's nothing worth discussing for purposes of the record today.

MR. ROBERTSON: No, Your Honor. I think, if it's helpful, I think unencumbered funds is a bit of a misnomer because those funds, they're DIP collateral. Right. They're not really unencumbered. So it's just, it's a little bit funny to have a reservation to say that other unencumbered funds actually not encumbered, but it's a definitional issue carried over from old orders. So --

THE COURT: All right.

MR. ROBERTSON: -- that's all I'd say about it.

THE COURT: All right. Thank you. That's actually helpful, just to the extent that it gives an explanation of what that sentence actually means.

So going to page 104 of 171, and again, I think this is covered by my prior comments. If you look at, this is page 29 at the bottom, right before you get to paragraph 6, there's a reference to the DIP lien shall be senior, [blah, blah, blah], and including any lien or security interest that is avoided or preserved for the benefit of the debtors and their estates under Section 551.

I wanted to make sure I understood that. I don't



www.escribers.net | 800-257-0885

think that that's necessarily a lien on avoidance actions but rather a priority issue, or is that just another thing that's saying any transfer that's avoided is essentially subject to the lien, which is just another way to do a lien on avoidance actions or avoidance proceeds, so which would be subject to a final order.  And I just wanted to make sure that this last clause didn't change that definitional discussion we had on page 155 about that there's a request for the final order on that.

MR. ROBERTSON:  No.  No, Your Honor.  It is a priority issue.  And if the concern is that it's sort of read as like a back door lien on avoidance actions, we don't read it that way.

THE COURT:  All right.  All right.  That's helpful clarification.  Thank you very much.  And I think that comes up again on the next page, so I will move on.

So on page 105 of 171, or page 30 at the bottom, paragraph 7(b), there's a line that says the secured notes collateral agent for the benefit of itself and the secured notes parties is hereby granted effective and perfected as of the date of the first cash collateral order.  So this ties the grant of certain relief to the entry of the first cash collateral order.  So it's a bit of a nunc pro tunc situation.  I thought it's worth discussing.

I understand it has to do with how the first cash collateral order, the second supplemental cash collateral, all



SPIRIT AVIATION HOLDINGS, INC., ET AL.

this play together. The reason why I thought it would be helpful to state it on the record is because we know there's some law -- there's some case law out there about nunc pro tunc things that get a little complicated. And I don't think that's what we're talking about, and I think we're talking about the relationship.

But so in order to not -- in order to have that clear on the record, I thought maybe it would be helpful for you to address it. It then comes up on the next page, talking about the second interim adequate protection order. And I think it's the same kind of thing.

So maybe, Mr. Robertson, you could just explain that on the record for benefit.

MR. ROBERTSON: No. Sure. Sure, Your Honor. Happy to. I don't think of this as sort of a retroactive grant our nunc pro tunc grant. The liens were granted, adequate protection liens were granted under the first interim order at that time, and so they should cover any diminution since that time. This is really a ratification, a clarification, that those same APs is still granted and has been granted through the period up until now.

THE COURT: All right. Yeah. So in other words, they're consistent, and they follow form as opposed to anybody trying to read them in the way that would put them at war with one another. All right. Fair enough.


www.escribers.net | 800-257-0885

SPIRIT AVIATION HOLDINGS, INC., ET AL.

On page 108 of 171, I think the second line from the top, I think you're missing a "the" before "owned aircraft surplus".  Very minor.

Page 34, second line, there's a reference to paragraph 10, which I think was out-of-date but again I think you'll address those.

Page 36, in the middle, right before (c), there's a sentence that I think we've already talked about in another context about any lien or security interest that is avoided or preserved for the benefit of the debtors and their estates in Section 551.  Again, I understand this to be a priority issue, rather than a lien on avoidance action issue.

And on that same page, again, 111 of 171 or page 36 at the bottom, this talks about the payment of reasonable and documented out-of-pocket fees, costs, and expenses related to the Chapter 11 cases of the RCF parties secured parties get that all,  Whether incurred prior to or after the petition date, I just wanted to clarify that it's all about the Chapter 11 cases.  That's the lodestone, the touchstone, for it.  And just to be clear about that.

MR. ROBERTSON:  Your Honor, I don't know that there are fees that are unrelated to this case, but --

THE COURT:  All right.

MR. ROBERTSON:  -- yeah.  And I don't want to speak for Mr. Harmeyer.



www.escribers.net | 800-257-0885

SPIRIT AVIATION HOLDINGS, INC., ET AL.

MR. HARMEYER:  We agree that the fee reimbursement for purposes of adequate protection is the fees need to be related to the case.  That's agreed.

THE COURT:  All right.  Thank you very much.

Page 117 of 171 makes reference to termination events in the debtors' failure to obtain within thirty-five days of entry of this interim order.  This is consistent with the interim DIP order changes.  And I think that thirty-five days, just to be clear, is subject to availability of the Court so and people acting reasonably diligently.  I think everybody understands that but just helpful to note.

So I assume you don't have any issues with that?

MR. ROBERTSON:  No, I certainly do not, Your Honor.

THE COURT:  All right.  On page 118 of 171, which is page 43, at the bottom, it talks about exercise of remedies, and it talks about five business days' notice.  I think the Local Rule talks about five days for cash collateral and seven days for a DIP, since, as you mentioned, these are inextricably intertwined.  If you were a physicist, that's probably how you would view them.  I figured we should probably make them all seven days.  That would be my suggestion.

MR. ROBERTSON:  Your Honor, from my perspective, that's perfectly fine.  I will let the committee weigh in if they have an issue.  But I think it just kind of came over from the old protection order so maybe (indiscernible) --

escribers
www.escribers.net | 800-257-0885

SPIRIT AVIATION HOLDINGS, INC., ET AL.

THE COURT:  Yeah.  No, that's fine.  That's fine. There's a lot of moving pieces in these kinds of orders and particularly for this one.

All right.  And on page 119 of 171, about halfway down, paragraph (b), it says the Court orders otherwise or as determined that a DIP termination event has not occurred or is not occurring.  I think there's a defined term interim DIP order breach.  I don't know if that should be included in there or not, as well, or whether it's subsumed by DIP termination event.  But I throw it out there to the extent we've got a separate defined term that seems to fall into the same kind of category.  But I'll leave that for you to consider whether that should be added.

MR. ROBERTSON:  Yeah.  Let's take a look at it, Your Honor.  I think there was a -- at one point, at least, there was a distinction between these two in that the interim order breach just goes to the breach of the order itself and not the DIP documents.  But if it's not used that way, we can clean it up.

THE COURT:  All right.  Well, take a look.  That's what I figured.  The terms are -- it's just sort of a historical dig as to how they originate and whether it makes sense.

So page 123 of 171, page 48 at the bottom, about -- one, two, three, four, five, six -- seven lines down, there's



SPIRIT AVIATION HOLDINGS, INC., ET AL.

an extra space before the comma at the end.  And on page 126 of 171, paragraph 14, the third line and fourth line, at least in this version, there was a bracket around the term DIP interest rate.  And I think probably the brackets come out.  I think it probably was a placeholder.  So but you'll take a look at it, and whatever is appropriate, you will handle.

And then on page 127 of 171, there are some dates for the -- then we start to get into dates for the challenge period.  And I understand the committee challenge runs seventy-five days after the entry of the second interim order, and but for others, it was seventy-five days from the petition date.  So I just, I flag those just to make sure they're all consistent with the Local Rule 4001-2(4)(a), the sixty days, at least sixty days.  And so I think that that probably works itself out, but I just figured I'd mention it, and you all can take a look at it.

MR. ROBERTSON:  Yeah, we'll take a look.  I think we had tied it back to the prior orders because the same steps were in the prior orders.  But we'll take a look.

THE COURT:  All right.  Thank you.

A more substantive comment.  On page 130 of 171, page 55 at the bottom, it talks about limitations on use of DIP facility, DIP collateral, cash collateral, and carve-out.  The language here is very broad.  And I'm probably overthinking this, but the language is broad enough that it made me


www.escribers.net | 800-257-0885

SPIRIT AVIATION HOLDINGS, INC., ET AL.

concerned that the debtors could never be on the other side of any issue from the DIP lenders without running into this problem.  I don't think that's the intent.

I certainly understand that the DIP lenders are careful about how their money is going to be used.  But when it talks about impairing the ability of the DIP lenders to recover on their collateral or seek affirmative relief, it was just very broad.  And I just, I read this to be that it's tied to their particular rights, dealing with their collateral.  And I did see there's a fiduciary out elsewhere.  And so I read it that way, rather than taking a broad view that the debtors have to run all their views by the DIP lenders.

And I suspect that's very strongly how you read it, Mr. Robertson, as well.

MR. ROBERTSON:  I certainly share your views, Your Honor.

THE COURT:  All right.  So if anybody has a different view and I'm missing something, let me know.  But otherwise, I'll move on.

Okay.  I had a comment, but it's no longer needed to be discussed.

We talked about paragraph 17 on page 132 and about that all being the limitations on marshaling and equities of the case, et cetera, et cetera, are all for the final order. That's the request made.



www.escribers.net | 800-257-0885

SPIRIT AVIATION HOLDINGS, INC., ET AL.

And I think I mentioned in a comment on equities of the case in page 133 how a language I've traditionally seen is that the debtors shall not invoke the equities of the case and that it binds the debtors and not the court.

The top of page 130 of 171, the first line, there's a paragraph number 145.  Extra number snuck in there.

On page 63 at the bottom, 138 of 171, paragraph 21 talks about preservation of rights granted under this interim DIP order.  And it talks about what happens if you get paid.  And I think it says any alternative debtor-in-possession financing and in a number of different places.  I would be inclined for both paragraph (a) and (b) to say any alternative transaction.  To the extent that there is some other transaction that leads to the DIP lenders being paid, I think once they get paid, they get paid.  And we never quite know what the end game is in cases.

So I would just -- and I'm looking at -- one, two, three -- one, two, three -- four lines down in (a) and then later in (a) and then four lines down in (b), just say an alternative.  I think right now it says alternative debtor-in-possession financing.  I think it just should be any transaction.  Again, you can wordsmith it in a way that's if I'm doing any violence to the concept.

But Mr. Robertson, does that make sense to you?

MR. RUBIN:  Yes.  It's not the case.



www.escribers.net | 800-257-0885

SPIRIT AVIATION HOLDINGS, INC., ET AL.

Yeah.  Your Honor, it's Jason Rubin from Akin Gump on behalf of the official -- sorry, not the official.  The ad hoc committee of secured noteholders.

Your Honor, this actually, I think, does need to be alternative DIP funds because what this paragraph provides is whether the DIP is subject to or carry with another lien in the case.  So this is simply focused on a lien in that that can be made senior or in some cases carry to the DIP.  So it is limited to --

THE COURT:  All right.

MR. RUBIN:  -- the alternative financing.  It's not a transaction.

THE COURT:  All right.  So could we meet somewhere in the middle and say a transaction that includes debtor-in-possession financing?  And therefore, I understand your point is that that's what you're worried about and the liens.  But again, there's all sorts of ways cases end up.  And I confess, I'm not smart enough to figure out what they are.

So I just don't want to be unnecessarily limited because I guess my thought is if you're talking about other liens.  Right.  But I guess my thought is that if we're talking about a way that you all get paid off, that I want to leave that as a sort of an open door.

Maybe the other way to address it is to put some sort of a catch all somewhere and say, notwithstanding anything



www.escribers.net | 800-257-0885

SPIRIT AVIATION HOLDINGS, INC., ET AL.

anywhere else, the debtors are free to essentially pay you off however they pay you off, as long as all your rights are addressed.

I'll let you wordsmith that. I think you understand where I'm coming from, and I think I understand where you're coming from. And I'll let you figure out where those two things should meet. And again, there is already sort of a fiduciary out in paragraph 21(d) at the end of that, so perhaps that's the place to address it, or maybe you think it's been fully addressed there.

All right. I think that's my last comment. And so I don't think there's anything in there that should provide a serious challenge wordsmithing wise in terms of getting the order turned around. And so I will look for that order. I'll start looking for it about 2 o'clock, with the thought of getting it entered this afternoon.

And so before I get ahead of myself, let me grant the motion for the requested relief today to enter an interim debtor-in-possession financing order. And I'm granting the request, as has been amended and supplemented over the course -- as is usually the case, over the course of the proceedings, including all the filings that have been made right up through the hearing and all the comments that have been made by the parties today on the record, all of which are part of the record. And I'm sure we have, although I'm not

SPIRIT AVIATION HOLDINGS, INC., ET AL.

going to take the time to look for it, that we have a reference to today's hearing in the order so that we can include all of that.

So I find that the requested relief today is appropriate under the facts and circumstances, all of which we've talked about in some detail, and is appropriate under applicable law.  The financing is important, very important, to the case.  It speaks volumes that this is an uncontested request for relief today.  That it's very important to the progress of the case and to the enterprise of the debtors and all their stakeholders, their employees, the folks they do business with.  And so I'm happy to approve it.

I really very much appreciate all the hard work that has gone on behind the scenes that we've talked about today in terms of all the discussions that the debtors have had with all sorts of constituencies, including, obviously, the committee, the ad hoc committee, and the U.S. Trustee's office.  Everybody involved.  This is a very good outcome.  The debtors were talking about this for some time and were happy to report at one of the recent hearings that this was coming together and very happy to see the concrete results of everyone's efforts today.  So thank you all for the hard work.

And once again, I'll also thank you all for the great benefit that it is to be able to talk to you about legal issues that I have concerns about in real time in a candid and helpful



SPIRIT AVIATION HOLDINGS, INC., ET AL.

way with all of you to get your wisdom on how to appropriately address issues so that we all can get done what needs to get done and do it in an appropriate way.  So thank you all very much.

And with that, I think we can turn to the other very important matter that's on for today.

MR. ROBERTSON:  Thank you so much, Your Honor.  I'll turn the podium over to my colleague Darren Klein.

MR. KLEIN:  Good morning, Your Honor.  Can you hear me clearly?

THE COURT:  Good morning.  We've got another, I think, twelve minutes for morning.  So happy that you could use that greeting, as opposed to this afternoon so --

MR. KLEIN:  We just made it.

THE COURT:  Just made it.

MR. KLEIN:  For the record, Darren Klein at Davis Polk & Wardwell, proposed counsel to the debtors.  Your Honor, I would turn to items 2 and 3 on the agenda.  It's the Aercap motion and the sealing motion related thereto.  Unless Your Honor prefers to do one first, I would just do them at the same time.

THE COURT:  That would be just fine.

MR. KLEIN:  Okay.  Thank you, Your Honor.

So revised orders were filed under certificate of no objection this morning.  It's docket 244 for the sealing motion


www.escribers.net | 800-257-0885

SPIRIT AVIATION HOLDINGS, INC., ET AL.

and 243 for the approval order.  I'm very happy to report that both are uncontested at this stage.  We worked with the United States Trustee to file a supplemental declaration and to adjourn the hearing to give more time in order to resolve their objections.  We and Aercap worked very constructively with the creditors committee to make some changes to the order to get their support, which I will walk through.

But first, Your Honor, let me just say that we're very happy to be here.  This really is a cornerstone agreement for the debtors that sets our fleet plan, allows us to reject twenty-seven aircraft, assume ten aircraft craft, right sizes our future leases with thirty to common options for more.  It resolves some potentially serious litigation that we might have otherwise had with Aercap.  It brings in much welcome funds not in the form of a loan but 150 million dollars of cash to us.  And it grants Aercap an unsecured claim in the amount of 572,352,298 dollars, which is discounted for -- we started based on the negotiations with the committee.

I'm very happy to report that this is uncontested at this point, and I hope this is the first of many uncontested and happy events for the debtors during these Chapter 11 cases.

The relief we're seeking is supported by the two declarations from Fred Cromer, the first, filed at docket 185, and then a supplemental at 192, Your Honor.  Mr. Cromer is, I believe, still on the Zoom and available for cross-examination.

escribers
www.escribers.net | 800-257-0885

SPIRIT AVIATION HOLDINGS, INC., ET AL.

Yes, I see him.  And I would ask to move those into evidence.

THE COURT:  All right.  Any party wish to be heard on the request to accept those declarations as evidence for purposes of today's hearing?

All right.  Hearing no objections, seeing none on the record, I am very happy to accept those declarations as evidence.  And I appreciate Mr. Cromer being here and being available.  Thank you.

(Declaration of Mr. Cromer was hereby received into evidence as Debtors' Exhibit --, as of this date.)

(Supplemental declaration of Mr. Cromer was hereby received into evidence as Debtors' Exhibit --, as of this date.)

MR. KLEIN:  Thank you, Your Honor.

I'll be very brief.  I sketched out already the highlights of the deal.  I think that the benefits speak for themselves and are spelled out well in the Cromer declaration.  I do want to thank both the United States Trustee and the creditors committee to work with us.  I'll just highlight the changes that we agreed and Aercap agreed with the creditors committee in large part.  There are a few places in the revised order where Your Honor will see some consultation rights with the committee around return conditions and other things.

We removed from the order in the term sheet what I will refer to as, like, a plan voting lockup that Aercap would



SPIRIT AVIATION HOLDINGS, INC., ET AL.

vote in favor of a plan, as long as it treated them the same as other general unsecured creditors.  We did that in negotiations and to resolve the committee's objection.  I want to be clear that we're reserving the right that in future settlements, we may try, maybe over the objection of the committee, to have that as part of a settlement.  But for purposes of getting to a consensual deal in this settlement, it was important to the committee, and we were happy to do so.

And finally, the Aercap general unsecured claim got reduced by a significant fraction to the amount that I stated earlier on the record.  And importantly, both for the United States Trustee, the committee, and I think probably this Court, what we filed this morning is basically unredacted.  There are no redactions any longer in the order or the term sheet, except for some schedules, which really go to the details of return conditions and engine swaps that really are as set forth in the Cromer declaration, the first one, paragraphs 27 to 32, proprietary and sensitive information, especially as we're having similar negotiations in real time with other lessors.

Your Honor, I'm happy to walk through changes to the order, but what I highlighted really are the material terms.  So I'm also happy to pause and take questions and see if anybody else would like to speak.

THE COURT:  All right.  Well, let's hear perhaps from Aercap.  Mr. Burke, anything you wanted to add?


www.escribers.net | 800-257-0885

SPIRIT AVIATION HOLDINGS, INC., ET AL.

MR. BURKE:  Thank you, Your Honor.  Again, Michael Burke, Pillsbury, for Aercap Ireland Limited.

Your Honor observed very astutely at the first day hearing that Aercap and Spirit are engaged in important and significant -- do significant and important business together. And they were having continuing discussions.  After months of those discussions, which I think the last one was probably about 6:15 this morning with Mr. Klein and also Ms. Ball, it has resulted in the culmination of the global restructuring term sheet, which is in front of Your Honor right now for approval.

