UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| SPIRIT AVIATION HOLDINGS, INC., *et al.*, | Case No. 25-11897 (SHL) |
| Debtors.[1] | Jointly Administered |

**ORDER GRANTING DEBTORS'
SECOND OMNIBUS MOTION TO REJECT
CERTAIN EQUIPMENT LEASES PURSUANT
TO SECTION 365 OF THE BANKRUPTCY CODE**

Upon the motion (the "**Motion**")[2] of Spirit Aviation Holdings, Inc. and its direct and indirect subsidiaries (collectively, the "**Debtors**"), each of which is a debtor and debtor in possession in the above-captioned Chapter 11 Cases, for entry of an order (this "**Order**"), pursuant to section 365 of the Bankruptcy Code and Bankruptcy Rule 6006 for authorization to reject the leases (the "**Engine Agreements**") for aircraft equipment identified on Schedule 1 attached hereto (collectively, the "**Excess Equipment**")[3] and upon consideration of the First Day Declaration and the Declaration of Fred Cromer; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 1334; and consideration of the Motion and the requested relief being a core proceeding the Bankruptcy Court can determine pursuant to 28 U.S.C. § 157(b)(2); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided and no

---

[1] The Debtors' names and last four digits of their respective employer identification numbers are as follows: Spirit Aviation Holdings, Inc. (1797); Spirit Airlines, LLC (7023); Spirit Finance Cayman 1 Ltd. (7020); Spirit Finance Cayman 2 Ltd. (7362); Spirit IP Cayman Ltd. (4732); and Spirit Loyalty Cayman Ltd. (4752). The Debtors' mailing address is 1731 Radiant Drive, Dania Beach, FL 33004.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

[3] Such Excess Equipment includes all equipment described in Bankruptcy Code Section 1110(a)(3)(A)(1).

other or further notice needing to be provided; and the relief requested in the Motion being in the best interests of the Debtors and their estate and creditors; and the Court having reviewed the Motion and having held a hearing before the Court with appearances of parties in interest noted in the transcript thereof (the "**Hearing**"); and the Court having considered the arguments of counsel, and the evidence proffered and adduced, at the Hearing; and the Court having determined that the legal and factual bases set forth in the Motion, the First Day Declaration and the Declaration of Fred Cromer and at the Hearing establish just cause for the relief granted herein; and the Court having found that the relief requested in the Motion represents a sound exercise of the Debtors' business judgment, and is in the best interests of the Debtors, their creditors, their estates, and all other parties in interest; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor, it is hereby ORDERED that:

1. The relief requested in the Motion is hereby granted to the extent provided herein.

2. Pursuant to Section 365 of the Bankruptcy Code and Bankruptcy Rule 6006, the rejection of each of the Engine Agreements for Excess Equipment listed on Schedule 1 attached hereto is authorized and approved *nunc pro tunc* to the relevant Effective Date (as set forth next to each item of Excess Equipment on Schedule 1 attached hereto).

3. The Debtors shall, on or prior to the Effective Date, make available to the applicable Lessor(s) or other parties with interests and/or rights in and to the Excess Equipment (such persons or entities, which include the Lessors or owner participants or, as applicable, lenders or insurers possessing rights and/or security interests in the Excess Equipment, the "**Interested Parties**") at the then-current location of each such piece of Excess Equipment or such then-current location of the Equipment Records (as defined below), or, if applicable and

