WILLIAM K. HARRINGTON
United States Trustee, Region 2
U.S. Department of Justice
Office of the United States Trustee
One Bowling Green, Room 534
New York, New York 10004
Telephone: (212) 510-0500
By:  Shara Cornell, Trial Attorney
        Mark Bruh, Trial Attorney

**Hearing Date:  April 15, 2026**
**Hearing Time: 10:00 a.m.**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re:<br><br>SPIRIT AVIATION HOLDINGS, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 25-11897-SHL<br><br>(Jointly Administered) |

**OBJECTION AND RESERVATION OF RIGHTS OF THE UNITED STATES TRUSTEE
TO THE DEBTORS' MOTION TO APPROVE THE (I) ADEQUACY OF
INFORMATION IN THE DISCLOSURE STATEMENT, (II) SOLICITATION
AND VOTING PROCEDURES, (III) FORMS OF BALLOTS, NOTICES AND
NOTICE PROCEDURES IN CONNECTION THEREWITH, AND
(IV) CERTAIN DATES WITH RESPECT THERETO**

**TO THE HONORABLE SEAN H. LANE,
UNITED STATES BANKRUPTCY JUDGE:**

William K. Harrington, the United States Trustee for Region 2 (the "**United States Trustee**"), hereby files this objection (the "**Objection**") to the *Motion of Debtors to Approve the (I) Adequacy of Information in the Disclosure Statement, (II) Solicitation and Voting Procedures, (III) Forms of Ballots, Notices and Notice Procedures in Connection Therewith, and (IV) Certain Dates with Respect Thereto* [ECF No. 851] (the "**Disclosure Statement Motion**" or the "**Motion**").

---

[1] The Debtors' names and last four digits of their respective employer identification numbers are as follows: Spirit Aviation Holdings, Inc. (1797); Spirit Airlines, LLC (7023); Spirit Finance Cayman 1 Ltd. (7020); Spirit Finance Cayman 2 Ltd. (7362); Spirit IP Cayman Ltd. (4732); and Spirit Loyalty Cayman Ltd. (4752). The Debtors' mailing address is 1731 Radiant Drive, Dania Beach, FL 33004.

The Motion seeks approval of the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of Spirit Aviation Holdings, Inc. and its Affiliates* [ECF No. 850] (as amended or modified from time to time, the "**Disclosure Statement**").[2] In support thereof, the United States Trustee represents and alleges as follows:

## I.    INTRODUCTION

The purpose of a disclosure statement is to provide enough information to parties to allow stakeholders—such as creditors in bankruptcy, investors in securities, or buyers in real estate—to make an informed decision regarding a proposed plan of reorganization. The Disclosure Statement does not disclose sufficient facts concerning the Debtors' decision to pursue the proposed Plan. It is public knowledge that the Debtors have entertained alternative solutions, including, but not limited to, a going concern sale to competing airlines, such as Frontier. However, the Disclosure Statement does not address these alternatives or why the Debtors chose the current path. Moreover, the Disclosure Statement merely provides a one paragraph description of the prior bankruptcy filing without describing the prior confirmed plan, how it was effectuated, and why the second filing was necessary and different. Considering that this is the Debtors' second bankruptcy filing in less than a year and second proposed plan of reorganization in the same amount of time, parties are entitled to know through the Disclosure Statement how the Debtors arrived at this point and why this path is superior to tangible alternatives.

In addition, the Plan attached to the Disclosure Statement includes overbroad and arguably inappropriate non-consensual non-debtor third party releases and exculpation provisions. However, the United States Trustee is cognizant of this Court's prior rulings in other cases including its rulings

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Disclosure Statement.

2

that such objections are properly raised at confirmation and has agreed to reserve these issues for confirmation.

Accordingly, unless the Debtors amend the Disclosure Statement to provide adequate information, the Disclosure Statement Motion should be denied.

## II. BACKGROUND

1.     On August 29, 2025 (the "**Petition Date**"), the Debtors each commenced a voluntary case under chapter 11 of the Bankruptcy Code.

