DEBEVOISE & PLIMPTON LLP
66 Hudson Boulevard East
New York, New York 10001
Tel.: (212) 909-6000
Jasmine Ball
Elie J. Worenklein

*Fleet Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **SPIRIT AVIATION HOLDINGS, INC.,** *et al.*, | **Case No. 25-11897 (SHL)** |
| **Debtors.**[1] | **Jointly Administered** |

**DEBTORS' MOTION FOR ENTRY**
**OF AN ORDER (I) AUTHORIZING THE DEBTORS TO REJECT**
**THEIR REMAINING AIRCRAFT EQUIPMENT LEASES, (II) ESTABLISHING**
**PROCEDURES RELATED THERETO AND (III) GRANTING RELATED RELIEF**

Spirit Aviation Holdings, Inc. and its direct and indirect subsidiaries (collectively, the "**Debtors**," the "**Company**," or "**Spirit**"), each of which is a debtor and debtor in possession in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), respectfully state as follows:

**Preliminary Statement**

1.    As set forth in the *Declaration of Fred Cromer in Support of (I) the Wind-Down Motions and (II) the Motion to Shorten* (the "**Cromer Declaration**"), filed contemporaneously, recent geopolitical events resulted in a massive and sustained increase in fuel prices, and a corresponding rapid and unexpected decline in the Debtors' liquidity situation. Cromer Decl. ¶ 4.

---

[1]    The Debtors' names and last four digits of their respective employer identification numbers are as follows: Spirit Aviation Holdings, Inc. (1797); Spirit Airlines, LLC (7023); Spirit Finance Cayman 1 Ltd. (7020); Spirit Finance Cayman 2 Ltd. (7362); Spirit IP Cayman Ltd. (4732); and Spirit Loyalty Cayman Ltd. (4752). The Debtors' mailing address is 1731 Radiant Drive, Dania Beach, FL 33004.

The Debtors and their advisors searched for increased capital and any sources of savings or liquidity, leaving no option unexplored, while, in parallel, planning for a possible wind-down of operations should it become necessary.  It became clear on Thursday that sufficient incremental liquidity would not be found, and that there were no longer any viable paths to a restructuring or continued operations.  Having fought valiantly for months to reorganize and having all but succeeded with the previously filed plan of reorganization, the Debtors regrettably determined, after consultations with their advisors, the Committee, and certain secured lenders, that the only alternative is to pursue to an orderly wind-down of operations (the "**Wind-Down**").

2.      The Debtors now seek approval of, and authority to implement, the Wind-Down from the Court on an emergency basis pursuant to this Motion and other motions filed contemporaneously.  Throughout the Wind-Down, Spirit's focus will remain on its employees' safety and the realization of the value of the Debtors' assets for the Debtors' creditors.

3.      By this Motion, Spirit requests authority to take necessary steps to wind down its fleet operations by rejecting its remaining aircraft equipment leases pursuant to section 365 of the Bankruptcy Code.  Spirit's fleet is large and complex and therefore requires special procedures to implement the Wind Down in an orderly and cost-effective manner in order to maximize the remaining value of the Debtors' assets.  The requested authorizations and procedures will also ensure a safe and efficient conclusion of Spirit's business.  Contemporaneously herewith, Spirit is filing motions with respect to Spirit's owned fleet equipment and the remainder of the Wind-Down.[2]

---

[2]   *See Debtors' Motion For Entry of an Order (I) Authorizing the Debtors to Sell or Abandon Their Remaining Owned Aircraft, Engines and Other Related Equipment, (II) Establishing Procedures Related Thereto and (III) Granting Related Relief* and *Motion of the Debtors for Entry of an Order (I) Authorizing the Debtors to Wind Down Operations, (II) Approving the Debtors' Use of Cash Collateral and Amendments to the DIP Credit Agreement and Final DIP Order, (III) Authorizing Modification or Termination of the Debtors' Employee*
(…continued)

2

**Relief Requested**

4.      The Debtors respectfully request that this Court enter an order, substantially in the form attached hereto as Exhibit A (the "**Leased Fleet Wind-Down Order**"), (i) authorizing the Debtors, pursuant to, inter alia, sections 363, 365, and 554 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 6004, 6006, 6007, and 9007 of the Federal Rules of Bankruptcy Procedures (the "**Bankruptcy Rules**"), Rules 6004-1, 6006-1, and 6007-1 of the Local Rules for the United States Bankruptcy Court for the Southern District of New York (the "**Local Rules**"), to reject the leases and related executory contracts (each an "**Equipment Lease**") with respect to the Debtors' remaining leased aircraft (each a "**Leased Aircraft**"), leased spare engines (each a "**Leased Spare Engine**"), and leased "green time" program engines (each a "GTE Engine" and together with the Leased Aircraft and Leased Spare Engines, the "**Leased Equipment**") and (ii) establishing deadlines and procedures for, as applicable, aircraft lessors, indenture trustees, owner trustees, owner participants, loan participants, loan trustees, lenders, collateral trustees, insurers, or other relevant parties (collectively the **"Aircraft Equipment Counterparties"**) to take possession of the Leased Equipment.

**Jurisdiction and Venue**

5.      The United States Bankruptcy Court for the Southern District of New York (the "**Court**") has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.).

---

*Programs, (IV) Approving Wind-Down Incentive and Retention Plan, (V) Approving Modification of Contract Rejection Procedures, (VI) Approving Non-Fleet Assets Sale Procedures, (VII) Approving Non-Fleet Assets Abandonment Procedures, (VIII) Approving the Use of Certain Third-Party Contracts, (IX) Approving Protections for Certain Persons Implementing the Wind-Down, (X) Enforcing an Administrative Stay, (XI) Authorizing the Debtors to Take Any and All Actions Necessary to Implement the Wind-Down, (XII) Authorizing the Preemption of Applicable Laws and Ordinances for the Debtors to Effectuate the Wind-Down, and (XIII) Granting Related Relief (the "**Non-Fleet Wind-Down Motion**").*

6.      This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b).  The Debtors confirm their consent to the entry of a final order by the Court in connection with this Motion.

