DEBEVOISE & PLIMPTON LLP
66 Hudson Boulevard East
New York, New York 10001
Tel.: (212) 909-6000
Jasmine Ball
Elie J. Worenklein

*Fleet Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **SPIRIT AVIATION HOLDINGS, INC.,** *et al.*, | **Case No. 25-11897 (SHL)** |
| **Debtors.**[1] | **Jointly Administered** |

**DEBTORS' MOTION FOR
ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTORS
TO SELL OR ABANDON THEIR REMAINING OWNED AIRCRAFT,
ENGINES AND OTHER RELATED EQUIPMENT, (II) ESTABLISHING
PROCEDURES RELATED THERETO AND (III) GRANTING RELATED RELIEF**

Spirit Aviation Holdings, Inc. and its direct and indirect subsidiaries (collectively, the "**Debtors**," the "**Company**," or "**Spirit**"), each of which is a debtor and debtor in possession in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), respectfully state as follows:

**Preliminary Statement**

1.    As set forth in the *Declaration of Fred Cromer in Support of (I) the Wind-Down Motions and (II) the Motion to Shorten* (the "**Cromer Declaration**"), filed contemporaneously, recent geopolitical events resulted in a massive and sustained increase in fuel prices, and a corresponding rapid and unexpected decline in the Debtors' liquidity situation. Cromer Decl. ¶ 4.

---

[1]    The Debtors' names and last four digits of their respective employer identification numbers are as follows: Spirit Aviation Holdings, Inc. (1797); Spirit Airlines, LLC (7023); Spirit Finance Cayman 1 Ltd. (7020); Spirit Finance Cayman 2 Ltd. (7362); Spirit IP Cayman Ltd. (4732); and Spirit Loyalty Cayman Ltd. (4752).  The Debtors' mailing address is 1731 Radiant Drive, Dania Beach, FL 33004.

The Debtors and their advisors searched for increased capital and any sources of savings or liquidity, leaving no option unexplored, while, in parallel, planning for a possible wind-down of operations should it become necessary.  It became clear on Thursday that sufficient incremental liquidity would not be found, and that there were no longer any viable paths to a restructuring or continued operations.  Having fought valiantly for months to reorganize and having all but succeeded with the previously filed plan of reorganization, the Debtors regrettably determined, after consultations with their advisors, the Committee, and certain secured lenders, that the only alternative is to pursue to an orderly wind-down of operations (the "**Wind-Down**").

2.      The Debtors now seek approval of, and authority to implement, the Wind-Down from the Court on an emergency basis pursuant to this Motion and other motions filed contemporaneously.  Throughout the Wind-Down, Spirit's focus will remain on its employees' safety and the realization of the value of the Debtors' assets for the Debtors' creditors.

3.      By this Motion, Spirit requests authority to take necessary steps to wind down its fleet operations.  In particular, Spirit is hereby requesting authorization to abandon the aircraft that it owns and are not already subject to a purchase agreement, and to either sell or abandon its owned spare engines and spare parts.  The costs related to Spirit's owned aircraft equipment are one of Spirit's key operational expenses, including financing obligations and storage, maintenance and insurance expenses.  The requested authorizations and procedures will ensure a safe and efficient conclusion of Spirit's business and minimize the costs incurred by Spirit when it has limited liquidity and is no longer generating revenue.  Contemporaneously herewith, Spirit is filing motions with respect to Spirit's leased fleet equipment the and the remainder of the Wind-Down.[2]

---

[2]    *See Debtors' Motion For Entry of an Order (I) Authorizing the Debtors to Reject Their Remaining Aircraft Equipment Leases, (II) Establishing Procedures Related Thereto and (III) Granting Related Relief* and *Motion of* (…continued)

**Relief Requested**

4.      The Debtors respectfully request that this Court enter an order, substantially in the form attached hereto as Exhibit A (the "**Owned Fleet Wind-Down Order**"), (i) authorizing the Debtors, pursuant to, inter alia, sections 363 and 554 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 6004, 6006, 6007, and 9007 of the Federal Rules of Bankruptcy Procedures (the "**Bankruptcy Rules**"), Rules 6004-1, 6006-1, and 6007-1 of the Local Rules for the United States Bankruptcy Court for the Southern District of New York (the "**Local Rules**"), to: (a) abandon Spirit's Owned Aircraft (as defined herein); (b) sell Spirit's interests in the Owned Spare Engines and the Spare Parts (each as defined herein) (collectively with the Owned Aircraft and the Owned Spare Engines, the "**Owned Equipment**") pursuant to the Sale Procedures (as defined herein); and (c) in the event Spirit determines that such sale(s) will not maximize the value to Spirit's estates as compared with abandoning any individual piece or all of the Owned Equipment, to abandon any or all of the Owned Equipment pursuant to the Abandonment Procedures (as defined below), and (ii) establishing deadlines and procedures for, as applicable, aircraft lessors, indenture trustees, owner trustees, owner participants, loan participants, loan trustees, lenders, collateral trustees, insurers, or other relevant parties (collectively the **"Aircraft Equipment Counterparties"**) to take possession of the Owned Equipment.

---

*the Debtors for Entry of an Order (I) Authorizing the Debtors to Wind Down Operations, (II) Approving the Debtors' Use of Cash Collateral and Amendments to the DIP Credit Agreement and Final DIP Order, (III) Authorizing Modification or Termination of the Debtors' Employee Programs, (IV) Approving Wind-Down Incentive and Retention Plan, (V) Approving Modification of Contract Rejection Procedures, (VI) Approving Non-Fleet Assets Sale Procedures, (VII) Approving Non-Fleet Assets Abandonment Procedures, (VIII) Approving the Use of Certain Third-Party Contractors, (IX) Approving Protections for Certain Persons Implementing the Wind-Down, (X) Enforcing an Administrative Stay, (XI) Authorizing the Preemption of Applicable Laws and Ordinances for the Debtors to Effectuate the Wind-Down, (XII) Authorizing the Debtors to Take Any and All Actions Necessary to Implement the Wind-Down, and (XIII) Granting Related Relief (the "**Non-Fleet Wind-Down Motion**").*

3

## Jurisdiction and Venue

5.     The United States Bankruptcy Court for the Southern District of New York (the "**Court**") has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.).

6.     This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b).  The Debtors confirm their consent to the entry of a final order by the Court in connection with this Motion.

7.     Venue of the Chapter 11 Cases and related proceedings is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

### A.  General Background

8.     On August 29, 2025 (the "**Petition Date**"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors remain in possession of their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Chapter 11 Cases are being jointly administered, for procedural purposes only, pursuant to Bankruptcy Rule 1015(b), as ordered by the Court [ECF No. 35].

9.     On September 17, 2025, the United States Trustee for the Southern District of New York (the "**U.S. Trustee**") appointed an Official Committee of Unsecured Creditors (the "**Committee**") pursuant to section 1102 of the Bankruptcy Code [ECF No. 117].

10.     On October 29, 2025, the U.S. Trustee appointed Marc J. Heimowitz as Examiner pursuant to section 1104(d) of the Bankruptcy Code [ECF No. 381].

11.     Additional information about the events leading up to the Petition Date and the Debtors' businesses, affairs, capital structure, and prepetition indebtedness can be found in the

*Declaration of Fred Cromer in Support of the Chapter 11 Proceedings and First Day Pleadings* [ECF No. 19].

12.     On March 13, 2026, the Debtors filed the Plan, putting forward a proposed plan of reorganization [ECF No. 848]. On March 13, 2026, in connection with the Plan, the Debtors also filed the *Notice of Entry into Restructuring Support Agreement* [ECF No. 849] (as amended, restated, supplemented or modified from time to time, the "**RSA**"), in which the Debtors and the Consenting DIP Lenders, as defined in the RSA, memorialized their support for the Plan.

13.     On March 13, 2026, the Debtors also filed the Disclosure [ECF No. 850], describing the Plan and its provisions.

14.     As of the date hereof, Spirit's fleet consists of 114 Airbus A320 family aircraft. Of these, 66 are currently leased by Spirit (each a "**Leased Aircraft**") and 28 are owned by Spirit and subject to financings and not already subject to a pending sale motion (each an "**Owned Aircraft**"). Twenty of Spirit's currently owned aircraft are subject to the *Order (A) Authorizing the Sale of Certain Aircraft Free and Clear of All Liens, Claims and Encumbrances and Other Interests and (B) Granting Related Relief* [ECF No. 991] (the "**HFS Sale Order**") (such aircraft, the "**HFS Aircraft**"). For the avoidance of doubt, nothing in this Motion impacts or modifies the HFS Sale Order and the Debtors intend to honor and close the sale in accordance with the HFS Sale Order.

