TODD E. DUFFY, PLLC
Todd E. Duffy
132 W 31st St., 9th Floor
New York, NY 10001
Phone: (212)729-5832

EDELSON LECHTZIN LLP
Eric Lechtzin (PA No. 62096)
Andrew Lapat (PA No. 55673)
411 S. State Street, Suite N-300
Newtown, PA 18940
Phone: (215)-867-2399

*Counsel to Plaintiffs and the Proposed Class*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>SPIRIT AVIATION HOLDINGS, INC., *et al*.,<br><br>Debtors.[1] | **Case No. 25-11897 (SHL)** |
| JONATHAN DIONNE, ALEXA GARCIA, KENNETH J. MANGIONE, NICOLE ALI, BILLY MOSS, and ERICK SALAZAR, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>– against –<br><br>SPIRIT AVIATION HOLDINGS, INC.,<br><br>Defendant. | **Adversary Pro. No. ________** |

**CLASS ACTION COMPLAINT**

[1] The Debtors' names and last four digits of their respective employer identification numbers are as follows: Spirit Aviation Holdings, Inc. (1797); Spirit Airlines, LLC (7023); Spirit Finance Cayman 1 Ltd. (7020); Spirit Finance Cayman 2 Ltd. (7362); Spirit IP Cayman Ltd. (4732); and Spirit Loyalty Cayman Ltd. (4752). The Debtors' mailing address is 1731 Radiant Drive, Dania Beach, FL 33004.

Plaintiffs Jonathan Dionne, Alexa Garcia, Kenneth J. Mangione, Nicole Ali, Billy Moss, and Erick Salazar (collectively, "Plaintiffs"), on behalf of themselves and on behalf of all others similarly situated ("Similarly Situated Employees"), bring this Class Action Complaint against Defendant Spirit Aviation Holdings, Inc. ("Spirit," "Defendant" or the "Company"), and allege as follows:

**NATURE OF THE ACTION**

1. This is a class action on behalf of Plaintiffs and Similarly Situated Employees Defendant Spirit to recover damages equaling sixty (60) days' pay and ERISA benefits due for violations of the Worker Adjustment and Retraining Notification Act of 1988 (the "WARN Act"), 29 U.S.C. §§ 2101-2109, *et seq.*

2. Until its abrupt cessation of operations on May 2, 2026, Spirit was a major American airline carrier that served the United States, Latin America, and the Caribbean, offering discount, no-frills fares. Spirit started flying in 1992.

3. On May 2, 2026, Plaintiffs and Similarly Situated Employees received an email sent from David Davis, Chief Executive Officer of Spirit ("Davis"), stating that Spirit had decided to cease operations immediately. Approximately 17,000 employees were suddenly without jobs or benefits and still owed pay for their accrued sick leave and vacation time. True and correct copies of those emails are annexed hereto as Exhibit A.

4. Spirit failed to provide Plaintiffs and Similarly Situated Employees with at least sixty (60) days' advance written notice of termination, in violation of the WARN Act. Accordingly, Plaintiffs and Similarly Situated Employees are entitled to recover a judgment equal to their wages and ERISA benefits for sixty (60) days.

## JURISDICTION AND VENUE

5. This adversary proceeding arises in and relates to Spirit's cases pending before this Court under Chapter 11 of the Bankruptcy Code, and is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B), (F), and (H).

6. The Court has jurisdiction over Plaintiffs' claims under the WARN Act pursuant to 28 U.S.C. § 157, 1331, 1334, 1367, and 29 U.S.C. § 2104(a)(5).

7. This is a core proceeding pursuant to § 157(b)(2)(A), (B) and (O). Pursuant to Rule 7012(b) of the Federal Rules of Bankruptcy Procedure, Plaintiffs consent to the entry of final orders or judgment by the bankruptcy court.

8. Venue is proper with respect to the Plaintiffs' claims under the WARN Act, pursuant to 28 U.S.C. § 1391 and 29 U.S.C. § 2104.

## THE PARTIES

9. Plaintiff Alexa A. Garcia ("Garcia"), a citizen of Florida, was employed by Spirit as a DOT Compliance Specialist. Plaintiff's employment was terminated on May 2, 2026, without any prior notice.

10. Plaintiff Jonathan Dionne ("Dionne"), a citizen of Florida, was employed by Spirit as a Software Engineer. Dionne's employment was terminated on May 2, 2026, without any prior notice.

11. Plaintiff Kenneth J. Mangione ("Mangione"), a citizen of Florida, was employed by Spirit as a Senior Maintenance Planner until his employment was terminated on May 2, 2026, without any prior notice.

