**Hearing Date and Time: 10:00 a.m.[1] on June 10, 2026**
**Objection Deadline: 10:00 a.m. on June 5, 2026**

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Tel.: (212) 450-4000
Marshall S. Huebner
Darren S. Klein
Christopher S. Robertson
Joseph W. Brown

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **SPIRIT AVIATION HOLDINGS, INC.,** *et al.*, | **Case No. 25-11897 (SHL)** |
| **Debtors.[2]** | **Jointly Administered** |

**NOTICE OF HEARING ON MOTION OF THE DEBTORS FOR**
**ENTRY OF AN ORDER (I) APPROVING WIND-DOWN INCENTIVE PLAN,**
**(II) APPROVING DISCRETIONARY RETENTION POOL, (III) APPROVING**
**EXCULPATION PROVISIONS, AND (IV) GRANTING RELATED RELIEF**

    **PLEASE TAKE NOTICE** that, on May 4, 2026, the above-captioned debtors and debtors in possession (the "**Debtors**") filed the *Motion of the Debtors for Entry of an Order (I) Authorizing the Debtors to Wind Down Operations, (II) Approving the Debtors' Use of Cash Collateral and Amendments to the DIP Credit Agreement and Final DIP Order, (III) Authorizing Modification or Termination of the Debtors' Employee Programs, (IV) Approving Wind-Down Incentive and Retention Plan, (V) Approving Modification of Contract Rejection Procedures, (VI) Approving Non-Fleet Assets Sale Procedures, (VII) Approving Non-Fleet Assets Abandonment Procedures, (VIII) Approving the Use of Certain Third-Party Contractors, (IX) Approving Protections for Certain Persons Implementing the Wind-Down, (X) Enforcing an Administrative Stay, (XI) Authorizing the Preemption of Applicable Laws and Ordinances for the Debtors to Effectuate the Wind-Down, (XII) Authorizing the Debtors to Take Any and All Actions Necessary to Implement the Wind-Down, and (XIII) Granting Related Relief* [ECF 1009] (the "**Motion**").

    **PLEASE TAKE FURTHER NOTICE** that, on May 8, 2026, the Court (as defined

---

[1] All times herein are expressed in prevailing Eastern Time.

[2] The Debtors' names and last four digits of their respective employer identification numbers are as follows: Spirit Aviation Holdings, Inc. (1797); Spirit Airlines, LLC (7023); Spirit Finance Cayman 1 Ltd. (7020); Spirit Finance Cayman 2 Ltd. (7362); Spirit IP Cayman Ltd. (4732); and Spirit Loyalty Cayman Ltd. (4752). The Debtors' mailing address is 1731 Radiant Drive, Dania Beach, FL 33004.

below) entered the *Order (I) Authorizing the Debtors to Wind Down Operations, (II) Approving the Debtors' Use of Cash Collateral and Amendments to the DIP Credit Agreement and Final DIP Order, (III) Authorizing Modification or Termination of the Debtors' Employee Programs, (IV) Approving Wind-Down Incentive and Retention Plan, (V) Approving Modification of Contract Rejection Procedures, (VI) Approving Non-Fleet Assets Sale Procedures, (VII) Approving Non-Fleet Assets Abandonment Procedures, (VIII) Approving the Use of Certain Third-Party Contractors, (IX) Approving Protections for Certain Persons Implementing the Wind-Down, (X) Enforcing an Administrative Stay, (XI) Authorizing the Preemption of Applicable Laws and Ordinances for the Debtors to Effectuate the Wind-Down, (XII) Authorizing the Debtors to Take Any and All Actions Necessary to Implement the Wind-Down, and (XIII) Granting Related Relief* [ECF 1048], which, among other things, provided that certain relief requested in the Motion would be considered at the June 10 Hearing (as defined therein).

**PLEASE TAKE FURTHER NOTICE** that, on May 27, 2026, the Debtors filed the *Supplement to the Wind-Down Motion* (the "**Supplement**").

**PLEASE TAKE FURTHER NOTICE** that a hearing (the "**Hearing**") has been scheduled for **10:00 a.m. on June 10, 2026**, before the Honorable Sean H. Lane, United States Bankruptcy Judge, in the United States Bankruptcy Court for the Southern District of New York (the "**Court**"), to consider certain relief requested in the Motion, as supplemented by the Supplement.

**PLEASE TAKE FURTHER NOTICE** that the Hearing will be conducted via Zoom for Government.  Parties wishing to appear at or attend the Hearing (whether "live" or "listen only") are required to register their appearance at https://ecf.nysb.uscourts.gov/cgi-bin/nysbAppearances.pl by **10:00 a.m. on June 9, 2026**.  Instructions and additional information about the Court's remote attendance procedures can be found at https://www.nysb.uscourts.gov/ecourt-appearances.  The Court will circulate by email the Zoom link to the Hearing to those parties who properly registered for electronic appearance prior to the Hearing.

**PLEASE TAKE FURTHER NOTICE** that the Hearing may be continued or adjourned from time to time by an announcement of the adjourned date or dates at the Hearing or at a later hearing or by notice filed with the Court.

**PLEASE TAKE FURTHER NOTICE** that responses or objections to the relief requested at the Hearing must be (a) in writing, in English, and in text-searchable format, (b) filed with the Court electronically, and (c) served on the Debtors and the Notice Parties (as defined in the Motion) so as to be received no later than **10:00 a.m. on June 5, 2026** (the "**Objection Deadline**"), in each case, in accordance with the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, the Court's *Order Implementing Certain Notice and Case Management Procedures* [ECF No. 61], and the Court's Chambers' Rules (available at https://www.nysb.uscourts.gov/content/judge-sean-h-lane), to the extent applicable.

