DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Tel.: (212) 450-4000
Marshall S. Huebner
Darren S. Klein
Christopher S. Robertson
Joseph W. Brown

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **SPIRIT AVIATION HOLDINGS, INC.,** *et al.*, | **Case No. 25-11897 (SHL)** |
| **Debtors.[2]** | **Jointly Administered** |

**NOTICE OF HEARING ON MOTION OF THE DEBTORS FOR ENTRY OF ORDERS (I)(A) APPROVING BIDDING PROCEDURES FOR SALE OF THE DEBTORS' ASSETS, (B) AUTHORIZING THE POTENTIAL SELECTION OF STALKING HORSE BIDDER(S), (C) APPROVING BID PROTECTIONS, (D) SCHEDULING AUCTION(S) FOR, AND HEARING(S) TO APPROVE, THE SALE OF THE DEBTORS' ASSETS, (E) APPROVING THE FORM AND MANNER OF NOTICES OF SALE, AUCTION(S), AND SALE HEARING(S), AND (F) APPROVING THE ASSUMPTION AND ASSIGNMENT PROCEDURES, (II)(A) APPROVING THE SALE OF THE DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES AND (B) AUTHORIZING ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (III) GRANTING RELATED RELIEF**

**PLEASE TAKE NOTICE** that, on February 11, 2026, the above-captioned debtors and debtors in possession (the "**Debtors**") filed the *Motion of the Debtors for Entry of Orders (I)(A) Approving Bidding Procedures for Sale of the Debtors' Assets, (B) Authorizing the Potential Selection of Stalking Horse Bidder(s), (C) Approving Bid Protections, (D) Scheduling Auction(s)*

---

[1] All times herein are expressed in prevailing Eastern Time.

[2] The Debtors' names and last four digits of their respective employer identification numbers are as follows: Spirit Aviation Holdings, Inc. (1797); Spirit Airlines, LLC (7023); Spirit Finance Cayman 1 Ltd. (7020); Spirit Finance Cayman 2 Ltd. (7362); Spirit IP Cayman Ltd. (4732); and Spirit Loyalty Cayman Ltd. (4752). The Debtors' mailing address is 1731 Radiant Drive, Dania Beach, FL 33004.

*for, and Hearing(s) to Approve, the Sale of the Debtors' Assets, (E) Approving the Form and Manner of Notices of Sale, Auction(s), and Sale Hearing(s), and (F) Approving the Assumption and Assignment Procedures, (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances and (B) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases, and (III) Granting Related Relief* (the "**Motion**").

**PLEASE TAKE FURTHER NOTICE** that a hearing (the "**Hearing**") has been scheduled for **10:00 a.m. on June 10, 2026,** before the Honorable Sean H. Lane, United States Bankruptcy Judge, in the United States Bankruptcy Court for the Southern District of New York (the "**Court**"), to consider the relief requested in the Motion.

**PLEASE TAKE FURTHER NOTICE** that the Hearing will be conducted via Zoom for Government. Parties wishing to appear at or attend the Hearing (whether "live" or "listen only") are required to register their appearance at https://ecf.nysb.uscourts.gov/cgi-bin/nysbAppearances.pl by **10:00 a.m. on June 9, 2026**. Instructions and additional information about the Court's remote attendance procedures can be found at https://www.nysb.uscourts.gov/ecourt-appearances. The Court will circulate by email the Zoom link to the Hearing to those parties who properly made an electronic appearance prior to the Hearing.

**PLEASE TAKE FURTHER NOTICE** that the Hearing may be continued or adjourned from time to time by an announcement of the adjourned date or dates at the Hearing or a later hearing or by filing a notice with the Court.

**PLEASE TAKE FURTHER NOTICE** that responses or objections to the relief requested at the Hearing shall be (a) in writing, in English, and in text-searchable format, (b) filed with the Court electronically, and (c) served on the Debtors and the Sale Notice Parties (as defined in the Motion) so as to be received no later than **4:00 p.m. on June 3, 2026** (the "**Objection Deadline**"), in each case, in accordance with the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**"), the Court's *Order Implementing Certain Notice and Case Management Procedures* [ECF No. 61], and the Court's Chambers' Rules (available at https://www.nysb.uscourts.gov/content/judge-sean-h-lane), to the extent applicable.

**PLEASE TAKE FURTHER NOTICE** that all objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted upon default.

**PLEASE TAKE FURTHER NOTICE** that, if no responses or objections are timely filed and served with respect to the Motion, the Debtors may, on or after the Objection Deadline, submit to the Court the orders, substantially in the form of the proposed orders attached to the Motion, under certification of counsel or certification of no objection, which orders may be entered by the Court without further notice or opportunity to be heard.

**PLEASE TAKE FURTHER NOTICE** that copies of the Motion and any other document filed publicly in the above-captioned proceedings are available free of charge at https://dm.epiq11.com/SpiritAirlines.

*[Remainder of page intentionally left blank]*

2

Dated:   May 27, 2026
         New York, New York

DAVIS POLK & WARDWELL LLP

By:   */s/ Darren S. Klein*

450 Lexington Avenue
New York, NY 10017
Tel.: (212) 450-4000
Marshall S. Huebner
Darren S. Klein
Christopher S. Robertson
Joseph W. Brown

*Counsel to the Debtors and Debtors in Possession*

**Hearing Date and Time: 10:00 a.m.[1] on June 10, 2026**
**Objection Deadline: 4:00 p.m. on June 3, 2026**

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Tel.: (212) 450-4000
Marshall S. Huebner
Darren S. Klein
Christopher S. Robertson
Joseph W. Brown

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **SPIRIT AVIATION HOLDINGS, INC.,** *et al.*, | **Case No. 25-11897 (SHL)** |
| **Debtors.[2]** | **Jointly Administered** |

**MOTION OF THE DEBTORS FOR ENTRY OF ORDERS (I)(A) APPROVING
BIDDING PROCEDURES FOR SALE OF THE DEBTORS' ASSETS, (B)
AUTHORIZING THE POTENTIAL SELECTION OF STALKING HORSE BIDDER(S),
(C) APPROVING BID PROTECTIONS, (D) SCHEDULING AUCTION(S) FOR, AND
HEARING(S) TO APPROVE, THE SALE OF THE DEBTORS' ASSETS, (E)
APPROVING THE FORM AND MANNER OF NOTICES OF SALE, AUCTION(S), AND
SALE HEARING(S), AND (F) APPROVING THE ASSUMPTION AND ASSIGNMENT
PROCEDURES, (II)(A) APPROVING THE SALE OF THE DEBTORS' ASSETS FREE
AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES AND**

---

[1] All times herein are expressed in prevailing Eastern Time.

[2] The Debtors' names and last four digits of their respective employer identification numbers are as follows: Spirit Aviation Holdings, Inc. (1797); Spirit Airlines, LLC (7023); Spirit Finance Cayman 1 Ltd. (7020); Spirit Finance Cayman 2 Ltd. (7362); Spirit IP Cayman Ltd. (4732); and Spirit Loyalty Cayman Ltd. (4752). The Debtors' mailing address is 1731 Radiant Drive, Dania Beach, FL 33004.

**(B) AUTHORIZING ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (III) GRANTING RELATED RELIEF**

Spirit Aviation Holdings, Inc. and its subsidiaries (collectively, the "**Debtors**" or "**Spirit**"), each of which is a debtor and debtor in possession in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), hereby file this *Motion of the Debtors for Entry of Orders (I)(A) Approving Bidding Procedures for Sale of the Debtors' Assets, (B) Authorizing the Potential Selection of Stalking Horse Bidder(s), (C) Approving Bid Protections, (D) Scheduling Auction(s) for, and Hearing(s) to Approve, the Sale of the Debtors' Assets, (E) Approving the Form and Manner of Notices of Sale, Auction(s), and Sale Hearing(s), and (F) Approving the Assumption and Assignment Procedures, (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances and (B) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases, And (III) Granting Related Relief* (this "**Motion**"). This Motion is supported by the *Declaration of Brent Herlihy in Support of (I) the Bidding Procedures Motion and (II) the Motion to Shorten Notice* (the "**Herlihy Declaration**"), which is attached hereto as **Exhibit A** and incorporated by reference herein.[3] In further support of this Motion, the Debtors respectfully state as follows:

**Relief Requested**

1. By this Motion, and pursuant to sections 105(a), 363, 365, 503, and 507 of title 11 of the United States Code (the "**Bankruptcy Code**") and rules 2002, 6004, 6006, and 9007 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Debtors request entry of the following:

---

[3] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such term in the Bidding Procedures, the Herlihy Declaration, or the Wind-Down Order, as applicable.

a.      an order, substantially in the form attached hereto as **Exhibit B** (the "**Bidding Procedures Order**"),

> i.      authorizing and approving the bidding procedures, substantially in the form attached to the Bidding Procedures Order as Exhibit 1 (the "**Bidding Procedures**"), in connection with the sale of certain of the Debtors' assets, including, without limitation, slots at New York's LaGuardia Airport (the "**LGA Slots**"), hangar(s), a corporate office complex, training center, and a multi-family residential building (each a "**Campus Property**," and collectively, the "**Campus**"), ground service equipment, spare engines, flight simulators, aircraft maintenance and other equipment, assets related to the "Free Spirit" loyalty program and other intangible assets and/or other assets that the Debtors and their advisors shall identify and make available for diligence in the Data Room (such assets, collectively, the "**Bid Assets**" and such transaction, the "**Sale Transaction**");[4]

> ii.     authorizing, but not obligating, the Debtors to select one or more Stalking Horse Bidders in consultation with the applicable Consultation Parties (each as defined herein);

> iii.    approving Bid Protections (as defined herein) that the Debtors may offer to prospective Stalking Horse Bidders, if any, in accordance with the terms and conditions set forth in the Bidding Procedures;

> iv.     scheduling auctions (each, an "**Auction**") to be held on (i) July 9, 2026, at 10:00 a.m. (prevailing Eastern Time) with respect to Bid Assets other than the Campus Properties, and (ii) July 22, 2026, at 10:00 a.m. (prevailing Eastern Time) with respect to the Campus Properties;

> v.      scheduling hearings (each, a "**Sale Hearing**") to consider approval of the proposed Sale Transaction to be held on [●, 2026] at [●].m. (prevailing Eastern Time);[5]

> vi.     authorizing and approving the (A) notice of the sale of Bid Assets, the Indication of Interest Deadlines, the Bid Deadlines (each as defined herein), the Auction, and the Sale Hearing, substantially in the form attached to the Bidding Procedures Order as Exhibit 2 (the "**Sale Notice**"), (B) notice to each relevant non-Debtor counterparty

---

[4] As described below, the Bidding Procedures provide that there may be one or several Sale Transactions. To the extent that this Motion refers to the Sale Transaction, or terms related thereto, in the singular it shall include the plural, and vice versa.

[5] This date remains subject to Court approval. The Debtors intend to schedule a Sale Hearing with respect to Bid Assets other than the Campus Properties and a subsequent Sale Hearing with respect to the Campus Properties.

6

(each, a "**Counterparty**") to an executory contract or unexpired lease listed on the Potential Assumed Contracts Schedule (as defined below) (collectively, the "**Contracts and Leases**" and each, an "**Assumed Contract**" or "**Assumed Lease**") regarding the Debtors' potential assumption and assignment of such Counterparty's Assumed Contracts or Assumed Leases (collectively, the "**Potential Assumed Contracts**") and the amount necessary to cure any defaults thereunder (the "**Cure Costs**"), substantially in the form attached to the Bidding Procedures Order as <u>Exhibit 3</u> (the "**Potential Assumption and Assignment Notice**"), and (C) notice to each Counterparty listed on the Proposed Assumed Contracts Schedule (as defined herein), substantially in the form attached to the Bidding Procedures Order as <u>Exhibit 4</u> (the "**Proposed Assumption and Assignment Notice**"); and

vii.    authorizing and approving procedures for the assumption and assignment of the Contracts and Leases and the determination of Cure Costs with respect thereto (collectively, the "**Assumption and Assignment Procedures**");

b.    an order (the "**Sale Order**") authorizing and approving

i.    the sale of Bid Assets free and clear of all liens, claims, interests, and encumbrances, except certain permitted encumbrances as determined by the Debtors and any purchaser of Bid Assets; and

ii.    the assumption and assignment of the proposed Assumed Contracts and Assumed Leases (collectively, the "**Proposed Assumed Contracts**") in connection with the proposed Sale Transaction; and

c.    granting related relief.

**<u>Jurisdiction and Venue</u>**

2.    The United States Bankruptcy Court for the Southern District of New York (the "**Court**") has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference M-431*, dated January 31, 2012 (Preska, C.J.).

3.    This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b). The Debtors confirm their consent to the entry of a final order by the Court in connection with this Motion.

4.      Venue of the Chapter 11 Cases and related proceedings is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

**Background**

A.      **General Background**

5.      On August 29, 2025 (the "**Petition Date**"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors remain in possession of their property and continue to operate and manage their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.      The Chapter 11 Cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b), as ordered by the Court [ECF No. 35].

7.      On September 17, 2025, the United States Trustee for the Southern District of New York (the "**U.S. Trustee**") appointed an Official Committee of Unsecured Creditors (the "**Committee**") pursuant to section 1102 of the Bankruptcy Code [ECF No. 117].

8.      Additional information about the events leading up to the Petition Date, the Debtors' businesses, affairs, capital structure, and prepetition indebtedness, can be found in the First Day Declaration which is incorporated herein by reference.

9.      On May 8, 2026, the Bankruptcy Court entered the *Order (I) Authorizing the Debtors to Wind Down Operations, (II) Approving the Debtors' Use of Cash Collateral and Amendments to the DIP Credit Agreement and Final DIP Order, (III) Authorizing Modification or Termination of the Debtors' Employee Programs, (IV) Approving Wind-Down Incentive and Retention Plan, (V) Approving Modification of Contract Rejection Procedures, (VI) Approving Non-Fleet Assets Sale Procedures, (VII) Approving Non-Fleet Assets Abandonment Procedures, (VIII) Approving the Use of Certain Third-Party Contractors, (IX) Approving Protections for Certain Persons Implementing the Wind-Down, (X) Enforcing an Administrative Stay, (XI)*

*Authorizing the Preemption of Applicable Laws and Ordinances for the Debtors to Effectuate the Wind-Down, (XII) Authorizing the Debtors to Take Any and All Actions Necessary to Implement the Wind-Down, and (XIII) Granting Related Relief* [ECF No. 1048] (the "**Wind-Down Order**").

**B.      Marketing and Sale Process**

10.      The Debtors and their advisors have worked tirelessly and in good faith to pursue every reasonably available path toward a restructuring and continued operations of the Debtors' estates.  However, recent geopolitical events resulted in a massive and sustained increase in fuel prices, and a corresponding rapid and unexpected decline in the Debtors' liquidity situation.  The Debtors and their advisors searched for increased capital and any sources of savings or liquidity, leaving no option unexplored.  Sadly, it became clear on April 30, 2026 that sufficient incremental liquidity would not be found, and there were no longer any viable paths to a restructuring or continued operations.  Having fought valiantly for months to reorganize, and having all but succeeded, the Debtors were left with no alternative to an orderly Wind-Down.

11.      On May 4, 2026, the Debtors filed the Wind-Down Motion, which sets forth the procedures for implementation of the Wind-Down of the Debtors' operations.  The Wind-Down Motion was granted by the Court on May 8, 2026.

12.      In connection with the Wind-Down, the Debtors are conducting sale processes with respect to substantially all of their remaining valuable assets, including, without limitation, slots at New York's LaGuardia Airport (the "**LGA Slots**"), hangar(s), the Campus Properties constituting the Debtors' corporate headquarters, ground service equipment, spare engines, flight simulators, aircraft maintenance and other equipment, assets related to the "Free Spirit" loyalty program and other intangible assets and/or other assets that the Debtors and their advisors shall

9

identify and make available for diligence in the Data Room.[6] The Debtors have carefully evaluated a number of qualitative and quantitative factors in designing a process to sell these assets that the Debtors believe would maximize the value of their estates and produce maximum recoveries. This process principally includes approval of the Bidding Procedures that are designed to (a) promote active bidding from interested parties, (b) obtain the highest or otherwise best offers available for Bid Assets, and/or (c) maximize value during Wind-Down, in each case for the benefit of all stakeholders.

13. The Debtors, in consultation with their advisors and the applicable Consultation Parties, believe that the process and time periods set forth in the Bidding Procedures are reasonable and would provide parties with sufficient time and information necessary to formulate bids to purchase Bid Assets. In formulating the Bidding Procedures and time periods contained therein, the Debtors balanced the need to provide adequate and appropriate notice to parties in interest and to potential purchasers with the need to efficiently sell Bid Assets to maximize realizable value. Speed and efficiency are critical, in light of the Debtors' ongoing Wind-Down and the need to ensure that the Debtors maximize and preserve value for all stakeholders through the Wind-Down process. Thus, the Debtors have determined that pursuing one or more transactions in the manner and within the time periods prescribed in the Bidding Procedures is in the best interest of the Debtors' estates and would provide interested parties with sufficient opportunity to participate. Therefore, the Debtors respectfully request that the Court grant the relief requested herein.

---

[6] The Wind-Down Order establishes certain procedures governing the sale of the Debtors' de minimis assets (the "**Non-Fleet Assets Sale Procedures**"). Nothing in this Motion or the Bidding Procedures shall modify, supersede, or otherwise limit the Non-Fleet Assets Sale Procedures, which shall remain in full force and effect in accordance with their terms.

**C.** **Stalking Horse Bidders and Bid Protections**

14. The Debtors believe that maintaining maximum flexibility to run their sale process would produce the highest recovery for all stakeholders. Accordingly, the Debtors seek authorization, but not direction, in accordance with the Bidding Procedures, to exercise their business judgment to agree with any Qualified Bidder (as defined herein) that proposes to purchase Bid Assets for a purchase price of at least $25 million (in consultation with the applicable Consultation Parties) that (a) such Qualified Bidder's Qualified Bid (as defined herein) shall serve as the minimum bid for such Bid Assets (such Qualified Bidder, a "**Stalking Horse Bidder**" and, such Qualified Bid, a "**Stalking Horse Bid**") and (b) the Debtors would enter into the transaction(s) contemplated by such Stalking Horse Bid(s) unless a higher or otherwise better Qualified Bid is submitted with respect to such Bid Assets or lot thereof, as determined by the Debtors (in consultation with the applicable Consultation Parties) in accordance with the Bidding Procedures.

15. In order to incentivize prospective purchasers to agree to become a Stalking Horse Bidder, the Debtors seek authorization, but not direction, to offer (in consultation with the applicable Consultation Parties) the following bid protections to such Stalking Horse Bidder(s), payable if the Debtors consummate a sale pursuant to a Qualified Bid other than the Stalking Horse Bid (if the assets subject to such sale include those to which the Stalking Horse Bid relates): (x) payment of a break-up fee in an amount not to exceed three percent of the cash portion of the purchase price set forth in the Stalking Horse Bid (the "**Break-Up Fee**") and (y) reimbursement of the reasonable and documented fees and out-of-pocket expenses actually incurred by the Stalking Horse Bidder in an amount not to exceed $500,000 (the "**Expense Reimbursement**" and, together with the Break-Up Fee, the "**Bid Protections**"); *provided* that (i) the payment of any Bid Protections shall be subject to the terms and conditions of the definitive agreement(s) reached

between the Debtors and such Stalking Horse Bidder(s), (ii) the obligation to pay any Break-Up would not be binding on the Debtors until the approval of such Bid Protections in accordance with the Bidding Procedures, and (iii) no Bid Protections shall be paid to an insider of the Debtors.  For the avoidance of doubt, any Bid Protections would be payable solely out of the proceeds of the sale to which it relates.

16.    In the event that the Debtors, in consultation with the applicable Consultation Parties, desire to designate one or more Qualified Bids as Stalking Horse Bids and enter into one or more asset purchase agreements (a "**Stalking Horse APA**") that provides for the Bid Protections (subject to the limitations set forth herein), the Debtors would file a notice with the Court (the "**Stalking Horse Notice**") that, with respect to each such Stalking Horse Bid, (a) sets forth the identity of the Stalking Horse Bidder, (b) sets forth the amount of the Stalking Horse Bid and what portion of the Stalking Horse Bid (if any) would be in the form of cash, (c) identifies the Bid Assets (or lot thereof) to be purchased and the contracts and leases to be assumed, (d) states whether the Stalking Horse Bidder has any connection to the Debtors other than those that arise from the Stalking Horse Bid, (e) specifies the Bid Protections, and (f) attaches the Stalking Horse APA, including all exhibits, schedules, and attachments thereto.  The Debtors propose to serve the Stalking Horse Notice on U.S. Trustee, counsel to the Consultation Parties, and those parties requesting notice pursuant to Bankruptcy Rule 2002 of all pleadings filed in the Chapter 11 Cases (collectively, the "**Stalking Horse Notice Parties**"), with no further notice being required.  For the avoidance of doubt, the Debtors may designate more than one Stalking Horse Bidder; *provided*, that each Stalking Horse Bidder shall be designated with respect to a separate lot of Bid Assets, and no single lot of Bid Assets shall be subject to more than one Stalking Horse Bid.

12

17.     The Stalking Horse Notice would also specify the deadline to file objections (any such objections, "**Stalking Horse Objections**") to the designation of the Stalking Horse Bidder, the terms of the Stalking Horse Bid, or the Bid Protections set forth therein, which deadline (the "**Stalking Horse Objection Deadline**") would be no earlier than three business days after service of the Stalking Horse Notice on the Stalking Horse Notice Parties.   Stalking Horse Objections must (a) be in writing, (b) comply with the Bankruptcy Code, Bankruptcy Rules, and the Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**"), (c) state, with specificity, the legal and factual bases thereof, and (d) be filed with the Court and served on the Debtors and the Stalking Horse Notice Parties by the Stalking Horse Objection Deadline.

18.     If a timely Stalking Horse Objection is filed and served, to the extent not resolved consensually, the Debtors may schedule a hearing (the "**Stalking Horse Hearing**") before the Court on an expedited basis (on not less than three-days' notice) seeking authorization to enter into the Stalking Horse APA (including any Bid Protections contained therein).

19.     If no Stalking Horse Objection is timely and properly filed and served, upon the expiration of the Stalking Horse Objection Deadline, the Debtors may file a certificate of no objection with the Court and, upon such a filing, the Debtors propose (a) that their designation of the Stalking Horse Bidder and agreement respecting Bid Protections shall be deemed approved and (b) that the Debtors may enter into the Stalking Horse APA, in each case without further notice or opportunity to be heard.

**D.     The Proposed Sale and Bidding Procedures**

*i.     Overview*

20.     The Bidding Procedures are designed to promote a competitive and efficient sale process to maximize the value of the Bid Assets.  If approved, the Bidding Procedures would allow the Debtors to solicit and identify bids from potential buyers or investors that constitute the highest

13

or otherwise best offer for the Bid Assets (or lot thereof) on a schedule consistent with the

deadlines under the Bidding Procedures and the Debtors' strategy for maximizing value for their

stakeholders.

21.     As the Bidding Procedures are attached to the Bidding Procedures Order, they are

not restated herein in their entirety.  Certain of the key terms of the Bidding Procedures are

highlighted in the chart below.[7]

| MATERIAL TERMS OF THE BIDDING PROCEDURES | |
|---|---|
| **Consultation Rights** | Throughout the sale process, the Debtors, with the assistance of their advisors, will consult with (i) the Ad Hoc Committee of Secured Noteholders and its advisors (such ad hoc committee, the "**AHC**"), (ii) the Committee and its advisors, and (iii), solely with respect to the Revolving Priority Collateral, the RCF Administrative Agent, and its advisors (such parties, together, the "**Consultation Parties**").  The Debtors will provide updates as reasonably appropriate to the Consultation Parties as to the status of the Sale Process. <br><br> The AHC shall be a Consultation Party unless and until the DIP Facility Agent has indicated to the Debtors in writing (which may be by email) that the DIP Facility Agent intends, on behalf of the DIP Lenders, to submit a bid in the Bidding Process (as defined herein), at which point the AHC shall not be a Consultation Party with respect to (a) any review of competing bids (including Qualified Bids), (b) any determination regarding which bids constitute Qualified Bids, (c) the designation of any bid as a Stalking Horse Bid, or (d) the selection of a Successful Bidder or an Alternate Bidder (as defined below), in each case, solely with respect to Bid Assets pursuant to which the DIP Facility Agent intends to submit a bid, unless and until the DIP Facility Agent indicates in writing that it no longer intends to submit a bid.  In the event that any DIP Lender, Secured Noteholder (as defined in the DIP Credit Agreement), or any affiliate thereof becomes a Potential Bidder (as defined below) (such bidder, a "**Bidding Lender**"), the advisors to the AHC shall not provide any information that they receive in connection with the AHC's role as a Consultation Party to the DIP Agent, any DIP Lender, any Secured Noteholder (as defined in the DIP Credit Agreement), or any Bidding Lender. |

---

[7] To the extent that there is any inconsistency between the terms of the Bidding Procedures and the summary of such terms in this Motion, the terms of the Bidding Procedures shall control.  Capitalized terms used but not otherwise defined in this summary shall have the meanings ascribed to such terms in the Bidding Procedures or the Wind-Down Order, as applicable.

| MATERIAL TERMS OF THE BIDDING PROCEDURES | |
|---|---|
| | The Debtors shall not consult with or provide copies of bids regarding any assets to any insider or affiliate of the Debtors pursuant to the terms of these Bidding Procedures if such party has a bid for Bid Assets pending or has expressed any interest (written or verbal) in bidding for any of the Debtors' assets; *provided* that, if such insider or affiliate of the Debtors chooses not to submit any bid, and so informs the Debtors and the the applicable Consultation Parties in writing on or before the applicable Bid Deadline, then such party may receive copies of all bids following expiration of the applicable Bid Deadline (as defined below) (as such Bid Deadline may be extended hereunder). |
| **Provisions Governing Qualification of Bidders and Qualified Bids** | **Parts 1 and 2 of the Bidding Procedures set forth the Qualified Bid and Qualified Bidder requirements.**<br><br>A party may participate in the bidding process by submitting a bid for (a) all or substantially all of the Bid Assets and/or (b) one or more, or any combination of, Bid Assets as that party may desire.<br><br>**A.   Interested Parties.**  Unless otherwise ordered by the Bankruptcy Court for cause shown, to participate in the bidding process described herein (the "**Bidding Process**"), each interested person or entity (each, an "**Interested Party**") must deliver the following items (unless previously delivered) to (i) PJT or FTI, with respect to Bid Assets (other than the Campus Properties), and (ii) to Spirit, with respect to the Campus Properties:<br><br>1.   an executed confidentiality agreement in form and substance satisfactory to the Debtors;<br><br>2.   a statement and other factual support demonstrating, to the Debtors' satisfaction, in consultation with the applicable Consultation Parties, that the Interested Party has a *bona fide* interest in purchasing some or all of the Bid Assets;<br><br>3.   a description of the nature and extent of any due diligence the Interested Party wishes to conduct and the date in advance of the applicable Bid Deadline (as defined below) by which such due diligence will be completed;; and<br><br>4.   sufficient information, as defined by the Debtors, in consultation with the applicable Consultation Parties, to allow the Debtors, in consultation the applicable Consultation Parties to determine that the Interested Party has the financial wherewithal and any required internal corporate, legal, or other authorizations to close a sale transaction pursuant to these Bidding Procedures, which may include, but is not limited to, current audited financial statements of the Interested Party (or such other form of financial disclosure acceptable to the Debtors in consultation with the applicable |

15

| MATERIAL TERMS OF THE BIDDING PROCEDURES |
| --- |
| Consultation Parties) or, if the Interested Party is an entity formed for the purpose of acquiring some or all of the Bid Assets, (A) current audited financial statements of the equity holder(s) (the "**Sponsor(s)**") of the Interested Party (or such other form of financial disclosure acceptable to the Debtors in consultation with the applicable Consultation Parties) and (B) a written commitment acceptable to the Debtors that the Sponsor(s) are responsible for the Interested Party's obligations in connection with the Bidding Process.<br><br>If the Debtors determine (in consultation with the applicable Consultation Parties), after receipt of the items identified above, that an Interested Party has a *bona fide* interest in purchasing some or all of Bid Assets, such Interested Party will be deemed a "**Potential Bidder**" and the Debtors will provide such Potential Bidder with access to the Debtors' confidential electronic data room concerning the Bid Assets (the "**Data Room**"").<br><br>**B.    Due Diligence.**  Until the applicable Bid Deadline, in addition to granting access to the Data Room, the Debtors will provide Potential Bidders with due diligence access and additional information as may be requested by a Potential Bidder, to the extent that the Debtors determine, in consultation with the applicable Consultation Parties, that such requests are reasonable and appropriate under the circumstances.  All due diligence requests with respect to Bid Assets (other than the Campus Properties) shall be directed to PJT or FTI.  All due diligence requests with respect to the Campus Properties shall be directed to Spirit.  The Debtors, with the assistance of PJT and/or FTI, will coordinate all reasonable requests for additional information and due diligence access from Potential Bidders.<br><br>For any Potential Bidder that is a competitor of the Debtors (or an affiliate thereof), the Debtors reserve the right to withhold any diligence materials that the Debtors determine, in consultation with the Consultation Parties, are commercially sensitive or otherwise not appropriate for disclosure to such Potential Bidder, or to require that the Potential Bidder enter into a "clean team" or similar arrangement acceptable to the Debtors in order to receive such diligence materials.<br><br>Unless otherwise determined by the Debtors, the availability of due diligence to a Potential Bidder will cease if (i) the Potential Bidder does not become a Qualified Bidder or (ii) the Bidding Process is terminated in accordance with its terms.<br><br>**C.    Non-Binding Indications of Interest Deadlines**.<br><br>Any Potential Bidder interested in purchasing the LGA Slots must submit a non-binding indication of interest (an "**Indication of Interest**") to PJT or FTI so as to be received no later than **June 10, 2026 at 4:00 p.m.** |

16

| MATERIAL TERMS OF THE BIDDING PROCEDURES |
|---|

(prevailing Eastern Time) (the "**LGA Slots Indication of Interest Deadline**").

