**Hearing Date and Time: 11:00 a.m.[1] on July 8, 2026**
**Objection Deadline: 4:00 p.m. on July 1, 2026**

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Tel.: (212) 450-4000
Marshall S. Huebner
Darren S. Klein
Christopher S. Robertson
Joseph W. Brown

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **SPIRIT AVIATION HOLDINGS, INC.,** *et al.*, | **Case No. 25-11897 (SHL)** |
| **Debtors.[2]** | **Jointly Administered** |

### NOTICE OF HEARING ON MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER AUTHORIZING AND APPROVING DEBTOR SPIRIT AIRLINES, LLC'S (I) PERFORMANCE UNDER THE ASSIGNMENT AGREEMENT AND (II) ASSUMPTION AND ASSIGNMENT OF THE USE AND LEASE AGREEMENT

 **PLEASE TAKE NOTICE** that, on June 17, 2026, the above-captioned debtors and debtors in possession (the "**Debtors**") filed the *Motion of the Debtors for Entry of an Order Authorizing and Approving Debtor Spirit Airlines, LLC's (I) Performance Under the Assignment Agreement and (II) Assumption and Assignment of the Use and Lease Agreement* (the "**Motion**").

 **PLEASE TAKE FURTHER NOTICE** that a hearing (the "**Hearing**") has been scheduled for **11:00 a.m. on July 8, 2026**, before the Honorable Sean H. Lane, United States Bankruptcy Judge, in the United States Bankruptcy Court for the Southern District of New York (the "**Court**"), to consider the relief requested in the Motion.

 **PLEASE TAKE FURTHER NOTICE** that the Hearing will be conducted via Zoom for Government.  Parties wishing to appear at or attend the Hearing (whether "live" or "listen only") are required to register their appearance at https://ecf.nysb.uscourts.gov/cgi-

---

[1] All times herein are expressed in prevailing Eastern Time.

[2] The Debtors' names and last four digits of their respective employer identification numbers are as follows: Spirit Aviation Holdings, Inc. (1797); Spirit Airlines, LLC (7023); Spirit Finance Cayman 1 Ltd. (7020); Spirit Finance Cayman 2 Ltd. (7362); Spirit IP Cayman Ltd. (4732); and Spirit Loyalty Cayman Ltd. (4752).  The Debtors' mailing address is 1731 Radiant Drive, Dania Beach, FL 33004.

bin/nysbAppearances.pl by **4:00 p.m. on July 7, 2026**.  Instructions and additional information about the Court's remote attendance procedures can be found at https://www.nysb.uscourts.gov/ecourt-appearances.  The Court will circulate by email the Zoom link to the Hearing to those parties who properly made an electronic appearance prior to the Hearing.

PLEASE TAKE FURTHER NOTICE that the Hearing may be continued or adjourned from time to time by an announcement of the adjourned date or dates at the Hearing or a later hearing or by filing a notice with the Court.

PLEASE TAKE FURTHER NOTICE that responses or objections to the relief requested at the Hearing shall be (a) in writing, in English, and in text-searchable format, (b) filed with the Court electronically, and (c) served on the Debtors and the Notice Parties (as defined in the Motion) so as to be received no later than **4:00 p.m. on July 1, 2026** (the "**Objection Deadline**"), in each case, in accordance with the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**"), the Court's *Order Implementing Certain Notice and Case Management Procedures* [ECF No. 61], and the Court's Chambers' Rules (available at https://www.nysb.uscourts.gov/content/judge-sean-h-lane), to the extent applicable.

PLEASE TAKE FURTHER NOTICE that all objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted upon default.

PLEASE TAKE FURTHER NOTICE that, if no responses or objections are timely filed and served with respect to the Motion, the Debtors may, on or after the Objection Deadline, submit to the Court an order, substantially in the form of the proposed order attached to the Motion, under certification of counsel or certification of no objection, which order may be entered by the Court without further notice or opportunity to be heard.

PLEASE TAKE FURTHER NOTICE that copies of the Motion and any other document filed publicly in the above-captioned proceedings are available free of charge at https://dm.epiq11.com/SpiritAirlines.

Dated:   June 17, 2026
         New York, New York

DAVIS POLK & WARDWELL LLP

By:   */s/ Darren S. Klein*
450 Lexington Avenue
New York, New York 10017
Tel.: (212) 450-4000
Marshall S. Huebner
Darren S. Klein
Christopher S. Robertson
Joseph W. Brown

*Counsel to the Debtors and Debtors in Possession*

-2-

**Hearing Date and Time: 11:00 a.m.[1] on July 8, 2026**
**Objection Deadline: 4:00 p.m. on July 1, 2026**

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Tel.: (212) 450-4000
Marshall S. Huebner
Darren S. Klein
Christopher S. Robertson
Joseph W. Brown

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | **Chapter 11** |
| **SPIRIT AVIATION HOLDINGS, INC.,** *et al.*, | **Case No. 25-11897 (SHL)** |
| Debtors.[2] | **Jointly Administered** |

### MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER AUTHORIZING AND APPROVING DEBTOR SPIRIT AIRLINES, LLC'S (I) PERFORMANCE UNDER THE ASSIGNMENT AGREEMENT AND (II) ASSUMPTION AND ASSIGNMENT OF THE USE AND LEASE AGREEMENT

Spirit Aviation Holdings, Inc. and its subsidiaries (collectively, the "**Debtors**" or "**Spirit**"), each of which is a debtor and debtor in possession in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), hereby file this *Motion of the Debtors for Entry of an Order Authorizing and Approving Debtor Spirit Airlines, LLC's (I) Performance Under the Assignment Agreement and (II) Assumption and Assignment of the Use and Lease Agreement* (this "**Motion**"). This Motion is supported by the *Declaration of Chip Sandifer in Support of the Motion of the Debtors*

---

[1] All times herein are expressed in prevailing Eastern Time.

[2] The Debtors' names and last four digits of their respective employer identification numbers are as follows: Spirit Aviation Holdings, Inc. (1797); Spirit Airlines, LLC (7023); Spirit Finance Cayman 1 Ltd. (7020); Spirit Finance Cayman 2 Ltd. (7362); Spirit IP Cayman Ltd. (4732); and Spirit Loyalty Cayman Ltd. (4752). The Debtors' mailing address is 1731 Radiant Drive, Dania Beach, FL 33004.

*for Entry of an Order Authorizing and Approving the Debtors' (I) Performance Under the Assignment Agreement and (II) Assumption and Assignment of the Use and Lease Agreement*, attached hereto as **Exhibit A** (the "**Sandifer Declaration**") and incorporated herein by reference. In further support of this Motion, the Debtors respectfully state as follows:

### Relief Requested

1.      By this Motion, and pursuant to sections 105, 363, and 365 of title 11 of the United States Code (the "**Bankruptcy Code**"), rules 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), rules 6004-1 and 6006-1 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**"), and the *Guidelines for the Conduct of Asset Sales* established and adopted by this Court on November 19, 2009, pursuant to General Order M-383, and as updated on June 17, 2013 (the "**Sale Guidelines**"), the Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit B** (the "**Proposed Order**"), authorizing, but not directing, Debtor Spirit Airlines, LLC (f/k/a Spirit Airlines, Inc.) (the "**Assignor**") to (a) enter into and perform under that certain Assignment and Assumption Agreement substantially in the form attached to the Proposed Order as **Exhibit 1** (together with any exhibits thereto, the "**Assignment Agreement**"),[3] whereunder the Debtors, in their sound business judgment, have agreed to assign the Use and Lease Agreement, which provides the Debtors with the ability to utilize, without limitation, two (2) Preferential Use Gates, the ticketing lobby, and support space at Hartsfield-Jackson Atlanta International Airport ("**Hartsfield-Jackson**"), to Delta Air Lines, Inc. (the "**Assignee**" or "**Delta**") on the terms set forth in the Assignment Agreement and (b) assume and assign that certain Use and Lease Agreement, dated

---

[3] Capitalized terms used but not otherwise or immediately defined herein shall have the meanings ascribed to them in the Assignment Agreement or in the Use and Lease Agreement, as applicable.

