DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Tel.: (212) 450-4000
Marshall S. Huebner
Darren S. Klein
Christopher S. Robertson
Noah Z. Sosnick

*Counsel to the Debtors and Debtors in Possession*

| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT** | **Re: ECF No. 1209** |
| **SOUTHERN DISTRICT OF NEW YORK** | |

| | |
|---|---|
| In re: | **Chapter 11** |
| **SPIRIT AVIATION HOLDINGS, INC.,** *et al.*, | **Case No. 25-11897 (SHL)** |
| Debtors.[1] | **Jointly Administered** |

### NOTICE OF REVISED PROPOSED ORDER
### AUTHORIZING AND APPROVING DEBTOR SPIRIT AIRLINES, LLC'S (I)
### PERFORMANCE UNDER THE ASSIGNMENT AGREEMENT AND (II) ASSUMPTION
### AND ASSIGNMENT OF THE USE AND LEASE AGREEMENT

**PLEASE TAKE NOTICE** that, on August 29, 2025, Spirit Aviation Holdings, Inc. and its subsidiaries, as debtors and debtors in possession (collectively, the "**Debtors**"), each filed a voluntary petition (collectively, the "**Chapter 11 Cases**") for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of New York.

**PLEASE TAKE FURTHER NOTICE** that on June 17, 2026, the Debtors filed the *Motion of the Debtors for Entry of an Order Authorizing and Approving Debtor Spirit Airlines, LLC's (I) Performance under the Assignment Agreement and (II) Assumption and Assignment of the Use and Lease Agreement* [ECF No. 1209] (the "**Motion**"). A Proposed Order[2] was attached thereto as Exhibit A.

**PLEASE TAKE FURTHER NOTICE** that the Debtors hereby file the revised proposed *Order Authorizing and Approving Debtor Spirit Airlines, LLC's (I) Performance under the*

---

[1] The Debtors' names and last four digits of their respective employer identification numbers are as follows: Spirit Aviation Holdings, Inc. (1797); Spirit Airlines, LLC (7023); Spirit Finance Cayman 1 Ltd. (7020); Spirit Finance Cayman 2 Ltd. (7362); Spirit IP Cayman Ltd. (4732); and Spirit Loyalty Cayman Ltd. (4752). The Debtors' mailing address is 1731 Radiant Drive, Dania Beach, FL 33004.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

*Assignment Agreement and (II) Assumption and Assignment of the Use and Lease Agreement* (the "**Revised Proposed Order**").  The Revised Proposed Order is attached hereto as **Exhibit A.**

        **PLEASE TAKE FURTHER NOTICE** that a redline of the Revised Proposed Order reflecting changes from the Proposed Order is attached hereto as **Exhibit B**.

        **PLEASE TAKE FURTHER NOTICE** that a hearing (the "**Hearing**") has been scheduled for **11:00 a.m.**[3] **on July 8, 2026**, before the Honorable Sean H. Lane, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, White Plains, New York 10601 (the "**Court**"), to consider the relief requested in the Motion.  The Hearing may be continued or adjourned from time to time by an announcement of the adjourned date or dates at the Hearing or a later hearing or by filing a notice with the Court.

        **PLEASE TAKE FURTHER NOTICE** that copies of the Motion and any other document filed publicly in the above-captioned proceedings are available free of charge at https://dm.epiq11.com/SpiritAirlines.

[<em>Remainder of Page Intentionally Left Blank</em>]

---

[3] All times herein and in the Revised Proposed Order are expressed in prevailing Eastern Time.

Dated:   July 2, 2026
       New York, New York

               DAVIS POLK & WARDWELL LLP

               By:   */s/ Noah Z. Sosnick*
               450 Lexington Avenue
               New York, NY 10017
               Tel.: (212) 450-4000
               Marshall S. Huebner
               Darren S. Klein
               Christopher S. Robertson
               Noah Z. Sosnick

               *Counsel to the Debtors and Debtors in Possession*

## Exhibit A

**Revised Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **SPIRIT AVIATION HOLDINGS, INC.,** *et al.*, | **Case No. 25-11897 (SHL)** |
| **Debtors.**[1] | **Jointly Administered** |

<u>ORDER AUTHORIZING AND APPROVING DEBTOR SPIRIT AIRLINES, LLC'S
(I) PERFORMANCE UNDER THE ASSIGNMENT AGREEMENT AND
(II) ASSUMPTION AND ASSIGNMENT OF THE USE AND LEASE AGREEMENT</u>

Upon the motion (the "**Motion**")[2] of Spirit Aviation Holdings, Inc. and its subsidiaries (collectively, the "**Debtors**"), each of which is a debtor and debtor in possession in the Chapter 11 Cases, for entry of an order (this "**Order**"), pursuant to sections 105, 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 6004 and 6006, Local Rules 6004-1 and 6006-1, and the Sale Guidelines, authorizing, but not directing, Debtor Spirit Airlines, LLC (the "**Assignor**") to (a) enter into and perform under that certain Assignment and Assumption Agreement for the Airport Use and Lease Agreement, substantially in the form attached hereto as **<u>Exhibit 1</u>** (together with any exhibits thereto, the "**Assignment Agreement**"), and (b) assume and assign that certain Use and Lease Agreement, dated as of August 30, 2017, as amended and as extended through June 30, 2031 (the "**Use and Lease Agreement**"), between the Assignor and the City of Atlanta (the "**Landlord**"), as more fully described in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference M-431*, dated January 31, 2012 (Preska, C.J.); and the Court having found that

