**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **SPIRIT AVIATION HOLDINGS, INC.,** *et al.*, | **Case No. 25-11897 (SHL)** |
| **Debtors.**[1] | **Jointly Administered** |

**DECLARATION OF MARC BILBAO IN SUPPORT OF THE
DEBTORS' MOTION FOR ENTRY OF (I) AN ORDER (A) APPROVING BIDDING
PROCEDURES AND BID PROTECTIONS IN CONNECTION WITH THE SALE OF 27
EETC-FINANCED AIRCRAFT, (B) APPROVING THE FORM AND MANNER OF
APPLICABLE NOTICES AND (C) SCHEDULING AN AUCTION AND SALE
HEARING AND (II) AN ORDER (A) AUTHORIZING THE SALE OF AIRCRAFT AND
RELATED ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES,
AND OTHER INTERESTS AND (B) GRANTING RELATED RELIEF**

**Marc Bilbao declares and says:**

1.      I am a senior managing director of FTI Consulting, Inc. ("**FTI**"). I have led FTI's engagement as Spirit's financial advisor since FTI was engaged by Spirit in August 2025. FTI is a leading advisory firm that delivers a broad range of interrelated strategic, operational and financial advisory services. Specifically, FTI's services include, among others, assessments of an organization's financial and operational condition, performance management and improvement, interim and crisis management, restructuring and turnaround consulting, merger and acquisition services, and advisory and guidance through the bankruptcy process. FTI has provided financial advisory services in large and complex chapter 11 cases in this district and throughout the country.

2.      I have 28 years of professional experience as a restructuring advisor, investment banker, and financial advisor, among other roles, to companies during both out-of-court and

---

[1]     The Debtors' names and last four digits of their respective employer identification numbers are as follows: Spirit Aviation Holdings, Inc. (1797); Spirit Airlines, LLC (7023); Spirit Finance Cayman 1 Ltd. (7020); Spirit Finance Cayman 2 Ltd. (7362); Spirit IP Cayman Ltd. (4732); and Spirit Loyalty Cayman Ltd. (4752). The Debtors' mailing address is 1731 Radiant Drive, Dania Beach, FL 33004.

chapter 11 proceedings throughout the United States. I have a B.S. in Business Administration from Seattle University and am a Chartered Financial Analyst.

3. I am generally familiar with Spirit's day-to-day operations, businesses, and financial affairs, and the circumstances leading up to the Chapter 11 Cases.[2] I am over the age of 18 and authorized to submit this declaration (the "**Declaration**") on behalf of the Debtors in support of the *Debtors' Motion for Entry of (I) An Order (A) Approving Bidding Procedures and Bid Protections in Connection with the Sale of 27 EETC-Financed Aircraft, (B) Approving the Form and Manner of Applicable Notices and (C) Scheduling an Auction and Sale Hearing and (II) An Order (A) Authorizing the Sale of Aircraft and Related Assets Free and Clear of All Liens, Claims, Encumbrances, and Other Interests and (B) Granting Related Relief* [ECF No. 1251] (together with the exhibits and other attachments thereto, the "**Sale Motion**"), which I reviewed or had its contents explained to me.

4. Except as otherwise indicated, the facts set forth in this Declaration are based upon my personal knowledge, my review of the relevant documents, information prepared or provided to me by employees of, or professional advisors to, Spirit, or my opinion based upon experience, knowledge, and information concerning Spirit's operations and the airline industry generally. If called upon to testify, I would testify competently to the facts set forth in this Declaration.

5. To facilitate Spirit's orderly Wind-Down and maximize recoveries for all stakeholders, Spirit has decided to sell the Subject Aircraft as part of a competitive sale process. The Court has previously approved the sale of 20 of the Debtors' other owned aircraft [ECF No. 991], a transaction in which FTI played an integral role and through which it developed

---

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Sale Motion or the Aircraft Sale Agreement, as applicable.

substantial familiarity with the market for the Debtors' aircraft. Selling the Subject Aircraft will efficiently liquidate Spirit's remaining fleet through orderly sales of aircraft that are no longer needed in light of the Debtors' cessation of operations. The proposed Bidding Procedures will allow Spirit to market and sell the Subject Aircraft in an efficient and value-maximizing manner. I therefore believe that the Sale is in the best interest of the Debtors' estates and that the Court should grant the requested relief.

