**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| SPIRIT AVIATION HOLDINGS, INC., *et al.*[1] | ) | Case No. 25-11897 (SHL) |
| Debtors. | ) | (Jointly Administered) |

**AMENDED[2] OBJECTION OF THE RCF ADMINISTRATIVE AGENT TO HONEYWELL AEROSPACE US LLC'S MOTION TO PERMIT COLLECTION OF ITS PROPERTY FROM DEBTORS OR, ALTERNATIVELY, TO LIFT THE AUTOMATIC STAY**

Citibank, N.A., as the administrative agent under the Debtors' revolving credit facility (in such capacity, the "RCF Administrative Agent"), hereby objects to *Honeywell Aerospace US LLC's Motion to Permit Collection of Its Property from Debtors or, Alternatively, to Lift the Automatic Stay* [Dkt. No. 1405] (the "Motion") and respectfully states as follows:

**PRELIMINARY STATEMENT**

1. Honeywell Aerospace seeks to lay claim to millions of dollars in spare parts and auxiliary power units ("APUs") from the Debtors' estates, asserting that it retained title to these assets at all times. But Honeywell's claim of title is incorrect—and it ignores the contractual arrangement of the RCF Secured Parties[3], who extended credit to the Debtors in reliance on the appearance of those very assets within the borrowing base certifications delivered by the Debtors' officers.

[1] The Debtors' names and last four digits of their respective employer identification numbers are as follows: Spirit Aviation Holdings, Inc. (1797); Spirit Airlines, LLC (7023); Spirit Finance Cayman 1 Ltd. (7020); Spirit Finance Cayman 2 Ltd. (7362); Spirit IP Cayman Ltd. (4732); and Spirit Loyalty Cayman Ltd. (4752) (collectively, the "Debtors"). The Debtors' mailing address is 1731 Radiant Drive, Dania Beach, FL 33004.

[2] This amended objection supersedes the version filed at [Dkt. No. 1451].

[3] As defined in the *Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing; (II) Granting Senior Secured Liens and Superpriority Administrative Expense Claims; (III) Authorizing the Debtors to Utilize Cash Collateral; (IV) Granting Adequate Protection; (V) Modifying the Automatic Stay; and (VI) Granting Related Relief* [Dkt. No. 1048, Ex. A.] (the "Final DIP Order").

2. The RCF Secured Parties hold duly perfected security interests in the Debtors' spare parts and inventory, including the spare parts and APUs that Honeywell now claims. Critically, Honeywell's ownership claims are contradicted by Spirit's own records: Spirit's officers certified that these assets were owned by Spirit and included these very assets in the borrowing base certifications it provided to the RCF Administrative Agent. The RCF Secured Parties extended credit in reliance on those certifications—and had no reason to believe that anyone else had a claim to the property. Honeywell's previously undisclosed and belated ownership claim—never made public through financing statement filings, nor communicated to the RCF Secured Parties until after the Debtors commenced their wind-down process—is precisely the type of "secret lien" that the Uniform Commercial Code (the "UCC") was adopted to prevent.

3. The entire purpose of the UCC's notice-filing regime is to prevent the very situation Honeywell now asks this Court to sanction: a supplier with undisclosed claims emerging from the shadows after a bankruptcy filing to assert priority over creditors who extended credit in reliance on the public record. *See* U.C.C. § 9-319 cmt. 2 (noting the UCC's policy of guarding against hidden liens). Honeywell's decision not to avail itself of the UCC's protections cannot now be imposed as a cost on innocent secured creditors—like the RCF Secured Parties—who did everything right in perfecting their own interests and were unaware of Honeywell's purported claims until recently, well after they extended credit to Spirit.

4. The RCF Administrative Agent joins in and incorporates the Debtors' legal arguments regarding the disputed nature of Honeywell's title claims, and further submits that, regardless of how the Court characterizes the arrangement, the RCF Secured Parties' perfected security interests are senior to any interest Honeywell may have.