Mr. Klein gave a very good synopsis or a brief synopsis, but all of the transactions, aircraft and nonaircraft, if you will, are all listed in unredacted form.  I think probably the most important comment said is probably in the Cromer declaration, the supplemental declaration, that the global restructuring term sheet is critical to Spirit's reorganization and is a cornerstone transaction as it relates to the fleet.

So no need to go through in specific detail the terms of the term sheet.  However, I know Aercap and I would like to thank Mr. Klein, Ms. Ball, and Mr. Goren, whom you'll hear from momentarily, and Ms. Cornell for their assistance in getting this transaction or these transactions, which are in the term sheet, approved.



www.escribers.net | 800-257-0885

SPIRIT AVIATION HOLDINGS, INC., ET AL.

THE COURT:  All right.  Thank you very much.

MR. BURKE:  And I think that's it, Your Honor.

THE COURT:  Appreciate your comments.

And the official committee.

MR. MILLER:  I hope you're not disappointed, Mr. Burke, but it's Mr. Miller of Willkie Farr & Gallagher for the official committee of unsecured creditors who will be making some comments, as Mr. Goren unfortunately had to run to another hearing.

We have spent a lot of time with the debtors, as well as Aercap, working through a number of issues.  We do fully understand, the committee understands, that this is the basis for the revamp of the fleet.  And the liquidity issue is covered by the 150-million-dollar payment to the estate, as Mr. Klein outlined.

With the reduction of the claim and the other tweaks to the proposed settlement, the committee is on board and supports this deal.

THE COURT:  All right.  Thank you very much.

And I know the U.S. Trustee's office was mentioned in a few places.  Anything from that office?

MS. CORNELL:  Thank you, Your Honor.  Again, Shara Cornell on behalf of the United States Trustee.  I have nothing to add at this time, unless Your Honor has questions for me.

THE COURT:  All right.  Thank you very much.



SPIRIT AVIATION HOLDINGS, INC., ET AL.

And I'll throw it open for any other comments by any other party.

All right.  Hearing none, so before the Court is not only the -- are two things.  Is the Aercap motion at number 3 on the agenda, which is the motion for an order approving the global restructuring term sheet with Aercap Ireland Limited and related relief, as well as the sealing motion, although the sealing motion is much more limited in light of how events have progressed.

And I appreciate parties working through the sealing issues.  I understand there are times when you've got to get something on file immediately, and people haven't gotten a chance to work through what should be public and what shouldn't.  And airlines, as we all know and certainly have seen through a number of other airline cases, there are lots of negotiations going on with lots of parties to leases.  And there is a lot of sensitive commercial information in those.  At the same time, you have to walk the line of being able to present enough information to have a appropriate motion teed up that's transparent for the world.

So I am happy to approve both motions.

The sealing motion, as has been modified over time, again, recognizing the need for certain information to be redacted as clearly sensitive commercial information that satisfies the requirements of the Code for redaction.  But



www.escribers.net | 800-257-0885

SPIRIT AVIATION HOLDINGS, INC., ET AL.

certainly appreciate parties working on making available on an unredacted basis the information that can be made available and so stakeholders know what's going on.  And so that motion, the request for relief as to the remaining information that's under seal, I find to be entirely appropriate under the facts and circumstances here and consistent with the standard.

So as to the Aercap motion itself, this, I think, has been said several times, and I'll add my statement to the mix.  It's clearly a central and important part of the case and moving the case forward in terms of right sizing the fleet.  It contains a lot of important provisions important to the debtors, to the stakeholders that the committee represents, and to Aercap and is central to moving the case forward.

So I'm happy to approve that as appropriate, also, under the facts and circumstances and consistent with applicable law, to the extent one's talking about the standard for settlement, it easily satisfies the somewhat vaguely pejorative sounding lowest point in the range of reasonableness standard.  But because it is, in fact, quite reasonable and is appropriate under the debtors' exercise of business judgment.

So I understand that there were objections filed to both these motions that have been resolved.  There was a notice of settlement of objection at docket 229.  I appreciate that being filed to give me an idea of where things stand.  That's enormously, enormously helpful, especially given that the U.S.

escribers
www.escribers.net | 800-257-0885

SPIRIT AVIATION HOLDINGS, INC., ET AL.

Trustee's office is terribly understaffed, more so than usual, under the circumstances.  So thank you for that courtesy of filing that settlement of objection.

And I'll end by thanking all the parties for all the hard work.  Obvious level of collaboration and communication on complex issues that are important to be able to move forward within the case.  And so the Aercap motion is granted.

So I will wait for that order to -- although I may already have it.  I didn't have any particular changes to that order, so I think that one can be teed up right away, as soon as I get off the bench.

And so with that, the question, Mr. Klein, is there anything else we need to chat about here today?  I think our next hearing is on the 16th, and I think we have one on the 16th and the 29th, with different things going on on each hearing.  But I wanted to make sure there's nothing else on your mind to address.

MR. KLEIN:  No, Your Honor.  We can't quite still say good morning, but it was pretty close.  So appreciate getting through it.  We do have a hearing on the 16th teed up with the rejection motion for a bunch of our leases and a few other things.  And October 29th will be the final DIP hearing and maybe some other stuff.

THE COURT:  All right.  And any other party have anything else that they believe needs to be addressed here



SPIRIT AVIATION HOLDINGS, INC., ET AL.

today?

All right.  Hearing nothing, I'll just leave you with the thought that to the extent that you all need any other time, you'll reach out to chambers.  I appreciate the amount of information that we get on the status of things and things moving around in terms of dates and objection deadlines.  I appreciate you keeping us all in the loop on that so I know when I have a need to get prepared for things in this case.  So I appreciate that it takes a little work to keep us in the loop here and chambers in all the extension requests, but it's much appreciated.

And to the extent that there's a need for other court time, whether you'll let me know.  To the extent whether it's here public hearings or chambers conferences after consultation with the relevant parties, who would be involved, happy to do whatever serves the needs of the case.

And with that, I wish you all a very good afternoon and a happy rest of the Friday.  I will wait for electronic versions of the proposed orders and should be able to Aercap done in the next hour or two.  And then the financing order before the day is done.

But I will also so order the record, to the extent that that is helpful, allowing people to move forward with what they need to do as of 12:05 p.m.

(Whereupon these proceedings were concluded at 12:03 PM)



I N D E X

E X H I B I T S

| DEBTORS' | DESCRIPTION | MARKED | ADMITTED |
|---|---|---|---|
| -- | Declaration of Mr. Herlihy | | 36 |
| -- | Declaration of Mr. Cromer | | 92 |
| -- | Supplemental declaration of Mr. Cromer | | 92 |

| RULINGS: | PAGE | LINE |
|---|---|---|
| Debtors' interim motion for post-petition DIP financing and related relief is granted, as amended and supplemented | 88 | 19 |
| Debtors' Aercap motion and sealing motion related thereto are granted | 96 | 21 |



www.escribers.net | 800-257-0885

C E R T I F I C A T I O N

I, River Wolfe, certify that the foregoing transcript is a true and accurate record of the proceedings.



_____

River Wolfe (CDLT-265)

TTA-Certified Digital Legal Transcriber


eScribers

7227 North 16th Street, Suite #207

Phoenix, AZ 85020


Date:  October 13, 2025

**[**

**[blah (1)**
78:21

**A**

**a3 (1)**
61:23
**ABID (1)**
7:23
**ability (1)**
85:6
**able (7)**
40:19;47:22;56:23;
89:24;96:18;98:6;
99:19
**ably (1)**
45:9
**above (3)**
43:14;56:13,15
**absent (1)**
43:25
**Absolutely (1)**
62:9
**ABUJUMAIZA (1)**
23:10
**accept (2)**
92:3,6
**acceptable (1)**
59:6
**accomplish (1)**
49:22
**accomplished (1)**
61:13
**account (5)**
59:15,15;60:2;68:5;
69:11
**accounts (3)**
56:10;58:18;69:9
**accurate (1)**
47:7
**accurately (1)**
39:14
**acting (1)**
82:10
**action (1)**
81:12
**actions (6)**
48:23;71:19;72:15;
79:1,5,12
**actively (2)**
48:5,7
**actual (1)**
76:16
**actually (17)**
28:8;32:11;46:3,9;
48:19;51:22,25;
52:12;53:7,8;61:3;
65:23;75:16;78:11,
15,17;87:4
**Ad (10)**

7:16;8:3,12;27:10;
31:18,21;33:8;44:23;
87:2;89:17
**add (7)**
42:17;48:4;68:13;
70:4;93:25;95:24;
97:8
**added (1)**
83:13
**addition (3)**
30:17;59:2,22
**additional (9)**
30:16;37:14;38:9;
43:20,21;44:13;
58:11;65:12,21
**address (10)**
57:18;58:3;61:20;
66:16;80:9;81:6;
87:24;88:9;90:2;
98:17
**addressed (5)**
70:23;77:6;88:3,10;
98:25
**adequate (6)**
33:5;58:24;59:1;
80:10,16;82:2
**adjourn (1)**
91:4
**administrative (1)**
59:14
**advantage (1)**
57:24
**advisors (1)**
34:5
**AerCap (30)**
6:3;26:24;27:1;
29:22;31:13,22;32:6,
16;37:8,10;58:22,22;
90:18;91:5,14,16;
92:20,25;93:9,25;
94:2,4,21;95:11;96:4,
6;97:7,13;98:7;99:19
**AerSale (1)**
16:14
**affirmative (1)**
85:7
**AFL- (2)**
12:13;13:3
**afternoon (3)**
88:16;90:13;99:17
**again (53)**
29:3;37:16;38:7;
40:13;41:3,6;42:22;
44:22;45:8;46:10,25;
47:3,17,21;48:24;
49:3,12,20,21;50:4,
23,25;52:19;54:18,
21;58:9;60:20;61:15;
63:3;65:2;66:17;
68:19;70:14;72:7,8;
73:10,16,18;74:3;
77:11,17;78:18;
79:15;81:5,11,13;

86:22;87:17;88:7;
89:23;94:1;95:22;
96:23
**against (1)**
35:1
**agenda (5)**
28:9,12,17;90:18;
96:5
**agent (2)**
67:15;79:18
**aggregate (1)**
36:6
**AGI (1)**
18:13
**ago (2)**
43:10;56:7
**agree (2)**
68:16;82:1
**agreed (8)**
33:9;38:14;61:24;
63:8;64:7;82:3;92:20,
20
**agreeing (1)**
56:18
**agreement (11)**
33:7;34:9,24;36:20;
37:11,18;43:25;
64:25;71:8,11;91:9
**agreements (2)**
35:8;53:10
**agreement's (1)**
36:21
**AHC (2)**
27:8;67:5
**ahead (3)**
38:16;62:2;88:17
**Air (1)**
12:3
**Airbus (1)**
6:11
**Aircraft (12)**
18:3;30:9,10,14,23,
25;36:14;38:8;81:2;
91:11,11;94:13
**airline (2)**
59:24;96:15
**Airlines (3)**
14:3,12;96:14
**Airport (1)**
17:11
**AKIN (7)**
7:15;8:2,11;27:10;
44:22;76:5;87:1
**ALEX (1)**
25:24
**Alhambra (1)**
21:4
**alike (1)**
70:13
**ALLEN (1)**
9:11
**allow (2)**
31:25;39:11

**allowed (1)**
64:22
**allowing (1)**
99:23
**allows (2)**
54:2;91:10
**alluded (1)**
67:16
**almost (1)**
70:7
**along (9)**
26:13;47:12;58:15;
63:23;70:24;71:3;
75:9;77:5,23
**ALPA (1)**
12:2
**ALSTON (1)**
10:2
**alternative (7)**
46:18;86:10,12,20,
20;87:5,11
**although (6)**
26:10;48:1;55:12;
88:25;96:7;98:8
**always (12)**
27:3;42:19;46:22,
23;47:5,23;50:5,9;
51:24;70:12;72:9;
74:1
**amended (4)**
28:9,12,16;88:20
**America (1)**
50:2
**American (2)**
14:3,12
**Americas (3)**
14:4;15:4;21:12
**amongst (3)**
37:7;61:24;64:8
**amount (8)**
36:6;38:10;41:8;
46:1;49:17;91:16;
93:10;99:4
**amounts (2)**
38:9;59:18
**analysis (1)**
53:20
**analytically (1)**
52:5
**analyze (1)**
43:2
**analyzing (1)**
43:15
**ANDREA (1)**
15:17
**ANDREW (9)**
9:8;11:9;14:17;
15:8;19:7;24:24;
25:15,20;67:14
**annex (1)**
64:19
**anticipate (2)**
28:4,6

**apologies (4)**
43:5;48:1;51:18;
63:2
**apologize (5)**
47:18;49:21;50:24;
51:19;69:19
**appearance (3)**
27:13;28:5,6
**appearances (2)**
26:7;28:7
**Apple (1)**
15:3
**applicable (3)**
54:16;89:7;97:16
**application (2)**
44:12;56:15
**apply (1)**
43:21
**appointment (1)**
53:1
**apportionment (1)**
76:22
**appreciate (16)**
48:12;56:22;57:21;
62:14;70:14;77:20;
89:13;92:7;95:3;
96:10;97:1,23;98:19;
99:4,7,9
**appreciated (1)**
99:11
**appropriate (14)**
31:23;40:10;52:7;
54:19;76:6,24;84:6;
89:5,6;90:3;96:19;
97:5,14,20
**appropriately (2)**
46:6;90:1
**appropriateness (1)**
74:3
**approval (4)**
41:19;74:20;91:1;
94:11
**approve (6)**
30:11;58:12;75:3;
89:12;96:21;97:14
**approved (8)**
33:3;37:9;38:3,20;
39:23;46:13;58:19;
94:25
**approves (2)**
58:15,17
**approving (4)**
38:25;39:15;40:9;
96:5
**Approximately (1)**
67:25
**APs (1)**
80:20
**ARCHER (1)**
23:11
**ARENDSEN (1)**
22:23
**argue (1)**

44:12
**argued (1)**
43:4
**argument (8)**
45:23;46:23;50:5;
51:4;52:18;72:1;
76:21;77:3
**arguments (1)**
72:10
**ARMANDO (1)**
24:20
**around (9)**
36:12;37:11,14;
42:18;65:4;84:3;
88:14;92:23;99:6
**ARSHT (1)**
16:2
**articulated (1)**
45:9
**as-filed (1)**
62:24
**ASHMEAD (1)**
9:7
**assessed (1)**
49:15
**assessment (2)**
45:11,13
**assistance (1)**
94:23
**Association (5)**
9:3;12:3,13;13:3;
27:20
**assume (5)**
48:11;55:8;77:21;
82:12;91:11
**assuming (4)**
32:3;60:8;65:19;
78:2
**astutely (1)**
94:3
**attached (1)**
34:8
**Attendants (1)**
27:20
**Attendants-CWA (2)**
12:13;13:3
**Attorneys (34)**
5:3,17;6:3,11;7:3,
16;8:3,12;9:3,12;
10:3,14;11:3,15;12:3,
13;13:3,15;14:3,12;
15:3,12;16:3,14;17:3,
11;18:3,13;19:3,11,
20;20:3,13;21:3
**authority (1)**
41:2
**authorization (2)**
33:22;36:4
**authorized (2)**
63:5;67:17
**availability (1)**
82:9
**available (10)**

33:14;35:17;36:9,
10,15,16;91:25;92:8;
97:1,2
**availing (1)**
29:14
**Avenue (10)**
7:4;10:4,15;12:15;
13:16;14:4;15:4;
19:12;20:5;21:12
**AVI (1)**
7:22
**Aviation (2)**
5:3;26:5
**avoidance (10)**
71:17,19,24;72:4,
15;79:1,4,5,12;81:12
**avoided (3)**
78:23;79:3;81:9
**away (2)**
58:7;98:10

## B

**back (10)**
28:15;33:20;42:20;
48:21;52:24;55:8;
58:2;71:21;79:12;
84:18
**background (1)**
31:8
**backstop (2)**
27:11;44:24
**backstopped (1)**
48:9
**backwards (1)**
63:11
**bad (1)**
76:16
**BALL (6)**
5:7;27:13,14,14;
94:8,22
**BALLUKU (1)**
23:12
**Bank (3)**
11:15;69:2,10
**Bank/Banco (1)**
15:3
**banker (1)**
35:15
**Bankruptcy (6)**
26:3;29:9;37:9;
48:12;51:2;70:17
**bar (1)**
51:2
**BARBARA (1)**
18:8
**bargain (1)**
52:8
**based (14)**
33:17;37:20;38:7;
45:10;49:14,19,23;
57:4;63:18;68:2,9;
70:4;74:2;91:18

**basically (9)**
46:3;47:11;49:5;
55:22;57:4;64:2;65:6;
73:14;93:13
**basis (7)**
43:18;46:13;49:18;
54:2;57:10;95:12;
97:2
**Battery (1)**
9:4
**BAYNE (2)**
19:2,7
**Beach (1)**
6:14
**bear (2)**
61:25;65:15
**bears (1)**
45:18
**become (1)**
65:4
**becoming (1)**
54:17
**begin (1)**
32:14
**beginning (1)**
74:16
**behalf (15)**
26:17,24;27:1,10,
19,23;28:1;32:23;
44:22;56:9;58:10;
67:15;73:9;87:2;
95:23
**behind (3)**
30:23;40:8;89:14
**bell (1)**
32:25
**belongs (1)**
77:12
**below (2)**
71:17;72:4
**bench (1)**
98:11
**benefit (8)**
34:1;52:7;70:16;
78:23;79:18;80:13;
81:10;89:24
**benefits (2)**
57:24;92:16
**BENJAMIN (2)**
5:12;23:14
**best (5)**
30:2;46:23;47:6;
52:18;66:24
**better (2)**
41:21;63:20
**beyond (6)**
43:14,16,20;54:3;
56:13,15
**BIBLO (1)**
8:17
**BIELLI (2)**
22:11,15
**bifurcation (1)**

60:12
**big (1)**
62:3
**BILL (1)**
24:6
**billion (1)**
36:7
**binder (1)**
62:24
**binds (1)**
86:4
**BIRD (1)**
10:2
**Biscayne (1)**
15:13
**bit (14)**
34:13,19;43:3;45:1,
1,12;58:12;62:4;67:2;
68:18;73:22;78:7,9;
79:22
**blackline (8)**
58:13;62:23,25;
63:3;64:12;65:18;
69:22;73:24
**blacklines (1)**
35:1
**blacklining (2)**
61:10,16
**blah (1)**
78:21
**blah] (1)**
78:22
**bless (1)**
63:14
**BLOCK (1)**
8:17
**Blvd (2)**
15:13;18:14
**board (1)**
95:17
**BOGGS (1)**
22:18
**bondholders (2)**
29:12;58:25
**bonds (1)**
29:11
**BONTEQUE (1)**
13:19
**BOONE (1)**
16:13
**both (19)**
29:22;30:15,22;
31:2,16,19,22;32:7,8,
11,13;46:18;74:21;
86:12;91:2;92:18;
93:11;96:21;97:22
**bottom (12)**
62:16;75:14;76:14;
77:9,24;78:20;79:16;
81:14;82:15;83:24;
84:22;86:7
**Boulevard (2)**
5:4;10:15