subject to the terms set forth below, the Designated Return Location (as defined herein), both (a) the Excess Equipment and (b) all technical records, documents, reports, and statements relating to the Excess Equipment (the "**Equipment Records**")[1] that are in the Debtors' possession or control in their then "as is, where is" condition and, with respect to the Equipment Records, without certification or signature and without performing any independent verification or audit thereof; *provided that* upon the applicable Interested Party's request and at such Interested Party's sole cost and expense (and, to the extent incurred, the applicable Interested Party shall reimburse the Debtors for the Debtors' reasonable actual out-of-pocket costs, including, but not limited to, wages for any work performed by the Debtors to effect such matters) and, subject to the Debtors' operational and commercial limitations, the Debtors shall: (i) provide commercially reasonable assistance, or cause their agents to provide commercially reasonable assistance, to such Interested Party in relation to the Equipment Records relating to the Excess Equipment, (ii) provide commercially reasonable cooperation to such Interested Party to assign any remaining assignable manufacturer warranties, engine care programs, and all related claims, or otherwise to obtain the benefit thereof, to such Interested Party, and (iii) subject to the Excess Equipment being in serviceable condition (or available for shipment), provide commercially reasonable assistance to deliver the Excess Equipment and the Equipment Records from its or their then current location to a reasonable location selected by the Lessor within the continental United States (the "**Designated Return Location**"). Unless provided for in any mutually agreed Rejection Terms Agreement (as defined herein) or another order of this Court, nothing in this order shall require the Debtors to perform any repairs on any item of

---

[1] Such Equipment Records includes all records and documents described in Bankruptcy Code Section 11110(a)(3)(B).

3

Excess Equipment.

4. Upon written request from an affected Lessor, the Debtors shall cooperate reasonably with such Lessor with respect to the execution of, or provision of, information required for a lease termination document or other documentation, as appropriate, to be filed with the aviation authority in the applicable jurisdiction in connection with such Excess Equipment, *provided that* the affected Lessor shall be solely responsible for all costs associated with such documentation and for the filing thereof with such relevant aviation authority or register.

5. Once the affected Lessor retrieves or takes control of its Excess Equipment, such Lessor or the authorized party under a power of attorney provided by the Debtors, if any, shall be permitted to request the cancellation, or transfer to a party designated by such Lessor, of such Excess Equipment's registration on an aviation authority's register or with any other applicable registration authority, as applicable, *provided that* the affected Lessor shall be solely responsible for all costs associated with such request or transfer.

6. The Debtors shall (i) maintain their current insurance coverage and continue the existing storage maintenance program, if applicable, for each item of Excess Equipment until the earlier of (a) the fifteenth (15th) day after the later of the date of entry of the Order and the relevant Effective Date and (b) the date on which the appropriate Lessor takes possession of such Excess Equipment and (ii) thereafter cease insuring and maintaining such Excess Equipment unless the Debtors and applicable Interested Parties agree otherwise in accordance with, as applicable, any Rejection Terms Agreement.

7. If the Lessor or Interested Party affected by the rejection of an Engine Agreement does not retrieve or otherwise take control of the relevant Excess Equipment within 15 days

4

after the later of the date of entry of the Order and the relevant Effective Date or such other date that the Debtors and applicable Interested Parties mutually agree otherwise in accordance with any Rejection Terms Agreement, such Lessor shall be responsible to the Debtors for the subsequent reasonable actual out-of-pocket costs of, and all risks attendant to, maintaining, insuring and storing such equipment. If the Lessor does not remove the Excess Equipment or otherwise contract with the Debtors or a third party for storage of the Excess Equipment in accordance with this Order, the Debtors may file a motion to compel removal of the Excess Equipment and/or payment to the Debtors of storage and other attendant costs.

8. For the avoidance of doubt, except as otherwise provided herein or in another order of this Court, the Excess Equipment and Equipment Records will be made available to the applicable Interested Parties in "as is, where is" condition and the Debtors specifically make no representations or warranties regarding the Excess Equipment or Equipment Records, their condition or the state of their title. If any of the Excess Equipment happens to be non-serviceable, the Debtors are under no obligation to repair any such Excess Equipment to make it serviceable.

9. Upon entry of this Order, the Debtors shall cooperate with the applicable Lessor to provide such Lessor with reasonable access, subject to the Debtor's operational and commercial limitations, to inspect the Excess Equipment and obtain access to records concerning the Excess Equipment at the sole cost and expense of such Lessor; *provided, however,* (a) the Lessor shall provide the Debtors reasonable written notice prior to such inspection and (b) such inspection shall not unreasonably interfere with the commercial operations of the Excess Equipment or the Debtors and the scope and nature of such inspection(s) shall be as set forth in the applicable Engine Agreement. For the avoidance of doubt, the Debtors shall use

5

commercially reasonable efforts to schedule such inspections and respond to any requests for records or information concerning the Excess Equipment within a commercially reasonably time period but in no event later than the later of (i) 5 business days following the receipt of any request therefor and (ii) a later date agreed to between the Debtors and the applicable Interested Parties.