2.     The Debtors continue to operate their businesses and manage their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.     On September 17, 2025, the United States Trustee appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code. ECF No. 117.

4.     On March 13, 2026, the Debtors filed the Motion [ECF No. 852], the Disclosure Statement [ECF No. 850], and *Joint Chapter 11 Plan of Reorganization of Spirit Aviation Holdings, Inc.. and its Debtor Affiliates* (as amended or modified from time to time, the "**Plan**") [ECF No. 848].

5.     The Disclosure Statement provides that Class 6 consisting of "General Unsecured Claims" will receive the following as distributions under the Plan, "All General Unsecured Claims shall be cancelled, released, extinguished, and otherwise eliminated, and Holders of General Unsecured Claims shall not receive any Plan Distributions or retain any interest in property on account of such General Unsecured Claims." The "Projected Allowed Amount" for Class 6 is "$5.5 billion — 6.3 billion." Disclosure Statement at Art.1.D.

6.     The Disclosure Statement further provides,

Amounts that Holders of Claims or Interests in Impaired Classes would receive in a hypothetical chapter 7 liquidation are discussed in the liquidation analysis of the

3

Debtors prepared by the Debtors' management with the assistance of the Debtors' financial advisor (the "**Liquidation Analysis**"), which is attached hereto as **Exhibit D**. As described in **Exhibit D**, the Debtors developed the Liquidation Analysis based on forecasted values as of [●], unless otherwise noted in the Liquidation Analysis. The recoveries may change based on further refinements of Allowed Claims and as the Debtors' claims objection and reconciliation process progresses.

As described in the Liquidation Analysis, underlying the analysis are a number of estimates and assumptions that, although developed and considered reasonable by the Debtors' management and financial advisor, are inherently subject to significant economic and competitive uncertainties and contingencies beyond the control of the Debtors and their management or a hypothetical chapter 7 trustee. The Liquidation Analysis is based on assumptions regarding liquidation decisions that are subject to change. Accordingly, the values reflected in the Liquidation Analysis might not be realized if the Debtors were, in fact, to undergo a liquidation.

*Id*. at Article V.D.2 (emphasis in original).

7.      On April 6, 2026, four days[3] in advance of the deadline to object to the Disclosure Statement Moment, the Liquidation Analysis was filed. ECF No. 933.

8.      The Disclosure Statement provides limited discussion and conclusory statements[4] including:

    a.  The Debtors believe that any alternative to confirmation of the Plan, such as liquidation under chapter 7 of the Bankruptcy Code, could result in the loss of hundreds of jobs, the potential demise of the Company's well-recognized and respected brands, the loss of significant value (and a corresponding reduction in the distributions to Holders of Claims in certain Classes), and the potential for delay, litigation, and additional costs.

    *Id*. at Article I.A.

    b.  It is possible that any alternative may provide Holders of Claims with less than they would have received pursuant to the Plan. For a more detailed description of the consequences of extended Chapter 11 Cases, or of a hypothetical liquidation scenario, see Article V of this Disclosure Statement, and the Liquidation Analysis attached hereto as Exhibit D.

---

[3] The deadline to object to the Disclosure Statement was scheduled for April, 10, 2026.

[4] Conclusory statements are inadequate to provide a reasonable hypothetical investor sufficient detail to make an informed decision.

*Id*. at Article I.F.

c.  As the Plan and Liquidation Analysis indicate, Confirmation of the Plan will provide each Holder of an Allowed Claim in an Impaired Class with an equal or greater recovery than the value of any distributions if the Chapter 11 Cases were converted to cases under chapter 7 of the Bankruptcy Code.

*Id*. at Article V.D.3.

d.  The Debtors believe that any alternative to Plan Confirmation could result in significant delay, litigation, and additional costs, as well as a reduction in the distributions to Holders of Claims in certain Classes.

*Id*. at Conclusions and Recommendations, pg. 84 of 91.