7.      Venue of the Chapter 11 Cases and related proceedings is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

**Background**

**A.  General Background**

8.      On August 29, 2025 (the "**Petition Date**"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors remain in possession of their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Chapter 11 Cases are being jointly administered, for procedural purposes only, pursuant to Bankruptcy Rule 1015(b), as ordered by the Court [ECF No. 35].

9.      On September 17, 2025, the United States Trustee for the Southern District of New York (the "**U.S. Trustee**") appointed an Official Committee of Unsecured Creditors (the "**Committee**") pursuant to section 1102 of the Bankruptcy Code [ECF No. 117].

10.      On October 29, 2025, the U.S. Trustee appointed Marc J. Heimowitz as Examiner pursuant to section 1104(d) of the Bankruptcy Code [ECF No. 381].

11.      Additional information about the events leading up to the Petition Date and the Debtors' businesses, affairs, capital structure, and prepetition indebtedness can be found in the *Declaration of Fred Cromer in Support of the Chapter 11 Proceedings and First Day Pleadings* [ECF No. 19].

12.      On March 13, 2026, the Debtors filed the Plan, putting forward a proposed plan of reorganization [ECF No. 848].  On March 13, 2026, in connection with the Plan, the Debtors also

filed the *Notice of Entry into Restructuring Support Agreement* [ECF No. 849] (as amended, restated, supplemented or modified from time to time, the "**RSA**"), in which the Debtors and the Consenting DIP Lenders, as defined in the RSA, memorialized their support for the Plan.

13. On March 13, 2026, the Debtors also filed the Disclosure [ECF No. 850], describing the Plan and its provisions.

14. As of the date hereof, Spirit's fleet consists of 114 Airbus A320 family aircraft. Of these, 66 are currently leased by Spirit (each a "**Leased Aircraft**") and 28 are owned by Spirit and subject to financings and not already subject to a pending sale motion. Twenty of Spirit's currently owned aircraft are subject to the *Order (A) Authorizing the Sale of Certain Aircraft Free and Clear of All Liens, Claims and Encumbrances and Other Interests and (B) Granting Related Relief* [ECF No. 991] (the "**HFS Sale Order**"). For the avoidance of doubt, nothing in this Motion impacts or modifies the HFS Sale Order.

15. In addition, Spirit leases ten spare engines which are not subject to a pending rejection order. Spirit is also a party to 12 Equipment Leases with respect to GTE Engines that are part of the "green time" program as provided for under the *Order (I) Approving the Restructuring Term Sheet with the IAE Parties, (II) Authorizing and Approving Entry into the Definitive Documents and GTE Agreements, and (III) Granting Related Relief* [ECF No. 634].

16. The Leased Aircraft, the Leased Spare Engines, and GTE Engines are listed in Schedule 1, Schedule 2 and Schedule 3, respectively, attached to the Leased Fleet Wind-Down Order.

17. With respect to the Leased Aircraft, 15 Leased Aircraft are subject to an election made pursuant to section 1110(a) of the Bankruptcy Code, 24 Leased Aircraft are subject to stipulations entered into with the applicable Aircraft Equipment Counterparties pursuant to

5

section 1110(b) of the Bankruptcy Code or pursuant to which Spirit and the Aircraft Equipment Counterparty have agreed to a long-term lease amendment, and 15 Leased Aircraft have been assumed [ECF Nos. 247 and 546].  Twelve of the Leased Aircraft are subject to pending rejection orders and are scheduled to be rejected in the coming days.  *See* ECF Nos. 580 and 990.  The relief sought here, however, will override those orders.

**B. The Discontinuation of Spirit's Revenue Service and Liquidation of its Fleet**

18.    As discussed in the Cromer Declaration, as of 3:00 a.m. ET on May 2, 2026 the Debtors ceased all passenger flight operations and asked the Federal Aviation Administration to issue a ground stop for Spirit flights to ensure no accidental dispatches.  Cromer Decl. ¶ 12.  Given the Debtors' determination that the safest time to make this announcement was when no planes were in the air and all crew who were away from their bases had sufficient time to check into hotel accommodations, it was essential that the announcement occur in the early morning hours and after the Debtors had confirmed that all planes were on the ground.  *Id.*  These actions were taken to prioritize the safety of passengers and crew given the unique nature of the Debtors' businesses. *Id.*

19.    Following Spirit's discontinuation of passenger service as set forth above, Spirit is focused on maximizing available proceeds for the benefit of its stakeholders, while simultaneously seeking to minimize its costs.  Accordingly, Spirit, by this motion, seeks authority to reject the Equipment Leases effective as of May 8, 2026 and subject to the rejection procedures described in the Leased Fleet Wind-Down Order (the "**Leased Equipment Rejection Procedures**").

**Leased Equipment Rejection Procedures**

20.    The Debtors ask that the Court approve the Leased Equipment Rejection

6

Procedures regarding the Equipment Leases and the Leased Equipment which are delineated in the

Leased Fleet Wind-Down Order and summarized below:

### A. Return and Retrieval of the Leased Equipment

21.     The Debtors have provided information on the schedules and exhibits attached

hereto that will assist the Aircraft Equipment Counterparty in retrieving the Excess Equipment.

The Debtors ask this Court to enter the Leased Fleet Wind-Down Order providing that if the

Aircraft Equipment Counterparty affected by the rejection of an Equipment Lease does not retrieve

or otherwise take control of the relevant Leased Equipment from the locations provided on

Schedule 1, Schedule 2, or Schedule 3, as applicable, by May 8, 2026, which date shall be the

Rejection Effective Date for all Leased Equipment, such Aircraft Equipment Counterparty shall

be responsible to the Debtors for the subsequent costs of, and all risks attendant to, storing such

Leased Equipment and for other attendant costs as determined by the Debtors, including the cost

of insuring the Leased Equipment.  If the Aircraft Equipment Counterparty does not retrieve the

Leased Equipment or otherwise contract with the Debtors or a third party for storage of the Leased

Equipment as of the Rejection Effective Date, the Debtors may file, on shortened notice, a motion

to compel removal of the Leased Equipment and/or payment to the Debtors of storage and other

attendant costs including, without limitation, all related legal fees.  The Leased Equipment will be

made available to the Aircraft Equipment Counterparty "as is, where is" and the Debtors

specifically make neither representations nor warranties regarding the Leased Equipment.