15.     Spirit also owns 18 spare engines (each an "**Owned Spare Engine**"), which are subject to a lien in connection with Spirit's revolving credit facility.

16.     Spirit also owns certain aircraft equipment-related spare parts (the "**Spare Parts**"), which are subject to a lien in connection with Spirit's revolving credit facility.

**B. The Discontinuation of Spirit's Revenue Service and Liquidation of its Fleet**

17.     As discussed in the Cromer Declaration, as of 3:00 a.m. ET on May 2, 2026 the Debtors ceased all passenger flight operations and asked the Federal Aviation Administration to issue a ground stop for Spirit flights to ensure no accidental dispatches. Cromer Decl. ¶ 12. Given the Debtors' determination that the safest time to make this announcement was when no planes were in the air and all crew who were away from their bases had sufficient time to check into hotel accommodations, it was essential that the announcement occur in the early morning hours and after the Debtors had confirmed that all planes were on the ground. *Id.* These actions were taken to prioritize the safety of passengers and crew given the unique nature of the Debtors' businesses. *Id.*

18.     Following Spirit's discontinuation of passenger service as set forth above, Spirit is focused on realizing available proceeds for the benefit of its stakeholders, while simultaneously seeking to minimize its costs. Accordingly, Spirit, by this motion, contemplates the following path forward with respect to the Owned Equipment:

(i)     With respect to the Owned Aircraft, and solely to the extent that the applicable Aircraft Equipment Counterparties that have security interests in the applicable Owned Aircraft reach an agreement with the Debtors on providing financing to undertake a sale process (each a "**Sale Process Agreement**"), Spirit will endeavor to sell the Owned Aircraft pursuant to the sale procedures described in the Owned Fleet Wind-Down Order (the "**Owned Equipment Sale Procedures**");

(ii)    With respect to any Owned Aircraft for which Spirit does not enter into a Sale Process Agreement or which Spirit is unable, in its business judgment,

6

to sell in an economical and value-maximizing manner pursuant to such Sale Process Agreement, Spirit will abandon such Owned Aircraft and Spirit will make the Owned Aircraft available to the applicable Aircraft Equipment Counterparty "as-is where-is" for abandonment and subsequent repossession (the "**Abandonment Procedures**"); and

(iii)    With respect to any Owned Spare Engines and Spare Parts, Spirit will endeavor to sell these assets pursuant to the Sale Procedures and in the event that Spirit is unable, in its business judgment, to sell the Owned Spare Engines or Spare Parts in an economical and value-maximizing manner, Spirit will abandon the Owned Spare Engines and Spare Parts in accordance with the Abandonment Procedures, namely Spirit will make the Owned Spare Engines and Spare Parts available to the applicable Aircraft Equipment Counterparty "as-is where-is" for abandonment and subsequent repossession.

19.    The Owned Equipment Sale Procedures and the Abandonment Procedures shall not apply to any Revolving Priority Collateral as defined in that certain Amended and Restated Credit and Guaranty Agreement, dated as of March 12, 2025 (as amended to date, the "**Amended and Restated Revolving Credit Facility Agreement**"), among Spirit Airlines, LLC (as successor-in-interest to Spirit Airlines, Inc.), the guarantors from time to time party thereto, the lenders from time to time party thereto, Citibank, N.A., as administrative agent ("**RCF Administrative Agent**"), and Wilmington Trust, National Association, as collateral agent, without the consent of the RCF Administrative Agent.

7

**Owned Equipment Sale Procedures**

20.     As indicated above, the Debtors propose (i) to the extent Sale Process Agreement(s) are entered into, to endeavor to sell the Owned Aircraft and (ii) to endeavor to sell the Owned Spare Engines and Owned Spare Parts.   The Debtors propose the Owned Equipment Sale Procedures as an alternative to those set forth in Bankruptcy Rule 6004 and request that the requirements of Rule 6004 be waived or modified with respect to any sale of Owned Equipment undertaken by the Debtors pursuant to the Owned Equipment Sale Procedures.

21.     The Owned Equipment Sale Procedures will permit the Debtors to sell the Owned Equipment efficiently and free and clear of all liens, claims, interests and encumbrances (any of the foregoing, an "**Encumbrance**"), which will maximize the value of the Owned Equipment as well as the recovery for creditors.   For purposes of the Owned Equipment Sale Procedures, (a) the net benefit estimated to be realized by the Debtors' estates in a private sale of an item of Owned Equipment or (b) the book value of an item of Owned Equipment to be sold shall constitute the "**Transaction Value**".   The net benefit is the amount of cash consideration or fair market value of non-cash consideration estimated to be received by the Debtors plus the value of any liabilities to be assumed by the purchaser (to the extent quantifiable or reasonably estimable, as determined by the Debtors in their discretion), less expenses to be incurred in connection with the sale, or any offsets or other deductions (to the extent quantifiable or reasonably estimable, as determined by the Debtors in their discretion).   The Transaction Value shall be determined without consideration as to whether the property proposed to be sold is free and clear of all Encumbrances.

(a)     **Transaction Value Less than or Equal to $1,000,000**

(i)     If the Transaction Value for an item of Owned Equipment is less than or equal to $1,000,000, no notice or hearing shall be required.

(b) **Transaction Value Greater than $1,000,000 and Less than or Equal to $15,000,000**

(i) If the Transaction Value for an item of Owned Equipment is greater than $1,000,000 and less than or equal to $15,000,000, the Debtors shall file a notice with the Court (the "**Sale Notice**") substantially in the form attached to the Owned Equipment Wind-Down Order as **Exhibit 1**, specifying (i) the Owned Equipment proposed to be sold, (ii) the proposed purchaser or transferee, and (iii) proposed purchase price.

(ii) The Debtors shall serve the Sale Notice only on (i) the Committee, (ii) any Aircraft Equipment Counterparty with an interest in the Owned Equipment, (iii) the DIP Lenders and the DIP Facility Agent,  (iii) the Ad Hoc Committee of Senior Secured Noteholders, (iv) each agent or trustee under the Debtors' secured notes indenture, including the Secured Notes Trustee, (v) the RCF Administrative Agent (vi) the U.S. Trustee, and (vii) the Federal Aviation Administration (collectively, the "**Transaction Notice Parties**").

(iii) The deadline for filing an objection to the proposed sale of Owned Equipment (a "**Transaction Objection**") shall be 4:00 p.m. (prevailing Eastern time) on the date that is fourteen (14) days after the date the Sale Notice is filed and served (the "**Transaction Objection Deadline**"). A Transaction Objection will be considered timely only if it is filed with the Court and actually received by the Debtors and the Debtors' counsel on or before the Transaction Objection Deadline.

(iv) Transaction Objections must include (i) an appropriate caption, including the title and date of the Sale Notice to which it is directed, (ii) the name of the objector, (iii) a concise statement setting forth the reasons why the objecting party believes the Court should not permit the sale, and (iv) the name, address, telephone number and email address, as applicable, of a person authorized to settle or otherwise resolve any objection on the objector's behalf.

(v) Unless otherwise ordered by the Court, a reply to a Transaction Objection may be filed with the Court and served at least one business day before the date of the applicable hearing.

(vi) If no Transaction Objections are properly filed and received by the Transaction Objection Deadline, or if the parties consensually resolve such Transaction Objection, then the Debtors may

immediately sell the Owned Equipment listed in the Sale Notice without further notice or order, and take any actions and execute any agreements or other documentation that are necessary or desirable to close the transaction, transfer the relevant Owned Equipment free and clear of all Encumbrances and obtain the sale proceeds.

(vii) If a Transaction Objection is timely received and filed and cannot be settled by the parties, the Owned Equipment that is the subject of the Transaction Objection will not be sold except upon order of the Court; *provided, however*, that any Owned Equipment set forth in the Sale Notice that is not the subject of a Transaction Objection may be immediately sold in accordance with the foregoing.

**(c) Transaction Value Greater than $15,000,000**

(i) If the Transaction Value for the sale of any one item of Owned Equipment is greater than $15,000,000, the Debtors shall file a motion with the Court requesting approval of such sale.

**(d) As Is, Where Is; Free and Clear**

(i) All purchasers will take the Owned Equipment sold by the Debtors pursuant to the Owned Equipment Sale Procedures "as is" and "where is," without any representations or warranties from the Debtors as to the quality or fitness of such assets for either their intended or any particular purpose. Pursuant to section 363(f) of the Bankruptcy Code, all sales of the Owned Equipment in accordance with these Owned Equipment Sale Procedures will be free and clear of Encumbrances, with any such Encumbrances to, at the Debtors' sole discretion, either be (i) satisfied from the proceeds of the sale or (ii) transferred and attached to the net sale proceeds in the same order of priority that such liens had on the Owned Equipment sold, in each case, subject to any claims and defenses that the Debtors may possess with respect thereto.