12. Plaintiff Nicole Ali ("Ali), a citizen of Florida, was employed by Spirit as a Flight Attendant from August 2017 until her employment was terminated on May 2, 2026, without any prior notice.

13. Plaintiff Billy Moss ("Moss"), a citizen of South Carolina, was employed by Spirit as a Heavy Maintenance Project Manager until his employment was terminated on May 2, 2026, without any prior notice.

14. Plaintiff Erick Salazar ("Salazar"), a citizen of Florida, was employed by Defendant as a Senior Software Engineer until his employment was terminated on May 2, 2026, without any prior notice.

15. In addition, approximately 17,000 Similarly Situated Employees were employed by Spirit until May 2, 2026, when they were suddenly terminated without any prior notice.

16. Defendant Spirit is a publicly traded airline that, until its closure, serviced the United States, Latin America, and the Caribbean. Spirit was known as a no-frills discount airline. Defendant Spirit initiated consolidated chapter 11 bankruptcy proceedings on August 29, 2025. Defendant's primary address is 1731 Radiant Drive, Dania Beach, FL 33004.

17. On or about May 4, 2026, Spirit filed a Motion in this Court seeking permission to pay retention bonuses to certain employees who remain with Spirit during the wind-down process. Spirit requested permission to pay $10.7 million in retention bonuses to these non-executive employees. However, Spirit has failed to disclose the amounts it expects to pay the three unnamed senior executives, believed to be Davis, Fred Cromer, Executive Vice-President and Chief Financial Officer of Spirit ("Cromer"), and John Bendoraitis, Executive Vice-President and Chief Operating Officer of Spirit ("Bendoraitis"), who will participate in what is called the "Wind-Down KEIP." It is reasonable to infer from this failure to identify any sum of money or the expected

recipients of those sums that the amount is in the millions of dollars for each of these senior executives.

## FACTUAL BACKGROUND

18. Plaintiffs and Similarly Situated Employees were employed by Spirit prior to its sudden cessation of operations on or about May 2, 2026.

19. Defendant Spirit commenced the instant bankruptcy matter by filing a voluntary petition under Chapter 11 of the Bankruptcy Code on or about August 29, 2025 ("the Petition Date"). Defendant continued operations after the Petition Date.

20. Despite numerous assurances by senior management, including Davis, that Spirit would continue as a going concern, Davis announced on May 2, 2026, via mass email to Spirit employees that the Company would cease all operations immediately (the "Announcement").

21. As recently as April 16, 2026, Spirit had advised its employees that it planned on continuing operations and that they should ignore the rumors that Spirit was near a termination point. Plaintiffs and other Similarly Situated Employees were reassured by Spirit and its senior executives, including Davis, through this statement of confidence. Spirit continued to disseminate positive misleading statements to employees and others, assuring them that normal operations would continue in the hours immediately prior to the Announcement.

22. Plaintiffs and Similarly Situated Employees were shocked when they received the Announcement, which stated that May 2, 2026 would be their last day and provided a link to website to provide information about "termination, pay, benefits and a detailed Q&A" and another link to a website that purported to provide "more details about the wind down and separation process, as well as information about collecting any personal items from Spirit locations." Additionally, the Announcement advised employees that their Spirit email accounts would be

deactivated at 11:00 pm that night. The announcement stated that employees would be paid "for hours worked through May 2, 2026." However, to date, employees have not received their final paychecks, accrued vacation time, or unused sick time.

23. Upon information and belief, Spirit terminated Plaintiffs' employment along with the employment of nearly all of Spirit's other Similarly Situated Employees. These terminations constitute a mass layoff and/or plant closing as defined by the WARN Act, for which employees were entitled to receive sixty (60) days' advance written notice that should have been delivered to the workers (and others required by law) on or around the week of March 4, 2026.

24. Upon information and belief, Defendant did not provide a compliant WARN Act notice to Plaintiffs or Similarly Situated Employees prior to May 2, 2026.

25. Defendant's discharge of Plaintiffs and Similarly Situated Employees was without cause.

26. Following failed efforts to reorganize, on or about May 2, 2026, Spirit pivoted to a wind-down, shut down operations, and proposed retention and bonus programs to maintain a skeleton workforce and compensate remaining employees during liquidation. Spirit requested authority to pay up to $10.7 million in retention bonuses to non-management employees. Spirit also sought approval of a revised, one-time retention bonus plan specifically for three unidentified senior executives (the "Wind-Down KEIP").

27. Prior to the proposed Wind-Down KEIP, Spirit paid substantial retention bonuses to senior executives of the Company in 2025, including approximately $2.9 million to Davis, $1.2 million to Cromer, and $1.1 million to Bendoraitis.