**PLEASE TAKE FURTHER NOTICE** that, unless otherwise ordered by the Court, the deadline for filing replies to any objections shall be **12:00 p.m. on June 8, 2026**.

**PLEASE TAKE FURTHER NOTICE** that all objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted upon default.

**PLEASE TAKE FURTHER NOTICE** that copies of the Motion, the Supplement, and any other document filed publicly in the above-captioned proceedings are available free of charge at https://dm.epiq11.com/SpiritAirlines.

Dated:   May 27, 2026
         New York, New York

DAVIS POLK & WARDWELL LLP

/s/ Marshall S. Huebner
450 Lexington Avenue
New York, NY 10017
Tel.: (212) 450-4000
Marshall S. Huebner
Darren S. Klein
Christopher S. Robertson
Joseph W. Brown

*Counsel to the Debtors and Debtors in Possession*

<b>Hearing Date and Time: 10:00 a.m.[1] on June 10, 2026</b><br>
<b>Objection Deadline: 10:00 a.m. on June 5, 2026</b>

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Tel.: (212) 450-4000
Marshall S. Huebner
Darren S. Klein
Christopher S. Robertson
Joseph W. Brown

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | **Chapter 11** |
| **SPIRIT AVIATION HOLDINGS, INC.,** *et al.*, | **Case No. 25-11897 (SHL)** |
| Debtors.[2] | **Jointly Administered** |

<u>**SUPPLEMENT TO THE WIND-DOWN MOTION**</u>

Spirit Aviation Holdings, Inc. and its subsidiaries (collectively, the "**Debtors**"), each of which is a debtor and debtor in possession in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), hereby file this *Supplement to the Wind-Down Motion* (this "**Supplement**") to supplement the description of the relief related to the Wind-Down KEIP requested in the *Motion of the Debtors for Entry of an Order (I) Authorizing the Debtors to Wind Down Operations, (II) Approving the Debtors' Use of Cash Collateral and Amendments to the DIP Credit Agreement and Final DIP Order, (III) Authorizing Modification or Termination of the Debtors' Employee Programs, (IV) Approving Wind-Down Incentive and Retention Plan, (V) Approving Modification*

---

[1] All times herein are expressed in prevailing Eastern Time.

[2] The Debtors' names and last four digits of their respective employer identification numbers are as follows: Spirit Aviation Holdings, Inc. (1797); Spirit Airlines, LLC (7023); Spirit Finance Cayman 1 Ltd. (7020); Spirit Finance Cayman 2 Ltd. (7362); Spirit IP Cayman Ltd. (4732); and Spirit Loyalty Cayman Ltd. (4752). The Debtors' mailing address is 1731 Radiant Drive, Dania Beach, FL 33004.

*of Contract Rejection Procedures, (VI) Approving Non-Fleet Assets Sale Procedures, (VII)*
*Approving Non-Fleet Assets Abandonment Procedures, (VIII) Approving the Use of Certain Third-*
*Party Contractors, (IX) Approving Protections for Certain Persons Implementing the Wind-Down,*
*(X) Enforcing an Administrative Stay, (XI) Authorizing the Preemption of Applicable Laws and*
*Ordinances for the Debtors to Effectuate the Wind-Down, (XII) Authorizing the Debtors to Take*
*Any and All Actions Necessary to Implement the Wind-Down, and (XIII) Granting Related Relief*
[ECF 1009] (the "**Motion**"). This Supplement is supported by the *Declaration of Martin Kuehne*
*in Support of the KERP and KEIP* [ECF 1012] (the "**Kuehne Declaration**") and the *Supplemental*
*Declaration of Martin Kuehne in Support of the KERP and KEIP* (the "**Supplemental Kuehne**
**Declaration**") filed contemporaneously with this Supplement.   In further support of this
Supplement, the Debtors respectfully state as follows:[3]

### Preliminary Statement

1.        Following the unfortunate circumstances that resulted in the shut-down of
the Debtors' operations, the Debtors are now liquidating pursuant to the Wind-Down Plan. This
is a difficult task of uncertain duration. The Debtors' two groups of senior secured lenders (who
together have perfected security interests in virtually all of the Debtors' assets) have requested
that three mission-critical Senior Management Employees stay on to oversee the Wind-Down
Plan, as they believe the Senior Management Employees' experience, industry counterparty and
regulatory knowledge, and their familiarity with the Debtors' assets and operations will enable

---

[3] Capitalized terms used but not defined herein shall have the meanings set forth in the *Declaration of Fred*
*Cromer in Support of the Chapter 11 Proceedings and First Day Pleadings* [ECF No. 19] (the "**First Day**
**Declaration**"), the Final DIP Order, or the Plan, as applicable.  The "Final DIP Order" means the Final DIP Order as
amended, supplemented, or otherwise modified from time to time prior to the date hereof, including by the *Agreed*
*Order Amending Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing; (II) Granting Senior*
*Secured Liens and Superpriority Administrative Expense Claims; (III) Authorizing the Debtors to Utilize Cash in*
*Encumbered Accounts; (IV) Granting Adequate Protection; (V) Modifying the Automatic Stay; and (VI) Granting*
*Related Relief* [ECF No. 643].