Any Potential Bidder interested in purchasing Bid Assets other than the Campus Properties or LGA Slots must submit an Indication of Interest to PJT or FTI so as to be received no later than **June 17, 2026 at 4:00 p.m. (prevailing Eastern Time)** (the "**General Indication of Interest Deadline**" and the LGA Slots Indication of Interest Deadline and the Campus Indication of Interest Deadline, each, an "**Indication of Interest Deadline**" and, collectively, the "**Indication of Interest Deadlines**").

Any Potential Bidder interested in purchasing one or more of the Campus Properties must submit an Indication of Interest to Spirit so as to be received no later than **July 13, 2026 at 4:00 p.m. (prevailing Eastern Time)** (the "**Campus Indication of Interest Deadline**").

The Indication of Interest must (i) set forth a proposed purchase price for the proposed transaction, including by identifying separately any cash and non-cash components of the proposed transaction consideration, which non-cash components shall be limited only to assumption of liabilities of any of the Debtors, and (ii) identify any proposed conditions to closing the transaction. Promptly upon receiving the Indications of Interest, the Debtors shall provide the Indications of Interests to the applicable Consultation Parties.

Each Potential Bidder will be deemed to consent to the Debtors' sharing its Indication of Interest and any subsequent bid to purchase Bid Assets (together with any supporting materials submitted in connection therewith) with the applicable Consultation Parties, subject to the terms and conditions hereof. Submitting an Indication of Interest does not (i) obligate the submitting party to submit a formal bid or participate in the sale process and (ii) exempt the submitting party from also having to submit a Qualified Bid by the applicable Bid Deadline to participate in the Auction. Any Potential Bidder that fails to submit an Indication of Interest by the applicable Indication of Interest Deadline may not be deemed a Qualified Bidder pursuant to section 2 below unless such condition is waived by the Debtors, in consultation with the applicable Consultation Parties.

**Bid Deadlines.**

A Potential Bidder who desires to be considered for designation as a Stalking Horse Bidder and be deemed a Qualified Bidder for the LGA Slots must deliver to PJT or FTI, with copies to Davis Polk & Wardwell LLP ("**Davis Polk**"), the Required Bid Documents (as defined below) so as to be received no later than **June 10, 2026 at 4:00 p.m. (prevailing Eastern Time)** (the "**LGA Slots Stalking Horse Bid Deadline**"). A Potential Bidder who desires to be deemed a Qualified Bidder for the LGA

17

| MATERIAL TERMS OF THE BIDDING PROCEDURES |
|---|

Slots must deliver to PJT or FTI, with copies to Davis Polk, the Required Bid Documents so as to be received no later than **June 30, 2026 at 4:00 p.m. (prevailing Eastern Time)** (the "**LGA Slots Final Bid Deadline**").

A Potential Bidder who desires to be considered for designation as a Stalking Horse Bidder and be deemed a Qualified Bidder for one or more of the Campus Properties must deliver to Spirit, with copies to Davis Polk, the Required Bid Documents , so as to be received no later than **June 13, 2026 at 4:00 p.m. (prevailing Eastern Time)** (the "**Campus Stalking Horse Bid Deadline**").  A Potential Bidder who desires to be deemed a Qualified Bidder for one or more of the Campus Properties must deliver to Spirit, with copies to Davis Polk, the Required Bid Documents so as to be received no later than **July 7, 2026 at 4:00 p.m. (prevailing Eastern Time)** (the "**Campus Final Bid Deadline**").

A Potential Bidder who desires to be considered for designation as a Stalking Horse Bidder and be deemed a Qualified Bidder for Bid Assets other than the Campus Properties or the LGA Slots must deliver to PJT or FTI, with copies to Davis Polk, the Required Bid Documents, so as to be received no later than **July 22, 2026 at 4:00 p.m. (prevailing Eastern Time)** (the "**Other Bid Assets Stalking Horse Bid Deadline**").

A Potential Bidder who desires to be deemed a Qualified Bidder for Bid Assets other than the Campus Properties or the LGA Slots must deliver to Spirit, with copies to Davis Polk, the Required Bid Documents so as to be received no later than **July 7, 2026 at 4:00 p.m. (prevailing Eastern Time)** (the "**Other Bid Assets Final Bid Deadline**" and, together with the LGA Slots Stalking Horse Bid Deadline, the LGA Slots Final Bid Deadline, the Campus Stalking Horse Bid Deadline, the Campus Final Bid Deadline, and the Other Bid Assets Stalking Horse Bid Deadline, the "**Bid Deadlines**").

The Debtors, in consultation with the applicable Consultation Parties, and without the need for further Bankruptcy Court approval, may extend each Bid Deadline by a reasonable period of time if the Debtors, in consultation with the applicable Consultation Parties, believe that such extension would further the goal of attaining the highest or otherwise best offer for the applicable Bid Assets.  If the Debtors extend a Bid Deadline, the Debtors will promptly notify all Potential Bidders with respect to the applicable Bid Assets of such extension.

A. **Bid Requirements.**

1. Required Bid Documents.  All bids must be accompanied by the following items (collectively, the "**Required Bid Documents**"):

18

| MATERIAL TERMS OF THE BIDDING PROCEDURES | |
|---|---|
| | a.  a letter stating that the bidder's offer is irrevocable until consummation of a transaction involving Bid Assets (or any lot thereof) identified in such offer;<br><br>b.  a duly authorized and executed purchase agreement or other appropriate documentation (i) in form and substance reasonably satisfactory to the Debtors, or (ii) with respect to any lot of Bid Assets with respect to which (x) a Stalking Horse APA has been executed or (y) a form purchase agreement is provided by the Debtors (through their advisors), a duly authorized and executed purchase agreement based on such Stalking Horse APA or form purchase agreement, as applicable, marked to show any revisions, and in the case of (i) and (ii) above, including, among other things, the purchase price for the Bid Assets (or any lot thereof, as applicable), together with all exhibits and schedules thereto (including, among other things, a proposed form of order approving the transaction(s) contemplated in such purchase agreement).  For the avoidance of doubt, a "conceptual" or "issues list"-style markup of the form asset purchase agreement would not satisfy this requirement;<br><br>c.  written evidence acceptable to the Debtors, in their discretion and in consultation with the applicable Consultation Parties, demonstrating financial wherewithal, operational ability, and corporate authorization to consummate the proposed transaction;<br><br>d.  a written acknowledgment that the bidder (i) has had an opportunity to conduct any and all due diligence regarding the applicable Bid Assets and/or the Sale Transaction, (ii) has relied solely upon its own independent review, investigation, and/or inspection of any documents and any other information in making the bid, (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied by operation of law, or otherwise, by the Debtors or any of their advisors (including PJT, FTI Consulting, Inc., and Davis Polk) or other representatives regarding the bid, the applicable Bid Assets (or any lot thereof), the Sale Transaction, or the completeness or accuracy of any information provided in connection therewith or with the Auction, except as expressly stated in these Bidding Procedures, and (iv) the bidder did not engage in any collusive conduct and acted in good faith in submitting its bid; and<br><br>e.  written evidence of a firm commitment for financing to consummate the proposed transaction, or other evidence of ability to consummate the proposed transaction without |

19

| MATERIAL TERMS OF THE BIDDING PROCEDURES |
|---|

financing, in either case which is satisfactory to the Debtors in their discretion, in consultation with the applicable Consultation Parties.

2. Identity of Purchaser. Full disclosure of the legal identity of the purchaser (including any Sponsor(s), if the purchaser is an entity formed for the purpose of consummating the proposed transaction).

3. Bid Assets; Consideration.

a. Identification of Bid Assets to be purchased and Contracts and Leases to be assumed.

b. Clearly states which liabilities of the Debtors or the applicable Bid Assets will be assumed.

c. Sets forth the consideration, including the form thereof, for the applicable Bid Assets to be purchased and the Contracts and Leases to be assumed (the "**Bid Consideration**"); *provided* that, if there is an Approved Stalking Horse Bid, the consideration must be at least equal to the following: (i) the consideration set forth in the Approved Stalking Horse Bid; *plus* (ii) the aggregate amount of any Approved Bid Protections; *plus* (iii) two percent of the consideration set forth in the Approved Stalking Horse Bid (the "**Minimum Overbid**").

d. allocates the Bid Consideration among the applicable Bid Assets and Contracts and Leases to be assumed (per lot of Bid Assets).

4. No Financing/Diligence Contingency. No condition on the obtainment of financing or on the outcome of unperformed due diligence.

5. Regulatory Approvals. Includes a description of all governmental, licensing, regulatory, or other approvals or consents that are required to consummate the proposed transaction (including any antitrust approval related to the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended), together with evidence satisfactory to the Debtors, in consultation with the applicable Consultation Parties, of the ability to obtain such approvals or consents as soon as reasonably practicable, and in no event later than July 17, 2026, as well as a description of any material contingencies or other conditions that will be imposed upon, or that will otherwise apply to, the obtainment or effectiveness of any such approvals or consents.

6. Alternate Bidder. Must expressly state that the bidder agrees to serve as an Alternate Bidder if such bidder's Qualified Bid is

20

| MATERIAL TERMS OF THE BIDDING PROCEDURES |
|---|

selected as the next highest or next best bid after the Successful Bid with respect to the applicable Bid Assets.

7. Good Faith Deposit. Is accompanied by a cash deposit by wire transfer to an Escrow Agent in an amount equal to ten percent of the consideration set forth in connection with such bid.

8. Authorized Representatives. A list setting forth the representatives that are authorized to appear and act on behalf of the bidder in connection with the proposed transaction.

9. No Break-Up Fee. Statement that the bidder will not seek any transaction or break-up fee, expense reimbursement, or similar type of payment (other than if such bid is selected to be a Stalking Horse Bid and subject to Section 3 of the Bidding Procedures) and that it waives any substantial contribution administrative expense claims under section 503(b) of the Bankruptcy Code.

10. Adequate Assurance. Evidence supporting the bidder's ability to comply with section 365 of the Bankruptcy Code (to the extent applicable), including the provision of adequate assurance of such bidder's ability to perform in the future under any contracts and leases proposed in its bid to be assumed by the Debtors and assigned to the bidder, in a form that will permit the Debtors to disseminate immediately such evidence to the non-Debtor counterparties to such contracts and leases.

11. Cure Costs. Indication of whether or not the bidder will assume all cure costs associated with any Contracts and Leases it intends to assume.

**B.      Designation of Qualified Bids; Cure of Non-Qualifying Bids.** The Debtors, in consultation with the applicable Consultation Parties, shall have the right to deem a bid a Qualified Bid. The Debtors will be authorized to approve joint bids in their reasonable discretion, in consultation with the applicable Consultation Parties, on a case-by-case basis. If the Debtors receive a bid prior to the applicable Bid Deadline that is not a Qualified Bid, the Debtors may provide the bidder with the opportunity to remedy any deficiencies through and, in consultation with the applicable Consultation Parties, after the Bid Deadline. If any bid is determined by the Debtors, in consultation with the applicable Consultation Parties, not to be a Qualified Bid, and the applicable bidder fails to remedy such bid in accordance with the Bidding Procedures, the Debtors, to the extent applicable, shall promptly instruct the Deposit Agent to return such bidder's Good Faith Deposit.

21

| MATERIAL TERMS OF THE BIDDING PROCEDURES | |
|---|---|
| | **C.    Deemed Acknowledgments and Representations.**    Each Qualified Bidder shall be deemed to acknowledge and represent that such bidder: |
| | 1.  has reviewed, understands, and accepts the Bidding Procedures; |
| | 2.  has consented to the jurisdiction of the Bankruptcy Court; and |
| | 3.  its Qualified Bid is irrevocable and binding consummation of a transaction if it is selected as the Successful Bidder. |
| **Provisions Governing Stalking Horse Bidders and Break-Up Fee** | **Part 3 of the Bidding Procedures sets forth the provisions governing the selection and approval of Stalking Horse Bidders (including offering Break-Up Fee in connection therewith)**<br><br>**A.    Selection of Stalking Horse Bidder.**  The Debtors are authorized, but not obligated, to exercise their business judgment (in consultation with the applicable Consultation Parties) to agree with any Qualified Bidder that (a) such Qualified Bidder's Qualified Bid shall serve as the minimum bid for the Bid Assets or any lot thereof (such Qualified Bidder, a "**Stalking Horse Bidder**" and, such Qualified Bid, a "**Stalking Horse Bid**") and (b) the Debtors will enter into the transaction(s) contemplated in such Stalking Horse Bid unless a higher or otherwise better Qualified Bid is submitted with respect to such Bid Assets or any lot thereof, as determined by the Debtors (in consultation with the applicable Consultation Parties) in accordance with the Bidding Procedures.<br><br>**B.    Break-Up Fee.**  In order to incentivize prospective purchasers to agree to become a Stalking Horse Bidder, the Debtors are authorized, but not obligated, to exercise their business judgment (in consultation with the applicable Consultation Parties) to offer the following bid protections to such Stalking Horse Bidder(s), payable if the Debtors consummate a sale pursuant to a Qualified Bid other than the Stalking Horse Bid (if the assets subject to such sale include those to which such Stalking Horse Bid relates): (x) payment of a break-up fee in an amount not to exceed three percent of the cash portion of the purchase price set forth in the Stalking Horse Bid (the "**Break-Up Fee**") and (y) reimbursement of the reasonable and documented fees and out-of-pocket expenses actually incurred by the Stalking Horse Bidder in an amount not to exceed $500,000 (the "**Expense Reimbursement**" and, together with the Break-Up Fee, the "**Bid Protections**"); *provided* that (i) the payment of any Bid Protections shall be subject to the terms and conditions of the definitive agreement(s) executed between the Debtors and such Stalking Horse Bidder(s), (ii) any Bid Protections will not be binding on the Debtors until the approval of such Bid Protections in accordance with these Bidding Procedures, and (iii) no Bid Protections shall be paid to an insider of the Debtors.  For the avoidance of doubt, the Debtors will provide Expense Reimbursement only to the Stalking Horse Bidder(s) and such expenses must be |

22

| MATERIAL TERMS OF THE BIDDING PROCEDURES |
|---|
| reasonable, documented, and subject to review by the Debtors.  To the extent payable, any Bid Protections would be paid out of the proceeds of the sale to which they relate.<br><br>**C.**    **Stalking Horse Notice.**    In the event that the Debtors, in consultation with the applicable Consultation Parties, desire to designate one or more Qualified Bids as Stalking Horse Bids and enter into asset purchase agreements (each, a "**Stalking Horse APA**") with one or more Stalking Horse Bidders that provide for Bid Protections (subject to the limits on such Bid Protections set forth herein), the Debtors may file a notice or notices with the Bankruptcy Court (the "**Stalking Horse Notice**") that, with respect to each such Stalking Horse Bid, (a) sets forth the identity of the Stalking Horse Bidder, (b) sets forth the amount of the Stalking Horse Bid and what portion of the Stalking Horse Bid (if any) would be in the form of cash, (c) identifies the Bid Assets (or any lot thereof) to be purchased and the contracts and leases to be assumed, (d) states whether the Stalking Horse Bidder has any connection to the Debtors other than those that arise from the Stalking Horse Bid, (e) specifies the Bid Protections, and (f) attaches the Stalking Horse APA, including all exhibits, schedules, and attachments thereto, to the extent doing so does not disclose strategic or confidential information,  and serve such Stalking Horse Notice on the U.S. Trustee, counsel to each of the Consultation Parties, and those parties who have filed the appropriate notice pursuant to Bankruptcy Rule 2002 requesting notice of all pleadings filed in the Chapter 11 Cases (collectively, the "**Stalking Horse Notice Parties**"), with no further notice being required.  For the avoidance of doubt, the Debtors may designate more than one Stalking Horse Bidder; *provided*, that each Stalking Horse Bidder shall be designated with respect to a separate lot of Bid Assets, and no single lot of Bid Assets shall be subject to more than one Stalking Horse Bid.<br><br> **D.**    **Stalking Horse Objections.**<br><br>1.    The Stalking Horse Notice shall also specify the deadline to file objections ("**Stalking Horse Objections**") to the designation of the Stalking Horse Bidder, the terms of the Stalking Horse Bid, or the Bid Protections set forth therein, which deadline (the "**Stalking Horse Objection Deadline**") shall be no earlier than three business days after service of the Stalking Horse Notice on the Stalking Horse Notice Parties.  Stalking Horse Objections must (a) be in writing, (b) comply with the Bankruptcy Code, Bankruptcy Rules, and Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**"), (c) state, with specificity, the legal and factual bases thereof, and (d) be filed with the Bankruptcy Court and served on the Debtors and the Stalking Horse Notice Parties by the Stalking Horse Objection Deadline. |

| MATERIAL TERMS OF THE BIDDING PROCEDURES | |
|---|---|
| | 2. If a timely Stalking Horse Objection is filed and served, to the extent not resolved consensually, the Debtors may schedule a hearing before the Bankruptcy Court to be held on an expedited basis (on not less than three-days' notice) seeking authorization to enter into the applicable Stalking Horse APA(s) (including the Bid Protections contained therein) (a "**Stalking Horse Hearing**"). If no timely Stalking Horse Objection is filed and served with respect to a particular Stalking Horse Bidder, upon the expiration of the applicable Stalking Horse Objection Deadline, the Debtors shall file with the Bankruptcy Court a certificate of no objection (a "**CNO**") and, upon such filing, (a) the Debtors' designation of the Stalking Horse Bidder and agreement respecting Bid Protections shall be deemed approved and (b) the Debtors may enter into the Stalking Horse APA, in each case without further notice or opportunity to be heard. Upon the approval by the Bankruptcy Court at a Stalking Horse Hearing for the Debtors to enter into the Stalking Horse APA (including the Bid Protections contained therein), or upon the Debtors' filing a CNO with respect to a Stalking Horse Bidder, the Stalking Horse Bidder shall be the "**Approved Stalking Horse Bidder**," its Stalking Horse Bid shall be the "**Approved Stalking Horse Bid**," and the Bid Protections contained therein (if any) shall be the "**Approved Bid Protections**" applicable to such Approved Stalking Horse Bidder. |
| **Provisions Governing the Auction and Permitting the Modification of Bidding and Auction Procedures** | **Part 4 of the Bidding Procedures sets forth the procedures governing the Auction.**<br><br>A. **Date, Time, and Location.** The Auction shall be conducted at the offices of Davis Polk, 450 Lexington Avenue, New York, New York 10017 (i) with respect to the Bid Assets other than the Campus Properties, on **July 9, 2026 at 10:00 a.m. (prevailing Eastern Time)**, and (ii) with respect to the Campus Properties, on **July 22, 2026 at 10:00 a.m. (prevailing Eastern Time)**, or such later time on such day or such other place as the Debtors (in consultation with the Consultation Parties) shall notify all Participating Parties (as defined below).<br><br>B. **Participants and Attendees.** Attendance will be limited to the representatives or agents of the Debtors, the Consultation Parties, and the Qualified Bidders (including any Approved Stalking Horse Bidder), and the legal and financial advisors to each of the foregoing.<br><br>C. **Auction Procedures.**<br><br>1. Notice of Qualification. Prior to the Auction, the Debtors will (a) notify each Qualified Bidder that has timely submitted a Qualified Bid that its bid is a Qualified Bid and (b) provide all Qualified Bidders with (i) copies of the Qualified Bid or |

| MATERIAL TERMS OF THE BIDDING PROCEDURES |
|---|
| combination of Qualified Bids that the Debtors believe, in consultation with the applicable Consultation Parties, is the highest or otherwise best offer (the "**Starting Bid**"), which may be designated on a per-Auction Lot basis, (ii) an explanation of how the Debtors value the Starting Bid, and (iii) a list identifying all of the Qualified Bidders.<br><br>2.  <u>Starting Bid</u>.  The first round of bidding at the Auction shall commence at the Starting Bid.  For the avoidance of doubt, the Starting Bid may be comprised of multiple Qualified Bids if the aggregate consideration of such Qualified Bids is higher and better than an Approved Stalking Horse Bid.<br><br>3.  <u>Subsequent Bids</u>.  Bidding at the Auction will begin with the Starting Bid and continue, in one or more rounds of bidding in the presence of all parties at the Auction, so long as during each round at least one subsequent bid (a "**Subsequent Bid**") is submitted by a Qualified Bidder that (a) improves upon such Qualified Bidder's immediately prior Qualified Bid and (b) the Debtors, in their discretion and in consultation with the applicable Consultation Parties, determine that such Subsequent Bid is (i) with respect to the first round, a higher or otherwise better offer than the Starting Bid and (ii) with respect to subsequent rounds, a higher or otherwise better offer than the Leading Bid (as defined below), in each case taking into account other Qualified Bids for other Bid Assets; *provided* that, with respect to the first round, if there is an Approved Stalking Horse Bidder, any Qualified Bid must provide incremental consideration at least equal to the Minimum Overbid.  In each subsequent round after the first round, the Debtors, in their discretion and in consultation with the applicable Consultation Parties, may determine appropriate minimum bid increments or requirements for each round of bidding.<br><br>4.  <u>Highest or Best Offer</u>.  After the first round of bidding and between each subsequent round of bidding, as applicable, the Debtors, in their discretion and in consultation the applicable Consultation Parties, will determine and announce the bid or bids that they believe to be the highest or otherwise best offer or combination of offers (the "**Leading Bid**").  Additional consideration in excess of the amount set forth in the Starting Bid may include cash and/or non-cash consideration; *provided* that the value for such non-cash consideration shall be determined by the Debtors, in their discretion and in consultation with the applicable Consultation Parties.<br><br>5.  <u>Partial Bids</u>.  If any of the Qualified Bids submitted by the applicable Bid Deadline are structured as a purchase of less than all or substantially all of the Bid Assets (each such bid, |

| MATERIAL TERMS OF THE BIDDING PROCEDURES |
|---|

| | a "**Partial Bid**"), the Debtors (in consultation with the applicable Consultation Parties) may conduct separate auctions at the Auction for each lot of assets (each, an "**Auction Lot**") subject to a Partial Bid. The Debtors may, in consultation with the applicable Consultation Parties, combine multiple Partial Bids into an Auction Lot to compete against any particular Approved Stalking Horse Bid. The Debtors may designate each Auction Lot at any time prior to the Auction. |
|---|---|
| | 6. <u>Modification of Bidding and Auction Procedures</u>. The Debtors, in consultation with the applicable Consultation Parties, may employ and announce at the Auction additional procedural rules for conducting the Auction (*e.g.*, the amount of time allotted to submit Subsequent Bids); *provided* that such rules shall (a) not be inconsistent with the Bankruptcy Code, the Bidding Procedures Order, or any other order of the Bankruptcy Court entered in connection herewith and (b) be disclosed to all Qualified Bidders. |
| **Provisions Regarding Selection of Successful Bid and Alternate Bid** | **Part 5 of the Bidding Procedures sets forth procedures by which the Debtors shall select the Successful Bid(s) and Alternate Bid(s).**<br><br>**A. Selection of Successful Bids.** Prior to the conclusion of the Auction, the Debtors, in consultation with the applicable Consultation Parties, shall (a) review and evaluate each bid made at the Auction on the basis of financial and contractual terms and other factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the sale transaction, (b) determine and identify, with respect to each Auction Lot, the highest or otherwise best offer or collection of offers (the "**Successful Bid(s)**"), (c) determine and identify, with respect to each Auction Lot, the next highest or otherwise best offer or collection of offers (the "**Alternate Bid(s)**"), and (d) notify all Qualified Bidders participating in the Auction, prior to its adjournment, of (i) the identity of the party or parties that submitted the Successful Bid(s) (the "**Successful Bidder(s)**"), (ii) the amount and other material terms of the Successful Bid(s), (iii) the identity of the party or parties that submitted the Alternate Bid(s) (the "**Alternate Bidder(s)**"), and (iv) the amount and other material terms of the Alternate Bid(s).<br><br>Each Qualified Bidder shall agree and be deemed to agree to be the Alternate Bidder with respect to one or more Auction Lots if so designated.<br><br>**B. Execution of Definitive Documentation.** As soon as reasonably practicable after the completion of the Auction, the Successful Bidder(s) and the applicable Debtors shall complete and execute all agreements, instruments, and other documents necessary to consummate the applicable sale or other transaction(s) contemplated by the applicable |

| MATERIAL TERMS OF THE BIDDING PROCEDURES | |
|---|---|
| | Successful Bid(s).  Promptly following the selection of the Successful Bid(s) and Alternate Bid(s), the Debtors shall file a notice of the Successful Bid(s) and Alternate Bid(s) with the Bankruptcy Court, together with a proposed order approving the transaction(s) contemplated therein (the "**Sale Order**"). |
| **Provisions Regarding Sale Hearing and Closing with Successful Bidders and Alternative Bidders** | **Part 6 of the Bidding Procedures sets forth procedures regarding closing with Successful Bidder(s) or Alternative Bidder(s).**<br><br>The Sale Hearing(s) will be held on **[●], 2026 at [●]**[8] before the Honorable Judge Sean H. Lane, in the United States Bankruptcy Court for the Southern District of New York, or by such other virtual or electronic means as may be determined by the Bankruptcy Court.  The Sale Hearing may be adjourned by the Debtors, in consultation with the applicable Consultation Parties, by an announcement of the adjourned date at a hearing before the Bankruptcy Court or by filing a notice on the Bankruptcy Court's docket.  At the Sale Hearing, the Debtors will seek the Bankruptcy Court's approval of the Successful Bid(s) and, at the Debtors' election, the Alternate Bid(s).<br><br>The Debtors' presentation to the Bankruptcy Court of the Successful Bid(s) and Alternate Bid(s) will not constitute the Debtors' acceptance of such bid(s), which acceptance will only occur upon approval of such bid(s) by the Bankruptcy Court.  Following the Bankruptcy Court's entry of the Sale Order, the Debtors and the Successful Bidder(s) shall proceed to consummate the transaction(s) contemplated by the Successful Bid(s).  If the Debtors and the Successful Bidder(s) fail to consummate the proposed transaction(s), then the Debtors shall file a notice with the Bankruptcy Court advising of such failure.  Upon the filing of such notice with the Bankruptcy Court, the Alternate Bid(s) will be deemed to be the Successful Bid(s) and the Debtors will be authorized, but not directed, to effectuate the transaction(s) with the Alternate Bidder(s) subject to the terms of the Alternate Bid(s) of such Alternate Bidder(s) without further order of the Bankruptcy Court.  If the failure to consummate the transaction(s) contemplated by the Successful Bid(s) is the result of a breach by the Successful Bidder(s) (the "**Breaching Bidder(s)**") of its (their) asset purchase agreement(s), the Debtors reserve the right to seek all available remedies from such Breaching Bidder(s), subject to the terms of the applicable asset purchase agreement. |

---

[8] This date remains subject to Bankruptcy Court approval.  The Debtors intend to schedule a Sale Hearing with respect to Bid Assets other than the Campus Properties and a subsequent Sale Hearing with respect to the Campus Properties

ii.      *Extraordinary Provisions*

22.      Section I.D. of the Sale Guidelines provides that the Debtors must conspicuously disclose any "Extraordinary Provisions" in connection with the conduct of certain asset sales.  Out of an abundance of caution, the Debtors disclose that the relief sought herein may include the following Extraordinary Provisions.

- The Debtors seek relief to sell all of the Debtors' right, title, and interest in and to Bid Assets (except as otherwise provided in a Successful Bidder(s)'s purchase agreement) free and clear of any pledges, liens, security interests, encumbrances, claims, charges, options, and interests thereon (collectively, "**Interests**") to the maximum extent permitted by section 363 of the Bankruptcy Code, with such Interests to attach to the net proceeds of the sale of Bid Assets with the same validity and priority as such Interests applied against Bid Assets.

- The Debtors seek relief from the fourteen-day stay imposed by Bankruptcy Rule 6004(h) on the grounds set forth below.

- The net proceeds of any Sale Transaction (to the extent not constituting Revolving Priority Collateral (as defined in the Final DIP Order)) shall be used solely in accordance with the DIP Credit Agreement, the Final DIP Order and the Wind-Down Budget (each as defined in the Wind-Down Order), including to prepay the Term Loans (as defined in the DIP Credit Agreement) to the extent provided by Section 2.05 of the DIP Credit Agreement.  For the avoidance of doubt, nothing herein shall prime or otherwise modify the validity, priority, perfection or enforceability of any pledges, liens, security interests, encumbrances, claims, charges, options, and interests in and to such net proceeds.