August 30, 2017, as amended and as extended through June 30, 2031 (the "**Use and Lease Agreement**"), between the Assignor and the City of Atlanta (the "**Landlord**").

### Jurisdiction and Venue

2.      The United States Bankruptcy Court for the Southern District of New York (the "**Court**") has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference M-431*, dated January 31, 2012 (Preska, C.J.).

3.      This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b).  The Debtors confirm their consent to the entry of a final order by the Court in connection with this Motion.

4.      Venue of the Chapter 11 Cases and related proceedings is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

### Background

**A.      General Background**

5.      On August 29, 2025 (the "**Petition Date**"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Chapter 11 Cases are being jointly administered, for procedural purposes only, pursuant to Bankruptcy Rule 1015(b), as ordered by the Court [ECF No. 35].

6.      On September 17, 2025, the United States Trustee for the Southern District of New York (the "**U.S. Trustee**") appointed an Official Committee of Unsecured Creditors (the "**Committee**") pursuant to section 1102 of the Bankruptcy Code [ECF No. 117].

7.      Additional information about the events leading up to the Petition Date and the Debtors' businesses, affairs, capital structure, and prepetition indebtedness can be found in the *Declaration of Fred Cromer in Support of the Chapter 11 Proceedings and First Day Pleadings* [ECF No. 19].

8.      On March 30, 2026, the Debtors filed the *First Notice of Assumption (and Assignment) of Certain Executory Contracts and/or Unexpired Leases* [ECF No. 916], which listed the Use and Lease Agreement on the Schedule of Assumed Contracts and Leases appended thereto as Schedule 1.  In accordance with the *Order Approving Motion of Debtors for Entry of an Order (I) Approving Procedures to Assume, Assume and Assign, or Reject Executory Contracts and Unexpired Leases and (II) Granting Related Relief* [ECF No. 338] (the "**Assumption Procedures Order**"), the Assumption Objection Deadline[4] with respect to the Debtors' proposed assumption of the Use and Lease Agreement was initially set for April 13, 2026 at 4:00 P.M. (prevailing Eastern Time).  As disclosed in various notices filed on the docket,[5] and with the consent of the Landlord, the Debtors extended the Assumption Objection Deadline applicable to the Use and Lease Agreement on several occasions.  Pursuant to those notices and the Assumption Procedures Order, the Assumption Objection Deadline is currently set for July 9, 2026 at 4:00 P.M. (prevailing Eastern Time).

9.      On May 8, 2026, the Bankruptcy Court entered the *Order (I) Authorizing the Debtors to Wind Down Operations, (II) Approving the Debtors' Use of Cash Collateral and Amendments to the DIP Credit Agreement and Final DIP Order, (III) Authorizing Modification or Termination of the Debtors' Employee Programs, (IV) Approving Wind-Down Incentive and Retention Plan, (V) Approving Modification of Contract Rejection Procedures, (VI) Approving Non-Fleet Assets Sale Procedures, (VII) Approving Non-Fleet Assets Abandonment Procedures, (VIII) Approving the Use of Certain Third-Party Contractors, (IX) Approving Protections for Certain Persons Implementing the Wind-Down, (X) Enforcing an Administrative Stay, (XI)*

---

[4] As used herein, the term "Assumption Objection Deadline" shall have the meaning ascribed to such term in the Assumption Procedures Order.

[5] *See* ECF No. 953, 983, 1055, 1189, 1198 and 1206.

*Authorizing the Preemption of Applicable Laws and Ordinances for the Debtors to Effectuate the Wind-Down, (XII) Authorizing the Debtors to Take Any and All Actions Necessary to Implement the Wind-Down, and (XIII) Granting Related Relief* [ECF No. 1048] (the "**Wind-Down Order**").

**B.     Assignment of the Use and Lease Agreement**

10.     In August 2017, the Assignor entered into the Use and Lease Agreement, which covers, without limitation, the Preferential Use Gates C4 and C6, the ticketing lobby, and support space at Hartsfield-Jackson.  On December 31, 2025, pursuant to an extension notice from Debtors to the Landlord and the Landlord's City Council's subsequent approval of such extension, the Use and Lease Agreement was extended through June 30, 2031.

11.     By this Motion, the Debtors seek authorization to assume and assign to Delta Air Lines Inc. ("**Delta**") the Use and Lease Agreement in accordance with the terms of the Assignment Agreement.  As consideration, following entry of the Proposed Order and consummation of the assignment of the Use and Lease Agreement, the Assignee will remit to Spirit a one-time $12,000,000 assignment fee (the "**Assignment Fee**").

12.     The Debtors believe that assignment of the Use and Lease Agreement to Delta is both appropriate and in the best interest of the Debtors, their estates, and their creditors.  As described in greater detail in the Sandifer Declaration, the Debtors engaged in a competitive process to assign the entire leasehold, including gates C4 and C6, the ticketing lobby, and support space at Hartsfield-Jackson, and received proposals from multiple bidders.  The Debtors contacted 10 potential transaction parties to determine their interest in acquiring the Use and Lease Agreement.  Ultimately, Delta and one other bidder expressed interest in acquiring the asset.  The Debtors communicated to Delta and the other bidder that May 26, 2026 would be the deadline to submit best and final proposals to the Debtors.  Both Delta and the other bidder submitted bids prior to this deadline.

13.     In parallel, the Debtors conducted discussions with the Landlord around the cure costs required to effectuate an assumption and assignment of the Use and Lease Agreement under section 365 of the Bankruptcy Code.  These discussions proceeded beyond the initial deadline that the Debtors established for submission of bids.  Once the proposed cure amount had been solidified, the Debtors notified the bidders that a new deadline for best and final offers would be established for June 3, 2026.  Both Delta and the other bidder submitted renewed bids by the deadline on June 3, 2026.  However, the bid submitted by Delta was not labeled as a "best and final" bid.  When the advisors to the Debtors informed Delta that they were assuming this bid was best and final, they were informed by Delta's counsel that Delta needed additional time to confirm whether their bid was indeed their "best and final" offer.  Later that evening, Delta submitted an improved bid.

14.     The alternative bidder raised complaints regarding the process.  In addition, Delta's bid was at a value that required a motion and order to effectuate the transaction pursuant to the Wind-Down Order, which meant the Debtors needed to negotiate and evaluate comments on a proposed order with Delta and, potentially, the other bidder.  The Debtors, in consultation with their advisors, therefore determined to give both parties a fair and equal opportunity to provide a best and final bid, and communicated before 5:00 p.m. (prevailing Eastern Time) on June 4, 2026 to each bidder that they would have until 10:00 a.m. (prevailing Eastern Time) on June 8, 2026 to submit a best and final bid and markup of the proposed order.  Both parties were informed that the Debtors would not extend this deadline.