---

[1] The Debtors' names and last four digits of their respective employer identification numbers are as follows: Spirit Aviation Holdings, Inc. (1797); Spirit Airlines, LLC (7023); Spirit Finance Cayman 1 Ltd. (7020); Spirit Finance Cayman 2 Ltd. (7362); Spirit IP Cayman Ltd. (4732); and Spirit Loyalty Cayman Ltd. (4752). The Debtors' mailing address is 1731 Radiant Drive, Dania Beach, FL 33004.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

#102896787v2

this is a core proceeding pursuant to 28 U.S.C. § 157; and the Court having found that it may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue of the Chapter 11 Cases and related proceedings being proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to the Notice Parties, such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and the Court having reviewed and considered the Motion and the Sandifer Declaration; and the Court having held a hearing, if necessary, to consider the relief requested in the Motion (the "**Hearing**"); and the Court having determined that the legal and factual bases set forth in the Motion and the Sandifer Declaration, and at the Hearing (if any), establish just cause for the relief granted herein; and the Court having found that the negotiation of and entry into the Assignment Agreement by the Debtors and Delta were non-collusive, in good faith, at arm's length, and substantively and procedurally fair to all parties in interest; and the Court having found that neither the Debtors nor Delta have engaged in any conduct that would cause or permit the transaction to be avoided under section 363(n) of the Bankruptcy Code; and the Court having found that the relief requested in the Motion represents a sound exercise of the Debtors' business judgment, and is in the best interests of the Debtors, their creditors, their estates, and all other parties in interest; and all objections and reservations of rights filed or asserted in respect of the Motion, if any, having been withdrawn, resolved, or overruled with prejudice; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor,

IT IS HEREBY ORDERED THAT:

1.      The Motion is granted as set forth herein.

-2-

2. The Assignor hereby (a) assumes the Use and Lease Agreement as the same has been amended and as extended to June 30, 2031, and (b) assigns the Use and Lease Agreement, as same has been amended and as extended to June 30, 2031, to Assignee pursuant to the Assignment Agreement, thereby assigning the entirety of the Debtors' leasehold interest under the Use and Lease Agreement to Assignee, which contains, without limitation, Preferential Use Gates C4 and C6, the ticketing lobby, and support space at Hartsfield-Jackson Atlanta International Airport ("**Hartsfield-Jackson**").

3. The Assignor shall pay or cause to be paid $721,933.89 to the Landlord (inclusive of its affiliates) or any counterparty in satisfaction of its obligation to cure any defaults under the Use and Lease Agreement in accordance with section 365(b)(1)(A) of the Bankruptcy Code.

4. The Assignor and Assignee are authorized (but not directed) to enter into, consummate, and perform under, the Assignment Agreement, and any other ancillary or implementing agreements or other documents necessary or desirable by Assignor or Assignee, thereby fully assigning the Use and Lease Agreement to Assignee, which contain, without limitation, the Preferential Use Gates C4 and C6, the ticketing lobby, and support space at Hartsfield-Jackson.

5. Upon entry of this Order and satisfaction of its obligation to cure any defaults as required under paragraph 3 of this Order, the Assignor shall be relieved from any further liability with respect to the Use and Lease Agreement pursuant to section 365(k) of the Bankruptcy Code.

6. The Debtors, Assignee, the Landlord, and their respective affiliates are authorized (but not directed), as applicable, to execute, deliver, provide, implement, and fully perform any and all obligations, instruments, agreements, and other documents, and to take any and all actions,

necessary or appropriate to implement the Assignment Agreement, without further order of the Court.

7.      Pursuant to an extension notice delivered by the Debtors to the Landlord, the term of the Use and Lease Agreement was approved for extension by Atlanta City Council through June 30, 2031. The Landlord and Delta have agreed to execute an amendment memorializing the extension as contemplated in the City's legislation, in accordance with the Landlord's City Council's acknowledgment of this Order.  Upon entry of this Order and receipt by the Landlord of the cure amount, the Landlord shall grant Delta immediate and full access to the Debtor's premises leased under the Use and Lease Agreement, including, without limitation, Preferential Use Gates C4 and C6, the ticketing lobby, premises, furniture, fixtures and equipment remaining in all Debtor premises assigned to Debtor as of June 30, 2026 and related support space at Hartsfield-Jackson.

8.      The assignment of the Use and Lease Agreement to the Assignee shall constitute a legal, valid, binding, and effective transfer thereof and, subject to the Assignment Agreement, and upon the payment of the Assignment Fee, shall be free and clear of all liens, claims, rights, liabilities, encumbrances, and other interests of any kind or nature whatsoever (regardless of whether such liens, claims, rights, liabilities, encumbrances, or other interests have been asserted, filed, or otherwise exist by virtue of any applicable laws) pursuant to section 363(f) of the Bankruptcy Code, with any such liens, claims, rights, liabilities, encumbrances, and interests of any kind or nature to be, at the Debtors' sole discretion, either (a) satisfied from the proceeds of the assignment or (b) transferred and attached to the net proceeds in the same order of priority that such liens, claims, interests, or encumbrances had on the Use and Lease Agreement. Notwithstanding the foregoing, any holder of such lien, claim, right, liability, interest, or encumbrance is authorized and directed to execute and deliver any waivers, releases, or other

-4-

related documentation reasonably requested by the Debtors.  If any person or other entity that has filed statements or other documents or agreements evidencing liens on, or interests in, any of the Use and Lease Agreement shall not have delivered to the Debtors prior to the date hereof in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens, and any other documents necessary or desirable for the purpose of documenting the release of liens or interests which such entity has or may assert with respect to the Use and Lease Agreement, the Debtors and the Assignee are hereby authorized to execute and file such statements, instruments, releases, and other documents on behalf of such entity with respect to such Use and Lease Agreement.