## Sale Process

6.     As explained in the *Declaration of Fred Cromer in Support of (I) the Wind-Down Motions and (II) the Motion to Shorten* [ECF No. 1011] (the "**Wind-Down Declaration**"), following a sustained increase in the price of fuel, Spirit reluctantly decided that it had no choice but to cease operations and pursue the Wind-Down.

7.     Consistent with the Wind-Down, Spirit is continuing currently liquidating its assets in an orderly and expeditious manner, maximizing the value of the Debtors' estates while minimizing the costs associated with winding down a large commercial airline.

8.     In accordance with the Wind-Down Plan (as defined in the Wind-Down Declaration), Spirit has decided to sell the Subject Aircraft, and related equipment, as set forth in Exhibit A to the Aircraft Sale Agreement. I believe that monetizing the Subject Aircraft is necessary to and will facilitate the Wind-Down by maximizing recoveries for all stakeholders and reducing the debt that is secured by the Subject Aircraft.

9.     Following its decision to cease operations, Spirit, together with its advisors, engaged with key interested stakeholders to determine the best path forward to liquidate its remaining fleet assets. As part of those discussions, Spirit engaged in good faith negotiations with the holders of enhanced equipment trust certificates financings that are secured by the Subject

3

Aircraft. In particular, there are two groups of secured creditors: the Senior Certificateholders and the SuperB Noteholders. Spirit reached an Aircraft Sale Agreement with Save 2026-B LLC, an entity controlled by certain SuperB Noteholders, to serve as a Stalking Horse Buyer as part of the marketing and sale process for the Subject Aircraft. Importantly, the Sale Motion is supported by the Senior Certificateholders, who are expected to be paid in full in cash upon closing of the Sale. Pursuant to the Aircraft Sale Agreement, Spirit has agreed to sell, and the Stalking Horse Buyer has agreed to purchase, the Subject Aircraft, subject to Spirit's receiving better Qualified Bids at the Auction. The Stalking Horse Buyer has agreed to purchase the Subject Aircraft on an "as-is where-is" and "with all faults" basis and any Bid must meet this condition to be a Qualified Bid. By selling the Subject Aircraft "as-is where-is" and "with all faults," Spirit avoids being bound by any maintenance condition and related obligations to closing. Based on my experience and knowledge of Spirit's business, I believe that selling the Subject Aircraft "as-is where-is" and "with all faults" will therefore significantly expedite closing the Sale(s) from what might typically be a months-long process, including inspections, to a matter of days, as delineated in the proposed transaction schedule included in the Bidding Procedures. This shortened closing timeline will generate key liquidity for the Debtors and, in my opinion, expedite the Wind-Down.

10.    I believe that the transactions reflected in the Aircraft Sale Agreement represent the best offer for the Subject Aircraft, taken as a whole, and are in the best interests of the Debtors based upon (among other factors and without limitation) (a) the Purchase Price provided in the Aircraft Sale Agreement, (b) the Bidding Procedures and Auction process; and (c) the other terms set forth in the Aircraft Sale Agreement. I believe that it is imperative that Spirit is able to continue the implementation of the Auction and Sale of the Subject Aircraft to avail Spirit of the immediate cost savings and financial benefit through the Sale and to remain in compliance with the remainder

4

of the Wind-Down Plan.

11.    In addition, based on my experience in the airline industry and my consideration of the facts here, I believe that the Bid Protections provided to the Stalking Horse Buyer and the Bidding Procedures provided for with respect to the Auction are appropriate and will maximize value for Spirit. The Break-Up Fee provides a crucial incentive to the Stalking Horse Buyer to serve as a stalking horse buyer which ensures that Spirit will earn at least the Purchase Price agreed to with the Stalking Horse Buyer, which Purchase Price is, I believe, fair and reasonable consideration for the Subject Aircraft under the circumstances. By contrast, if the Stalking Horse Buyer decided not to go forward with the Sale, Spirit would lose the benefits flowing from having the Stalking Horse Bid, including higher bids that, absent such a floor, might not otherwise be realized. Based on my experience, I believe that the up to $18,000,000 Break-Up Fee, which is approximately 2.9% of Purchase Price, is appropriate and in line with bidding incentives previously approved in other large chapter 11 cases in this jurisdiction and, in my experience, is generally consistent with market practice. In addition, the Break-Up Fee is in line with the previously approved break-up fee in Spirit's prior aircraft sale.  [ECF No. 845].  The Expense Reimbursement covers the costs and expenses incurred as a result of the extensive analysis and negotiations undertaken by the Stalking Horse Buyer in connection with the Sale. Thus, I believe that the Stalking Horse Buyer and the associated Break-Up Fee and Expense Reimbursement represent a material benefit to Spirit and its estates by increasing the likelihood that the best possible price for the Subject Aircraft will be received.[3]

12.    Importantly, notwithstanding the Stalking Horse Buyer and the Break-Up Fee and

---

[3]    It is also worth noting that to the extent the Break-Up Fee and/or Expense Reimbursement become due under the Aircraft Sale Agreement, they shall be paid solely from the proceeds of the Sale(s) and not from any other source, including any cash on the Debtors' balance sheet that constitutes collateral of the DIP Lenders.