## ARGUMENT

### I. HONEYWELL'S AGREEMENTS DO NOT ESTABLISH A BAILMENT RELATIONSHIP

5. The RCF Administrative Agent adopts and incorporates by reference the Debtors' legal arguments, including that: (a) Honeywell must seek relief by adversary proceeding, *see* FED. R. BANKR. P. 7001(a), (b), (i); (b) Honeywell's arrangements with the Debtors are not bailments and are instead sales, *see In re Miami Metals I, Inc.*, 603 B.R. 727, 734 (Bankr. S.D.N.Y. 2019); and (c) title retention provisions are not dispositive of ownership and are treated as a security interest, *see* U.C.C. § 2-401(1).

6. Honeywell seeks the return of property it alleges it owns, namely the Spare Avionics and the APUs, notwithstanding the Debtors' objections to the validity of those property interests or their corresponding priority. In light of the relief sought, Honeywell's Motion is procedurally defective under Bankruptcy Rule 7001 and cannot be granted without the procedural safeguards the Debtors (and other interested parties) are entitled to in an adversary proceeding, absent such parties' consent. Fed. R. Bankr. P. 7001 (a)-(b); *see also In re Lionel Corp*., 23 B.R. 224, 225 (Bankr. S.D.N.Y. 1982) ("[Claimant's] motion seeking relief with respect to the recovery of money, the recovery of property, and the determination of an interest in property is procedurally defective. Such relief is appropriate only in the context of an adversary proceeding.").

7. Moreover, even if Honeywell's arrangement were considered a bailment (which it is not), considerable factual issues remain in determining whether the Spare Avionics were commingled with other Spirit parts and whether Honeywell can satisfy its burden to trace its identical parts to Spirit's inventory. *See In re Martin Fein & Co., Inc.*, 43 B.R. 623, 626 (Bankr. S.D.N.Y. 1984) ("Where the property involved, or its proceeds, has been intermingled with other

goods or funds of the debtor's, the owner must definitely trace that which he claims as contained in the assets of the estate . . . Upon failure to do this, the bailor, principal, or consignor becomes only a general creditor with the same rights appertaining to other general creditors."). Given the apparent commingling of consigned and non-consigned parts, that burden is not merely difficult, it may be insurmountable—and thus far, Honeywell has failed to meet it.

## II. HONEYWELL'S FAILURE TO FILE DEFEATS ITS CLAIMED INTEREST

8. Whether characterized as a consignment, conditional sale, or sale on credit, Honeywell was required to file a financing statement with the FAA to protect its claimed interest from secured creditors. It never did.

9. Under pre-UCC law, vendors who retained title to goods in a buyer's possession could often assert ownership claims superior to the buyer's creditors, even when those creditors had no means of discovering the vendor's interest. This regime of "secret liens" wreaked havoc on commercial lending. The UCC eliminated this problem: by limiting title retention to "a reservation of a security interest," U.C.C. § 2-401(1) subjected such vendors to the same filing requirements as any other secured party. "The policy behind Article 9 is to ensure certainty for creditors and provide notice of security interests to third parties" and to "eliminat[e] secret liens." *Octagon Gas Sys., Inc. v. Rimmer*, 995 F.2d 948, 957 (10th Cir. 1993).

10. This case is a textbook example of what the UCC was designed to prevent: a supplier delivers goods without any public filing; the borrower's lenders, after receiving representations that the goods are owned by the borrower and having no notice of any competing claim, advance credit against them; the supplier then emerges in bankruptcy to claim ownership. The UCC's answer is clear—the supplier that failed to file bears the consequences of its own inaction.

11. Honeywell itself recognized the importance of filing under the UCC to perfect its interest: agreements related to the MSA[4] expressly contemplate financing statement filings. Section 1.2 thereof provide that "Customer agrees to execute documents requested by Honeywell, including, UCC-1 and or FAA financing statements." Honeywell negotiated for this authority in certain contracts, obtained Spirit's consent, and then did nothing. Having chosen not to perfect, Honeywell cannot now claim priority over innocent creditors who did.

12. Whether the arrangement is ultimately treated as a consignment or sale, the result is the same: in a sale, "[a]ny retention or reservation by the seller of the title (property) in goods shipped or delivered to the buyer is limited in effect to a reservation of a security interest." U.C.C. § 2-401(1). In a consignment, where a consignor fails to file a financing statement, a creditor with a perfected security interest has priority over the consignor's interest. *See* U.C.C. § 9-319(a); *In re TSAWD Holdings, Inc.*, 601 B.R. 599, 608 (Bankr. D. Del. 2019). In either case, Honeywell's unperfected interest yields to the RCF Secured Parties' perfected security interest.