**Bowling (1)**
5:18
**Box (2)**
19:4;54:7
**bracket (1)**
84:3
**brackets (1)**
84:4
**Branch (1)**
12:4
**BRASWELL (2)**
21:2,8
**breach (3)**
83:8,17,17
**BRENDEL (1)**
23:13
**BRENT (2)**
24:7;35:14
**BRETT (3)**
7:12;20:9;26:19
**BRIAN (4)**
5:10;10:10;18:9;
25:7
**brief (3)**
29:5;92:15;94:12
**briefly (7)**
30:4;36:24;41:14;
44:22;58:16;60:5;
69:1
**BRIGGS (1)**
23:14
**brings (2)**
65:11;91:14
**broad (5)**
75:22;84:24,25;
85:8,11
**BROWN (3)**
17:2;21:11;23:15
**Bryant (1)**
7:18
**built (1)**
40:7
**bunch (5)**
61:19;62:13;70:22;
71:3;98:21
**bundle (1)**
72:23
**BURBAGE (2)**
7:7;26:20
**BURKE (8)**
6:7;26:25,25;93:25;
94:1,2;95:2,6
**business (8)**
67:23;74:8,12,23;
82:16;89:12;94:5;
97:20

## C

**CACANANDO (1)**
23:16
**call (1)**
27:5

**calls (1)**
31:17
**came (3)**
47:3;61:8;82:24
**camera (1)**
39:11
**Can (47)**
28:25;29:1;30:5;
32:14,24;42:19;
44:16;45:5,21;46:9,
11,23;47:6,12;49:4,
18;50:10;52:19;
54:12,17,23;57:3;
58:2;60:9,16;61:17,
19;62:1,14,17,22;
63:1;66:14;70:12;
73:8,9;76:21;83:18;
84:15;86:22;87:7;
89:2;90:2,5,9;97:2;
98:10
**candid (2)**
50:24;89:25
**capacity (1)**
9:13
**card (1)**
69:3
**care (1)**
31:16
**career (1)**
53:13
**careful (1)**
85:5
**carefully (1)**
56:24
**CARLOS (1)**
24:17
**carried (1)**
78:11
**carry (3)**
73:11;87:6,8
**carve-out (8)**
59:13,14,14;63:23;
64:3,9;66:1;84:23
**carve-outs (1)**
59:12
**CASE (55)**
15:2,11;26:5;27:3;
29:5,12;39:23,24,25;
41:5,7;42:4;43:8;
45:1;47:1;48:24,24;
49:13,18;50:1,3,7,20;
51:4,5,24,25;52:15;
53:9,13;56:2;72:24;
73:7,8,16;75:7,22;
76:5;80:3;81:22;82:3;
85:24;86:2,3,25;87:7;
88:21;89:8,10;97:9,
10,13;98:7;99:8,16
**cases (20)**
29:5;33:13,24;40:7;
41:16;50:11;51:3;
54:14;55:25;56:20;
73:6;75:17;76:3;

81:16,19;86:16;87:8,
17;91:21;96:15
**cash (13)**
33:4;43:11;52:4;
64:19,20;69:21;
79:20,21,24,25;82:17;
84:23;91:15
**CASSIDY (1)**
10:7
**CATALANELLO (1)**
10:8
**catch (1)**
87:25
**category (1)**
83:12
**CATHERINE (1)**
23:18
**cause (1)**
40:6
**caveat (2)**
45:22;55:15
**ceiling (1)**
44:7
**central (2)**
97:9,13
**certain (10)**
36:11,14,25;38:6,8;
40:4;45:22;58:15;
79:21;96:23
**certainly (16)**
31:24;38:21;39:8;
43:7;48:22;54:14;
63:15;73:8,9;74:5;
76:19;82:13;85:4,15;
96:14;97:1
**certificate (1)**
90:24
**certificates (1)**
28:20
**cetera (8)**
76:10,10,10,11,12,
12;85:24,24
**CHAD (1)**
23:23
**chair (1)**
47:4
**challenge (26)**
38:3,21;39:4,17;
43:18;45:11;46:1;
49:11;53:10,15,22;
54:5,6,18,21,22,23;
55:10;56:11,19;57:8,
8;64:15;84:8,9;88:13
**challenges (5)**
41:7;50:6,25;56:13,
17
**challenging (3)**
47:1;48:22,22
**chambers (4)**
28:16;99:4,10,14
**CHANCE (5)**
23:2;41:23;42:3;
60:18;96:13

**change (4)**
61:17;65:1;66:9;
79:7
**changed (1)**
77:17
**changes (17)**
58:13;61:23;63:17;
64:1;65:13,21,23;
66:3,4,9;69:9;77:18;
82:8;91:6;92:20;
93:20;98:9
**Chapter (11)**
26:5;29:14;41:20;
48:7;59:25;75:17,22;
76:3;81:16,18;91:21
**characterize (1)**
68:20
**CHARLES (2)**
12:19;27:18
**Charlotte (2)**
9:15;25:5
**chat (1)**
98:13
**chatting (1)**
44:20
**check (1)**
28:25
**checks (1)**
54:6
**chime (2)**
27:7;51:16
**chop (1)**
67:2
**Chris (1)**
32:22
**CHRISTOPHER (3)**
21:22;24:19;58:9
**Chubb (1)**
13:15
**chuck (2)**
49:10;50:17
**Church (1)**
20:14
**CHURCHILL (1)**
16:8
**CHUTCHIAN (1)**
23:17
**Cincinnati (2)**
17:5;22:21
**CIO (2)**
12:14;13:4
**Circle (3)**
21:4;42:19;66:13
**Circuit (1)**
39:18
**circumstance (2)**
41:12;76:22
**circumstances (12)**
43:9;49:12,24;50:3,
4,10,19,19;89:5;97:6,
15;98:2
**cite (1)**
62:23

**cited (1)**
45:8
**Citi (1)**
67:15
**Citibank (1)**
11:3
**claim (3)**
91:16;93:9;95:16
**CLARA (1)**
23:24
**clarification (2)**
79:14;80:19
**clarifies (1)**
65:6
**clarify (3)**
68:15;69:16;81:18
**clarifying (2)**
69:9,10
**clause (2)**
74:15;79:7
**clean (1)**
83:18
**cleanup (2)**
65:1,21
**clear (15)**
28:16;29:8;32:25;
38:1,1,4;44:8;55:6;
56:2;73:2;75:11;80:7;
81:20;82:9;93:3
**clearly (5)**
28:25;32:24;90:10;
96:24;97:9
**clients (1)**
48:4
**CLIFFORD (1)**
23:2
**clock (1)**
32:14
**close (5)**
32:14;43:11;51:17;
65:11;98:19
**closely (1)**
43:2
**closing (1)**
58:21
**Code (2)**
59:7;96:25
**COHEN (1)**
20:18
**collaboration (1)**
98:5
**collateral (23)**
33:4;43:11;52:9;
63:6;64:5,6;67:18,19;
69:11,21;71:23;74:1;
78:8;79:18,20,22,25,
25;82:17;84:23,23;
85:7,9
**collateral/DIP (1)**
52:4
**colleague (3)**
32:18;37:10;90:8
**collective (1)**

40:23
**comfort (4)**
40:9;47:20;49:6;
59:21
**comfortable (4)**
43:17;53:20;54:1;
57:6
**coming (8)**
29:20;30:7,12;53:4;
70:9;88:5,6;89:20
**comma (1)**
84:1
**commencing (1)**
37:12
**comment (8)**
38:18;73:5,6;84:21;
85:20;86:1;88:11;
94:15
**comments (11)**
41:9;48:13;70:21,
25;73:10;77:6;78:19;
88:23;95:3,8;96:1
**commercial (2)**
96:17,24
**commitment (2)**
34:9,24
**committed (1)**
33:18
**Committee (78)**
7:3,16;8:3,12;
26:18,21;28:17;
31:18,19,20,21;33:8;
38:13;39:5;40:14;
41:17,21;42:10,15,22;
43:1,15,17,22;44:3,
23,25;46:2,9;47:10,
20;48:14;49:15,19;
51:25;52:1;53:1,11,
13,19;54:5,10,20,23;
55:4,9,23,23,25;56:6,
11,18;59:4;61:24;
64:15;66:15,16,20,22;
70:5;82:23;84:9;87:3;
89:16,17;91:6,18;
92:19,21,23;93:5,8,
12;95:4,7,12,17;97:12
**committees (1)**
57:20
**committee's (6)**
40:13;42:6;45:23;
53:1;64:16;93:3
**common (3)**
53:3;71:18;91:12
**communication (1)**
98:5
**community (1)**
31:2
**Companies (1)**
13:15
**Company (13)**
9:12;10:14;17:3;
29:15,20;33:10;
43:25;44:25;46:17;

48:16;49:1;60:8;
68:18
company's (1)
48:18
competent (1)
76:15
completely (1)
29:13
completion (1)
36:16
complex (1)
98:6
complicated (6)
34:19;51:9,12;
54:12;65:3;80:4
component (1)
37:21
comprehensive (1)
51:9
concept (5)
61:12;65:22,25;
71:25;86:23
conceptually (1)
52:13
concern (2)
40:15;79:11
concerned (2)
47:14;85:1
concerns (3)
42:18;55:1;89:25
concessions (4)
31:24;44:5;55:11;
56:20
conclude (1)
58:13
concluded (4)
44:4;56:11,18;
99:25
conclusion (1)
54:20
conclusions (1)
56:14
concrete (1)
89:21
condition (2)
37:11,13
conditions (9)
33:12;36:20;37:1,1,
5,7,14;92:23;93:16
conference (1)
35:16
conferences (1)
99:14
confess (1)
87:17
confirm (1)
72:7
confirmed (2)
43:10;56:8
confusion (1)
30:19
connection (4)
68:23;74:6;75:15;

76:2
CONNOLLY (1)
11:8
consensual (4)
29:11;50:21;67:1;
93:7
consensually (1)
31:25
consent (1)
53:2
consented (1)
66:22
consenting (1)
44:10
consider (3)
52:25;57:11;83:12
consideration (2)
74:18;77:22
Consistent (18)
26:6;28:9;39:7;
47:17;53:3;63:7;
64:23;67:23;72:16;
74:1,12;75:6;78:3;
80:23;82:7;84:13;
97:6,15
consists (1)
67:18
Consortium (1)
17:11
constituencies (1)
89:16
constituents (1)
31:11
constitute (1)
74:17
constraints (1)
26:10
constructively (1)
91:5
consultation (2)
92:22;99:14
contains (1)
97:11
Cont'd (2)
24:2;25:2
contemplates (1)
37:22
contents (1)
35:18
context (5)
46:16;48:4;57:18;
76:18;81:9
contexts (2)
72:9;75:8
contingent (3)
60:25;61:1;65:5
continue (3)
29:25;31:3;33:24
continued (1)
58:17
continuing (2)
42:11;94:6
conversations (1)

68:8
COOLEY (1)
19:19
copy (3)
28:12,12;62:24
Coral (1)
21:6
core (1)
52:7
COREY (1)
23:18
CORNELL (8)
5:21;27:25;28:1;
31:12;70:1;94:23;
95:22,23
cornerstone (2)
91:9;94:18
Corporation (1)
20:3
correctly (2)
52:17;75:23
costs (3)
76:1,10;81:15
counsel (14)
26:7,21;27:15;
28:14,23;29:4;43:1;
48:14;51:16;55:24;
58:7;66:20;67:24;
90:17
counterparties (1)
30:20
couple (4)
30:3;39:11;59:20;
66:3
course (8)
44:4;63:7;64:23;
66:25;67:23;68:10;
88:21,21
COURT (127)
26:2,3,10,15,22,24;
27:2,12,16,21,23;
28:2;29:1,6,10;32:2,
17,25;33:3;35:20;
37:9;38:15,17;39:1,
18,21,23;40:9,16,20,
23;41:18;42:7,9,21;
43:5,10;44:14;45:2,5,
20;46:3,20;47:3,10,
23;48:21;50:15,22;
51:11;52:16;53:18,
24;54:1;55:7,12,17;
56:8,21;60:1;61:4,11,
21;62:1,3,11,14,20;
63:1,9,14,15,18,25;
64:10,13,17;65:9;
66:11;67:3,7,13;
68:12,22;69:17,20,23;
70:2,11;71:14;72:14;
73:9,21;75:5;76:7,15;
77:2,21;78:13,15;
79:13;80:22;81:23;
82:4,9,14;83:1,5,20;
84:20;85:17;86:4;

87:10,13;90:11,15,22;
92:2;93:12,24;95:1,3,
19,25;96:3;98:24;
99:12
courtesy (1)
98:2
courtroom (1)
32:24
courts (1)
57:13
court's (2)
39:16;48:13
covenant (1)
37:17
covenants (1)
37:3
cover (1)
80:18
covered (3)
66:21;78:19;95:14
covers (1)
75:16
craft (1)
91:11
crazy (2)
46:14;57:14
create (1)
64:2
credit (10)
34:9,24;36:19,21;
37:18;69:3;70:8,8;
71:8,11
Creditors (12)
7:3;26:21;31:19,20;
52:1;53:11;55:24;
91:6;92:19,20;93:2;
95:7
creditors' (1)
28:17
critical (1)
94:17
CROMER (9)
23:19;91:23,24;
92:7,9,11,17;93:17;
94:16
cross (1)
51:14
cross-examination (1)
91:25
cross-examine (1)
35:17
crossing (1)
51:11
cross-references (1)
71:4
CT (1)
20:16
cue (2)
57:1,1
culmination (1)
94:9
customary (2)
58:24;59:8

cut (3)
47:25;48:3;53:4
cycle (1)
60:4

**D**

Dadeland (1)
18:14
DALGAMO (1)
7:8
Dallas (2)
8:15;18:6
DAN (1)
22:7
DANIA (2)
6:17;20:3
DANIEL (1)
19:24
DANIELLE (1)
21:15
Darren (2)
90:8,16
date (6)
36:2;79:20;81:18;
84:11;92:10,13
dated (2)
28:10,11
dates (3)
84:7,8;99:6
DAVID (3)
24:16;25:10,25
Davis (5)
26:9;29:3;32:23;
58:9;90:16
DAY (10)
20:12;29:8;31:9;
33:2,19;41:17;42:4;
54:16;94:3;99:21
days (12)
30:11;51:24;60:12;
82:6,8,17,18,21;
84:10,11,13,14
days' (1)
82:16
DC (3)
8:6;14:15;17:14
DE (7)
10:17;15:3;16:6;
67:25;68:11,17,20
deadlines (1)
99:6
deal (12)
29:22;30:9,13;43:7;
51:9;57:15;60:13;
66:6;72:25;92:16;
93:7;95:18
dealing (1)
85:9
deals (2)
30:21;31:4
dealt (1)
68:10

**DEBEVOISE (2)**
  5:2;27:15
**debt (9)**
  39:3;43:9,13;48:8,
  23;56:7,9,12;58:20
**debtor (5)**
  46:18;49:2;53:9;
  69:6,14
**debtor-in- (2)**
  86:20;87:14
**debtor-in-possession (2)**
  86:10;88:19
**debtors (36)**
  27:15;29:4;31:21;
  32:23;34:3,5;35:4,13;
  36:5;47:21;57:20;
  58:2,10;59:23;63:5;
  66:12;67:17,19;68:8;
  71:22;73:8;78:23;
  81:10;85:1,11;86:3,4;
  88:1;89:10,15,18;
  90:17;91:10,21;
  95:10;97:12
**debtors' (15)**
  28:14,18,23;33:3;
  34:1;36:2;44:17;
  51:16;53:21;69:4;
  74:11;82:6;92:10,12;
  97:20
**debtor's (2)**
  26:7;67:8
**December (1)**
  36:15
**decent (1)**
  27:4
**decide (1)**
  39:19
**declaration (14)**
  35:14,18,19,22,24;
  36:1;46:17;91:3;92:9,
  11,17;93:17;94:16,16
**declarations (3)**
  91:23;92:3,6
**dedication (1)**
  59:24
**default (1)**
  37:5
**defined (7)**
  64:18;71:8,17;72:4,
  5;83:7,11
**defines (1)**
  64:5
**definitely (2)**
  71:20;72:20
**definition (6)**
  48:25;64:19;65:1,
  10;71:21;72:16
**definitional (2)**
  78:11;79:7
**definitive (1)**
  30:8
**degree (1)**
  47:20

**DEHNEY (1)**
  16:9
**DELGADO (1)**
  15:16
**delineating (1)**
  65:25
**demonstrates (1)**
  59:23
**DEPARTMENT (2)**
  5:16;12:2
**departure (1)**
  39:19
**depending (1)**
  36:13
**DEREK (1)**
  24:14
**DERJANGOCYAN (1)**
  5:8
**described (3)**
  37:1;65:25;66:3
**despite (1)**
  32:10
**detail (3)**
  60:6;89:6;94:20
**details (2)**
  52:20;93:15
**determined (1)**
  83:6
**detrimental (1)**
  44:10
**differ (1)**
  70:13
**different (16)**
  29:13;33:17;42:4,5;
  46:7,11;50:10;52:25;
  54:7;72:2,9;74:19;
  77:15;85:17;86:11;
  98:15
**differentiation (1)**
  33:17
**difficult (1)**
  55:23
**dig (1)**
  83:22
**diligently (1)**
  82:10
**diminution (1)**
  80:18
**DIMITRI (1)**
  25:8
**DIP (90)**
  27:11;29:20;32:14;
  33:8,16,19,21,22;
  34:6,7,8,9,9,17,18,21,
  23;35:7,11,12,15;
  36:4,6,9,21,25;37:4,
  21,24;41:16,19;
  44:23;45:1,19;46:18,
  22;47:4,21;48:18;
  50:8,8;51:8;52:9;
  55:11;59:13;60:10,
  16;61:1,3;62:7;64:3;
  65:2,7,10;66:7,25;

69:12,21;71:7,8,11,
  23;73:25;74:11,16,17,
  21;75:3,10;78:8,21;
  82:8,18;83:6,7,9,18;
  84:3,22,23;85:2,4,6,
  12;86:9,14;87:5,6,8;
  98:22
**DIP's (2)**
  34:16,16
**direction (1)**
  30:1
**disappointed (1)**
  95:5
**discount (1)**
  48:11
**discounted (1)**
  91:17
**discuss (1)**
  43:23
**discussed (2)**
  66:10;85:21
**discussing (2)**
  78:5;79:23
**discussion (10)**
  42:15;51:17;58:1,5;
  66:15;67:10;75:6,10;
  77:7;79:7
**discussions (9)**
  38:13;39:8;47:24;
  69:5,13;70:23;89:15;
  94:6,7
**distinction (1)**
  83:16
**distinguishing (1)**
  41:15
**District (1)**
  26:3
**DMITRY (1)**
  5:9
**docket (16)**
  28:13,19;29:18;
  30:4;33:6;35:2,7,15,
  24;36:22;62:6;65:20;
  70:22;90:25;91:23;
  97:23
**dockets (1)**
  28:21
**document (1)**
  69:8
**documented (2)**
  76:1;81:15
**documents (4)**
  34:7,10;74:17;
  83:18
**DOJ (1)**
  70:10
**dollars (18)**
  29:19;30:16;33:4,
  10,14;36:7,8;48:8;
  49:7,16;54:6,24,24;
  57:9;58:18;67:25;
  91:15,17
**done (11)**