10. To the extent necessary, the automatic stay of section 362 of the Bankruptcy Code (the "**Automatic Stay**") is hereby modified to allow the Debtors and the applicable Lessors and other Interested Parties to effectuate the provisions of this Order and to access, retrieve, transfer, move or dispose of the Excess Equipment subject to the rejected Engine Agreements. The Automatic Stay is hereby modified to permit the application of any security deposit held by a Lessor or other Interested Party with respect to the Engine Agreements to the extent permitted by and in accordance with the terms of the Engine Agreements or other documents entered into in connection with the Engine Agreements against the obligations of the Debtors thereunder. In addition to the foregoing modifications of the Automatic Stay, the Automatic Stay is hereby also modified for the purpose of aircraft or aircraft-related equipment registry administration, solely and for no other purpose than to allow the Lessor or other Interested Party to cancel or terminate any such Engine Agreement, and to allow the Lessor and other Interested Parties to deliver any notices contemplated by such Engine Agreement. Nothing herein shall affect the scope of the Automatic Stay with respect to other matters, including, without limitation, those relating to claims asserted against the Debtors by any other person or entity.

11. Notwithstanding anything to the contrary in this Order, if a Lessor or other Interested Party requests further reasonable logistical or technical assistance or cooperation from the Debtors in connection with these return procedures, including access to electronically

accessible records, the Debtors shall engage in good faith negotiations and make commercially reasonable efforts, subject to the Debtors' operational and commercial limitations, to try to reach agreement for such terms (any such agreement a "**Rejection Terms Agreement**"). The Debtors are authorized (but not directed) to enter into such Rejection Terms Agreements without further approval of the Court; *provided, however*, that any such agreement (i) shall provide for the Debtors to receive prompt reimbursement from the applicable Interested Party for any reasonable actual out-of-pocket expenses associated with such logistical or technical assistance or cooperation that the Debtors agree to provide and (ii) shall not require the Debtors to make any representations or warranties.

12.    Nothing herein shall prejudice the rights of (i) any Lessor or other Interested Party to (a) assert damages as part its claim for rejection damages, if any, (b) assert damages for failure to satisfy all contractual return or turnover provisions of the applicable Engine Agreement, (c) assert a claim or entitlement to payment for post-petition rent, supplemental rent or other obligations under the applicable Engine Agreement and/or as provided under applicable law, (d) assert a claim for any administrative expenses or other priority claim that arise out of or relate to any Engine Agreement and/or as provided under applicable law, including, without limitation, for the value of any parts removed on or after the Petition Date, (e) if the Debtors fail to return any Excess Equipment or Equipment Records as provided hereunder and/or as required under the Bankruptcy Code, to seek enforcement or damages relating thereto in accordance with the provisions of the Bankruptcy Code or (f) the rights of any of the Lessors and/or Interested Parties against any other person or entity under any agreement and/or applicable law; or (ii) the Debtors or any other party to object to any such claims or actions or to assert any claims relating to this Order, the procedures contemplated herein or any Rejection Terms Agreement.

13. The Debtors are authorized to execute and deliver all instruments and documents and take any additional actions as are necessary or appropriate to implement and effectuate the rejections approved hereby.

14. For the avoidance of doubt, in effectuating the terms of this Order, including any Rejection Terms Agreement, if any, and to the extent not otherwise specified herein, each Debtor, Lessor and Interested Party shall use commercially reasonable efforts to cooperate to implement such returns and the other terms of this Order, subject to the Debtors' operational and commercial limitations.