9.      With respect to the Debtors' first chapter 11 filing, the Disclosure Statement provides the following conclusory statement:

In the fall of 2024, in light of large upcoming debt maturities and external macroeconomic pressures, Spirit reached a deal with substantially all of its bondholders, who equitized approximately $800 million of debt and injected $350 million of new liquidity through an equity rights offering. On November 18, 2024, Spirit Airlines, Inc. and certain of its subsidiaries filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (collectively, the "Prior Chapter 11 Cases"). Spirit emerged from bankruptcy on March 12, 2025.

*Id*. at Article III.C.

10.      The Disclosure Statement makes no mention of "Frontier," or the sale or marketing of the Debtors' assets. *See*, Disclosure Statement.

## III. ARGUMENT

### A.  **Standards of Adequate Disclosure**

In order for this Court to approve the Disclosure Statement, this Court must find that it contains adequate information to enable a reasonable creditor/investor typical of the Debtors' claim holders to make an informed judgment about the Plan. *See* 11 U.S.C. § 1125(a). The Bankruptcy Code defines "adequate information" as:

> Information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical reasonable investor of the relevant class to make an informed judgment about the plan ....

11 U.S.C. § 1125(a)(1); *see also, Momentum Mfg. Corp. v. Employee Creditors Comm. (In re Momentum Mfg. Corp.),* 25 F.3d 1132, 1136 (2d Cir. 1994); *Kunica v. St. Jean Fin., Inc.,* 233 B.R. 46, 54 (S.D.N.Y. 1999); *In re Stanley Hotel, Inc.*, 13 B.R. 926, 929-30 (Bankr. D. Colo. 1981) ("[T]he information to be provided should be comprised of all those factors presently known to the plan proponent that bear upon the success or failure of the proposals contained in the plan."); *In re Ferretti*, 128 B.R. 16, 19 (Bankr. D.N.H. 1991) ("[A] proper disclosure statement must clearly and succinctly inform the average unsecured creditor what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution.").

The purpose of the disclosure statement is to give creditors enough information so that they can make an informed choice of whether to approve or reject the debtor's plan. *In re Duratech Indus.*, 241 B.R. 291, 298 (Bankr. E.D.N.Y.), aff'd, 241 B.R. 283 (E.D.N.Y. 1999). "[O]f prime importance in the reorganization process is the principle of disclosure. The [Bankruptcy] Code obliges a Debtor to engage in full and fair disclosure, providing to creditors 'information of a kind, and in sufficient detail, as far as is reasonably practicable ... that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan ....'" *Momentum Mfg. Corp. v. Employee Creditors Comm. (In re Momentum Mfg. Corp.)*, 25 F.3d 1132, 1136 (2d Cir. 1994) (quoting 11 U.S.C. § 1125(a)(1)); *Sure-Snap Corp. v. State Street Bank & Trust Co.*, 948 F.2d 869, 873 (2d Cir. 1991) (Section 1125(b) "requires Chapter 11 petitioners to file a mandatory disclosure statement listing all

6

'adequate information' which would enable holders of claims to take an informed position on a proposed reorganization plan."); *In re McLean Indus., Inc.*, 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987) ("substantial financial information with respect to the ramifications of any proposed plan will have to be provided to, and digested by, the creditors and other parties in interest in order to arrive at an informed decision concerning the acceptance or rejection of a proposed plan"). Although the adequacy of the disclosure is determined on a case-by-case basis, the disclosure must "contain simple and clear language delineating the consequences of the proposed plan on [creditors'] claims and the possible [Bankruptcy Code] alternatives ...." *In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 981 (Bankr. N.D.N.Y. 1988).