22.     The Debtors will maintain their current insurance coverage and continue the

existing storage maintenance program, if applicable, until the Rejection Effective Date.

Thereafter, however, the Debtors shall cease insuring and maintaining the Leased Equipment

except as otherwise provided herein.[3]

23.      Nothing herein is with prejudice to the rights of: (i) an Aircraft Equipment Counterparty to assert a claim for rejection or administrative damages, if any; (ii) an Aircraft Equipment Counterparty to assert damages for failure to satisfy all contractual return or turnover provisions of the applicable Equipment Lease; or (iii) the Debtors or any other party to object to any such claims.

**B.  Debtors' Cooperation in Making Related Aviation Authority Filings**

24.      Upon written request from an affected Aircraft Equipment Counterparty, the Debtors agree to cooperate reasonably with such Aircraft Equipment Counterparty with respect to the execution of, or provision of, additional assistance in connection with the return of the related Aircraft Equipment, including but not limited to the information required for a lease termination document to be filed with the applicable aviation authority in connection with such Leased Equipment, *provided* that nothing herein shall require the Debtors to maintain staffing or incur third-party costs with respect to such cooperation.  In addition, the Debtors ask this Court to enter an order providing that once the affected Aircraft Equipment Counterparty retrieves or takes control of such Leased Equipment, such Aircraft Equipment Counterparty or the authorized party under an Irrevocable De-Registration and Export Request Authorization ("**IDERA**") or a power of attorney provided by the Debtors, if any, shall be permitted to request the cancellation, or transfer to a party designated by such Aircraft Equipment Counterparty, of such aircraft's registration on such aviation authority's register.  The affected Aircraft Equipment Counterparty

---

[3]    For the avoidance of doubt, to the extent the Debtor are currently insuring and storing any leased aircraft equipment that were previously rejected pursuant to an order of the Court, the Debtors will likewise cease insuring and storing such leased aircraft equipment upon the earlier of the (i) the retrieval of the applicable item of Leased Equipment and (ii) the entry of the Leased Fleet Wind-Down Order.

shall be solely responsible for all costs associated with such documentation and the filing thereof with the relevant aviation authority or registry.

### C. Debtors' Further Actions to Implement Approved Rejections

25.     The Debtors submit that the proposed actions and Leased Equipment Rejection Procedures are reasonable in light of the circumstances, in the best interests of their estates, and should be approved by this Court.  Accordingly, the Debtors seek authorization to execute and deliver all instruments and documents and take any additional actions as are necessary or appropriate to implement and effectuate the procedures.

### D. Filing Proofs of Claim

26.     The Debtors propose that any claims arising out of any rejection effected pursuant to the Leased Equipment Rejection Procedures and section 365(g) of the Bankruptcy Code must be timely filed in accordance with the *Order Establishing Deadlines and Procedures for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof* [ECF No. 597], provided however that such claims may be filed not later than 60 days after the Rejection Effective Date with respect to the item of Leased Equipment to which such claim relates.  Any claim not timely filed will be irrevocably barred.

### E. Provision of Records and Documents

27.     Upon the Rejection Effective Date or as soon as reasonably practicable thereafter, the Debtors shall make available to the applicable Aircraft Equipment Counterparty records and documents relating to such Leased Equipment that that are in the Debtors' possession or control in their then "as is, where is" condition, without certification or signature and without performing any independent verification or audit thereof.  Nothing herein shall require the Debtors to incur third-party costs with respect to such return of records.

28.     Notwithstanding anything to the contrary in this Order, if an Aircraft Equipment Counterparty requests further reasonable logistical or technical assistance or cooperation from the Debtors in connection with these return procedures, including access to electronically accessible records, the Debtors shall engage in good faith negotiations and make commercially reasonable efforts, subject to the Debtors' operational and commercial limitations, to try to reach agreement for such terms (any such agreement a "**Rejection Terms Agreement**").  The Debtors are authorized (but not directed) to enter into such Rejection Terms Agreements without further approval of the Court; provided, however, that any such agreement (i) shall provide for the Debtors to receive prompt reimbursement from the applicable Interested Party for any reasonable actual out-of-pocket expenses associated with such logistical or technical assistance or cooperation that the Debtors agree to provide and (ii) shall not require the Debtors to make any representations or warranties.

29.     To the extent necessary, the Debtors request that the automatic stay provided by section 362 of the Bankruptcy Code be modified to allow the parties to transfer, move, deregister and dispose of the rejected Leased Equipment upon rejection of the applicable Equipment Leases.

### Basis for Relief

30.     Section 365(a) of the Bankruptcy Code provides, in pertinent part, that a debtor in possession "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a); *see also Mission Prod. Holdings, Inc. v. Tempnology, LLC,* 587 U.S. 370, 373-374 (2019); *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 521 (1984).  "The purpose behind allowing the assumption or rejection of executory contracts is to permit the trustee or debtor-in-possession to use valuable property of the estate and to 'renounce title to and abandon burdensome property.'" *Orion Pictures Corp. v. Showtime Networks, Inc. (In*

*re Orion Pictures Corp.)*, 4 F.3d 1095, 1098 (2d Cir. 1993); *see also Bildisco & Bildisco*, 465 U.S. at 528 ("the authority to reject an executory contract is vital to the basic purpose of a Chapter 11 reorganization, because rejection can release the debtor's estate from burdensome obligations that can impede a successful reorganization."); *In re Avianca Holdings SA,* 127 F.4th 414, 420 (2d Cir. 2025) ("The debtor-in-possession is granted such flexibility so that it may reject contracts that are 'burdensome' to the estate but assume beneficial contracts when it would like to 'force [its contractual counterparties] to continue to do business with it when the bankruptcy filing might otherwise make them reluctant to do so.'").