**(e) Sale Process Agreements**

(i) The Debtors shall be permitted to enter into Sale Process Agreements without further approval of the Court; *provided, however*, that any such agreement (i) shall provide for the Debtors to receive prompt reimbursement from the applicable Aircraft Equipment Counterparty for any reasonable actual out-of-pocket expenses associated with such sale process or cooperation that the Debtors agree to provide and (ii) shall not

10

require the Debtors to make any representations, warranties, or indemnifications.

### Abandonment Procedures

22. As noted above, to the extent the Debtors are unable to enter into Sale Process Agreements with respect to the Owned Aircraft or are unable to economically monetize the Owned Spare Engines or Spare Parts, the Debtors by this Motion seek to abandon the applicable Owned Equipment. To that end, the Debtors propose Abandonment Procedures as fully delineated in the Owned Fleet Wind-Down Order and summarized below with respect to any Owned Equipment that the Debtors elect to abandon:

(a) **Owned Equipment to Be Abandoned Less than or Equal to $5,000,000**

(i) If the book value of the Owned Equipment to be abandoned is less than or equal to $5,000,000, the Debtors shall serve notice on (i) the person or entity to whom the Owned Equipment is to be abandoned, (ii) any person or entity identified by the Debtors in their sole discretion with a particularized interest in the Owned Equipment to be abandoned, including any known creditor asserting an Encumbrance with respect to the Owned Equipment to be abandoned and (iii) the DIP Lenders and the DIP Facility Agent. Such notice shall be served seven (7) days before such Owned Equipment is to be abandoned (such date, the "**Abandonment Effective Date**"). Except for the notice in the immediately preceding sentence, no other notice or hearing shall be required for abandonments provided for under this subparagraph, *provided*, however, if Owned Equipment to be abandoned under this subparagraph constitutes DIP Collateral (as defined in the Final DIP Order (as defined in the Non-Fleet Wind-Down Motion)), abandonment of such Owned Equipment shall be subject to the consent of the Required DIP Lenders (as defined in the Final DIP Order).

(b) **Owned Equipment to Be Abandoned Greater than $5,000,000**

(i) If the book value of the Owned Equipment to be abandoned is greater than $5,000,000, the following subparagraphs shall apply:

(ii) The Debtors shall file a notice (an "**Abandonment Notice**"), substantially in the form attached to the Order as **Exhibit 2,** with the Court specifying (i) the property to be abandoned, (ii) any person or entity identified by the Debtors in their sole discretion with a particularized interest in the Owned Equipment to be abandoned, (iii) the entity to which the property is to be abandoned, and (iv) the location of the property to be abandoned. The Debtors shall serve the Abandonment Notice on the Transaction Notice Parties.

(iii) The deadline for the filing of an objection to the proposed abandonment of an item of Owned Equipment (an "**Abandonment Objection**") shall be the earlier of (i) 4:00 p.m. (prevailing Eastern time) on the day that is 7 days from the date the Abandonment Notice is filed and served and (ii) the Hearing on this Motion (the "**Abandonment Objection Deadline**"). The Debtors may extend the Abandonment Objection Deadline as to any party without further order of the Court.

(iv) An Abandonment Objection will be considered timely only if it is filed with the Court and served so that it is actually received on or before the Abandonment Objection Deadline by the Debtors and the Debtors' counsel.

(v) Unless otherwise ordered by the Court, a reply to an Objection may be filed with the Court and served no later than one business day before the date of the applicable hearing.

(vi) Abandonment Objections must include (i) an appropriate caption, including the title and date of the Abandonment Notice to which it is directed, (ii) the name of the objector, (iii) a concise statement setting forth the reasons why the objecting party believes the Court should not permit the abandonment and (iv) the name, address, telephone number and email address, as applicable, of a person authorized to settle or otherwise resolve any objection on the objector's behalf.

(vii) If no Abandonment Objections are timely filed and served by the Abandonment Objection Deadline, the Debtors may immediately abandon the Owned Equipment listed in the Abandonment Notice and take any actions that are necessary or desirable to abandon the subject property. If an Abandonment Objection is timely received and filed and cannot be resolved between the Debtors and the objecting party, the Owned Equipment that is the subject of the Abandonment Objection

12

will not be abandoned except upon order of the Court, the applicable Abandonment Effective Date being thereby postponed accordingly; *provided*, *however*, that any Owned Equipment set forth on the applicable Abandonment Notice and not the subject of an Abandonment Objection may immediately be abandoned in accordance with the foregoing sentence.

23.     The Debtors further propose the following provisions with respect to the abandonment of the Owned Equipment.

(i)     The applicable Aircraft Equipment Counterparty to an abandoned item of Owned Equipment shall be required to take possession of such Owned Equipment no later than the Abandonment Effective Date.  The Debtors are authorized to, in their sole discretion, extend this period for a reasonably necessary period of time in order to effectuate the Aircraft Equipment Counterparty's efforts to retake possession of the Owned Equipment.  The Debtors shall (i) maintain their current insurance coverage and continue the existing storage maintenance program, if applicable, for each item of Owned Equipment until the earlier of (a) Abandonment Effective Date and (b) the date on which the appropriate Aircraft Equipment Counterparty takes possession of such Owned Equipment and (ii) thereafter cease insuring and maintaining such Owned Equipment unless the Debtors and applicable Aircraft Equipment Counterparties agree otherwise.

(ii)    The Aircraft Equipment Counterparty shall be required to certify in writing to Spirit that such Aircraft Equipment Counterparty (or its duly authorized designee) is authorized to take possession of the Owned Equipment at or prior to the time the Aircraft Equipment Counterparty (or its duly authorized designee) takes or is delivered possession of the Owned Equipment.  Spirit shall be entitled to rely on such certification to relinquish possession of the respective Owned Equipment.

(iii)   In the event the Debtors elect to abandon an item of Owned Equipment, the Debtors shall, on or prior to the respective Abandonment Effective Date, make available to the applicable Aircraft Equipment Counterparty at the then-current location of each such piece of Owned Equipment or such then-current location of the Aircraft Records, both (a) the respective Owned Equipment and (b) the Aircraft Records relating to such Owned Equipment that are in the Debtors' possession in their then "as is, where is" condition and, with respect to the Aircraft Records,

13

without certification or signature and without performing any independent verification or audit thereof.

(iv)   The Debtors may satisfy the "surrender and return" requirements of section 1110(c) of the Bankruptcy Code, if applicable, by making the Owned Equipment and Aircraft Records available for pickup by the applicable Aircraft Equipment Counterparty in accordance with the Owned Fleet Wind-Down Order.

24.    To the extent necessary, the Debtors request that the automatic stay provided by section 362 of the Bankruptcy Code be modified to allow the parties to transfer, move, and dispose of the abandoned Owned Equipment upon the abandonment of the Owned Equipment.

25.    Nothing herein is intended to limit an Aircraft Equipment Counterparty's rights under section 1110 of the Bankruptcy Code.

**Basis for Relief**

**A. The Potential Sale of the Owned Equipment is Authorized by Section 363 of the Bankruptcy Code as a Sound Exercise of the Debtors' Business Judgment**

26.    Although section 363 of the Bankruptcy Code does not specify a standard for determining when it is appropriate for a court to authorize the use, sale or lease of property of the estate, the Second Circuit has required that such use, sale or lease be based upon the sound business judgment of the debtor.  *See The Official Comm. of Unsecured Creditors v. The LTV Corp. (In re Chateaugay Corp.)*, 973 F.2d 141, 143 (2d Cir. 1992); *In re Lionel Corp.*, 722 F.2d 1063, 1070 (2d Cir. 1983) (requiring "some articulated business justification" to approve the use, sale or lease of property outside the ordinary course of business); *In re Roman Catholic Diocese of Rockville Centre*, 665 B.R. 71, 82-83 (Bankr. S.D.N.Y. 2024) ("Although section 363 of the Bankruptcy Code does not specify a standard for determining when it is appropriate for a court to authorize the use, sale, or lease of property of the estate, bankruptcy courts routinely authorize sales of a debtor's assets so long as they can articulate a sound business justification for doing so.").  In that

regard, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *Comm. of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986).