28. The Wind-Down KEIP does not identify the three senior executives who are the intended recipients of the bonus plan. Moreover, it does not specify the amounts of the bonuses to

be paid to the unidentified senior executives or provide any information on the potential magnitude of the payouts. Given the lack of information about the Wind-Down KEIP bonuses, it is reasonable to infer that these payments will be substantial, potentially in the millions of dollars per person.

## CLASS ACTION ALLEGATIONS

29. Plaintiffs bring this action on their own behalf and, pursuant to 29 U.S.C. § 2104(a)(5) and Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure made applicable herein by Rules 7023 (a) and (b) (3) of the Federal Rules of Bankruptcy Procedure and, for themselves and on behalf of Similarly Situated Employees who worked for Spirit and who are owed damages due to violations of the WARN Act.

30. Plaintiffs and Similarly Situated Employees constitute a class within the meaning of Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure made applicable herein by Rules 7023 (a) and (b) (3) of the Federal Rules of Bankruptcy Procedure. The class is defined as:

> All former employees of Defendant who were terminated as part of—or as the reasonably foreseeable result of—the mass layoff ordered by Defendant on or about May 2, 2026, and were harmed thereby (the "Class").

31. Upon information and belief, Spirit terminated the employment of more than 100 Similarly Situated Employees, along with terminating Plaintiffs' employment.

32. The WARN Act requires Spirit to give Plaintiffs and those similarly situated members of the WARN Class at least sixty (60) days' advance written notice prior to their terminations.

33. Upon information and belief, prior to their termination, Spirit did not provide written notice in compliance with the requirements of the WARN Act to Plaintiffs or to members of the Class.

34. Upon information and belief, Spirit has failed to pay Plaintiffs and members of the Class their respective wages, salary, commissions, bonuses, accrued holiday pay, and accrued vacation pay for sixty (60) days following their respective terminations and failed to make retirement contributions and provide them with health insurance coverage and other employee benefits.

35. **Numerosity.** The members of the Class are so numerous that joinder of all members is impracticable, as there are approximately 17,000 persons who are included within the Class definition. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.

36. **Typicality.** Each Plaintiff's claims are typical of the claims of the members of the Class.

37. **Commonality.** Questions of fact and law are common to the members of the Class, and these predominate over any such questions affecting only individual members.

38. Questions of law and fact are indeed common to the members of the Class here, and these predominate over any questions solely affecting individual members of the Class. These include, but are not limited to:

(a) Whether the Class Members were employees of Defendant who worked at or reported to any covered facility/location;

(b) Whether Defendant was an "employer" as defined by the WARN Act;

(c) Whether Defendant, as an employer, terminated the employment of the members of the Class without cause on their part and without giving them 60 (sixty) days of advance written notice;

(d) Whether Defendant's failure to provide 60 (sixty) days' notice should render it liable to the Class Members for 60 (sixty) days' pay and benefits;

(e) Whether Defendant may rely on the WARN Acts' "unforeseeable business circumstances" defense, the "faltering company" defense, or some other defense;

(f) Whether Defendant may be entitled to any reduction in its liability for exercising "good faith" in its conduct of these terminations and failure to give proper notice;

(g) Whether the defense of impossibility excuses Defendant's contractual obligations to Class Members.

39. Plaintiffs will fairly and adequately protect the interests of the respective Class.

40. Plaintiffs have retained counsel competent and experienced in complex employment litigation.

41. In this instance, proceeding via class action is superior to other available methods to fairly and efficiently adjudicate this controversy. Most individual Plaintiffs/members of the Class may lack the money or other necessary resources to prosecute a lawsuit in federal court against a large corporation in a thorough and timely manner. This is certainly the case here.

42. On information and belief, the identity of the Class members is contained in the books and records of Defendant.

43. On information and belief, a recent residence address of each of the Class members is contained in the books and records of Defendant.

44. On information and belief, the rate of pay and benefits that were being paid by Defendant to each Class member at the time of his/her termination are contained in the books and records of Defendant.

45. The measure of damages sought is common to all members of the Class. As a result of Defendant's violation of the WARN Act, the Plaintiffs and the other members of the Class have been damaged in amounts equal to the sum of: (a) their respective lost wages, salaries, commissions, bonuses, accrued holiday pay, accrued vacation pay, 401 (k) contributions for sixty

(60) calendar days; (b) the health and medical insurance and other fringe benefits that they would have received or had the benefit of receiving, for a period of sixty (60) calendar days after the dates of their respective terminations; and (c) medical expenses incurred during such period by such persons that would have been covered and paid under the then applicable employee benefit plans had that coverage continued for that period.