them cost-effectively to implement the Wind-Down in a manner that will maximize the recovery on the assets. These assets include, among other things, held-for-sale and other aircraft, real property, leases, the Debtor's Airline Operating Certificate, gates, slots and other equipment and fixed assets, many of which are subject to complex regulatory regimes. In order to incentivize the three Senior Management Employees to guide these efforts, each group of senior secured lenders has offered an incentive program that largely equates to a commission that is a small percentage of the monetized assets. Tellingly, (1) the Debtors accepted the very first proposal from the RCF Lenders with no negotiation, and (2) the Debtors and the DIP Lenders agreed to the aggregate payout amounts at "Target" as initially proposed. In essence, Spirit's secured lenders have offered very small portions of their own recoveries on their own complex assets to encourage and incentivize the senior leaders primarily responsible for their monetization. They are the only parties impacted by this program, as they are paying 100% of it. Moreover, as demonstrated below and in the Supplemental Kuehne Declaration, the total direct compensation of the three will be well below the median—and in the case of the CEO far below the 25th percentile—of market comparables, even if the DIP Lenders' plan for asset sales pays out at target levels.[4]

### Wind-Down KEIP[5]

2.      With the full agreement of the Debtors' senior secured lenders—the DIP Lenders and the RCF Lenders—the Debtors propose to provide three of their remaining key corporate officers, the (i) Chief Executive Officer (the "**CEO**"), (ii) General Counsel and (iii) Vice President, Special Projects (the "**VP Special Projects**"), (the "**Senior Management**

---

[4] This comparison excludes any potential value from (i) the RCF Recovery Incentive because the ultimate monetization of the LGA slots is highly uncertain and difficult to forecast and (ii) the Wind-Down Cost Savings because any savings that may be achieved against the Wind-Down Budget are unforeseeable.

[5] While the Wind-Down KEIP is substantially final, it remains subject to final review and documentation (which shall be subject to agreement between the Debtors and the Required DIP Lenders).

**Employees**") with incentive program (the "**Wind-Down Management KEIP**") tied to asset sale proceeds from assets on which the DIP Lenders have a senior lien (the "**Liquidation Proceeds**"), the realized net cost of certain savings achieved ("**Wind-Down Cost Savings**") and the net recoveries from the sale of the operating slots at LaGuardia Airport (the "**LGA Slots**"), on which the RCF Lenders have a senior lien (the "**RCF Recovery Incentive**").

3. The Wind-Down Management KEIP payments earned on account of the Liquidation Proceeds and Wind-Down Cost Savings will be measured upon the earliest of, (i)(a) with respect to the CEO and General Counsel, November 1, 2026, which date may be accelerated or extended by mutual consent of the board of directors (the "**Board**"), the Required DIP Lenders and the applicable Senior Management Employee, and (b) with respect to the VP Special Projects, January 31, 2027, which date may be accelerated or extended by mutual consent of the Board, the Required DIP Lenders and the VP Special Projects; (ii) substantial completion of the monetization of the estate's assets as determined by the Debtors in good faith and with the consent of the Required DIP Lenders, which consent shall not unreasonably be withheld or delayed; (iii) the effective date of a liquidating chapter 11 plan; or (iv) such other termination of the Wind-Down process as determined by the Debtors in good faith and with the consent of the Required DIP Lenders, which consent shall not unreasonably be withheld or delayed (each such date, the "**Measurement Date**"). In the event the Debtors and the Required DIP Lenders do not agree whether, with respect to clauses (ii) or (iv) of the foregoing sentence, such consent has been unreasonably withheld or delayed, it is further agreed that the Debtors may seek emergency relief from the Court to adjudicate such disagreement. The Wind-Down Management KEIP payments earned on account of the RCF Recovery Incentive will be measured upon the completion of the monetization of the LGA Slots.

4. The Wind-Down Management KEIP amount earned on account of Liquidation Proceeds is equal to (i) 1.75% of Liquidation Proceeds in excess of the minimum threshold amounts (the "**Threshold Values**") for certain asset categories up to the target values for such categories (the "**Target Values**"), plus (ii) 2.50% of Liquidation Proceeds in excess of the Target Values or for assets for which no Target Value is specified, plus (iii) 5.0% of Liquidation Proceeds for certain asset categories with highly uncertain prospects for monetization. For the avoidance of doubt, no amounts will be paid on account of the cash held by the Debtors as of the commencement of the Wind-Down. For purposes of measuring Liquidation Proceeds, any transaction for which definitive documentation (acceptable to the Required DIP Lenders) has been executed and closed on or prior to the Measurement Date will be included and, for the avoidance of doubt, any transaction for which definitive documentation (acceptable to the Required DIP Lenders) has been executed on or prior to the Measurement Date but has not yet closed will be measured and paid promptly following closing; *provided* that for asset sales of certain long-tailed assets ("**Category 2 Assets**"), any transaction for which there is a documented agreement in principle between counterparties (acceptable to the Required DIP Lenders) on or prior to the Measurement Date, but closes after the Measurement Date, will be measured and paid promptly following closing, so long as the transaction remains substantially consistent with the agreement reached prior to the Measurement Date; *provided further* that for asset sales of certain long-tailed assets for which recoveries will not require definitive documentation ("**Category 3 Assets**"), the attributable amounts will be measured at the time of monetization.

5. The Wind-Down Management KEIP amount earned on account of Wind-Down Cost Savings is equal to 4.0% of (i) savings against net Wind-Down costs, plus (ii) unused funds in the existing carve-out accounts. For the avoidance of doubt, the budgeted amounts for

the Wind-Down KEIP are excluded from the calculation of Wind-Down Cost Savings. The Wind-Down Cost Savings will be calculated on an aggregate basis on the Measurement Date; *provided* that as it relates to measurement, the Debtors will review actual costs and reforecast as of December 31, 2026, to measure aggregate savings achieved against the Wind-Down Budget. For the avoidance of doubt, no amounts will be paid on account of any values related to WARN, unused vacation or unused PTO. This latter point was of great importance to the Debtors and to the remaining Senior Management Employees.