23.      To the extent that the Bidding Process results in a proposed Sale Transaction that includes one or more Extraordinary Provisions, the Debtors will file a supplemental statement on the docket disclosing such Extraordinary Provisions in advance of the Sale Hearing.

iii.     *Key Dates and Deadlines*

24.      Consistent with the Debtors' need to consummate any sale of Bid Assets as efficiently as practicable in connection with the Wind-Down of their estates, the Debtors propose the following key dates and deadlines for the sale process, certain of which dates and deadlines may be subject to extension in accordance with the Bidding Procedures:

28

| Sale Timeline for Campus Properties | |
|---|---|
| June 10, 2026 at 10:00 a.m. | Hearing to consider approval of the Bidding Procedures and for entry of the Bidding Procedures Order |
| July 13, 2026 at 4:00 p.m. | Campus Indication of Interest Deadline; and Campus Stalking Horse Bid Deadline |
| July 20, 2026 at 4:00 p.m. | Campus Final Bid Deadline |
| July 22, 2026 at 10:00 a.m. | Auction (if any) of the Campus Properties to be held at the New York offices of Davis Polk & Wardwell LLP |
| July 23, 2026 | Target date for the Debtors to file with the Bankruptcy Court the Notice of Auction Results with respect to the Campus Properties |
| July 27, 2026 at 4:00 p.m. | Deadline to object to the Sale Transaction to the Successful Bidder; and<br><br>The applicable Assumption and Assignment Objection Deadline |
| [●], 2026 at [●] (subject to Court availability) | Hearing to consider approval of the Sale Transaction(s) and for entry of the Sale Order(s) |
| **Sale Timeline for LGA Slots** | |
| June 10, 2026 at 10:00 a.m. | Hearing to consider approval of the Bidding Procedures and for entry of the Bidding Procedures Order |
| June 10, 2026 at 4:00 p.m. | LGA Slots Indication of Interest Deadline; and LGA Slots Stalking Horse Bid Deadline |
| June 30, 2026 at 4:00 p.m. | LGA Slots Final Bid Deadline |
| July 9, 2026 at 10:00 a.m. | Auction (if any) of Bid Assets other than the Campus Properties to be held at the New York offices of Davis Polk & Wardwell LLP |
| July 10, 2026 | Target date for the Debtors to file with the Bankruptcy Court the Notice of Auction Results with respect to the Bid Assets other than the Campus Properties |
| July 13, 2026 at 4:00 p.m. | Deadline to object to the Sale Transaction to the Successful Bidder with respect to the Bid Assets other than the Campus Properties; and<br><br>The applicable Assumption and Assignment Objection Deadline |
| [●], 2026 at [●] (subject to Court availability) | Hearing to consider approval of the Sale Transaction(s) and for entry of the Sale Order(s) |
| **General Sale Timeline** | |
| June 10, 2026 at 10:00 a.m. | Hearing to consider approval of the Bidding Procedures and for entry of the Bidding Procedures Order |
| June 17, 2026 at 4:00 p.m. | General Indication of Interest Deadline |

29

| June 22, 2026 at 4:00 p.m. | Other Bid Assets Stalking Horse Bid Deadline |
|---|---|
| June 23, 2026 | Target date for the Debtors to file Potential Assumed Contracts Schedule |
| July 7, 2026 at 4:00 p.m. | Other Bid Assets Final Bid Deadline; Cure Objection Deadline |
| July 9, 2026 at 10:00 a.m. | Auction (if any) of Bid Assets other than the Campus Properties to be held at the New York offices of Davis Polk & Wardwell LLP |
| July 10, 2026 | Target date for the Debtors to file with the Bankruptcy Court the Notice of Auction Results with respect to the Bid Assets other than the Campus Properties |
| July 13, 2026 at 4:00 p.m. | Deadline to object to the Sale Transaction to the Successful Bidder with respect to the Bid Assets other than the Campus Properties; and<br><br>Assumption and Assignment Objection Deadline |
| [●], 2026 at [●] (subject to Court availability) | Hearing to consider approval of the Sale Transaction(s) and for entry of the Sale Order(s) |

## E.   Noticing Procedures

25.   The Debtors propose the following "**Noticing Procedures**":

a.   **Sale Notice and Publication**.  As soon as reasonably practicable after entry of the Bidding Procedures Order, the Debtors shall cause the Sale Notice to be served (by email if available or otherwise by first class mail) upon the following:  (i) the U.S. Trustee; (ii) Akin Gump Strauss Hauer & Feld LLP, as counsel to the AHC; (iii) Milbank LLP, as counsel to the RCF Administrative Agent (as defined in the Final DIP Order[9]); (iv) Willkie Farr & Gallagher LLP, as counsel to the Committee; (v) Counterparties to Contracts and Leases; (vi) the Securities and Exchange Commission; (vii) the Internal Revenue Service; (viii) the United States Attorney's Office for the Southern District of New York; (ix) the state attorneys general for states in which the Debtors conduct business; (x) all other parties asserting a security interest in the assets of the Debtors to the extent reasonably known to the Debtors; (xi) all potential buyers previously identified or solicited by the Debtors or their advisors and any additional parties who have previously expressed an interest to the Debtors or their advisors in potentially acquiring the Debtors' assets; (xii) all other known parties with any interest in Bid Assets; and (xiii) any party that, as of the filing of this Motion, has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "**Sale Notice Parties**"); *provided* that the Debtors need not serve the Sale Notice

---

[9] "**Final DIP Order**" shall mean the *Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing; (II) Granting Senior Secured Liens and Superpriority Administrative Expense Claims; (III) Authorizing the Debtors to Utilize Cash in Encumbered Accounts; (IV) Granting Adequate Protection; (V) Modifying the Automatic Stay; and (VI) Granting Related Relief* [ECF No. 384] (as amended, supplemented, or otherwise modified from time to time, including by the *Agreed Order Amending Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing; (II) Granting Senior Secured Liens and Superpriority Administrative Expense Claims; (III) Authorizing the Debtors to Utilize Cash in Encumbered Accounts; (IV) Granting Adequate Protection; (V) Modifying the Automatic Stay; and (VI) Granting Related Relief* [ECF No. 643]).

on any party for whom the Debtors are unable to obtain, after reasonable diligence, an email or physical address as of the entry of the Bidding Procedures Order; *provided*, *further*, that the Debtors shall not be obligated to provide supplemental service of the Sale Notice with respect to any Sale Notice that is returned as undeliverable so long as the Debtors have confirmed that any such Sale Notice was sent to the applicable email or physical address on file in the Debtors' books and records and no other email or physical address could be obtained after reasonable diligence. The Debtors would also cause the Sale Notice to be published once in the national edition of *The New York Times* or another publication with similar national circulation as soon as practicable following entry of the Bidding Procedures Order and would post the Sale Notice and the Bidding Procedures Order on the Debtors' case information website located at https://dm.epiq11.com/SpiritAirlines (the "**Case Information Website**"). This publication of the Sale Notice would provide notice of the sale to any other interested parties whose identities are unknown to the Debtors. The Sale Notice would include, among other things, the date, time, and place of the Auction and the Sale Hearing and the deadline for filing any objections relating to the Bidding Procedures or any Sale Transaction, once they are set by the Court.

b.      **Notice of Determination of Qualified Bids**. The Debtors, in consultation with the applicable Consultation Parties, will make a determination regarding which bids qualify as Qualified Bids. Prior to the Auction, the Debtors will (i) notify each Qualified Bidder that has timely and properly submitted a Qualified Bid that its bid is a Qualified Bid and (ii) provide all Qualified Bidders with (A) a copy of each Starting Bid, (B) an explanation of how the Debtors value each Starting Bid, and (C) a list identifying all of the Qualified Bidders and their respective Qualified Bids.

c.      **Notice of Hearing if Auction Not Held**. If (a) no more than one Qualified Bid is submitted by the applicable Bid Deadline (whether an Approved Stalking Horse Bid or otherwise) with respect to any particular Auction Lot or (b) multiple Partial Bids (as defined below) are submitted by the applicable Bid Deadline for non-overlapping lots of Bid Assets, the Debtors may, in their discretion and in consultation with the applicable Consultation Parties, elect to cancel the Auction (in whole or in part with respect to one or more Auction Lots) and seek approval of the transactions contemplated in such Approved Stalking Horse Bid, Qualified Bid that is not an Approved Stalking Horse Bid, or Partial Bids, as applicable, at the Sale Hearing (as defined below). If no Auction is to be conducted, the Debtors would file with the Court, serve on the Sale Notice Parties, and cause to be published on the Case Information Website a notice (i) indicating that the Auction for the Bid Assets (or applicable Auction Lots) has been canceled, (ii) indicating that the Approved Stalking Horse Bid, the Qualified Bid, or the Partial Bid(s) (as applicable) is or are the Successful Bid(s) with respect to the applicable Bid Assets, and (iii) setting forth the date and time of the Sale Hearing.

d.      **Notice of Auction Results**. Promptly following the selection of the Successful Bid(s) and Alternate Bid(s), the Debtors shall file a notice of the Successful Bid(s) and any Alternate Bid(s) (the "**Notice of Auction Results**") with the Court and cause the Notice of Auction Results to be published on the Case Information Website.

26.      The Noticing Procedures constitute adequate and reasonable notice of the key dates

and deadlines for the sale process, including, among other things, the objection deadline, the

31

applicable Bid Deadline, and the times and locations of the Auction and Sale Hearing. Accordingly, the Debtors request that the Court find that the Noticing Procedures are adequate and appropriate under the circumstances and comply with the requirements of Bankruptcy Rule 2002.

**F.      Assumption and Assignment Procedures**

27.      In connection with the Sale Transaction, the Debtors anticipate that they would assume and assign to the Successful Bidder(s) (or their designated assignee(s)) all or certain of the Assumed Contracts and Assumed Leases pursuant to section 365(b) of the Bankruptcy Code. Accordingly, the Debtors hereby also seek approval of the proposed Assumption and Assignment Procedures set forth herein, which are designed to, among other things, (a) outline the process by which the Debtors would serve notice to all Counterparties regarding the potential assumption and assignment, related Cure Costs, if any, and information regarding the Successful Bidder's adequate assurance of future performance and (b) establish objection and other relevant deadlines and the manner for resolving disputes relating to assumption and assignment of the Assumed Contracts and Assumed Leases.  Specifically, the Assumption and Assignment Procedures are as follows:

a.      **Potential Assumed Contracts Schedule**.  As soon as reasonably practicable following entry of the Bidding Procedures Order, the Debtors shall file with the Court, and cause to be published on the Case Information Website, the Potential Assumption and Assignment Notice and a list of the Potential Assumed Contracts (the "**Potential Assumed Contracts Schedule**") that specifies (i) each of the Contracts and Leases that potentially could be assumed and assigned in connection with the sale of Bid Assets, including the name of each Counterparty, and (ii) the proposed Cure Cost with respect to each Potential Assumed Contract.

b.      **Potential Assumption and Assignment Notice**.  The Debtors shall, as soon as reasonably practicable after entry of the Bidding Procedures Order, file, cause to be published on the Case Information Website, and serve on each relevant Counterparty the Potential Assumption and Assignment Notice, which shall (i) include the Potential Assumed Contracts Schedule, (ii) list the Debtors' good faith calculation of the Cure Costs with respect to the Potential Assumed Contracts identified on the Potential Assumed Contracts Schedule, (iii) expressly state that assumption or assignment of an Assumed Contract or Assumed Lease is not guaranteed and is subject to designation by the Successful Bidder and Court approval, (iv) prominently display the deadline to file an Assumption and Assignment Objection (as defined herein), and (v) prominently display the date, time, and location of the Sale Hearing.

c.      **Proposed Assumption and Assignment Notice**.  The Debtors shall, in conjunction with the filing of the Notice of Auction Results, file, cause to be published on the Case Information Website, and serve on each relevant Counterparty the Proposed Assumption and Assignment Notice, which shall (i) include a schedule of the Proposed Assumed Contracts (the "**Proposed Assumed Contracts Schedule**") as agreed between the Debtors and the Successful Bidder, (ii) expressly state that assumption or assignment of an Assumed Contract or Assumed Lease is not guaranteed and is subject to designation by the Successful Bidder and Court approval, (iii) prominently display the deadline to file an Assumption and Assignment Objection, and (iv) prominently display the date, time, and location of the Sale Hearing.

d.      Assumption and Assignment Objections.

i.      Objection Deadlines.  Any Counterparty may object to the potential or proposed assumption or assignment of its Assumed Contract or Assumed Lease, the Debtors' proposed Cure Costs, if any, or the ability of a Successful Bidder to provide adequate assurance of future performance (an "**Assumption and Assignment Objection**").  All Assumption and Assignment Objections must (A) be in writing, (B) comply with the Bankruptcy Code, Bankruptcy Rules, and Local Rules, (C) state, with specificity, the legal and factual bases thereof, including, if applicable, the Cure Costs the Counterparty believes are required to cure any alleged defaults under the relevant Assumed Contract or Assumed Lease, (D)(1) for objections relating to proposed Cure Costs, be filed no later than **July 7, 2026 at 4:00 p.m. (prevailing Eastern Time)** (the "**Cure Objection Deadline**") and (2) for all other objections, the same time as the applicable Sale Objection Deadline (the "**Assumption and Assignment Objection Deadline**"), and (E) be served on (1) counsel to the Debtors, Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017, Attn: Marshall S. Huebner, Darren S. Klein, Christopher S. Robertson, and Joseph W. Brown, (2) counsel to the AHC, Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, New York 10036, Attn: Michael S. Stamer and Jason P. Rubin, (3) counsel to the RCF Administrative Agent, Milbank LLP, 55 Hudson Yards, New York, NY 10001-2163, Attn: Andrew Harmeyer and Jason Kestecher, (4) counsel to the Committee, Willkie Farr & Gallagher LLP, 787 7th Avenue, New York, NY 10019, Attn: Brett H. Miller and Todd M. Goren, and (5) the U.S. Trustee, 1 Bowling Green, New York, NY 10014, Attn: Shara Cornell and Mark Bruh (collectively, the "**Assumption and Assignment Objection Notice Parties**").

ii.      Resolution of Assumption and Assignment Objections.  If a Counterparty timely files an Assumption and Assignment Objection, such objection shall be heard at the Sale Hearing or such later date that the Debtors, in their discretion and in consultation with the Successful Bidder and the applicable Consultation Parties,

shall determine (subject to the Court's calendar). If such objection has not been resolved prior to the closing of the Sale Transaction (whether by an order of the Court or by agreement with the Counterparty), each Successful Bidder may elect, in its sole and absolute discretion, one of the following options: (A) treat such Counterparty's contract or lease as property excluded from the Bid Assets (an "**Excluded Contract**" or "**Excluded Lease**," respectively) or (B) temporarily treat the Proposed Assumed Contract as an Excluded Contract or Excluded Lease, as applicable (a "**Designated Agreement**"), proceed to the closing of the Sale Transaction with respect to all other Bid Assets, and determine whether to treat the Designated Agreement as an Assumed Contract or Assumed Lease, as applicable, or an Excluded Contract or Excluded Lease, as applicable, within ten business days after resolution of such objection (whether by the Court's order or by agreement of the Counterparty, the Debtors, and the applicable Successful Bidder).

iii.    Failure To File Timely Assumption and Assignment Objection. If a Counterparty fails to timely and properly file with the Court and serve on the Assumption and Assignment Objection Notice Parties a timely Assumption and Assignment Objection, the Counterparty shall be forever barred from asserting any such objection with regard to the assumption or assignment of its Assumed Contract or Assumed Lease. Notwithstanding anything to the contrary in the Assumed Contract or Assumed Lease, or any other document, the Cure Costs set forth in the Potential Assumed Contracts Schedule or the Supplemental Assumed Contracts Schedule (as defined herein) shall be controlling and would be the only amount necessary to cure any alleged outstanding defaults under the applicable Assumed Contract or Assumed Lease under section 365(b) of the Bankruptcy Code arising out of or related to any events occurring prior to the closing of the Sale Transaction or other applicable date upon which such assumption and assignment would become effective, whether known or unknown, due or to become due, accrued, absolute, contingent, or otherwise, and the Counterparty shall be forever barred from asserting any additional cure or other amounts with respect to such Assumed Contract or Assumed Lease against the Debtors, the Successful Bidder, or the property of any of them.

e.      Modification of Potential Assumed Contracts Schedule or Proposed Assumed Contracts Schedule.

i.     In addition to the rights of the Successful Bidder described above with respect to an Assumption and Assignment Objection at or prior to the closing of the Sale Transaction, each Successful Bidder may elect, in its sole and absolute discretion, to (A) exclude any contract

34

or lease on the Potential Assumed Contracts Schedule as an Assumed Contract or Assumed Lease, as applicable (in which case it shall become an Excluded Contract or Excluded Lease, as applicable) or (B) include on the Proposed Assumed Contracts Schedule any contract or lease listed on the Potential Assumed Contracts Schedule, by providing to the Debtors written notice of its election to exclude or include such contract or lease, as applicable.

ii. If the Debtors or any Successful Bidder identify during the pendency of the Chapter 11 Cases (before or after the closing of the applicable Sale Transaction) any contract or lease that is not listed on the Proposed Assumed Contracts Schedule, and such contract or lease has not been rejected by the Debtors, such Successful Bidder may, in its sole and absolute discretion, elect by written notice to the Debtors to treat such contract or lease as an Assumed Contract or Assumed Lease, as applicable, and the Debtors shall seek to assume and assign such Assumed Contract or Assumed Lease in accordance with the Assumption and Assignment Procedures.

iii. Following the conclusion of the Auction, if any, and the selection of the Successful Bidder(s), the Debtors reserve the right, at any time before the closing of the Sale Transaction, to modify the previously-stated Cure Costs associated with any Proposed Assumed Contract, subject to notice requirements in the Assumption and Assignment Procedures.

iv. In the event that any contract or lease is added to the Potential Assumed Contracts Schedule or Proposed Assumed Contracts Schedule or previously-stated Cure Costs are modified, in accordance with the procedures set forth in this Motion, the Debtors would promptly file, cause to be published on the Case Information Website, and serve a supplemental assumption and assignment notice, by email or ECF where available, or otherwise by first class mail, on the applicable Counterparty (each, a "**Supplemental Assumption and Assignment Notice**"). Each Supplemental Assumption and Assignment Notice shall (A) include a schedule of the modified Potential Assumed Contracts Schedule or Proposed Assumed Contracts Schedule (the "**Supplemental Assumed Contracts Schedule**"), (B) expressly state that assumption or assignment of an Assumed Contract or Assumed Lease is not guaranteed and is subject to designation by the Successful Bidder and Court approval, (C) prominently display the deadline to file a Supplemental Assumption and Assignment Objection (as defined below), and (D) prominently display the date, time, and location of the Sale Hearing.

v. Any Counterparty listed on a Supplemental Assumed Contracts Schedule whose contract or lease is proposed to be assumed and assigned may object to the proposed assumption or assignment of its Assumed Contract or Assumed Lease, the Debtors' proposed Cure Costs (to the extent modified from the previously-stated amount), or the ability of a Successful Bidder to provide adequate assurance of future performance (a "**Supplemental Assumption and Assignment Objection**"). All Supplemental Assumption and Assignment Objections must (A) be in writing, (B) comply with the Bankruptcy Code, Bankruptcy Rules, and Local Rules, (C) state, with specificity, the legal and factual bases thereof, including, if applicable, the Cure Costs the Counterparty believes are required to cure any alleged defaults under the relevant Assumed Contract or Assumed Lease, and (D) **no later than 14 days from the date of service of such Supplemental Assumption and Assignment Notice**, (1) be filed with the Court and (2) be served on the Assumption and Assignment Objection Notice Parties. Each Supplemental Assumption and Assignment Objection, if any, shall be resolved in the same manner as an Assumption and Assignment Objection.

f. **Reservation of Rights**. The inclusion of an Assumed Contract, an Assumed Lease, or, in each case, Cure Costs with respect thereto on a Potential Assumption and Assignment Notice, Proposed Assumption and Assignment Notice, Potential Assumed Contracts Schedule, Proposed Assumed Contracts Schedule, Supplemental Assumption and Assignment Notice, or Supplemental Assumed Contracts Schedule shall not constitute, nor be deemed, a determination or admission by the Debtors, the Successful Bidder(s), or any other party in interest that such contract or lease is an executory contract or unexpired lease within the meaning of the Bankruptcy Code. The Debtors reserve all of their rights, claims, and causes of action with respect to each Assumed Contract and Assumed Lease listed on a Potential Assumption and Assignment Notice, Proposed Assumption and Assignment Notice, Supplemental Assumption and Assignment Notice, Potential Assumed Contracts Schedule, Proposed Assumed Contracts Schedule, or Supplemental Assumed Contracts Schedule. The Debtors' inclusion of any Assumed Contract or Assumed Lease on a Potential Assumption and Assignment Notice, Proposed Assumption and Assignment Notice, Supplemental Assumption and Assignment Notice, Potential Assumed Contracts Schedule, Proposed Assumed Contracts Schedule, and/or Supplemental Assumed Contracts Schedule shall not be a guarantee that such Assumed Contract or Assumed Lease ultimately would be assumed or assumed and assigned.

## Basis for Relief

### A.   The Bidding Procedures are Appropriate and Will Maximize the Value Received for the Campus

28. Courts have made clear that a debtor's business judgment is entitled to substantial

deference with respect to the procedures to be used in selling assets from the estate. *See, e.g., In*

*re Celsius Networks LLC,* 647 B.R. 631, 647 (Bankr. S.D.N.Y 2023); *In re Ditech Holding Corp.,* 606 B.R. 544, 580 (Bankr. S.D.N.Y. 2019); and *In re Borders Group, Inc.,* 453 B.R. 477, 482 (Bankr. S.D.N.Y. 2011). Once the debtor articulates sound business reasons, "a strong presumption arises" that the debtor's directors are acting in the best interest of the company and thus that the court should approve the transaction. *In re GOL Linhas Aereas Inteligentes S.A.,* 661 B.R. 330, 339 (Bankr. S.D.N.Y. 2024).

The paramount goal in any proposed sale of property of the estate is to "maximize value to the estate." *In re Publishers Clearing House LLC*, No. 25-10694 (MG), 2025 WL 1805885, at \*4 (Bankr. S.D.N.Y., June 30, 2025) (quoting *In re Metaldyne Corp.*, 409 B.R. 661, 667–68 (Bankr. S.D.N.Y. 2009)); *see also, e.g., In re Food Barn Stores, Inc.*, 107 F.3d 558, 564-65 (8th Cir. 1997) (in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand"); *Integrated Resources, Inc. (In re Integrated Resources, Inc.*, 147 B.R. 656, 659 (S.D.N.Y. 1992) ("It is a well-established principle of bankruptcy law that the . . . [debtors'] duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate.") (quoting *In re Atlanta Packaging Prod., Inc.*, 99 B.R. 124, 130 (Bankr. N.D. Ga. 1988)). As one Court explained, "The Court's role here is to ensure that the Debtors conduct a fair bidding process that is 'likely to maximize the sale price' and to ensure that the Debtors have articulated a sound business reason for the sale." *In re Celsius Network LLC*, No. 22-10964 (MG), 2022 WL 14193879, at \*10 (Bankr. S.D.N.Y. Oct. 24, 2022) (citing the Sale Guidelines).

29. "Bidder protections are granted when a bidder provides a floor for bidding by expending resources to conduct due diligence and allowing its bid to be shopped around for a higher offer", which furthers the goal of maximizing value to the estate. *See In re Genco Shipping & Trading Ltd.*, 509 B.R. 455, 465 (Bankr. S.D.N.Y. 2014); *Metaldyne*, 409 B.R. at 670 (Bankr.

37

S.D.N.Y. 2009) (finding that bid procedures that provided for a stalking horse bid would bring value to the estate by setting a floor on the price and reassuring the debtors' employees and customers that the company was entering the auction with a locked-in bid)*; Integrated Res.*, 147 B.R. 650, 659 (S.D.N.Y. 1992) (explaining that break-up fees "encourage bidding" and "maximize the value of the debtor's assets"). This Court recognizes that procedures that enhance competitive bidding are consistent with the goal of maximizing the value received by the estate and therefore are appropriate in the context of bankruptcy sales. This Court's Sale Guidelines provide that:

> [g]enerally, the Court will entertain a motion for approval…of proposed bidding procedures if such procedures are, as a matter of reasonable business judgment, *likely to maximize the sale price*. Such procedures must not chill the receipt of higher and better offers and must be consistent with the seller's fiduciary duties. (emphasis added)

Sale Guidelines at I.B. *See also*, *In re Celsius Network LLC*, No. 22-10964 (MG), 2022 WL 14193879, at *6 (Bankr. S.D.N.Y. Oct. 24, 2022) (citing the Sale Guidelines).

30.     The Bidding Procedures provide for an orderly, uniform, and appropriately competitive process through which interested parties may submit offers to purchase Bid Assets. Given the time constraints, the Debtors, with the assistance of their advisors, have structured the Bidding Procedures to promote active bidding by interested parties and to elicit the highest or otherwise best offer(s) reasonably available for Bid Assets. Additionally, the Bidding Procedures would allow the Debtors to conduct the Auction in a fair and transparent manner that would encourage participation by financially capable bidders with demonstrated ability to consummate a timely Sale Transaction.

31.     In sum, the proposed Bidding Procedures for the sale of Bid Assets will allow the Debtors to conduct the Auction in a consolidated, controlled, fair and open fashion that will encourage participation by financially capable bidders who demonstrate the ability to close a transaction. The Debtors believe that the Bidding Procedures will encourage bidding for the Bid

38

Assets, that they are consistent with other procedures previously approved by bankruptcy courts and that they are appropriate under the relevant standards governing auction proceedings and bidding incentives in bankruptcy proceedings. *See Integrated Resources*, 147 B.R. at 659. The Debtors also submit that the proposed Bidding Procedures comply with the requirements of the Sale Guidelines.

32.     Thus, the proposed Bidding Procedures are reasonable, appropriate and within Spirit's sound business judgment under the circumstances because they will promote active bidding from interested parties and ultimately will serve to maximize the value that Spirit will recover on account of the Sale Transaction.

**B.      The Bid Protections are Appropriate Under the Circumstances**

33.     As noted above, the Bidding Procedures contemplate (but do not require) the Debtors, in the exercise of their business judgment and in consultation with the applicable Consultation Parties, to (a) agree with a Qualified Bidder that its Qualified Bid would constitute a Stalking Horse Bid and (b) offer the Bid Protections to such Stalking Horse Bidder. The Debtors believe that their ability to offer Bid Protections to a prospective Stalking Horse Bidder(s) is necessary, both to set a floor for the value of the Bid Assets and to attract potential buyers to bid for such assets (or lot thereof), and would maximize the realizable value of the Bid Assets for the benefit of the Debtors' estates, their creditors, and all other parties in interest.

34.     In the event that the Debtors, in consultation with the applicable Consultation Parties, desire to designate a Qualified Bid as a Stalking Horse Bid and enter into a Stalking Horse APA that provides for Bid Protections subject to the limitations set forth herein, the Debtors would file the Stalking Horse Notice with the Court and serve such notice on the Stalking Horse Notice Parties, followed by a certificate of no objection should no party in interest file a Stalking Horse

39

Objection by the Stalking Horse Objection Deadline.  Once any such certificate of no objection is filed, the Debtors propose (a) that their designation of the Stalking Horse Bidder and agreement respecting Bid Protections shall be deemed approved and (b) that the Debtors may enter into the Stalking Horse APA, in each case without further notice or opportunity to be heard.

35.   If a Stalking Horse Objection is timely and properly filed and served, to the extent the Debtors are unable to resolve it consensually, the Debtors may schedule a Stalking Horse Hearing on an expedited basis (on not less than three-days' notice).  At the Stalking Horse Hearing, the Debtors would seek the Court's authorization to enter into the Stalking Horse APA(s), including the Bid Protections contained therein.

36.   Approval of the Bid Protections is governed by standards for determining the appropriateness of bid protections in the bankruptcy context.  The appropriateness of such purchaser protections is determined under a business judgment standard. *Official Comm. of Subordinated Bondholders v. Integrated Res. Inc. (In re Integrated Res. Inc.)*, 147 B.R. 650, 656–57 (S.D.N.Y. 1992) (noting that bid protections, including break-up fee arrangements that have been negotiated by a debtor, are to be reviewed according to the "business judgment" standard, under which such procedures and arrangements are "presumptively valid"). Under this standard, a debtor's decision to provide for a termination fee is proper so long as the following conditions are satisfied: (a) the relationship of the parties who negotiated a termination fee is not tainted by self-dealing or manipulation; (b) the fee does not hamper bidding and (c) the amount of the fee is not unreasonable relative to the proposed purchase price. *In re Genco Shipping & Trading Ltd.*, 509 B.R. 455, 465 (Bankr. S.D.N.Y. 2014)].

37.   Here, the Bid Protections satisfy the *Genco* factors. As for the first factor, the Debtors would only offer the Bid Protections to the extent that they believe, in the exercise of their

business judgment and consistent with their fiduciary duties (and in consultation with the applicable Consultation Parties), that offering these protections would enhance the ultimate recovery to be received by all stakeholders.  In addition, as set forth in the Bidding Procedures, no Bid Protections may be offered to an insider of the Debtors.  Accordingly, there should be no basis to conclude that any offer of Bid Protections might be infected by manipulation or self-dealing.

38.     Second, the Bid Protections would facilitate, and not hamper, the bidding process. The Bid Protections would enable the Debtors to secure an adequate floor for the Bid Assets (or lot thereof) and insist that competing bids be materially higher or better than the Approved Stalking Horse Bid.  *See In re 310 Assocs*., 346 F.3d 31, 34 (2d Cir. 2003) (citation omitted) ("Break-up fees are sometimes authorized in the bankruptcy auction sale context because they provide an incentive for an initial bidder to serve as a so-called 'stalking horse,' whose initial research, due diligence, and subsequent bid may encourage later bidders."); *see also In re Integrated Res., Inc.*, 147 B.R. at 662 (Declaring three proper functions for break-up fees: "(1) to attract or retain a potentially successful bid, (2) to establish a bid standard or minimum for other bidders to follow, or (3) to attract additional bidders.").  A prospective Stalking Horse Bidder would not likely agree to hold out its bid and act as a stalking horse without Court approval of the Bid Protections; thus, the Debtors could risk losing out on the opportunity to obtain the highest or otherwise best offer for the Bid Assets (or lot thereof) and would certainly lose out on the downside protection an Approved Stalking Horse Bid would provide.

39.     Third, for the reasons set forth in the Herlihy Declaration, the Bid Protections are reasonable relative to the size, nature, and complexity of the contemplated Sale Transaction, and particularly in light of the efforts that would necessarily have been expended by a Stalking Horse Bidder.  The Bid Protections would make up only a small percentage of any reasonable price for

the Bid Assets that Stalking Horse Bidder(s) might offer—the Break-Up Fee, for instance, represents only three percent of the consideration offered by a Stalking Horse Bidder, and even then only of the cash portion of such consideration, while the Expense Reimbursement is subject to a $500,000 cap.