15.     Both Delta and the other bidder did timely submit materially improved best and final bids by the final deadline.  Delta increased its offer to $12,000,000.  The alternative bidder also increased its bid, but it ultimately fell short of the offer submitted by Delta.

16.    The Debtors have determined, in their reasonable business judgment and in consultation with their advisors, that entering into the Assignment Agreement with Delta would yield the highest or otherwise best offer for the Use and Lease Agreement and will provide a greater recovery for their estates than any known or practicably available alternative. To avoid incurring unnecessary expenses of a longer marketing process that is not likely to generate a higher and better offer for the Debtors' leasehold interest under the Use and Lease Agreement and would otherwise force the Debtors to continue to pay ongoing rental costs, the Debtors believe the proposed assignment is appropriate under the circumstances.

17.    Importantly, the Debtors, in consultation with their advisors, believe that the cost and delay of running an auction or public sale process for the Debtors' leasehold interest under the Use and Lease Agreement would outweigh any marginal increase to the assignment proceeds, particularly in light of the benefits to the Debtors, their estates, and all stakeholders if the assignment is approved expeditiously. Indeed, because the Use and Lease Agreement merely provides space to the airline party to it, the "market" for potential transferees of the Use and Lease Agreement is strictly limited to just a few airlines who already operate at Hartsfield-Jackson, who can take on additional capacity at Hartsfield-Jackson, and who can operate out of the terminal where gates C4 and C6 are located. Delta and the other airline that competed in the process are among the few airlines that fit these criteria. The assignment is therefore commercially and operationally logical. Moreover, the price of $12,000,000, which is the product of good-faith, arm's-length negotiations between Spirit and Delta as well as the result of a competitive process between Delta and another airline, is reasonable based on current market conditions. For these and other reasons, the Debtors and their advisors believe that approval and consummation of the

assignment of the Use and Lease Agreement will provide the best and most efficient path to divesting the Use and Lease Agreement for fair consideration.

## Basis for Relief

**A.    The Court Should Authorize the Debtors' Performance Under the Assignment Agreement and Assumption and Assignment of the Use and Lease Agreement**

18.    Section 365 of the Bankruptcy Code allows a debtor in possession (with bankruptcy court approval) to maximize the value of its estates by, among other things, assuming and assigning executory contracts and unexpired leases.  11 U.S.C. § 365(a); *see also NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 521 (1984); *In re Orion Pictures Corp.*, 4 F.3d 1095, 1098 (2d Cir. 1993) ("The purpose behind allowing the assumption of executory contracts is to permit the trustee or debtor-in-possession to use valuable property of the estate.") (citation omitted).  "The bankruptcy court will generally approve [a debtor's choice to assume an executory contract], under the deferential 'business judgment' [test]."  *Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 587 U.S. 370, 374 (2019) (quoting *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984)); *see also In re Genesis Glob. Holdco, LLC*, 660 B.R. 439, 524 (Bankr. S.D.N.Y. 2024) ("Courts are loath to interfere with corporate decisions absent a showing of bad faith, self-interest, or gross negligence.") (citations omitted).  "The 'business judgment' standard is not a strict standard; it requires only a showing that either assumption or rejection of the executory contract will benefit the debtor's estate."  *In re Giftcraft Ltd.*, 672 B.R. 173, 182 (Bankr. S.D.N.Y. 2025) (citations omitted).

19.    Similarly, section 363(b)(1) of the Bankruptcy Code empowers a court to allow a debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  As with section 365, the standard under section 363(b) is one of deferential business judgment.  *See In re Genco Shipping & Trading Ltd.* ("*Genco*"), 509 B.R. 455, 464

(Bankr. S.D.N.Y. 2014) (holding that, under section 363, "as with Section 365, there is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company") (citation omitted).

20.     Accordingly, to approve the use of estate property under section 363(b)(1) of the Bankruptcy Code, courts in the Second Circuit require a debtor to demonstrate a "good business reason to grant such an application" after considering "all salient factors." *In re Lionel Corp. ("Lionel")*, 722 F.2d 1063, 1071 (2d Cir. 1983); *see also In re Motors Liquidation Co.*, 829 F.3d 135, 162 (2d Cir. 2016) (characterizing *Lionel*'s "good business reason" standard as "minimal"); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) ("Section 363(b) gives the court broad flexibility in tailoring its orders to meet a wide variety of circumstances.") (citing *Lionel*). Where a debtor establishes "a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *See In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) (citation omitted). If there is a valid business justification for the use of estate property, there is a "strong presumption" that such usage is being done in good faith and for the best interests of the estate, such that an objecting party has the burden to rebut such presumption. *In re MF Glob. Inc.*, 467 B.R. 726, 730 (Bankr. S.D.N.Y. 2012). "Parties opposing the proposed exercise of a debtor's business judgment have the burden of rebutting the presumption of validity." *In re GOL Linhas Aereas Inteligentes S.A.*, 659 B.R. 641, 655 (Bankr. S.D.N.Y. 2024) (citing *Genco*, 509 B.R. at 464).

21.     Finally, section 105(a) of the Bankruptcy Code grants the Court broad equitable powers to "issue any order, process, or judgment that is necessary or appropriate to carry out the

provisions of this title." 11 U.S.C. § 105(a). Accordingly, the Court has expansive equitable powers to fashion any order or decree that is in the interest of preserving or protecting the value of the Debtors' assets. *See Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365, 375 (2007) (characterizing the bankruptcy court's power under section 105 of the Bankruptcy Code as "broad").

22.     The Debtors respectfully submit that the relief requested herein is fair, equitable, reasonable, and in the best interests of the Debtors' estates and is, thus, justified under sections 363(b) and 365(a) of the Bankruptcy Code. As described above and in the Sandifer Declaration, the Debtors are in the process of winding down operations and maximizing value for the benefit of their stakeholders. Due to the Wind-Down, the Debtors no longer need access to the space provided under the Use and Lease Agreement, and ultimately negotiated (at arm's length, in good faith, and in consultation with their key stakeholders) the terms of the Assignment Agreement. The assignment of the Use and Lease Agreement to Delta will allow the Debtors to dispose of unnecessary assets for $12,000,000 and to stop paying any costs associated with those assets during the ongoing Wind-Down. The Debtors shall pay $721,933.89 to the Landlord (inclusive of its affiliates) or any counterparty in satisfaction of its obligation to cure any defaults under the Use and Lease Agreement in accordance with section 365(b)(1)(A) of the Bankruptcy Code, which amount is agreed as between the Debtors and the Landlord.

23.     Moreover, the Debtors submit that, upon approval of the assumption and assignment of the Use and Lease Agreement, the Debtors should benefit from the protections provided to assignors under section 365(k) of the Bankruptcy Code, which provides that "[a]ssignment by the trustee to an entity of a contract or lease assumed under [section 365 of the

Bankruptcy Code] relieves the trustee and the estate from any liability for any breach of such contract or lease occurring after such assignment." 11 U.S.C. § 363(k).

24.    In light of the foregoing, the Debtors respectfully submit that performance under the Assignment Agreement and assumption and assignment of the Use and Lease Agreement would each (a) be the result of the Debtors exercising their sound business judgment in accordance with their fiduciary duties, (b) be in the best interests of their estates and economic stakeholders, and (c) further serve to maximize value for the benefit of all creditors. Accordingly, the Debtors respectfully request that the Court grant the relief requested herein.