9.    Each holder of a lien, claim, right, liability, interest, or encumbrance on the Use and Lease Agreement (or any portion thereof) who did not timely and properly object to the Motion (or who ultimately withdrew any such objection) has consented to the assignment of the Use and Lease Agreement.  Each holder of a lien, claim, right, liability, interest, or encumbrance on the Use and Lease Agreement (or any portion thereof) who timely and properly objected to the Motion and did not ultimately withdraw such objection could be compelled in a legal or equitable proceeding to accept money satisfaction of such claims pursuant to section 363(f)(5) of the Bankruptcy Code, or fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code, and are therefore adequately protected by having their claims that constitute interests in the Use and Lease Agreement, if any, attach to the assignment proceeds with the same priority that existed immediately prior to the closing.

10.    Pursuant to section 363 of the Bankruptcy Code, the Debtors have exercised sound business judgment in connection with the assignment of the Use and Lease Agreement. The Assignment Agreement has been negotiated and executed, and the transactions contemplated

thereby, including the assumption and assignment of the Use and Lease Agreement, are and have been undertaken, by the Debtors and Assignee and their respective representatives at arm's length, without collusion and in good faith.  The Assignment Fee is fair and reasonable. None of the Debtors nor Assignee has engaged in any conduct that would cause the assignment of the Use and Lease Agreement to be avoided, or damages or costs to be imposed under section 363(n) of the Bankruptcy Code.  Assignee is a good faith purchaser as provided in section 363(m) of the Bankruptcy Code and the Assignee (and, to the extent applicable, its good-faith transferees) are afforded the protections under section 363(m) of the Bankruptcy Code.  The protections provided by section 363(m) of the Bankruptcy Code are integral to the Assignment Agreement and the Assignee would not consummate the Assignment Agreement without such protections.  The Assignment Agreement is attached hereto as **Exhibit 1**; accordingly, a statement of the kind referenced in Bankruptcy Rule 6004(f)(1)(A) need not be filed.

11.     Any Bankruptcy Rule or Local Rule that might otherwise delay the effectiveness of this Order is hereby waived, and this Order shall be effective and enforceable immediately upon its entry.

12.     The Debtors are authorized to take any action they deem necessary or appropriate to implement and effectuate the terms of, and the relief granted in, this Order without seeking further order of the Court.

13.     The Court retains jurisdiction over any matter arising from or related to the implementation, interpretation, and enforcement of this Order.

Dated:     _____, 2026
            White Plains, New York

_____
THE HONORABLE SEAN H. LANE
UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit 1</u>**

**Assignment Agreement**

**ASSIGNMENT AND ASSUMPTION AGREEMENT**

This Assignment and Assumption Agreement ("Assignment"), executed as of June 9, 2026 (the "Execution Date") and effective as of the Effective Date (as defined in Section 1 below), is made by and between **SPIRIT AIRLINES, LLC**, a Delaware limited liability company, formerly known as Spirit Airlines, Inc. ("Assignor"), and Delta Air Lines, Inc. ("Assignee"), a Delaware corporation.

**WITNESSETH:**

A. By that certain Airport Use and Lease Agreement attached hereto as Exhibit A (along with any amendments and/or supplements thereto entered prior to the Effective Date, the "Lease"), Assignor leases from the City of Atlanta ("Landlord") certain premises, including, but not limited to two (2) Preferential Use Gates (as defined in the Lease) (the "Premises"), for the applicable lease term ending June 30, 2031 at Hartsfield-Jackson Atlanta International Airport;

B. On August 29, 2025, Assignor and certain of its affiliates filed for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), commencing chapter 11 cases that are jointly administered under Case No. 25-11897 (the "Bankruptcy Cases");

C. Assignor has agreed, under the terms and conditions of this Assignment, and subject to entry of an order by the Bankruptcy Court, to assign, convey, transfer and set over to Assignee all of Assignor's right, title and interest in, to and under the Lease; and

D. Assignee has agreed, under the terms and conditions of this Assignment (including the conditions precedent to the Effective Date set forth in Section 1 below), to assume all covenants and obligations, which are to be paid, performed, fulfilled and complied with by "Airline" under the Lease, arising from and after the Effective Date.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Assignor and Assignee agree as follows:

1.     Effective Date.  The "Effective Date" shall mean the first business day on which each of the following conditions has been satisfied (or waived by Assignee, in its sole discretion):

a.   This Assignment has been duly executed by each of Assignor and Assignee;

b.   The Assignment becomes effective pursuant to paragraph 21 of the Wind-Down Order[1] and the Bankruptcy Court has entered a mutually agreeable order under

---

[1] As used herein, the term "Wind-Down Order" shall mean the *Order (I) Authorizing the Debtors to Wind Down Operations, (II) Approving the Debtors' Use of Cash Collateral and Amendments to the DIP Credit Agreement and Final DIP Order, (III) Authorizing Modification or Termination of the Debtors' Employee Programs, (IV) Approving Wind-Down Retention Plan, (V) Approving Modification of Contract Rejection Procedures, (VI) Approving Non-Fleet Assets Sale Procedures, (VII) Approving Non-Fleet Assets Abandonment Procedures, (VIII) Approving the Use of Certain Third Party Contractors, (IX) Approving Protections for Certain Persons Implementing the Wind-*

ASSIGNMENT AND ASSUMPTION AGREEMENT – Page 1

Sections 363 and 365 of the Bankruptcy Code approving the assumption and assignment of the Lease to Assignee; and

c. This Assignment has not been terminated pursuant to Section 5 and remains in full force and effect.

2.      Assignment.  Effective as of the Effective Date, (a) Assignor hereby assigns, conveys, transfers and sets over unto Assignee all of Assignor's right, title and interest in, to and under the Lease and to the Premises to Assignee, and (b) Assignor shall have no further right, title or interest in, to or under the Lease or to the Premises.