Expense Reimbursement, the Bidding Procedures and Auction will ensure that other parties retain the opportunity to bid for the Subject Aircraft to ensure that Spirit is able to obtain the best possible price for the Subject Aircraft. I believe that conducting the Sale subject to the Bidding Procedures, including the Auction, if necessary, is the method most likely to maximize the value for the benefit of the Debtors' estates and creditors, as it subjects the proposed transaction to a market test that ensures the consideration received by the Debtors will be fair and reasonable. Moreover, while the Aircraft Sale Agreement contemplates the sale of all 27 Subject Aircraft to one purchaser, the Bidding Procedures provide the Debtors with significant flexibility to sell the Subject Aircraft to multiple separate purchasers to the extent those transactions provide a higher or otherwise better result for the Debtors' estates. This flexibility was a critical consideration for the Debtors in negotiating the Bidding Procedures in light of the significant interest received from potential purchasers since the announcement of the Wind-Down.

13.     Another key benefit to Spirit from the Sale is the requirement, pursuant to the Aircraft Sale Agreement and Bidding Procedures, that either the Stalking Horse Buyer or the Successful Bidder(s), if different than the Stalking Horse Buyer, pay or reimburse Spirit for its costs and expenses incurred in connection with the Sale, including reasonable professional fees and other associated costs incurred in connection with the Sale, which payment (including of any good faith estimates provided by Spirit of such costs and expenses) is a condition precedent to the closing of the Sale.  In the event any fee or cost that is required to be paid or reimbursed to the Debtors under the Aircraft Sale Agreement is not known prior to closing and/or the estimated payment proves insufficient, the Stalking Horse Buyer is required to promptly pay Spirit post-closing in accordance with the Aircraft Sale Agreement.  I believe that these requirements will materially limit the burden on Spirit's other creditors from Spirit's decision to pursue the Sale to

monetize the Subject Aircraft in as value-maximizing a way as possible.

14.    Following the filing of the Sale Motion, advisors to the Debtors, the Stalking Horse Buyer, and other interested parties continued to negotiate certain terms of the Bidding Procedures, in particular the possible structures for Qualified Bids for a portion of the Subject Aircraft to ensure that the Auction would be as robust as possible. I believe that these revised Bidding Procedures, which contemplate that the Subject Aircraft and associated engines are designated into specific lots to streamline the Bids, will maximize the value that Spirit receives through the sale process. As noted earlier, the revised Bidding Procedures continue to provide the Debtors with flexibility to sell the Subject Aircraft in a variety of structures to the extent those transactions provide a higher or otherwise better result for the Debtors' estates. Accordingly, contemporaneous with the filing of this Declaration, the Debtors are filing revised Bidding Procedures reflecting these modifications.

15.    Lastly, I believe that the Aircraft Sale Agreement was negotiated at arm's length and in good faith, during which both parties were represented by sophisticated counsel. In addition, the Senior Certificateholders participated in the negotiations and support the Sale Motion, the Bidding Procedures, and the Aircraft Sale Agreement. I am not aware of any indication of any fraud, collusion, or any attempt to take grossly unfair advantage of the negotiation process or of any similar conduct.

## Conclusion

16.    For the reasons set forth above, I believe that (a) the relief requested in the Sale Motion is fair, equitable, and reasonable and represents a sound exercise of the Debtors' business judgment and (b) the Court's authorization for the Debtors to enter into the Aircraft Sale Agreement, subject to the Auction, is in the best interest of the Debtors' estates and economic

7

8

stakeholders and will further serve to maximize value for the benefit of all creditors.

8

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true

and correct to the best of my knowledge, information, and belief.

Dated:    July 20, 2026
          New York, New York

                                          */s/ Marc Bilbao*

                                          Marc Bilbao
                                          Senior Managing Director
                                          FTI Consulting, Inc.

9