13. The Final DIP Order confirms the RCF Secured Parties' priority. That order grants the RCF Agents valid, binding, and automatically perfected liens in "all Spare Parts." These liens are subordinate only to the Professional Fee Carve Out and RCF Permitted Liens,[5] and are otherwise "senior to all other security interests in, liens on, or claims against any of the DIP

[4] The "<u>MSA</u>" means the Maintenance Services Agreement between Honeywell Aerospace and Spirit dated April 1, 2016, as amended.

[5] The Final DIP Order defines "RCF Permitted Liens" as liens that are "(a) valid, perfected, and non-avoidable liens on the Petition Date or (b) valid liens in existence on the Petition Date that are perfected subsequent to the Petition Date in accordance with section 546(b) of the Bankruptcy Code." Final DIP Order ¶ G(viii) [Dkt. No. 1048, Ex. A]. The only liens that may prime the RCF Secured Parties' interests are those that satisfy this definition—i.e., liens that are both valid *an*d perfected. Honeywell never filed a financing statement or FAA lien notice, and therefore holds no valid perfected lien. Accordingly, Honeywell's claimed interest cannot qualify as an RCF Permitted Lien entitled to priority over the RCF Secured Parties.

Collateral." The challenge period has expired without any successful challenge. Accordingly, Honeywell is barred from claiming a security interest senior to the RCF Secured Parties' interest.

## III. SECTION 1110 DOES NOT OVERRIDE PRIORITY RULES UNDER THE UCC OR THE FINAL DIP ORDER

14. Honeywell argues it may repossess its claimed parts under section 1110(a) of the Bankruptcy Code as a conditional vendor. 11 U.S.C. § 1110(a). But section 1110 merely provides a limited exemption from the automatic stay—it does not override UCC priority rules or the Final DIP Order, which provide that the RCF Secured Parties are the senior lienholders. The Court has already authorized the RCF Secured Parties to exercise their non-bankruptcy remedies under section 1110.[6] If Honeywell wrongfully repossessed property subject to the RCF Secured Parties' senior perfected liens, the RCF Secured Parties would be entitled to replevin and may have claims against Honeywell for conversion and other remedies.

## <u>CONCLUSION</u>

15. For the foregoing reasons, Honeywell's Motion should be denied.

*[Remainder of page intentionally left blank]*

[6] *See Order (I) Authorizing the Debtors to Wind Down Operations, (II) Approving the Debtors' Use of Cash Collateral and Amendments to the DIP Credit Agreement and Final DIP Order, (III) Authorizing Modification or Termination of the Debtors' Employee Programs, (IV) Approving Wind-Down Retention Plan, (V) Approving Modification of Contract Rejection Procedures, (VI) Approving Non-Fleet Assets Sale Procedures, (VII) Approving Non-Fleet Assets Abandonment Procedures, (VIII) Approving the Use of Certain Third Party Contractors, (IX) Approving Protections for Certain Persons Implementing the Wind-Down, (X) Enforcing an Administrative Stay, (XI) Authorizing the Preemption of Applicable Laws and Ordinances for the Debtors to Effectuate the Wind-Down, (XII) Authorizing the Debtors to Take Any and All Actions Necessary to Implement the Wind-Down, and (XIII) Granting Related Relief* [Dkt. No. 1048] at ¶¶10-11.

Dated: August 15, 2026
New York, New York

*<u>/s/ Andrew Harmeyer</u>*
Atara Miller
Tyson Lomazow
Andrew Harmeyer
Jason Kestecher
**MILBANK LLP**
55 Hudson Yards
New York, New York 10001-2163
Telephone: (212) 530-5000
Facsimile: (212) 530-5219
Email: amiller@milbank.com
tlomazow@milbank.com
aharmeyer@milbank.com
jkestecher@milbank.com

*Counsel for Citibank N.A., as the Administrative Agent under the Debtors' Revolving Credit Facility*