31:5;42:14;53:19;
  57:15,19;58:6;77:10;
  90:2,3;99:20,21
**door (4)**
  51:1,3;79:12;87:23
**DORSEY (2)**
  11:14;69:2
**double (1)**
  75:17
**doubt (2)**
  45:6;74:3
**doubting (1)**
  41:7
**dovetails (1)**
  49:14
**down (7)**
  45:8;75:24;76:9;
  83:5,25;86:18,19
**drafts (1)**
  34:12
**draw (12)**
  33:12;36:10,13,14;
  37:4,7,13,15;38:5,6,7;
  43:24
**drawn (1)**
  38:9
**draws (3)**
  37:2,18;38:11
**Drive (2)**
  12:4;57:14
**DTC (1)**
  60:24
**DUANE (1)**
  13:14
**due (4)**
  26:10;43:8;59:3;
  70:8
**dumped (1)**
  42:3
**DUNN (1)**
  23:20
**during (2)**
  33:24;91:21
**duties (1)**
  74:13
**DYLAN (1)**
  10:7

**E**

**earlier (2)**
  77:5;93:11
**early (2)**
  34:22;52:17
**easier (2)**
  62:15;73:22
**easily (1)**
  97:17
**East (2)**
  17:4;22:19
**ECF (2)**
  34:4,8
**ECKHARDT (1)**

23:21
**economic (5)**
  30:21;45:18;51:9;
  52:8;56:3
**ecosystem (1)**
  29:24
**effective (4)**
  71:23;72:22;73:2;
  79:19
**effectively (2)**
  60:9;64:21
**effectuate (3)**
  60:22;61:6;65:22
**effectuates (1)**
  65:7
**effectuating (1)**
  61:10
**efforts (1)**
  89:21
**either (5)**
  32:1;52:3;58:11;
  65:24;70:12
**Elavon (2)**
  11:15;69:2
**elect (1)**
  60:9
**electronic (2)**
  26:10;99:18
**elegant (1)**
  54:19
**elements (1)**
  38:6
**Eleventh (1)**
  14:13
**ELIZABETH (2)**
  12:9;25:14
**ELLISON (1)**
  12:8
**else (24)**
  27:7;40:25;42:13;
  44:16,18;45:16;48:1;
  51:15;53:12,25;58:2;
  66:12,14,16;68:23;
  69:24;70:20;73:14;
  75:15;88:1;93:23;
  98:13,16,25
**elsewhere (1)**
  85:10
**email (1)**
  70:3
**EMANOIL (1)**
  7:9
**EMILY (1)**
  5:11
**EMMA (1)**
  8:8
**employees (1)**
  89:11
**encourage (1)**
  31:3
**encouraging (1)**
  29:23
**encumbered (5)**

56:10;58:18;64:4;
78:1,11
**end (10)**
52:20;54:13;58:17;
65:12;76:23;84:1;
86:16;87:17;88:8;
98:4
**enforceability (1)**
57:9
**engaged (1)**
94:4
**engine (2)**
67:18;93:16
**enormously (2)**
97:25,25
**enough (6)**
47:12;67:3;80:25;
84:25;87:18;96:19
**enter (3)**
28:5;33:22;88:18
**entered (5)**
32:12;33:5;60:8;
66:23;88:16
**enterprise (1)**
89:10
**entire (1)**
74:2
**entirely (3)**
29:6;39:6;97:5
**entities (1)**
69:3
**entry (12)**
33:15;35:6,12;36:9;
37:23;71:17,24;
72:22;73:3;79:21;
82:7;84:10
**equally (1)**
29:22
**equities (7)**
72:24;73:7,8,16;
85:23;86:1,3
**equitize (1)**
48:8
**equitized (1)**
29:11
**equity (4)**
29:12;48:9,10,24
**equivalent (3)**
74:17;77:11,22
**ERIN (1)**
17:7
**especially (3)**
51:8;93:18;97:25
**ESQ (78)**
5:7,8,9,10,11,12,13,
21;6:7,16,17;7:7,8,9,
10,11,12,21,22,23,24,
25;8:8,17;9:7,8,17,18;
10:7,8,9,10,19;11:8,9,
10,11,20,21;12:8,9,
19;13:9,10,11,19;
14:7,8,17;15:8,16,17;
16:8,9,10,19;17:7,16;

18:8,9,18;19:7,16,24,
25;20:9,18;21:8,15,
22;22:6,7,8,15,23;
23:6;25:3,11
**essentially (9)**
49:6;52:4;53:11;
59:3;64:2;66:5;78:3;
79:3;88:1
**estate (2)**
59:18;95:14
**estates (4)**
34:1;44:11;78:24;
81:10
**estates' (1)**
31:24
**et (8)**
76:10,10,10,11,11,
12;85:24,24
**eternity (1)**
50:18
**even (4)**
28:22;52:2;53:12;
75:21
**event (4)**
39:4;54:21;83:6,10
**events (3)**
82:5;91:21;96:8
**everybody (3)**
70:15;82:10;89:17
**everybody's (2)**
46:6;57:21
**everyone (2)**
27:7;60:13
**everyone's (2)**
60:17;89:21
**evidence (10)**
35:19,22,25;36:2;
70:5;92:1,3,7,10,12
**Evolving (1)**
54:12
**exact (4)**
47:23;52:11;70:7,9
**exactly (4)**
48:10;49:17;51:21;
68:18
**example (1)**
40:17
**except (1)**
93:14
**exception (1)**
67:21
**exchange (5)**
34:18;44:5;60:22;
65:22;66:7
**exchanged (2)**
61:1;65:4
**excused (1)**
39:19
**exercise (4)**
74:12,23;82:15;
97:20
**exhibit (4)**
35:15;36:2;92:10,

12
**exist (1)**
57:17
**expand (1)**
51:23
**expect (4)**
30:10;33:13;67:19;
68:7
**expenses (4)**
75:11;76:1,1;81:15
**expertise (1)**
74:5
**explain (2)**
63:20;80:12
**explanation (2)**
39:6;78:16
**explicit (1)**
41:10
**expressed (1)**
43:23
**extend (1)**
53:14
**extension (1)**
99:10
**extensively (1)**
34:5
**extent (9)**
59:5;78:16;83:10;
86:13;97:16;99:3,12,
13,22
**extra (2)**
84:1;86:6
**extremely (2)**
29:18;33:7

**F**

**face (1)**
35:11
**facility (9)**
33:8,11,12,22;36:6;
37:6;73:25;74:16;
84:23
**fact (8)**
29:11;35:11;45:25;
53:7;56:7;58:14;
68:11;97:19
**factor (2)**
41:15;56:3
**facts (7)**
49:23;50:10,19,19;
89:5;97:5,15
**factual (1)**
49:12
**failure (2)**
37:4;82:6
**fair (11)**
31:13;42:7,9,9;
67:3;74:11,18,24;
77:10,22;80:25
**fairly (3)**
28:22;61:8;62:13
**faith (4)**

41:8,9;47:7;76:16
**fall (1)**
83:11
**familiar (1)**
51:12
**fan (2)**
71:20;76:17
**Fantastic (1)**
33:1
**far (3)**
47:12;49:15;60:7
**FARR (5)**
7:2;26:20;43:1;
66:20;95:6
**favor (2)**
62:3;93:1
**favorable (1)**
48:18
**fee (4)**
71:6,10,13;82:1
**feel (1)**
48:3
**fees (8)**
59:8,13;75:10,14;
76:4;81:15,22;82:2
**FELD (3)**
7:15;8:2,11
**fell (1)**
72:25
**FERAS (1)**
23:10
**few (11)**
29:21;30:11;31:3,
10,23;58:10;65:12;
67:12;92:21;95:21;
98:21
**fiduciary (3)**
74:13;85:10;88:8
**Field (1)**
8:14
**fifteen (1)**
45:6
**Fifty (1)**
36:9
**fight (1)**
54:13
**figure (5)**
57:6;62:17;67:20;
87:18;88:6
**figured (3)**
82:20;83:21;84:15
**file (4)**
41:18;65:20;91:3;
96:12
**filed (24)**
28:10,13,22;30:23;
31:14;34:3,7,12,23;
35:1,13;39:7;41:17,
23;56:8;61:18,18;
63:4;66:17;90:24;
91:23;93:13;97:21,24
**filing (5)**
30:10;33:19;34:4;

42:23;98:3
**filings (2)**
30:15;88:22
**filling (1)**
30:20
**final (23)**
30:13;34:23;42:12;
43:6;44:9,13;59:11;
66:23;67:2;69:15,15;
71:17,24;72:22;73:3,
4,17;74:21;76:14;
79:6,8;85:24;98:22
**finalization (1)**
30:13
**finally (4)**
33:18;59:12;64:18;
93:9
**Financial (1)**
11:15
**financing (14)**
28:19;34:6;47:4;
54:16;67:9;68:25;
74:21;86:11,21;
87:11,15;88:19;89:7;
99:20
**financings (1)**
37:2
**find (6)**
26:17;27:8;46:17;
62:5;89:4;97:5
**finding (3)**
61:22;63:12,16
**findings (4)**
63:18,21;73:25;
74:6
**fine (7)**
26:15;29:1;63:1;
82:23;83:1,1;90:22
**first (27)**
26:7;29:8;30:21;
37:13;41:1,16;42:4;
52:2;53:22;54:8;
56:12,18;60:12;
70:14;71:2,7;79:20,
21,24;80:17;86:5;
90:20;91:8,20,23;
93:17;94:3
**five (6)**
43:10;56:7;82:16,
17;83:25;84:10
**fixing (1)**
71:3
**FL (4)**
6:14;15:14;18:16;
21:6
**flag (8)**
36:18;40:18;63:11,
13;64:21;65:16;69:5;
84:12
**flagged (1)**
64:15
**FLAHERTY (1)**
23:22

**fleet (9)**
27:15;30:10,14,19;
31:5;91:10;94:19;
95:13;97:10
**flexibility (1)**
56:22
**FLICK (1)**
23:23
**Flight (3)**
12:13;13:3;27:20
**flip (1)**
65:24
**flipping (1)**
65:15
**Floor (4)**
11:5;13:6;20:6,15
**flow (2)**
64:9;68:5
**focused (4)**
39:24;48:17;55:6;
87:7
**folks (5)**
28:3;42:2;48:25;
61:19;89:11
**follow (1)**
80:23
**followed (2)**
40:11;73:7
**following (1)**
37:23
**fools (1)**
70:13
**footnote (1)**
73:13
**form (5)**
34:23,23;80:23;
91:15;94:14
**formed (2)**
41:17,22
**forms (3)**
34:9,13,14
**forth (4)**
33:4;36:21;59:9;
93:16
**forward (11)**
31:4,6;45:3;53:15;
56:20;57:20;73:11;
97:10,13;98:6;99:23
**found (1)**
76:14
**Four (6)**
37:13;54:11;76:13;
83:25;86:18,19
**Fourth (6)**
22:19;36:16;37:15;
38:11;52:3;84:2
**fraction (1)**
93:10
**FRANK (1)**
21:18
**frankly (9)**
47:23;51:21;53:17;
57:13;59:6,18,23;

61:7;71:15
**fraud (3)**
76:16,19;77:3
**freakish (1)**
70:7
**FRED (3)**
22:8;23:19;91:23
**free (2)**
48:3;88:1
**Friday (1)**
99:18
**FRIED (1)**
21:18
**front (5)**
32:1;40:3;62:12;
63:18;94:10
**fronting (3)**
71:6,10,13
**fronts (1)**
31:9
**FROST (1)**
17:2
**fully (6)**
29:11;41:22;50:20;
52:1;88:10;95:11
**functionally (3)**
53:12,17;55:4
**functioning (1)**
52:1
**fund (5)**
34:18;43:24;59:17;
60:3;66:1
**fundamental (2)**
45:18,21
**funded (2)**
32:14,15
**funding (5)**
33:23;58:20;61:2;
64:2;75:4
**funds (11)**
64:3,4,4;65:7;66:1;
78:1,7,8,10;87:5;
91:14
**funny (1)**
78:9
**further (7)**
34:10;38:21;39:6;
49:21;67:6;68:8;
70:10
**future (3)**
44:7;91:12;93:4

**G**

**g5 (1)**
38:24
**Gables (1)**
21:6
**GABRIEL (1)**
7:21
**GABRIELA (1)**
15:16
**GALEN (4)**

11:20;69:1,2,19
**GALLAGHER (3)**
7:2;26:20;95:6
**game (1)**
86:16
**GARY (1)**
24:13
**gave (1)**
94:12
**general (3)**
68:5;93:2,9
**generally (4)**
73:11;75:18;76:3,5
**GEOGHEGAN (1)**
23:24
**GERARD (1)**
10:8
**GERARDO (1)**
23:25
**gets (2)**
41:3;60:13
**given (6)**
45:12;46:8,8;49:13;
56:23;97:25
**gives (3)**
40:9;59:20;78:16
**giving (3)**
38:17;55:14;62:3
**glad (1)**
57:1
**Glenn's (1)**
73:7
**global (4)**
71:3;94:9,17;96:6
**goes (2)**
65:2;83:17
**go-forward (1)**
30:19
**Good (30)**
26:2,8,16,22,25;
27:2,9,12,16,18,21,22,
25;28:2,24;30:6,22;
32:22;41:8,9;46:6;
47:7;50:8;74:10;
89:18;90:9,11;94:12;
98:19;99:17
**GOODMAN (2)**
20:9;24:3
**Gordon (1)**
55:14
**GOREN (19)**
7:10;26:20;42:25,
25;43:6;45:9;47:18,
19;49:4;52:19;55:8,
17,21;56:22;66:19,
19;70:4;94:22;95:8
**Goren's (2)**
49:14,20
**GORREPATI (1)**
24:4
**government (1)**
32:10
**GRABER (1)**

7:11
**GRAHAM (1)**
15:7
**grandmother (1)**
70:12
**grant (6)**
59:10;65:19;79:21;
80:15,16;88:17
**granted (8)**
73:5;79:19;80:16,
17,20,20;86:8;98:7
**granting (1)**
88:19
**grants (1)**
91:16
**grateful (1)**
31:1
**great (5)**
31:8;33:21;57:24;
70:13;89:23
**Green (1)**
5:18
**greeting (1)**
90:13
**GRIFFIN (1)**
17:16
**gross (1)**
76:17
**Ground (1)**
18:13
**GROUP (5)**
19:2;27:11;31:21;
48:23;52:11
**guarantee (1)**
36:5
**guardrail (2)**
47:9;49:25
**guardrails (1)**
40:10
**guess (12)**
34:22;40:24;41:21;
42:23;66:2,14;71:2,8;
75:20;77:13;87:20,21
**GULATI (1)**
14:7
**GUMP (6)**
7:15;8:2,11;27:10;
44:22;87:1

**H**

**HALEE (1)**
9:17
**half (3)**
38:12,14;44:4
**halfway (3)**
75:24;76:2;83:4
**Hamilton (1)**
19:12
**hand (1)**
55:8
**handed (1)**
53:11

**handle (2)**
37:10;84:6
**handling (1)**
32:5
**HAO (1)**
10:9
**happen (2)**
41:12;57:16
**happened (2)**
52:8;53:16
**happening (1)**
31:7
**happens (5)**
29:17;53:8;54:10;
55:20;86:9
**happy (25)**
35:24;36:11;42:22;
44:20;52:24;55:17;
57:10;65:20;80:14;
89:12,19,21;90:12;
91:1,9,19,21;92:6;
93:8,20,22;96:21;
97:14;99:15,18
**hard (7)**
31:19;46:25;50:4;
62:5;89:13,22;98:5
**harm (1)**
47:17
**HARMEYER (8)**
11:9;67:11,14,14;
68:16,20;81:25;82:1
**HARRIS (1)**
21:18
**HARRISON (1)**
24:5
**HARTOG (1)**
18:12
**HAUER (3)**
7:15;8:2,11
**Haven (1)**
20:16
**HAYNES (1)**
16:13
**hear (17)**
28:25;29:1;31:23;
40:14,25;41:1;42:12,
13,14,22;43:7;44:20;
51:15;55:17;90:9;
93:24;94:22
**heard (11)**
32:24;35:21;44:21,
25;50:20;51:16;
67:11;68:23;69:24;
78:4;92:2
**hearing (33)**
26:4;29:9;30:18;
33:3;35:22,23,25;
44:13;45:1;51:23;
52:3,14;57:5,10;
58:19;65:19;66:14;
69:15;70:6,20;88:23;
89:2;91:4;92:4,5;
94:4;95:9;96:3;98:14,

16,20,22;99:2
**hearings (2)**
89:20;99:14
**heavily (1)**
36:25
**heels (1)**
30:12
**held (2)**
43:11;59:19
**helpful (13)**
31:24;43:6;46:16;
61:16;78:7,16;79:13;
80:2,8;82:11;89:25;
97:25;99:23
**helping (1)**
51:20
**HENRY (1)**
24:6
**herd (1)**
54:9
**hereby (4)**
36:1;79:19;92:9,11
**here's (1)**
39:21
**HERLIHY (5)**
24:7;35:14,16;36:1;
46:17
**Herlihy's (1)**
35:19
**HERRERA (1)**
21:2
**high (1)**
47:20
**highlight (1)**
92:19
**highlighted (1)**
93:21
**highlights (1)**
92:16
**highly (2)**
43:25;45:24
**Hiii (1)**
74:8
**HILLARY (1)**
23:16
**historical (1)**
83:22
**history (1)**
48:25
**hit (2)**
58:10;61:20
**hits (1)**
56:1
**Hoc (10)**
7:16;8:3,12;27:10;
31:18,21;33:8;44:23;
87:2;89:17
**holder (1)**
60:23
**Holders (1)**
60:9
**holding (1)**
54:18