15. Claims arising out of any rejection effected pursuant to these procedures must be timely filed in accordance with any order pursuant to Bankruptcy Rule 3003(c) establishing a deadline by which prepetition general unsecured claims must be filed (the "**Bar Date**"), on or before the later of (i) the Bar Date, or (ii) 30 days after the Effective Date with respect to the item of Excess Equipment to which such claim relates. Any claim not timely filed will be irrevocably barred.

16. Upon mutual agreement with the applicable Lessor(s) or Interested Parties, the Debtor is authorized to revise Schedule 1 hereto to update the applicable Effective Date to a later date or to remove the respective Excess Equipment from Schedule 1 on or before the applicable Effective Date. The Debtor shall file a notice with the Court with the revised Schedule 1 reflecting these changes (if any).

8

17. The notice procedures set forth in the Motion are good and sufficient notice and satisfy Bankruptcy Rules 2002(a), 6006, 6007 and 9014 by providing the counterparties with a notice and an opportunity to object and be heard at a hearing.

Dated: November 20, 2025
White Plains, New York

*/s/ Sean H. Lane*

---

THE HONORABLE SEAN H. LANE
UNITED STATES BANKRUPTCY JUDGE

## Schedule 1

## EXCESS EQUIPMENT[1]

| Row | ESN | Manufacturer | Engine Type | Lessor/Lender[2] | Surrender Location | Rejection Effective Date |
|---|---|---|---|---|---|---|
| 1 | 15204 | IAE | V2527-A5 | Gryphon | DTW | 10/27/2025 |
| 2 | 15319 | IAE | V2527-A5 | ELFC | Vortex Aviation Davie, FL | 10/27/2025 |
| 3 | 17583 | IAE | V2527-A5 | ELFC | DTW | 10/27/2025 |

---

[1] For each Engine Agreement that is being rejected, each other related transaction document to which a Debtor is a party that is integral to such leasing transaction (including, without limitation, any lessee or sublessee consent in connection with any lease) also will be deemed part of this Schedule 1 and shall be rejected with respect to such piece of Excess Equipment if the related Engine Agreement is rejected. References to any agreement to be rejected are to the applicable agreement and other operative documents, as may have been amended, modified or supplemented from time to time and as is in effect as of the date hereof. As a matter of administrative convenience, in some cases the Debtors have listed the original parties to the documents without taking into account any succession of trustees or any other transfers from one party to another. The fact that the current parties to a particular agreement may not have been named in this Schedule is not intended to change the treatment of the documents. The current parties to the agreements are being noticed pursuant to this Notice.

[2] Notice information for each Lessor can be found in Schedule A to Schedule 1.

## Schedule A

### Lessor Notice Information

| **Gryphon** | **ELFC** |
|---|---|
| Gryphon Aviation Leasing<br>101 NE 3rd Ave #610<br>Fort Lauderdale, FL 33301<br>Attention: Ben Rosenbaum, Steven Patch<br>Email: ben@gryphonleasing.com<br>   spatch@gryphonleasing.com<br><br>SAE Legal PLLC<br>433 Plaza Real, Suite 275<br>Boca Raton, Fl 33432<br>Attention: Amanda Cutler<br>Email: amanda@saelegal.com | Engine Lease Finance Corporation<br>Attention: Corporation Secretary<br>Building 156<br>Shannon Free Zone<br>Shannon<br>County Clare, Ireland<br>V14 VH70<br>Tel: +353 61 363 555<br>Email: notices@elfc.com<br><br>Bank of Utah, not in its individual capacity<br>   but solely as owner trustee<br>Attention: Corporate Trust Services<br>50 South 200 East, Suite 110<br>Salt Lake City, UT 84111<br>Tel: (801) 924-3690<br>Fax: (801) 924-3630<br>Email: corptrust@bankofutah.com<br><br>Holland & Knight LLP<br>Attention: Barbra Parlin, Brian Smith, and<br>   Christopher Bailey<br>787 Seventh Avenue, 31st Floor<br>New York, NY 10019<br>Tel: (212) 513-3200<br>Fax: (212) 385-9010<br>Email: barbra.parlin@hklaw.com<br>   brian.smith@hklaw.com<br>   chris.bailey@hklaw.com |