Section 1125 of the Bankruptcy Code is biased towards more disclosure rather than less. *See In re Crowthers McCall Pattern, Inc.*, 120 B.R. 279, 300 (Bankr. S.D.N.Y. 1990). The "adequate information" requirement merely establishes a floor, and not a ceiling for disclosure to voting creditors. *In re Adelphia Commc'ns Corp.*, 352 B.R. 592, 596 (Bankr. S.D.N.Y. 2006) (citing *Century Glove, Inc. v. First American Bank of New York*, 860 F.2d 94, 100 (3d Cir. 1988)). For the reasons set forth below, the Disclosure Statement does not provide sufficient disclosures appropriate to the circumstances of these cases.

**B. <u>The Disclosure Statement is Inadequate</u>**

In this case, despite the Disclosure Statement's length, the Disclosure Statement does not adequately disclose relevant and material information about the proposed Plan. As such, unless the Disclosure Statement is modified in accordance with this Objection, the Disclosure Statement Motion should be denied.

The Disclosure Statement does not provide adequate information concerning the history and genesis of the Plan, including the prior confirmed plan's consummated restructuring transaction

as well as current alternative plans. Importantly, the Disclosure Statement does not provide adequate information concerning the differences among the current Plan and alternatives such as a liquidating plan or a chapter 7 liquidation. There is no information as to why the Plan put forth is a better approach or why a traditional sale and or liquidation of the Debtors' assets would not be more beneficial to stakeholders. There is also no information as to what offers for purchase the Debtors may or may not have entertained during the bankruptcy or in advance of the Petition Date that may have led the Debtors and their professionals to determine that the current Plan is the best business decision for the Debtors or is maximizing recovery for stakeholders. Generalized statements do not provide adequate information to inform voting creditors whether they ought to vote in favor of the Plan, or reject the Plan with hopes of an alternative plan. Indeed, the Disclosure Statement must inform the average creditor what it is going to get and when, and what contingencies there are that might intervene. *Ferretti*, 128 B.R. at 19.

Moreover, the Liquidation Analysis was filed a mere four days in advance of the objection deadline for the Disclosure Statement Motion, providing minimal time for interested parties to review, analyze, question the information, and confer with counsel regarding the information contained therein. "Case law holds that in order to provide adequate information; the disclosure statement must contain a liquidation analysis which compares the proposed plan of reorganization with a Chapter 7 liquidation." *See In re Diversified Investors Fund XVII*, 91 B.R. 559, 561 (Bankr. C.D. Cal. 1988) (collecting cases) (emphasis added). A full-fledged liquidation analysis is important here. As noted above, general unsecured creditors are slated to receive no distributions under the Plan. Conclusory statements that "the Plan will provide each Holder of an Allowed Claim in an Impaired Class with an equal or greater recovery than the value of any distributions if the

8

Chapter 11 Cases were converted to cases under chapter 7 of the Bankruptcy Code" is not adequate disclosure. Disclosure Statement at Article V.D.3.

Accordingly, the Disclosure Statement should not be approved.

## IV. RESERVATION OF RIGHTS

The United States Trustee reserves all rights to challenge the Disclosure Statement on the grounds set forth herein and to raise any additional objections at or prior to the Disclosure Statement Hearing should the Disclosure Statement and/or Plan be amended. The United States Trustee reserves all rights to raise any objection to confirmation of the Plan in connection with the hearing to confirm the Plan, including, but not limited to, any provisions related to releases or exculpation.

## V. RELIEF REQUESTED

In the absence of amendments to deal with such matters as are noted above, the United States Trustee recommends that this Court not approve the Disclosure Statement "as containing adequate information." 11 U.S.C. § 1125(b).

WHEREFORE, the United States Trustee respectfully requests that this Court enter an order which denies approval of the Disclosure Statement, or, in the alternative, which directs the Debtors to amend or supplement its Disclosure Statement to cure the objections of the United States Trustee, and for any and all further relief as may be equitable and just.

Dated: New York, New York
April 10, 2026

WILLIAM K. HARRINGTON
UNITED STATES TRUSTEE

By:    /s/ *Shara C. Cornell*
Shara C. Cornell
Trial Attorney
One Bowling Green
New York, New York 10004
Tel. No. (212) 510-0500

9