31.     The standard applied to determine whether the rejection of an unexpired lease should be authorized is the "business judgment" standard.  *See Mission Prod. v. Tempnology,* 587 U.S. at 374*; NLRB v. Bildisco & Bildisco,* 465 U.S. at 523; *In re Penn Traffic Co.*, 524 F.3d 373, 383 (2d Cir. 2008); *In re Orion Pictures Corp.*, 4 F.3d 1095, 1098-99 (2d Cir. 1993).  Courts defer to a debtor's business judgment in rejecting an unexpired lease, and upon finding that a debtor has exercised its sound business judgment, approve the rejection under section 365(a) of the Bankruptcy Code.  *See Bildisco & Bildisco*, 465 U.S. at 523 (recognizing the "business judgment" standard used to approve rejection of executory contracts); *Nostas Assocs. v. Costich (In re Klein Sleep Products, Inc.)*, 78 F.3d 18, 25 (2d Cir. 1996) (recognizing the "business judgment" standard used to approve rejection of executory contracts).

32.     The "business judgment" standard is not a strict standard; it requires only a showing that either assumption or rejection of the executory contract or unexpired lease will benefit the debtor's estate.  *See In re Balco Equities, Inc.*, 323 B.R. 85, 99 (Bankr. S.D.N.Y 2005) ("In determining whether the debtor has employed reasonable business discretion, the court for the most part must only determine that the rejection will likely benefit the estate.") (quoting *In re G*

*Survivor Corp.*, 171 B.R. 755, 758 (Bankr. S.D.N.Y. 1994)); *In re Helm*, 335 B.R. 528, 538 (Bankr. S.D.N.Y. 1996) ("To meet the business judgment test, the debtor in possession must 'establish that rejection will benefit the estate.'") (citation omitted).  Further, under the business judgment standard, "[a] debtor's decision to reject an executory contract must be summarily affirmed unless it is the product of 'bad faith, or whim or caprice'" *In re Trans World Airlines, Inc.,* 261 B.R. 103, 121 (Bankr. D. Del. 2001).

33.     In addition, "[u]nless a separate provision of the Bankruptcy Code provides a non-debtor party with specific protection, the debtor and its estate's interests are paramount; adverse effects on the non-debtor contract party arising from the decision to assume or reject are irrelevant." *In re The Great Atlantic & Pacific Tea Company*, 544 B.R. 43, 49 (Bankr. S.D.N.Y. 2016); *see also In re Sabine Oil and Gas Corp.*, 547 B.R. 66, 71 (Bankr. S.D.N.Y. 2016); *In re Noranda Aluminum, Inc.*, 549 B.R. 725, 727-78 (Bankr. E.D. Mo. 2016).

34.     Here, the Debtors easily exceed the business judgment requirement to reject the Equipment Leases.  As discussed above and in the Cromer Declaration, the Debtors have concluded that they are unable to continue as a going concern and that an orderly liquidation is in the best interest of all stakeholders. *See* Cromer Decl. ¶ 11.  Required additional capital to continue operations as a standalone entity was unavailable and there were no other entities interested in purchasing or merging with the Debtors.  The Debtors thus faced irreparable insolvency.  An orderly wind-down is in the best interests of the Debtors' stakeholders by maximizing the remaining value of the Debtors' assets, including its Leased Equipment, in an orderly manner.  Providing for an orderly wind-down is also crucial to ensure a safe conclusion of the Debtors' business, given the nature and complexity of their operations.  In such a wind-down scenario, continuing to be obligated under Equipment Leases with respect to the Leased Equipment, which

is not being used in revenue service, is purely a cash drain on the Debtors' estates. Among other things, delaying the rejection of the Equipment Leases would require the Debtors to incur significant lease, storage, maintenance, and insurance expenses and will quickly deplete the Debtors' limited available resources. Relieving the Debtors' estate of these substantial obligations is necessary to, and will facilitate, the Debtors' orderly wind down and will maximize resources available to pay stakeholders.

35.      In addition, the Leased Equipment Rejection Procedures are appropriate under the circumstances. They will ensure that the Debtors are able to quickly and efficiently provide for the termination of their obligations under the Equipment Leases and allow Aircraft Equipment Counterparties expeditious access to their respective Leased Equipment. The Leased Equipment Rejection Procedures are similar to procedures approved in this Case with respect to previous rejections of aircraft equipment, *see, e.g.,* ECF Nos. 301, 483, and 633; and consistent with wind-down procedures approved in other airline cases. *In re Aloha Airlines, Inc.*, No. 08-00337 (Bankr. D. Haw. Apr. 8, 2008) [ECF No. 206]. In addition, the Debtors have been in contact with the Aircraft Equipment Counterparties and their counsel throughout the Chapter 11 Cases and will continue to coordinate and address any questions to ensure the proper return and surrender of all equipment, including the Leased Equipment.

## Notice

36.      Notice of this Motion will be provided to the following parties (or their counsel) (collectively, the "**Notice Parties**"): (a) the U.S. Trustee; (b) the Committee; (c) the Securities and Exchange Commission; (d) the Internal Revenue Service; (e) the United States Attorney's Office for the Southern District of New York; (f) the state attorneys general for states in which the Debtors conduct business; (g) the Department of Transportation; (h) certain holders of the Debtors' secured

notes; (i) each agent or trustee under the Debtors' secured notes indenture or revolving credit facility; (j) all entities known to have asserted any lien, claim, or encumbrance in or upon any of the Leased Equipment; (k) any other party that is entitled to notice under the *Court's Order Implementing Certain Notice and Case Management Procedures* [ECF No. 61]. A copy of this Motion and any order entered in respect thereto will also be made available on the Debtors' case information website located at https://dm.epiq11.com/SpiritAirlines.

37.    In light of the foregoing and the nature of the relief requested, the Debtors respectfully submit that no further notice is necessary.

WHEREFORE, the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as is appropriate.