27.    The business judgment rule shields a debtor's management from judicial second-guessing. *Johns-Manville Corp.*, 60 B.R. at 615-16 ("a presumption of reasonableness attaches to a debtor's management decisions").  Once the debtor articulates a sound business justification, there "is a presumption that in making a business decision the [decision maker] acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company." *In re Giftcraft Ltd.*, 672 B.R. 173, 181 (Bankr. S.D.N.Y. 2025) (quoting *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc.,* 147 B.R. 650, 656 (S.D.N.Y 1992)); *In re CLST Enterprises, LLC*, No. 24-10596 (MG), 2025 WL 951298, at *4 (Bankr. S.D.N.Y, Mar. 27, 2025) (same).  Put differently, "[c]ourts have made clear that a debtor's business judgment is entitled to great deference." *In re Weiss Multi-Strategy Advisers LLC*, 665 B.R. 578, 590 (Bankr. S.D.N.Y. 2024); *In re Roman Catholic Diocese of Rockville Centre,* 665 B.R. at 83 (same). Regarding the timing of a sale, it is well-established in this jurisdiction that a debtor may sell assets outside of a plan of reorganization pursuant to section 363(b) of the Bankruptcy Code if there is a good business reason for doing so. *See In re General Motors Corp.*, 407 B.R. 463, 489 (Bankr. S.D.N.Y. 2009) (collecting decisions).

28.    The paramount goal in any proposed sale of property of the estate is to "maximize value to the estate."  *In re Publishers Clearing House LLC*, No. 25-10694 (MG), 2025 WL 1805885, at *4 (Bankr. S.D.N.Y., June 30, 2025) (quoting *In re Metaldyne Corp.*, 409 B.R. 661, 667–68 (Bankr. S.D.N.Y. 2009); *see also, e.g., In re Food Barn Stores, Inc.*, 107 F.3d 558,

564-65 (8th Cir. 1997) (in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand"); *Integrated Resources,* 147 B.R. at 659 ("It is a well-established principle of bankruptcy law that the . . . [debtors'] duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate.") (quoting *In re Atlanta Packaging Prod., Inc*., 99 B.R. 124, 130 (Bankr. N.D. Ga. 1988)).  As one Court explained, "The Court's role here is to ensure that the Debtors conduct a fair bidding process that is 'likely to maximize the sale price' and to ensure that the Debtors have articulated a sound business reason for the sale."  *In re Celsius Network LLC*, No. 22-10964 (MG), 2022 WL 14193879, at *10 (Bankr. S.D.N.Y. Oct. 24, 2022) (citing the Sale Guidelines).

29.     Bankruptcy Rule 6004(f)(1) provides that a sale under section 363 of the Bankruptcy Code may be by private sale or public auction.  *See also In re Weiss Multi-Strategy*, 665 B.R. at 591 ("there is no requirement in the Bankruptcy Code or Bankruptcy Rules that an asset sale be subject to a formal auction."); *In re The Great Atl. & Pac. Tea Co., Inc*., 544 B.R. 43, 49 (Bankr. S.D.N.Y. 2016) ("More importantly, there is no rule that a debtor's decision to reject a lease be subject to a formal auction: even asset sales are not conditioned on such a requirement, which does not appear in the Bankruptcy Code or Bankruptcy Rules.").

30.     Accordingly, this Court's Sale Guidelines confirm the propriety of private sales, imposing solely a requirement that a sale motion disclose that the sale is private and explain why the debtor seeks to structure the sale in such a manner and how it is likely to maximize the sale price. (*See* Sale Guidelines at 2 n.2 ("With the exception of providing for such disclosure, these Guidelines do not express a preference for public over private sales as a means to maximize the sale price.), 9 ("Private Sale/No Competitive Bidding. If no auction is contemplated, the debtor has agreed to a limited no-shop or no-solicitation provision, or the debtor has otherwise not sought

or is not actively seeking higher or better offers, the sale motion must so state and explain why such sale is likely to maximize the sale price.").

31.     As a preliminary matter, the sale of the Owned Equipment is plainly in the best interests of the Debtors in light of their decision to discontinue passenger service and wind-down their operations.  Continuing to own and be obliged to pay mortgage payments and provide for the maintenance and staffing of the Owned Aircraft and other Owned Equipment when they will not be in revenue service will be purely a cash drain on the Debtors' estates that will reduce recoveries for all stakeholders.

32.     The Debtors further submit that the sale of the Owned Equipment pursuant to the Owned Equipment Sale Procedures and without a formal auction process is in the best interest of the Debtors' estate and stakeholders in light of the facts and circumstances of these Chapter 11 Cases.  In light of the Debtors' recent determination to cease their operations, retaining the Owned Equipment for a lengthy auction process would further strain the Debtors' limited liquidity to the detriment of the Debtors' stakeholders.  The Debtors do not have the liquidity to incur the costs associated with an extended sale process and it is unclear whether an auction would result in any additional sale proceeds because certain of the Owned Equipment have been marketed for an extended period of time in connection with the sale of the HFS Aircraft and recent discussions with other interested parties.

33.     The proposed Owned Equipment Sale Procedures will allow the Debtors to sell the Owned Equipment in a controlled, fair and open fashion that seeks to maximize the value of the Owned Equipment before the Debtors make any determination to abandon the Owned Equipment. The Debtors believe that the Owned Equipment Sale Procedures will encourage bidding for the Owned Equipment and that they are appropriate under the relevant standards governing sales in

17

bankruptcy proceedings. The Debtors also submit that the proposed Owned Equipment Sale Procedures comply with the requirements of the Sale Guidelines.

34.      Thus, the proposed Owned Equipment Sale Procedures are reasonable, appropriate and within Spirit's sound business judgment under the circumstances because they will promote active bidding from interested parties and ultimately will serve to maximize the value that Spirit will recover on account of the Owned Equipment.

**B.  The Proposed Noticing Procedures Are Appropriate**

35.      Under Bankruptcy Rules 2002(a) and (c), Spirit is required to notify creditors of the proposed sale of the Owned Equipment.  Bankruptcy Rules 6004, 7004 and 9014 also provide specific rules with respect to providing notice of a sale of assets free and clear of claims, liens and encumbrances (collectively, "**Encumbrances**").  Additionally, the Sale Guidelines specify the list of parties-in-interest that should receive notice of a proposed sale.

36.      The Debtors believe that they will obtain in an efficient manner fair consideration for the benefit of all stakeholders if the Owned Equipment is sold through the Owned Equipment Sale Procedures.  Spirit submits that their proposed notices comply with Bankruptcy Rules 2002, 6004, 7004 and 9014 as well as the Sale Guidelines, and are reasonably calculated to provide timely and adequate notice of Owned Equipment Sale Procedures to Spirit's creditors and other parties in interest.  Based upon the foregoing, Spirit respectfully requests that this Court approve the notice procedures proposed above.

**C.  The Sale of the Owned Equipment Free and Clear of Encumbrances Is Authorized by Section 363(f)**

37.      Spirit further submits that it is appropriate to sell the Owned Equipment free and clear of Encumbrances pursuant to section 363(f) of the Bankruptcy Code, with any such Encumbrances attaching to the net sale proceeds of the Owned Equipment, as and to the extent

18

applicable.  Section 363(f) of the Bankruptcy Code authorizes a debtor to sell assets free and clear

of liens, claims, interests and encumbrances if:

> (a)  applicable nonbankruptcy law permits sale of such property free and clear of such interests;
> (b)  such entity consents;
> (c)  such interest is a lien and the price at which such property is to be sold is greater than the value of all liens on such property;
> (d)  such interest is in bona fide dispute; or
> (e)  such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

38.    Bankruptcy Code section 363(f) is drafted in the disjunctive.  11 U.S.C. § 363(f).

As such, courts have recognized that satisfaction of any one of its five requirements will suffice to

permit the sale of the Owned Equipment "free and clear" of liens and interests.  *In re Motors*

*Liquidation Company*, 829 F.3d 135, 154 (2d Cir. 2016) ("A sale pursuant to § 363(b) may be

made 'free and clear of any interest in such property' if any condition [listed under 11 U.S.C.

§ 363(f)] is met."); *Giftcraft*, 672 B.R. at 181; *In re Old Market Group Holdings Corp*., No. 20-

10161 (JLG), 2022 WL 4371544, at *8 (Bankr. S.D.N.Y. Sept. 21, 2022) ("Section 363(f) is in the

disjunctive, such that the sale free of the interest concerned may occur if any one of the conditions

of § 363(f) have been met.") (quoting *In re Dundee Equity Corp.,* No. 89-B-10233, 1992 WL

53743, at *4 (Bankr. S.D.N.Y. Mar. 6, 1992). Moreover, "[a]lthough the text of the statute refers

only to interests in the property itself, it is now generally agreed – including in this Circuit – that

this provision may more broadly extinguish claims that 'arise from the property being sold.'" *In*

*re Williamsburg Boutique, LLC*, 663 B.R. 217, 225 (Bankr. S.D.N.Y. 2024).  *See also Ind. State*

*Police Pension Tr. v. Chrysler LLC (In re Chrysler LLC)*, 576 F.3d 108, 124 (2d Cir. 2009),

*vacated as moot*, 592 F.3d 370 (2d Cir. 2010) (noting that "the trend seems to be toward a more

expansive reading of 'interests in property' which 'encompasses other obligations that may flow

19

from ownership of the property.'").