46. Plaintiffs have no interests that conflict with those of the Class.

## CLAIM FOR RELIEF

### Violation of the WARN Act, 29 U.S.C. §§ 2101, *et. seq*.
### (Against Defendant Spirit)

47. Plaintiffs reallege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

48. At all relevant times, Spirit employed 100 or more employees (exclusive of part-time workers). Alternatively, it employed 100 or more employees who (in the aggregate) worked 4,000 or more hours per week, excluding overtime hours, within the United States as defined by the WARN Act.

49. Spirit, as a single employer, ordered the "mass layoff" and/or "plant closing" of one or more of its facilities as those terms are defined by 29 U.S.C. § 2101(a).

50. At all relevant times, Sprit was an "employer," as that term is defined in 29 U.S.C. § 2101(a)(1) and 20 C.F.R. § 639(a), and continued to operate as a business until Defendants decided to order a mass layoff.

51. Plaintiffs and the members of the Class who were terminated by Spirit as a result of Spirit's ordering the mass layoff and/or plant closing on or about May 2, 2026, were "affected employees" as defined by 29 U.S.C. § 2101(a)(5) of the WARN Act.

52. Plaintiffs and the members of the Class are "aggrieved employees" of the Spirit as that term is defined by 29 U.S.C. § 2104(a)(7).

53. The mass layoff and/or plant closing at Spirit's facilities resulted in "employment losses," as that term is defined by the WARN Act for at least fifty (50) of Spirit's employees, as well as 33% of Spirit's workforce at its facilities, excluding "part-time employees," as that term is defined by the WARN Act. 29 U.S.C. § 2101.

54. Section 2102 of WARN and 20 C.F.R. §§ 639.1 - 639.10, *et. seq.*, requires Spirit to provide to employees at least sixty (60) days prior written notice of the termination or, in certain narrow circumstances, notice as soon as practicable.

55. Spirit failed to provide at least sixty (60) days' prior notice before terminating the members of the Class, and it failed to provide a notice or notices setting forth the basis for this reduced notice, as required by the WARN Act.

56. Spirit failed to pay Plaintiffs and each of the members of the Class their respective wages, salary, commissions, bonuses, accrued holiday pay and accrued vacation for sixty (60) working days following their respective terminations, and failed to make retirement benefit contributions, provide other employee benefits under ERISA, and pay their medical expenses for sixty (60) calendar days from and after the dates of their respective terminations.

57. As a result of Spirit's failure to pay the wages, benefits and other monies as asserted above, the members of the Class were damaged in an amount equal to the sum of the members of the Class unpaid wages, PTO, accrued holiday pay, accrued vacation pay, accrued sick leave pay and benefits that would have been paid for a period of sixty (60) calendar days after the date of their terminations.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and Class Members demand judgment against the Defendant as follows:

(a) Certification that, pursuant to Rules 23 (a) and (b) of the Federal Rules of Civil Procedure as made applicable herein by Rules 7023(a) and (b) of the Federal Rules of Bankruptcy Procedure and the WARN Act, 29 U.S.C. §2104(a)(5), Plaintiffs and the Class members constitute a single class;

(b) An amount equal to the sum of: unpaid wages, salary, commissions, bonuses, accrued holiday pay, accrued vacation pay pension and retirement contributions and other ERISA benefits, for sixty (60) working days following the member employee's termination, that would have been covered and paid under the then applicable employee benefit plans had that coverage continued for that period, all determined in accordance with the WARN Act;

(c) An amount equal to the sum of accrued but unpaid vacation as of the termination date of Plaintiffs and the Class members;

(d) Interest as allowed by law on the amounts owed per the preceding paragraphs;

(e) Appointment of Plaintiffs as the Class Representative and payment of reasonable compensation for their services as such;

(f) Appointment of the undersigned attorneys as Class Counsel;

(g) An allowed administrative priority claim against Spirit under 11 U.S.C. § 503 for the reasonable attorneys' fees and the costs and disbursements the Plaintiffs incur in prosecuting this action, as authorized by the WARN Act, 29 U.S.C. §2104(a)(6); and

(h) Such other and further relief as this Court may deem just and proper.

Respectfully submitted,

Dated: May 12, 2026

/s/_______________________
Todd E. Duffy
TODD E. DUFFY, PLLC
132 W 31st St., 9th Floor
New York, NY 10001
Phone: (212)729-5832
Fax: (212) 208-2437
Email: todd@teduffylaw.com

**EDELSON LECHTZIN LLP**
Eric Lechtzin (PA No. 62096)
Andrew Lapat (PA No. 55673)
411 S. State Street, Suite N-300
Newtown, PA 18940
Phone: (215)-867-2399
Email: elechtzin@edelson-law.com
Email: alapat@edelson-law.com

*Counsel to Plaintiffs and the Proposed Class*