6.　　　Payment of the Wind-Down Management KEIP earned on account of the Liquidation Proceeds will occur (a) prior to the Measurement Date, promptly following the earlier of (i) the Measurement Date or (ii) the closing of transactions for assets in an asset category for which the aggregate realized Liquidation Proceeds have exceeded the applicable Threshold Value or (b) following the Measurement Date, promptly following the closing of any transaction for which definitive documentation (acceptable to the Required DIP Lenders) has been executed on or prior to the Measurement Date; *provided* that for Category 2 Assets, payment shall occur promptly following closing and receipt of funds, subject to the transaction being substantially similar to the agreement reached prior to the Measurement Date; *provided further* that for Category 3 Assets, payment shall occur promptly upon asset monetization and receipt of funds regardless of employment status so long as the employee has stayed through the Measurement Date. Payment of the Wind-Down Management KEIP earned on account of the Wind-Down Cost Savings will occur promptly following the Measurement Date.

7.　　　Upon termination of a Senior Management Employee's employment by the Debtors other than for cause, or resignation for good reason prior to the Measurement Date, subject to the release requirement set forth in paragraph 52 of the Motion, such employee shall

remain eligible under the Wind-Down Management KEIP on the same terms and conditions (including payment timing) without regard to any continued service requirement; *provided* that for purposes of determining performance (and payment amount), only asset transactions in which such employee had material involvement shall be counted.

8.      The Wind-Down Management KEIP amount earned on account of the RCF Recovery Incentive is equal to 3.50% of Net RCF Recoveries[6] from the monetization of the LGA Slots, whether in one or a series of transactions; *provided* that such amount shall equal 4.00% of Net RCF Recoveries if the monetization of the LGA Slots is fully consummated on or before July 10, 2026; *provided further* that such amount shall equal 3.75% of Net RCF Recoveries if the monetization of the LGA Slots is fully consummated after July 10, 2026 but on or before August 9, 2026.

9.      Payments of the Wind-Down Management KEIP earned on account of the RCF Recovery Incentive will occur promptly following the RCF Measurement Date.  If a Senior Management Employee is terminated without cause prior to the RCF Measurement Date, such employee shall receive payments following final performance achieved under the program upon the closing of the LGA Slots transaction(s). Terminations for any other reason (e.g., voluntary separation or termination for cause) would result in complete forfeiture of any Wind-Down Management KEIP amounts on account of the RCF Recovery Incentive.

10.      In aggregate, the target amount of the Wind-Down earned on account of the Liquidation Proceeds is expected to be approximately $1.9 million (the "**Target Wind-Down**

---

[6] "**Net RCF Recoveries**" shall be based on a mutually agreed upon present value of the LGA Slots, net of any Debtor or third-party expenses, charges, or other amounts paid or payable from the gross recoveries from the LGA Slots (excluding expenses of the RCF Lenders).

**Management KEIP Amount**").[7] The payments earned under the Wind-Down Management KEIP will be distributed as follows: (i) 50.0% to the CEO, (ii) 27.5% to the General Counsel and (iii) 22.5% to the VP Special Projects. Notably, payments under the Wind-Down Management KEIP would replace, and not be in addition to, any payments the Debtors would have historically offered the Senior Management Employees under their prepetition annual incentive and cash incentive plans, and the amount of the potential incentive payments are quite conservative as compared to market practice and comparables. Suppl. Kuehne Decl. ¶ 16. As further described in the Supplemental Kuehne Declaration, the complexity and specialized nature of the proposed Wind-Down and criticality of the Non-Senior Management Employees thereto support the proposed structure and aggregate costs. Id. The expected costs to the secured lenders of the Wind-Down Management KEIP are eminently reasonable in light of the benefit expected to be gained from the provision of services by and incentivization of the Remaining Employees. Id.

11.     The Debtors will establish an escrow account initially funded with $3.0 million to provide assurance of payment under the Wind-Down Management KEIP. As asset monetization progresses, the escrow account will be adjusted for amounts projected to be earned over $3.0 million (inclusive of taxes). In connection with the departure of each Senior Management Employee, the Debtors and DIP Lenders will confer in good faith on the incremental amount to be placed in escrow with respect to payments hereunder projected to be earned by such employee post-departure, and if the parties cannot agree on that amount, either party may seek relief from the Court. The Target Wind-Down Management KEIP Amount, or the earned amount, whichever is higher, will be payable in the event of any conversion of these Chapter 11 Cases to

---

[7] The Target Wind-Down Management KEIP Amount excludes any value from (i) the RCF Recovery Incentive and (ii) the Wind-Down Cost Savings. *See supra* note [4].

cases under chapter 7 of the Bankruptcy Code. Moreover, whether or not the escrow account is sufficient, the payments under the Wind-Down Management KEIP shall be made promptly when due notwithstanding any conversion of these Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code.