40. Courts in this district have approved protections similar to the Bid Protections proposed here as reasonable. *See, e.g.*, *In re Acorda Therapeutics*, *Inc.*, Case No. 24-22284 (DSJ) (Bankr. S.D.N.Y. Apr. 29, 2024) [Docket No. 109]; *In re Troika Media Group, Inc*., Case No. 23-11969 (DSJ) (Bankr. S.D.N.Y. Jan. 3, 2024) [Docket No. 77]; *In re Voyager Aviation Holdings.*, *LLC*, Case No. 23-11177 (JPM) (Bankr. S.D.N.Y. Sept. 1, 2023) [Docket No. 148]; *In re Genesis Global Holdco, LLC*, Case No. 23-10063 (SHL) (Bankr. S.D.N.Y. Mar. 31, 2023) [Docket No. 192]. Accordingly, the Debtors submit that the Bid Protections reflect a sound business purpose, are fair and appropriate under the circumstances, and should likewise be approved.

**C. The Proposed Notice of the Sale Transaction, the Auction, the Bidding Procedures, and the Sale Hearing is Appropriate**

41. Under Bankruptcy Rules 2002(a) and (c), Spirit is required to notify creditors of the proposed sale of the Bid Assets. Bankruptcy Rules 6004, 7004 and 9014 also provide specific rules with respect to providing notice of a sale of assets free and clear of claims, liens and encumbrances. Additionally, the Sale Guidelines specify the list of parties-in-interest that should receive notice of a proposed sale.

42. To comply with these various requirements, Spirit proposes to provide notice of the Sale Transaction, the Auction, the Bidding Procedures and the Sale Hearing by serving, within three business days of the entry of the Bidding Procedures Order, by first class mail, postage prepaid, copies of (i) the Bidding Procedures Order, (ii) the Bidding Procedures and (iii) a Sale Notice substantially in the form attached hereto as Exhibit 3 to Exhibit B, upon the Sale Notice

Parties (as defined below).  Spirit also proposes to provide notice of the Sale Transaction through the publication of the Publication Notice, substantially in the form attached hereto as <u>Exhibit 4</u> to <u>Exhibit B</u>, in the national edition of the *New York Times* or equivalent national publication, with any modifications necessary for ease of publication.

43.     The Debtors believe that they will obtain the maximum recovery for all stakeholders if the Campus is sold through a well-advertised Auction.  The Debtors expect that the Auction, subject to this Court's approval, will result in a bidding process where any party that has any interest in purchasing the Campus will have the opportunity to come forward and participate in the Auction.

44.     Spirit submits that the foregoing notice complies fully with Bankruptcy Rules 2002, 6004, 7004 and 9014 as well as the Sale Guidelines, and is reasonably calculated to provide timely and adequate notice of the Sale Transaction, the Auction, the Bidding Procedures and the Sale Hearing to Spirit creditors and other parties in interest, and also to those who have expressed an interest, or may express an interest, in bidding on the Campus.  Based upon the foregoing, Spirit respectfully requests that this Court approve the notice procedures proposed above.

**D.     The Proposed Sale Transaction Satisfies the Requirements of Section 363 of the Bankruptcy Code**

45.     Ample authority exists for approval of the potential Sale Transaction contemplated by this Motion.  Section 363(b)(1) of the Bankruptcy Code empowers a court to allow a debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  To approve the use of estate property under section 363(b)(1) of the Bankruptcy Code, courts in the Second Circuit require a debtor to demonstrate a "good business reason to grant such an application" after considering "all salient factors."  *In re Lionel Corp. ("Lionel")*, 722 F.2d 1063, 1071 (2d Cir. 1983); *see also In re Motors Liquidation Co.*, 829 F.3d 135, 162 (2d Cir.

43

2016) (characterizing *Lionel*'s "good business reason" standard as "minimal"); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) ("Section 363(b) gives the court broad flexibility in tailoring its orders to meet a wide variety of circumstances.") (citing *Lionel*). Where a debtor establishes "a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *See In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) (citation omitted). If there is a valid business justification for the use of estate property, there is a "strong presumption" that such usage is being done in good faith and for the best interests of the estate, such that an objecting party has the burden to rebut such presumption. *In re MF Glob. Inc.*, 467 B.R. 726, 730 (Bankr. S.D.N.Y. 2012).

46.     Courts typically consider the following factors in determining whether a proposed sale satisfies this standard: (a) whether a sound business justification exists for the sale; (b) whether adequate and reasonable notice of the sale was provided to interested parties; (c) whether the sale will produce a fair and reasonable price for the property; and (d) whether the parties have acted in good faith. *See In re MF Glob. Inc.*, 467 B.R. 726, 730 (Bankr. S.D.N.Y. 2012) (citing *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991)). Where a debtor demonstrates a valid business justification for a decision, it is presumed that "in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." In re Integrated Res., Inc., 147 B.R. at 656.

47.     Moreover, section 105(a) of the Bankruptcy Code confers the Court with broad equitable powers to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Accordingly, the Court has expansive equitable powers to fashion any order or decree that is in the interest of preserving or protecting

the value of the Debtors' assets. *See Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365, 375 (2007) (characterizing the bankruptcy court's power under section 105 of the Bankruptcy Code as "broad").

### i. The Debtors Have Demonstrated a Sound Business Justification for the Potential Sale Transaction

48.     For the reasons set forth in the Herlihy Declaration, a strong business justification exists for the sale of the Bid Assets as described herein. Exploring an orderly but expeditious sale of the Bid Assets (or lot thereof) is critical to maximizing the value of the Debtors' estates and recoveries for the Debtors' economic stakeholders. Additionally, the Debtors believe that any Sale Transaction consummated in accordance with the Bidding Procedures would produce fair and reasonable purchase prices for the Bid Assets.

49.     The Bidding Procedures were carefully designed to facilitate a flexible, robust, and competitive bidding process. The Bidding Procedures provide an appropriate framework for the Debtors to review, analyze, and compare all bids received to determine which bids are in the best interests of the Debtors' estates and their economic stakeholders. Any transaction governed by the Bidding Procedures undoubtedly would serve the important objectives of obtaining a fair and reasonable purchase price for Bid Assets, along with the highest or otherwise best value for the Bid Assets, which would inure to the benefit of all parties in interest in the Chapter 11 Cases.

50.     Finally, nothing in the Bidding Procedures requires the Debtors' board of directors to take any action, or to refrain from taking any action, with respect to the Bidding Procedures, to the extent that the Debtors' board of directors determines that taking such action, or refraining from taking such action, is required to comply with applicable law or its fiduciary duties under applicable law.

51. For the foregoing reasons, the Debtors submit that a strong business justification exists for approving the Sale Transactions and related relief requested herein.

### ii. The Noticing Procedures Are Reasonable and Appropriate

52. A sale of assets outside of the ordinary course of business requires notice and a hearing and is subject to court approval. 11 U.S.C. § 363(b)(1); s*ee also In re Roman Cath. Diocese of Rockville Ctr.*, No. 20-12345 (MG), 2022 WL 17543589, at *3 (Bankr. S.D.N.Y. Dec. 9, 2022). The Noticing Procedures described above are reasonably calculated to provide all of the Debtors' known relevant creditors and all other parties in interest with adequate, timely notice of, among other things, the potential Sale Transaction, Bidding Procedures, Auction(s), and Sale Hearing.

### E. The Successful Bidder(s) Should Be Entitled to the Protections of Section 363(m) of the Bankruptcy Code

53. Section 363(m) of the Bankruptcy Code protects a good faith purchaser's interest in property purchased from a debtor notwithstanding that the sale conducted under section 363(b) is later reversed or modified on appeal. Specifically, section 363(m) of the Bankruptcy Code states the following:

> The reversal or modification on appeal of an authorization under [section 363(b) of the Bankruptcy Code] . . . does not affect the validity of a sale . . . to an entity that purchased . . . such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale . . . were stayed pending appeal.

11 U.S.C. § 363(m).

54. Section 363(m) of the Bankruptcy Code "affords 'finality to judgments by protecting good faith purchasers, the innocent third parties who rely on the finality of bankruptcy judgments in making their offers and bids.'" *In re Chateaugay Corp.*, No. 92 Civ. 7054 (PKL), 1993 WL 159969, at *3 (S.D.N.Y. May 10, 1993) (quoting *In re Stadium Management Corp.*, 895 F.2d 845, 847 (1st Cir. 1990)). *See also Allstate Ins. Co. v. Hughes*, 174 B.R. 884, 888 (S.D.N.Y.

46

1994) ("Section 363(m) . . . provides that good faith transfers of property will not be affected by the reversal or modification on appeal of an unstayed order, whether or not the transferee knew of the pendency of the appeal.").

55.    Although the Bankruptcy Code does not define "good faith," most courts have adopted a traditional equitable definition, applying it to a buyer who "purchases the assets for value, in good-faith and without notice of adverse claims." *Licensing by Paolo, Inc. v. Sinatra (In re Gucci)*, 126 F.3d 380, 389 (2d Cir. 1997) (quoting *William v. Kivitz*, 764 F.2d 1019, 1023 (4th Cir. 1985)). Good faith of a purchaser is demonstrated by "the integrity of his conduct during the course of the sale proceedings." *Id*. at 390.  Courts in the Second Circuit have held that misconduct that would typically destroy a purchaser's good-faith status involves fraud, collusion or an attempt to control the sale price or take unfair advantage of other bidders. *See Kabro Assocs. of West Islip, LLC v. Colony Hill Assocs. (In re Colony Hill Assocs.*), 111 F.3d 269, 276 (2d Cir. 1997).

56.    The Debtors have engaged independent, sophisticated counsel and other professional advisors to represent their interests with respect to the sale process. Further, as set forth above, the Bidding Procedures are designed to produce a fair and transparent competitive bidding process. Each Qualified Bidder participating in the Auction must confirm that it has not engaged in any collusion with respect to the bidding or the sale of any of the Bid Assets. *See* Bidding Procedures § 2(b).  Any asset purchase agreement with a Successful Bidder executed by the Debtors would be negotiated at arm's length and in good faith.  Accordingly, the Debtors seek a finding that any Successful Bidder under the Bidding Procedures is a good faith purchaser and is entitled to the full protections afforded by section 363(m) of the Bankruptcy Code.

47

57.     Based on the foregoing, the Debtors submit that the Debtors' entrance into a Sale Transaction pursuant to the Bidding Procedures is a sound exercise of the Debtors' business judgment and should be approved as a good faith transaction.

**F.     The Bid Assets (or Any Lot Thereof) Should Be Sold Free and Clear of Liens, Claims, Interests, and Encumbrances Under Section 363(f) of the Bankruptcy Code**

58.     In the interest of attracting the best offers, the Bid Assets (or any lot thereof) should be sold free and clear of any and all liens, claims, interests, and other encumbrances, in accordance with section 363(f) of the Bankruptcy Code, with any such liens, claims, interests, and encumbrances attaching to the proceeds of the applicable sale. Section 363(f) of the Bankruptcy Code authorizes a debtor to sell assets free and clear of liens, claims, interests, and encumbrances of an entity other than the estate if any one of the following conditions is satisfied:

b.     applicable non-bankruptcy law permits sale of such property free and clear of such interest;

c.     such entity consents;

d.     such interest is a lien and the price at which such property is to be sold is greater than the value of all liens on such property;

e.     such interest is in bona fide dispute; or

f.     such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f); *see also In re Celsius Network LLC*, No. 22-10964 (MG), 2022 WL 14193879, at *7 (Bankr. S.D.N.Y. Oct. 24, 2022) ("section 363(f) is written in the disjunctive, authorizing a trustee or debtor-in-possession to sell property of the estate free and clear of all liens 'if any of the five conditions of § 363(f) are met ...'") (quoting *Citicorp Homeowners Servs., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988)); *In re Borders Group, Inc.*, 453 B.R. 477, 483 (Bankr. S.D.N.Y. 2011).

59.     Section 363(f) of the Bankruptcy Code is supplemented by section 105(a) of the Bankruptcy Code, which provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."  11 U.S.C. § 105(a); *see also Volvo White Truck Corp. v. Chambersburg Beverage, Inc.* (*In re White Motor Credit Corp.*), 75 B.R. 944, 948 (Bankr. N.D. Ohio 1987) ("Authority to conduct such sales [free and clear of claims] is within the court's equitable powers when necessary to carry out the provisions of [the Bankruptcy Code].").

60.     The Debtors submit that the sale of the Bid Assets (or any lot thereof) free and clear of liens, claims, interests, and encumbrances would satisfy one or more of the requirements under section 363(f) of the Bankruptcy Code.  For example, to the extent that a party objects to the Sale Transaction on the basis that it allegedly holds a prepetition lien or encumbrance on the Bid Assets, the Debtors believe that any such party could be compelled to accept a monetary satisfaction of such claims, under section 363(f)(5) of the Bankruptcy Code, or that such lien is in bona fide dispute, under section 363(f)(4) of the Bankruptcy Code.

61.     Moreover, the Debtors have sent or will send the Sale Notice to any purported prepetition lienholders.  If such lienholders do not object to the proposed Sale Transaction, then their consent should be presumed.  Accordingly, the Debtors request that, unless a party asserting a prepetition lien, claim, interest, or encumbrance on any of Bid Assets (other than those assumed or permitted, if any, in connection with a Sale Transaction) timely and properly objects to this Motion, such party shall be deemed to have consented to any Sale Transaction approved at the Sale Hearing.  *See Hargrave v. Twp. of Pemberton*, 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (by not objecting to a sale motion, a creditor is deemed to consent to the relief requested therein).

62.    The purpose of a sale order purporting to authorize the transfer of assets free and clear of all claims, liens, interests, and encumbrances would be defeated if claimants could thereafter use the transfer as a basis to assert claims against a purchaser arising from a seller's pre-sale conduct.  Moreover, without such assurances, potential bidders may choose not to participate in the Auction, to the detriment of the Debtors' economic stakeholders.  Accordingly, the Debtors request that the Court authorize the sale of the Bid Assets (or any lot thereof) free and clear of any liens, claims, interests, and encumbrances in accordance with section 363(f) of the Bankruptcy Code, subject to such liens, claims, interests, and encumbrances (including, without limitation, all DIP Liens, Adequate Protection Liens, Prepetition Liens, DIP Obligations, Adequate Protection Obligations, Prepetition Obligations, and DIP Superpriority Claims (as each is defined in the Final DIP Order)) attaching to the proceeds thereof in the same order of relative priority and with the same validity, force, and effect as prior to such sale.

63.    The net proceeds of any Sale Transaction (to the extent not constituting Revolving Priority Collateral (as defined in the Final DIP Order)) shall be used solely in accordance with the DIP Credit Agreement, the Final DIP Order and the Wind-Down Budget (each as defined in the Wind-Down Order), including to prepay the Term Loans (as defined in the DIP Credit Agreement) to the extent provided by Section 2.05 of the DIP Credit Agreement.  For the avoidance of doubt, nothing herein shall prime or otherwise modify the validity, priority, perfection or enforceability of any pledges, liens, security interests, encumbrances, claims, charges, options, and interests in and to such net proceeds.

**G.    The Assumption and Assignment of Executory Contracts and Unexpired Leases Should Be Authorized**

64.    Section 365(a) of the Bankruptcy Code provides that a debtor in possession, "subject to the court's approval, may assume or reject any executory contract or unexpired lease

of the debtor." 11 U.S.C. § 365(a). Courts employ the business judgment standard in determining whether to approve a debtor's decision to assume or reject an executory contract or unexpired lease. *See, e.g.*, *Nostas Assocs. v. Costich (In re Klein Sleep Prods., Inc.)*, 78 F.3d 18, 25 (2d Cir. 1996); *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1099 (2d Cir. 1993). The "business judgment" test in this context only requires that a debtor demonstrate that assumption or rejection of an executory contract or unexpired lease benefits the estate. *See In re Penn Traffic Co.*, 524 F.3d 373, 383 (2d Cir. 2008).

65.     Any assumption of the Proposed Assumed Contracts is an exercise of the Debtors' sound business judgment because the transfer of such Contracts and Leases is necessary to the Debtors' ability to obtain the best value for their Bid Assets.  The assumption and assignment of Proposed Assumed Contracts is a critical element of the value of the Bid Assets.  Given that the ability to consummate an agreed Sale Transaction is critical to the Debtors' efforts to maximize value for their estates and stakeholders, the Debtors' assumption of Proposed Assumed Contracts is an exercise of sound business judgment and, therefore, should be approved.

66.     The consummation of any Sale Transaction involving the assignment of a Proposed Assumed Contract would be contingent upon the Debtors' compliance with the applicable requirements of section 365 of the Bankruptcy Code.  Section 365(b)(1) of the Bankruptcy Code requires that any outstanding defaults under the Contracts and Leases to be assumed be cured and that the Debtors provide adequate assurance that such defaults would be promptly cured.  The Debtors' assumption and assignment of Proposed Assumed Contracts would be contingent upon payment of the Cure Costs and effective only upon the closing of an applicable Sale Transaction or any later applicable effective date.  As set forth above, the Debtors propose to file with the Court and serve on each Counterparty a Potential Assumption and Assignment Notice, which would set

51

forth the Debtors' good faith calculations of Cure Costs with respect to each Contract and Lease listed on the Potential Assumed Contracts Schedule. As a result, Counterparties would have a meaningful opportunity to raise any objections to the proposed assumption of their respective Contracts and Leases in advance of the applicable Sale Hearing.

67.    Pursuant to section 365(f)(2) of the Bankruptcy Code, a debtor may assign an executory contract if "adequate assurance of future performance by the assignee of such contract or lease is provided." The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given "practical, pragmatic construction." *See Carlisle Homes, Inc. v. Azzari* (*In re Carlisle Homes, Inc*.), 103 B.R. 524, 538 (Bankr. D.N.J. 1988) (citation omitted); *see also In re Natco Indus., Inc*., 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985) (adequate assurance of future performance does not mean an absolute assurance that debtor will thrive and pay rent); *In re Bon Ton Rest. & Pastry Shop, Inc.,* 53 B.R. 789, 803 (Bankr. N.D. Ill. 1985) (finding that, "[a]lthough no single solution will satisfy every case, the required assurance will fall considerably short of an absolute guarantee of performance."). Among other things, adequate assurance may be provided by evidencing the assignee's financial health and experience in managing the type of enterprise or property assigned. *See In re Bygaph, Inc.*, 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (adequate assurance of future performance is present when the prospective assignee of a lease has financial resources, relevant experience, and has expressed willingness to devote sufficient funding to the business to give it a strong likelihood of succeeding).

68.    As set forth above and in the Bidding Procedures, for a bid to qualify as a Qualified Bid, a Potential Bidder must include with its bid information regarding its ability (and the ability of its designated assignee, if applicable) to perform under applicable Proposed Assumed Contracts.

52

Each affected Counterparty would have an opportunity to object to the ability of the Successful Bidder to provide adequate assurance as provided in the Bidding Procedures Order.  Further, the Debtors propose to file with the Court a Proposed Assumption and Assignment Notice, which would set forth a list of the Proposed Assumed Contracts, in advance of the Sale Hearing.  To the extent necessary, the Debtors would present facts at the Sale Hearing to demonstrate the financial wherewithal, willingness, and ability of the Successful Bidder to perform under the Proposed Assumed Contracts.

69.    In addition, to facilitate the assumption and assignment of Proposed Assumed Contracts, the Debtors further request that the Court find that all anti-assignment provisions contained therein, whether such provisions expressly prohibit or have the effect of restricting or limiting assignment of such Assumed Contract or Assumed Lease, are unenforceable and prohibited pursuant to section 365(f) of the Bankruptcy Code.[10][11]

### Waiver of Bankruptcy Rules 6004(a), 6004(h), and 6006(d)

70.    To implement successfully the relief sought herein, the Debtors request that the Court find that notice of the Motion is adequate under Bankruptcy Rule 6004(a) under the circumstances.  The Debtors also request that the Court waive the stay imposed by Bankruptcy

---

[10]    If sold as individual Campus Properties to one or more purchasers, the Lessor of the Campus Properties has a right of first refusal (the "ROFR") to purchase the Campus Properties under that certain Ground Lease (as amended, supplemented or otherwise modified from time to time, the "Ground Lease"), dated as of December 18, 2019, by and among Spirit Airlines, LLC and Dania Live 1748 II LLC (the "Lessor").  The Debtors maintain that the ROFR is a de facto anti-assignment provision that is not enforceable pursuant to section 365(f) of the Bankruptcy Code. See *In re Adelphia Commc'ns Corp.*, 365 B.R. 65, 85-86 (Bankr. S.D.N.Y. 2007).

[11]  Section 365(f)(1) of the Bankruptcy Code provides in part that, "notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law, that prohibits, restricts, or conditions the assignment of such contract or lease, the trustee may assign such contract or lease . . . ." 11 U.S.C. § 365(f)(1).  Section 365(f)(3) of the Bankruptcy Code further provides that, "[n]otwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law that terminates or modifies, or permits a party other than the debtor to terminate or modify, such contract or lease or a right or obligation under such contract or lease on account of an assignment of such contract or lease, such contract, lease, right, or obligation may not be terminated or modified under such provision because of the assumption or assignment of such contract or lease by the trustee."  11 U.S.C. § 365(f)(3).

Rule 6004(h), which provides that "[u]nless the court orders otherwise, an order authorizing the use, sale, or lease of property (other than cash collateral) is stayed for 14 days after the order is entered." Fed. R. Bankr. P. 6004(h). The Debtors further request that the Court waive the stay imposed by Bankruptcy Rule 6006(d), which provides that an "[u]nless the court orders otherwise, an order authorizing the trustee to assign an executory contract or unexpired lease under § 365(f) is for 14 days after the order is entered." Fed. R. Bankr. P. 6006(d).

71. The Debtors request that the Bidding Procedures Order, the Sale Order, and any order authorizing the assumption and assignment of a Proposed Assumed Contract in connection with a Sale Transaction be effective immediately upon entry and that the 14-day stay imposed by Bankruptcy Rules 6004(h) and 6006(d) be waived. Specifically, the Debtors submit that a waiver of the stay imposed by Bankruptcy Rule 6004(h) is necessary to effectuate the relief requested herein on the timeline imposed under the DIP Credit Agreement and is therefore necessary for the Debtors to pursue one or more sale transactions while remaining in compliance with their obligations thereunder.

## Notice

72. Notice of this Motion will be provided to the following parties (or their counsel) (collectively, the "**Notice Parties**"): (a) the U.S. Trustee; (b) the Committee; (c) holders of the Debtors' secured notes; (d) lenders of the Debtors' revolving credit facility; (e) each agent or trustee under the Debtors' secured notes indenture or revolving credit facility; and (f) and any other party that is entitled to notice under the Court's *Order Implementing Certain Notice and Case Management Procedures* [ECF No. 61] (collectively, the "**Notice Parties**"). A copy of this Motion and any order entered in respect thereto will also be made available on the Debtors' case information website located at https://dm.epiq11.com/SpiritAirlines. Based on the circumstances

54

surrounding this Motion and the nature of the relief requested herein, the Debtors respectfully submit that no other or further notice is required.

*[Remainder of page intentionally left blank]*

WHEREFORE, the Debtors respectfully request that the Court enter the Bidding

Procedures Order and, after the Sale Hearing, the Sale Order, granting the relief requested herein

and such other and further relief as the Court deems just and proper.

Dated:   May 27, 2026
        New York, New York

                       DAVIS POLK & WARDWELL LLP

                       */s/ Darren S. Klein*
                       450 Lexington Avenue
                       New York, NY 10017
                       Tel.: (212) 450-4000
                       Marshall S. Huebner
                       Darren S. Klein
                       Christopher S. Robertson
                       Joseph W. Brown

                       *Counsel to the Debtors and Debtors in Possession*

**Exhibit A**

**Herlihy Declaration**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| SPIRIT AVIATION HOLDINGS, INC., *et al.*, | Case No. 25-11897 (SHL) |
| Debtors.[1] | Jointly Administered |

**DECLARATION OF BRENT HERLIHY IN SUPPORT OF (I) THE BIDDING PROCEDURES MOTION AND (II) THE MOTION TO SHORTEN NOTICE**

Brent Herlihy declares and says:

1.      I am a partner in the Restructuring and Special Situations Group (the "**Restructuring Group**") of PJT Partners LP ("**PJT**"), which is the investment banker for Spirit Aviation Holdings, Inc. and certain of its affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, "**Spirit**," the "**Company**," or the "**Debtors**").[2]

2.      I submit this declaration (the "**Declaration**") in support of (I) the *Motion of the Debtors for Entry of Orders (I)(A) Approving Bidding Procedures for Sale of the Debtors' Assets, (B) Authorizing the Potential Selection of Stalking Horse Bidder(s), (C) Approving Bid Protections, (D) Scheduling Auction(s) for, and Hearing(s) to Approve, the Sale of the Debtors' Assets, (E) Approving the Form and Manner of Notices of Sale, Auction(s), and Sale Hearing(s), and (F) Approving the Assumption and Assignment*

---

[1] The Debtors' names and last four digits of their respective employer identification numbers are as follows: Spirit Aviation Holdings, Inc. (1797); Spirit Airlines, LLC (7023); Spirit Finance Cayman 1 Ltd. (7020); Spirit Finance Cayman 2 Ltd. (7362); Spirit IP Cayman Ltd. (4732); and Spirit Loyalty Cayman Ltd. (4752). The Debtors' mailing address is 1731 Radiant Drive, Dania Beach, FL 33004.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Bidding Procedures Motion.

2

*Procedures, (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances and (B) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases, and (III) Granting Related Relief* (the "**Bidding Procedures Motion**") and (II) *Ex Parte Motion of the Debtors for Entry of an Order Shortening Notice with Respect to the Debtors' Bidding Procedures Motion and Related Relief* (the "**Motion to Shorten**"). I am familiar with the Bidding Procedures Motion, the Motion to Shorten, and the material terms thereof.

3.      Except as otherwise indicated herein, all statements set forth in this Declaration are based upon: (a) my experience as a restructuring professional; (b) my personal knowledge of the Debtors' operations, finances, and restructuring initiatives; (c) information I learned from my review of relevant documents; (d) information supplied to me by members of the Debtors' management and/or their other advisors; and (e) information that I received from other partners or employees of PJT working directly with me or under my supervision. I am not being compensated specifically for this testimony other than through payments received (or to be received) by PJT as a professional retained by the Debtors, subject to approval by the Court.[3] I am over the age of 18 years and am authorized to submit this Declaration on behalf of the Debtors. If called to testify as a witness, I could and would testify competently to the statements set forth in this Declaration.

---

[3] Pursuant to PJT's engagement letter with the Debtors, subject to Court approval thereof, PJT will be entitled to receive certain fees in connection with the transactions described herein.

**<u>Qualifications</u>**

3.      PJT is a leading global financial advisory firm with more than 1,200 employees in sixteen offices in the United States, Europe, and Asia.  The firm offers integrated advisory services for mergers and acquisitions, restructuring and special situations, fund placement, and shareholder engagement.  PJT is an industry leader and has advised companies and creditors in all aspects of complex restructurings and bankruptcies. The firm has extensive experience providing financial advisory and investment banking services to financially distressed companies, including the representation of both debtors and lenders in the procurement and provision of postpetition financing.  PJT is a registered broker-dealer with the United States Securities and Exchange Commission, is a member of the Securities Investor Protection Corporation, and is regulated by the Financial Industry Regulatory Authority.

4.      As discussed above, I am a partner in the Restructuring and Special Situations Group at PJT. I joined PJT when it first spun off from The Blackstone Group L.P. ("**Blackstone**") in 2015.  Prior to joining PJT in 2015, I worked in the Restructuring and Reorganization group at Blackstone from 2013 to 2015. Prior to that, I received a JD from Harvard Law School and an MBA from Harvard Business School. I also worked in the M&A group of Lazard from 2007 to 2009 after obtaining a BA in politics from Princeton University.

5.      I have approximately thirteen years of experience advising financially distressed companies, creditors, and sponsors in chapter 11 restructurings, out-of-court workouts, and other special situations.  At both Blackstone and PJT, I have worked on a broad range of restructuring and reorganization assignments for companies, creditor groups,

special committees, governmental entities, and acquirers of distressed assets. I have worked across numerous industries including power, technology, media/telecom, retail, automotive, industrials, aerospace, and oil and gas. I have advised senior management and boards of directors in a wide variety of industries in connection with restructurings, mergers and acquisitions, and financing transactions. I have extensive experience advising companies and their stakeholders in chapter 11 restructurings, out-of-court workouts, and other distressed transactions, including in the following representative publicly disclosed transactions, among others: Aegean Marine Petroleum, Anthology, APC Automotive, Automores Gildemeister, Azul Airlines, BCBGMAXAZRIA, Covia, Danaos, Desarrolladora Homex, ExGen Texas Power, Frontera Holdings, Fusion Connect, GenOn Mid-Atlantic, Key Energy Services, LATAM Airlines Group, Preferred Sands, Quicksilver Resources, Sandy Creek Energy Station, SAS Scandinavian Airlines, Talen Energy Supply, and Vice Media Group.

### Retention of PJT

6.      PJT has been engaged as investment banker to the Debtors, and members of my team and I have been working closely with the Debtors, since approximately July 2, 2025. Since its engagement, PJT has rendered investment banking advisory services to the Debtors in connection with, among other things, the Debtors' evaluation of financing and strategic alternatives to right-size their financial position. Additionally, PJT has worked with the Debtors' management and other professionals retained by the Debtors, and has become generally familiar with the Debtors' business, including their operations, assets, market dynamics, capital structure, cash flows, and liquidity.