**B.    The Assignment of the Use and Lease Agreement Free and Clear of Liens and Other Interests Is Authorized by Section 363(f) of the Bankruptcy Code**

25.    Section 363(f) of the Bankruptcy Code authorizes a debtor to sell assets free and clear of liens, claims, interests, and encumbrances of an entity other than the estate if:

> (1) applicable nonbankruptcy law permits [the] sale of such property free and clear of such interest; (2) such entity consents; (3) such interest is a lien and the price at which such property is to be sold is greater than the value of all liens on such property; (4) such interest is in bona fide dispute; *or* (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f) (emphasis added). Because these five requirements are listed in the disjunctive, the Debtors only need satisfy one of them for the Use and Lease Agreement to be transferred "free and clear" of liens and interests. *See In re Giftcraft Ltd.*, 672 B.R. at 181 (holding that only one of section 363(f)'s conditions need to be satisfied).

26.    The Court's authority to authorize a transfer free and clear of liens and interests is supplemented by the broad equitable powers granted to it by section 105(a) of the Bankruptcy Code. *See MacArthur Co. v. Johns-Manville Corp.*, 837 F.2d 89, 93 (2d Cir. 1988) ("The authority

-11-

to issue the injunction [under section 105(a)] is thus a corollary to the power to dispose of assets free and clear and to channel claims to the proceeds.").

27.     The Debtors submit that each lien or interest in the Use and Lease Agreement satisfies at least one of the five conditions of section 363(f) of the Bankruptcy Code, and that any such lien or interest will be adequately protected by either being paid in full at the time of closing or by attaching to the Assignment Fee, subject to any claims and defenses the Debtors may possess with respect thereto.

28.     Accordingly, the Debtors request that the Use and Lease Agreement be transferred to the Assignee free and clear of liens, claims, and encumbrances of any kind with any such liens, claims, and encumbrances attaching to the net sale proceeds realized from the assignment transaction.

C.     **Delta is a Good-Faith Purchaser and is Entitled to the Full Protection of Section 363(m) of the Bankruptcy Code**

29.     Section 363(m) of the Bankruptcy Code provides that "[t]he reversal or modification on appeal of an authorization under subsection (b) . . . of this section of a sale . . . of property does not affect the validity of a sale . . . under such authorization to an entity that purchased . . . such property in good faith . . . ." 11 U.S.C. § 363(m). According to the Second Circuit, "good faith of a purchaser is shown by the integrity of his conduct during the course of the sale proceedings. A purchaser's good faith is lost by fraud, collusion between the purchaser and other bidders or the trustee, or any attempt to take grossly unfair advantage of other bidders." *In re Giftcraft Ltd.*, 672 B.R. at 181 (quoting *In re Gucci*, 126 F.3d 380, 390 (2d Cir. 1997)) (citation modified).

30.     As set forth herein and in the Sandifer Declaration, the Assignment Agreement is the result of good-faith, arm's-length negotiations between Spirit and Delta with respect to the Use

and Lease Agreement, which covers the two (2) Preferential Use Gates, the ticketing lobby, and support space and the extension of the term through June 30, 2031. *See In re Giftcraft Ltd.*, 672 B.R. at 185 (approving good-faith protections because "the Debtors represent[ed] that APA was the product of good faith, arm's length negotiations between it and the Purchaser"). Moreover, "[t]he [Assignee] is not an insider of any of the Debtors, and no common identity of incorporators, directors, or controlling stockholders exists between the [Assignee] and the Debtors." *Id.* "Therefore, the [Assignor] has adequately demonstrated that the Court should grant the Motion with the protects [sic] available under section[] 363(m) . . . of the Bankruptcy Code." *Id.*

### **Compliance with Notice Requirements and Waiver of Stay**

31.     To implement successfully the relief sought herein, the Debtors request that the Court find that notice of the Motion is adequate under Bankruptcy Rules 6004(a), 6004(c), and 6006(c), and the corresponding Local Rules (including the Sale Guidelines), under the circumstances. The Debtors also request that, to the extent applicable to the relief requested in this Motion, the Court waive the 14-day stays imposed by Bankruptcy Rules 6004(h) and 6006(d). Fed. R. Bankr. P. 6004(h) ("Unless the court orders otherwise, an order authorizing the use, sale, or lease of property (other than cash collateral) is stayed for 14 days after the order is entered."); Fed. R. Bankr. P. 6006(d) ("Unless the court orders otherwise, an order authorizing the trustee to assign an executory contract or unexpired lease under §365(f) is stayed for 14 days after the order is entered."). As described above, being able to swiftly effectuate the assignment of the Use and Lease Agreement will allow the Debtors to preserve value for their estates and economic stakeholders. Accordingly, the Debtors respectfully submit that ample cause exists to (a) find that the applicable notice requirements have been satisfied and (b) waive any 14-day stay imposed by the Bankruptcy Rules, as the exigent nature of the relief sought herein justifies immediate relief.

-13-

**Disclosures Pursuant to the Sale Guidelines**

32.    Under Spirit's Schedule of Internal Authorizations, the Assignor's governing body did not need to authorize the Assignor's entry into the Assignment Agreement because the contemplated transaction involves receipts of value for the benefit of the Debtors' estates. *See also* Sale Guidelines § I.C.9.

33.    The relief requested hereby includes the following "extraordinary provision":

| Guideline | Provision |
|---|---|
| Relief from Bankruptcy Rule 6004(h) (Sale Guidelines § I.D.16) | The Debtors seek a waiver of the stay imposed by Bankruptcy Rule 6004(h). *Supra* ¶ 30. |

**Notice**

34.    Notice of this Motion will be provided to the following parties (or their counsel) (collectively, the "**Notice Parties**"):  (a) the U.S. Trustee; (b) the Committee; (c) the Ad Hoc Committee of Senior Secured Noteholders; (d) each agent or trustee under the Debtors' secured notes indenture or revolving credit facility; (e) the Landlord; (f) Delta; (g) the Georgia attorney general; (h) each party believed to have an interest in the Use and Lease Agreement; and (i) any other party that is entitled to notice under the Court's *Order Implementing Certain Notice and Case Management Procedures* [ECF No. 61].  A copy of this Motion and any order entered in respect thereto will also be made available on the Debtors' case information website located at https://dm.epiq11.com/SpiritAirlines.  Based on the circumstances surrounding this Motion and the nature of the relief requested herein, the Debtors respectfully submit that no other or further notice is required.

[*Remainder of page intentionally left blank*]

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order,

substantially in the form attached hereto, granting the relief requested herein and such other and

further relief as the Court deems just and proper.