3.      Assumption.  Effective as of the Effective Date, Assignee hereby accepts the assignment, conveyance, and transfer of Assignor's right, title and interest in, to, and under the Lease and to the Premises and assumes and agrees to pay all sums, and perform, fulfill, comply with and be bound by all terms, provisions, covenants and obligations, which are to be paid, performed, fulfilled and complied with by "Airline" under the Lease, arising from and after the Effective Date.  The Assignor shall pay all cure costs (the "Cure Costs") to Landlord (inclusive of its affiliates) or any counterparty in satisfaction of its obligation to cure any defaults under the Lease in accordance with Section 365(b)(1)(A) of the Bankruptcy Code.  Assignee acknowledges that, pursuant to Section 365(k) of the Bankruptcy Code, effective upon the Effective Date (without further documentation or Court approval), the Assignor shall be relieved from any further liability or obligation under the Lease arising or accruing from and after the Effective Date.

4.      Assignment Fee.  In consideration of the assignment of all of Assignor's right, title and interest in, to and under the Lease with respect to the Premises hereunder, Assignee agrees, subject to the occurrence of the Effective Date, to pay Assignor the amount equal to $12,000,000.00 inclusive of the Cure Costs.

5.      Termination by Assignee.  This Assignment may be terminated by Assignee at any time prior to the Effective Date upon the occurrence of any of the following:

a. If Assignor has not filed the appropriate Court documentation required to effectuate the Assignment in accordance with paragraph 21 of the Wind-Down Order (the "Court Documentation") in form and substance reasonably acceptable to Assignee by June 17, 2026; or

b. If (i) Assignor withdraws the Court Documentation, (ii) Assignor moves to convert the Bankruptcy Cases to cases under chapter 7 of the Bankruptcy Code or the Bankruptcy Court otherwise orders such conversion, or (iii) after the Execution Date, Assignor moves for appointment of an examiner with expanded powers pursuant to Section 1104 of the Bankruptcy Code or a trustee in the Bankruptcy Cases, or the Bankruptcy Court otherwise orders appointment of such a trustee.

---

*Down, (X) Enforcing an Administrative Stay, (XI) Authorizing the Preemption of Applicable Laws and Ordinances for the Debtors to Effectuate the Wind-Down, (XII) Authorizing the Debtors to Take Any and All Actions Necessary to Implement the Wind-Down, and (XIII) Granting Related Relief* entered by the Bankruptcy Court at ECF No. 1048.

ASSIGNMENT AND ASSUMPTION AGREEMENT – Page 2

In the event this Assignment is terminated by Assignee prior to the Effective Date as provided above, the provisions of this Assignment shall immediately become wholly void and of no further force and effect and there shall be no liability on the part of any party hereto to any other party hereto.

6.    Defined Terms. All defined terms used and not otherwise defined in this Assignment shall have the meanings ascribed to such terms in the Lease.

7.    Binding Effect. This Assignment shall inure to the benefit of and shall be binding upon the parties hereto and their respective successors and assigns. Nothing in this Assignment shall be construed to give any person (other than Assignor and Assignee and each of their respective successors and assigns, and Landlord to the extent provided in this Assignment) any legal or equitable right, remedy or claim under or in respect of this Assignment.

8.    Governing Law. This Assignment shall be governed by and construed under the laws of the State of Georgia (the "State") as though the entire contract were performed in the State and without regard to the State's conflict of laws statutes, rules or judicial decisions. The parties further agree that they consent to the jurisdiction of the courts of the State, the federal courts located within the State, and the Bankruptcy Court and waive any claim of lack of jurisdiction or forum non conveniens. For the avoidance of doubt, the parties consent to the Bankruptcy Court's jurisdiction with respect to any matter arising from or related to the implementation, interpretation, or enforcement of the Court Documentation.

9.    Authorization. Subject to the Bankruptcy Court's approval of the Assignment in accordance with paragraph 21 of the Wind Down Order, each party signing below warrants and represents that (a) it is duly authorized to execute this Assignment without the necessity of obtaining any other signature of any other officer or partner, (b) the execution of this Assignment has been duly authorized by all appropriate parties on behalf of each party, and (c) this Assignment is fully binding on each party.

10.    Counterparts. The parties agree that this Assignment may be executed by the parties in one or more counterparts and each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

11.    Further Agreements. If necessary, the parties agree to enter into subsequent agreements to effectuate the rights and obligations contemplated by this Assignment.

12.    Severability. If any provision of this Assignment shall be held or deemed to be or shall in fact be inoperative or unenforceable as applied in any particular case in any jurisdiction or jurisdictions or in all cases because it conflicts with any other provision or provisions hereof, of the Lease, or of any constitution, statute, ordinance, rule of law or public policy, or for any other reason, such circumstances shall not have the effect of rendering the provision in question inoperative or unenforceable in any other case or circumstances, or of rendering any other provision or provisions herein contained invalid, inoperative, or unenforceable to any extent whatsoever. The invalidity of any one or more phrases, sentences, clauses or sections contained in this Assignment shall not affect the remaining portions of this Assignment or any part hereof. In the event a court of competent jurisdiction determines that any one or more phrases, sentences,

ASSIGNMENT AND ASSUMPTION AGREEMENT – Page 3

clauses or sections contained in this Assignment is inoperative or unenforceable, the parties agree to make good faith efforts to ensure complete performance as close as possible to the original intent of the parties as memorialized in the Assignment.

[The remainder of this page intentionally left blank.]

IN WITNESS WHEREOF, the parties have executed this Assignment as of the dates set forth below to be effective as of the Effective Date.