**Holdings (2)**
5:3;26:5
**HOLLAND (1)**
18:2
**home (1)**
56:1
**Honor (101)**
26:8,19,25;27:9,14,
18,25;28:24;29:2,4;
30:3;31:8;32:7,22;
33:2,20;36:3,12,18;
38:4;39:10;41:13;
42:16,25;44:21;45:4,
17;46:15,22;47:5;
48:10,15,17;50:12,13;
51:8,18;52:2;53:5,8;
55:3,9;56:1;58:8;
61:14,17;62:2,9,18,
22;63:2,12,14,22;
64:21;65:12,17,19;
66:8,10,19;67:6,11,
17;68:2;69:1,25;
70:10;72:13;75:3,3,3;
76:4;77:20;78:6;
79:10;80:14;81:21;
82:13,22;83:15;
85:16;87:1,4;90:7,9,
17,20,23;91:8,24;
92:14,22;93:20;94:1,
3,10;95:2,22,24;98:18
**hope (2)**
91:20;95:5
**hoped (1)**
28:8
**hopefully (3)**
30:15;32:15;67:1
**hot (1)**
30:12
**HOULIHAN (1)**
22:2
**hour (1)**
99:20
**hours (1)**
34:22
**Houston (2)**
13:7;16:17
**Hudson (3)**
5:4;11:4;19:21
**HUEBNER (19)**
26:8,9;28:24;29:2,
3;32:19,21;50:12;
51:18;53:4,5,19,25;
55:3,13,16,19;69:25,
25
**huge (1)**
31:15
**hundred (1)**
36:15
**hundreds (2)**
29:19;48:8

**I**

**IAN (1)**
25:13
**idea (2)**
47:21;97:24
**identified (2)**
34:14;52:17
**II (3)**
20:4;75:17,24
**iii (3)**
73:15;74:8;76:8
**immediately (3)**
32:15;33:15;96:12
**impairing (1)**
85:6
**implicit (1)**
41:10
**importance (1)**
48:23
**important (21)**
26:13;29:18,23;
32:11;41:14;43:22,
25;57:17;59:20;89:7,
7,9;90:6;93:7;94:4,5,
15;97:9,11,11;98:6
**importantly (5)**
29:22;35:5;52:2;
60:2;93:11
**impossible (1)**
57:2
**inapplicable (2)**
53:17;55:2
**Inc (3)**
5:3;16:14;26:5
**inclination (1)**
74:22
**inclined (3)**
74:25;77:13;86:12
**include (5)**
38:25;39:16;71:23;
73:4;89:2
**included (1)**
83:8
**includes (2)**
36:7;87:14
**including (6)**
44:6;71:16;74:2;
78:22;88:22;89:16
**incredibly (1)**
48:16
**incremental (2)**
38:6;52:9
**incurred (1)**
81:17
**indemnification (1)**
76:8
**indemnified (3)**
76:10,11,16
**indenture (2)**
60:15,19
**indiscernible (6)**
42:8,19;46:19;
52:12;64:9;82:25
**individual (1)**

9:13
**inextricably (1)**
82:18
**information (9)**
68:17;93:18;96:17,
19,23,24;97:2,4;99:5
**infusions (1)**
32:9
**inherent (1)**
39:18
**initial (2)**
56:24;61:18
**instance (2)**
72:18;73:23
**instances (1)**
54:15
**integrity (2)**
57:12;70:15
**intend (2)**
43:23;58:10
**intended (1)**
41:10
**intent (2)**
72:6;85:3
**interest (9)**
30:2;34:2;41:4;
59:3,3;75:10;78:22;
81:9;84:3
**Interested (2)**
15:12;19:20
**interim (36)**
33:5,15;34:14,25;
35:7,12;36:9;37:23;
38:2,3,21;41:16,19;
42:11;43:19,24;
46:13;49:18;51:23;
52:14;54:25;57:10;
62:7;68:24;69:14;
70:19;74:21;80:10,
17;82:7,8;83:7,16;
84:10;86:8;88:18
**International (1)**
12:3
**intertwined (1)**
82:19
**into (31)**
29:20;33:22;34:16,
21;35:19,22;36:1,12;
40:7;48:23;49:20;
51:24,25;52:15;60:6,
13,20,24,24;61:1;
64:3;65:7;66:7;68:5;
69:8;83:11;84:8;85:2;
92:1,9,12
**invariably (1)**
53:11
**investigation (4)**
40:4;44:9;54:11;
56:6
**investment (1)**
35:15
**invoke (1)**
86:3

**involved (4)**
48:6,7;89:18;99:15
**involving (1)**
36:14
**Ireland (3)**
27:1;94:2;96:6
**issue (22)**
43:2,22;44:16,19;
46:4,12;47:12;49:8,
16;55:1;56:23;57:11;
69:18;71:18;78:11;
79:2,11;81:11,12;
82:24;85:2;95:13
**issued (2)**
43:9;56:7
**issues (9)**
32:13;66:6,24;
82:12;89:24;90:2;
95:11;96:11;98:6
**items (1)**
90:18

**J**

**JACOB (1)**
13:11
**JACOBSON (1)**
21:18
**JAMES (4)**
7:7;10:13;25:3;
26:20
**JASMINE (2)**
5:7;27:14
**JASON (6)**
7:24;10:19;11:10;
24:18;27:10;87:1
**JASSER (1)**
24:9
**JEFF (1)**
24:10
**JEREMIAH (1)**
19:25
**JERRY (1)**
18:18
**JESSICA (2)**
7:11;13:19
**jest (1)**
76:18
**job (1)**
57:24
**JOHN (1)**
9:7
**jointly (1)**
75:25
**JONATHAN (2)**
14:8;25:9
**Jones (1)**
12:4
**JOSEPH (1)**
25:19
**JOSEPHS (1)**
24:8
**JOSHUA (2)**

12:8;20:18
**Judge (3)**
26:2;50:2;73:7
**judges (2)**
52:24;75:6
**judging (1)**
56:7
**judgment (5)**
74:9,12,24;76:15;
97:20
**jump (1)**
36:19
**jumping (1)**
31:20
**JUNHO (1)**
5:13
**jurisdiction (1)**
76:15
**JUSTICE (1)**
5:16
**justified (1)**
51:6

**K**

**KAMERON (1)**
25:23
**KAPLAN (2)**
17:10;24:10
**KARAMYSLOV (1)**
5:9
**KASSAI (1)**
24:12
**keep (4)**
30:9;57:17;70:15;
99:9
**keeping (1)**
99:7
**keeps (2)**
57:12,19
**KELLI (1)**
25:22
**KELLY (1)**
25:18
**KENNEY (1)**
13:19
**KERELSKA (1)**
24:11
**KESTECHER (1)**
11:10
**KEVIN (1)**
23:21
**key (1)**
56:3
**Kimco (1)**
20:3
**kind (14)**
29:6;39:7;46:9;
52:4,13;60:12,13;
64:9;65:2;68:15;76:5;
80:11;82:24;83:11
**kinds (1)**
83:2

**KIRSCH (1)**
17:10
**KISSEL (1)**
9:2
**KLAUDER (1)**
22:11
**Klein (18)**
26:12,16;32:3,5;
37:10;90:8,9,14,16,
16,23;92:14;94:8,12,
22;95:15;98:12,18
**KNIGHT (1)**
18:2
**knowing (1)**
58:4
**knowledge (1)**
74:6
**knows (1)**
53:8
**KOHN (1)**
11:21
**KORN (1)**
7:21
**KOSINSKI (1)**
24:13
**KOURTNEY (1)**
16:19
**KROPP (1)**
15:17
**KYLE (1)**
22:23

**L**

**laid (1)**
37:18
**LAINE (1)**
10:10
**LAMB (1)**
19:16
**Lane (1)**
26:2
**LANG (1)**
24:14
**language (19)**
39:1,16;57:5;61:7;
63:4,17;64:4,20;69:6;
70:4;72:3;73:12;74:9,
25;77:10,12;84:24,
25;86:2
**laps (1)**
30:13
**large (1)**
92:21
**last (18)**
29:9;30:24;31:20;
33:1;34:4;44:4;48:12;
50:17;51:7;53:6;
61:15,18;63:4;65:14;
77:24;79:6;88:11;
94:7
**late (1)**
61:8

**later (5)**
33:13;58:20,23;
70:6;86:19
**latest (1)**
68:21
**LATHAM (2)**
14:2,11
**launch (1)**
60:9
**LAW (6)**
19:2;74:20;80:3,3;
89:7;97:16
**lays (1)**
61:7
**lead (2)**
73:7;75:18
**leads (1)**
86:14
**leases (3)**
91:12;96:16;98:21
**least (6)**
43:13;56:12;65:14;
83:15;84:2,14
**leave (4)**
45:15;83:12;87:22;
99:2
**LEDWIDGE (1)**
19:25
**LEE (1)**
24:15
**left (1)**
30:23
**LEGAL (3)**
12:2;40:21;89:24
**LENARD (1)**
13:9
**lender (1)**
34:17
**lenders (22)**
27:11;31:23;37:24;
38:13;39:3;43:11,23,
23;44:5;46:2;56:4;
59:8,23;61:24;63:8;
64:8,22;85:2,4,6,12;
86:14
**lender's (1)**
56:12
**length (1)**
58:6
**Lenny (1)**
27:19
**LESLIE (2)**
24:8;25:12
**LESSARD (1)**
6:16
**lessor (2)**
30:9;31:2
**Lessors (2)**
18:3;93:19
**letter (5)**
34:9,24;71:6,10,13
**level (1)**
98:5

**LEVIN (1)**
10:19
**liability (2)**
76:11,14
**liberty (1)**
47:18
**lien (11)**
69:11;78:21,22;
79:1,4,4,12;81:9,12;
87:6,7
**Liens (7)**
71:19;78:2,2;80:16,
17;87:16,21
**lieu (1)**
59:3
**life (1)**
75:8
**light (3)**
56:19;77:18;96:8
**likely (3)**
43:4,18;76:22
**limitation (1)**
76:24
**limitations (2)**
84:22;85:23
**Limited (8)**
27:1;35:10;38:23;
87:9,19;94:2;96:6,8
**Line (11)**
12:3;51:11;66:2;
77:24;79:17;81:1,4;
84:2,2;86:5;96:18
**lines (4)**
76:13;83:25;86:18,
19
**liquidity (7)**
29:20;32:9;33:10;
37:8,16;58:23;95:13
**list (2)**
30:25;75:20
**listed (1)**
94:14
**Listen (1)**
48:21
**listening (1)**
51:2
**literally (3)**
31:9;65:13;70:2
**litigating (1)**
39:25
**litigation (1)**
91:13
**little (17)**
26:11;34:13,19;
43:3,12;50:24;52:9;
62:5;67:2;68:18;
73:15,22;76:19;77:3;
78:9;80:4;99:9
**LIU (1)**
5:10
**Live (3)**
20:3;56:16,17
**LIVINGSTON (1)**

21:22
**LLC (5)**
17:2;18:13;19:2;
20:4;22:11
**LLP (30)**
5:2;6:2,10;7:2,15;
8:2,11;9:2;10:2,13;
11:2,14;12:12;13:2,
14;14:2,11;15:2,11;
16:2,13;17:10;18:2;
19:10,19;20:12;
21:11,18;22:18;23:2
**LO (1)**
17:3
**loan (6)**
51:8;52:10;56:4;
65:8;74:11;91:15
**loans (9)**
34:18,19,21;36:8;
60:20,25;61:1,2;66:7
**Local (19)**
38:22;39:14,19;
40:20;41:2,2,3;42:1;
43:21;44:12;45:14;
47:3;50:18;56:1,15;
70:16;75:6;82:17;
84:13
**lockup (1)**
92:25
**lodestone (1)**
81:19
**logged (1)**
27:4
**LOHRFINK (1)**
19:10
**LOKEY (1)**
22:2
**LOMAZOW (1)**
11:11
**long (5)**
41:3;58:1;60:17;
88:2;93:1
**longer (3)**
32:2;85:20;93:14
**look (22)**
26:12;40:2,3,19;
41:22;43:1;44:3,24;
46:14;55:22,23;
70:25;71:22;78:19;
83:14,20;84:5,16,17,
19;88:14;89:1
**looking (8)**
47:12;55:5;62:6,6;
75:13,24;86:17;88:15
**looks (2)**
31:5;70:8
**loop (3)**
51:17;99:7,9
**LOPEZ (1)**
24:16
**lose (1)**
38:19
**lot (17)**

40:12,16,17;43:14;
44:16;50:7;55:25,25;
57:16;61:7,9,16;
70:23;83:2;95:10;
96:17;97:11
**Lots (3)**
47:2;96:15,16
**loud (3)**
47:19;49:22;50:23
**LOUIS (1)**
23:15
**lovely (1)**
55:19
**lowest (1)**
97:18
**Ltd (2)**
19:3,11
**LUCIA (1)**
24:12
**LUDOWIEG (1)**
24:17
**LUFT (1)**
7:22
**LUKE (1)**
24:25
**LYDA (1)**
16:19

**M**

**M&A (1)**
36:16
**MACKAY (1)**
5:11
**MADELEINE (1)**
24:21
**Madison (1)**
13:16
**Main (1)**
13:5
**major (1)**
61:20
**majority (2)**
65:21;69:3
**makes (8)**
31:2;40:25;53:9,17;
61:21;70:11;82:5;
83:22
**making (8)**
40:13;44:8;50:5;
69:8;72:10;74:6;95:7;
97:1
**MANDEL (1)**
24:18
**Manhattan (1)**
23:3
**manner (1)**
41:25
**many (10)**
27:3,3;29:5,24;
31:1;37:2;39:8;72:8,
9;91:20
**Marathon (1)**

17:3
**MARCUS (1)**
21:8
**MARIA (1)**
23:17
**MARK (1)**
6:16
**Market (1)**
16:4
**MARKOWITZ (2)**
18:12,18
**marshaling (4)**
59:10;72:24;73:16;
85:23
**Marshall (5)**
26:9;29:3;50:16;
55:21;69:25
**MATEO (1)**
17:16
**material (2)**
32:9;93:21
**materials (3)**
34:15,25;36:19
**MATOTT (1)**
9:8
**matter (4)**
58:14;71:15;73:19;
90:6
**matters (1)**
28:10
**MATTHEW (1)**
16:10
**maximize (1)**
33:25
**may (16)**
27:5;38:17,18;40:5;
49:20;50:24,24;51:2;
54:9;55:13;56:13;
67:11;73:6;77:17;
93:5;98:8
**maybe (15)**
40:13;42:14;46:16;
51:13,17;73:12;
74:25;75:5;80:8,12;
82:25;87:24;88:9;
93:5;98:23
**MAYER (1)**
21:11
**MCANDREW (1)**
19:10
**MCGIL (1)**
24:19
**MCGREAL (1)**
23:6
**McKinney (1)**
16:15
**McLean (1)**
12:6
**mean (6)**
40:11,16;41:1;
46:13;65:13;76:25
**means (7)**
45:13;46:4,12;48:3;

57:7;73:3;78:17
**meant (1)**
51:23
**mechanic (4)**
60:21,22;61:10;
65:3
**mechanically (1)**
66:6
**mechanics (3)**
34:19;36:11;42:19
**meet (2)**
87:13;88:7
**MEISNER (1)**
19:10
**MENDOZA (1)**
24:20
**MENKES (1)**
24:21
**mention (1)**
84:15
**mentioned (9)**
35:2;38:20;71:7;
72:17;73:1;74:4;
82:18;86:1;95:20
**mentioning (1)**
73:22
**mentions (1)**
40:6
**MERLIN (1)**
24:22
**mess (1)**
54:2
**messages (1)**
41:10
**Miami (2)**
15:14;18:16
**MICHAEL (6)**
6:7;7:25;11:20;
26:25;69:2;94:1
**MICHELLE (1)**
23:6
**MICHELS (1)**
24:23
**middle (3)**
39:7;81:7;87:14
**might (4)**
50:14;51:10;72:3;
91:13
**MIKE (3)**
24:15;27:9;44:22
**MILBANK (3)**
11:2;67:14;76:5
**MILER (1)**
24:24
**MILLER (7)**
7:12;26:19,19,23;
42:5;95:5,6
**million (23)**
33:4,9,14;36:8,8,9,
15;43:11,12,13;46:1;
47:13;49:7,16;54:6,
24,24;56:3,10,12;
57:9;58:18;91:15

**million-dollar (1)**
43:19
**millions (3)**
29:19;30:16;48:8
**MILLMAN (1)**
24:25
**mind (2)**
69:20;98:17
**minds (1)**
70:13
**minimis (4)**
67:25;68:11,17,20
**Minneapolis (1)**
22:4
**minor (1)**
81:3
**minute (3)**
40:14;42:12;65:16
**minutes (4)**
31:23;39:12;67:12;
90:12
**MIRANDA (1)**
25:11
**misconduct (1)**
76:17
**MISHA (1)**
7:9
**MISHKIN (1)**
5:12
**misnomer (1)**
78:7
**misreading (1)**
44:18
**missing (4)**
75:1;77:8;81:2;
85:18
**mix (1)**
97:8
**MN (1)**
22:4
**modified (1)**
96:22
**momentarily (2)**
35:9;94:23
**moments (2)**
29:10,21
**momentum (1)**
31:10
**money (7)**
34:18;36:7,8;44:1;
56:19;65:7;85:5
**month (3)**
41:21;68:1,19
**months (3)**
43:10;56:7;94:6
**MOORE (1)**
9:11
**more (20)**
26:13;30:6;33:21;
42:17;49:4;52:2,19;
54:1,19;55:5;57:5;
66:2;68:19;70:1;
71:11;84:21;91:4,12;

96:8;98:1
**morning (29)**
26:2,8,22,23,25;
27:2,5,9,12,16,18,21,
22,25;28:2,9,13,24;
30:4;32:22;34:22;
65:14;90:9,11,12,25;
93:13;94:8;98:19
**MORRIS (3)**
10:13;13:14;16:2
**most (2)**
28:11;94:15
**motion (36)**
28:18;30:10,24;
31:13;32:5;33:19,21;
34:3,4,8;35:2,13,15;
36:19;37:10;50:20;
66:12,17;67:9;70:19;
75:15,16;88:18;
90:19,19,25;96:4,5,7,
8,19,22;97:3,7;98:7,
21
**motions (8)**
28:20;29:19;30:6;
32:1;47:5;71:19;
96:21;97:22
**mouth (1)**
49:20
**move (10)**
35:19,21;44:17;
45:3;56:20;79:15;
85:19;92:1;98:6;
99:23
**moved (1)**
53:14
**moving (11)**
47:2;58:15;63:23;
70:24;75:9;77:5,23;
83:2;97:10,13;99:6
**much (29)**
26:12;32:17;35:20;
44:14;46:24;50:9;
54:19;57:23,25;58:8;
66:11;67:4,7;68:12,
22;69:17,23;71:11;
79:14;82:4;89:13;
90:4,7;91:14;95:1,19,
25;96:8;99:10
**multi-draw (1)**
36:5
**multi-tranche (1)**
33:12
**myself (1)**
88:17