Dated:   May 4, 2026
         New York, NY

DEBEVOISE & PLIMPTON LLP

*/s/ Jasmine Ball*
Jasmine Ball
Elie J. Worenklein
66 Hudson Boulevard East
New York, NY 10001
Tel.: (212) 909-6000
jball@debevoise.com
eworenklein@debevoise.com

*Fleet Counsel to the Debtors and Debtors in Possession*

**Exhibit A**

**Leased Fleet Wind-Down Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| **In re:** | **Chapter 11** |
| **SPIRIT AVIATION HOLDINGS, INC.,** *et al.*, | **Case No. 25-11897 (SHL)** |
| **Debtors.**[1] | **Jointly Administered** |

### ORDER (I) AUTHORIZING THE DEBTORS TO REJECT THEIR REMAINING AIRCRAFT EQUIPMENT LEASES, (II) ESTABLISHING PROCEDURES RELATED THERETO AND (III) GRANTING RELATED RELIEF

Upon the *Motion for Entry of an Order (I) Authorizing The Debtors to Reject Their Remaining Aircraft Equipment Leases, (II) Establishing Procedures Related Thereto and (III) Granting Related Relief* (the "**Motion**")[2] of Spirit Aviation Holdings, Inc. and its direct and indirect subsidiaries (collectively, the "**Debtors**" or "**Spirit**"), each of which is a debtor and debtor in possession in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), for entry of an order (this "**Order**"): (i) authorizing the Debtors to reject the Equipment Leases and (ii) establishing deadlines and procedures in connection with the rejection of the Leased Equipment (the "**Leased Equipment Rejection Procedures**"); and upon consideration of the Cromer Declaration; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 1334; and consideration of the Motion and the requested relief being a core proceeding the Bankruptcy Court can determine pursuant to 28 U.S.C. § 157(b)(2); and venue being proper before this Court pursuant to

---

[1] The Debtors' names and last four digits of their respective employer identification numbers are as follows: Spirit Aviation Holdings, Inc. (1797); Spirit Airlines, LLC (7023); Spirit Finance Cayman 1 Ltd. (7020); Spirit Finance Cayman 2 Ltd. (7362); Spirit IP Cayman Ltd. (4732); and Spirit Loyalty Cayman Ltd. (4752). The Debtors' mailing address is 1731 Radiant Drive, Dania Beach, FL 33004.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

28 U.S.C §§ 1408 and 1409; and due and proper notice of the Motion having been provided and no other or further notice needing to be provided under the circumstances; and the relief requested in the Motion being in the best interests of the Debtors and their estate and creditors; and the Court having reviewed the Motion and having held a hearing before the Court with appearances of parties in interest noted in the transcript thereof (the "**Hearing**"); and the Court having considered the arguments of counsel, and the evidence proffered and adduced, at the Hearing; and the Court having determined that the legal and factual bases set forth in the Motion, the Cromer Declaration and at the Hearing establish just cause for the relief granted herein; and the Court having found that the relief requested in the Motion represents a sound exercise of the Debtors' business judgment, and is in the best interests of the Debtors, their creditors, their estates, and all other parties in interest; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor, it is hereby ORDERED that:

1.      The relief requested in the Motion is hereby granted to the extent provided herein.

2.      All objections to the relief requested in the Motion that have not been withdrawn, waived or settled as announced to the Court at the hearing on the Motion or by stipulation filed with the Court, are overruled.

3.      The Debtors are authorized pursuant to sections 105(a) and 365(a) of the Bankruptcy Code, and without further notice or relief from the Court, except as provided herein, to take any and all actions consistent with this Order that are necessary or appropriate in the exercise of their business judgment to implement the relief set forth herein.

4.      The rejection of each of the Equipment Leases for the Leased Aircraft identified on Schedule 1 hereto is approved, effective as of May 8, 2026 (the "**Rejection Effective Date**").

2

5.      The rejection of each of the Equipment Leases for the Leased Spare Engines identified on Schedule 2 hereto is approved, effective as of the Rejection Effective Date.

6.      The rejection of each of the Equipment Leases for the GTE Engines identified on Schedule 3 hereto is approved, effective as of the Rejection Effective Date.

7.      Upon the Rejection Effective Date, the Debtors shall make available to the applicable Aircraft Equipment Counterparty at the then-current location of each such piece of Leased Equipment or such then-current location of the Aircraft Records (as defined below), both (a) the Leased Equipment and (b) all technical records, documents, reports, and statements relating to the Leased Equipment ("**Aircraft Records**")[3] that are in the Debtors' possession or control in their then "as is, where is" condition and, with respect to the Aircraft Records, without certification or signature and without performing any independent verification or audit thereof.  Nothing herein shall require the Debtors to incur third-party costs with respect to such return of Aircraft Records.

8.      Upon written request from an affected Aircraft Equipment Counterparty, the Debtors shall cooperate reasonably with such Aircraft Equipment Counterparty with respect to the execution of, or provision of, information required for a lease termination document or other documentation, as appropriate, to be filed with the aviation authority in the applicable jurisdiction in connection with such Leased Equipment, *provided that* the affected Aircraft Equipment Counterparty shall be solely responsible for all costs associated with such documentation and for the filing thereof with such relevant aviation authority or register and *provided further* that nothing herein shall require the Debtors to maintain staffing or incur third-party costs with respect to such cooperation.

---

[3]     Such Aircraft Records includes all records and documents described in section 11110(a)(3)(B) of the Bankruptcy Code.

9.      Notwithstanding anything to the contrary in this Order, if an Aircraft Equipment Counterparty requests further reasonable logistical or technical assistance or cooperation from the Debtors in connection with these return procedures, including access to electronically accessible records, the Debtors shall engage in good faith negotiations and make commercially reasonable efforts, subject to the Debtors' operational and commercial limitations, to try to reach agreement for such terms (any such agreement a "**Rejection Terms Agreement**"). The Debtors are authorized (but not directed) to enter into such Rejection Terms Agreements without further approval of the Court; provided, however, that any such agreement (i) shall provide for the Debtors to receive prompt reimbursement from the applicable Interested Party for any reasonable actual out-of-pocket expenses associated with such logistical or technical assistance or cooperation that the Debtors agree to provide and (ii) shall not require the Debtors to make any representations or warranties.

10.     Notwithstanding anything to the contrary in this Order, the Debtors are authorized to use their reasonable best efforts to arrange for, or cooperate in the arrangement of, third-party services to effectuate ferry flights of Leased Equipment, including entering into any contracts with third-party service providers necessary and obtaining any applicable FAA authorization(s) therefor, *provided* that the applicable Aircraft Equipment Counterparty shall be solely responsible for all costs associated with such services.