39.    Here, one or more of the tests of section 363(f) are satisfied with respect to a potential the transfer of the Owned Equipment.    The Debtors believe that all holders of Encumbrances on the Owned Equipment could be compelled to accept a money satisfaction of their interests in legal or equitable proceedings in accordance with section 363(f)(5) of the Bankruptcy Code, to the extent that such interests are sought to be discharged in the order approving the relief sought in this motion.    Accordingly, the Debtors submit that any existing Encumbrances will attach to the net proceeds recognized at a potential sale of the Owned Equipment.

**D. The Abandonment Procedures and Other Related Relief Sought Herein is in the Best Interests of the Debtors' Estates.**

40.    Section 554 of the Bankruptcy Code provides that "[a]fter notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate."  11 U.S.C. § 554(a).  Debtors have arguably even more discretion to abandon property than they do to reject an executory contract or unexpired lease, which must meet the, albeit forgiving, business judgment standard.  *See Mission Prod. v. Tempnology,* 587 U.S. at 374*; NLRB v. Bildisco & Bildisco,* 465 U.S. at 523; *In re Penn Traffic Co.*, 524 F.3d 373, 383 (2d Cir. 2008); *In re Orion Pictures Corp.*, 4 F.3d 1095, 1098-99 (2d Cir. 1993).  At this Court has explained: "The trustee's power to abandon property is discretionary and is 'bounded only by that of the court.'" *In re Republic Airways Holdings Inc.*, 547 B.R. 578, 582 (Bankr. S.D.N.Y. 2016) (quoting *In re Interpictures, Inc.*, 168 B.R. 526, 535 (Bankr. E.D.N.Y. 1994)).  That is to say, only if the debtor abuses its discretion should a court overturn the debtor's decision with respect to abandoning estate property.

41.    Here, the Debtors easily exceed the "discretionary" standard to abandon property.

As discussed above and in the Cromer Declaration, the Debtors have concluded that they are unable to continue as a going concern. The business plan underlying the RSA is no longer viable, required additional capital to continue operations was unavailable, and there were no other entities interested in purchasing or merging with the Debtors. The Debtors thus faced irreparable insolvency. Providing for an orderly wind-down is in the best interests of the Debtors' stakeholders by maximizing the remaining value of the Debtors' assets including its aircraft equipment. Providing for an orderly wind-down is also crucial to ensure a safe conclusion of the Debtors' business, given the nature and complexity of their operations. In such a wind-down scenario, continuing to be obligated under mortgages or other financings (each an "**Equipment Agreement**") with respect to aircraft equipment that is not being used in revenue service will quickly deplete the Debtors' available resources. Relieving the Debtors' estate of these obligations is necessary to and will facilitate the Debtors' orderly wind down and will maximize recoveries for all stakeholders. As set forth herein, while the Debtors will, if able, endeavor to sell all or part of the Owned Equipment pursuant to the Owned Equipment Sale Procedures, in the event that all or part of the Owned Equipment cannot be sold, Spirit submits that abandoning the property is in the best interest of its estates.

42.     In addition, the Abandonment Procedures are appropriate under the circumstances. They will ensure that the Debtors are able to quickly and efficiently provide for the termination of their obligations under the respective mortgage or other financing agreements and allow Aircraft Equipment Counterparties expeditious access to their respective Owned Equipment. The Abandonment Procedures are similar to procedures approved in this Case with respect to rejections of aircraft equipment and consistent with wind-down procedures approved in other airline cases. *See, e.g.,* ECF Nos. 301, 483, and 633; *In re Aloha Airlines, Inc.*, No. 08-00337 (Bankr. D. Haw.

21

Apr. 8, 2008) [ECF No. 206].   Finally, the Abandonment Procedures were formulated after consultation with the Committee and certain secured lenders.

### Notice

43.     Notice of this Motion will be provided to the following parties (or their counsel) (collectively, the "**Notice Parties**"): (a) the U.S. Trustee; (b) the Committee; (c) the Securities and Exchange Commission; (d) the Internal Revenue Service; (e) the United States Attorney's Office for the Southern District of New York; (f) the state attorneys general for states in which the Debtors conduct business; (g) the Department of Transportation; (h) certain holders of the Debtors' secured notes; (i) each agent or trustee under the Debtors' secured notes indenture or revolving credit facility; (j) all entities known to have asserted any lien, claim, or encumbrance in or upon any of the Owned Equipment; and (k) any other party that is entitled to notice under the *Court's Order Implementing Certain Notice and Case Management Procedures* [ECF No. 61].   A copy of this Motion and any order entered in respect thereto will also be made available on the Debtors' case information website located at https://dm.epiq11.com/SpiritAirlines.

44.     In light of the foregoing and the nature of the relief requested, the Debtors respectfully submit that no further notice is necessary.

*[The remainder of this page is intentionally blank.]*

WHEREFORE, the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as is appropriate.

Dated:   May 4, 2026
         New York, NY

                              DEBEVOISE & PLIMPTON LLP

                              /s/ Jasmine Ball
                              Jasmine Ball
                              Elie J. Worenklein
                              66 Hudson Boulevard East
                              New York, NY 10001
                              Tel.: (212) 909-6000
                              jball@debevoise.com
                              eworenklein@debevoise.com

                              *Fleet Counsel to the Debtors and Debtors in Possession*

**Exhibit A**

**Owned Fleet Wind-Down Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **SPIRIT AVIATION HOLDINGS, INC.,** *et al.*, | **Case No. 25-11897 (SHL)** |
| **Debtors.**[1] | **Jointly Administered** |

### ORDER (I) AUTHORIZING THE DEBTORS TO SELL OR ABANDON THEIR REMAINING OWNED AIRCRAFT, ENGINES AND OTHER RELATED EQUIPMENT, (II) ESTABLISHING PROCEDURES RELATED THERETO AND (III) GRANTING RELATED RELIEF

Upon the *Motion for Entry of an Order (I) Authorizing the Debtors to Sell or Abandon Their Remaining Owned Aircraft, Engines and Other Related Equipment, (II) Establishing Procedures Related Thereto and (III) Granting Related Relief* (the "**Motion**")[2] of Spirit Aviation Holdings, Inc. and its direct and indirect subsidiaries (collectively, the "**Debtors**" or "**Spirit**"), each of which is a debtor and debtor in possession in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), for entry of an order (this "**Order**"): (i) establishing sale procedures (the "**Owned Equipment Sale Procedures**") to govern the sale of Spirit's interests in the Owned Equipment; and (ii) establishing deadlines and procedures in connection with the abandonment of Owned Equipment (the "**Abandonment Procedures**"); and upon consideration of the Cromer Declaration; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 1334; and consideration of the Motion and the requested relief being a core proceeding the Bankruptcy Court can determine pursuant to 28 U.S.C. § 157(b)(2);

---

[1]    The Debtors' names and last four digits of their respective employer identification numbers are as follows: Spirit Aviation Holdings, Inc. (1797); Spirit Airlines, LLC (7023); Spirit Finance Cayman 1 Ltd. (7020); Spirit Finance Cayman 2 Ltd. (7362); Spirit IP Cayman Ltd. (4732); and Spirit Loyalty Cayman Ltd. (4752). The Debtors' mailing address is 1731 Radiant Drive, Dania Beach, FL 33004.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

and venue being proper before this Court pursuant to 28 U.S.C §§ 1408 and 1409; and due and proper notice of the Motion having been provided and no other or further notice needing to be provided under the circumstances; and the relief requested in the Motion being in the best interests of the Debtors and their estate and creditors; and the Court having reviewed the Motion and having held a hearing before the Court with appearances of parties in interest noted in the transcript thereof (the "**Hearing**"); and the Court having considered the arguments of counsel, and the evidence proffered and adduced, at the Hearing; and the Court having determined that the legal and factual bases set forth in the Motion, the Cromer Declaration and at the Hearing establish just cause for the relief granted herein; and the Court having found that the relief requested in the Motion represents a sound exercise of the Debtors' business judgment, and is in the best interests of the Debtors, their creditors, their estates, and all other parties in interest; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor, it is hereby ORDERED that:

1.    The relief requested in the Motion is hereby granted to the extent provided herein.

2.    All objections to the relief requested in the Motion that have not been withdrawn, waived or settled as announced to the Court at the hearing on the Motion or by stipulation filed with the Court, are overruled.

3.    The Debtors are authorized pursuant to sections 105(a), 363(b), and 554 of the Bankruptcy Code, and without further notice or relief from the Court, except as provided herein, to take any and all actions consistent with this Order that are necessary or appropriate in the exercise of their business judgment to implement the relief set forth herein.