12.     The Debtors, with the full agreement of and as negotiated by and with the Debtors' senior secured lenders, also propose to provide two of the Debtors' directors, Timothy Bernlohr and Eugene I. Davis, (the "**Directors**") with incentive payments tied to the performance of the Wind-Down (the "**Wind-Down Director KEIP**" and, together with the Wind-Down Management KEIP, the "**Wind-Down KEIP**"). The payments under the Wind-Down Director KEIP for each Director will consist of (i) $312,500 if the aggregate Liquidation Proceeds are at least $107 million more than the aggregate Threshold Values, plus (ii) 0.25% of the aggregate Liquidation Proceeds above $107 million. The Wind-Down Director KEIP will be governed by terms and conditions similar to those of the Wind-Down Management KEIP.

13.     The Wind-Down KEIP was designed with or by the Debtors' senior secured lenders and negotiated to incentivize the Senior Management Employees to expeditiously and cost-effectively execute the Wind-Down Plan and control costs to maximize value for the Debtors' creditors. Because of the challenges and complexities of the Wind-Down Plan, it is critical for the Senior Management Employees to be motivated to contribute their services and best efforts to the Wind-Down Plan by providing appropriate incentives for such employees upon the completion and achievement of certain tasks and goals as to costs and proceeds.

14.     The Wind-Down KEIP is also eminently reasonable—indeed, it is very modest when compared to market comparables. Even if the participants achieve the full Target Values amount in every category, the CEO's total annual compensation will be 66% below the

market median for similar roles, the General Counsel's total annual compensation 25% below median and the VP Special Projects' total annual compensation 22% below median. Suppl. Kuehne Decl. ¶ 20. Furthermore, the CEO's total annual compensation would be 55% below even the 25th percentile for similar roles in the market. Id. The Target Wind-Down Management KEIP Amount is 27% below the 25th percentile for comparable programs, further demonstrating the modest size of the Wind-Down KEIP. Id.

15.    The Wind-Down KEIP is also consistent with other plans approved by courts in other liquidating chapter 11 cases, which frequently pay out based on sales proceeds, distributable proceeds and/or expense management. Suppl. Kuehne Decl. ¶ 21; *see also, In re LSC Communications, Inc.*, No. 20-10950 (SHL) (Bankr. S.D.N.Y. June 5, 2020) [ECF No. 324]; *In re Sears Holdings Corporation*, No. 18-23538 (RDD) (Bankr. S.D.N.Y. Dec. 28, 2018) [ECF No. 1437]; *In re Waypoint Leasing Holdings Ltd.*, No. 18-13648 (SMB) (Bankr. S.D.N.Y. Mar. 1, 2019) [ECF No. 481]; *In re Robertshaw US Holding Corp*, No. 24-90052 (CML) (Bankr. S.D. Tex. June 12, 2024) [ECF No. 637]; *In re NPC International, Inc.*, No. 20-33353 (DRJ) (Bankr. S.D. Tex. Sep. 17, 2020) [ECF No. 636]; *In re Southern Foods Group, LLC (Dean Foods Company)*, No. 19-36313 (DRJ) (Bankr. S.D. Tex. Feb. 19, 2020) [ECF No. 960]; *In re Cobalt International Energy*, No. 17-36709 (MI) (Bankr. S.D. Tex. Jan. 26, 2018) [ECF No. 307]; *In re Toys "R" Us, Inc.*, No. 17-34665 (KLP) (Bankr. E.D. Va. Dec. 8, 2017) [ECF 1192]; *In re TSAWD Holdings, Inc. (Sports Authority)*, No. 16-10527 (MFW) (Bankr. D. Del. Aug. 31, 2016) [ECF 2863]; *In re Abengoa Bioenergy US Holding, LLC*, No. 16-41161 (KSS) (Bankr. E.D. Mo. June 16, 2016) [ECF 403].

16.    Moreover, the average share of proceeds for key employment incentive programs with uncapped sharing formulae is 3.0%. Suppl. Kuehne Decl. ¶ 22; *see also, In re*

10

*Proterra Inc.*, No. 23-11120 (BLS) (Bankr. D. Del. Oct. 10, 2023) [ECF 346] (3.0% of uncapped

proceeds); *In re FTX Trading Ltd.*, No. 22-11068 (JTD) (Bankr. D. Del June 8, 2023) [ECF 1589]

(6.0% of uncapped proceeds); *In re Rockall Energy Holdings, LLC*, No. 22-90000 (MXM)

(Bankr. N.D. Tex. Apr. 29, 2022) [ECF 348] (1.6% of uncapped proceeds); *In re MobiTV, Inc.*

No. 21-10457 (LSS) (Bankr. D. Del. Apr. 14, 2021) [ECF 178] (3.5% of uncapped proceeds); *In*

*re NPC International, Inc.*, No. 20-33353 (DRJ) (Bankr. S.D. Tex. Sep. 17, 2020) [ECF No. 636]

(0.7% of uncapped proceeds); *In re Southern Foods Group, LLC (Dean Foods Company)*, No.

19-36313 (DRJ) (Bankr. S.D. Tex. Feb. 19, 2020) [ECF No. 960] (3.0% of uncapped proceeds);

*In re Cobalt International Energy*, No. 17-36709 (MI) (Bankr. S.D. Tex. Jan. 26, 2018) [ECF No.

307] (3.0% of uncapped proceeds). Under the Wind-Down KEIP, however, the share paid to

Senior Management Employees on account of the most significant component, the Liquidation

Proceeds, begins at 1.75%, only increasing to 2.50% for amounts in excess of Target Values. This

too is exceedingly modest when compared to similar cases. Id.