### The Marketing and Sale Process

4.      As noted in the Bidding Procedures Motion, the Debtors are in the process of an orderly Wind-Down and are in the process of monetizing their remaining valuable assets, including, without limitation, slots at New York's LaGuardia Airport, hangar(s), all of the Campus Properties constituting the Debtors' corporate headquarters, ground service equipment, spare engines, flight simulators, aircraft maintenance and other equipment, assets related to the "Free Spirit" loyalty program and other intangible assets and/or other assets that the Debtors and their advisors shall identify and make available for diligence in the Data Room (such assets, collectively, the "**Bid Assets**").

5.      Accordingly, the Debtors, with the assistance of their advisors, commenced efforts to prepare for and conduct a formal marketing and sale process for the Bid Assets. Specifically, the Debtors, with the assistance of their advisors, have prepared marketing materials, including populating a data room with certain relevant diligence materials, identified (and have begun reaching out to) potentially interested bidders, and formulated the proposed Bidding Procedures described in the Bidding Procedures Motion.

6.      Following the approval of the proposed Bidding Procedures, the Debtors, with the assistance of their advisors, expect to continue marketing the Bid Assets to potential buyers, including by (a) engaging potential parties that may have an interest in bidding for the Bid Assets or a portion thereof, (b) providing access to the data room (to those parties executing a confidentiality agreement with the Debtors), and/or (c) providing information packets to potential purchasers, as appropriate.

### The Bidding Procedures and Selection of a Stalking Horse Bidder

7.      As noted in the Bidding Procedures Motion, the Debtors seek approval of the Bidding Procedures to facilitate a value-maximizing sale of the Bid Assets in a timely

and efficient manner.  As more fully described in the Bidding Procedures Motion, the Bidding Procedures contain provisions relating to, among other things, (a) the Bid Assets available for sale, (b) the manner in which bids and bidders become "qualified," (c) the provision of diligence by the Debtors to bidders, (d) the receipt and negotiation of bids received, (e) the conduct of any Auction, (f) the selection and approval of the Successful Bidder(s) and Alternate Bidder(s), and (g) the designation and approval of any Stalking Horse Bidder, Stalking Horse APA, and Bid Protections, if a Stalking Horse Bidder is designated in consultation with the Consultation Party.

8.     In addition, as noted in the Bidding Procedures Motion, the Bidding Procedures contain the following proposed dates and deadlines:

| Sale Timeline for Campus Properties | |
| --- | --- |
| June 10, 2026 at 10:00 a.m. | Hearing to consider approval of the Bidding Procedures and for entry of the Bidding Procedures Order |
| July 13, 2026 at 4:00 p.m. | Campus Indication of Interest Deadline; and Campus Stalking Horse Bid Deadline |
| July 20, 2026 at 4:00 p.m. | Campus Final Bid Deadline |
| July 22, 2026 at 10:00 a.m. | Auction (if any) of the Campus Properties to be held at the New York offices of Davis Polk & Wardwell LLP |
| July 23, 2026 | Target date for the Debtors to file with the Bankruptcy Court the Notice of Auction Results with respect to the Campus Properties |
| July 27, 2026 at 4:00 p.m. | Deadline to object to the Sale Transaction to the Successful Bidder; and<br><br>The applicable Assumption and Assignment Objection Deadline |
| [●], 2026 at [●] (subject to Court availability) | Hearing to consider approval of the Sale Transaction(s) and for entry of the Sale Order(s) |
| Sale Timeline for LGA Slots | |
| June 10, 2026 at 10:00 a.m. | Hearing to consider approval of the Bidding Procedures and for entry of the Bidding Procedures Order |
| June 10, 2026 at 4:00 p.m. | LGA Slots Indication of Interest Deadline; and LGA Slots Stalking Horse Bid Deadline |
| June 30, 2026 at 4:00 p.m. | LGA Slots Final Bid Deadline |

| Sale Timeline for Campus Properties | |
|---|---|
| | |
| July 9, 2026 at 10:00 a.m. | Auction (if any) of Bid Assets other than the Campus Properties to be held at the New York offices of Davis Polk & Wardwell LLP |
| July 10, 2026 | Target date for the Debtors to file with the Bankruptcy Court the Notice of Auction Results with respect to the Bid Assets other than the Campus Properties |
| July 13, 2026 at 4:00 p.m. | Deadline to object to the Sale Transaction to the Successful Bidder with respect to the Bid Assets other than the Campus Properties; and<br><br>The applicable Assumption and Assignment Objection Deadline |
| [●], 2026 at [●] (subject to Court availability) | Hearing to consider approval of the Sale Transaction(s) and for entry of the Sale Order(s) |
| **General Sale Timeline** | |
| June 10, 2026 at 10:00 a.m. | Hearing to consider approval of the Bidding Procedures and for entry of the Bidding Procedures Order |
| June 17, 2026 at 4:00 p.m. | General Indication of Interest Deadline |
| June 22, 2026 at 4:00 p.m. | Other Bid Assets Stalking Horse Bid Deadline |
| June 23, 2026 | Target date for the Debtors to file Potential Assumed Contracts Schedule |
| July 7, 2026 at 4:00 p.m. | Other Bid Assets Final Bid Deadline;<br>Cure Objection Deadline |
| July 9, 2026 at 10:00 a.m. | Auction (if any) of Bid Assets other than the Campus Properties to be held at the New York offices of Davis Polk & Wardwell LLP |
| July 10, 2026 | Target date for the Debtors to file with the Bankruptcy Court the Notice of Auction Results with respect to the Bid Assets other than the Campus Properties |
| July 13, 2026 at 4:00 p.m. | Deadline to object to the Sale Transaction to the Successful Bidder with respect to the Bid Assets other than the Campus Properties; and<br><br>The applicable Assumption and Assignment Objection Deadline |
| [●], 2026 at [●] (subject to Court availability) | Hearing to consider approval of the Sale Transaction(s) and for entry of the Sale Order(s) |

9. Additionally, as noted in the Bidding Procedures Motion, the proposed Bidding Procedures also contemplate, but do not require, the Debtors' selection (in consultation with the Consultation Party) of Stalking Horse Bidders with respect to non-overlapping lots of Bid Assets and the granting of certain Bid Protections. I further understand that the Bid Protections (subject to the terms and conditions of the definitive agreement(s) reached between the Debtors and such Stalking Horse Bidder(s)) could include (a) the payment of a break-up fee in an amount not to exceed three percent of the cash portion of the purchase price set forth in the Stalking Horse Bid and (b) the reimbursement of the reasonable and documented fees and out-of-pocket expenses of the Stalking Horse Bidder in an amount up to $500,000.

10. Based on my experience, I believe that the proposed Bidding Procedures have been designed with the intent to maximize the value received for the Bid Assets by facilitating an open and competitive bidding process in which potential bidders are encouraged to participate and submit competing bids within the specified time frame. Additionally, given the marketing process conducted to date and contemplated to be further undertaken (as described above), including, without limitation, the number of parties that I understand the Debtors have contacted and expect to contact and the amount of diligence materials anticipated to be made available to such potential bidders, it is my view (based on my experience as a restructuring investment banker) that the proposed Bidding Procedures are reasonable under the circumstances of the Chapter 11 Cases and in connection with the Wind-Down.

11. With respect to the Bid Protections, in my experience, stalking horse bidders typically require bid protections similar to the type of Bid Protections set forth in the

proposed Bidding Procedures (including both the Break-Up Fee and Expense Reimbursement) and that such terms are customary and usual under the circumstances.

12.  Finally, under the circumstances described herein and in the Bidding Procedures Motion, I believe that, based on my experience as a restructuring investment banker, this timeline should provide the Debtors with a reasonable amount of time to conduct a marketing process for the Bid Assets and to solicit and potentially select the highest or otherwise best potential offer for the Bid Assets that is currently available under the circumstances.  Additionally, to the extent an Auction is deemed by the Debtors to be appropriate by virtue of competing bids, as set forth in the proposed Bidding Procedures, the Debtors would have a further opportunity to consider all competing offers and select (in consultation with the Consultation Party) the offer for the Bid Assets that they deem to be the highest or otherwise best such offer.

### Motion to Shorten

13.  The Debtors have requested that the Bidding Procedures Motion be heard on June 10, 2026.  I believe that timely approval of the Bidding Procedures will bring additional clarity and order to the process, and is intended to maximize the value of the Debtors' estates and benefit all stakeholders.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: May 27, 2026

*/s/ Brent Herlihy*
Brent Herlihy
Partner
PJT Partners LP

**<u>Exhibit B</u>**

**Proposed Order**

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Tel.: (212) 450-4000
Marshall S. Huebner
Darren S. Klein
Christopher S. Robertson
Joseph W. Brown

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **SPIRIT AVIATION HOLDINGS, INC.,** *et al.*, | **Case No. 25-11897 (SHL)** |
| **Debtors.**[1] | **Jointly Administered** |

**ORDER (I)(A) APPROVING BIDDING PROCEDURES FOR SALE OF THE DEBTORS' ASSETS, (B) AUTHORIZING THE POTENTIAL SELECTION OF STALKING HORSE BIDDER(S), (C) APPROVING BID PROTECTIONS, (D) SCHEDULING AUCTION(S) FOR, AND HEARING(S) TO APPROVE, THE SALE OF THE DEBTORS' ASSETS, (E) APPROVING THE FORM AND MANNER OF NOTICES OF SALE, AUCTION(S), AND SALE HEARING(S), AND (F) APPROVING THE ASSUMPTION AND <u>ASSIGNMENT PROCEDURES AND (II) GRANTING RELATED RELIEF</u>**

Upon the motion (the "**Motion**")[2] of Spirit Aviation Holdings, Inc. and its subsidiaries

(collectively, the "**Debtors**" or "**Spirit**"), each of which is a debtor and debtor in possession in the

chapter 11 cases (the "**Chapter 11 Cases**", for entry of orders, pursuant to sections 105(a), 363,

365, 503, and 507 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, and 9007,

---

[1] The Debtors' names and last four digits of their respective employer identification numbers are as follows: Spirit Aviation Holdings, Inc. (1797); Spirit Airlines, LLC (7023); Spirit Finance Cayman 1 Ltd. (7020); Spirit Finance Cayman 2 Ltd. (7362); Spirit IP Cayman Ltd. (4732); and Spirit Loyalty Cayman Ltd. (4752). The Debtors' mailing address is 1731 Radiant Drive, Dania Beach, FL 33004.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion or the Bidding Procedures, as applicable.

(a) approving Bidding Procedures for a sale of the Debtors' assets, (b) authorizing the potential selection of Stalking Horse Bidder(s), (c) approving Bid Protections, (D) Scheduling Auction(s) for, and Hearing(s) to Approve, the Sale of the Debtors' Assets, (E) Approving the Form and Manner of Notices of Sale, Auction(s), and Sale Hearing(s), and (f) approving the Assumption and Assignment Procedures, (g) approving the sale of the Debtors' assets free and clear of liens, claims, interests, and encumbrances, (h) authorizing assumption and assignment of executory contracts and unexpired lease, and (i) granting related relief, and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* M10-468 (S.D.N.Y February 1, 2012) (Preska, C.J.); and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157; and the Court having found that it may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue of the Chapter 11 Cases and related proceedings is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to the Notice Parties, such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and the Court having reviewed and considered the Motion and the Declaration; and the Court having held a hearing to consider the relief requested in the Motion (the "**Hearing**"); and the Court having determined that the legal and factual bases set forth in the Motion and the Declaration and at the Hearing establish just cause for the relief granted herein; and the Court having found that the relief requested in the Motion is in the best interests of the Debtors, their creditors, their estates, and all other parties in interest; and all objections and reservations of rights filed or asserted in respect of the Motion, if any, having been withdrawn, resolved, or overruled; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor,

IT IS HEREBY FOUND AND DETERMINED THAT:

A.     The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, and to the extent that any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.     The Debtors' proposed notice of the Motion, the Bidding Procedures, the Bidding Procedures Hearing, and the proposed entry of the Bidding Procedures Order is (i) appropriate and reasonably calculated to provide all interested parties with timely and proper notice, (ii) in compliance with all applicable requirements of the Bankruptcy Code, the Bankruptcy Rules, and Local Rules, and (iii) adequate and sufficient under the circumstances of the Chapter 11 Cases, and no other or further notice is required.  A reasonable opportunity to object or be heard regarding the relief requested in the Motion (including, without limitation, with respect to the Bidding Procedures and Bid Protections) has been afforded to all interested persons and entities, including, but not limited to, the Notice Parties.

C.     The Bidding Procedures in the form attached hereto as **Exhibit 1** are fair, reasonable, and appropriate, are designed to maximize recoveries from a sale of Bid Assets.

D.     The Debtors have demonstrated a compelling and sound business justification for the Court to enter this Bidding Procedures Order and, thereby, (i) approve the Bidding Procedures, (ii) authorize, but not direct, the Debtors to select a Stalking Horse Bidder (if any) under the terms and conditions of the Bidding Procedures, (iii) authorize the Bid Protections under the terms and conditions set forth in the Bidding Procedures, (iv) set the dates of the Bid Deadlines, Auction(s) (if needed), Sale Hearing, and other deadlines set forth in the Bidding Procedures, (v) approve the

3

Noticing Procedures and the forms of notice, and (vi) approve the Assumption and Assignment Procedures and the forms of relevant notice. Such compelling and sound business justification, which was set forth in the Motion and the Herlihy Declaration and on the record at the Hearing, are incorporated herein by reference and, among other things, forms the basis for the findings of fact and conclusions of law set forth herein.

E.     The Bid Protections, as approved by this Bidding Procedures Order, are fair and reasonable and provide a benefit to the Debtors' estates and stakeholders.

F.     The payment of Bid Protections, if triggered in accordance with this Bidding Procedures Order and the Bidding Procedures, (i) would constitute actual and necessary costs of preserving the Debtors' estates, within the meaning of sections 503(b) and 507(a) of the Bankruptcy Code and (ii) are reasonably tailored to facilitate, rather than hinder, bidding for Bid Assets by providing a baseline of value, increasing the likelihood of competitive bidding at the Auction, and encouraging the participation of other bidders in the sale process, thereby increasing the likelihood that the Debtors would receive the best possible price for the Bid Assets. The Bid Protections are, accordingly, (i) of substantial benefit to the Debtors' estates, their stakeholders, and all parties in interest, (ii) reasonable and appropriate, (iii) a material inducement for, and condition necessary to, the successful designation of a Stalking Horse Bidder, and (iv) reasonable in relation to the magnitude of effort that would be required of such Stalking Horse Bidder, the magnitude and complexity of the Sale Transaction, and the loss of opportunities such Stalking Horse Bidder would suffer as a result of the time spent pursuing a Sale Transaction. Without the Bid Protections, no Qualified Bidder would agree to become a Stalking Horse Bidder and remain obligated to consummate the Sale Transaction (including, without limitation, the obligation to

maintain its committed offer while such offer is subject to higher or better offers, as contemplated by the Bidding Procedures).

G.      The process for filing the Stalking Horse Notice and granting any Bid Protections is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of (i) the identity of the Stalking Horse Bidder, (ii) the amount of the Stalking Horse Bid and what portion of the Stalking Horse Bid (if any) would be in the form of cash, (iii) identifies the Bid Assets (or any lot thereof) to be purchased and the contracts and leases to be assumed, (iv) whether the Stalking Horse Bidder has any connection to the Debtors other than those that arise from the Stalking Horse Bid, (v) any proposed Bid Protections, (vi) the Stalking Horse APA(s), including all exhibits, schedules, and attachments thereto, and (vii) the Stalking Horse Objection Deadline.

H.      The legal and factual bases set forth in the Motion establish just cause for the relief granted herein.  Entry of this Bidding Procedures Order is in the best interests of the Debtors and their estates, creditors, interest holders, and all other parties in interest herein.

I.      The form and manner of notice to be delivered pursuant to the Noticing Procedures and the Assumption and Assignment Procedures (including the Sale Notice attached hereto as **Exhibit 2**, the Potential Assumption and Assignment Notice attached hereto as **Exhibit 3**, and the Proposed Assumption and Assignment Notice attached hereto as **Exhibit 4**) are reasonably calculated to provide each Counterparty to the Potential Assumed Contracts and the Proposed Assumed Contracts with proper notice of (i) the potential assumption and assignment of such Potential Assumed Contracts and Proposed Assumed Contracts by the Successful Bidder(s) (including the Stalking Horse Bidder, if any) or any of their known proposed assignees (if different from the applicable Successful Bidder) and (ii) the requirement that each such Counterparty assert

5

any objection to the proposed Cure Costs by the Cure Objection Deadline or otherwise be barred from asserting claims arising from events occurring prior to the effective date of the assumption and assignment of such Proposed Assumed Contracts or any later applicable effective date following assumption and assignment of such Proposed Assumed Contracts.

ORDERED, ADJUDGED, AND DECREED THAT:

1.      Any objections to or reservations of rights regarding the Motion or the relief requested therein that have not been adjourned, withdrawn, or resolved are overruled in all respects on the merits.

2.      The Bidding Procedures, in substantially the form attached hereto as **Exhibit 1**, are approved and fully incorporated into this Bidding Procedures Order and the Debtors are authorized, but not directed, to act in accordance therewith.  The failure to specifically include a reference to any particular provision of the Bidding Procedures in this Bidding Procedures Order shall not diminish or impair the effectiveness of such provision.

3.      Nothing herein shall prejudice the rights of the Debtors to (i) seek, by separate motion, in the exercise of their sound business judgment and fiduciary duties, the authority to sell assets of the Debtors' estates pursuant to section 363 of the Bankruptcy Code or (ii) sell any asset of the Debtors' estates in accordance with the procedures set forth in the Wind-Down Order or any other order of the Court.

4.      The Debtors are authorized, but not obligated, in an exercise of their business judgment and in consultation with the applicable Consultation Parties, to (a) agree with any Qualified Bidder(s) that such Qualified Bidder(s) shall be the Stalking Horse Bidder(s) and (b) enter into a definitive agreement with such Stalking Horse Bidder(s) in accordance with the terms and conditions set forth in the Bidding Procedures.

6

5.      Bid Deadlines.  As further described in the Bidding Procedures, the LGA Slots Stalking Horse Bid Deadline shall be at **4:00 p.m. (prevailing Eastern Time) on June 10, 2026**. The Other Bid Assets Stalking Horse Bid Deadline shall be at **4:00 p.m. (prevailing Eastern Time) on June 22, 2026**.  The LGA Slots Final Bid Deadline shall be at **4:00 p.m. (prevailing Eastern Time) on June 30, 2026**.  The Other Bid Assets Final Bid Deadline shall be at **4:00 p.m. (prevailing Eastern Time) on July 7, 2026**.  The Campus Stalking Horse Bid Deadline shall be at **4:00 p.m. (prevailing Eastern Time) on July 13, 2026**.  The Campus Final Bid Deadline shall be at **4:00 p.m. (prevailing Eastern Time) on July 20, 2026**.

6.      Auction(s).  In the event that the Debtors receive, on or before the applicable Bid Deadline, one or more Qualified Bids (whether or not the Debtors have designated a Stalking Horse Bid), an Auction shall be conducted at the offices of Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017 (i) with respect to the Bid Assets other than the Campus Properties, at **10 a.m. (prevailing Eastern Time) on July 9, 2026**, (ii) with respect to the Campus Properties, at **10 a.m. (prevailing Eastern Time) on July 22, 2026**, or such later time on such day or such other place as the Debtors (after consultation with the applicable Consultation Parties) shall notify all Participating Parties.  The Debtors are authorized to conduct the Auction(s) in accordance with the Bidding Procedures.

7.      If (a) no more than one Qualified Bid is submitted by the applicable Bid Deadline (whether an Approved Stalking Horse Bid or otherwise) or (b) multiple Partial Bids are submitted by the applicable Bid Deadline for non-overlapping lots of Bid Assets, the Debtors may, in their discretion and in consultation with the applicable Consultation Parties, elect to cancel the Auction(s) and seek approval of the transactions contemplated in such Approved Stalking Horse Bid, Qualified Bid that is not an Approved Stalking Horse Bid, or Partial Bid(s) at the Sale Hearing.

7

8.       The form of Sale Notice attached hereto as **Exhibit 2** is hereby approved.

9.       As soon as reasonably practicable after entry of this Bidding Procedures Order, the Debtors shall cause the Sale Notice to be served (by email if available or otherwise by first class mail) upon the following:  (i) the U.S. Trustee; (ii) Akin Gump Strauss Hauer & Feld LLP, as counsel to the AHC; (iii) Milbank LLP, as counsel to the RCF Administrative Agent (as defined in the Final DIP Order); (iv) Willkie Farr & Gallagher LLP, as counsel to the Committee; (v) Counterparties to Contracts and Leases; (vi) the Securities and Exchange Commission; (vii) the Internal Revenue Service; (viii) the United States Attorney's Office for the Southern District of New York; (ix) the state attorneys general for states in which the Debtors conduct business; (x) all other parties asserting a security interest in the assets of the Debtors to the extent reasonably known to the Debtors; (xi) all potential buyers previously identified or solicited by the Debtors or their advisors and any additional parties who have previously expressed an interest to the Debtors or their advisors in potentially acquiring the Debtors' assets; (xii) all other known parties with any interest in Bid Assets; and (xiii) any party that, as of the filing of this Motion, has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "**Sale Notice Parties**"); *provided* that the Debtors need not serve the Sale Notice on any party for whom the Debtors are unable to obtain, after reasonable diligence, an email or physical address as of the entry of the Bidding Procedures Order; *provided*, *further*, that the Debtors shall not be obligated to provide supplemental service of the Sale Notice with respect to any Sale Notice that is returned as undeliverable so long as the Debtors have confirmed that any such Sale Notice was sent to the applicable email or physical address on file in the Debtors' books and records and no other email or physical address could be obtained after reasonable diligence.  The Debtors would also cause the Sale Notice to be published once in the national edition of the *New York Times* or another

8

publication with similar national circulation as soon as practicable following entry of the Bidding Procedures Order and would post the Sale Notice and the Bidding Procedures Order on the Debtors' case information website located at https://dm.epiq11.com/SpiritAirlines (the "**Case Information Website**").

10.    Service of the Sale Notice on the Sale Notice Parties in the manner described in this Bidding Procedures Order constitutes good and sufficient notice of the Auction and the Sale Hearing.  No other or further notice is required.

11.    Promptly after the conclusion of the Auction (if any) and the selection of the Successful Bid(s) and Alternate Bid(s), the Debtors shall file with the Court and post on the Case Information Website a notice identifying such Successful Bid(s) and Alternate Bid(s).

12.    <u>Sale Objections</u>.  Objections to the relief sought through the Sale Order must (a) be in writing, (b) comply with the Bankruptcy Code, Bankruptcy Rules, and Local Rules, (c) state, with specificity, the legal and factual bases thereof, (d) be filed with the Court no later than (x) **July 13, 2026 at 4:00 p.m. (prevailing Eastern Time)** with respect to Bid Assets other than the Campus Properties, or (y) **July 27, 2026 at 4:00 p.m. (prevailing Eastern Time)** with respect to the Campus Properties (each, a "**Sale Objection Deadline**"),and (e) be served on (1) counsel to the Debtors, Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017, Attn: Marshall S. Huebner, Darren S. Klein, Christopher S. Robertson, and Joseph W. Brown, (2) counsel to the AHC, Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, New York 10036, Attn: Michael S. Stamer and Jason P. Rubin, (3) counsel to the RCF Administrative Agent, Milbank LLP, 55 Hudson Yards, New York, NY 10001-2163, Attn: Andrew Harmeyer and Jason Kestecher, (4) counsel to the Committee, Willkie Farr & Gallagher LLP, 787 7th Avenue, New York, NY 10019, Attn: Brett H. Miller and Todd M. Goren, and (5) the U.S. Trustee, 1

9

Bowling Green, New York, NY 10014, Attn: Shara Cornell and Mark Bruh (collectively, the "**Objection Notice Parties**").

13.     Sale Hearing.  The Sale Hearing shall be held in the United States Bankruptcy Court for the Southern District of New York, New York, New York 10014, on **[●], 2026 at [●].m. (prevailing Eastern Time)**[3] or such other date and time that the Court may later direct; *provided* that the Sale Hearing may be adjourned by the Debtors (in consultation with the the applicable Consultation Parties) by announcement of the adjournment in open court or on the Court's docket.

14.     As soon as reasonably practicable after the completion of the Auction (if any), the Debtors shall file a final form of order approving the Sale Transaction(s) as agreed upon between the Debtors (in consultation with the applicable Consultation Parties) and the Successful Bidder(s).

15.     Bid Protections.  In accordance with the Bidding Procedures, the Debtors may, in consultation with the applicable Consultation Parties, designate a Qualified Bid as a Stalking Horse Bid and, in accordance therewith, offer to pay the Break-Up Fee and Expense Reimbursement to one or more Stalking Horse Bidders (if any), subject to the terms of the Bidding Procedures and this Bidding Procedures Order.  Any Bid Protections shall be payable solely out of the proceeds of the sale to which it relates.

16.     In the event that the Debtors designate a Stalking Horse Bidder and enter into one or more Stalking Horse APAs, the Debtors may file a notice or notices (the "**Stalking Horse Notices**") with the Court that (a) sets forth the identity of each Stalking Horse Bidder, (b) sets forth the amount of each Stalking Horse Bid and what portion of such Stalking Horse Bid (if any) would be in the form of cash, (c) identifies the Bid Assets to be purchased and the contracts and leases to

---

[3]  This date remains subject to Court approval.  The Debtors intend to schedule a Sale Hearing with respect to Bid Assets other than the Campus Properties and a subsequent Sale Hearing with respect to the Campus Properties

be assumed, (d) specifies any proposed Bid Protections, and (e) attaches the Stalking Horse APA(s), including all exhibits, schedules, and attachments thereto and serve such Stalking Horse Notice on the U.S. Trustee, counsel to each of the applicable Consultation Parties, and those parties who have filed the appropriate notice pursuant to Bankruptcy Rule 2002 requesting notice of all pleadings filed in the Chapter 11 Cases (the "**Stalking Horse Notice Parties**"), with no further notice being required.

17.     The Stalking Horse Notice shall also specify the deadline to file objections ("**Stalking Horse Objections**") to the designation of the Stalking Horse Bidder, the terms of the Stalking Horse Bid, or the Bid Protections set forth therein, which deadline (the "**Stalking Horse Objection Deadline**") shall be no later than three business days after service of the Stalking Horse Notice on the Stalking Horse Notice Parties.  Stalking Horse Objections must (a) be in writing, (b) comply with the Bankruptcy Code, Bankruptcy Rules, and Local Rules, (c) state, with specificity, the legal and factual bases thereof, and (d) be filed with the Bankruptcy Court and served on the Debtors and the Stalking Horse Notice Parties by the Stalking Horse Objection Deadline.

18.     If a timely Stalking Horse Objection is filed and served, to the extent not resolved consensually, the Debtors may schedule a hearing before the Court on an expedited basis (on not less than three-days' notice) seeking authorization to enter into the Stalking Horse APA (including any Bid Protections contained therein).  If no Stalking Horse Objection is timely and properly filed and served, the Debtors may file with the Bankruptcy Court a certificate of no objection with the Court and, upon such filing, (a) the Debtors' designation of the Stalking Horse Bidder and agreement respecting Bid Protections shall be deemed approved and (b) the Debtors may enter into the Stalking Horse APA, in each case without further notice or opportunity to be heard.

19. <u>Assumption and Assignment Procedures</u>. The assumption and assignment procedures set forth in the Motion (the "**Assumption and Assignment Procedures**") are hereby approved.

20. As soon as reasonably practicable following entry of this Bidding Procedures Order, the Debtors shall file with the Court, and cause to be published on the Case Information Website, the Potential Assumption and Assignment Notice and a list of the Potential Assumed Contracts (the "**Potential Assumed Contracts Schedule**") that specifies (a) each of the Contracts and Leases that potentially could be assumed and assigned in connection with the sale of Bid Assets, including the name of each Counterparty, and (b) the proposed Cure Cost with respect to each Potential Assumed Contract.

21. <u>Potential Assumption and Assignment Notice</u>. The Debtors shall, as soon as reasonably practicable after entry of this Bidding Procedures Order, file, cause to be published on the Case Information Website, and serve on each relevant Counterparty the Potential Assumption and Assignment Notice, which shall (a) include the Potential Assumed Contracts Schedule, (b) list the Debtors' good faith calculation of the Cure Costs with respect to the Potential Assumed Contracts identified on the Potential Assumed Contracts Schedule, (c) expressly state that assumption or assignment of an Assumed Contract or Assumed Lease is not guaranteed and is subject to Court approval, (d) prominently display the deadline to file an Assumption and Assignment Objection (as defined herein), and (e) prominently display the date, time, and location of the Sale Hearing.

22. <u>Proposed Assumption and Assignment Notice</u>. The Debtors shall, in conjunction with the filing of the Notice of Auction Results, file, cause to be published on the Case Information Website, and serve on each relevant Counterparty the Proposed Assumption and Assignment

12

Notice, which shall (a) include a schedule of the Proposed Assumed Contracts (the "**Proposed Assumed Contracts Schedule**") as agreed between the Debtors and the Successful Bidder, (b) expressly state that assumption or assignment of an Assumed Contract or Assumed Lease is not guaranteed and is subject to Court approval, (c) prominently display the deadline to file an Assumption and Assignment Objection, and (d) prominently display the date, time, and location of the Sale Hearing.

23.     Objection Deadlines.  Any Counterparty may object to the potential or proposed assumption or assignment of its Assumed Contract or Assumed Lease, the Debtors' proposed Cure Costs, if any, or the ability of a Successful Bidder to provide adequate assurance of future performance (an "**Assumption and Assignment Objection**").  All Assumption and Assignment Objections must (a) be in writing, (b) comply with the Bankruptcy Code, Bankruptcy Rules, and Local Rules, (c) state, with specificity, the legal and factual bases thereof, including, if applicable, the Cure Costs the Counterparty believes are required to cure any alleged defaults under the relevant Assumed Contract or Assumed Lease, (d) (1) for objections relating to proposed Cure Costs, be filed with the Court no later than **July 7, 2026 at 4 p.m. (prevailing Eastern Time)** (the "**Cure Objection Deadline**") and (2) for all other objections, the same time as the applicable Sale Objection Deadline (the "**Assumption and Assignment Objection Deadline**"), and (e) be served on the Objection Notice Parties.