Dated:    June 17, 2026
          New York, New York

DAVIS POLK & WARDWELL LLP

By:    _/s/ Darren S. Klein_
450 Lexington Avenue
New York, New York 10017
Tel.: (212) 450-4000
Marshall S. Huebner
Darren S. Klein
Christopher S. Robertson
Joseph W. Brown

_Counsel to the Debtors and Debtors in Possession_

**Exhibit A**

**Sandifer Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **SPIRIT AVIATION HOLDINGS, INC.,** *et al.*, | **Case No. 25-11897 (SHL)** |
| **Debtors.**[1] | **Jointly Administered** |

### DECLARATION OF CHIP SANDIFER IN SUPPORT OF THE MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER AUTHORIZING AND APPROVING THE DEBTORS' (I) PERFORMANCE UNDER THE ASSIGNMENT AGREEMENT AND (II) ASSUMPTION AND ASSIGNMENT OF THE USE AND LEASE AGREEMENT

**Chip Sandifer declares and says:**

1.    I am the Vice President for Corporate Real Estate & Airport Administration of Spirit Airlines, LLC (formerly Spirit Airlines, Inc.).  Spirit Airlines, LLC ("**Spirit**") and, collectively, with Spirit Aviation Holdings, Inc. and each of its direct and indirect subsidiaries (the "**Debtors**," or the "**Company**"), is each a debtor and debtor in possession in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**").  I have served as Spirit's Vice President for Corporate Real Estate & Airport Administration since 2012 and have more than 28 years of experience in the aviation industry.

2.    As Spirit's Vice President for Corporate Real Estate & Airport Administration, I am generally familiar with its day-to-day operations and network, as well as the circumstances leading up to the Chapter 11 Cases.  I am over the age of 18 and authorized to submit this declaration (the "**Declaration**"), pursuant to rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**"), on behalf of the Debtors in support of the

---

[1]  The Debtors' names and last four digits of their respective employer identification numbers are as follows: Spirit Aviation Holdings, Inc. (1797); Spirit Airlines, LLC (7023); Spirit Finance Cayman 1 Ltd. (7020); Spirit Finance Cayman 2 Ltd. (7362); Spirit IP Cayman Ltd. (4732); and Spirit Loyalty Cayman Ltd. (4752).  The Debtors' mailing address is 1731 Radiant Drive, Dania Beach, FL 33004.

*Motion of the Debtors for Entry of an Order Authorizing and Approving Debtor Spirit Airlines,
LLC's (I) Performance Under the Assignment Agreement and (II) Assumption and Assignment of
the Use and Lease Agreement* (together with the exhibits and other attachments thereto, the
"**Motion**")[2] filed with the Court contemporaneously herewith, which I reviewed or had their
contents explained to me.

3.      Except as otherwise indicated, the facts set forth in this Declaration are based upon
my personal knowledge, my review of the relevant documents, information prepared or provided
to me by employees of and/or professional advisors to the Company, and/or my opinion based
upon experience, knowledge, and information concerning Spirit's operations.  If called upon to
testify, I would testify competently to the facts set forth in this Declaration.

### Assignment of the Use and Lease Agreement

4.      In August 2017, the Assignor entered into the Use and Lease Agreement, which
covers, without limitation, the Preferential Use Gates C4 and C6, the ticketing lobby, and support
space at Hartsfield-Jackson.  On December 31, 2025, pursuant to an extension notice from Debtors
to the Landlord and the Landlord's City Council's subsequent approval of such extension, the term
of the Use and Lease Agreement was extended through June 30, 2031.

5.      By the Motion, the Debtors seek authorization to assume and assign to Delta Air
Lines Inc. ("**Delta**") the Use and Lease Agreement in accordance with the terms of the Assignment
Agreement.  As consideration, following entry of the Proposed Order and consummation of the
assignment of the Use and Lease Agreement, the Assignee will remit to Spirit a one-time
$12,000,000 assignment fee (the "**Assignment Fee**").

---

[2] Capitalized terms used but not immediately or otherwise defined herein shall have the meanings ascribed
to them elsewhere here or in the Motion, as applicable.

6.      The Debtors believe that assignment of the Use and Lease Agreement to Delta is both appropriate and in the best interest of the Debtors, their estates, and their creditors.  The Debtors engaged in a competitive process to assign the entire leasehold, including gates C4 and C6, the ticketing lobby, and support space at Hartsfield-Jackson and received proposals from multiple bidders.  The Debtors contacted 10 potential transaction parties to determine their interest in acquiring the Use and Lease Agreement.  Ultimately, Delta and one other bidder expressed interest in acquiring the asset.  The Debtors communicated to Delta and the other bidder that May 26, 2026 would be the deadline to submit best and final proposals to the Debtors.  Both Delta and the other bidder submitted bids prior to this deadline.

7.      In parallel, the Debtors conducted discussions with the Landlord around the cure costs required to effectuate an assumption and assignment of the Use and Lease Agreement under section 365 of the Bankruptcy Code.  These discussions proceeded beyond the initial deadline that the Debtors established for submission of bids.  Once the proposed cure amount had been solidified, the Debtors notified the bidders that a new deadline for best and final offers would be established for June 3, 2026.  Both Delta and the other bidder submitted renewed bids by the deadline on June 3, 2026.  However, the bid submitted by Delta was not labeled as a "best and final" bid.  When the advisors to the Debtors informed Delta that they were assuming this bid was best and final, they were informed by Delta's counsel that Delta needed additional time to confirm whether their bid was indeed their "best and final" offer.  Later that evening, Delta submitted an improved bid.

8.      The alternative bidders raised complaints regarding the process.  In addition, Delta's bid was at a value that required a motion and order to effectuate the transaction pursuant to the Wind-Down Order, which meant the Debtors needed to negotiate and evaluate comments

3

on a proposed order with Delta and, potentially, the other bidder.  The Debtors, in consultation with their advisors, therefore determined to give both parties a fair and equal opportunity to provide a best and final bid, and communicated before 5:00 p.m. (prevailing Eastern Time) on June 4, 2026 to each bidder that they would have until 10:00 a.m. (prevailing Eastern Time) on June 8, 2026 to submit a best and final bid and markup of the proposed order.  Both parties were informed that the Debtors would not extend this deadline.

9.      Both Delta and the other bidder did timely submit materially improved best and final bids by the final deadline.  Delta increased its offer to $12,000,000.  The alternative bidder also increased its bid, but it ultimately fell short of the offer submitted by Delta.

10.      The Debtors have determined, in their reasonable business judgment and in consultation with their advisors, that entering into the Assignment Agreement with Delta would yield the highest or otherwise best offer for the Use and Lease Agreement and will provide a greater recovery for their estates than any known or practicably available alternative.  To avoid incurring unnecessary expenses of a longer marketing process that is not likely to generate a higher and better offer for the Debtors' leasehold interest under the Use and Lease Agreement and would otherwise force the Debtors to continue to pay ongoing rental costs, the Debtors believe the proposed assignment is appropriate under the circumstances.

11.      Importantly, the Debtors, in consultation with their advisors, believe that the cost and delay of running an auction or public sale process for the Debtors' leasehold interest under the Use and Lease Agreement would outweigh any marginal increase to the assignment proceeds, particularly in light of the benefits to the Debtors, their estates, and all stakeholders if the assignment is approved expeditiously.  Indeed, because the Use and Lease Agreement merely provides space to the airline party to it, the "market" for potential transferees of the Use and Lease

4

Agreement is strictly limited to just a few airlines who already operate at Hartsfield-Jackson, who can take on additional capacity at Hartsfield-Jackson, and who can operate out of the terminal where gates C4 and C6 are located. Delta and the other airline that competed in the process are among the few airlines that fit these criteria. The assignment is therefore commercially and operationally logical. Moreover, the price of $12,000,000, which is the product of good-faith, arm's-length negotiations between Spirit and Delta as well as the result of a competitive process between Delta and another airline, is reasonable based on current market conditions. For these and other reasons, the Debtors and their advisors believe that approval and consummation of the assignment of the Use and Lease Agreement will provide the best and most efficient path to divesting the Use and Lease Agreement for fair consideration.