**ASSIGNOR:**

**SPIRIT AIRLINES, LLC**,
a Delaware limited liability company, formerly known as Spirit Airlines, Inc.

DocuSigned by:

*Chip Sandifer*

By: ⎯2259DF0930F544C..._____

Name: Chip Sandifer_____

Title:   Vice President_____

Date:_____

**ASSIGNEE**:

**DELTA AIR LINES, INC.**
a Delaware corporation.

By:_____

Name:_____

Title:_____

Date:_____

ASSIGNMENT AND ASSUMPTION AGREEMENT

IN WITNESS WHEREOF, the parties have executed this Assignment as of the dates set forth below to be effective as of the Effective Date.

**ASSIGNOR:**

**SPIRIT AIRLINES, LLC**,
a Delaware limited liability company, formerly known as Spirit Airlines, Inc.


By:_____
Name:_____
Title:_____
Date:_____


**ASSIGNEE**:


**DELTA AIR LINES, INC.**
a Delaware corporation.

By:_____
Name: HOLDEN SHANNON
Title: SVP
Date: 06-09-2026

ASSIGNMENT AND ASSUMPTION AGREEMENT

## **EXHIBIT A**

That certain Airport Use and Lease Agreement, dated as of October 27, 2017, by and between Assignor and Landlord, as extended to June 30, 2026, pursuant to letter from Assignor to Landlord, dated December 21, 2020, and as further extended to June 30, 2031, pursuant to a letter from Assignor to Landlord dated December 31, 2025 and adopted pursuant to a resolution by the Landlord.

[Copy of Lease follows this cover page.]

ASSIGNMENT AND ASSUMPTION AGREEMENT

**Exhibit B**

**Revised Proposed Order (Redline)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **SPIRIT AVIATION HOLDINGS, INC.,** *et al.*, | **Case No. 25-11897 (SHL)** |
| **Debtors.**[1] | **Jointly Administered** |

**ORDER AUTHORIZING AND APPROVING DEBTOR SPIRIT AIRLINES, LLC'S
(I) PERFORMANCE UNDER THE ASSIGNMENT AGREEMENT AND
(II) ASSUMPTION AND ASSIGNMENT OF THE USE AND LEASE AGREEMENT**

Upon the motion (the "**Motion**")[2] of Spirit Aviation Holdings, Inc. and its subsidiaries (collectively, the "**Debtors**"), each of which is a debtor and debtor in possession in the Chapter 11 Cases, for entry of an order (this "**Order**"), pursuant to sections 105, 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 6004 and 6006, Local Rules 6004-1 and 6006-1, and the Sale Guidelines, authorizing, but not directing, Debtor Spirit Airlines, LLC (the "**Assignor**") to (a) enter into and perform under that certain Assignment and Assumption Agreement for the Airport Use and Lease Agreement, substantially in the form attached hereto as **Exhibit 1** (together with any exhibits thereto, the "**Assignment Agreement**"), and (b) assume and assign that certain Use and Lease Agreement, dated as of August 30, 2017, as amended and as extended through June 30, 2031 (the "**Use and Lease Agreement**"), between the Assignor and the City of Atlanta (the "**Landlord**"), as more fully described in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference M-431*, dated January 31, 2012 (Preska, C.J.);

---

[1]   The Debtors' names and last four digits of their respective employer identification numbers are as follows: Spirit Aviation Holdings, Inc. (1797); Spirit Airlines, LLC (7023); Spirit Finance Cayman 1 Ltd. (7020); Spirit Finance Cayman 2 Ltd. (7362); Spirit IP Cayman Ltd. (4732); and Spirit Loyalty Cayman Ltd. (4752).  The Debtors' mailing address is 1731 Radiant Drive, Dania Beach, FL 33004.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

#102896787v2

and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157; and the

Court having found that it may enter a final order consistent with Article III of the United States

Constitution; and the Court having found that venue of the Chapter 11 Cases and related

proceedings being proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409; and due and

proper notice of the Motion having been provided to the Notice Parties, such notice having been

adequate and appropriate under the circumstances, and it appearing that no other or further

notice need be provided; and the Court having reviewed and considered the Motion and the

Sandifer Declaration; and the Court having held a hearing, if necessary, to consider the relief

requested in the Motion (the "**Hearing**"); and the Court having determined that the legal and

factual bases set forth in the Motion and the Sandifer Declaration, and at the Hearing (if any),

establish just cause for the relief granted herein; and the Court having found that the negotiation

of and entry into the Assignment Agreement by the Debtors and Delta were non-collusive, in

good faith, at arm's length, and substantively and procedurally fair to all parties in interest; and

the Court having found that neither the Debtors nor Delta have engaged in any conduct that

would cause or permit the transaction to be avoided under section 363(n) of the Bankruptcy

Code; and the Court having found that the relief requested in the Motion represents a sound

exercise of the Debtors' business judgment, and is in the best interests of the Debtors, their

creditors, their estates, and all other parties in interest; and all objections and reservations of

rights filed or asserted in respect of the Motion, if any, having been withdrawn, resolved, or

overruled with prejudice; and upon all of the proceedings had before the Court; and after due

deliberation and sufficient cause appearing therefor,

IT IS HEREBY ORDERED THAT:

    1.      The Motion is granted as set forth herein.

2.      The Assignor hereby (a) assumes the Use and Lease Agreement as the same has been amended and as extended to June 30, 2031, and (b) assigns the Use and Lease Agreement, as same has been amended and as extended to June 30, 2031, to Assignee pursuant to the Assignment Agreement, thereby assigning the entirety of the Debtors' leasehold interest under the Use and Lease Agreement to Assignee, which contains, without limitation, Preferential Use Gates C4 and C6, the ticketing lobby, and support space at Hartsfield-Jackson Atlanta International Airport ("**Hartsfield-Jackson**").