**N**

**NA (1)**
11:15
**NAI (2)**
19:3;35:9
**National (4)**
9:3;19:3,11;35:10

**nature (2)**
43:8;68:11
**NC (1)**
9:15
**near-final (1)**
34:23
**near-term (2)**
29:20;32:9
**necessarily (2)**
75:21;79:1
**necessary (1)**
33:23
**need (18)**
29:17,25;50:8;
60:19;63:21;65:16;
71:1;74:18;75:4;82:2;
87:4;94:20;96:23;
98:13;99:3,8,12,24
**needed (3)**
52:7;75:22;85:20
**needs (3)**
90:2;98:25;99:16
**NEGISA (1)**
23:12
**negligence (1)**
76:17
**negotiated (3)**
34:5;36:25;76:6
**negotiating (1)**
41:8
**negotiation (1)**
34:11
**negotiations (5)**
44:8;91:18;93:2,19;
96:16
**New (29)**
5:5,19;6:5;7:5,19;
9:5;10:5;11:6,18;
12:17;13:17;14:5;
15:5;19:22;20:7,16;
21:13,19,20;23:4;
26:4;29:12;30:19;
33:10;34:18;36:7,8;
65:6;69:21
**news (3)**
30:7;33:7,21
**NEWTON (1)**
25:3
**next (10)**
30:11;31:3;33:19;
60:4;66:25;74:7;
79:15;80:9;98:14;
99:20
**NIA (1)**
19:11
**nicely (1)**
49:14
**NICHOLAS (1)**
11:8
**NICHOLS (1)**
16:2
**night (4)**
31:9;61:18;63:4;

65:14
**NIKHIL (1)**
14:7
**ninety-nine (1)**
41:15
**NJ (1)**
19:5
**nonaircraft (1)**
94:14
**nonappealable (1)**
76:14
**noncontroversial (1)**
73:18
**none (2)**
92:5;96:3
**noodle (1)**
49:8
**noodled (1)**
57:22
**noodling (1)**
49:3
**North (4)**
8:14;9:14;10:15;
16:4
**Northwest (3)**
8:5;14:13;17:12
**notable (1)**
31:10
**note (2)**
40:1;82:11
**noted (2)**
49:23;67:22
**noteholder (2)**
27:11;34:15
**Noteholders (13)**
7:17;8:4,13;31:18;
33:9;44:23;48:5,6,7,
15,17;49:6;87:3
**noteholders' (1)**
60:16
**notes (14)**
28:13;34:16,20;
37:23,24;60:17,20,23,
23;66:5,7;78:1;79:17,
19
**notice (5)**
31:15;34:8,12;
82:16;97:22
**notion (1)**
45:9
**notwithstanding (1)**
87:25
**November (1)**
36:10
**number (17)**
28:19;30:9,14;31:8,
15;34:4,8;35:2,16;
62:4;73:15;86:6,6,11;
95:11;96:4,15
**numbers (1)**
62:16
**nunc (3)**
79:22;80:3,16

**NY (19)**
5:5,19;6:5;7:5,19;
9:5;10:5;11:6,18;
12:17;13:17;14:5;
15:5;19:14,22;20:7;
21:13,20;23:4

**O**

**object (1)**
35:6
**objection (15)**
28:20;31:13,14;
35:10,12,24;38:23;
41:25;68:9;90:25;
93:3,5;97:23;98:3;
99:6
**objectionable (1)**
74:10
**objections (3)**
91:5;92:5;97:21
**obligations (4)**
60:16;65:2,5,10
**observed (1)**
94:3
**obtain (4)**
28:18;36:5;67:9;
82:6
**Obvious (1)**
98:5
**obviously (6)**
26:12;29:21;31:12;
66:22;77:1;89:16
**occasion (1)**
40:22
**occasions (1)**
57:13
**occur (1)**
61:8
**occurred (1)**
83:6
**occurring (1)**
83:7
**o'clock (2)**
26:4;88:15
**October (4)**
28:11;33:19;34:3;
98:22
**off (8)**
30:24;47:25;48:3;
53:4;87:22;88:1,2;
98:11
**offer (2)**
60:9,11
**offered (1)**
60:18
**offering (1)**
48:9
**offhand (1)**
48:10
**Office (7)**
5:17;27:24;31:12;
89:17;95:20,21;98:1

**Official (7)**
7:3;26:21;28:17;
87:2,2;95:4,7
**officially (1)**
55:9
**often (1)**
40:21
**old (2)**
78:12;82:25
**OLIVER (1)**
25:6
**omnibus (1)**
30:23
**Once (4)**
42:14;77:17;86:15;
89:23
**One (66)**
9:4;30:12,12;32:7;
35:4,9;37:11;38:10,
10,12,12,13,14,14,22;
39:23;40:3,8,22;
41:14;43:2;45:22,23;
50:6;51:7,9;52:18;
53:6,12;54:14,16;
55:23;57:23;59:2,3,
20;61:18;62:9;63:16;
65:23;67:1,21;69:9;
70:22;71:2;72:23,25;
73:5,9,12;74:25;76:9,
13;77:13;80:24;83:3,
15,25;86:17,18;
89:20;90:20;93:17;
94:7;98:10,14
**ones (1)**
30:22
**one's (1)**
97:16
**only (9)**
28:16;45:4,17;48:4;
57:20;71:23;74:9;
75:12;96:4
**onto (1)**
27:4
**open (5)**
28:3;46:3;47:10;
87:23;96:1
**opening (1)**
29:10
**operating (1)**
68:5
**operations (1)**
33:23
**opined (1)**
39:18
**opportunity (2)**
34:17;60:10
**opposed (3)**
73:1;80:23;90:13
**options (1)**
91:12
**order (95)**
33:5,15;34:14,25;
35:7,12;36:4,9;37:22;

38:25;39:15;42:11,
12;43:6,19;44:6,9;
46:6;47:16;49:19;
54:25;57:4;58:5,11,
15;59:2,7,10,11,13;
60:8,22;61:6,7,16,22;
62:8,25;63:12;66:22,
23;67:2,16;68:2,6,24;
69:6,14,16,21,21;
70:19,21;71:17,24;
72:16,22;73:3,4,11,
17;79:6,8,20,22,25;
80:7,7,10,17;82:7,8,
25;83:8,16,17;84:10;
85:24;86:9;88:14,14,
19;89:2;91:1,4,6;
92:22,24;93:14,21;
96:5;98:8,10;99:20,
22
**orders (8)**
32:11;78:12;83:2,5;
84:18,19;90:24;99:19
**ordinary (4)**
63:7;64:23;67:22;
68:10
**O'REILLY (1)**
25:4
**original (1)**
38:12
**originate (1)**
83:22
**others (3)**
42:20;51:8;84:11
**otherwise (5)**
40:11;45:20;83:5;
85:18;91:14
**O'TOOLE (1)**
25:5
**ourselves (1)**
29:14
**out (43)**
26:17;27:6,8;30:2;
36:19;37:18;40:1,7;
41:9;47:19;49:10,22,
25;50:23;51:1,3,17;
57:6,22;61:7;62:17;
65:13;67:20;70:1;
71:5;74:15,22;75:1;
77:2,13,19,22;80:3;
83:10;84:4,15;85:10;
87:18;88:6,8;92:15,
17;99:4
**outcome (2)**
30:22;89:18
**outlined (1)**
95:15
**out-of-date (1)**
81:5
**out-of-pocket (2)**
76:1;81:15
**outset (1)**
35:2
**outstanding (1)**

37:5

**over (15)**
28:14,23;30:5;
31:11;32:3,18;44:3;
66:25;78:12;82:24;
88:20,21;90:8;93:5;
96:22

**overall (1)**
33:24

**overlooked (1)**
39:20

**overthinking (1)**
84:24

**own (3)**
41:7;48:24,25

**owned (3)**
36:14;38:8;81:2

**P**

**PA (2)**
21:2;22:13

**PAFCA (1)**
21:3

**page (56)**
36:21,22;62:4,5,16,
25;63:3,24;64:12;
69:7;71:7,14,14,20;
72:2,5,12,16,21;
73:24,24;74:7,7;
75:13,14;76:7;77:6,
14,23,24;78:18,19;
79:8,15,16,16;80:9;
81:1,4,7,13,13;82:5,
14,15;83:4,24,24;
84:1,7,21,21;85:22;
86:2,5,7

**pages (3)**
27:3;62:23,25

**paid (6)**
59:21;86:9,14,15,
15;87:22

**PALIERAKIS (1)**
25:6

**Palm (2)**
6:12,14

**paper (2)**
42:3;62:12

**papers (3)**
38:1;59:9;62:13

**paragraph (31)**
61:25,25;62:19;
63:3,23;64:9,11,12;
66:4;69:7;71:4,16;
74:8;75:24;76:2;77:9,
14,15,16,24;78:20;
79:17;81:4;83:5;84:2;
85:22;86:6,7,12;87:5;
88:8

**paragraphs (2)**
62:4;93:17

**PARK (5)**
5:13;7:18;9:4;10:4;

12:15

**PARKINS (4)**
12:12;13:2,9;27:19

**PARLIN (1)**
18:8

**part (11)**
27:5;33:17;41:21;
55:11;68:16;69:10,
11;88:25;92:21;93:6;
97:9

**partially (1)**
39:2

**participants (2)**
31:1;37:24

**participate (3)**
34:17;60:10,10

**particular (18)**
31:20;40:21;42:21;
44:16;55:7;56:2,22;
66:12;68:3,7,14;
69:18;70:19;72:18;
73:1;75:4;85:9;98:9

**particularly (3)**
44:19;55:24;83:3

**parties (19)**
29:7;30:2;40:9;
41:4;44:24;57:14;
59:19,21;63:19;74:3;
79:19;81:16,16;
88:24;96:10,16;97:1;
98:4;99:15

**parties' (1)**
77:25

**parties-in- (1)**
34:1

**partner (1)**
27:19

**Partners (2)**
35:14;49:2

**parts (6)**
47:2;63:7;64:23;
67:19,22;68:4

**Party (9)**
15:12;19:20;35:17,
21;67:8;70:18;92:2;
96:2;98:24

**Party-in-Interest (1)**
16:3

**passage (1)**
31:16

**past (4)**
63:7;64:8,24;67:23

**PATTON (1)**
22:18

**pause (1)**
93:22

**pay (3)**
75:25;88:1,2

**paydown (1)**
39:3

**payment (5)**
37:8;58:23;59:2;
81:14;95:14

**payments (2)**
59:3,4

**payroll (4)**
60:3,3,4,4

**PC (1)**
20:2

**PDF (2)**
36:22;62:24

**pejorative (1)**
97:18

**pending (1)**
69:15

**people (15)**
27:4,6;30:21;31:8;
41:8;46:25;50:7;
54:15;58:3;60:13;
72:19;76:21;82:10;
96:12;99:23

**per (1)**
67:25

**percent (2)**
41:15;60:17

**perfected (1)**
79:19

**perfectly (4)**
26:15;55:6;77:1;
82:23

**perhaps (4)**
45:13;52:24;88:8;
93:24

**period (9)**
40:2,4;44:9;53:10;
54:21;60:11;64:15;
80:21;84:9

**periods (2)**
40:4,5

**person (1)**
76:11

**persons (1)**
76:16

**perspective (8)**
46:11;48:19,19;
50:25;51:2;54:17;
76:25;82:22

**petition (4)**
28:19;34:19;81:17;
84:11

**Petroleum (1)**
17:3

**PETTINATO (1)**
25:7

**PFC (1)**
59:15

**Philadelphia (1)**
22:13

**PHILIP (2)**
7:8;23:13

**phrasing (1)**
71:15

**physicist (1)**
82:19

**piece (1)**
48:4

**pieces (1)**
83:2

**PILLSBURY (4)**
6:2,10;27:1;94:2

**Pilots (1)**
12:3

**PITNEY (1)**
20:12

**PITTMAN (2)**
6:2,10

**PJT (1)**
35:14

**place (6)**
52:20;57:13,18;
73:1;74:15;88:9

**placeholder (1)**
84:5

**places (5)**
64:20;71:25;86:11;
92:21;95:21

**Plains (1)**
19:14

**plan (6)**
36:17;43:10;56:8;
91:10;92:25;93:1

**play (1)**
80:1

**Plaza (2)**
9:4;21:19

**pleading (1)**
39:7

**please (1)**
40:18

**pleased (1)**
33:20

**pleases (1)**
32:2

**pledge (1)**
52:9

**pledged (1)**
52:10

**plenty (1)**
54:15

**PLIMPTON (2)**
5:2;27:15

**PLLC (1)**
9:11

**pm (2)**
99:24,25

**PO (1)**
19:4

**podium (7)**
30:5;31:11;32:3,20;
55:8;62:13;90:8

**point (19)**
28:3;36:23,24;42:9,
10,13,21;43:8;44:15;
45:4,10;46:15;51:7;
54:8;71:5;83:15;
87:15;91:20;97:18

**points (4)**
40:21;50:17;58:11;
61:20

**POLITANO (1)**
25:8

**Polk (5)**
26:9;29:3;32:23;
58:9;90:16

**POLSINELLI (1)**
20:2

**popped (1)**
58:13

**pops (3)**
64:20,24;74:24

**PORSCHE (1)**
13:10

**position (4)**
42:6;45:13;63:20;
66:21

**positive (5)**
29:6,24;30:8;31:7;
33:7

**possession (2)**
86:21;87:15

**possible (1)**
32:10

**post- (1)**
28:18

**post-petition (6)**
39:2,17;64:19,20;
67:9;68:24

**posture (1)**
42:5

**postures (1)**
52:25

**potential (1)**
72:10

**potentially (1)**
91:13

**power (1)**
39:18

**practical (2)**
51:6;57:16

**practice (5)**
26:6;64:24;67:23;
74:1,10

**practices (1)**
63:7

**pragmatic (1)**
68:1

**PRASAD (1)**
22:6

**Pratt (1)**
20:13

**pre- (1)**
34:18

**prearranged (1)**
40:6

**precedential (2)**
39:23;45:2

**precise (1)**
57:5

**prefers (1)**
90:20

**pre-packed (1)**
40:6

**prepared (1)**
99:8
**pre-petition (10)**
34:20;37:22,24;
39:3,3;60:15;66:7;
73:25;78:1,2
**PRESENT (5)**
23:9;24:2;25:2;
50:24;96:19
**presentation (5)**
44:17;58:3,14;
65:12;67:16
**presented (3)**
46:22;51:4;70:6
**preservation (1)**
86:8
**preserve (1)**
33:25
**preserved (3)**
46:6;78:23;81:10
**pretty (6)**
40:13;43:9,11;49:9;
50:9;98:19
**prevent (1)**
37:4
**previewed (2)**
33:11,15
**previous (2)**
35:1;66:21
**priced (1)**
48:12
**principal (1)**
36:6
**principle (1)**
37:12
**Princton (1)**
19:5
**prior (10)**
26:6;48:7;58:19;
59:1;60:23;69:21;
78:19;81:17;84:18,19
**priority (7)**
63:6;64:5,6;67:18;
79:2,10;81:11
**pro (3)**
79:22;80:3,16
**probably (18)**
36:18;44:15;46:20;
56:24;68:18;76:23;
77:15,17;82:19,20;
84:4,5,14,24;93:12;
94:7,15,15
**problem (12)**
39:21,21;46:2;
47:11;49:6;55:13,14,
14;62:14,18;70:9;
85:3
**procedural (3)**
52:18,25;61:6
**procedurally (1)**
46:7
**procedures (7)**
58:16;60:5,6,20;

63:13,21;74:4
**proceed (4)**
31:25;46:5;58:22;
70:3
**proceeding (1)**
41:25
**proceedings (3)**
29:16;88:22;99:25
**proceeds (11)**
63:5;64:6,22;67:17,
22,24;68:4;71:17,24;
72:4;79:5
**process (10)**
37:12,15;41:20;
53:16;58:12;59:25;
60:9,25;61:6,9
**processors (1)**
69:3
**productive (2)**
31:17;69:13
**productively (1)**
31:22
**professional (1)**
59:13
**profiles (1)**
33:18
**progress (3)**
33:14;37:14;89:10
**progressed (1)**
96:9
**promised (1)**
34:3
**property (2)**
59:18,19
**proposal (1)**
38:12
**propose (2)**
32:2;61:15
**proposed (22)**
26:20;27:11,15;
29:4;33:22;34:14,25;
35:7,14;36:4;37:22;
38:25;39:15;43:1;
44:23;47:13;58:5;
62:7;66:20;90:17;
95:17;99:19
**proprietary (1)**
93:18
**Protect (2)**
42:2,2
**protection (10)**
33:5;39:2,17;40:12;
58:24;59:1;80:10,17;
82:2,25
**protections (1)**
66:5
**proves (1)**
46:24
**provide (6)**
33:9,14,16,23;
34:15;88:12
**provided (4)**
39:2;40:5;42:23;

76:9
**provides (3)**
39:15;60:15;87:5
**provision (2)**
56:2;60:19
**provisions (1)**
97:11
**prudent (1)**
74:12
**public (2)**
96:13;99:14
**purely (1)**
61:5
**purposes (11)**
35:22;39:9;44:13;
68:1,6;71:19;72:14;
78:5;82:2;92:4;93:6
**pursue (1)**
33:24
**put (12)**
29:12;49:18;52:19;
57:2,5;61:19;63:17,
17;71:12;73:13;
80:24;87:24
**puts (2)**
47:23;57:13
**putting (3)**
49:20;71:9;72:19

## Q

**Quick (1)**
38:15
**quite (6)**
32:11;52:14;74:18;
86:15;97:19;98:18
**quo (1)**
42:2
**QURESHI (1)**
7:23

## R

**RACHEL (1)**
8:17
**RANDLES (1)**
25:9
**RANDY (1)**
25:17
**range (1)**
97:18
**rare (1)**
40:22
**rate (1)**
84:4
**rather (5)**
72:17;73:22;79:2;
81:12;85:11
**ratification (1)**
80:19
**ratio (5)**
33:16;37:25;38:5,
12,14

**ratios (1)**
61:23
**RCF (6)**
58:25;63:8;67:15,
17;78:2;81:16
**reach (1)**
99:4
**reached (3)**
30:8;33:7;45:24
**reaching (1)**
37:11
**read (13)**
35:10;42:22;46:16;
48:18;72:8,16;74:16;
79:11,12;80:24;85:8,
10,13
**reading (1)**
72:10
**ready (1)**
53:22
**real (9)**
52:6,11,12,13;
54:18;57:22;68:17;
89:25;93:19
**realistically (1)**
58:21
**reality (1)**
51:6
**realize (1)**
57:1
**really (27)**
29:23;30:5;40:12,
19;43:12;44:7;45:10;
47:14;49:8,10,15;
54:18;55:20;56:1;
59:18;63:11;64:6;
66:8,21;77:12;78:9;
80:19;89:13;91:9;
93:15,16,21
**Realty (1)**
20:3
**reason (4)**
52:11;53:6;57:17;
80:1
**reasonable (7)**
56:19;74:11,23,24;
75:25;81:14;97:19
**reasonableness (1)**
97:18
**reasonably (6)**
74:17;75:11,22;
77:10,22;82:10
**reasons (1)**
59:20
**reassurance (1)**
48:13
**receipt (1)**
58:22
**receipts (1)**
37:20
**receive (2)**
35:24;60:25
**received (5)**