11.     The Debtors are authorized to make payments pursuant to this Order in accordance with the Wind-Down Budget (as defined in the Non-Fleet Wind-Down Motion), subject to any permitted variances with respect thereto, upon the terms and conditions and to the extent set forth in the Final DIP Order Amendment No. 2 and the Amendment No. 2 to DIP Credit Agreement (in each case, as defined in the Non-Fleet Wind-Down Motion).

12.     Once the affected Aircraft Equipment Counterparty retrieves or takes control of its Leased Equipment, such Aircraft Equipment Counterparty or the authorized party under an IDERA or a power of attorney provided by the Debtors, if any, shall be permitted to request the cancellation, or transfer to a party designated by such Aircraft Equipment Counterparty, of such Leased Equipment's registration on an aviation authority's register or with any other applicable registration authority, as applicable, *provided that* the affected Aircraft Equipment Counterparty shall be solely responsible for all costs associated with such request or transfer.

13.     The Debtors shall cease insuring, storing and maintaining such Leased Equipment upon the Rejection Effective Date, unless the Debtors and applicable Aircraft Equipment Counterparties agree that the applicable Aircraft Equipment Counterparties will pay directly or timely reimburse the Debtors for such expenses.

14.     If the Aircraft Equipment Counterparty affected by the rejection of an Equipment Lease does not retrieve or otherwise take control of the relevant Leased Equipment by the Rejection Effective Date, such Aircraft Equipment Counterparty shall be responsible to the Debtors for the subsequent reasonable actual out-of-pocket costs of, and all risks attendant to, maintaining, insuring and storing such equipment, each as determined by the Debtors. The Debtors and the applicable Aircraft Equipment Counterparties may mutually agree to an alternative date to retrieve or otherwise take control of the relevant Leased Equipment, provided that the affected Aircraft Equipment Counterparty shall be solely responsible for all associated costs related to the Leased Equipment. If the Aircraft Equipment Counterparty does not retrieve the Leased Equipment or otherwise contract with the Debtors or a third party for storage of the Leased Equipment in accordance with this Order, the Debtors may file, on shortened notice, a

5

motion to compel removal of the Leased Equipment and/or payment to the Debtors of storage and other attendant costs, including, without limitation, all related legal fees.

15.     For the avoidance of doubt, except as otherwise provided herein or in another order of this Court, the Leased Equipment and Aircraft Records will be made available to the applicable Aircraft Equipment Counterparties in "as is, where is" condition and the Debtors specifically make no representations or warranties regarding the Leased Equipment or Aircraft Records, their condition or the state of their title.    If any of the Leased Equipment happens to be non-serviceable, the Debtors are under no obligation to repair any such Leased Equipment to make it serviceable.

16.     Nothing herein shall prejudice the rights of (i) any Aircraft Equipment Counterparty to (a) assert a claim for rejection damages, if any, (b) assert damages for failure to satisfy all contractual return or turnover provisions of the applicable Equipment Leases, (c) assert a claim or entitlement to payment for post-petition rent, supplemental rent or other obligations under the applicable Equipment Lease and/or as provided under applicable law, (d) assert a claim for any administrative expenses or other priority claim(s) that arise out of or relate to any Equipment Leases and/or as provided under applicable law, including, without limitation, for the value of any parts removed on or after the Petition Date, or (e) seek enforcement or damages relating thereto in accordance with the provisions of the Bankruptcy Code, (ii) the Debtors or any other party to object to any such claims or actions or to assert any claims relating to this Order or the procedures contemplated herein, or (iii)  any of the any Aircraft Equipment Counterparty against any other person or entity under any agreement and/or applicable law.

17.     Claims arising out of any rejection effected pursuant to this Order must be timely filed in accordance with the *Order Establishing Deadlines and Procedures for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof* [ECF No. 597], provided however

6

that any such rejection damages claim must be filed not later than 60 days after the Rejection Effective Date with respect to the item of Leased Equipment to which such claim relates. Any claim not timely filed will be irrevocably barred.

18.    For the avoidance of doubt, any future or alternative Rejection Effective Date set with respect to any Leased Equipment listed on Schedules 1 or 2 in connection with a prior order of the Court is hereby superseded by the provisions of this Order. In addition, any obligation of the Debtors to maintain their insurance coverage and storage maintenance program for any leased aircraft equipment under a prior order of the Court is hereby superseded by the provisions of this Order.

19.    Upon mutual agreement with the applicable Aircraft Equipment Counterparty, the Debtor is authorized to revise the Schedules hereto. The Debtor shall file a notice with the Court with the revised Schedules reflecting these changes (if any).

20.    To the extent necessary, the automatic stay of section 362 of the Bankruptcy Code (the "**Automatic Stay**") is hereby modified to allow the Debtors and the applicable Aircraft Equipment Counterparty to effectuate the provisions of this Order and to access, retrieve, transfer, move, deregister or dispose of the Leased Equipment. The Automatic Stay is hereby modified to permit the application of any security deposit held by an Aircraft Equipment Counterparty with respect to the Equipment Leases to the extent permitted by and in accordance with the terms of the Equipment Leases or any other documents entered into in connection with the Equipment Leases against the obligations of the Debtors thereunder. In addition to the foregoing modifications of the Automatic Stay, the Automatic Stay is hereby also modified for the purpose of aircraft or aircraft-related equipment registry administration, solely and for no other purpose than to allow an Aircraft Equipment Counterparty to cancel or terminate any such Equipment Lease, and to allow

any Aircraft Equipment Counterparty to deliver any notices contemplated by such Equipment Lease, in the event the Debtors elect to reject such Leased Equipment.  Nothing herein shall affect the scope of the Automatic Stay with respect to other matters, including, without limitation, those relating to claims asserted against the Debtors by any other person or entity.

21.     For the avoidance of doubt, nothing in this Order shall constitute an abandonment of any of the Debtors' owned equipment, whether or not appurtenant to the Leased Equipment that are rejected as set forth herein.

22.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

23.     This Court shall retain jurisdiction to resolve any dispute relating to the interpretation of the terms and conditions of this Order.  To the extent any provisions of this Order shall be inconsistent with the Motion, the terms of this Order shall control.

24.     The notice procedures set forth in the Motion are good and sufficient notice and satisfy Bankruptcy Rules 2002(a), 6006, 6007 and 9014 by providing the counterparties with a notice and an opportunity to object and be heard at a hearing.