4.    Pursuant to section 363(b) of the Bankruptcy Code, Spirit is authorized and empowered to take any and all actions necessary or appropriate to sell the Owned Equipment,

2

including for the avoidance of doubt to enter into Sale Process Agreements, *provided*, *however*,

that any such Sale Process Agreement (i) provides for the Debtors to receive prompt

reimbursement from the applicable counterparty for any reasonable actual out-of-pocket expenses

associated with such sale process or cooperation that the Debtors agree to provide and (ii) does not

require the Debtors to make any representations, warranties, or indemnifications.

5.      Pursuant to section 554 of the Bankruptcy Code, Spirit is authorized and

empowered to take any and all actions necessary or appropriate to abandon the Owned Equipment

subject to the Abandonment Procedures set forth herein.

6.      The Debtors are authorized to make payments pursuant to this Order in accordance

with the Wind-Down Budget (as defined in the Non-Fleet Wind-Down Motion), subject to any

permitted variances with respect thereto, upon the terms and conditions and to the extent set forth

in the Final DIP Order Amendment No. 2 and the Amendment No. 2 to DIP Credit Agreement (in

each case, as defined in the Non-Fleet Wind-Down Motion).

*Sale Procedures*

7.      The following Owned Equipment Sale Procedures are hereby approved and may be

implemented in the Debtors' Chapter 11 Cases for the Owned Equipment:

    **(a)**   **Transaction Value Less than or Equal to $1,000,000**

        (i)    If the Transaction Value for an item of Owned Equipment is less than or equal to $1,000,000, no notice or hearing shall be required.

    **(b)**   **Transaction Value Greater than $1,000,000 and Less than or Equal to $15,000,000**

        (i)    If the Transaction Value for an item of Owned Equipment is greater than $1,000,000 and less than or equal to $15,000,000, the Debtors shall file a notice with the Court (the "**Sale Notice**") substantially in the form attached to the Order as **Exhibit 1**, specifying (i) the Owned Equipment proposed to be sold and/or

3

auctioned, (ii) the proposed purchaser or transferee, and (iii) the proposed purchase price.

(ii) The Debtors shall serve the Sale Notice only on (i) the Committee, (ii) any Aircraft Equipment Counterparty with an interest in the Owned Equipment, (iii) the DIP Lenders and the DIP Facility Agent,  (iii) the Ad Hoc Committee of Senior Secured Noteholders, (iv) each agent or trustee under the Debtors' secured notes indenture, including the Secured Notes Trustee, (v) the RCF Administrative Agent (vi) the U.S. Trustee, and (vii) the Federal Aviation Administration (collectively, the "**Transaction Notice Parties**").

(iii) The deadline for filing an objection to the proposed sale of Owned Equipment (a "**Transaction Objection**") shall be 4:00 p.m. (prevailing Eastern time) on the date that is fourteen (14) days after the date the Sale Notice is filed and served (the "**Transaction Objection Deadline**"). A Transaction Objection will be considered timely only if it is filed with the Court and actually received by the Debtors and the Debtors' counsel on or before the Transaction Objection Deadline.  The Debtors may extend the Transaction Objection Deadline as to any party without further order of the Court.

(iv) Transaction Objections must include (i) an appropriate caption, including the title and date of the Sale Notice to which it is directed, (ii) the name of the objector, (iii) a concise statement setting forth the reasons why the objecting party believes the Court should not permit the sale, and (iv) the name, address, telephone number and email address, as applicable, of a person authorized to settle or otherwise resolve any objection on the objector's behalf.

(v) Unless otherwise ordered by the Court, a reply to a Transaction Objection may be filed with the Court and served at least one business day before the date of the applicable hearing.

(vi) If no Transaction Objections are properly filed and received by the Transaction Objection Deadline, or if the parties consensually resolve such Transaction Objection, then the Debtors may immediately sell the Owned Equipment listed in the Sale Notice without further notice or order, and take any actions and execute any agreements or other documentation that are necessary or desirable to close the transaction, transfer the relevant Owned Equipment free and clear of all Encumbrances and obtain the sale proceeds.

4

(vii)   If a Transaction Objection is timely received and filed and cannot be settled by the parties, the Owned Equipment that is the subject of the Transaction Objection will not be sold except upon order of the Court; *provided*, *however*, that any Owned Equipment set forth in the Sale Notice that is not the subject of a Transaction Objection may be immediately sold in accordance with the foregoing.

**(c)    Transaction Value Greater than $15,000,000**

(i)    If the Transaction Value for the sale of any one item of Owned Equipment is greater than $15,000,000, the Debtors shall file a motion with the Court requesting approval of such sale.

**(d)    As Is, Where Is; Free and Clear**

(i)    All purchasers will take the Owned Equipment sold by the Debtors pursuant to the Owned Equipment Sale Procedures "as is" and "where is," without any representations or warranties from the Debtors as to the quality or fitness of such assets for either their intended or any particular purpose. Pursuant to section 363(f) of the Bankruptcy Code, all sales of the Owned Equipment in accordance with these Owned Equipment Sale Procedures will be free and clear of Encumbrances, with any such Encumbrances to, at the Debtors' sole discretion, either be (i) satisfied from the proceeds of the sale or (ii) transferred and attached to the net sale proceeds in the same order of priority that such liens had on the Owned Equipment sold, in each case, subject to any claims and defenses that the Debtors may possess with respect thereto.

**(e)    Sale Process Agreements**

(i)    The Debtors are permitted to enter into Sale Process Agreements without further approval of the Court; *provided, however*, that any such agreement (i) provides for the Debtors to receive prompt reimbursement from the applicable Aircraft Equipment Counterparty for any reasonable actual out-of-pocket expenses associated with such sale process or cooperation that the Debtors agree to provide and (ii) does not require the Debtors to make any representations, warranties, or indemnifications.

*Abandonment Procedures*

8.    The Debtors' abandonment of the Owned Aircraft is hereby approved as of the date of entry of this Order pursuant to section 554 of the Bankruptcy Code, unless the Debtors and the

5

applicable Aircraft Equipment Counterparty have entered into a Sale Process Agreement.

9. The following Abandonment Procedures are hereby approved and may be implemented in the Debtors' Chapter 11 Cases for the Owned Equipment:

**(a) Owned Equipment to Be Abandoned Less than or Equal to $5,000,000**

(i) If the book value of the Owned Equipment to be abandoned is less than or equal to $5,000,000, the Debtors shall serve notice on (i) the person or entity to whom the Owned Equipment is to be abandoned, (ii) any person or entity identified by the Debtors in their sole discretion with a particularized interest in the Owned Equipment to be abandoned, including any known creditor asserting an Encumbrance with respect to the Owned Equipment to be abandoned and (iii) the DIP Lenders and the DIP Facility Agent. Such notice shall be served seven (7) days before such Owned Equipment is to be abandoned (such date, the "**Abandonment Effective Date**"). Except for the notice in the immediately preceding sentence, no other notice or hearing shall be required for abandonments provided for under this subparagraph, *provided*, however, if Owned Equipment to be abandoned under this subparagraph constitutes DIP Collateral (as defined in the Final DIP Order (as defined in the Non-Fleet Wind-Down Motion)), abandonment of such Owned Equipment shall be subject to the consent of the Required DIP Lenders (as defined in the Final DIP Order).

**(b) Owned Equipment to Be Abandoned Greater than $5,000,000**

(i) Notwithstanding any other provisions herein, if the book value of the Owned Equipment to be abandoned is greater than $5,000,000, the following subparagraphs shall apply:

(ii) The Debtors shall file a notice (an "**Abandonment Notice**"), substantially in the form attached to the Order as **Exhibit 2,** with the Court specifying (i) the property to be abandoned, (ii) any person or entity identified by the Debtors in their sole discretion with a particularized interest in the Owned Equipment to be abandoned, (iii) the entity to which the property is to be abandoned, and (iv) the location of the property to be abandoned. The Debtors shall serve the Abandonment Notice on the Transaction Notice Parties.

(iii) The deadline for the filing of an objection to the proposed abandonment of an item of Owned Equipment (an "**Abandonment Objection**") shall be the earlier of

6

(i) 4:00 p.m. (prevailing Eastern time) on the day that is 7 days from the date the Abandonment Notice is filed and served and (ii) the Hearing on this Motion (the "**Abandonment Objection Deadline**"). The Debtors may extend the Abandonment Objection Deadline as to any party without further order of the Court.

(iv)   An Abandonment Objection will be considered timely only if it is filed with the Court and served so that it is actually received on or before the Abandonment Objection Deadline by the Debtors and the Debtors' counsel.