17.    Finally, the Debtors believe that the Wind-Down KEIP is reasonable

because, even if the Wind-Down KEIP targets are achieved, the payments made will (i) still result

in the Debtors' Senior Management Employees being paid materially less than employees with

similar job responsibilities at other airlines or similarly sized companies and (ii) likely be

materially less than the Debtors would expect to pay a replacement in the case of a resignation by

any of the Senior Management Employees, even prior to accounting for the fact that failing to

retain the Remaining Senior Employees would also likely result in materially reduced Liquidation

Proceeds and net recoveries in the millions or tens of millions of dollars.

18.    Ultimately, the cost-effective Wind-Down of the Debtors' businesses will

preserve and protect the value of the Debtors' estates for the benefit of creditors.  Accordingly,

the modest Wind-Down KEIP (designed in conjunction with the secured creditors who are paying 100% of it) should be approved.

### Wind-Down KERP Discretionary Capacity

19.     At the May hearing, the Debtors reluctantly agreed to adjourn the request for relief regarding the $500,000 of discretionary capacity under the Wind-Down KERP described in the last sentence of paragraph 50 of the Motion (the "**Discretionary Capacity**") to the June 10 Hearing.[8] Since the shut-down of the Debtors' operations, the need for the Discretionary Capacity has only grown more critically acute, as ten of the originally identified 130 participants in the Wind-Down KERP have already voluntarily departed. Several of these departures were critical to the Wind-Down, including (i) the Key Senior Director, Tech Operations, (ii) a management pilot, (iii) two FAA A&P-qualified mechanics and (iv) two financial planning & analysis employees. Suppl. Kuehne Decl. ¶¶ 26–27. Furthermore, since the shut-down of operations the Debtors have had unanticipated resource needs for the processing of DOT-required refunds, protection of GSC assets, aircraft movement, American Express chargebacks and international taxes related to station closures. The Debtors urgently need the Discretionary Capacity to retain and compensate human capital in critical functions, account for unexpected responsibilities which will continue to arise, properly meet regulatory requirements and maximize the monetization of the remaining assets.

20.     The Discretionary Capacity is commercially reasonable and entirely consistent with—and is in fact modest relative to—relief granted in precedent retention programs.

---

[8] For the avoidance of doubt, if an employee receives a promotion or takes on a new role due to the departure of another Wind-Down KERP recipient, (i) any resulting modification in their retention award is a reallocation of the previously allocated Wind-Down KERP amounts and not a draw on the Discretionary Capacity and (ii) any resulting surplus Wind-Down KERP amounts that were previously allocated to individuals are added to the Discretionary Capacity.

While the Discretionary Capacity is only 6% of the Wind-Down KERP, the average discretionary pool is 11% of the overall retention program, and some are over 20%. Suppl. Kuehne Decl. ¶ 28; *see also In re Wellpath Holdings, Inc.*, No. 24-90533 (ARP) (Bankr. S.D. Tex. Feb. 24, 2025) [ECF 1533] (discretionary pool of 22% of retention program); *In re Reverse Mortgage Investment Trust Inc.*, No. 22-11225 (MFW) (Bankr. D. Del Feb. 22, 2023) [ECF 496] (discretionary pool of 21% of retention program); *In re NPC International, Inc.*, No. 20-33353 (DRJ) (Bankr. S.D. Tex. Sep. 17, 2020) [ECF No. 636] (discretionary pool of 10% of retention program); *In re M&G USA Corporation*, No. 17-12307 (BLS) (Bankr. D. Del Jan. 5, 2018) [ECF 629] (discretionary pool of 6% of retention program); *In re Frontier Communications Corporation*, No. 20-22476 (RDD) (Bankr. S.D.N.Y. July 17, 2020) [ECF 741] (discretionary pool of 5% of retention program); *In re J.C. Penney Company, Inc.*, No. 20-20182 (DRJ) (Bankr. S.D. Tex. Aug. 24, 2020) [ECF 1302] (discretionary pool of 4% of retention program).

## **Exculpation and Injunction**

21.     The Debtors also agreed—at the request of the U.S. Trustee—to adjourn the request for relief regarding the Exculpation and Injunction to the June 10 Hearing. The Wind-Down Order's Exculpation and Injunction relief is appropriate in the context of a wind down and has been approved in this district. *See, e.g.*, *In re Great Atlantic & Pacific Tea Company, Inc.*, 15-23007 [RDD], 2021 WL 5863393 (Bankr. S.D.N.Y. May 13, 2021) (granting exculpation, including for non-estate fiduciaries, in a wind-down order); *In re Hostess Brands, Inc.*, 12-22052 [RDD] (Bankr. S.D.N.Y. Nov. 30, 2012) (granting exculpation for actions taken in good faith and in the exercise of business judgment to implement and/or oversee the wind-down plan). As this Court recently set out, "a proper exculpation provision is a protection not only of court-supervised fiduciaries, but also of court-supervised and court-approved transactions. If this Court has approved a transaction as being in the best interest of the estate and has authorized the transaction

13

to proceed, then the parties to those transactions should not be subject to claims that effectively seek to undermine or second-guess this Court's determinations." *In re Azul S.A.*, 676 B.R. 277, 287 (Bankr. S.D.N.Y. 2026) (citing *In re Aegean Marine Petroleum Network Inc.*, 599 B.R. 717, 721 (Bankr. S.D.N.Y. 2019)). As the Court has approved the Wind-Down Plan and the attendant procedures, the Debtors here seek the same protective relief through the Exculpation and Injunction that is regularly granted to those implementing like transactions in the best interest of the estates.