24.     Resolution of Assumption and Assignment Objections. If a Counterparty files a timely Assumption and Assignment Objection, such objection shall be heard at the Sale Hearing or such later date that the Debtors determine, in their discretion and in consultation with the Successful Bidder and the applicable Consultation Parties (subject to the Court's calendar).  If such objection has not been resolved prior to the closing of the Sale Transaction (whether by an

13

order of the Court or by agreement with the Counterparty), each Successful Bidder may elect, in its sole and absolute discretion, one of the following options: (a) treat such Counterparty's contract or lease as property excluded from the Bid Assets (an "**Excluded Contract**" or "**Excluded Lease**," respectively) or (b) temporarily treat the Proposed Assumed Contract as an Excluded Contract or Excluded Lease, as applicable (a "**Designated Agreement**"), proceed to the closing of the Sale Transaction with respect to all other Bid Assets (or any lot thereof), and determine whether to treat the Designated Agreement as an Assumed Contract or Assumed Lease, as applicable, or an Excluded Contract or Excluded Lease, as applicable, within ten business days after resolution of such objection (whether by order of the Court or by agreement of the applicable Successful Bidder, the Counterparty, and the Debtors).

25. <u>Failure To File Timely Assumption and Assignment Objection</u>. If a Counterparty fails to timely and properly file with the Court and serve on the Objection Notice Parties a timely Assumption and Assignment Objection, the Counterparty shall be forever barred from asserting any such objection with regard to the assumption or assignment of its Assumed Contract or Assumed Lease. Notwithstanding anything to the contrary in the Assumed Contract or Assumed Lease, or any other document, the Cure Costs set forth in the Potential Assumed Contracts Schedule or the Supplemental Assumed Contracts Schedule (as defined below) shall be controlling and shall be the only amount necessary to cure any alleged outstanding defaults under the applicable Assumed Contract or Assumed Lease under section 365(b) of the Bankruptcy Code arising out of or related to any events occurring prior to the closing of the Sale Transaction or other applicable date upon which such assumption and assignment shall become effective, whether known or unknown, due or to become due, accrued, absolute, contingent, or otherwise, and the Counterparty shall be forever barred from asserting any additional cure or other amounts with

14

respect to such Assumed Contract or Assumed Lease against the Debtors, the Successful Bidder, or the property of any of them.

26.     Modification of Potential Assumed Contracts Schedule or Proposed Assumed Contracts Schedule.  In addition to a Successful Bidder's rights described above with respect to an Assumption and Assignment Objection, at or prior to the closing of the Sale Transaction, each Successful Bidder may elect, in its sole and absolute discretion, to (a) exclude any contract or lease on the Potential Assumed Contracts Schedule as an Assumed Contract or Assumed Lease, as applicable (in which case it shall become an Excluded Contract or Excluded Lease, as applicable), or (b) include on the Proposed Assumed Contracts Schedule any contract or lease listed on the Potential Assumed Contracts Schedule, by providing to the Debtors written notice of its election to exclude or include such contract or lease, as applicable.

27.     If the Debtors or any Successful Bidder identifies during the pendency of the Chapter 11 Cases (before or after the closing of the applicable Sale Transaction) any contract or lease that is not listed on the Proposed Assumed Contracts Schedule, and such contract or lease has not been rejected by the Debtors, such Successful Bidder may, in its sole and absolute discretion, elect by written notice to the Debtors to treat such contract or lease as an Assumed Contract or Assumed Lease, as applicable, and the Debtors shall seek to assume and assign such Assumed Contract or Assumed Lease in accordance with the Assumption and Assignment Procedures.

28.     Following the conclusion of the Auction, if any, and the selection of the Successful Bidder(s), the Debtors reserve the right, at any time before the closing of the Sale Transaction(s), to modify the previously-stated Cure Costs associated with any Proposed Assumed Contract, subject to notice requirements in the Assumption and Assignment Procedures.

15

29.     In the event that any contract or lease is added to the Potential Assumed Contracts Schedule or Proposed Assumed Contracts Schedule or previously-stated Cure Costs are modified, in accordance with the Assumption and Assignment Procedures, the Debtors will promptly file, cause to be published on the Case Information Website, and serve a supplemental assumption and assignment notice, by email or ECF where available, or otherwise by first class mail, on the applicable Counterparty (each, a "**Supplemental Assumption and Assignment Notice**").  Each Supplemental Assumption and Assignment Notice shall (a) include a schedule of the modified Potential Assumed Contracts Schedule or Proposed Assumed Contracts Schedule (the "**Supplemental Assumed Contracts Schedule**"), (b) expressly state that assumption or assignment of an Assumed Contract or Assumed Lease is not guaranteed and is subject to Court approval, (c) prominently display the deadline to file a Supplemental Assumption and Assignment Objection (as defined herein), and (d) prominently display the date, time, and location of the Sale Hearing.

30.     Any Counterparty listed on a Supplemental Assumed Contracts Schedule whose contract or lease is proposed to be assumed and assigned may object to the proposed assumption or assignment of its Assumed Contract or Assumed Lease, the Debtors' proposed Cure Costs (to the extent modified from the previously-stated amount), or the ability of a Successful Bidder to provide adequate assurance of future performance (a "**Supplemental Assumption and Assignment Objection**").  All Supplemental Assumption and Assignment Objections must (a) be in writing, (b) comply with the Bankruptcy Code, Bankruptcy Rules, and Local Rules, (c) state, with specificity, the legal and factual bases thereof, including, if applicable, the Cure Costs the Counterparty believes are required to cure any alleged defaults under the relevant Assumed Contract or Assumed Lease, (d) no later than **14 days from the date of service of such**

**Supplemental Assumption and Assignment Notice**, (i) be filed with the Court and (ii) be served on the Objection Notice Parties. Each Supplemental Assumption and Assignment Objection, if any, shall be resolved in the same manner as an Assumption and Assignment Objection.

31. <u>Reservation of Rights</u>. The inclusion of an Assumed Contract, an Assumed Lease, or, in each case, Cure Costs with respect thereto on a Potential Assumption and Assignment Notice, Proposed Assumption and Assignment Notice, Potential Assumed Contracts Schedule, Proposed Assumed Contracts Schedule, Supplemental Assumption and Assignment Notice, or Supplemental Assumed Contracts Schedule shall not constitute, nor be deemed, a determination or admission by the Debtors, the Successful Bidder(s), or any other party in interest that such contract or lease is an executory contract or unexpired lease within the meaning of the Bankruptcy Code. The Debtors reserve all of their rights, claims, and causes of action with respect to each Assumed Contract and Assumed Lease listed on a Potential Assumption and Assignment Notice, Proposed Assumption and Assignment Notice, Supplemental Assumption and Assignment Notice, Potential Assumed Contracts Schedule, Proposed Assumed Contracts Schedule, or Supplemental Assumed Contracts Schedule. The Debtors' inclusion of any Assumed Contract or Assumed Lease on a Potential Assumption and Assignment Notice, Proposed Assumption and Assignment Notice, Supplemental Assumption and Assignment Notice, Potential Assumed Contracts Schedule, Proposed Assumed Contracts Schedule, and/or Supplemental Assumed Contracts Schedule shall not be a guarantee that such Assumed Contract or Assumed Lease ultimately will be assumed or assumed and assigned.

32. The Debtors are authorized to take all such actions as are necessary or appropriate to implement the terms of this Bidding Procedures Order.

17

33.     This Bidding Procedures Order shall be binding on the Debtors, including any chapter 7 or chapter 11 trustee or other fiduciary appointed for the estates of the Debtors.

34.     Any Bankruptcy Rule (including Bankruptcy Rules 6004(a), 6004(h), 6006(d), and 9014) or Local Rule that might otherwise delay the effectiveness of this Bidding Procedures Order is hereby waived, and the terms and conditions of this Bidding Procedures Order shall be effective and enforceable immediately upon its entry.

35.     All time periods set forth in this Bidding Procedures Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

36.     To the extent any provisions of this Bidding Procedures Order shall be inconsistent with the Motion, the terms of this Bidding Procedures Order shall control.

37.     The Court shall retain exclusive jurisdiction to hear and determine all matters arising from or relating to the implementation, interpretation, or enforcement of this Bidding Procedures Order.

Dated:     _____, 2026
                New York, New York

                                                _____
                                                THE HONORABLE SEAN H. LANE
                                                UNITED STATES BANKRUPTCY JUDGE

18

## Exhibit 1

**Proposed Bidding Procedures**

## BIDDING PROCEDURES

On August 29, 2025, Spirit Aviation Holdings, Inc. and its direct and indirect subsidiaries (collectively, the "**Debtors**" or "**Spirit**"), each of which is a debtor and debtor in possession in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**").

The bidding procedures set forth below (these "**Bidding Procedures**") detail the process by which the Debtors are authorized by the Bankruptcy Court to conduct a sale (such sale, the "**Sale Transaction**") of certain of the Debtors' assets, including, without limitation, slots at New York's LaGuardia Airport (the "**LGA Slots**"), hangar(s), a corporate office complex, training center, and a multi-family residential building (each a "**Campus Property**," and collectively, the "**Campus**"), ground service equipment, spare engines, flight simulators, aircraft maintenance and other equipment, assets related to the "Free Spirit" loyalty program and other intangible assets and/or other assets that the Debtors and their advisors shall identify and make available for diligence in the Data Room] (such assets, collectively, the "**Bid Assets**").[1]  A party may participate in the bidding process by submitting a bid for (a) all or substantially all of the Bid Assets and/or (b) one or more, or any combination of, Bid Assets as that party may desire.

---

[1] Unless indicated otherwise, capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the *Order (I) Authorizing the Debtors to Wind Down Operations, (II) Approving the Debtors' Use of Cash Collateral and Amendments to the DIP Credit Agreement and Final DIP Order, (III) Authorizing Modification or Termination of the Debtors' Employee Programs, (IV) Approving Wind-Down Incentive and Retention Plan, (V) Approving Modification of Contract Rejection Procedures, (VI) Approving Non-Fleet Assets Sale Procedures, (VII) Approving Non-Fleet Assets Abandonment Procedures, (VIII) Approving the Use of Certain Third-Party Contractors, (IX) Approving Protections for Certain Persons Implementing the Wind-Down, (X) Enforcing an Administrative Stay, (XI) Authorizing the Preemption of Applicable Laws and Ordinances for the Debtors to Effectuate the Wind-Down, (XII) Authorizing the Debtors to Take Any and All Actions Necessary to Implement the Wind-Down, and (XIII) Granting Related Relief* [ECF No. 1048] (the "**Wind-Down Order**").

**Any interested bidder for Bid Assets other than the Campus Properties should
contact, as soon as practicable:**

**PJT Partners LP**[2]
280 Park Avenue
New York, New York 10017
Attn:soar@pjtpartners.com

**-and-**

**FTI Consulting, Inc.**
155 North Wacker
Chicago, IL 60606, USA
Attn: Dan Wikel (dan.wikel@fticonsulting.com),
Marc Bilbao (marc.bilbao@fticonsulting.com),
David Fowkes (david.fowkes@fticapitaladvisors.com).

**Any interested bidder for one or more of the Campus Properties should contact, as
soon as practicable:**

**Spirit Airlines, LLC**
1731 Radiant Drive
Dania Beach, FL 33004 USA
Attn: realestate@spirit.com

These Bidding Procedures describe, among other things, (a) the Bid Assets offered for sale,
(b) the manner in which bidders and bids become Qualified Bidders and Qualified Bids (each as
defined below), respectively, (c) the conduct of the Auction (as defined below), if necessary,
(d) the selection of the Successful Bidder(s) (as defined below), (e) the process for designating a
Stalking Horse Bidder and offering Bid Protections (if any, each as defined below), and (f) the
approval by the Bankruptcy Court of the sale of Bid Assets to the Successful Bidder(s).

Throughout the sale process, the Debtors, with the assistance of their advisors, will consult
with (i) the Ad Hoc Committee of Secured Noteholders and their advisors (such ad hoc committee,
the "**AHC**"), (ii) the Committee and its advisors, and (ii), solely with respect to the Revolving
Priority Collateral, the RCF Administrative Agent, and its advisors (such parties, together, the

---

[2] PJT Partners LP, in its capacity as the Debtors' investment banker, is referred to herein as "**PJT**."

"**Consultation Parties**").[3]  The Debtors will provide updates as reasonably appropriate to the Consultation Parties as to the status of the Sale Process.

The Debtors shall not consult with or provide copies of bids regarding any assets to any insider or affiliate of the Debtors pursuant to the terms of these Bidding Procedures if such party has a bid for Bid Assets pending or has expressed any interest (written or verbal) in bidding for any of the Debtors' assets; *provided* that, if such insider or affiliate of the Debtors chooses not to submit any bid, and so informs the Debtors and the Consultation Parties in writing on or before the applicable Bid Deadline, then such party may receive copies of all bids following expiration of the applicable Bid Deadline (as defined below) (as such Bid Deadline may be extended hereunder).

1.   **PARTICIPATION REQUIREMENTS**

(a)   **Interested Parties**

Unless otherwise ordered by the Bankruptcy Court for cause shown, to participate in the bidding process described herein (the "**Bidding Process**"), each interested person or entity (each, an "**Interested Party**") must deliver the following items (unless previously delivered) to (i) PJT or FTI, with respect to Bid Assets (other than the Campus Properties), and (ii) to Spirit, with respect to the Campus Properties:

> i.   an executed confidentiality agreement in form and substance satisfactory to the Debtors;
>
> ii.   a statement and other factual support demonstrating, to the Debtors' satisfaction, in consultation with the Consultation Parties, that the Interested Party has a *bona fide* interest in purchasing some or all of Bid Assets;
>
> iii.   a description of the nature and extent of any due diligence the Interested Party wishes to conduct and the date in advance of the applicable Bid Deadline (as defined below) by which such due diligence will be completed; and

---

[3] The AHC shall be a Consultation Party unless and until the DIP Facility Agent has indicated to the Debtors and the Consultation Parties in writing (which may be by email) that the DIP Facility Agent intends, on behalf of the DIP Lenders, to submit a bid in the Bidding Process (as defined herein), at which point the AHC shall not be a Consultation Party with respect to (a) any review of competing bids (including Qualified Bids), (b) any determination regarding which bids constitute Qualified Bids, (c) the designation of any bid as a Stalking Horse Bid, or (d) the selection of a Successful Bidder or an Alternate Bidder (as defined below), in each case, solely with respect to the Bid Assets pursuant to which the DIP Facility Agent intends to submit a bid, unless and until the DIP Facility Agent indicates in writing that it no longer intends to submit a bid.  In the event that any DIP Lender, Secured Noteholder (as defined in the DIP Credit Agreement), or any affiliate thereof becomes a Potential Bidder (as defined below) (such bidder, a "**Bidding Lender**"), the advisors to the AHC shall not provide any information that they receive in connection with the AHC's role as a Consultation Party to the DIP Agent, any DIP Lender, any Secured Noteholder (as defined in the DIP Credit Agreement), or any Bidding Lender.

3

iv. sufficient information, as defined by the Debtors, in consultation with the Consultation Parties, to allow the Debtors, in consultation with the Consultation Parties, to determine that the Interested Party has the financial wherewithal and any required internal corporate, legal, or other authorizations to close a sale transaction pursuant to these Bidding Procedures, which may include, but is not limited to, current audited financial statements of the Interested Party (or such other form of financial disclosure acceptable to the Debtors in consultation with the Consultation Parties) or, if the Interested Party is an entity formed for the purpose of acquiring some or all of Bid Assets, (A) current audited financial statements of the equity holder(s) (the "**Sponsor(s)**") of the Interested Party (or such other form of financial disclosure acceptable to the Debtors in consultation with the Consultation Parties) and (B) a written commitment acceptable to the Debtors that the Sponsor(s) are responsible for the Interested Party's obligations in connection with the Bidding Process.

If the Debtors determine (in consultation with the Consultation Parties), after receipt of the items identified above, that an Interested Party has a *bona fide* interest in purchasing some or all of the Bid Assets, such Interested Party will be deemed a "**Potential Bidder**" and the Debtors will provide such Potential Bidder with access to the Debtors' confidential electronic data room concerning the Bid Assets (the "**Data Room**").

## (b)    Due Diligence

Until the applicable Bid Deadline, in addition to granting access to the Data Room, the Debtors will provide Potential Bidders with due diligence access and additional information as may be requested by a Potential Bidder, to the extent that the Debtors determine, in consultation with the Consultation Parties, that such requests are reasonable and appropriate under the circumstances. All due diligence requests with respect to Bid Assets (other than the Campus Properties) shall be directed to PJT or FTI. All due diligence requests with respect to the Campus Properties shall be directed to Spirit. The Debtors, with the assistance of PJT and/or FTI, will coordinate all reasonable requests for additional information and due diligence access from Potential Bidders.

For any Potential Bidder that is a competitor of the Debtors (or an affiliate thereof), the Debtors reserve the right to withhold any diligence materials that the Debtors determine, in consultation with the applicable Consultation Parties, are commercially sensitive or otherwise not appropriate for disclosure to such Potential Bidder, or to require that the Potential Bidder enter into a "clean team" or similar arrangement acceptable to the Debtors in order to receive such diligence materials.

Unless otherwise determined by the Debtors, in consultation with the applicable Consultation Parties, the availability of due diligence to a Potential Bidder will cease if (i) the Potential Bidder does not become a Qualified Bidder or (ii) the Bidding Process is terminated in accordance with its terms.

4

**(c)** **Non-Binding Indications of Interest**

Any Potential Bidder interested in purchasing the LGA Slots must submit a non-binding indication of interest (an "**Indication of Interest**") to PJT or FTI so as to be received no later than **June 10, 2026 at 4:00 p.m. (prevailing Eastern Time) (the "LGA Slots Indication of Interest Deadline**").

Any Potential Bidder interested in purchasing Bid Assets other than the Campus Properties or LGA Slots must submit an Indication of Interest to PJT or FTI so as to be received no later than **June 17, 2026 at 4:00 p.m. (prevailing Eastern Time)** (the "**General Indication of Interest Deadline**" and the LGA Slots Indication of Interest Deadline and the Campus Indication of Interest Deadline, each, an "**Indication of Interest Deadline**" and, collectively, the "**Indication of Interest Deadlines**").

Any Potential Bidder interested in purchasing one or more of the Campus Properties must submit an Indication of Interest to Spirit so as to be received no later than **July 13, 2026 at 4:00 p.m. (prevailing Eastern Time)** (the "**Campus Indication of Interest Deadline**").

The Indication of Interest must (i) set forth a proposed purchase price for the proposed transaction, including by identifying separately any cash and non-cash components of the proposed transaction consideration, which non-cash components shall be limited only to assumption of liabilities of any of the Debtors, and (ii) identify any proposed conditions to closing the transaction. Promptly upon receiving the Indications of Interest, the Debtors shall provide the Indications of Interests to the applicable Consultation Parties.

Each Potential Bidder will be deemed to consent to the Debtors' sharing its Indication of Interest and any subsequent bid to purchase Bid Assets (together with any supporting materials submitted in connection therewith) with the applicable Consultation Parties, subject to the terms and conditions hereof. Submitting an Indication of Interest does not (i) obligate the submitting party to submit a formal bid or participate in the sale process and (ii) exempt the submitting party from also having to submit a Qualified Bid by the applicable Bid Deadline to participate in the Auction. Any Potential Bidder that fails to submit an Indication of Interest by the applicable Indication of Interest Deadline may not be deemed a Qualified Bidder pursuant to section 2 below unless such condition is waived by the Debtors, in consultation with the applicable Consultation Parties..

**2.** **QUALIFIED BIDS**

Each offer, solicitation, or proposal by a Potential Bidder must satisfy each of the following conditions in order for such offer, solicitation, or proposal to be considered for designation as a "**Stalking Horse Bid**" and/or to be deemed a "**Qualified Bid**" and for such Potential Bidder to be considered for designation as a "**Stalking Horse Bidder**" and/or to be deemed a "**Qualified Bidder**," unless any such conditions that are not satisfied are waived by the Debtors, in consultation with the Consultation Parties:

**(a)** **Stalking Horse Bid Deadlines**

5

A Potential Bidder who desires to be considered for designation as a Stalking Horse Bidder and be deemed a Qualified Bidder for the LGA Slots must deliver to PJT or FTI, with copies to Davis Polk & Wardwell LLP ("**Davis Polk**"), the Required Bid Documents (as defined below) so as to be received no later than **June 10, 2026 at 4:00 p.m. (prevailing Eastern Time)** (the "**LGA Slots Stalking Horse Bid Deadline**").  A Potential Bidder who desires to be deemed a Qualified Bidder for the LGA Slots must deliver to PJT or FTI, with copies to Davis Polk, the Required Bid Documents so as to be received no later than **June 30, 2026 at 4:00 p.m. (prevailing Eastern Time)** (the "**LGA Slots Final Bid Deadline**").

A Potential Bidder who desires to be considered for designation as a Stalking Horse Bidder and be deemed a Qualified Bidder for one or more of the Campus Properties must deliver to Spirit, with copies to Davis Polk, the Required Bid Documents , so as to be received no later than **June 13, 2026 at 4:00 p.m. (prevailing Eastern Time)**  (the "**Campus Stalking Horse Bid Deadline**").  A Potential Bidder who desires to be deemed a Qualified Bidder for one or more of the Campus Properties must deliver to Spirit, with copies to Davis Polk, the Required Bid Documents so as to be received no later than **July 20, 2026 at 4:00 p.m. (prevailing Eastern Time)** (the "**Campus Final Bid Deadline**").

A Potential Bidder who desires to be considered for designation as a Stalking Horse Bidder and be deemed a Qualified Bidder for Bid Assets other than the Campus Properties or the LGA Slots must deliver to PJT or FTI, with copies to Davis Polk, the Required Bid Documents, so as to be received no later than **July 22, 2026 at 4:00 p.m. (prevailing Eastern Time)** (the "**Other Bid Assets Stalking Horse Bid Deadline**").

### (b)      Qualified Bid Deadlines

A Potential Bidder who desires to be deemed a Qualified Bidder for Bid Assets other than the Campus Properties or the LGA Slots must deliver to Spirit, with copies to Davis Polk, the Required Bid Documents so as to be received no later than **July 7, 2026 at 4:00 p.m. (prevailing Eastern Time) (**the "**Other Bid Assets Final Bid Deadline**" and, together with the LGA Slots Stalking Horse Bid Deadline, the LGA Slots Final Bid Deadline, the Campus Stalking Horse Bid Deadline, the Campus Final Bid Deadline, and the Other Bid Assets Stalking Horse Bid Deadline, the "**Bid Deadlines**").

The Debtors, in consultation with the applicable Consultation Parties, and without the need for further Bankruptcy Court approval, may extend each Bid Deadline by a reasonable period of time if the Debtors, in consultation with the applicable Consultation Parties, believe that such extension would further the goal of attaining the highest or otherwise best offer for the applicable Bid Assets.  If the Debtors extend a Bid Deadline, the Debtors will promptly notify all Potential Bidders with respect to the applicable Bid Assets of such extension.

### (c)      Bid Requirements

All bids must include the following items (collectively, the "**Required Bid Documents**"):

- a letter stating that the bidder's offer is irrevocable until consummation of a transaction involving Bid Assets (or any

6

lot thereof) identified in such offer;

- a duly authorized and executed purchase agreement or other appropriate documentation (i) in form and substance reasonably satisfactory to the Debtors, or (ii) with respect to any lot of Bid Assets with respect to which (x) a Stalking Horse APA has been executed or (y) a form purchase agreement is provided by the Debtors (through their advisors), a duly authorized and executed purchase agreement based on such Stalking Horse APA or form purchase agreement, as applicable, marked to show any revisions, and in the case of (i) and (ii) above, including, among other things, the purchase price for the Bid Assets (or any lot thereof, as applicable), together with all exhibits and schedules thereto (including, among other things, a proposed form of order approving the transaction(s) contemplated in such purchase agreement).   For the avoidance of doubt, a "conceptual" or "issues list"-style markup of the form asset purchase agreement would not satisfy this requirement;

- written evidence acceptable to the Debtors, in their discretion and in consultation with the applicable Consultation Parties, demonstrating financial wherewithal, operational ability, and corporate authorization to consummate the proposed transaction;

- a written acknowledgment that the bidder (i) has had an opportunity to conduct any and all due diligence regarding the applicable Bid Assets and/or the Sale Transaction, (ii) has relied solely upon its own independent review, investigation, and/or inspection of any documents and any other information in making the bid, (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied by operation of law, or otherwise, by the Debtors or any of their advisors (including PJT, FTI Consulting, Inc., and Davis Polk) or other representatives regarding the bid, the applicable Bid Assets (or any lot thereof), the Sale Transaction, or the completeness or accuracy of any information provided in connection therewith or with the Auction, except as expressly stated in these Bidding Procedures, and (iv) the bidder did not engage in any collusive conduct and acted in good faith in submitting its bid; and

- written evidence of a firm commitment for financing to consummate the proposed transaction, or other evidence of

7

ability to consummate the proposed transaction without financing, in either case which is satisfactory to the Debtors in their discretion, in consultation with the applicable Consultation Parties.

A bid will be considered only if the bid:

- identifies the legal name of the purchaser (including any Sponsor(s), if the purchaser is an entity formed for the purpose of consummating the proposed transaction);

- identifies the Bid Assets (or any lot thereof) to be applicable Bid Assets and the contracts and leases to be assumed;

- identifies with specificity the liabilities of the Debtors or the applicable Bid Assets (or any lot thereof) to be assumed;

- sets forth the consideration, including the form thereof, for the applicable Bid Assets to be purchased and the Contracts and Leases to be assumed (the "**Bid Consideration**"); *provided* that, if there is an Approved Stalking Horse Bid, the consideration must be at least equal to the following: (i) the consideration set forth in the Approved Stalking Horse Bid; *plus* (ii) the aggregate amount of any Approved Bid Protections; *plus* (iii) two percent of the consideration set forth in the Approved Stalking Horse Bid (the "**Minimum Overbid**");

- allocates the Bid Consideration among the applicable Bid Assets and Contracts and Leases to be assumed (per lot of Bid Assets);

- is not conditioned on (i) obtaining financing or (ii) the outcome of unperformed due diligence;

- includes a description of all governmental, licensing, regulatory, or other approvals or consents that are required to consummate the proposed transaction (including any antitrust approval related to the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended), together with evidence satisfactory to the Debtors, in consultation with the applicable Consultation Parties, of the ability to obtain such approvals or consents as soon as reasonably practicable, and in no event later than July 17, 2026, as well as a description of any material contingencies or other conditions that will be imposed upon, or that will otherwise apply to, the obtainment or effectiveness of any such approvals or

consents;

- expressly state that the bidder agrees to serve as an Alternate Bidder if such bidder's Qualified Bid is selected as the next highest or next best bid after the Successful Bid with respect to the applicable Bid Assets;

- is accompanied by a cash deposit by wire transfer to an Escrow Agent in an amount equal to ten percent of the consideration set forth in connection with such bid;

- sets forth the representatives that are authorized to appear and act on behalf of the bidder in connection with the proposed transaction;

- indicates that the bidder will not seek any transaction or break-up fee, expense reimbursement, or similar type of payment (other than if such bid is selected to be a Stalking Horse Bid and subject to Section 3 of the Bidding Procedures) and that it waives any substantial contribution administrative expense claims under section 503(b) of the Bankruptcy Code;

- includes evidence of the bidder's ability to comply with section 365 of the Bankruptcy Code (to the extent applicable), including the provision of adequate assurance of such bidder's ability to perform in the future under any contracts and leases proposed in its bid to be assumed by the Debtors and assigned to the bidder, in a form that will permit the Debtors to disseminate immediately such evidence to the non-Debtor counterparties to such contracts and leases;

- indicates whether or not the bidder will assume all cure costs associated with any Contracts and Leases it intends to assume; and

- is received on or before the applicable Bid Deadline (as such deadline may be extended in accordance with these Bidding Procedures).

Each bid must be sent via email to:

- **Counsel to the Debtors**.
  Davis Polk & Wardwell LLP
  450 Lexington Avenue
  New York, NY 10017
  Attn: Marshall S. Huebner (marshall.huebner@davispolk.com),

9

Darren S. Klein (darren.klein@davispolk.com),
Christopher S. Robertson (christopher.robertson@davispolk.com),
Joseph W. Brown (joseph.w.brown@davispolk.com).

- ***For the Campus Properties***

Spirit Airlines, LLC
1731 Radiant Drive
Dania Beach, FL 33004 USA
Attn: realestate@spirit.com

- ***For Bid Assets (other than the Campus Properties)***

PJT Partners LP
280 Park Avenue
New York, New York 10017
Attn: soar@pjtpartners.com

FTI Consulting, Inc.
155 North Wacker
Chicago, IL 60606, USA
Attn: Dan Wikel (dan.wikel@fticonsulting.com),
Marc Bilbao (marc.bilbao@fticonsulting.com),
David Fowkes (david.fowkes@fticapitaladvisors.com).

The Debtors shall provide the Consultation Parties, within one calendar day of receipt, copies of all bids received by the Debtors; *provided* that the Consultation Parties agree to treat such bid and any related information as confidential and shall not publicly disclose such information without the written consent of the Debtors, which shall not be unreasonably withheld.