12.    I understand that the assignment and the Use and Lease Agreement in accordance with the Assignment Agreement is permissible under the terms of the Use and Lease Agreement.

13.    I understand that, under Spirit's Schedule of Internal Authorizations, the Assignor's governing body did not need to authorize the Assignor's entry into the Assignment Agreement because the contemplated transaction involves receipts of value for the benefit of the Debtors' estates.

14.    I believe that that the relief requested herein is fair, equitable, reasonable, and in the best interests of the Debtors' estates and is, thus, justified under sections 363(b) and 365(a) of the Bankruptcy Code. The Debtors are in the process of winding down operations and maximizing value for the benefit of their stakeholders. Due to the Wind-Down, the Debtors no longer need access to the space provided under the Use and Lease Agreement, and ultimately negotiated (at arm's length, in good faith, and in consultation with their key stakeholders) the terms of the Assignment Agreement. The assignment of the Use and Lease Agreement to Delta will allow the

Debtors to dispose of unnecessary assets for $12,000,000 and to stop paying any costs associated with those assets during the ongoing Wind-Down.  The Debtors shall pay $721,933.89 to the Landlord (inclusive of its affiliates) or any counterparty in satisfaction of its obligation to cure any defaults under the Use and Lease Agreement in accordance with section 365(b)(1)(A) of the Bankruptcy Code, which amount is agreed as between the Debtors and the Landlord.

### Conclusion

15.     For the reasons set forth above, I believe that entry into and performance under the Assignment Agreement and assumption and assignment of the Use and Lease Agreement would each (a) be the result of the Debtors exercising their sound business judgment in accordance with their fiduciary duties, (b) be in the best interests of their estates and economic stakeholders, and (c) further serve to maximize value for the benefit of all creditors.

[*Signature page follows*]

6

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true

and correct to the best of my knowledge, information, and belief.

Dated:   June 17, 2026
         New York, New York

                                        */s/ Chip Sandifer*
                                        Chip Sandifer
                                        Vice President for Corporate Real Estate &
                                        Airport Administration
                                        Spirit Airlines, LLC

7

**Exhibit B**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **SPIRIT AVIATION HOLDINGS, INC.**, *et al.*, | **Case No. 25-11897 (SHL)** |
| **Debtors.**[1] | **Jointly Administered** |

<u>**ORDER AUTHORIZING AND APPROVING DEBTOR SPIRIT AIRLINES, LLC'S**
**(I) PERFORMANCE UNDER THE ASSIGNMENT AGREEMENT AND**
**(II) ASSUMPTION AND ASSIGNMENT OF THE USE AND LEASE AGREEMENT**</u>

Upon the motion (the "**Motion**")[2] of Spirit Aviation Holdings, Inc. and its subsidiaries (collectively, the "**Debtors**"), each of which is a debtor and debtor in possession in the Chapter 11 Cases, for entry of an order (this "**Order**"), pursuant to sections 105, 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 6004 and 6006, Local Rules 6004-1 and 6006-1, and the Sale Guidelines, authorizing, but not directing, Debtor Spirit Airlines, LLC (the "**Assignor**") to (a) enter into and perform under that certain Assignment and Assumption Agreement for the Airport Use and Lease Agreement, substantially in the form attached hereto as <u>**Exhibit 1**</u> (together with any exhibits thereto, the "**Assignment Agreement**"), and (b) assume and assign that certain Use and Lease Agreement, dated as of August 30, 2017, as amended and as extended through June 30, 2031 (the "**Use and Lease Agreement**"), between the Assignor and the City of Atlanta (the "**Landlord**"), as more fully described in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference M-431*, dated January 31, 2012 (Preska, C.J.); and the Court having found that

---

[1] The Debtors' names and last four digits of their respective employer identification numbers are as follows: Spirit Aviation Holdings, Inc. (1797); Spirit Airlines, LLC (7023); Spirit Finance Cayman 1 Ltd. (7020); Spirit Finance Cayman 2 Ltd. (7362); Spirit IP Cayman Ltd. (4732); and Spirit Loyalty Cayman Ltd. (4752). The Debtors' mailing address is 1731 Radiant Drive, Dania Beach, FL 33004.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

this is a core proceeding pursuant to 28 U.S.C. § 157; and the Court having found that it may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue of the Chapter 11 Cases and related proceedings being proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to the Notice Parties, such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and the Court having reviewed and considered the Motion and the Sandifer Declaration; and the Court having held a hearing, if necessary, to consider the relief requested in the Motion (the "**Hearing**"); and the Court having determined that the legal and factual bases set forth in the Motion and the Sandifer Declaration, and at the Hearing (if any), establish just cause for the relief granted herein; and the Court having found that the negotiation of and entry into the Assignment Agreement by the Debtors and Delta were non-collusive, in good faith, at arm's length, and substantively and procedurally fair to all parties in interest; and the Court having found that neither the Debtors nor Delta have engaged in any conduct that would cause or permit the transaction to be avoided under section 363(n) of the Bankruptcy Code; and the Court having found that the relief requested in the Motion represents a sound exercise of the Debtors' business judgment, and is in the best interests of the Debtors, their creditors, their estates, and all other parties in interest; and all objections and reservations of rights filed or asserted in respect of the Motion, if any, having been withdrawn, resolved, or overruled with prejudice; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor,

IT IS HEREBY ORDERED THAT:

1.      The Motion is granted as set forth herein.

-2-

2.      The Assignor hereby (a) assumes the Use and Lease Agreement as the same has been amended and as extended to June 30, 2031, and (b) assigns the Use and Lease Agreement, as same has been amended and as extended to June 30, 2031, to Assignee pursuant to the Assignment Agreement, thereby assigning the entirety of the Debtors' leasehold interest under the Use and Lease Agreement to Assignee, which contains, without limitation, Preferential Use Gates C4 and C6, the ticketing lobby, and support space at Hartsfield-Jackson Atlanta International Airport ("**Hartsfield-Jackson**").

3.      The Assignor shall pay or cause to be paid $721,933.89 to the Landlord (inclusive of its affiliates) or any counterparty in satisfaction of its obligation to cure any defaults under the Use and Lease Agreement in accordance with section 365(b)(1)(A) of the Bankruptcy Code.

4.      The Assignor and Assignee are authorized (but not directed) to enter into, consummate, and perform under, the Assignment Agreement, and any other ancillary or implementing agreements or other documents necessary or desirable by Assignor or Assignee, thereby fully assigning the Use and Lease Agreement to Assignee, which contain, without limitation, the Preferential Use Gates C4 and C6, the ticketing lobby, and support space at Hartsfield-Jackson.

5.      Upon entry of this Order and satisfaction of its obligation to cure any defaults as required under paragraph 3 of this Order, the Assignor shall be relieved from any further liability with respect to the Use and Lease Agreement pursuant to section 365(k) of the Bankruptcy Code.

6.      The Debtors, Assignee, the Landlord, and their respective affiliates are authorized (but not directed), as applicable, to execute, deliver, provide, implement, and fully perform any and all obligations, instruments, agreements, and other documents, and to take any and all actions,

necessary or appropriate to implement the Assignment Agreement, without further order of the

Court.