3.      The Assignor shall pay or cause to be paid $721,933.89 to the Landlord (inclusive of its affiliates) or any counterparty in satisfaction of its obligation to cure any defaults under the Use and Lease Agreement in accordance with section 365(b)(1)(A) of the Bankruptcy Code.

4.      The Assignor and Assignee are authorized (but not directed) to enter into, consummate, and perform under, the Assignment Agreement, and any other ancillary or implementing agreements or other documents necessary or desirable by Assignor or Assignee, thereby fully assigning the Use and Lease Agreement to Assignee, which contain, without limitation, the Preferential Use Gates C4 and C6, the ticketing lobby, and support space at Hartsfield-Jackson.

5.      Upon entry of this Order and satisfaction of its obligation to cure any defaults as required under paragraph 3 of this Order, the Assignor shall be relieved from any further liability with respect to the Use and Lease Agreement pursuant to section 365(k) of the Bankruptcy Code.

6.      The Debtors, Assignee, the Landlord, and their respective affiliates are authorized (but not directed), as applicable, to execute, deliver, provide, implement, and fully perform any and all obligations, instruments, agreements, and other documents, and to take any and all

-3-

actions, necessary or appropriate to implement the Assignment Agreement, without further order of the Court.

7.      Pursuant to an extension notice ~~from~~delivered by the Debtors to the Landlord ~~and the Landlord's City Council's subsequent approval of such extension~~, the term of the Use and Lease Agreement was ~~extended~~approved for extension by Atlanta City Council through June 30, 2031. The Landlord and Delta have agreed to execute an amendment memorializing the extension as contemplated in the City's legislation, in accordance with the Landlord's City Council's acknowledgment of this Order. Upon entry of this Order~~,~~ and ~~consistent with the Use and Lease Agreement~~receipt by the Landlord of the cure amount, the Landlord shall grant ~~to~~ Delta immediate and full access to the Debtor's premises leased under the Use and Lease Agreement, including, without limitation, ~~the~~ Preferential Use Gates C4 and C6, the ticketing lobby, ~~and~~premises, furniture, fixtures and equipment remaining in all Debtor premises assigned to Debtor as of June 30, 2026 and related support space at Hartsfield-Jackson.

8.      The assignment of the Use and Lease Agreement to the Assignee shall constitute a legal, valid, binding, and effective transfer thereof and, subject to the Assignment Agreement, and upon the payment of the Assignment Fee, shall be free and clear of all liens, claims, rights, liabilities, encumbrances, and other interests of any kind or nature whatsoever (regardless of whether such liens, claims, rights, liabilities, encumbrances, or other interests have been asserted, filed, or otherwise exist by virtue of any applicable laws) pursuant to section 363(f) of the Bankruptcy Code, with any such liens, claims, rights, liabilities, encumbrances, and interests of any kind or nature to be, at the Debtors' sole discretion, either (a) satisfied from the proceeds of the assignment or (b) transferred and attached to the net proceeds in the same order of priority that such liens, claims, interests, or encumbrances had on the Use and Lease Agreement.

Notwithstanding the foregoing, any holder of such lien, claim, right, liability, interest, or encumbrance is authorized and directed to execute and deliver any waivers, releases, or other related documentation reasonably requested by the Debtors.  If any person or other entity that has filed statements or other documents or agreements evidencing liens on, or interests in, any of the Use and Lease Agreement shall not have delivered to the Debtors prior to the date hereof in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens, and any other documents necessary or desirable for the purpose of documenting the release of liens or interests which such entity has or may assert with respect to the Use and Lease Agreement, the Debtors and the Assignee are hereby authorized to execute and file such statements, instruments, releases, and other documents on behalf of such entity with respect to such Use and Lease Agreement.

9.      Each holder of a lien, claim, right, liability, interest, or encumbrance on the Use and Lease Agreement (or any portion thereof) who did not timely and properly object to the Motion (or who ultimately withdrew any such objection) has consented to the assignment of the Use and Lease Agreement.  Each holder of a lien, claim, right, liability, interest, or encumbrance on the Use and Lease Agreement (or any portion thereof) who timely and properly objected to the Motion and did not ultimately withdraw such objection could be compelled in a legal or equitable proceeding to accept money satisfaction of such claims pursuant to section 363(f)(5) of the Bankruptcy Code, or fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code, and are therefore adequately protected by having their claims that constitute interests in the Use and Lease Agreement, if any, attach to the assignment proceeds with the same priority that existed immediately prior to the closing.

10.     Pursuant to section 363 of the Bankruptcy Code, the Debtors have exercised sound business judgment in connection with the assignment of the Use and Lease Agreement. The Assignment Agreement has been negotiated and executed, and the transactions contemplated thereby, including the assumption and assignment of the Use and Lease Agreement, are and have been undertaken, by the Debtors and Assignee and their respective representatives at arm's length, without collusion and in good faith.  The Assignment Fee is fair and reasonable. None of the Debtors nor Assignee has engaged in any conduct that would cause the assignment of the Use and Lease Agreement to be avoided, or damages or costs to be imposed under section 363(n) of the Bankruptcy Code.  Assignee is a good faith purchaser as provided in section 363(m) of the Bankruptcy Code and the Assignee (and, to the extent applicable, its good-faith transferees) are afforded the protections under section 363(m) of the Bankruptcy Code.  The protections provided by section 363(m) of the Bankruptcy Code are integral to the Assignment Agreement and the Assignee would not consummate the Assignment Agreement without such protections.  The Assignment Agreement is attached hereto as **Exhibit 1**; accordingly, a statement of the kind referenced in Bankruptcy Rule 6004(f)(1)(A) need not be filed.