35:4;36:1;37:9;
92:9,12
**recent (4)**
49:9;58:12;64:8;
89:20
**recently (1)**
28:22
**recharacterization (1)**
59:5
**recognize (1)**
55:13
**recognizing (2)**
66:17;96:23
**record (27)**
26:9;29:3;32:22;
41:24;46:10;47:19;
49:5;55:6;58:9;63:18;
71:10,13;72:7,15,17;
74:2;75:11;78:5;80:2,
8,13;88:24,25;90:16;
92:6;93:11;99:22
**recover (1)**
85:6
**redacted (1)**
96:24
**redaction (1)**
96:25
**redactions (2)**
31:15;93:14
**redline (3)**
62:8;69:7,8
**reduce (1)**
38:14
**reduced (1)**
93:10
**reducing (1)**
44:6
**reduction (1)**
95:16
**refer (1)**
92:25
**reference (5)**
39:5;78:21;81:4;
82:5;89:1
**referenced (1)**
38:22
**references (2)**
72:9;77:14
**Reflect (1)**
74:11
**reflected (1)**
59:7
**reflects (1)**
35:8
**regarding (2)**
28:20;73:25
**regardless (1)**
73:14
**regulation (1)**
59:16
**reimburse (1)**
75:25
**reimbursement (1)**

82:1
**reject (1)**
91:10
**rejected (1)**
30:25
**rejection (2)**
30:24;98:21
**related (7)**
67:9;68:25;76:5;
81:15;82:2;90:19;
96:7
**relates (1)**
94:18
**relating (1)**
75:15
**relationship (1)**
80:6
**release (1)**
64:12
**releases (2)**
44:8;64:14
**relevant (1)**
99:15
**relief (16)**
54:3;65:20;66:9;
67:9;68:7,25;73:4,17;
79:21;85:7;88:18;
89:4,9;91:22;96:7;
97:4
**relying (1)**
74:5
**remaining (3)**
31:4;66:24;97:4
**remedies (1)**
82:15
**removed (1)**
92:24
**reorganization (3)**
36:17;49:1;94:18
**repeat (2)**
44:24;46:16
**repeating (1)**
45:18
**replenished (1)**
58:20
**report (3)**
89:19;91:1,19
**reported (1)**
33:6
**represent (4)**
29:19;32:8;48:5;
54:23
**representation (2)**
49:19;52:20
**representations (6)**
54:13;57:4;63:19;
68:2;70:5;74:2
**representing (1)**
54:5
**represents (2)**
55:10;97:12
**request (13)**
35:21;46:8;68:24;

70:19;73:3,15,17;
79:8;85:25;88:20;
89:9;92:3;97:4
**requested (4)**
59:4;71:22;88:18;
89:4
**requests (1)**
99:10
**requirements (1)**
96:25
**reservation (12)**
35:6,9;38:2,23;
41:24;42:24;43:20;
46:5;59:22;66:17;
78:3,10
**reservations (2)**
35:4;78:4
**reserve (1)**
44:11
**reserved (5)**
43:15;59:11;66:23;
69:15;77:25
**reserves (3)**
39:1;59:17;60:3
**reserving (2)**
39:16;93:4
**resolution (1)**
70:9
**resolve (2)**
91:4;93:3
**resolved (3)**
53:14;57:11;97:22
**resolves (1)**
91:13
**respect (6)**
38:9;53:15;63:12;
64:7;69:9,14
**respond (1)**
39:12
**response (2)**
35:23;52:19
**responsibly (1)**
59:24
**rest (2)**
44:17;99:18
**restoration (1)**
28:18
**restructuring (4)**
33:25;94:9,17;96:6
**result (2)**
50:8;76:15
**resulted (1)**
94:9
**results (1)**
89:21
**retroactive (1)**
80:15
**return (2)**
92:23;93:15
**revamp (1)**
95:13
**reviewed (1)**
66:10

**revise (1)**
52:25
**revised (4)**
62:7;69:6;90:24;
92:21
**revolver (4)**
59:4,6;64:5,6
**revolving (2)**
63:6;64:22
**RICHARD (1)**
15:7
**RICK (1)**
23:11
**rid (1)**
76:20
**right (109)**
26:15,22;27:2,12,
16,21;28:2,8,8;30:21;
32:17;35:20,23;37:3,
17;39:1,16,22;40:2,
12,21;41:17;42:21;
44:14;45:11,15,25;
46:2;51:22;52:5;53:1,
21,24;55:7;56:21,21;
57:1;59:19;60:1;61:4;
62:6;63:9;64:10,17;
65:9;66:11,14;67:3,7;
68:12,22;69:17,23;
70:11,18,20,24;71:14;
72:14;73:21;74:20;
75:5,9,9,16,19;76:7,7;
77:2,5,5,21,23;78:8,
13,15,20;79:13,13;
80:22,25;81:7,23;
82:4,14;83:4,20;
84:20;85:17;86:20;
87:10,13,21;88:11,23;
91:11;92:2,5;93:4,24;
94:10;95:1,19,25;
96:3;97:10;98:10,24;
99:2
**rights (20)**
28:18;35:4,6,9;
42:2,24;43:16;44:11;
46:6;48:9;66:18,23;
69:15;72:23;77:25;
78:3;85:9;86:8;88:2;
92:22
**RILEY (1)**
24:9
**RINGEL (1)**
18:12
**risk (2)**
33:18;48:17
**road (1)**
57:19
**ROBERT (1)**
16:9
**ROBERTS (1)**
19:10
**Robertson (63)**
26:14;32:4,20,21,
23;33:1;36:3;38:16;

39:10;41:13;42:8,16;
51:19,21;52:17;58:2,
8,9;60:2;61:5,14,22;
62:2,9,12,18,22;63:2,
10,22;64:1,11,14,18;
65:11;67:21;68:13,
15;69:18,19;71:12;
72:13,19;73:20;75:2,
76:4,25;77:20;78:6,
14;79:10;80:12,14;
81:21,24;82:13,22;
83:14;84:17;85:14,
15;86:24;90:7
**ROGERS (1)**
16:8
**rolled (4)**
37:25;49:17;61:5;
65:6
**rolling (2)**
34:20;60:20
**rollup (1)**
38:11
**roll-up (32)**
33:16;34:18;37:21,
22;38:2,5,20,25;
39:15;42:19;43:19,
20,21;44:1,6,10,13;
45:18;47:13;52:11;
53:23;56:3;60:25;
61:1,2,23;65:2,4,7,7,
10,22
**roll-ups (2)**
40:10;48:25
**ROMAN (1)**
13:10
**room (4)**
35:16;51:19;57:25;
66:13
**ROR (1)**
64:16
**ROSENSTEIN (1)**
25:10
**Routh (1)**
18:4
**rowing (1)**
30:1
**Royal (1)**
6:12
**Rubicon (1)**
51:14
**RUBIN (5)**
7:24;27:10;86:25;
87:1,11
**RUBIO (7)**
12:12,19;13:2;
27:17,18,18,22
**RUDY (1)**
24:22
**Rule (45)**
38:24;39:5,14,22,
25;40:11,17;41:2,3,3;
42:1;43:21;44:12;
45:14,20,21;46:5;

47:3;49:9;50:18;51:1,
3,5,23;52:21,25;53:7,
17;54:2,4,16,18,21;
55:2,2;56:1,15;57:12,
16,17,18;70:16;75:6;
82:17;84:13
**Rules (5)**
38:22;39:19;40:17,
20;57:19
**run (3)**
32:1;85:12;95:8
**running (2)**
59:24;85:2
**runs (1)**
84:9
**RUSSELL (1)**
25:11

**S**

**Sabadell (1)**
15:3
**sale (4)**
36:13;38:8;63:6;
64:23
**sales (4)**
67:25;68:10,16;
69:4
**same (23)**
30:1;47:23;48:5,6;
51:19;52:5,20;58:6;
64:20;65:24,25;70:9;
72:12,21;76:7;80:11,
20;81:13;83:11;
84:18;90:20;93:1;
96:18
**SAMUEL (1)**
11:21
**SANZOTTA (1)**
8:8
**sat (1)**
45:5
**satisfies (2)**
96:25;97:17
**satisfy (1)**
37:5
**satisfying (1)**
60:18
**saved (1)**
29:15
**savings (1)**
30:16
**saw (1)**
26:16
**saying (10)**
41:6;42:10;43:17;
49:9,14;54:4;65:3;
69:10;70:4;79:3
**scenes (1)**
89:14
**schedules (1)**
93:15
**SCOTT (2)**

23:22;24:3
**screen (1)**
27:6
**seal (1)**
97:5
**sealing (6)**
90:19,25;96:7,8,10,
22
**Sean (1)**
26:2
**seat (1)**
45:6
**second (17)**
28:15;33:2,5;36:10;
38:5,6;39:17;52:3;
62:10;70:25;73:5;
77:8;79:25;80:10;
81:1,4;84:10
**seconds (3)**
70:1,2,6
**section (3)**
71:21;78:24;81:11
**secure (1)**
36:5
**Secured (15)**
7:16;8:3,12;27:10;
33:8;37:22,24;43:13;
44:23;58:25;78:1;
79:17,18;81:16;87:3
**securities (1)**
56:10
**security (2)**
78:22;81:9
**seeing (3)**
28:19;35:23;92:5
**seek (2)**
33:25;85:7
**seeking (2)**
33:21;91:22
**seeks (1)**
36:4
**seems (5)**
45:24;74:14,15,19;
83:11
**segregated (1)**
59:15
**segregation (1)**
68:3
**seldom (1)**
70:13
**send (1)**
41:10
**Senior (6)**
7:16;8:3,12;36:5;
78:21;87:8
**sense (8)**
31:2;40:25;53:3;
61:21;74:14;76:18;
83:23;86:24
**sensitive (3)**
93:18;96:17,24
**sent (1)**
70:3

**sentence (2)**
78:17;81:8
**separate (2)**
59:14;83:11
**September (1)**
33:2
**serious (3)**
49:11;88:13;91:13
**serves (3)**
44:7;55:24;99:16
**Services (1)**
11:16
**set (7)**
33:4;36:21;43:9;
46:23;50:3;59:9;
93:16
**sets (1)**
91:10
**settled (1)**
55:10
**settlement (9)**
32:6,16;60:24;93:6,
7;95:17;97:17,23;
98:3
**settlements (1)**
93:4
**seven (3)**
82:17,21;83:25
**Seventh (1)**
7:4
**seventy- (1)**
84:9
**seventy-five (1)**
84:11
**several (3)**
28:10;66:25;97:8
**severally (1)**
75:25
**SEVERINI (1)**
17:7
**SEWARD (1)**
9:2
**shall (4)**
38:25;76:11;78:21;
86:3
**SHAMAH (1)**
19:24
**SHANE (1)**
25:4
**SHARA (3)**
5:21;28:1;95:22
**share (2)**
56:25;85:15
**SHAW (2)**
6:2,10
**sheet (7)**
92:24;93:14;94:10,
17,21,25;96:6
**SHESH (1)**
22:6
**SHIGAKI (1)**
25:12
**shortened (3)**

31:15;40:5;58:5
**shortly (1)**
56:9
**shout (1)**
70:1
**show (1)**
69:22
**shown (2)**
40:6;69:7
**SHRIVER (1)**
21:18
**shutdown (1)**
32:10
**side (5)**
30:2;36:7;41:4;
52:21;85:1
**sideways (1)**
45:8
**SIGAL (1)**
21:15
**sign (1)**
29:24
**significant (4)**
30:14;93:10;94:5,5
**SILVERBRAND (1)**
25:13
**similar (2)**
59:1;93:19
**simple (2)**
54:11,11
**simply (1)**
87:7
**sincere (2)**
45:7;47:7
**sit (1)**
47:4
**sitting (1)**
56:10
**situation (5)**
47:23;48:15;54:20;
57:2;79:22
**six (3)**
51:25;52:14;83:25
**Sixth (1)**
22:3
**sixty (2)**
84:13,14
**sixty-seven (1)**
60:17
**size (2)**
36:12;44:12
**sizes (1)**
91:11
**sizing (2)**
68:18;97:10
**sketched (1)**
92:15
**sleep (2)**
61:19;72:20
**SLIM (1)**
6:17
**slipped (1)**
69:20

**slots (2)**
30:19;67:18
**small (2)**
53:6;62:13
**smart (1)**
87:18
**smarts (1)**
57:24
**SMITH (3)**
9:17,18;18:9
**snuck (1)**
86:6
**solace (1)**
58:4
**sold (3)**
67:19,22;68:4
**solely (4)**
76:16,18,20,23
**solicitation (2)**
58:16;74:5
**solve (1)**
55:13
**solving (1)**
54:4
**somebody (4)**
44:18;55:24;72:10;
77:3
**someone (3)**
28:5;50:2;57:3
**somewhat (1)**
97:17
**somewhere (2)**
87:13,25
**soon (1)**
98:10
**SOPHIE (1)**
16:8
**SORKIN (1)**
14:17
**sorry (3)**
38:23;62:2;87:2
**sort (19)**
30:12;37:14;44:1;
51:14;53:2;55:5;60:7,
19;64:5;66:2;73:11;
74:16;77:11;79:11;
80:15;83:21;87:23,
24;88:7
**sorts (2)**
87:17;89:16
**sound (2)**
28:24;74:10
**sounding (1)**
97:18
**sounds (1)**
55:7
**South (1)**
22:3
**Southern (1)**
26:3
**space (1)**
84:1
**spare (5)**

63:6;64:23;67:18,
22;68:16
**speak (10)**
28:6;29:21;39:12;
40:20;42:6,20;51:8;
81:24;92:16;93:23
**speaking (4)**
28:4,6;47:17;73:11
**speaks (1)**
89:8
**SPEAR (2)**
12:9;25:14
**specific (3)**
40:17;42:17;94:20
**specified (1)**
58:18
**speech (2)**
40:13,24
**speed (1)**
41:22
**spelled (1)**
92:17
**spend (1)**
65:14
**spent (1)**
95:10
**Spirit (6)**
5:3;26:4;30:8;31:3;
53:7;94:4
**Spirit's (4)**
33:23;37:12;67:24;
94:17
**spot (2)**
46:7;74:25
**spots (1)**
31:4
**Spruce (1)**
22:12
**SQUIRE (1)**
22:18
**STACEY (1)**
24:11
**stage (1)**
91:2
**stake (1)**
49:1
**stakeholders (5)**
29:24;34:6;89:11;
97:3,12
**stakeholders' (1)**
48:19
**STAMER (17)**
7:25;27:9,9;39:12;
44:21,22;45:16,17;
46:15,20;47:25;48:3;
50:13,16;51:7,11;
67:6
**Stamer's (1)**
39:11
**stand (1)**
97:24
**standalone (1)**
36:17

**standard (6)**
63:17;74:9;76:9;
97:6,16,19
**standing (1)**
45:25
**start (5)**
26:6;29:5;66:14;
84:8;88:15
**started (2)**
66:15;91:17
**starting (1)**
26:7
**state (3)**
39:15;49:5;80:2
**stated (4)**
46:3;71:20,25;
93:10
**statement (7)**
45:7;46:9,21;49:14;
56:25;72:17;97:8
**statements (2)**
47:6;66:21
**States (8)**
26:3;27:23;28:1;
35:5;91:3;92:18;
93:12;95:23
**status (3)**
29:6;42:2;99:5
**steal (1)**
43:3
**step (1)**
61:6
**STEPHANIE (1)**
17:16
**steps (2)**
61:8;84:18
**still (9)**
34:10;43:15,21;
67:1;68:19;71:1;
80:20;91:25;98:18
**stip (1)**
53:14
**stipulations (2)**
40:3;53:9
**STOLE (1)**
25:15
**stop (2)**
40:24;51:13
**story (1)**
48:25
**STRAUSS (3)**
7:15;8:2,11
**Street (16)**
6:4;8:5,14;9:14;
11:17;13:5;14:13;
16:4,15;17:4,12;18:4;
20:14;22:3,12,19
**strongly (1)**
85:13
**struck (1)**
64:25
**stuff (1)**
98:23

**subject (20)**
34:10;38:3,21;
39:17;43:19;44:9;
53:10;54:25;57:10;
59:5;64:14;67:10;
71:23;72:5,22;73:2;
79:3,5;82:9;87:6
**submit (1)**
65:18
**subordinated (1)**
60:16
**subscription (1)**
34:13
**subsection (1)**
44:19
**subsequent (10)**
29:8;36:13,20;37:2,
4,7,17;38:3,8;61:2
**subsequently (1)**
34:23
**substance (3)**
40:17;41:11;58:25
**substantial (1)**
48:11
**Substantially (1)**
48:6
**substantive (3)**
40:19,21;84:21
**substantively (1)**
66:9
**subsumed (1)**
83:9
**successful (3)**
39:4;54:22;57:8
**successfully (1)**
57:22
**successor (1)**
53:21
**sufficient (1)**
75:10
**SUGARMAN (1)**
21:2
**suggest (1)**
47:9
**suggestion (2)**
76:19;82:21
**Suite (14)**
6:13;8:14;10:16;
12:5,16;14:14;16:5,
16;17:13;18:5,15;
19:13;21:5;22:20
**SULLIVAN (1)**
25:16
**Sunday (1)**
41:18
**supplemental (6)**
34:7;79:25;91:3,24;
92:11;94:16
**supplemented (1)**
88:20
**support (3)**
33:23;35:13;91:7
**supported (1)**

91:22
**supportive (1)**
48:16
**supports (1)**
95:18
**sure (28)**
29:17;39:10,10;
40:18;41:13,13;46:5;
61:22;62:11,17;
65:16;67:13;68:21;
71:4,9;72:11;74:18;
75:19,21,23;77:8;
78:25;79:6;80:14,14;
84:12;88:25;98:16
**surplus (1)**
81:3
**suspect (1)**
85:13
**suspected (1)**
56:23
**SUSSKIND (1)**
21:2
**swaps (1)**
93:16
**swiftly (1)**
30:20
**swoop (1)**
72:25
**SYMANSKI (1)**
25:17
**syndication (5)**
34:15,16,24;60:5;
63:13
**synopsis (2)**
94:12,13
**system (1)**
70:17

---

**T**

---

**talk (9)**
51:22;52:24;58:12,
23;67:20;68:20;71:1,
18;89:24
**talked (5)**
72:19;81:8;85:22;
89:6,14
**talking (13)**
26:11;42:14;71:18;
72:15;73:7,15;80:5,5,
9;87:20,21;89:19;
97:16
**talks (15)**
38:24;71:16,16;
74:8;75:25;76:8;
77:25;81:14;82:15,
16,17;84:22;85:6;
86:8,9
**TALMO (1)**
16:10
**TANNADY (1)**
25:18
**tap (1)**