Dated: _____, 2026
White Plains, New York

_____
THE HONORABLE SEAN H. LANE
UNITED STATES BANKRUPTCY JUDGE

**Schedule 1**

**Leased Aircraft**

| Row | Lessor | MSN | FAA Reg. # | Type | Engine Type | Titled Eng 1 | Titled Eng 2 | Airframe Surrender Location | Titled Eng 1 Surrender Location | Titled Eng 2 Surrender Location |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | AerCap | 11851 | 717 | A321-271NX | PW1133G-JM | 800913 | 800916 | MIA | MIA | MIA |
| 2 | AerCap | 11872 | 718 | A321-271NX | PW1133G-JM | 800969 | 801003 | FLL | FLL | FLL |
| 3 | AerCap | 11908 | 729 | A321-271NX | PW1133G-JM | 801209 | 801222 | FLL | DFW-HQ | FLL |
| 4 | AerCap | 11916 | 725 | A321-271NX | PW1133G-JM | 801236 | 801233 | IAH | IAH | IAH |
| 5 | AerCap | 11928 | 726 | A321-271NX | PW1133G-JM | 801339 | 801343 | CMH | CMH | CMH |
| 6 | AerCap | 11937 | 731 | A321-271NX | PW1133G-JM | 801193 | 801254 | MCO | MCO | MCO |
| 7 | AerCap | 11974 | 724 | A321-271NX | PW1133G-JM | 801138 | 801116 | IAH | IAH | IAH |
| 8 | AerCap | 12009 | 721 | A321-271NX | PW1133G-JM | 801183 | 801187 | IAH | IAH | IAH-Q |
| 9 | AerCap | 12048 | 720 | A321-271NX | PW1133G-JM | 801194 | 801200 | FLL | FLL | FLL |
| 10 | AerCap | 12102 | 723 | A321-271NX | PW1133G-JM | 801258 | 801260 | CLT | IAH | CLT |
| 11 | ALC | 11880 | 716 | A321-271NX | PW1133G-JM | 800877 | 800859 | GYR | GYR | GYR |
| 12 | ALC | 12035 | 730 | A321-271NX | PW1133G-JM | 801229 | 801269 | FLL | FLL | FLL |
| 13 | ALC | 12055 | 740 | A321-271NX | PW1133G-JM | 801421 | 801424 | EWR | EWR | EWR |
| 14 | ALC | 12178 | 732 | A321-271NX | PW1133G-JM | 801337 | 801338 | FLL | FLL | FLL |
| 15 | ALC | 12207 | 737 | A321-271NX | PW1133G-JM | 801331 | 801354 | BHM | BHM | BHM |
| 16 | ALC | 12335 | 741 | A321-271NX | PW1133G-JM | 801494 | 801500 | PHL | PHL | PHL |
| 17 | ALC | 12423 | 746 | A321-271NX | PW1133G-JM | 801521 | 801704 | GYR | GYR | GYR |
| 18 | Carlyle | 5370 | 616 | A320-232C | V2527-A5 | 16500 | 16511 | LAS | MCO | MRO-MTUC |
| 19 | Carlyle | 5458 | 618 | A320-232C | V2527-A5 | 16578 | 16587 | PNS | ORD | EWR |
| 20 | Carlyle | 5804 | 622 | A320-232C | V2527-A5 | 16913 | 16916 | PIT | LAS | LGA |
| 21 | Carlyle | 5861 | 623 | A320-232C | V2527-A5 | 16961 | 16964 | DTW | DFW | BWI |
| 22 | Carlyle | 5880 | 624 | A320-232C | V2527-A5 | 16979 | 16982 | LAS | LAS | ATL |
| 23 | DAE | 4548 | 605 | A320-232C | V2527-A5 | 15687 | 15689 | DFW | EWR | MIA |
| 24 | DAE | 4592 | 606 | A320-232C | V2527-A5 | 15711 | 15715 | BWI | BWI | BWI |
| 25 | DAE | 4996 | 611 | A320-232C | V2527-A5 | 16107 | 16109 | MSY | DFW | DTW |
| 26 | DAE | 5387 | 617 | A320-232C | V2527-A5 | 16506 | 16525 | MCO | IAH-SHOP | IAH-SHOP |
| 27 | ELFC | 4206 | 601 | A320-232C | V2527-A5 | 15372 | 15376 | ORD | VCV | FLL |
| 28 | ELFC | 4264 | 602 | A320-232C | V2527-A5 | 18411 | 18631 | EWR | DFW | EWR |
| 29 | ELFC | 4321 | 603 | A320-232C | V2527-A5 | 15464 | 15459 | EWR | SAL | ATL |
| 30 | ELFC | 4431 | 604 | A320-232C | V2527-A5 | 15568 | 15560 | DFW | FLL | LAS |
| 31 | Fuyo | 11643 | 986 | A320-271N | PW1127G-JM | 800740 | 800742 | MCO | GYR | MCO |
| 32 | Fuyo | 11859 | 990 | A320-271N | PW1127G-JM | 800960 | 800961 | ATL | ATL | ATL |
| 33 | Fuyo | 11900 | 992 | A320-271N | PW1127G-JM | 801004 | 801007 | FLL | FLL | FLL |
| 34 | ICBC Leasing | 11554 | 984 | A320-271N | PW1127G-JM | 800554 | 800610 | FLL | FLL | FLL |