(v)   Unless otherwise ordered by the Court, a reply to an Objection may be filed with the Court and served no later than one business day before the date of the applicable hearing.

(vi)   Abandonment Objections must include (i) an appropriate caption, including the title and date of the Abandonment Notice to which it is directed, (ii) the name of the objector, (iii) a concise statement setting forth the reasons why the objecting party believes the Court should not permit the abandonment and (iv) the name, address, telephone number and email address, as applicable, of a person authorized to settle or otherwise resolve any objection on the objector's behalf.

(vii)   If no Abandonment Objections are timely filed and served by the Abandonment Objection Deadline, the Debtors may immediately abandon the Owned Equipment listed in the Abandonment Notice and take any actions that are necessary or desirable to abandon the subject property.  If an Abandonment Objection is timely received and filed and cannot be resolved between the Debtors and the objecting party, the Owned Equipment that is the subject of the Abandonment Objection will not be abandoned except upon order of the Court, the applicable Abandonment Effective Date being thereby postponed accordingly; *provided*, *however*, that any Owned Equipment set forth on the applicable Abandonment Notice and not the subject of an Abandonment Objection may immediately be abandoned in accordance with the foregoing sentence.

10.   The applicable Aircraft Equipment Counterparty to an abandoned item of Owned Equipment shall be required to take possession of such Owned Equipment no later than the Abandonment Effective Date.  The Debtors are authorized to, in their sole discretion, extend this period for a reasonably necessary period of time in order to effectuate the Aircraft Equipment

Counterparty's efforts to retake possession of the Owned Equipment. The Debtors shall (i) maintain their current insurance coverage and continue the existing storage maintenance program, if applicable, for each item of Owned Equipment until the earlier of (a) Abandonment Effective Date and (b) the date on which the appropriate Aircraft Equipment Counterparty takes possession of such Owned Equipment and (ii) thereafter cease insuring, storing and maintaining such Owned Equipment unless the Debtors and applicable Aircraft Equipment Counterparties agree that the applicable Aircraft Equipment Counterparties will pay directly or timely reimburse the Debtors for such expenses.

11.     The Aircraft Equipment Counterparty shall be required to certify in writing to Spirit that such Aircraft Equipment Counterparty (or its duly authorized designee) is authorized to take possession of the Owned Equipment at or prior to the time the Aircraft Equipment Counterparty (or its duly authorized designee) takes or is delivered possession of the Owned Equipment. Spirit shall be entitled to rely on such certification to relinquish possession of the respective Owned Equipment.

12.     In the event the Debtors elect to abandon a piece of Owned Equipment, the Debtors shall, on or prior to the respective Abandonment Effective Date, make available to the applicable Aircraft Equipment Counterparty at the then-current location of each such piece of Owned Equipment or such then-current location of the Aircraft Records, both (a) the respective Owned Equipment and (b) the Aircraft Records relating to such Owned Equipment that are in the Debtors' possession in their then "as is, where is" condition and, with respect to the Aircraft Records, without certification or signature and without performing any independent verification or audit thereof.

13.     In the event the Debtors abandon a piece of Owned Equipment, upon written

request from an affected Aircraft Equipment Counterparty, the Debtors shall cooperate reasonably with such Aircraft Equipment Counterparty with respect to the execution of, or provision of, information required for any documentation, as appropriate, to be filed with the aviation authority in the applicable jurisdiction in connection with such Owned Equipment, *provided that* the affected Aircraft Equipment Counterparty shall be solely responsible for all costs associated with such documentation and for the filing thereof with such relevant aviation authority or register and *provided further* that nothing herein shall require the Debtors to maintain staffing or incur third-party costs with respect to such cooperation.

14.     The surrender and return of the Owned Equipment and related Aircraft Records to any Aircraft Equipment Counterparty in accordance with this Order is approved and satisfies the Debtors' obligations under section 1110(c) of the Bankruptcy Code, to the extent that section 1110(c) of the Bankruptcy Code is applicable.

15.     Once the effected Aircraft Equipment Counterparty retrieves or takes control of its Owned Equipment in connection with an abandonment by the Debtors of such Owned Equipment, such Aircraft Equipment Counterparty or the authorized party under an IDERA or a power of attorney provided by the Debtors, if any, shall be permitted to request the cancellation, or transfer to a party designated by such Aircraft Equipment Counterparty, of such Owned Equipment's registration on an aviation authority's register or with any other applicable registration authority, as applicable, *provided that* the affected Aircraft Equipment Counterparty shall be solely responsible for all costs associated with such request or transfer.

16.     If the Aircraft Equipment Counterparty affected by the abandonment of an Owned Equipment does not retrieve or otherwise take control of its respective Owned Equipment by the Abandonment Effective Date or such other date that the Debtors and applicable Aircraft

9

Equipment Counterparties mutually agree, such Aircraft Equipment Counterparty shall be responsible to the Debtors for the subsequent reasonable actual out-of-pocket costs of, and all risks attendant to, maintaining, insuring and storing such equipment.  Following a filing of a Notice of Abandonment by the Debtors with respect to a piece of Owned Equipment, if the respective Aircraft Equipment Counterparty does not remove such Owned Equipment or otherwise contract with the Debtors or a third party for storage of such Owned Equipment in accordance with this Order, the Debtors may file, on shortened notice, a motion to compel removal of such Owned Equipment and/or payment to the Debtors of storage and other attendant costs, including, without limitation, all related legal fees.

17.     For the avoidance of doubt, except as otherwise provided herein or in another order of this Court, the Owned Equipment and Aircraft Records will be made available to the applicable Aircraft Equipment Counterparty in "as is, where is" condition and the Debtors specifically make no representations or warranties regarding the Owned Equipment or Aircraft Records, their condition or the state of their title.   If any of the Owned Equipment happens to be non-serviceable, the Debtors are under no obligation to repair any such Owned Equipment to make it serviceable.

18.     Nothing herein shall prejudice the rights of (i) any Aircraft Equipment Counterparty to (a) assert a claim for rejection damages, if any, (b) assert damages for failure to satisfy all contractual return or turnover provisions of the applicable Equipment Agreement, (c) assert a claim or entitlement to payment for postpetition rent, supplemental rent or other obligations under the applicable Equipment Agreement and/or as provided under applicable law, (d) assert a claim for any administrative expenses or other priority claim that arise out of or relate to any Equipment Agreement and/or as provided under applicable law, including, without limitation, for the value of any parts removed on or after the Petition Date, or (e) if the Debtors

10

fail to return any Owned Equipment or Aircraft Records as provided hereunder and/or as required under the Bankruptcy Code, seek enforcement or damages relating thereto in accordance with the provisions of the Bankruptcy Code, (ii) the Debtors or any other party to object to any such claims or actions or to assert any claims relating to this Order or the procedures contemplated herein, or (iii) the rights of any of the any Aircraft Equipment Counterparty against any other person or entity under any agreement and/or applicable law.

19.    Claims arising out of any abandonment effected pursuant to this Order must be timely filed in accordance with the *Order Establishing Deadlines and Procedures for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof* [ECF No. 597] on or before 30 days after the Abandonment Effective Date with respect to the item of Owned Equipment to which such claim relates.  Any claim not timely filed will be irrevocably barred.

20.    For the avoidance of doubt, nothing in this Order shall impact or modify the *Order (A) Authorizing the Sale of Certain Aircraft Free and Clear of All Liens, Claims and Encumbrances and Other Interests and (B) Granting Related Relief* [ECF No. 991].

21.    Notwithstanding anything to the contrary in this Order, the Owned Equipment Sale Procedures and the Abandonment Procedures shall not apply to any Revolving Priority Collateral, as defined in the Amended and Restated Revolving Credit Facility Agreement, without the consent of the RCF Administrative Agent.

22.    To the extent necessary, the automatic stay of section 362 of the Bankruptcy Code (the "**Automatic Stay**") is hereby modified to allow the Debtors and the applicable Aircraft Equipment Counterparty to effectuate the provisions of this Order and to access, retrieve, transfer, move, or dispose of the Owned Equipment.  The Automatic Stay is hereby modified to permit the application of any security deposit held by an Aircraft Equipment Counterparty with respect to the

11

Equipment Agreements to the extent permitted by and in accordance with the terms of the Equipment Agreements, any other documents entered into in connection with the Equipment Agreements against the obligations of the Debtors thereunder.  In addition to the foregoing modifications of the Automatic Stay, the Automatic Stay is hereby also modified for the purpose of aircraft or aircraft-related equipment registry administration, solely and for no other purpose than to allow an Aircraft Equipment Counterparty to cancel or terminate any such Equipment Agreement, and to allow any Aircraft Equipment Counterparty to deliver any notices contemplated by such Equipment Agreement, in the event the Debtors elect to abandon such Owned Equipment. Nothing herein shall affect the scope of the Automatic Stay with respect to other matters, including, without limitation, those relating to claims asserted against the Debtors by any other person or entity.