22.     Furthermore, "[i]t is well established in this district that, under the proper circumstances, exculpation is not limited to estate fiduciaries." *In re Genesis Glob. Holdco, LLC*, 660 B.R. 439, 528 (Bankr. S.D.N.Y. 2024) (quoting *In re Aegean Marine Petroleum Network Inc.*, 599 B.R. at 721). "Exculpation provisions are designed to 'insulate court-supervised fiduciaries and some other parties from claims that are based on actions that relate to the restructuring.'" *In re Genesis Glob. Holdco, LLC*, 660 B.R. at 527 (quoting *c* 720); *see also In re Broadway Realty I Co., LLC*, No. 25-11050 (DSJ), 2026 WL 147505, at *13 (Bankr. S.D.N.Y. Jan. 19, 2026) (extending the insulation of exculpation provisions beyond court-supervised fiduciaries to include non-estate fiduciaries). Here, the Protected Persons are intimately involved in and supporting the Wind-Down Plan and the non-estate fiduciaries therein should also receive the same exculpatory and injunctive protection as the estate parties for their role in the Wind-Down.

23.     The Proposed Order exculpates Protected Persons from all claims, causes of action or suits that are based upon any actions the Protected Persons have taken, or will take, in good faith, and any and all actions that they have refrained, or will refrain, from taking in good faith, to develop, approve, implement, fund and/or oversee the Wind-Down Plan, but it expressly

14

excludes claims related to any act or omission that is determined by a final non-appealable order to have constituted willful misconduct, actual fraud or gross negligence.

24.     For the reasons set forth above and in the Motion, the Exculpation and the Injunction for the Protected Persons should be approved here.

### Notice

25.     Notice of this Supplement will be provided to the following parties (or their counsel) (collectively, the "**Notice Parties**"):  (a) the U.S. Trustee; (b) the Committee; (c) the DIP Lenders and the DIP Facility Agent, (d) the Ad Hoc Committee of Senior Secured Noteholders; (e) each agent or trustee under the Debtors' secured notes indenture or revolving credit facility, including the RCF Administrative Agent, the RCF Collateral Agent, and the Secured Notes Trustee; (f) the Aircraft Counterparties (as defined in the Final DIP Order), (g) all counterparties to the Debtors' executory contracts and unexpired leases, and (h) any other party that is entitled to notice under the Court's *Order Implementing Certain Notice and Case Management Procedures* [ECF No. 61].  A copy of this Supplement and any order entered in respect thereto will also be made available on the Debtors' case information website located at https://dm.epiq11.com/SpiritAirlines.  Based on the circumstances surrounding this Supplement and the nature of the relief requested herein, the Debtors respectfully submit that no other or further notice is required.

*[Remainder of page intentionally left blank]*

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other and further relief as the Court deems just and proper.

Dated:   May 27, 2026
         New York, New York

DAVIS POLK & WARDWELL LLP

*/s/ Marshall S. Huebner*
450 Lexington Avenue
New York, NY 10017
Tel.: (212) 450-4000
Marshall S. Huebner
Darren S. Klein
Christopher S. Robertson
Joseph W. Brown

*Counsel to the Debtors and Debtors in Possession*

**<u>Exhibit A</u>**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **SPIRIT AVIATION HOLDINGS, INC.,** *et al.,* | **Case No. 25-11897 (SHL)** |
| **Debtors.**[1] | **Jointly Administered** |

### ORDER (I) APPROVING WIND-DOWN INCENTIVE PLAN, (II) APPROVING DISCRETIONARY RETENTION POOL, (III) APPROVING EXCULPATION PROVISIONS, AND (IV) GRANTING RELATED RELIEF

Upon the motion (the "**Motion**") of Spirit Aviation Holdings, Inc. and its subsidiaries (collectively, the "**Debtors**"), each of which is a debtor and debtor in possession in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), for entry of an order, pursuant to sections 105(a), 363, 365, 503(c), and 554(a) of the Bankruptcy Code, and Bankruptcy Rules 4001, 6004 and 6007, (a) approving the Wind-Down KEIP for certain of the Debtors' senior management employees and (b) granting related relief, each as set forth more fully in the Motion, the Supplement, the Kuehne Declaration, and the Supplemental Kuehne Declaration; and the Court having jurisdiction to consider the Motion and the Supplement and the relief requested therein pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference M-431*, dated January 31, 2012 (Preska, C.J.); and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157; and the Court having found that it may enter an order consistent with Article III of the United States Constitution; and the Court having found that venue of the Chapter 11 Cases and related proceedings being proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409; and due

---

[1] The Debtors' names and last four digits of their respective employer identification numbers are as follows: Spirit Aviation Holdings, Inc. (1797); Spirit Airlines, LLC (7023); Spirit Finance Cayman 1 Ltd. (7020); Spirit Finance Cayman 2 Ltd. (7362); Spirit IP Cayman Ltd. (4732); and Spirit Loyalty Cayman Ltd. (4752). The Debtors' mailing address is 1731 Radiant Drive, Dania Beach, FL 33004.

and proper notice of the Motion and the Supplement having been provided to the Notice Parties, such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and the Court having held a hearing to consider the relief requested in the Motion and the Supplement (the "**Hearing**"); and the Court having reviewed and considered the Motion, the Supplement, the Kuehne Declaration, and the Supplemental Kuehne Declaration; and the Court having determined that the legal and factual bases set forth in the Motion, the Supplement, the Kuehne Declaration, the Supplemental Kuehne Declaration and at the Hearing establish just cause for the relief granted herein; and the record of the Hearing being fully incorporated herein; and the Court having found that the relief requested in the Motion and the Supplement represents a sound exercise of the Debtors' business judgment, and is in the best interests of the Debtors, their creditors, their estates, and all other parties in interest; and the Court having found that the relief set forth herein is necessary to avoid immediate and irreparable harm to the Debtors and their estates; and all objections and reservations of rights filed or asserted in respect of the Motion and the Supplement, if any, having been withdrawn, resolved, or overruled with prejudice; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor,[2]

**IT IS HEREBY ORDERED THAT:**

1. The Motion, as supplemented by the Supplement, is granted to the extent set forth herein (this "**Order**").

**Wind-Down KEIP**

2. The Debtors' implementation of the Wind-Down KEIP is justified by the facts and circumstances here in that it is narrowly designed to incentivize a narrow group of insider

---

[2] Unless defined herein, all defined terms shall have the meaning ascribed to them as contained in the Motion.

management employees and two directors who are vital to the successful implementation of the Wind-Down Plan to expeditiously and cost-effectively execute the Wind-Down Plan and control costs to maximize value for the Debtors' creditors.

3.      The Wind-Down KEIP is approved in its entirety, pursuant to sections 105(a), 363(b) and 503(c)(3) of the Bankruptcy Code.  The Debtors, and any successor thereto, including any trustee (whether under chapter 7 or chapter 11 of the Bankruptcy Code) or executor with expanded powers, are authorized to make any payments under the Wind-Down KEIP in accordance with the terms thereof and take any and all other actions that are necessary or appropriate in the exercise of their business judgment to implement the Wind-Down KEIP in accordance with the terms thereof.

4.      The Debtors are authorized to fund and establish an escrow account funded with an amount initially equal to $3.0 million, which account, notwithstanding any conversion of these Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code, shall be used solely to satisfy amounts earned under the Wind-Down KEIP.  Such account shall not be subject to (i) the DIP Liens or (ii) the Prepetition Liens (each as defined in the DIP Credit Agreement); *provided, however*, that the DIP Secured Parties (as defined in the Final DIP Order) shall have a security interest in and lien on any residual cash remaining in such escrow account after all payments have been made under the Wind-Down KEIP in accordance with the terms thereof; *provided, further*, that Revolving Priority Collateral or the proceeds thereof shall not be used to fund such account without the prior written consent of the RCF Administrative Agent and if Revolving Priority Collateral or the proceeds thereof are used to fund such account, the RCF Secured Parties shall have a security interest in and lien on any residual cash in such escrow account in proportion to the amount of cash funded into such escrow account from Revolving Priority Collateral or the

3

proceeds thereof relative to the amount of cash funded into such escrow account from all sources, in each case after all payments have been made under the Wind-Down KEIP in accordance with the terms thereof. The Debtors shall provide written notice to counsel to the DIP Secured Parties and the RCF Administrative Agent upon all such payments being made under the Wind-Down KEIP or upon termination of the Wind-Down KEIP. Without limiting the foregoing, whether or not the escrow account is sufficient, the payments under the Wind-Down KEIP shall remain payable and shall be paid in accordance with the terms thereof as and when due notwithstanding any conversion of these Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code.

**Wind-Down KERP Discretionary Capacity**

5. The $500,000 of discretionary capacity under the Wind-Down KERP described in the last sentence of paragraph 50 of the Motion and in the Supplement (the "**Discretionary Capacity**"), is justified by the facts and circumstances here in that it is (i) applicable only to non-insider employees of the Debtors and is narrowly designed to address unanticipated compensation needs in retaining non-insider employees who are important to the successful implementation of the Wind-Down Plan and (ii) needed to provide flexibility for the Debtors to maximize estate value for the benefit of all parties in interest.

6. The Discretionary Capacity is approved, pursuant to sections 105(a), 363(b) and 503(c)(3) of the Bankruptcy Code, and the Debtors are authorized to allocate, in their discretion, such Discretionary Capacity to eligible employees and make any payments thereunder in accordance with the terms of the Wind-Down KERP.

**Exculpation and Injunction**

7. The Protected Persons are hereby exculpated from any and all claims, causes of action or suits that are based upon any actions the Protected Persons have taken, or will take, in

4

good faith, and any and all actions that they have refrained, or will refrain, from taking in good faith, to develop, approve, implement, fund and/or oversee the Wind-Down Plan and any other act or omission that is being approved by the Court pursuant to the Wind-Down Order or this Order, except for claims related to any act or omission that is determined by a final non-appealable order to have constituted willful misconduct, actual fraud or gross negligence.

8.      The taking of any action against a Protected Person in connection with such actions as set forth in paragraph 7, including Third Party Actions, as well as any claims or causes of action challenging the foregoing shall be permanently enjoined pursuant to section 105(a) of the Bankruptcy Code.

**Other Provisions**

9.      Notice of the Motion and the Supplement is adequate under Bankruptcy Rule 6004(a). Notwithstanding the provisions of Bankruptcy Rule 6004(h), this Order shall be immediately effective and enforceable upon its entry.

10.      The Debtors are authorized to take, or refrain from taking, any action necessary or appropriate to implement and effectuate the terms of, and the relief granted in, this Order without seeking further order of the Court.

11.      During the pendency of the Chapter 11 Cases, this Court shall retain exclusive jurisdiction over any and all matters arising from or related to the implementation, interpretation, and enforcement of this Order, the Wind-Down, and the Wind-Down Plan, and to enforce the Exculpation of Protected Persons and related injunctions as set forth herein.

Dated: _____, 2026
      White Plains, New York

                                                  _____
                                                  THE HONORABLE SEAN H. LANE
                                                  UNITED STATES BANKRUPTCY JUDGE