A bid received from a Potential Bidder will constitute a Qualified Bid only if it includes all of the Required Bid Documents and meets all of the above requirements, as determined by the Debtors in consultation with the Consultation Parties.  The Debtors, in consultation with the Consultation Parties, shall have the right to deem a bid a Qualified Bid even if such bid does not conform to one or more of the requirements above or does not include one or more Required Bid Documents.  The Debtors will be authorized to approve joint bids in their reasonable discretion, in consultation with the Consultation Parties, on a case-by-case basis; *provided* that such approval must be in writing and made in advance of the applicable bid deadline; *provided, further*, that the Debtors will be authorized, in consultation with the applicable Consultation Parties, to allow combined bids during the Auction (if any) in their reasonable discretion.

If the Debtors receive a bid prior to the applicable Bid Deadline that is not a Qualified Bid, the Debtors may provide the bidder with the opportunity to remedy any deficiencies through and, in consultation with the Consultation Parties, after the applicable Bid Deadline.  If any bid is

10

determined by the Debtors, in consultation with the Consultation Parties, not to be a Qualified Bid, and the applicable bidder fails to remedy such bid in accordance with these Bidding Procedures, the Debtors, to the extent applicable, shall promptly instruct the Escrow Agent to return such bidder's Good Faith Deposit.

Notwithstanding any other provision of these Bidding Procedures, the Debtors may, in their discretion and in consultation with the Consultation Parties, evaluate bids on any grounds, including, but not limited to, (i) the amount of the purchase price, including non-cash consideration, set forth in the bid, (ii) the value to be provided to the Debtors under the bid, including the net economic effect upon the Debtors' estates, (iii) any benefit to the Debtors' estates from any assumption of liabilities or waiver of liabilities, including the release or replacement of letters of credit, (iv) the transaction structure and execution risk, including conditions to and certainty of closing, termination provisions, availability of financing and financial wherewithal to meet all commitments, and required governmental or other approvals, (v) the anticipated timing to closing, (vi) the presence of any governmental, licensing, regulatory, or other approvals or consents in a bid, and the anticipated timing or likelihood of obtaining such approvals or consents, and (vii) any other factors the Debtors may reasonably deem relevant consistent with their fiduciary duties.  For the avoidance of doubt, the presence of any governmental, licensing, regulatory, or other approvals or consents in a bid, and the anticipated timing or likelihood of obtaining such approvals or consents, may be grounds for the Debtors in their discretion, in consultation with the Consultation Parties, to determine that such bid (i) is not a Qualified Bid or (ii) is not higher or otherwise better than any other Qualified Bid.

By submission of its bid, each Qualified Bidder shall be deemed to acknowledge and represent that it (i) has reviewed, understands, and accepts these Bidding Procedures, (ii) has consented to the jurisdiction of the Bankruptcy Court, and (iii)  its Qualified Bid is irrevocable and binding until consummation of a transaction if it is selected as the Successful Bidder.  Without the written consent of the Debtors, in consultation with the Consultation Parties, a Qualified Bidder may not amend, modify, or withdraw its Qualified Bid, except for proposed amendments to increase the amount or otherwise improve the terms of its Qualified Bid, during the period that such Qualified Bid is required to remain irrevocable.

## 3.   STALKING HORSE BIDDER(S) AND BID PROTECTIONS

The Debtors are authorized, but not obligated, to exercise their business judgment to agree with any Qualified Bidder (in consultation with the Consultation Parties) that (a) such Qualified Bidder's Qualified Bid shall serve as the minimum bid for the Bid Assets or any lot thereof (such Qualified Bidder, a "**Stalking Horse Bidder**" and, such Qualified Bid, a "**Stalking Horse Bid**") and (b) the Debtors will enter into the transaction(s) contemplated in such Stalking Horse Bid unless a higher or otherwise better Qualified Bid is submitted with respect to such Bid Assets or any lot thereof, as determined by the Debtors (in consultation with the Consultation Parties) in accordance with the Bidding Procedures.  In order to incentivize prospective purchasers to agree to become a Stalking Horse Bidder, the Debtors are authorized, but not obligated, to exercise their business judgment (in consultation with the Consultation Parties) to offer the following bid protections to such Stalking Horse Bidder(s), payable if the Debtors consummate a sale pursuant to a Qualified Bid other than the Stalking Horse Bid (if the assets subject to such sale include those to which such Stalking Horse Bid relates): (x) payment of a break-up fee in an amount not to

11

exceed three percent of the cash portion of the purchase price set forth in the Stalking Horse Bid (the "**Break-Up Fee**") and (y) reimbursement of the reasonable and documented fees and out-of-pocket expenses actually incurred by the Stalking Horse Bidder in an amount not to exceed $500,000 (the "**Expense Reimbursement**" and, together with the Break-Up Fee, the "**Bid Protections**"); *provided* that (i) the payment of any Bid Protections shall be subject to the terms and conditions of the definitive agreement(s) executed between the Debtors and such Stalking Horse Bidder(s), (ii) any Bid Protections will not be binding on the Debtors until the approval of such Bid Protections in accordance with these Bidding Procedures, and (iii) no Bid Protections shall be paid to an insider of the Debtors. For the avoidance of doubt, the Debtors will provide Expense Reimbursement only to the Stalking Horse Bidder(s) and such expenses must be reasonable, documented, and subject to review by the Debtors. To the extent payable, any Bid Protections would be paid out of the proceeds of the sale to which they relate.

In the event that the Debtors, in consultation with the Consultation Parties, desire to designate one or more Qualified Bids as Stalking Horse Bids and enter into asset purchase agreements (each, a "**Stalking Horse APA**") with one or more Stalking Horse Bidders that provide for Bid Protections (subject to the limits on such Bid Protections set forth herein), the Debtors may file a notice or notices with the Bankruptcy Court (the "**Stalking Horse Notice**") that, with respect to each such Stalking Horse Bid, (a) sets forth the identity of the Stalking Horse Bidder, (b) sets forth the amount of the Stalking Horse Bid and what portion of the Stalking Horse Bid (if any) would be in the form of cash, (c) identifies the Bid Assets (or any lot thereof) to be purchased and the contracts and leases to be assumed, (d) states whether the Stalking Horse Bidder has any connection to the Debtors other than those that arise from the Stalking Horse Bid, (e) specifies the Bid Protections, and (f) attaches the Stalking Horse APA, including all exhibits, schedules, and attachments thereto, to the extent doing so does not disclose strategic or confidential information, and serve such Stalking Horse Notice on the U.S. Trustee, counsel to each of the Consultation Parties, and those parties who have filed the appropriate notice pursuant to Bankruptcy Rule 2002 requesting notice of all pleadings filed in the Chapter 11 Cases (collectively, the "**Stalking Horse Notice Parties**"), with no further notice being required. For the avoidance of doubt, the Debtors may designate more than one Stalking Horse Bidder; *provided*, that each Stalking Horse Bidder shall be designated with respect to a separate lot of Bid Assets, and no single lot of Bid Assets shall be subject to more than one Stalking Horse Bid.

The Stalking Horse Notice shall also specify the deadline to file objections ("**Stalking Horse Objections**") to the designation of the Stalking Horse Bidder, the terms of the Stalking Horse Bid, or the Bid Protections set forth therein, which deadline (the "**Stalking Horse Objection Deadline**") shall be no earlier than three business days after service of the Stalking Horse Notice on the Stalking Horse Notice Parties. Stalking Horse Objections must (a) be in writing, (b) comply with the Bankruptcy Code, Bankruptcy Rules, and Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**"), (c) state, with specificity, the legal and factual bases thereof, and (d) be filed with the Bankruptcy Court and served on the Debtors and the Stalking Horse Notice Parties by the Stalking Horse Objection Deadline.

If a timely Stalking Horse Objection is filed and served, to the extent not resolved consensually, the Debtors may schedule a hearing before the Bankruptcy Court to be held on an expedited basis (on not less than three-days' notice) seeking authorization to enter into the applicable Stalking Horse APA(s) (including the Bid Protections contained therein) (a "**Stalking**

12

**Horse Hearing**"). If no timely Stalking Horse Objection is filed and served with respect to a particular Stalking Horse Bidder, upon the expiration of the applicable Stalking Horse Objection Deadline, the Debtors shall file with the Bankruptcy Court a certificate of no objection (a "**CNO**") and, upon such filing, (a) the Debtors' designation of the Stalking Horse Bidder and agreement respecting Bid Protections shall be deemed approved and (b) the Debtors may enter into the Stalking Horse APA, in each case without further notice or opportunity to be heard. Upon the approval by the Bankruptcy Court at a Stalking Horse Hearing for the Debtors to enter into the Stalking Horse APA (including the Bid Protections contained therein), or upon the Debtors' filing a CNO with respect to a Stalking Horse Bidder, the Stalking Horse Bidder shall be the "**Approved Stalking Horse Bidder**," its Stalking Horse Bid shall be the "**Approved Stalking Horse Bid**," and the Bid Protections contained therein (if any) shall be the "**Approved Bid Protections**" applicable to such Approved Stalking Horse Bidder.

## 4.    AUCTION

In the event that the Debtors timely receive more than one Qualified Bid for the same Bid Assets or any overlapping portion thereof, the Debtors shall conduct an auction (the "**Auction**") for the applicable Bid Assets. The Auction shall be conducted in accordance with these Bidding Procedures and upon notice to all Qualified Bidders that have submitted Qualified Bids. The Auction shall be conducted at the offices of Davis Polk, 450 Lexington Avenue, New York, New York 10017 (i) with respect to the Bid Assets other than the Campus Properties, on **July 9, 2026 at 10:00 a.m. (prevailing Eastern Time)**, and (ii) with respect to the Campus Properties, on **July 22, 2026 at 10:00 a.m. (prevailing Eastern Time)**, or such later time on such day or such other place as the Debtors (in consultation with the Consultation Parties) shall notify all Participating Parties (as defined below). If (a) no more than one Qualified Bid is submitted by the applicable Bid Deadline (whether an Approved Stalking Horse Bid or otherwise) with respect to any particular Auction Lot or (b) multiple Partial Bids (as defined below) are submitted by the Bid Deadline for non-overlapping lots of Bid Assets, the Debtors may, in their discretion and in consultation with the Consultation Parties, elect to cancel the Auction (in whole or in part with respect to one or more Auction Lots) and seek approval of the transactions contemplated in such Approved Stalking Horse Bid, Qualified Bid that is not an Approved Stalking Horse Bid, or Partial Bids, as applicable, at the Sale Hearing (as defined below).

If any of the Qualified Bids submitted by the applicable Bid Deadline are structured as a purchase of less than all or substantially all of the Bid Assets (each such bid, a "**Partial Bid**"), the Debtors (in consultation with the Consultation Parties) may conduct separate auctions at the Auction for each lot of assets (each, an "**Auction Lot**") subject to a Partial Bid. The Debtors may, in consultation with the Consultation Parties, combine multiple Partial Bids into an Auction Lot to compete against any particular Approved Stalking Horse Bid. The Debtors may designate each Auction Lot at any time prior to the Auction.

Only representatives or agents of the Debtors, the Consultation Parties, and the Qualified Bidders (including any Approved Stalking Horse Bidder), and the legal and financial advisors to each of the foregoing (collectively, the "**Participating Parties**"), will be entitled to attend the Auction, and only Qualified Bidders will be entitled to make any Subsequent Bids (as defined herein) at the Auction.

Prior to the Auction, the Debtors will (a) notify each Qualified Bidder that has timely submitted a Qualified Bid that its bid is a Qualified Bid and (b) provide all Qualified Bidders with (i) copies of the Qualified Bid or combination of Qualified Bids that the Debtors believe, in consultation with the Consultation Parties, is the highest or otherwise best offer (the "**Starting Bid**"), which may be designated on a per-Auction Lot basis, (ii) an explanation of how the Debtors value the Starting Bid, and (iii) a list identifying all of the Qualified Bidders. For the avoidance of doubt, the Starting Bid may be comprised of multiple Qualified Bids if the aggregate consideration of such Qualified Bids is higher and better than an Approved Stalking Horse Bid. The Debtors shall also provide copies of such Starting Bid (if applicable, marked against an Approved Stalking Horse Bid) to all of the Qualified Bidders (including the Approved Stalking Horse Bidder) and the Consultation Parties.

The Debtors, in consultation with the Consultation Parties, may employ and announce at the Auction additional procedural rules for conducting the Auction (*e.g.*, the amount of time allotted to submit Subsequent Bids); *provided* that such rules shall (a) not be inconsistent with the Bankruptcy Code, the Bidding Procedures Order, or any other order of the Bankruptcy Court entered in connection herewith and (b) be disclosed to all Qualified Bidders.

Bidding at the Auction will begin with the Starting Bid and continue, in one or more rounds of bidding in the presence of all parties at the Auction, so long as during each round at least one subsequent bid (a "**Subsequent Bid**") is submitted by a Qualified Bidder that (a) improves upon such Qualified Bidder's immediately prior Qualified Bid and (b) the Debtors, in their discretion and in consultation with the Consultation Parties, determine that such Subsequent Bid is (i) with respect to the first round, a higher or otherwise better offer than the Starting Bid and (ii) with respect to subsequent rounds, a higher or otherwise better offer than the Leading Bid (as defined below), in each case taking into account other Qualified Bids for other Bid Assets; *provided* that, with respect to the first round, if there is an Approved Stalking Horse Bidder, any Qualified Bid must provide incremental consideration at least equal to the Minimum Overbid. In each subsequent round after the first round, the Debtors, in their discretion and in consultation with the Consultation Parties, may determine appropriate minimum bid increments or requirements for each round of bidding.

After the first round of bidding and between each subsequent round of bidding, as applicable, the Debtors, in their discretion and in consultation with the Consultation Parties, will determine and announce the bid or bids that they believe to be the highest or otherwise best offer or combination of offers (the "**Leading Bid**"). Additional consideration in excess of the amount set forth in the Starting Bid may include cash and/or non-cash consideration; *provided* that the value for such non-cash consideration shall be determined by the Debtors, in their discretion and in consultation with the Consultation Parties.

A round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a Subsequent Bid with full knowledge and written confirmation of the Leading Bid.

For the purpose of evaluating Subsequent Bids, the Debtors may require a Qualified Bidder submitting a Subsequent Bid to submit, as part of its Subsequent Bid, additional evidence (in the form of financial disclosure or credit-quality support information or enhancement acceptable to

14

the Debtors in their discretion, in consultation with the Consultation Parties) demonstrating such Qualified Bidder's ability to close the proposed transaction.

The Debtors shall maintain a transcript of all bids made and announced at the Auction, including the Starting Bid(s), all Subsequent Bid(s), the Leading Bid(s), the Alternative Bid(s) (as defined below), and the Successful Bid(s).

If a Qualified Bidder increases its bid at the Auction and is the Successful Bidder or Alternate Bidder, such bidder must increase its Good Faith Deposit to an amount equal to ten percent of the proposed purchase price submitted at the Auction within two days after the Auction.

## 5.   SELECTION OF SUCCESSFUL BID(S) AND ALTERNATE BID(S)

Prior to the conclusion of the Auction, the Debtors, in consultation with the Consultation Parties, shall (a) review and evaluate each bid made at the Auction on the basis of financial and contractual terms and other factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the sale transaction, (b) determine and identify, with respect to each Auction Lot, the highest or otherwise best offer or collection of offers (the "**Successful Bid(s)**"), (c) determine and identify, with respect to each Auction Lot, the next highest or otherwise best offer or collection of offers (the "**Alternate Bid(s)**"), and (d) notify all Qualified Bidders participating in the Auction, prior to its adjournment, of (i) the identity of the party or parties that submitted the Successful Bid(s) (the "**Successful Bidder(s)**"), (ii) the amount and other material terms of the Successful Bid(s), (iii) the identity of the party or parties that submitted the Alternate Bid(s) (the "**Alternate Bidder(s)**"), and (iv) the amount and other material terms of the Alternate Bid(s).  Each Qualified Bidder shall agree and be deemed to agree to be the Alternate Bidder with respect to one or more Auction Lots if so designated.  As soon as reasonably practicable after the completion of the Auction, the Successful Bidder(s) and the applicable Debtors shall complete and execute all agreements, instruments, and other documents necessary to consummate the applicable sale or other transaction(s) contemplated by the applicable Successful Bid(s).  Promptly following the selection of the Successful Bid(s) and Alternate Bid(s), the Debtors shall file a notice of the Successful Bid(s) and Alternate Bid(s) with the Bankruptcy Court, together with a proposed order approving the transaction(s) contemplated therein (the "**Sale Order**").

## 6.   THE SALE HEARING

The hearing(s) to consider the proposed Sale Order (the "**Sale Hearing**") will be held on [●][4] before the Honorable Judge Sean H. Lane, in the United States Bankruptcy Court for the Southern District of New York, or by such other virtual or electronic means as may be determined by the Bankruptcy Court.  The Sale Hearing may be adjourned by the Debtors, in consultation with the Consultation Parties, by an announcement of the adjourned date at a hearing before the Bankruptcy Court or by filing a notice on the Bankruptcy Court's docket.  At the Sale Hearing,

---

[4] This date remains subject to Bankruptcy Court approval.  The Debtors intend to schedule a Sale Hearing with respect to Bid Assets other than the Campus Properties and a subsequent Sale Hearing with respect to the Campus Properties

15

the Debtors will seek the Bankruptcy Court's approval of the Successful Bid(s) and, at the Debtors' election, the Alternate Bid(s).

The Debtors' presentation to the Bankruptcy Court of the Successful Bid(s) and Alternate Bid(s) will not constitute the Debtors' acceptance of such bid(s), which acceptance will only occur upon approval of such bid(s) by the Bankruptcy Court.  Following the Bankruptcy Court's entry of the Sale Order, the Debtors and the Successful Bidder(s) shall proceed to consummate the transaction(s) contemplated by the Successful Bid(s).  If the Debtors and the Successful Bidder(s) fail to consummate the proposed transaction(s), then the Debtors shall file a notice with the Bankruptcy Court advising of such failure.  Upon the filing of such notice with the Bankruptcy Court, the Alternate Bid(s) will be deemed to be the Successful Bid(s) and the Debtors will be authorized, but not directed, to effectuate the transaction(s) with the Alternate Bidder(s) subject to the terms of the Alternate Bid(s) of such Alternate Bidder(s) without further order of the Bankruptcy Court.  If the failure to consummate the transaction(s) contemplated by the Successful Bid(s) is the result of a breach by the Successful Bidder(s) (the "**Breaching Bidder(s)**") of its (their) asset purchase agreement(s), the Debtors reserve the right to seek all available remedies from such Breaching Bidder(s), subject to the terms of the applicable asset purchase agreement.

## 7.      RETURN OF GOOD FAITH DEPOSIT

The Good Faith Deposits of all Qualified Bidders will be held in escrow by the Escrow Agent and will not become property of the Debtors' bankruptcy estates unless released to the Debtors from escrow pursuant to the terms of the applicable escrow agreement or pursuant to further order of the Bankruptcy Court.  The Escrow Agent will retain the Good Faith Deposits of the Successful Bidder(s) and the Alternate Bidder(s) until the consummation of the transaction(s) contemplated by the Successful Bid(s) or the Alternate Bid(s), as applicable, in accordance with Section 5 above, except as otherwise ordered by the Bankruptcy Court.  The Good Faith Deposits (and all interest accrued thereon) of the other Qualified Bidders will be returned within four business days after the entry of the applicable Sale Order, or as soon as reasonably practicable thereafter.  At the closing of the transaction contemplated by the Successful Bid(s), the Successful Bidder(s) will receive a credit in the amount of its Good Faith Deposit (plus all interest accrued thereon).  All remaining Good Faith Deposits of the Alternate Bidders (and all interest accrued thereon) held by the Escrow Agent will be released by the Escrow Agent four business days after the consummation of the transaction(s) contemplated by the Successful Bid(s), or as soon as reasonably practicable thereafter; *provided* that the Escrow Agent will retain the Good Faith Deposit of a Breaching Bidder and such Breaching Bidder's Good Faith Deposit shall be forfeited to the Debtors.

## 8.      AS IS, WHERE IS

The sale of Bid Assets shall be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Debtors, their agents, or their estates, except, solely with respect to the Debtors and their estates, as provided in a purchase agreement, as approved by the Bankruptcy Court.

16

9. **FREE AND CLEAR OF ANY AND ALL INTERESTS**

Except as otherwise provided in a Successful Bidder(s)'s purchase agreement, all of the Debtors' right, title, and interest in and to the Bid Assets subject thereto shall be sold free and clear of any pledges, liens, security interests, encumbrances, claims, charges, options, and interests thereon (collectively, the "**Interests**") to the maximum extent permitted by section 363 of the Bankruptcy Code, with such Interests to attach to the net proceeds of the sale of the Bid Assets with the same validity and priority as such Interests applied against the Bid Assets.

10. **RESERVATION OF RIGHTS**

Except as otherwise provided in these Bidding Procedures or the Bidding Procedures Order, the Debtors reserve the right in their discretion (in consultation with the Consultation Parties) to:

- determine which Interested Parties are Potential Bidders;

- determine which bidders are Qualified Bidders;

- determine which bids are Qualified Bids;

- determine which Qualified Bid is the Starting Bid;

- determine which Qualified Bid is the highest or otherwise best offer for the applicable Bid Assets and which is the next highest or otherwise best offer;

- reject any bid that the Debtors deem to be (a) inadequate or insufficient, (b) not in conformity with the requirements of these Bidding Procedures or the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules, or (c) contrary to the best interests of the Debtors and their estates;

- impose additional terms and conditions with respect to all Potential Bidders;

- designate one or more Stalking Horse Bidders;

- designate, combine, or modify Auction Lots, including by combining multiple Partial Bids into a single Auction Lot, at any time prior or during the Auction;

- cancel the Auction (in whole or in part with respect to one or more Auction Lots);

- waive the terms and conditions set forth herein with respect to Potential Bidders;

17

- extend the deadlines set forth herein; and

- modify these Bidding Procedures and implement additional procedural rules that the Debtors determine, in their discretion and in consultation with the Consultation Parties, will better promote the goals of the Bidding Process and discharge the Debtors' fiduciary duties.

Nothing in these Bidding Procedures shall require the Debtors' board of directors to take any action, or to refrain from taking any action, with respect to these Bidding Procedures, to the extent that the Debtors' board of directors determines, or based on the advice of counsel, that taking such action, or refraining from taking such action, as applicable, is required to comply with applicable law or its fiduciary duties under applicable law.  Accordingly, at any time prior to the Bankruptcy Court's entry of a Sale Order, the Debtors may terminate the sale process and pursue an alternative transaction, including a plan of reorganization.

All Consultation Parties will be permitted to seek relief from the Bankruptcy Court on an expedited basis if they disagree with any actions or decision made by the Debtors as part of these Bidding Procedures.  The rights of all Consultation Parties with respect to all issues are expressly reserved and not modified, waived, or impaired in any way by these Bidding Procedures.

Notwithstanding anything to the contrary herein, the Debtors shall not modify any consultation rights of a Consultation Party without the consent of such Consultation Party.

## 11.    RELEVANT DATES

| Sale Timeline for Campus Properties | |
|---|---|
| June 10, 2026 at 10:00 a.m. | Hearing to consider approval of the Bidding Procedures and for entry of the Bidding Procedures Order |
| July 13, 2026 at 4:00 p.m. | Campus Indication of Interest Deadline; and Campus Stalking Horse Bid Deadline |
| July 20, 2026 at 4:00 p.m. | Campus Final Bid Deadline |
| July 22, 2026 at 10:00 a.m. | Auction (if any) of the Campus Properties to be held at the New York offices of Davis Polk & Wardwell LLP |
| July 23, 2026 | Target date for the Debtors to file with the Bankruptcy Court the Notice of Auction Results with respect to the Campus Properties |
| July 27, 2026 at 4:00 p.m.] | Deadline to object to the Sale Transaction to the Successful Bidder; and The applicable Assumption and Assignment Objection Deadline |
| [●], 2026 at [●] (subject to Court availability) | Hearing to consider approval of the Sale Transaction(s) and for entry of the Sale Order(s) |

18

| Sale Timeline for LGA Slots | |
|---|---|
| June 10, 2026 at 10:00 a.m. | Hearing to consider approval of the Bidding Procedures and for entry of the Bidding Procedures Order |
| June 10, 2026 at 4:00 p.m. | LGA Slots Indication of Interest Deadline; and<br>LGA Slots Stalking Horse Bid Deadline |
| June 30, 2026 at 4:00 p.m. | LGA Slots Final Bid Deadline |
| July 9, 2026 at 10:00 a.m. | Auction (if any) of Bid Assets other than the Campus Properties to be held at the New York offices of Davis Polk & Wardwell LLP |
| July 10, 2026 | Target date for the Debtors to file with the Bankruptcy Court the Notice of Auction Results with respect to the Bid Assets other than the Campus Properties |
| July 13, 2026 at 4:00 p.m. | Deadline to object to the Sale Transaction to the Successful Bidder with respect to the Bid Assets other than the Campus Properties; and<br><br>The applicable Assumption and Assignment Objection Deadline |
| [●], 2026 at [●] (subject to Court availability) | Hearing to consider approval of the Sale Transaction(s) and for entry of the Sale Order(s) |
| **General Sale Timeline** | |
| June 10, 2026 at 10:00 a.m. | Hearing to consider approval of the Bidding Procedures and for entry of the Bidding Procedures Order |
| June 17, 2026 at 4:00 p.m. | General Indication of Interest Deadline |
| June 22, 2026 at 4:00 p.m. | Other Bid Assets Stalking Horse Bid Deadline |
| June 23, 2026 | Target date for the Debtors to file Potential Assumed Contracts Schedule |
| July 7, 2026 at 4:00 p.m. | Other Bid Assets Final Bid Deadline;<br>Cure Objection Deadline |
| July 9, 2026 at 10:00 a.m. | Auction (if any) of Bid Assets other than the Campus Properties to be held at the New York offices of Davis Polk & Wardwell LLP |
| July 10, 2026 | Target date for the Debtors to file with the Bankruptcy Court the Notice of Auction Results with respect to the Bid Assets other than the Campus Properties |
| July 13, 2026 at 4:00 p.m. | Deadline to object to the Sale Transaction to the Successful Bidder with respect to the Bid Assets other than the Campus Properties; and<br><br>Assumption and Assignment Objection Deadline |
| [●], 2026 at [●] (subject to Court availability) | Hearing to consider approval of the Sale Transaction(s) and for entry of the Sale Order(s) |

**Exhibit 2**

**Form of Sale Notice**

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Tel.: (212) 450-4000
Marshall S. Huebner
Darren S. Klein
Christopher S. Robertson
Joseph W. Brown

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **SPIRIT AVIATION HOLDINGS, INC.,** *et al.*, | **Case No. 25-11897 (SHL)** |
| **Debtors.**[1] | **Jointly Administered** |

### NOTICE OF SALE, BIDDING PROCEDURES, AUCTION, AND SALE HEARING

**PLEASE TAKE NOTICE** that the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the Southern District of New York (the "**Court**") on August 29, 2025.

**PLEASE TAKE FURTHER NOTICE** that, on May 27, 2026, the Debtors filed a motion (the "**Motion**") with the Court seeking entry of orders, among other things, approving (a) procedures for the solicitation of bids in connection with the Sale Transaction and the Auction (the "**Bidding Procedures**"),[2] (b) the form and manner of notice related to the Sale Transaction, and (c) procedures for the assumption and assignment of contracts and leases in connection with the Sale Transaction.

**PLEASE TAKE FURTHER NOTICE** that, on [●], 2026, the Court entered an order (the "**Bidding Procedures Order**") approving, among other things, the Bidding Procedures, which establish the key dates and times related to the Sale Transaction and the Auction.  All parties

---

[1] The Debtors' names and last four digits of their respective employer identification numbers are as follows: Spirit Aviation Holdings, Inc. (1797); Spirit Airlines, LLC (7023); Spirit Finance Cayman 1 Ltd. (7020); Spirit Finance Cayman 2 Ltd. (7362); Spirit IP Cayman Ltd. (4732); and Spirit Loyalty Cayman Ltd. (4752).  The Debtors' mailing address is 1731 Radiant Drive, Dania Beach, FL 33004.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion or the Bidding Procedures, as applicable.

interested in bidding should carefully read the Bidding Procedures Order and the Bidding Procedures in their entirety.[3]

## Contact Persons for Parties Interested in Submitting a Bid

The Bidding Procedures set forth the requirements for submitting a Qualified Bid, and any person interested in making an offer to purchase the Bid Assets (or any lot thereof) must comply strictly with the Bidding Procedures. Only Qualified Bids will be considered by the Debtors, in accordance with the Bidding Procedures.

**Any interested bidder for Bid Assets other than the Campus Properties should contact, as soon as practicable:**

**PJT Partners LP**[4]
280 Park Avenue
New York, New York 10017
Attn:soar@pjtpartners.com

**-and-**

**FTI Consulting, Inc.[5]**
155 North Wacker
Chicago, IL 60606, USA
Attn: Dan Wikel (dan.wikel@fticonsulting.com),
Marc Bilbao (marc.bilbao@fticonsulting.com),
David Fowkes (david.fowkes@fticapitaladvisors.com).

**Any interested bidder for one or more of the Campus Properties should contact, as soon as practicable:**

**Spirit Airlines, LLC**
1731 Radiant Drive
Dania Beach, FL 33004 USA
Attn: realestate@spirit.com

---

[3] To the extent of any inconsistencies between the Bidding Procedures and the summary descriptions of the Bidding Procedures in this notice, the terms of the Bidding Procedures shall control in all respects.

[4] PJT Partners LP, in its capacity as the Debtors' investment banker, is referred to herein as "**PJT**."

[5] FTI Consulting, Inc., in its capacity as the Debtors' financial advisor, is referred to herein as "**FTI**."

2

**Obtaining Additional Information**

Copies of the Motion and the Bidding Procedures Order, as well as all related exhibits (including the Bidding Procedures) and all other documents filed with the Court, are available free of charge on the Debtors' case information website located at https://dm.epiq11.com/SpiritAirlines or can be requested by email at SpiritAirlinesInfo@epiqglobal.com.

**Important Dates and Deadlines**[6]

1. **Indication of Interest Deadline**.

   The deadline for Potential Bidders to submit to PJT or FTI non-binding indications of interest for the LGA Slots is **June 10, 2026 at 4:00 p.m. (prevailing Eastern Time)**.

   The deadline for Potential Bidders to submit to Spirit non-binding indications of interest for one or more of the Campus Properties is **June 13, 2026 at 4:00 p.m. (prevailing Eastern Time)**.

   The deadline for Potential Bidders to submit to PJT or FTI non-binding indications of interest for   Bid Assets other than the Campus Properties or the LGA Slots is **June 17**, **2026 at 4:00 p.m. (prevailing Eastern Time)**].

2. **Bid Deadline.**

   The deadline to submit a bid that shall be considered for designation as a Stalking Horse Bid (which must also constitute a Qualified Bid) for the LGA Slots is **June 10, 2026 at 4:00 p.m. (prevailing Eastern Time)**.  The final deadline to submit a Qualified Bid for the LGA Slots is **June 30, 2026 at 4:00 p.m. (prevailing Eastern Time)**.

   The deadline to submit a bid that shall be considered for designation as a Stalking Horse Bid (which must also constitute a Qualified Bid) for Bid Assets other than the Campus Properties or the LGA Slots is **June 22, 2026 at 4:00 p.m. (prevailing Eastern Time)**.

   The final deadline to submit a Qualified Bid for Bid Assets other than the Campus Properties or the LGA Slots is **July 7, 2026 at 4:00 p.m. (prevailing Eastern Time)**.

   The deadline to submit a bid that shall be considered for designation as a Stalking Horse Bid (which must also constitute a Qualified Bid) for one or more of the Campus Properties is **July 13, 2026 at 4:00 p.m. (prevailing Eastern Time)**.

   The final deadline to submit a Qualified Bid for one or more of the Campus Properties is **July 20, 2026 at 4:00 p.m. (prevailing Eastern Time)**.

---

[6] The following dates and deadlines may be extended by the Debtors or the Court pursuant to the terms of the Bidding Procedures and the Bidding Procedures Order.

3

3. **Auction(s).**  In the event that the Debtors timely receive more than one Qualified Bid for the same Bid Assets or any overlapping portion thereof, and subject to the satisfaction of any further conditions set forth in the Bidding Procedures, the Debtors intend to conduct one or more Auctions for the Bid Assets.  With respect to the Bid Assets other than the Campus Properties, the Auction, if one is held, will commence on **July 9, 2026 at 10:00 a.m. (prevailing Eastern Time)** at the offices of Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017.  With respect to the Campus Properties, the Auction, if one is held, will commence on **July 22, 2026 at 10:00 a.m. (prevailing Eastern Time)** at the offices of Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017.

4. **Auction and Sale Objections Deadline**.  The deadline to file an objection with the Court to the Sale Order, the conduct of the Auction, or the Sale Transaction (collectively, the "**Sale Objections**") is (i) **July 13, 2026 at 4:00 p.m. (prevailing Eastern Time)** with respect to Bid Assets other than the Campus Properties, or (ii) **July 27, 2026 at 4:00 p.m. (prevailing Eastern Time)** with respect to the Campus Properties (each, a "**Sale Objection Deadline**").

5. **Sale Hearing**.  A hearing (the "**Sale Hearing**") to consider the proposed Sale Transaction will be held before the Court on **[●], 2026 at [●].m. (prevailing Eastern Time)**[7] or such other date as determined by the Court.

### Filing Objections

Sale Objections, if any, must (a) be in writing, (b) state, with specificity, the legal and factual bases thereof, (c) comply with the Bankruptcy Code, Bankruptcy Rules, and Local Rules, (d) be filed with the Court no later than the applicable Sale Objection Deadline, and (e) no later than the applicable Sale Objection deadline, be served on (i) counsel to the Debtors, Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017, Attn: Marshall S. Huebner, Darren S. Klein, Christopher S. Robertson, and Joseph W. Brown, (ii) counsel to the AHC, Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, New York 10036, Attn: Michael S. Stamer and Jason P. Rubin, (iii) counsel to the RCF Administrative Agent, Milbank LLP, 55 Hudson Yards, New York, NY 10001-2163, Attn: Andrew Harmeyer and Jason Kestecher, (iv) counsel to the Committee, Willkie Farr & Gallagher LLP, 787 7th Avenue, New York, NY 10019, Attn: Brett H. Miller and Todd M. Goren, and (v) the U.S. Trustee, 1 Bowling Green, New York, NY 10014, Attn: Shara Cornell and Mark Bruh.

### CONSEQUENCES OF FAILING TO TIMELY ASSERT AN OBJECTION

*Any party or entity who fails to timely make an objection to the Sale Transaction on or before the applicable Sale Objection Deadline in accordance with the Bidding Procedures Order and this Notice shall be forever barred from asserting any objection to the Sale Transaction,*

---

[7] This date remains subject to Court approval.  The Debtors intend to schedule a Sale Hearing with respect to Bid Assets other than the Campus Properties and a subsequent Sale Hearing with respect to the Campus Properties

*including with respect to the transfer of the assets free and clear of all liens, claims, encumbrances, and other interests*.

## NO SUCCESSOR LIABILITY

*For more information on the Debtors' businesses, refer to the Declaration of Fred Cromer as Executive Vice President and Chief Financial Officer of the Debtors in Support of Debtors' Chapter 11 Proceedings and First Day Pleadings [Docket No. 19]. The assets sold in the Sale Transaction will be free and clear of, among other things, any claim arising from any conduct of the Debtors prior to the closing of the Sale Transaction, whether known or unknown, whether due or to become due, whether accrued, absolute, contingent, or otherwise, so long as such claim arises out of or relates to events occurring prior to the closing of the Sale Transaction. Accordingly, as a result of the Sale Transaction, the Successful Bidder(s) will not be a successor to any of the Debtors by reason of any theory of law or equity, and the Successful Bidder(s) will have no liability, except as expressly provided in a definitive agreement reached between the Debtors and the Successful Bidder(s), for any liens, claims, encumbrances, and other interests against or in any of the Debtors under any theory of law, including successor liability theories.*

[*Remainder of page intentionally left blank*]

Dated: [●], 2026
New York, New York

DAVIS POLK & WARDWELL LLP

*DRAFT*
450 Lexington Avenue
New York, NY 10017
Tel.: (212) 450-4000
Marshall S. Huebner
Darren S. Klein
Christopher S. Robertson
Joseph W. Brown

*Counsel to the Debtors and Debtors in Possession*

6

**Exhibit 3**

**Form of Potential Assumption and Assignment Notice**

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Tel.: (212) 450-4000
Marshall S. Huebner
Darren S. Klein
Christopher S. Robertson
Joseph W. Brown

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **SPIRIT AVIATION HOLDINGS, INC.,** *et al.*, | **Case No. 25-11897 (SHL)** |
| **Debtors.**[1] | **Jointly Administered** |

### NOTICE OF POTENTIAL ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS OR UNEXPIRED LEASES AND CURE AMOUNT

**PLEASE TAKE NOTICE** that the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the Southern District of New York (the "**Court**") on August 29, 2025.

**PLEASE TAKE FURTHER NOTICE** that, on May 27, 2026, the Debtors filed a motion (the "**Motion**") with the Court seeking entry of orders, among other things, approving (a) procedures for the solicitation of bids in connection with the Sale Transaction and the Auction(s) (the "**Bidding Procedures**"),[2] (b) the form and manner of notice related to the Sale Transaction, and (c) procedures for the assumption and assignment of contracts and leases in connection with the Sale Transaction.

**PLEASE TAKE FURTHER NOTICE** that, on [●], 2026, the Court entered an order (the "**Bidding Procedures Order**") approving, among other things, the Bidding Procedures, which establish the key dates and times related to the Sale Transaction and the Auction(s).

---

[1] The Debtors' names and last four digits of their respective employer identification numbers are as follows: Spirit Aviation Holdings, Inc. (1797); Spirit Airlines, LLC (7023); Spirit Finance Cayman 1 Ltd. (7020); Spirit Finance Cayman 2 Ltd. (7362); Spirit IP Cayman Ltd. (4732); and Spirit Loyalty Cayman Ltd. (4752). The Debtors' mailing address is 1731 Radiant Drive, Dania Beach, FL 33004.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion or the Bidding Procedures, as applicable.

**PLEASE TAKE FURTHER NOTICE** that, upon the closing of the Sale Transaction, the Debtors intend to assume and assign to the Successful Bidder(s) (whether or not a Stalking Horse Bidder) the Potential Assumed Contracts. A schedule listing the Potential Assumed Contracts (the "**Potential Assumed Contracts Schedule**") is attached hereto and may also be accessed free of charge on the Debtors' case information website located at https://dm.epiq11.com/SpiritAirlines or can be requested by email at SpiritAirlinesInfo@epiqglobal.com. In addition, the "**Cure Costs**," if any, necessary for the assumption and assignment of the Potential Assumed Contracts are set forth on the Potential Assumed Contracts Schedule. *Each Cure Cost listed on the Potential Assumed Contracts Schedule represents all liabilities of any nature of the Debtors arising under an Assumed Contract or Assumed Lease prior to the closing of the Sale Transaction, or other applicable date upon which such assumption and assignment will become effective, whether known or unknown, whether due or to become due, whether accrued, absolute, contingent, or otherwise, so long as such liabilities arise out of or relate to events occurring prior to the closing of the Sale Transaction or other applicable date upon which such assumption and assignment will become effective.*

**YOU ARE RECEIVING THIS NOTICE BECAUSE YOU HAVE BEEN IDENTIFIED AS A COUNTERPARTY TO A POTENTIAL ASSUMED CONTRACT**. Under the terms of the Assumption and Assignment Procedures, (a) at or prior to the closing of the Sale Transaction, a Successful Bidder may elect, in its sole and absolute discretion, (i) to exclude any contract or lease on the Potential Assumed Contracts Schedule as an Assumed Contract or Assumed Lease, as applicable (in which case it shall become an Excluded Contract or Excluded Lease, as applicable), or (ii) to include on the Proposed Assumed Contracts Schedule any contract or lease listed on the Potential Assumed Contracts Schedule, by providing to the Debtors written notice of its election to exclude or include such contract or lease, as applicable, (b) if the Debtors or any Successful Bidder identify during the pendency of the Chapter 11 Cases (before or after the closing of the Sale Transaction) any contract or lease that is not listed on the Proposed Assumed Contracts Schedule, and such contract or lease has not been rejected by the Debtors, the Successful Bidder may in its sole and absolute discretion elect by written notice to the Debtors to treat such contract or lease as an Assumed Contract or Assumed Lease, as applicable, and the Debtors shall seek to assume and assign such Assumed Contract or Assumed Lease in accordance with the Assumption and Assignment Procedures, and (c) following the Auction, the Debtors may, in accordance with the applicable purchase agreement, or as otherwise agreed by the Debtors and the Successful Bidder(s), at any time before the closing of the Sale Transaction, modify the previously stated Cure Costs associated with any Proposed Assumed Contract. The Assumption and Assignment Procedures further provide that any Counterparty whose previously-stated Cure Cost is modified will receive notice thereof and an opportunity to file a Supplemental Assumption and Assignment Objection. **The assumption and assignment of the Contracts and Leases on the Potential Assumed Contracts Schedule is not guaranteed and is subject to approval by the Court and the Debtors' or Successful Bidder's right to remove an Assumed Contract or Assumed Lease from the Potential Assumed Contracts Schedule and Proposed Assumed Contracts Schedule.**

## Obtaining Additional Information

Copies of the Motion and the Bidding Procedures Order, as well as all related exhibits (including the Bidding Procedures) and all other documents filed with the Court, are available free of charge on the Debtors' case information website located at https://dm.epiq11.com/SpiritAirlines or can be requested by email at SpiritAirlinesInfo@epiqglobal.com.

## Filing Assumption and Assignment Objections

Pursuant to the Assumption and Assignment Procedures, objections to the potential assumption and assignment of an Assumed Contract or Assumed Lease (an "**Assumption and Assignment Objection**") with respect to the ability of a Successful Bidder to provide adequate assurance of future performance must (a) be in writing, (b) comply with the Bankruptcy Code, Bankruptcy Rules, and Local Rules, (c) state, with specificity, the legal and factual bases thereof, including, if applicable, the Cure Cost that the Counterparty believes are required to cure defaults under the relevant Assumed Contract or Assumed Lease, (d) by no later than the time of the applicable Sale Objection Deadline (the "**Assumption and Assignment Objection Deadline**"), (i) be filed with the Court and (ii) be served on (1) counsel to the Debtors, Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017, Attn: Marshall S. Huebner, Darren S. Klein, Christopher S. Robertson, and Joseph W. Brown, (2) counsel to the AHC, Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, New York 10036, Attn: Michael S. Stamer and Jason P. Rubin, (3) counsel to the RCF Administrative Agent, Milbank LLP, 55 Hudson Yards, New York, NY 10001-2163, Attn: Andrew Harmeyer and Jason Kestecher, (4) counsel to the Committee, Willkie Farr & Gallagher LLP, 787 7th Avenue, New York, NY 10019, Attn: Brett H. Miller and Todd M. Goren, and (5) the U.S. Trustee, 1 Bowling Green, New York, NY 10014, Attn: Shara Cornell and Mark Bruh (collectively, the "**Objection Notice Parties**").

Pursuant to the Assumption and Assignment Procedures, an Assumption and Assignment Objection relating to a proposed Cure Cost (a "**Cure Objection**") must (a) be in writing, (b) comply with the Bankruptcy Code, Bankruptcy Rules, and Local Rules, (c) state, with specificity, the legal and factual bases thereof, including, if applicable, the Cure Cost that the Counterparty believes are required to cure defaults under the relevant Assumed Contract or Assumed Lease, and (d) by no later than **July 7, 2026 at 4:00 p.m.** (the "**Cure Objection Deadline**"), (i) be filed with the Court and (ii) be served on the Objection Notice Parties.

Pursuant to the Assumption and Assignment Procedures, objections to the potential assumption and assignment of an Assumed Contract or Assumed Lease by a party whose contract or lease is listed on a Supplemental Assumed Contracts Schedule (a "**Supplemental Assumption and Assignment Objection**") with respect to the ability of a Successful Bidder to provide adequate assurance of future performance or relating to the Cure Costs (to the extent modified form the previously-stated amount) must (a) be in writing, (b) comply with the Bankruptcy Code, Bankruptcy Rules, and Local Rules, (c) state, with specificity, the legal and factual bases thereof, and (d) by no later than **14 days from the date of service of such Supplemental Assumption and Assignment Notice,** (i) be filed with the Court and (ii) be served on the Objection Notice Parties.

3

Objections to the Sale Order, the conduct of the Auction, or the Sale Transaction (collectively, the "**Sale Objections**") must (a) be in writing, (b) state, with specificity, the legal and factual bases thereof, (c) comply with the Bankruptcy Code, Bankruptcy Rules, and Local Rules, and (d) by no later (x) **July 13, 2026 at 4:00 p.m. (prevailing Eastern Time)** with respect to Bid Assets other than the Campus Properties, or (y) **July 27, 2026 at 4:00 p.m. (prevailing Eastern Time)** with respect to the Campus Properties (each, a "**Sale Objection Deadline**"), be (i) filed with the Court and (ii) served on the Objection Notice Parties.

## CONSEQUENCES OF FAILING TO TIMELY ASSERT AN OBJECTION

*Any Counterparty to a contract or lease who fails to timely make an objection to the potential assumption and assignment of such contract or lease on or before the Assumption and Assignment Objection Deadline in accordance with the Assumption and Assignment Procedures, the Bidding Procedures Order, and this Notice (or in the case of a Supplemental Assumption and Assignment Objection, by 14 days from the date of service of such Supplemental Assumption and Assignment Notice) shall be deemed to have consented to the assumption and assignment of such contract or lease, including the Cure Costs (if any), set forth on a Potential Assumed Contracts Schedule or a Supplemental Assumed Contracts Schedule, and shall be forever barred from asserting any objection or claims against the Debtors, the Successful Bidder, or the property of any such parties relating to the assumption and assignment of such contract or lease, including asserting additional Cure Costs with respect to such contract or lease. Notwithstanding anything to the contrary in such contract or lease, or any other document, the Cure Costs set forth on a Potential Assumed Contracts Schedule or a Supplemental Assumed Contracts Schedule shall be controlling and will be the only amount necessary to cure outstanding defaults under the applicable Assumed Contract or Assumed Lease under section 365(b) of the Bankruptcy Code arising out of or related to any events occurring prior to the closing of the Sale Transaction or other applicable date upon which such assumption and assignment will become effective, whether known or unknown, whether due or to become due, whether accrued, absolute, contingent, or otherwise, so long as such liabilities arise out of or relate to events occurring prior to the closing of the Sale Transaction or other applicable date upon which such assumption and assignment will become effective.*

### Other Important Dates and Deadlines[3]

In addition to the dates and deadlines described above with respect to filing Assumption and Assignment Objections, Cure Objections, and Supplemental Assumption and Assignment Objections, note the following important dates and deadlines:

1. **Auction(s).**  In the event that the Debtors timely receive more than one Qualified Bid for the same Bid Assets or any overlapping portion thereof, and subject to the satisfaction of any further conditions set forth in the Bidding Procedures, the Debtors intend to conduct one or more Auction(s) for the Bid Assets.  With respect to the Bid Assets other than the Campus Properties, the Auction, if one is held, will commence on **July 9, 2026 at 10 a.m. (prevailing Eastern Time)** at the offices of Davis Polk & Wardwell LLP, 450 Lexington

---

[3] The following dates and deadlines may be extended by the Debtors or the Court pursuant to the terms of the Bidding Procedures and the Bidding Procedures Order.

4

Avenue, New York, New York 10017.  With respect to the Campus Properties, the Auction, if one is held, will commence on **July 22, 2026 at 10:00 a.m. (prevailing Eastern Time)** at the offices of Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017.

2. **Sale Hearing**.  A hearing (the "**Sale Hearing**") to consider the proposed Sale Transaction will be held before the Court on **[●], 2026 at [●].m. (prevailing Eastern Time)**[4] or such other date as determined by the Court.

[*Remainder of page intentionally left blank*]

---

[4] This date remains subject to Court approval.  The Debtors intend to schedule a Sale Hearing with respect to Bid Assets other than the Campus Properties and a subsequent Sale Hearing with respect to the Campus Properties

Dated:    [●], 2026
            New York, New York

                                         DAVIS POLK & WARDWELL LLP

                                         *DRAFT*
                                         450 Lexington Avenue
                                         New York, NY 10017
                                         Tel.: (212) 450-4000
                                         Marshall S. Huebner
                                         Darren S. Klein
                                         Christopher S. Robertson
                                         Joseph W. Brown

                                         *Counsel to the Debtors and Debtors in Possession*

6

## Exhibit 4

**Form of Proposed Assumption and Assignment Notice**

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Tel.: (212) 450-4000
Marshall S. Huebner
Darren S. Klein
Christopher S. Robertson
Joseph W. Brown

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **SPIRIT AVIATION HOLDINGS, INC.,** *et al.*, | **Case No. 25-11897 (SHL)** |
| **Debtors.[1]** | **Jointly Administered** |

**NOTICE OF PROPOSED ASSUMPTION AND ASSIGNMENT OF EXECUTORY
CONTRACTS OR UNEXPIRED LEASES AND CURE AMOUNT**

**PLEASE TAKE NOTICE** that the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the Southern District of New York (the "**Court**") on August 29, 2025.

**PLEASE TAKE FURTHER NOTICE** that, on May 27, 2026, the Debtors filed a motion (the "**Motion**") with the Court seeking entry of orders, among other things, approving (a) procedures for the solicitation of bids in connection with the Sale Transaction and the Auction(s) (the "**Bidding Procedures**"),[2] (b) the form and manner of notice related to the Sale Transaction, and (c) procedures for the assumption and assignment of contracts and leases in connection with the Sale Transaction (the "**Assumption and Assignment Procedures**").

**PLEASE TAKE FURTHER NOTICE** that, on [●], 2026, the Court entered an order (the "**Bidding Procedures Order**") approving, among other things, the Bidding Procedures, which establish the key dates and times related to the Sale Transaction, the Auction(s), and the Assumption and Assignment Procedures.

---

[1] The Debtors' names and last four digits of their respective employer identification numbers are as follows: Spirit Aviation Holdings, Inc. (1797); Spirit Airlines, LLC (7023); Spirit Finance Cayman 1 Ltd. (7020); Spirit Finance Cayman 2 Ltd. (7362); Spirit IP Cayman Ltd. (4732); and Spirit Loyalty Cayman Ltd. (4752). The Debtors' mailing address is 1731 Radiant Drive, Dania Beach, FL 33004.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion or the Bidding Procedures, as applicable.

**PLEASE TAKE FURTHER NOTICE** that, on **July 9, 2026 at 10:00 a.m. (prevailing Eastern Time),** the Debtors held an Auction for the Bid Assets other than the Campus Properties at the offices of Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017.

**PLEASE TAKE FURTHER NOTICE** that, on **July 22, 2026 at 10:00 a.m. (prevailing Eastern Time),** the Debtors held an Auction for the Campus Properties at the offices of Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017.

**PLEASE TAKE FURTHER NOTICE** that, upon the closing of the Sale Transaction, the Debtors intend to assume and assign to the Successful Bidder(s) (whether or not a Stalking Horse Bidder) the Proposed Assumed Contracts. A schedule listing the Proposed Assumed Contracts (the "**Proposed Assumed Contracts Schedule**") is attached hereto and may also be accessed free of charge on the Debtors' case information website located at https://dm.epiq11.com/SpiritAirlines or can be requested by e-mail at SpiritAirlinesInfo@epiqglobal.com. In addition, the "**Cure Costs**," if any, necessary for the assumption and assignment of the Proposed Assumed Contracts are set forth on the Proposed Assumed Contracts Schedule. *Each Cure Cost listed on the Proposed Assumed Contracts Schedule represents all liabilities of any nature of the Debtors arising under an Assumed Contract or Assumed Lease prior to the closing of the Sale Transaction, or other applicable date upon which such assumption and assignment will become effective, whether known or unknown, whether due or to become due, whether accrued, absolute, contingent, or otherwise, so long as such liabilities arise out of or relate to events occurring prior to the closing of the Sale Transaction or other applicable date upon which such assumption and assignment will become effective.*

**YOU ARE RECEIVING THIS NOTICE BECAUSE YOU HAVE BEEN IDENTIFIED AS A COUNTERPARTY TO A PROPOSED ASSUMED CONTRACT**. Under the terms of the Assumption and Assignment Procedures, (a) at or prior to the closing of the Sale Transaction, the Successful Bidder(s) may elect, in its sole and absolute discretion, (i) to exclude any contract or lease on the Proposed Assumed Contracts Schedule as an Assumed Contract or Assumed Lease, as applicable (in which case it shall become an Excluded Contract or Excluded Lease, as applicable), or (ii) to include on the Proposed Assumed Contracts Schedule any contract or lease listed on the Potential Assumed Contracts Schedule by providing to the Debtors written notice of its election to exclude or include such contract or lease, as applicable, (b) if the Debtors or any Successful Bidder identify during the pendency of the Chapter 11 Cases (before or after the closing of the Sale Transaction) any contract or lease that is not listed on the Proposed Assumed Contracts Schedule, and such contract or lease has not been rejected by the Debtors, the Successful Bidder may in its sole and absolute discretion elect by written notice to the Debtors to treat such contract or lease as an Assumed Contract or Assumed Lease, as applicable, and the Debtors shall seek to assume and assign such Assumed Contract or Assumed Lease in accordance with the Assumption and Assignment Procedures, and (c) following the Auction, the Debtors may, in accordance with the applicable purchase agreement, or as otherwise agreed by the Debtors and the Successful Bidder(s), at any time before the closing of the Sale Transaction, modify the previously-stated Cure Costs associated with any Proposed Assumed Contract. The Assumption and Assignment Procedures further provide that any Counterparty whose previously-stated Cure Cost is modified will receive notice thereof and an opportunity to

2

file a Supplemental Assumption and Assignment Objection. **The assumption and assignment of the Contracts and Leases on the Proposed Assumed Contracts Schedule is not guaranteed and is subject to approval by the Court and the Debtors' or Successful Bidder's right to remove an Assumed Contract or Assumed Lease from the Proposed Assumed Contracts Schedule.**

## Obtaining Additional Information

Copies of the Motion and the Bidding Procedures Order, as well as all related exhibits (including the Bidding Procedures) and all other documents filed with the Court, are available free of charge on the Debtors' case information website located at https://dm.epiq11.com/SpiritAirlines or can be requested by e-mail at SpiritAirlinesInfo@epiqglobal.com.

## Filing Assumption and Assignment Objections

Pursuant to the Assumption and Assignment Procedures, objections to the proposed assumption and assignment of an Assumed Contract or Assumed Lease (an "**Assumption and Assignment Objection**") with respect to the ability of the Successful Bidder to provide adequate assurance of future performance must (a) be in writing, (b) comply with the Bankruptcy Code, Bankruptcy Rules, and Local Rules, (c) state, with specificity, the legal and factual bases thereof, including, if applicable, the Cure Costs that the Counterparty believes are required to cure defaults under the relevant Assumed Contract or Assumed Lease, (d) by no later than the same time as the applicable Sale Objection Deadline (the "**Assumption and Assignment Objection Deadline**"), (i) be filed with the Court and (ii) be served on (1) counsel to the Debtors, Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017, Attn: Marshall S. Huebner, Darren S. Klein, Christopher S. Robertson, and Joseph W. Brown, (2) counsel to the AHC, Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, New York 10036, Attn: Michael S. Stamer and Jason P. Rubin, (3) counsel to the RCF Administrative Agent, Milbank LLP, 55 Hudson Yards, New York, NY 10001-2163, Attn: Andrew Harmeyer and Jason Kestecher, (4) counsel to the Committee, Willkie Farr & Gallagher LLP, 787 7th Avenue, New York, NY 10019, Attn: Brett H. Miller and Todd M. Goren, and (5) the U.S. Trustee, 1 Bowling Green, New York, NY 10014, Attn: Shara Cornell and Mark Bruh (collectively, the "**Objection Notice Parties**").

**Sale Objections** (as defined below), if any, must (a) be in writing, (b) state, with specificity, the legal and factual bases thereof, (c) comply with the Bankruptcy Code, Bankruptcy Rules, and Local Rules, and (d) by (x) **July 13, 2026 at 4:00 p.m. (prevailing Eastern Time)** with respect to Bid Assets other than the Campus Properties, or (y) **July 27, 2026 at 4:00 p.m. (prevailing Eastern Time)** with respect to the Campus Properties (each, a "**Sale Objection Deadline**"), (i) be filed with the Court and (ii) be served on the Objection Notice Parties.

## CONSEQUENCES OF FAILING TO TIMELY ASSERT AN OBJECTION

*Any Counterparty to an Assumed Contract or Assumed Lease who fails to timely make an objection to the proposed assumption and assignment of such contract or lease on or before the Assumption and Assignment Objection Deadline in accordance with the Assumption and Assignment Procedures, the Bidding Procedures Order, and this Notice shall be deemed to have consented with respect to the ability of a Successful Bidder to provide adequate assurance of*

*future performance (and the Debtors' proposed Cure Costs, to the extent modified from the previously-stated amount) and shall be forever barred from asserting any objection or claims against the Debtors, the Successful Bidder, or the property of any such parties relating to the assumption and assignment of such contract or lease (including asserting additional Cure Costs with respect to such contract or lease).  Notwithstanding anything to the contrary in such contract or lease, or any other document, the Cure Costs set forth on a Potential Assumed Contracts Schedule, a Proposed Assumed Contracts Schedule, or a Supplemental Assumed Contracts Schedule (as applicable) shall be controlling and will be the only amount necessary to cure outstanding defaults under the applicable Assumed Contract or Assumed Lease under section 365(b) of the Bankruptcy Code arising out of or related to any events occurring prior to the closing of the Sale Transaction or other applicable date upon which such assumption and assignment will become effective, whether known or unknown, whether due or to become due, whether accrued, absolute, contingent, or otherwise, so long as such liabilities arise out of or relate to events occurring prior to the closing of the Sale Transaction or other applicable date upon which such assumption and assignment will become effective.*

**Other Important Dates and Deadlines**[3]

In addition to the dates and deadlines described above with respect to filing Assumption and Assignment Objections, note the following important dates and deadlines:

1. **Auction and Sale Objections Deadline**.  The deadline to file an objection with the Court to the Sale Order, the conduct of the Auction, or the Sale Transaction (including objections relating to the Proposed Assumed Contacts Schedule) (collectively, the "**Sale Objections**") is the **Sale Objection Deadline**.

2. **Sale Hearing**.  A hearing (the "**Sale Hearing**") to consider the proposed Sale Transaction will be held before the Court on **[●, 2026] at [●].m. (prevailing Eastern Time)**[4] or such other date as determined by the Court.

[*Remainder of page intentionally left blank*]

---

[3] The following dates and deadlines may be extended by the Debtors or the Court pursuant to the terms of the Bidding Procedures and the Bidding Procedures Order.

[4] This date remains subject to Court approval.  The Debtors intend to schedule a Sale Hearing with respect to Bid Assets other than the Campus Properties and a subsequent Sale Hearing with respect to the Campus Properties

4

Dated:    [●], 2026
       New York, New York

DAVIS POLK & WARDWELL LLP

*DRAFT*

450 Lexington Avenue
New York, NY 10017
Tel.: (212) 450-4000
Marshall S. Huebner
Darren S. Klein
Christopher S. Robertson
Joseph W. Brown

*Counsel to the Debtors and Debtors in Possession*