7.      Pursuant to an extension notice from Debtors to the Landlord and the Landlord's

City Council's subsequent approval of such extension, the term of the Use and Lease Agreement

was extended through June 30, 2031.  Upon entry of this Order, and consistent with the Use and

Lease Agreement, the Landlord shall grant to Delta immediate and full access to the premises

leased under the Use and Lease Agreement, including, without limitation, the Preferential Use

Gates C4 and C6, the ticketing lobby, and support space at Hartsfield-Jackson.

8.      The assignment of the Use and Lease Agreement to the Assignee shall constitute a

legal, valid, binding, and effective transfer thereof and, subject to the Assignment Agreement, and

upon the payment of the Assignment Fee, shall be free and clear of all liens, claims, rights,

liabilities, encumbrances, and other interests of any kind or nature whatsoever (regardless of

whether such liens, claims, rights, liabilities, encumbrances, or other interests have been asserted,

filed, or otherwise exist by virtue of any applicable laws) pursuant to section 363(f) of the

Bankruptcy Code, with any such liens, claims, rights, liabilities, encumbrances, and interests of

any kind or nature to be, at the Debtors' sole discretion, either (a) satisfied from the proceeds of

the assignment or (b) transferred and attached to the net proceeds in the same order of priority that

such liens, claims, interests, or encumbrances had on the Use and Lease Agreement.

Notwithstanding the foregoing, any holder of such lien, claim, right, liability, interest, or

encumbrance is authorized and directed to execute and deliver any waivers, releases, or other

related documentation reasonably requested by the Debtors.  If any person or other entity that has

filed statements or other documents or agreements evidencing liens on, or interests in, any of the

Use and Lease Agreement shall not have delivered to the Debtors prior to the date hereof in proper

form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens, and any other documents necessary or desirable for the purpose of documenting the release of liens or interests which such entity has or may assert with respect to the Use and Lease Agreement, the Debtors and the Assignee are hereby authorized to execute and file such statements, instruments, releases, and other documents on behalf of such entity with respect to such Use and Lease Agreement.

9. Each holder of a lien, claim, right, liability, interest, or encumbrance on the Use and Lease Agreement (or any portion thereof) who did not timely and properly object to the Motion (or who ultimately withdrew any such objection) has consented to the assignment of the Use and Lease Agreement. Each holder of a lien, claim, right, liability, interest, or encumbrance on the Use and Lease Agreement (or any portion thereof) who timely and properly objected to the Motion and did not ultimately withdraw such objection could be compelled in a legal or equitable proceeding to accept money satisfaction of such claims pursuant to section 363(f)(5) of the Bankruptcy Code, or fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code, and are therefore adequately protected by having their claims that constitute interests in the Use and Lease Agreement, if any, attach to the assignment proceeds with the same priority that existed immediately prior to the closing.

10. Pursuant to section 363 of the Bankruptcy Code, the Debtors have exercised sound business judgment in connection with the assignment of the Use and Lease Agreement. The Assignment Agreement has been negotiated and executed, and the transactions contemplated thereby, including the assumption and assignment of the Use and Lease Agreement, are and have been undertaken, by the Debtors and Assignee and their respective representatives at arm's length, without collusion and in good faith. The Assignment Fee is fair and reasonable. None of the

Debtors nor Assignee has engaged in any conduct that would cause the assignment of the Use and Lease Agreement to be avoided, or damages or costs to be imposed under section 363(n) of the Bankruptcy Code.  Assignee is a good faith purchaser as provided in section 363(m) of the Bankruptcy Code and the Assignee (and, to the extent applicable, its good-faith transferees) are afforded the protections under section 363(m) of the Bankruptcy Code.  The protections provided by section 363(m) of the Bankruptcy Code are integral to the Assignment Agreement and the Assignee would not consummate the Assignment Agreement without such protections.  The Assignment Agreement is attached hereto as **Exhibit 1**; accordingly, a statement of the kind referenced in Bankruptcy Rule 6004(f)(1)(A) need not be filed.

11.     Any Bankruptcy Rule or Local Rule that might otherwise delay the effectiveness of this Order is hereby waived, and this Order shall be effective and enforceable immediately upon its entry.

12.     The Debtors are authorized to take any action they deem necessary or appropriate to implement and effectuate the terms of, and the relief granted in, this Order without seeking further order of the Court.

13.     The Court retains jurisdiction over any matter arising from or related to the implementation, interpretation, and enforcement of this Order.

Dated:   _____, 2026
         White Plains, New York

_____
THE HONORABLE SEAN H. LANE
UNITED STATES BANKRUPTCY JUDGE

## Exhibit 1

**Assignment Agreement**

## ASSIGNMENT AND ASSUMPTION AGREEMENT

This Assignment and Assumption Agreement ("Assignment"), executed as of June 9, 2026 (the "Execution Date") and effective as of the Effective Date (as defined in Section 1 below), is made by and between **SPIRIT AIRLINES, LLC**, a Delaware limited liability company, formerly known as Spirit Airlines, Inc. ("Assignor"), and Delta Air Lines, Inc. ("Assignee"), a Delaware corporation.

## WITNESSETH:

A. By that certain Airport Use and Lease Agreement attached hereto as Exhibit A (along with any amendments and/or supplements thereto entered prior to the Effective Date, the "Lease"), Assignor leases from the City of Atlanta ("Landlord") certain premises, including, but not limited to two (2) Preferential Use Gates (as defined in the Lease) (the "Premises"), for the applicable lease term ending June 30, 2031 at Hartsfield-Jackson Atlanta International Airport;

B. On August 29, 2025, Assignor and certain of its affiliates filed for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), commencing chapter 11 cases that are jointly administered under Case No. 25-11897 (the "Bankruptcy Cases");

C. Assignor has agreed, under the terms and conditions of this Assignment, and subject to entry of an order by the Bankruptcy Court, to assign, convey, transfer and set over to Assignee all of Assignor's right, title and interest in, to and under the Lease; and

D. Assignee has agreed, under the terms and conditions of this Assignment (including the conditions precedent to the Effective Date set forth in Section 1 below), to assume all covenants and obligations, which are to be paid, performed, fulfilled and complied with by "Airline" under the Lease, arising from and after the Effective Date.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Assignor and Assignee agree as follows:

1.      Effective Date. The "Effective Date" shall mean the first business day on which each of the following conditions has been satisfied (or waived by Assignee, in its sole discretion):

a. This Assignment has been duly executed by each of Assignor and Assignee;

b. The Assignment becomes effective pursuant to paragraph 21 of the Wind-Down Order[1] and the Bankruptcy Court has entered a mutually agreeable order under

---

[1] As used herein, the term "Wind-Down Order" shall mean the *Order (I) Authorizing the Debtors to Wind Down Operations, (II) Approving the Debtors' Use of Cash Collateral and Amendments to the DIP Credit Agreement and Final DIP Order, (III) Authorizing Modification or Termination of the Debtors' Employee Programs, (IV) Approving Wind-Down Retention Plan, (V) Approving Modification of Contract Rejection Procedures, (VI) Approving Non-Fleet Assets Sale Procedures, (VII) Approving Non-Fleet Assets Abandonment Procedures, (VIII) Approving the Use of Certain Third Party Contractors, (IX) Approving Protections for Certain Persons Implementing the Wind-*

ASSIGNMENT AND ASSUMPTION AGREEMENT – Page 1

Sections 363 and 365 of the Bankruptcy Code approving the assumption and assignment of the Lease to Assignee; and

c. This Assignment has not been terminated pursuant to Section 5 and remains in full force and effect.

2. Assignment. Effective as of the Effective Date, (a) Assignor hereby assigns, conveys, transfers and sets over unto Assignee all of Assignor's right, title and interest in, to and under the Lease and to the Premises to Assignee, and (b) Assignor shall have no further right, title or interest in, to or under the Lease or to the Premises.

3. Assumption. Effective as of the Effective Date, Assignee hereby accepts the assignment, conveyance, and transfer of Assignor's right, title and interest in, to, and under the Lease and to the Premises and assumes and agrees to pay all sums, and perform, fulfill, comply with and be bound by all terms, provisions, covenants and obligations, which are to be paid, performed, fulfilled and complied with by "Airline" under the Lease, arising from and after the Effective Date. The Assignor shall pay all cure costs (the "Cure Costs") to Landlord (inclusive of its affiliates) or any counterparty in satisfaction of its obligation to cure any defaults under the Lease in accordance with Section 365(b)(1)(A) of the Bankruptcy Code. Assignee acknowledges that, pursuant to Section 365(k) of the Bankruptcy Code, effective upon the Effective Date (without further documentation or Court approval), the Assignor shall be relieved from any further liability or obligation under the Lease arising or accruing from and after the Effective Date.

4. Assignment Fee. In consideration of the assignment of all of Assignor's right, title and interest in, to and under the Lease with respect to the Premises hereunder, Assignee agrees, subject to the occurrence of the Effective Date, to pay Assignor the amount equal to $12,000,000.00 inclusive of the Cure Costs.

5. Termination by Assignee. This Assignment may be terminated by Assignee at any time prior to the Effective Date upon the occurrence of any of the following:

a. If Assignor has not filed the appropriate Court documentation required to effectuate the Assignment in accordance with paragraph 21 of the Wind-Down Order (the "Court Documentation") in form and substance reasonably acceptable to Assignee by June 17, 2026; or

b. If (i) Assignor withdraws the Court Documentation, (ii) Assignor moves to convert the Bankruptcy Cases to cases under chapter 7 of the Bankruptcy Code or the Bankruptcy Court otherwise orders such conversion, or (iii) after the Execution Date, Assignor moves for appointment of an examiner with expanded powers pursuant to Section 1104 of the Bankruptcy Code or a trustee in the Bankruptcy Cases, or the Bankruptcy Court otherwise orders appointment of such a trustee.

---

*Down, (X) Enforcing an Administrative Stay, (XI) Authorizing the Preemption of Applicable Laws and Ordinances for the Debtors to Effectuate the Wind-Down, (XII) Authorizing the Debtors to Take Any and All Actions Necessary to Implement the Wind-Down, and (XIII) Granting Related Relief entered by the Bankruptcy Court at ECF No. 1048.*

ASSIGNMENT AND ASSUMPTION AGREEMENT – Page 2

In the event this Assignment is terminated by Assignee prior to the Effective Date as provided above, the provisions of this Assignment shall immediately become wholly void and of no further force and effect and there shall be no liability on the part of any party hereto to any other party hereto.

6.      Defined Terms. All defined terms used and not otherwise defined in this Assignment shall have the meanings ascribed to such terms in the Lease.

7.      Binding Effect. This Assignment shall inure to the benefit of and shall be binding upon the parties hereto and their respective successors and assigns.  Nothing in this Assignment shall be construed to give any person (other than Assignor and Assignee and each of their respective successors and assigns, and Landlord to the extent provided in this Assignment) any legal or equitable right, remedy or claim under or in respect of this Assignment.

8.      Governing Law.  This Assignment shall be governed by and construed under the laws of the State of Georgia (the "State") as though the entire contract were performed in the State and without regard to the State's conflict of laws statutes, rules or judicial decisions.  The parties further agree that they consent to the jurisdiction of the courts of the State, the federal courts located within the State, and the Bankruptcy Court and waive any claim of lack of jurisdiction or forum non conveniens. For the avoidance of doubt, the parties consent to the Bankruptcy Court's jurisdiction with respect to any matter arising from or related to the implementation, interpretation, or enforcement of the Court Documentation.

9.      Authorization.  Subject to the Bankruptcy Court's approval of the Assignment in accordance with paragraph 21 of the Wind Down Order, each party signing below warrants and represents that (a) it is duly authorized to execute this Assignment without the necessity of obtaining any other signature of any other officer or partner, (b) the execution of this Assignment has been duly authorized by all appropriate parties on behalf of each party, and (c) this Assignment is fully binding on each party.

10.     Counterparts. The parties agree that this Assignment may be executed by the parties in one or more counterparts and each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

11.     Further Agreements.  If necessary, the parties agree to enter into subsequent agreements to effectuate the rights and obligations contemplated by this Assignment.

12.     Severability.  If any provision of this Assignment shall be held or deemed to be or shall in fact be inoperative or unenforceable as applied in any particular case in any jurisdiction or jurisdictions or in all cases because it conflicts with any other provision or provisions hereof, of the Lease, or of any constitution, statute, ordinance, rule of law or public policy, or for any other reason, such circumstances shall not have the effect of rendering the provision in question inoperative or unenforceable in any other case or circumstances, or of rendering any other provision or provisions herein contained invalid, inoperative, or unenforceable to any extent whatsoever.  The invalidity of any one or more phrases, sentences, clauses or sections contained in this Assignment shall not affect the remaining portions of this Assignment or any part hereof. In the event a court of competent jurisdiction determines that any one or more phrases, sentences,

ASSIGNMENT AND ASSUMPTION AGREEMENT – Page 3

clauses or sections contained in this Assignment is inoperative or unenforceable, the parties agree to make good faith efforts to ensure complete performance as close as possible to the original intent of the parties as memorialized in the Assignment.

[The remainder of this page intentionally left blank.]

IN WITNESS WHEREOF, the parties have executed this Assignment as of the dates set forth below to be effective as of the Effective Date.

**ASSIGNOR:**

**SPIRIT AIRLINES, LLC**,
a Delaware limited liability company, formerly known as Spirit Airlines, Inc.

DocuSigned by:

*Chip Sandifer*
2259DF0930F544C...

By:_____

Name: Chip Sandifer_____

Title: Vice President_____

Date:_____


**ASSIGNEE**:


**DELTA AIR LINES, INC.**
a Delaware corporation.


By:_____

Name:_____

Title:_____

Date:_____


ASSIGNMENT AND ASSUMPTION AGREEMENT

IN WITNESS WHEREOF, the parties have executed this Assignment as of the dates set forth below to be effective as of the Effective Date.

**ASSIGNOR:**

**SPIRIT AIRLINES, LLC**,
a Delaware limited liability company, formerly known as Spirit Airlines, Inc.


By:_____
Name:_____
Title:_____
Date:_____


**ASSIGNEE**:


**DELTA AIR LINES, INC.**
a Delaware corporation.

By:_____
Name: HOLDEN SHANNON
Title: SVP
Date: 06-09-2026


ASSIGNMENT AND ASSUMPTION AGREEMENT

## EXHIBIT A

That certain Airport Use and Lease Agreement, dated as of October 27, 2017, by and between Assignor and Landlord, as extended to June 30, 2026, pursuant to letter from Assignor to Landlord, dated December 21, 2020, and as further extended to June 30, 2031, pursuant to a letter from Assignor to Landlord dated December 31, 2025 and adopted pursuant to a resolution by the Landlord.

[Copy of Lease follows this cover page.]