11.     Any Bankruptcy Rule or Local Rule that might otherwise delay the effectiveness of this Order is hereby waived, and this Order shall be effective and enforceable immediately upon its entry.

12.     The Debtors are authorized to take any action they deem necessary or appropriate to implement and effectuate the terms of, and the relief granted in, this Order without seeking further order of the Court.

13.     The Court retains jurisdiction over any matter arising from or related to the implementation, interpretation, and enforcement of this Order.


Dated: _____, 2026
White Plains, New York

_____
THE HONORABLE SEAN H. LANE
UNITED STATES BANKRUPTCY JUDGE

## Exhibit 1

**Assignment Agreement**

## ASSIGNMENT AND ASSUMPTION AGREEMENT

This Assignment and Assumption Agreement ("Assignment"), executed as of June 9, 2026 (the "Execution Date") and effective as of the Effective Date (as defined in Section 1 below), is made by and between **SPIRIT AIRLINES, LLC**, a Delaware limited liability company, formerly known as Spirit Airlines, Inc. ("Assignor"), and Delta Air Lines, Inc. ("Assignee"), a Delaware corporation.

## WITNESSETH:

A. By that certain Airport Use and Lease Agreement attached hereto as Exhibit A (along with any amendments and/or supplements thereto entered prior to the Effective Date, the "Lease"), Assignor leases from the City of Atlanta ("Landlord") certain premises, including, but not limited to two (2) Preferential Use Gates (as defined in the Lease) (the "Premises"), for the applicable lease term ending June 30, 2031 at Hartsfield-Jackson Atlanta International Airport;

B. On August 29, 2025, Assignor and certain of its affiliates filed for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), commencing chapter 11 cases that are jointly administered under Case No. 25-11897 (the "Bankruptcy Cases");

C. Assignor has agreed, under the terms and conditions of this Assignment, and subject to entry of an order by the Bankruptcy Court, to assign, convey, transfer and set over to Assignee all of Assignor's right, title and interest in, to and under the Lease; and

D. Assignee has agreed, under the terms and conditions of this Assignment (including the conditions precedent to the Effective Date set forth in Section 1 below), to assume all covenants and obligations, which are to be paid, performed, fulfilled and complied with by "Airline" under the Lease, arising from and after the Effective Date.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Assignor and Assignee agree as follows:

1.      Effective Date. The "Effective Date" shall mean the first business day on which each of the following conditions has been satisfied (or waived by Assignee, in its sole discretion):

a. This Assignment has been duly executed by each of Assignor and Assignee;

b. The Assignment becomes effective pursuant to paragraph 21 of the Wind-Down Order[1] and the Bankruptcy Court has entered a mutually agreeable order under

---

[1] As used herein, the term "Wind-Down Order" shall mean the *Order (I) Authorizing the Debtors to Wind Down Operations, (II) Approving the Debtors' Use of Cash Collateral and Amendments to the DIP Credit Agreement and Final DIP Order, (III) Authorizing Modification or Termination of the Debtors' Employee Programs, (IV) Approving Wind-Down Retention Plan, (V) Approving Modification of Contract Rejection Procedures, (VI) Approving Non-Fleet Assets Sale Procedures, (VII) Approving Non-Fleet Assets Abandonment Procedures, (VIII) Approving the Use of Certain Third Party Contractors, (IX) Approving Protections for Certain Persons Implementing the Wind-*

ASSIGNMENT AND ASSUMPTION AGREEMENT – Page 1

Sections 363 and 365 of the Bankruptcy Code approving the assumption and assignment of the Lease to Assignee; and

c.   This Assignment has not been terminated pursuant to Section 5 and remains in full force and effect.

2.      Assignment.   Effective as of the Effective Date, (a) Assignor hereby assigns, conveys, transfers and sets over unto Assignee all of Assignor's right, title and interest in, to and under the Lease and to the Premises to Assignee, and (b) Assignor shall have no further right, title or interest in, to or under the Lease or to the Premises.

3.      Assumption.   Effective as of the Effective Date, Assignee hereby accepts the assignment, conveyance, and transfer of Assignor's right, title and interest in, to, and under the Lease and to the Premises and assumes and agrees to pay all sums, and perform, fulfill, comply with and be bound by all terms, provisions, covenants and obligations, which are to be paid, performed, fulfilled and complied with by "Airline" under the Lease, arising from and after the Effective Date.  The Assignor shall pay all cure costs (the "Cure Costs") to Landlord (inclusive of its affiliates) or any counterparty in satisfaction of its obligation to cure any defaults under the Lease in accordance with Section 365(b)(1)(A) of the Bankruptcy Code.  Assignee acknowledges that, pursuant to Section 365(k) of the Bankruptcy Code, effective upon the Effective Date (without further documentation or Court approval), the Assignor shall be relieved from any further liability or obligation under the Lease arising or accruing from and after the Effective Date.

4.      Assignment Fee.   In consideration of the assignment of all of Assignor's right, title and interest in, to and under the Lease with respect to the Premises hereunder, Assignee agrees, subject to the occurrence of the Effective Date, to pay Assignor the amount equal to $12,000,000.00 inclusive of the Cure Costs.

5.      Termination by Assignee.   This Assignment may be terminated by Assignee at any time prior to the Effective Date upon the occurrence of any of the following:

a.   If Assignor has not filed the appropriate Court documentation required to effectuate the Assignment in accordance with paragraph 21 of the Wind-Down Order (the "Court Documentation") in form and substance reasonably acceptable to Assignee by June 17, 2026; or

b.   If (i) Assignor withdraws the Court Documentation, (ii) Assignor moves to convert the Bankruptcy Cases to cases under chapter 7 of the Bankruptcy Code or the Bankruptcy Court otherwise orders such conversion, or (iii) after the Execution Date, Assignor moves for appointment of an examiner with expanded powers pursuant to Section 1104 of the Bankruptcy Code or a trustee in the Bankruptcy Cases, or the Bankruptcy Court otherwise orders appointment of such a trustee.

---

*Down, (X) Enforcing an Administrative Stay, (XI) Authorizing the Preemption of Applicable Laws and Ordinances for the Debtors to Effectuate the Wind-Down, (XII) Authorizing the Debtors to Take Any and All Actions Necessary to Implement the Wind-Down, and (XIII) Granting Related Relief* entered by the Bankruptcy Court at ECF No. 1048.

ASSIGNMENT AND ASSUMPTION AGREEMENT – Page 2

In the event this Assignment is terminated by Assignee prior to the Effective Date as provided above, the provisions of this Assignment shall immediately become wholly void and of no further force and effect and there shall be no liability on the part of any party hereto to any other party hereto.

6.      Defined Terms. All defined terms used and not otherwise defined in this Assignment shall have the meanings ascribed to such terms in the Lease.

7.      Binding Effect. This Assignment shall inure to the benefit of and shall be binding upon the parties hereto and their respective successors and assigns.  Nothing in this Assignment shall be construed to give any person (other than Assignor and Assignee and each of their respective successors and assigns, and Landlord to the extent provided in this Assignment) any legal or equitable right, remedy or claim under or in respect of this Assignment.

8.      Governing Law.  This Assignment shall be governed by and construed under the laws of the State of Georgia (the "State") as though the entire contract were performed in the State and without regard to the State's conflict of laws statutes, rules or judicial decisions.  The parties further agree that they consent to the jurisdiction of the courts of the State, the federal courts located within the State, and the Bankruptcy Court and waive any claim of lack of jurisdiction or forum non conveniens. For the avoidance of doubt, the parties consent to the Bankruptcy Court's jurisdiction with respect to any matter arising from or related to the implementation, interpretation, or enforcement of the Court Documentation.

9.      Authorization.  Subject to the Bankruptcy Court's approval of the Assignment in accordance with paragraph 21 of the Wind Down Order, each party signing below warrants and represents that (a) it is duly authorized to execute this Assignment without the necessity of obtaining any other signature of any other officer or partner, (b) the execution of this Assignment has been duly authorized by all appropriate parties on behalf of each party, and (c) this Assignment is fully binding on each party.

10.      Counterparts. The parties agree that this Assignment may be executed by the parties in one or more counterparts and each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

11.      Further Agreements.  If necessary, the parties agree to enter into subsequent agreements to effectuate the rights and obligations contemplated by this Assignment.

12.      Severability.  If any provision of this Assignment shall be held or deemed to be or shall in fact be inoperative or unenforceable as applied in any particular case in any jurisdiction or jurisdictions or in all cases because it conflicts with any other provision or provisions hereof, of the Lease, or of any constitution, statute, ordinance, rule of law or public policy, or for any other reason, such circumstances shall not have the effect of rendering the provision in question inoperative or unenforceable in any other case or circumstances, or of rendering any other provision or provisions herein contained invalid, inoperative, or unenforceable to any extent whatsoever.  The invalidity of any one or more phrases, sentences, clauses or sections contained in this Assignment shall not affect the remaining portions of this Assignment or any part hereof.  In the event a court of competent jurisdiction determines that any one or more phrases, sentences,

ASSIGNMENT AND ASSUMPTION AGREEMENT – Page 3

clauses or sections contained in this Assignment is inoperative or unenforceable, the parties agree to make good faith efforts to ensure complete performance as close as possible to the original intent of the parties as memorialized in the Assignment.

[The remainder of this page intentionally left blank.]

IN WITNESS WHEREOF, the parties have executed this Assignment as of the dates set forth below to be effective as of the Effective Date.

**ASSIGNOR:**

**SPIRIT AIRLINES, LLC**,
a Delaware limited liability company, formerly known as Spirit Airlines, Inc.

DocuSigned by:

*Chip Sandifer*

2259DF0930F544C...

By:

Name: Chip Sandifer

Title: Vice President

Date:

**ASSIGNEE**:

**DELTA AIR LINES, INC.**
a Delaware corporation.

By:

Name:

Title:

Date:

ASSIGNMENT AND ASSUMPTION AGREEMENT

IN WITNESS WHEREOF, the parties have executed this Assignment as of the dates set forth below to be effective as of the Effective Date.

**ASSIGNOR:**

**SPIRIT AIRLINES, LLC**,
a Delaware limited liability company, formerly known as Spirit Airlines, Inc.

By:_____

Name:_____

Title:_____

Date:_____

**ASSIGNEE**:

**DELTA AIR LINES, INC.**
a Delaware corporation.

Signed by:

By:_____

Name: HOLDEN SHANNON

Title: SVP

Date: 06-09-2026

ASSIGNMENT AND ASSUMPTION AGREEMENT

## **<u>EXHIBIT A</u>**

That certain Airport Use and Lease Agreement, dated as of October 27, 2017, by and between Assignor and Landlord, as extended to June 30, 2026, pursuant to letter from Assignor to Landlord, dated December 21, 2020, and as further extended to June 30, 2031, pursuant to a letter from Assignor to Landlord dated December 31, 2025 and adopted pursuant to a resolution by the Landlord.

[Copy of Lease follows this cover page.]

ASSIGNMENT AND ASSUMPTION AGREEMENT