30:4
**taxes (2)**
59:17;60:4
**TAYLOR (1)**
24:5
**teed (3)**
96:19;98:10,20
**telling (2)**
50:7;53:20
**ten (3)**
60:12;70:1;91:11
**tend (1)**
75:7
**tender (5)**
60:9,11,23,23,24
**tenders (1)**
34:16
**tens (1)**
30:16
**term (11)**
45:19;83:7,11;84:3;
92:24;93:14;94:10,
17,21,24;96:6
**termination (3)**
82:5;83:6,9
**terms (22)**
33:4,8;34:6;37:23;
41:1;42:11;46:18,23;
47:22;64:18;73:23;
74:4,10,16,17;83:21;
88:13;89:15;93:21;
94:20;97:10;99:6
**terribly (1)**
98:1
**test (6)**
37:16,17,19,19;
74:19,20
**tethered (1)**
61:12
**THAIS (1)**
5:8
**thanking (1)**
98:4
**that'll (1)**
73:17
**theory (1)**
40:8
**thereafter (1)**
56:9
**therefore (4)**
49:7;54:24;55:1;
87:15
**thereto (1)**
90:19
**thinking (1)**
50:23
**Third (6)**
20:5;36:14;38:11;
52:3;59:19;84:2
**thirteen (1)**
37:20
**thirty (3)**
70:2,6;91:12

**thirty-five (2)**
82:6,8
**THOMAS (4)**
19:16;22:15;23:20,
25
**thought (11)**
49:10;56:24;76:20,
23;79:23;80:1,8;
87:20,21;88:15;99:3
**thoughts (1)**
41:1
**thread (1)**
38:19
**three (7)**
31:21;51:24;54:10;
76:13;83:25;86:18,18
**throughout (1)**
59:24
**throw (4)**
52:21;77:18;83:10;
96:1
**throwing (3)**
49:25;51:1,3
**thrown (1)**
41:4
**thunder (1)**
43:4
**thus (1)**
49:15
**ticket (1)**
69:4
**tied (4)**
33:13;38:7;84:18;
85:8
**ties (1)**
79:20
**timely (4)**
39:4;54:22;57:7,7
**times (2)**
96:11;97:8
**timing (1)**
45:12
**TISCH (1)**
25:19
**TOBIN (1)**
22:7
**today (29)**
26:11;28:4,11,21;
30:6,17;31:25;32:12,
12,13;33:20;35:17;
43:7;47:15;53:22;
58:11;68:9,24;73:5;
78:5;88:18,24;89:4,9,
14,22;90:6;98:13;
99:1
**today's (6)**
29:18;35:22,25;
37:8;89:2;92:4
**TODD (5)**
7:10;17:2;26:20;
42:25;66:19
**together (4)**
70:15;80:1;89:20;

94:5

**told (2)**
29:10;46:3

**took (2)**
57:1;61:11

**tools (1)**
29:14

**top (3)**
75:17;81:2;86:5

**topic (1)**
68:14

**totally (2)**
29:22;68:16

**touch (5)**
34:13;35:8;36:23;
58:16;60:5

**touchstone (1)**
81:19

**tough (1)**
43:2

**towards (3)**
36:16;37:15;58:17

**TOWLES (1)**
13:11

**TRACY (1)**
25:20

**trading (1)**
48:11

**traditionally (1)**
86:2

**tranche (1)**
53:23

**tranches (4)**
33:13,17,18;36:20

**transaction (11)**
30:11;36:13;58:21,
22;86:13,14,22;87:12,
14;94:18,24

**transactions (4)**
32:8;38:10;94:13,
24

**transfer (1)**
79:3

**transparent (2)**
50:23;96:20

**treated (2)**
64:6;93:1

**treatment (1)**
60:13

**tried (1)**
68:1

**trouble (2)**
49:8,25

**true (4)**
46:22;50:5;52:8;
72:21

**truly (1)**
55:2

**Trust (7)**
9:3,12;10:3,14;
59:17,19;60:3

**Trustee (7)**
5:17;28:1;66:6;

91:3;92:18;93:12;
95:23

**Trustee's (5)**
27:23;31:12;89:17;
95:20;98:1

**TRUSTY (1)**
18:12

**try (3)**
57:21;72:25;93:5

**trying (10)**
41:9;46:25;49:22;
50:4;55:13;57:15,15;
70:15;73:21;80:23

**Tryon (1)**
9:14

**Tuesday (4)**
33:2;34:7;41:18;
60:8

**tunc (3)**
79:22;80:3,16

**TUNNELL (1)**
16:2

**turn (9)**
28:14,23;30:5;
31:11;32:3,18;90:5,8,
18

**turned (1)**
88:14

**TURNER (1)**
25:21

**turns (1)**
48:23

**tweak (3)**
57:3;72:3;73:12

**tweaks (1)**
95:16

**twelve (1)**
90:12

**twenty-seven (1)**
91:11

**Two (23)**
23:3;29:19;30:5,14;
35:4;38:12,18;50:17;
51:24;54:10;65:23;
70:8;73:10;76:13;
77:14;83:16,25;
86:17,18;88:6;91:22;
96:4;99:20

**two-to-one (2)**
37:25;38:5

**TX (4)**
8:15;13:7;16:17;
18:6

**typically (1)**
29:4

**TYSON (2)**
11:11;24:23

**U**

**UCC (4)**
35:5,5,8;38:22

**UCC-1s (1)**

56:8

**UCC's (1)**
38:1

**UDAY (1)**
24:4

**ultimately (6)**
31:25;43:3,17;44:4;
53:14;70:16

**unable (1)**
46:17

**uncontested (10)**
29:23;32:8,15;
33:21;35:3;58:14;
89:8;91:2,19,20

**under (22)**
43:10,19;47:11;
50:10,18;55:1;56:8;
61:2;67:15,16;74:20;
78:24;80:17;86:8;
89:5,6;90:24;97:4,5,
15,20;98:2

**understaffed (1)**
98:1

**understandable (1)**
39:6

**understands (2)**
82:11;95:12

**understood (2)**
75:23;78:25

**undertake (1)**
56:6

**unencumbered (5)**
64:3;78:1,7,9,10

**unfortunate (1)**
76:22

**Unfortunately (2)**
62:23;95:8

**unheard (1)**
54:14

**unicorn (5)**
45:1,1,12;54:9,9

**unions (1)**
37:12

**unique (5)**
43:9;49:12,23;50:2,
3

**United (7)**
26:3;27:23;28:1;
91:2;92:18;93:11;
95:23

**unless (5)**
47:20;75:1;77:3;
90:19;95:24

**unlike (1)**
29:9

**unlikely (1)**
45:24

**unnecessarily (1)**
87:19

**unredacted (4)**
31:17;93:13;94:14;
97:2

**unrelated (1)**

81:22

**Unsecured (8)**
7:3;26:21;28:17;
59:6;91:16;93:2,9;
95:7

**unwilling (1)**
56:4

**unwind (3)**
39:1,2,16

**up (36)**
28:3,15;30:20;33:3,
9;34:20;36:6,7;37:25;
41:22;45:8;46:1;47:3;
48:21;49:17;52:20;
53:22;54:13;58:13;
61:5;64:20,24;65:6;
69:22;71:22;74:24;
76:23;79:14;80:9,21;
83:19;87:17;88:23;
96:19;98:10,20

**update (1)**
29:6

**updated (1)**
34:25

**upon (9)**
33:15;36:9;37:23;
58:20,21;71:16,24;
72:22;73:2

**up-to-date (1)**
28:11

**use (12)**
33:3;58:17;62:21;
63:5;64:3,3,4,22;
67:17;73:25;84:22;
90:12

**used (6)**
66:1;70:7,12;73:23;
83:18;85:5

**using (1)**
62:16

**usual (3)**
72:23;74:1;98:1

**usually (2)**
75:14;88:21

**utilities (1)**
59:15

**V**

**VA (1)**
12:6

**vaguely (1)**
97:17

**valid (1)**
43:13

**validity (1)**
57:9

**value (5)**
33:25;45:3;74:17;
77:11,22

**VAN (1)**
9:11

**variance (2)**

37:19,19

**variety (1)**
31:9

**Various (4)**
18:3;34:6;35:8;
71:25

**vast (1)**
65:21

**version (6)**
28:11;61:18;62:8,
15;70:21;84:3

**versions (2)**
35:1;99:19

**versus (1)**
75:13

**VESCIO (1)**
22:8

**viable (1)**
56:11

**video (2)**
26:11,14

**view (8)**
42:1;44:7;45:10,10,
24;82:20;85:11,18

**views (2)**
85:12,15

**VINCE (1)**
25:16

**violation (1)**
53:7

**violence (1)**
86:23

**virtual (2)**
32:20;66:13

**virtually (6)**
29:9,11,14;32:15;
51:24;52:10

**volumes (1)**
89:8

**vote (1)**
93:1

**voting (1)**
92:25

**VOUTE (1)**
19:10

**W**

**Wait (5)**
50:14,14,14;98:8;
99:18

**waive (3)**
26:16;73:8,9

**waived (1)**
53:21

**waivers (1)**
59:11

**walk (4)**
61:17;91:7;93:20;
96:18

**WALSH (1)**
25:22

**WALTON (1)**

**Spirit Aviation Holdings**

October 10, 2025

25:23

**wants (2)**
51:15;77:3

**war (1)**
80:24

**Wardwell (4)**
29:3;32:23;58:10;
90:17

**Washington (3)**
8:6;14:15;17:14

**water (1)**
54:18

**waterfall (3)**
64:2,7;66:1

**WATKINS (2)**
14:2,11

**Way (29)**
6:12;29:11;30:1;
44:11;45:7;46:14;
49:4,22;54:7;55:6;
57:14;60:21;61:11;
62:17;71:20,21;72:1,
11;73:12;79:4,12;
80:24;83:18;85:11;
86:22;87:22,24;90:1,
3

**ways (1)**
87:17

**week (5)**
30:15,24;34:4;
37:20;44:4

**weeks (6)**
51:25;52:14;54:10,
10,11;66:25

**WEICHSELBAUM (1)**
14:8

**weigh (3)**
41:23;51:15;82:23

**welcome (1)**
91:14

**West (3)**
6:4;11:17;23:3

**What's (4)**
46:1,12;72:2;97:3

**whenever (1)**
72:15

**Whereupon (1)**
99:25

**WHITE (3)**
15:2,11;19:14

**WHITNEY (3)**
11:14;20:13;69:2

**whole (3)**
40:12;44:16;52:14

**who's (2)**
26:17;27:8

**willful (1)**
76:17

**WILLIAM (1)**
10:9

**willing (3)**
43:24;55:9;56:25

**willingness (1)**

57:21

**WILLKIE (5)**
7:2;26:20;43:1;
66:20;95:6

**Wilmington (6)**
9:3,12;10:3,14,17;
16:6

**WINTHROP (2)**
6:2,10

**wisdom (2)**
40:23;90:1

**wise (2)**
55:12;88:13

**wish (3)**
35:21;92:2;99:17

**wishes (3)**
35:17;68:23;69:24

**withdrew (1)**
31:13

**within (3)**
30:15;82:6;98:7

**without (6)**
39:6;44:2;52:21;
56:4,19;85:2

**WITTENBERG (1)**
25:24

**Wo (1)**
51:19

**wonderful (2)**
29:15;30:6

**wood (1)**
67:2

**word (1)**
76:18

**words (4)**
49:20;54:3;70:7;
80:22

**wordsmith (3)**
72:18;86:22;88:4

**wordsmithing (2)**
73:19;88:13

**work (10)**
26:13;41:9;42:11;
66:24;89:13,22;
92:19;96:13;98:5;
99:9

**worked (6)**
28:8;31:19;61:9;
65:13;91:2,5

**working (8)**
31:9,22;47:1;70:15;
71:4;95:11;96:10;
97:1

**works (2)**
60:22;84:14

**world (1)**
96:20

**worried (1)**
87:16

**worry (1)**
75:7

**worth (5)**
71:5,9;77:19;78:5;

79:23

**wrapping (1)**
49:8

**wrong (1)**
32:4

### X

**XIA (1)**
25:25

### Y

**Yards (2)**
11:4;19:21

**years (1)**
45:6

**year's (1)**
29:9

**Yep (1)**
65:10

**yesterday (1)**
42:23

**York (20)**
5:5,19;6:5;7:5,19;
9:5;10:5;11:6,18;
12:17;13:17;14:5;
15:5;19:22;20:7;
21:13,19,20;23:4;
26:4

### Z

**ZACHARY (1)**
9:18

**ZATZ (1)**
15:8

**Zoom (3)**
27:4,6;91:25

### 0

**06510 (1)**
20:16

**08543 (1)**
19:5

### 1

**1 (3)**
5:18;7:18;21:19

**1.33 (1)**
36:6

**10 (3)**
13:6;26:4;81:5

**10,000 (2)**
67:25;68:19

**100 (4)**
9:14;10:16;12:15;
77:6

**1000 (1)**
14:14

**10001 (4)**

5:5;11:6;19:22;
23:4

**10004 (3)**
5:19;9:5;21:20

**10016 (1)**
10:5

**10017 (2)**
12:17;13:17

**10019 (4)**
6:5;7:5;11:18;20:7

**10020 (3)**
14:5;15:5;21:13

**10036 (1)**
7:19

**102 (1)**
77:23

**104 (1)**
78:18

**105 (1)**
79:16

**1060 (1)**
19:14

**108 (1)**
81:1

**10th (1)**
28:11

**11 (11)**
26:5;29:14;41:20;
48:7;59:25;75:17,22;
76:3;81:16,19;91:21

**111 (1)**
81:13

**1113 (1)**
37:12

**117 (1)**
82:5

**118 (1)**
82:14

**119 (1)**
83:4

**12 (2)**
62:16;77:16

**12:03 (1)**
99:25

**12:05 (1)**
99:24

**120 (4)**
33:3;58:18,19;
62:20

**1201 (1)**
16:4

**1221 (3)**
15:4;16:15;21:12

**123 (1)**
83:24

**126 (1)**
84:1

**127 (1)**
84:7

**1271 (1)**
14:4

**13 (1)**
77:15

**130 (3)**
62:20;84:21;86:5

**132 (1)**
85:22

**133 (1)**
86:2

**138 (1)**
86:7

**13th (1)**
36:15

**14 (3)**
63:23;77:16;84:2

**145 (1)**
86:6

**14b (1)**
66:4

**15 (1)**
77:17

**150 (2)**
21:4;91:15

**1500 (1)**
18:5

**150-million-dollar (1)**
95:14

**155 (5)**
71:21;72:2,5,16;
79:8

**15th (1)**
20:15

**16 (1)**
73:24

**1600 (2)**
12:16;16:5

**1634 (1)**
17:12

**16th (3)**
98:14,15,20

**17 (2)**
74:7;85:22

**170 (1)**
19:12

**171 (20)**
71:15,21;73:24;
74:7;75:13;77:6,24;
78:18;79:16;81:1,13;
82:5,14;83:4,24;84:2,
7,21;86:5,7

**1722 (1)**
18:4

**1748 (1)**
20:3

**1800 (2)**
8:14;18:15

**185 (1)**
91:23

**1900 (1)**
22:20

**1905 (1)**
22:12

**19103 (1)**
22:13

**192 (1)**
91:24

**Spirit Aviation Holdings**

October 10, 2025

**194 (3)**
 34:4;35:16;70:22
**195 (1)**
 20:14
**19803 (1)**
 10:17
**19899 (1)**
 16:6
**1st (2)**
 33:19;34:3

**2**

**2 (3)**
 71:7;88:15;90:18
**200 (3)**
 15:13;33:14;36:8
**20004 (1)**
 14:15
**20006 (2)**
 8:6;17:14
**2001 (1)**
 8:5
**201 (1)**
 22:19
**21 (1)**
 86:7
**211 (1)**
 34:8
**21d (1)**
 88:8
**21k (1)**
 69:7
**22 (1)**
 64:11
**220 (1)**
 6:13
**22102 (1)**
 12:6
**224 (1)**
 33:6
**225 (1)**
 22:3
**229 (1)**
 97:23
**23 (1)**
 75:14
**2300 (1)**
 8:14
**231 (1)**
 28:19
**242 (3)**
 35:2;36:22;62:6
**243 (2)**
 28:21;91:1
**244 (2)**
 28:21;90:25
**27 (2)**
 77:24;93:17
**276 (1)**
 36:22
**28202 (1)**
 9:15

**29 (1)**
 78:20
**29th (2)**
 98:15,22
**2g (1)**
 63:11

**3**

**3 (3)**
 65:13;90:18;96:4
**30 (1)**
 79:16
**300 (1)**
 17:13
**301 (1)**
 17:4
**3036 (1)**
 19:4
**30th (1)**
 33:2
**31 (2)**
 6:4;63:3
**315 (1)**
 19:13
**32 (1)**
 93:17
**3205 (1)**
 10:15
**324 (1)**
 6:12
**330 (2)**
 43:12;56:9
**33131 (1)**
 15:14
**33134 (1)**
 21:6
**33156 (1)**
 18:16
**33480 (1)**
 6:14
**335 (1)**
 13:16
**34 (2)**
 62:16;81:4
**350 (1)**
 29:12
**350-million-dollar (1)**
 48:9
**36 (3)**
 36:21;81:7,13
**39th (1)**
 11:5

**4**

**4 (2)**
 40:3;71:14
**400 (14)**
 43:11,13;46:1;
 47:13;49:7,16;53:20;
 54:6,24,24;56:3,12,
 16,18

**400- (1)**
 43:18
**4000 (1)**
 16:16
**4001-2 (1)**
 38:24
**4001-24a (1)**
 84:13
**4001-2g5 (2)**
 39:14;77:7
**400S (1)**
 12:5
**42nd (1)**
 20:6
**43 (1)**
 82:15
**45202 (2)**
 17:5;22:21
**475 (2)**
 33:9;36:8
**48 (1)**
 83:24
**4c (4)**
 61:25;62:19,20;
 63:3
**4i (1)**
 72:21
**4th (1)**
 17:4

**5**

**5 (8)**
 40:3;44:19;46:12;
 47:11,11,17;49:6;
 50:1
**50/51 (1)**
 63:24
**500 (1)**
 57:9
**506c (3)**
 59:10;72:23;73:16
**51 (2)**
 11:17;63:24
**52nd (2)**
 6:4;11:17
**548 (1)**
 77:12
**55 (3)**
 11:4;19:21;84:22
**551 (2)**
 78:24;81:11
**552 (1)**
 59:10
**55401 (1)**
 22:4
**555 (1)**
 14:13
**572,352,298 (1)**
 91:17

**6**

**6 (1)**
 78:20
**6:15 (1)**
 94:8
**600 (1)**
 20:5
**603 (1)**
 62:6
**63 (1)**
 86:7
**66 (1)**
 5:4
**67 (1)**
 64:12

**7**

**708 (1)**
 13:5
**725 (1)**
 21:5
**75201 (1)**
 8:15
**75218 (1)**
 18:6
**76 (1)**
 69:7
**77 (1)**
 69:8
**77002 (1)**
 13:7
**77010 (1)**
 16:17
**787 (1)**
 7:4
**79 (1)**
 71:14
**7950 (1)**
 12:4
**7b (1)**
 79:17
**7th (1)**
 34:7

**8**

**8th (2)**
 34:12;36:10

**9**

**90 (1)**
 10:4
**91 (1)**
 73:24
**9130 (1)**
 18:14
**92 (1)**
 74:7
**98 (1)**
 75:13