| Row | Lessor | MSN | FAA Reg. # | Type | Engine Type | Titled Eng 1 | Titled Eng 2 | Airframe Surrender Location | Titled Eng 1 Surrender Location | Titled Eng 2 Surrender Location |
|---|---|---|---|---|---|---|---|---|---|---|
| 35 | ICBC Leasing | 11840 | 989 | A320-271N | PW1127G-JM | 800867 | 800915 | FLL | FLL | FLL |
| 36 | ICBC Leasing | 11902 | 993 | A320-271N | PW1127G-JM | 801062 | 801021 | BOS | BOS | BOS |
| 37 | JSAI | 6616 | 643 | A320-232C | V2527-A5 | 17737 | 17745 | FLL | FLL | FLL |
| 38 | Merx | 5999 | 626 | A320-232C | V2527-A5 | 17120 | 17122 | MCO | MCO | MCO |
| 39 | Merx | 6345 | 633 | A320-232C | V2527-A5 | 17488 | 17493 | LGA | EWR | MCO |
| 40 | Merx | 6383 | 635 | A320-232C | V2527-A5 | 17524 | 17536 | FLL | PHL | MSY |
| 41 | ORIX | 4902 | 608 | A320-232C | V2527-A5 | 15953 | 15960 | ACY | SAL | MCO |
| 42 | ORIX | 4951 | 609 | A320-232C | V2527-A5 | 16076 | 16082 | DFW | ORD | DTW |
| 43 | ORIX | 5159 | 615 | A320-232C | V2527-A5 | 16267 | 16269 | DTW | MIA | FLL |
| 44 | ORIX | 11862 | 991 | A320-271N | PW1127G-JM | 800952 | 800962 | CLT | CLT | CLT |
| 45 | Sirius | 4595 | 607 | A320-232C | V2527-A5 | 15737 | 15739 | FLL | DTW | DFW |
| 46 | Sky Leasing | 6300 | 629 | A320-232C | V2527-A5 | 17443 | 17449 | MSY | MCO | LAS |
| 47 | Sky Leasing | 6327 | 631 | A320-232C | V2527-A5 | 17475 | 17479 | ORD | LAS | DFW |
| 48 | Sky Leasing | 6370 | 634 | A320-232C | V2527-A5 | 17512 | 17513 | DFW | PHL | EWR |
| 49 | Sky Leasing | 6424 | 636 | A320-232C | V2527-A5 | 17557 | 17559 | LAX | LAS | DTW |
| 50 | Sky Leasing | 6436 | 637 | A320-232C | V2527-A5 | 17565 | 17572 | ACY | DTW | DFW |
| 51 | Sky Leasing | 6770 | 659 | A321-231C | V2533-A5 | 17884 | 17904 | FLL | EWR | ORD |
| 52 | Sky Leasing | 7690 | 677 | A321-231C | V2533-A5 | 18551 | 18552 | DFW | IAH | VCV |
| 53 | Sky Leasing | 7734 | 676 | A321-231C | V2533-A5 | 18525 | 18533 | MCO | LAS | DFW |
| 54 | Sky Leasing | 7825 | 679 | A321-231C | V2533-A5 | 18614 | 18615 | PHL | EWR | DFW |
| 55 | Sky Leasing | 7870 | 680 | A321-231C | V2533-A5 | 18636 | 18637 | MCO | MRO-TEC | ACY |
| 56 | SMBC Aviation Capital | 6304 | 630 | A320-232C | V2527-A5 | 17454 | 17458 | BNA | FLL | BNA |
| 57 | SMBC Aviation Capital | 5954 | 625 | A320-232C | V2527-A5 | 17062 | 17064 | FLL | BNA | FLL |
| 58 | SMBC Aviation Capital | 11124 | 965 | A320-271N | PW1127G-JM | 800037 | 800123 | IND | MZJ | GYR |
| 59 | SMBC Aviation Capital | 11951 | 994 | A320-271N | PW1127G-JM | 800998 | 801067 | MCO | MCO | GYR |
| 60 | SMBC Aviation Capital | 5132 | 614 | A320-232C | V2527-A5 | 16233 | 16225 | MIA | MCO | MRO-MTUC |
| 61 | SMBC Aviation Capital | 5672 | 621 | A320-232C | V2527-A5 | 16786 | 16788 | LGA | MCO | EWR |
| 62 | SMBC Aviation Capital | 11002 | 960 | A320-271N | PW1127G-JM | 772981 | 772991 | MCO | MRO - DFW | MCO |
| 63 | SMBC Aviation Capital | 11128 | 967 | A320-271N | PW1127G-JM | 800120 | 800128 | BOS | MCO | MRO - DFW |
| 64 | ST Engineering Aerospace | 6082 | 627 | A320-232C | V2527-A5 | 17209 | 17219 | LAS | LAS | MIA |
| 65 | ST Engineering Aerospace | 6193 | 628 | A320-232C | V2527-A5 | 17305 | 17311 | SAL | MCO | DFW |
| 66 | Stratos | 5517 | 619 | A320-232C | V2527-A5 | 16633 | 16637 | DTW | FLL | EWR |

## Schedule 2

### Leased Spare Engines

| ESN | Engine Type | Lessor | Surrender Location |
|---|---|---|---|
| 16733 | V2527-A5 | ELFC | ORD |
| 17829 | V2527-A5 | ELFC | FLL |
| 801304 | PW1133G-JM | Pratt & Whitney Engine Leasing | FLL |
| 770750 | PW1127G-JM | Pratt & Whitney Engine Leasing | DTW |
| 770496 | PW1127G-JM | Pratt & Whitney Engine Leasing | DTW |
| 770276 | PW1127G-JM | Pratt & Whitney Engine Leasing | DTW |
| 10348 | V2524 | Pratt & Whitney Engine Leasing | DTW |
| 11760 | V2524 | Pratt & Whitney Engine Leasing | DTW |
| 11229 | V2524 | Pratt & Whitney Engine Leasing | IAH |
| 801130 | PW1133G-JM | Pratt & Whitney Engine Leasing | IAH |

## Schedule 3

### GTE Engines

| ESN | Engine Type | Lessor | Surrender Location |
|---|---|---|---|
| 771487 | PW1127G-JM | JSAI | IAH |
| 771502 | PW1127G-JM | JSAI | DTWHQ |
| 771628 | PW1127G-JM | JSAI | GYR |
| 771720 | PW1127G-JM | JSAI | MZJ |
| 771740 | PW1127G-JM | JSAI | GYRS |
| 771800 | PW1127G-JM | JSAI | GYR |
| 771984 | PW1127G-JM | JSAI | IAH |
| 771985 | PW1127G-JM | JSAI | FLL |
| 772204 | PW1127G-JM | JSAI | GYR |
| 772494 | PW1127G-JM | JSAI | FLLSQ |
| 772528 | PW1127G-JM | JSAI | CLT |
| 772530 | PW1127G-JM | JSAI | GYRS |