23.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

24.     This Court shall retain jurisdiction to resolve any dispute relating to the interpretation of the terms and conditions of this Order.  To the extent any provisions of this Order shall be inconsistent with the Motion, the terms of this Order shall control.

25.     The notice procedures set forth in the Motion are good and sufficient notice and satisfy Bankruptcy Rules 2002(a), 6006, 6007 and 9014 by providing the counterparties with a notice and an opportunity to object and be heard at a hearing.

Dated: _____, 2026
White Plains, New York

_____
THE HONORABLE SEAN H. LANE
UNITED STATES BANKRUPTCY JUDGE

12

**<u>Exhibit 1 – Form of Sale Notice</u>**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **In re:**<br><br>**SPIRIT AVIATION HOLDINGS, INC.,** *et al.,*<br><br>**Debtors.**[1] | **Chapter 11**<br><br>**Case No. 25-11897 (SHL)**<br><br>**Jointly Administered** |

## NOTICE OF PROPOSED SALE OF ASSETS

PLEASE TAKE NOTICE that, on August 29, 2025, the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

PLEASE TAKE FURTHER NOTICE that, on [●], 2026, the United States Bankruptcy Court for the Southern District of New York (the "**Court**") entered the [*Order (I) Authorizing the Debtors to Sell or Abandon Their Remaining Owned Aircraft, Engines and Other Related Equipment, (II) Establishing Procedures Related Thereto and (III) Granting Related Relief*] [ECF No. [●]] (the "**Owned Aircraft Equipment Wind-Down Procedures Order**"), pursuant to which the Court authorized the Debtors to sell certain aircraft equipment in accordance with the terms of the Owned Aircraft Equipment Wind-Down Procedures Order.

PLEASE TAKE FURTHER NOTICE that the Debtors propose to sell the aircraft equipment set forth and described on **Exhibit A** attached hereto (the "**Sold Equipment**"). Exhibit A identifies, for each item of Sold Equipment, (i) the item of Sold Equipment being sold, (ii) the proposed purchaser or transferee; and (iii) the proposed purchase price.

PLEASE TAKE FURTHER NOTICE that, the Debtors hereby represent that the proposed sale of the Sold Equipment is in the best interest of the Debtors' estates and creditors, and is intended to maximize the value of the Debtors' estates.

PLEASE TAKE FURTHER NOTICE that, pursuant to the Owned Aircraft Equipment Wind-Down Procedures Order, any recipient of this notice may object to the proposed sale (a "**Transaction Objection**") within fourteen (14) days after the date this notice is filed and served (the "**Transaction Objection Deadline**"). Transaction Objections must be (i) in writing in English and (ii) filed with the Court, and must include (i) an appropriate caption, including the title and date of the Sale Notice to which it is directed, (ii) the name of the objector, (iii) a concise statement setting forth the reasons why the objecting party believes the Court should not permit the sale, and (iv) the name, address, telephone number and email address, as applicable, of a person

---

[1]    The Debtors' names and last four digits of their respective employer identification numbers are as follows: Spirit Aviation Holdings, Inc. (1797); Spirit Airlines, LLC (7023); Spirit Finance Cayman 1 Ltd. (7020); Spirit Finance Cayman 2 Ltd. (7362); Spirit IP Cayman Ltd. (4732); and Spirit Loyalty Cayman Ltd. (4752). The Debtors' mailing address is 1731 Radiant Drive, Dania Beach, FL 33004.

authorized to settle or otherwise resolve any objection on the objector's behalf.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Owned Aircraft Equipment Wind-Down Procedures Order, unless otherwise ordered by the Court, a reply to a Transaction Objection may be filed with the Court and served at least one business day before the date of the applicable hearing.

**PLEASE TAKE FURTHER NOTICE** that, if no Transaction Objections are properly filed and received by the Transaction Objection Deadline, or such Transaction Objection is consensually resolved by the parties, then the Debtors may immediately sell the applicable item(s) of Sold Equipment without further notice or order, and may take any actions and execute any agreements or other documentation that are necessary or desirable to close the transaction, transfer the applicable item(s) of Sold Equipment free and clear of all encumbrances, and obtain the sale proceeds.

**PLEASE TAKE FURTHER NOTICE** that, if a Transaction Objection is timely received and filed and cannot be settled by the parties, the Sold Equipment that is the subject of the Transaction Objection will not be sold except upon order of the Court; *provided*, however, that any Sold Equipment set forth in this Sale Notice that is not the subject of a Transaction Objection may be immediately sold.

**Exhibit A**

**Schedule of Sold Equipment**

| Description of Sold Equipment | Proposed Purchaser or Transferee | Proposed Purchase Price |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

**Exhibit 2 – Form of Abandonment Notice**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **In re:**<br><br>**SPIRIT AVIATION HOLDINGS, INC.,** *et al.,*<br><br>**Debtors.**[1] | **Chapter 11**<br><br>**Case No. 25-11897 (SHL)**<br><br>**Jointly Administered** |

### NOTICE OF ABANDONMENT OF ASSETS

**PLEASE TAKE NOTICE** that, on August 29, 2025, the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

**PLEASE TAKE FURTHER NOTICE** that, on [●], 2026, the United States Bankruptcy Court for the Southern District of New York (the "**Court**") entered the [*Order (I) Authorizing the Debtors to Sell or Abandon Their Remaining Owned Aircraft, Engines and Other Related Equipment, (II) Establishing Procedures Related Thereto and (III) Granting Related Relief*] [ECF No. [●]] (the "**Owned Aircraft Equipment Wind-Down Procedures Order**"), pursuant to which the Court authorized the Debtors to abandon certain aircraft equipment in accordance with the terms of the Owned Aircraft Equipment Wind-Down Procedures Order.

**PLEASE TAKE FURTHER NOTICE** that the Debtors propose to abandon the assets set forth and described on **Exhibit A** attached hereto (the "**Abandoned Equipment**"). Exhibit A identifies, for each item of Abandoned Equipment, (i) the Abandoned Equipment to be abandoned, (ii) the parties known to the Debtors as having an interest in Abandoned Equipment, (iii) the entity to which the Abandoned Equipment is to be abandoned, and (iv) the location of the Abandoned Equipment.

**PLEASE TAKE FURTHER NOTICE** that, the Debtors hereby represent that the proposed abandonment of the Abandoned Equipment is in the best interest of the Debtors' estates and creditors, and is intended to maximize the value of the Debtors' estates.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Owned Aircraft Equipment Wind-Down Procedures Order, any recipient of this notice may object to the proposed abandonment (an "**Abandonment Objection**") within seven (7) days after the date this notice is filed and served (the "**Abandonment Objection Deadline**"). Abandonment Objections must be (i) in writing in English and (ii) filed with the Court, and must include (i) an appropriate caption, including the title and date of the Abandonment Notice to which it is directed, (ii) the name of the

---

[1]   The Debtors' names and last four digits of their respective employer identification numbers are as follows: Spirit Aviation Holdings, Inc. (1797); Spirit Airlines, LLC (7023); Spirit Finance Cayman 1 Ltd. (7020); Spirit Finance Cayman 2 Ltd. (7362); Spirit IP Cayman Ltd. (4732); and Spirit Loyalty Cayman Ltd. (4752). The Debtors' mailing address is 1731 Radiant Drive, Dania Beach, FL 33004.

objector, (iii) a concise statement setting forth the reasons why the objecting party believes the Court should not permit the abandonment and (iv) the name, address, telephone number and email address, as applicable, of a person authorized to settle or otherwise resolve any objection on the objector's behalf.

**PLEASE TAKE FURTHER NOTICE** that, if no Abandonment Objections are timely filed and served by the Abandonment Objection Deadline, the Debtors may immediately abandon the applicable item(s) of Abandoned Equipment and take any actions that are necessary or desirable to abandon the subject property.

**PLEASE TAKE FURTHER NOTICE** that, if an Abandonment Objection is timely received and filed and cannot be resolved between the Debtors and the objecting party, the Abandoned Equipment that is the subject of the Abandonment Objection will not be abandoned except upon order of the Court; *provided*, *however*, that any Abandoned Equipment set forth on Exhibit A hereto and not the subject of an Abandonment Objection may be immediately abandoned.

**Exhibit A**

**Schedule of Abandoned Equipment**

| Description of Abandoned Equipment | Parties Known to the Debtors as Having an Interest in the Abandoned Equipment | The Entity to which the Equipment is to be Abandoned | Location of Abandoned Equipment |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |