Joshua W. Cohen
**DAY PITNEY, LLP**
195 Church Street, 15th Floor
New Haven, CT 06510
Telephone: (203) 752-5000
Facsimile: (203) 752-5001

*Attorneys for International Aero Engines LLC
and IAE International Aero Engines AG*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **In re:** | : | **Chapter 11** |
| **SPIRIT AVIATION HOLDINGS, INC., *et al.*,** | : | **Case No. 25-11897 (SHL)** |
| | : | **(Jointly Administered)** |
| **Debtors.**[1] | : | |

**LIMITED OBJECTION OF INTERNATIONAL AERO ENGINES LLC AND IAE INTERNATIONAL AERO ENGINES AG TO THE DEBTORS' PROPOSED SALE OF THE DEIDENTIFIED DATA AND CROSS-MOTION FOR ENFORCEMENT OF CONFIDENTIALITY AGREEMENTS**

International Aero Engines LLC ("IAE LLC") and IAE International Aero Engines AG ("IAE AG" and, together with IAE LLC, "IAE"), creditors and contract counterparties in the above-captioned jointly administered Chapter 11 cases, respectfully submit this limited objection to the approval of the sale of Deidentified Data (the "Data Sale") described in the *Notice of Auction Results and Scheduled Hearing for the Deidentified Data* [ECF No. 1463] (the "Sale Notice") and cross-motion for enforcement of the confidentiality provisions in their agreements with the Debtors. In support of the limited objection and cross-motion, IAE states:

[1] The Debtors' names and last four digits of their respective employer identification numbers are as follows: Spirit Aviation Holdings, Inc. (1797); Spirit Airlines, LLC (7023); Spirit Finance Cayman 1 Ltd. (7020); Spirit Finance Cayman 2 Ltd. (7362); Spirit IP Cayman Ltd (4732); and Spirit Loyalty Cayman Ltd. (4752). The Debtors' mailing address is 1731 Radiant Drive, Dania Beach, FL 33044.

## PRELIMINARY STATEMENT

1. As detailed below, IAE and the Debtors are parties to numerous agreements. In connection with the business dealings between IAE and the Debtors pursuant to those agreements, IAE provided to the Debtors certain proprietary commercial information, technical data and information, and financial data and information (collectively, the "IAE Data and Information"). The IAE Data and Information, as well as copies, modifications and derivatives thereof, are almost certainly stored on the Debtors' computer and data storage systems and may be contained in internal and external communications in the possession or control of the Debtors.

2. As an initial matter, IAE (or third parties who have granted IAE the right to share their information on a confidential basis with IAE's customers) owns the IAE Data and Information. As such, the IAE Data and Information is not property of the Debtors' bankruptcy estates and is not subject to being sold in these proceedings.

3. Additionally, preservation of the confidentiality of the IAE Data and Information is critical to IAE's business, and any dissemination of the IAE Data and Information to a third party would cause substantial and potentially irreparable harm to IAE, its businesses and its partners, suppliers and other third parties who provided information to IAE in reliance upon IAE's contractual commitment to maintain the confidentiality and limit the use of such information. To protect itself, IAE included confidentiality provisions in each of its agreements with the Debtors. Under the terms of those confidentiality provisions, the Debtors are prohibited from transferring any of the IAE Data and Information to a third party without IAE's consent. To the extent the Data Sale would include a transfer of the IAE Data and Information, the Data Sale is prohibited under the terms of those confidentiality provisions.

4. Furthermore, to the extent the Debtors intend to transfer internal or external communications that contain IAE Data and Information as part of the Data Sale, such a sale would infringe IAE's ownership rights, frustrate measures IAE takes to protect its trade secrets, and violate the confidentiality provisions of the agreements.

5. Finally, the agreements between IAE and the Debtors are themselves confidential and are protected by the confidentiality provisions contained therein. Accordingly, to the extent the Debtors intend to include the agreements between IAE and the Debtors in the Data Sale, the sale would violate the confidentiality provisions of the agreements and would cause IAE to suffer significant and potentially irreparable damage.

6. To be clear, IAE does not oppose the Data Sale in its entirety. Rather, IAE asserts this limited objection and cross-motion to the extent the Debtors include any of the following as an "Asset" (as defined in the proposed Bill of Sale appended to the Sale Notice): (i) the IAE Data and Information; (ii) agreements between IAE and the Debtors; and/or (iii) internal or external communications that contain the IAE Data and Information and/or draft or final versions of the agreements between IAE and the Debtors (items (i) through (iii) along with any copies, modifications, or derivatives thereof, collectively, the "IAE Proprietary Information"). However, because the Debtors may have made copies, modifications, and derivatives of the IAE Proprietary Information particularly within internal communications, deidentification is insufficient to ensure that the IAE Proprietary Information has been removed. The Debtors should be required to demonstrate that there is no IAE Proprietary Information in any of the data included in the Data Sale.

## BACKGROUND FACTS

7. On June 22, 2026, the Court entered its *Order (I)(A) Approving Bidding Procedures for Sale of the Debtors' Assets, (B) Authorizing the Potential Selection of Stalking Horse Bidder(s), (C) Approving Bid Protections, (D) Scheduling Auction(s) for, and Hearing(s) to Approve, the Sale of the Debtors' Assets, (E) Approving the Form and Manner of Notices of Sale, Auction(s), and Sale Hearing(s), and (F) Approving the Assumption and Assignment Procedures and (II) Granting Related Relief* [ECF No. 1213] (the "Sale Procedures Order").

8. Under the terms of the Sale Procedures Order, the Court established procedures for the Debtors to sell various categories of assets.

9. Pursuant to those procedures, the Debtors filed the Sale Notice on August 14, 2026. Appended to the Sale Notice is a proposed Sale Agreement between the Debtors and Google LLC ("Google") pursuant to which the Debtors would transfer to Google assets including:

> All data consisting of (i) productivity and collaboration data (including, without limitation, email data, calendar data, chat, collaboration and messaging data, documents, presentations, spreadsheets, knowledge repositories and wikis); (ii) core business systems and business applications data (including, without limitation, employee behavior and productivity data, revenue and yield management (inventory) data and aircraft operations and logistics); and (iii) workflow and process data (including, without limitation, marketing data (e.g. campaigns, content and demand generation data), support, HR and legacy operations data, strategy and operations and project management data, transaction data, revenue accounting or financial data (e.g. analyst workflows, audits and corporate finance and fraud data)), in each case of the foregoing (i)-(iii), together with all related documentation, including without limitation the data designated as "Included" in the schedule of assets attached to this Exhibit A (the "**Assets Schedule**") but excluding the data designated as "Not Included" in the Assets Schedule.

Sale Notice, Exhibit A. The referenced Assets Schedule includes broad "Ops Data", emails, email accounts, One Drive, Teams, agreements/templates including redlined or versioning "draft to final contract" histories, Commercial Agreements (e.g. licenses, master purchase agreements), and M&A contracts (e.g. sales purchase agreements, asset purchase agreements).

10. IAE and the Debtors are parties to a number of agreements[2] including, without limitation:

- that certain PurePower® PW1100G-JM Engine Purchase Support Agreement, dated as of October 1, 2013 (including all exhibits, appendices and other attachments thereto, as amended or otherwise modified from time to time in accordance with the terms thereof, the "2013 Neo Agreement"), between Spirit and IAE LLC (as successor to United Technologies Corporation, Pratt & Whitney Division);

- that certain PW1100G-JM Engine Purchase Support Agreement, dated as of August 27, 2021 (including all exhibits, appendices and other attachments thereto (including without limitation the PW1100G-JM Engine Fleet Management Program Agreement (the "FMP")), as amended or otherwise modified from time to time in accordance with the terms thereof, the "2021 Neo Agreement"), between Spirit and IAE LLC;

- that certain Customer Technical Publications and Data Agreement, dated March 30, 2015, as amended or otherwise modified from time to time in accordance with the terms thereof, (the "Data Agreement"), between Spirit and IAE LLC;

- that certain Fleet Hour Agreement, dated as of October 1, 2013 (including all exhibits, appendices and other attachments thereto, as amended or otherwise modified from time to time in accordance with the terms thereof, the "Ceo Existing Fleet FHA"), between IAE AG and Spirit, relating to the Amended and Restated V2500® General Terms of Sale agreement, dated October 1, 2013, between IAE AG and Spirit; and

- that certain Fleet Hour Agreement, dated as of October 1, 2013 (including all exhibits, appendices and other attachments thereto, as amended or otherwise modified from time to time in accordance with the terms thereof (the "Ceo New Fleet FHA"), between IAE AG and Spirit, relating to the V2500® General Terms of Sale agreement, dated October 1, 2013, between IAE AG and Spirit.

---

[2] The agreements and their terms are confidential. As such, IAE is not attaching copies to this limited objection and cross-motion. IAE will make the agreements available for *in camera* review upon request.

The agreements between IAE and the Debtors are governed by New York law.

11. Each of the referenced agreements contains a confidentiality provision similar to the following:

> The terms and conditions of this Agreement and any technical information provided in connection with it are confidential and proprietary to IAE and Spirit. Each Party agrees to: (a) limit disclosures of such confidential information to persons who have a need to know within their organizations; (b) keep such information confidential; and (c) not disclose to any third party other than (i) as required by applicable law or legal process; (ii) in connection with the disclosure requirements of any applicable government authority or exchange; (iii) to its legal, financial, tax or other advisors who are bound by an obligation of confidentiality or to the confidentiality requirements of this Agreement and (iv) in connection with the enforcement of its rights hereunder; without the prior written consent of the other party (not to be unreasonably withheld), provided that, in the case of (c)(i), *supra*, the Party that is to disclose such confidential information in response to such applicable law or legal process shall if permitted by applicable law, as soon as practicable notify the other Party, and upon the request of the other Party, shall cooperate with the other Party in contesting such disclosure.

CEO New Fleet FHA, ¶ 27; and

> Protection of Proprietary Information. Customer shall not disclose or furnish, in whole or in part, Proprietary Information provided to Customer hereunder to any third party, including without limitation employees of any business unit other than such business unit at the Facility, or affiliates or other entities related to Customer, without the prior written consent of IAE. Proprietary Information shall be disclosed only to those employees and officers of the Customer who have a specific need to know such Proprietary Information in connection with the Allowed Purposes stated above, and only to the extent of such person's need to know. The Customer agrees to treat the Proprietary Information with the same degree of care that it treats its own confidential proprietary information, but in no event with less than reasonable care. The Customer shall require all persons to whom any Proprietary Information is disclosed, including its officers and employees, to comply with the same obligations of nondisclosure and restrictions of this Agreement.

Data Agreement, Section 4.3.

12. In connection with its business operations with the Debtors pursuant to the referenced agreements, IAE provided the Debtors with the IAE Data and Information. The IAE Data and Information is protected from transfer and disclosure by the confidentiality provisions of the agreements. The use of the IAE Data and Information is also restricted by the agreements, which do not permit the apparent intended use by Google. The apparent intended use by Google carries a risk of misappropriation.

13. The assets the Debtors intend to sell to Google pursuant to the Data Sale appear to include some or all of the IAE Data and Information, the confidential/proprietary agreements between IAE and the Debtors, and communications that include the IAE Data and Information and/or the agreements.

14. In connection with this case, IAE and the Debtors entered into a Restructuring Term Sheet in which IAE and the Debtors detailed the terms of a comprehensive settlement between them (the "Bankruptcy Settlement"), including the amendment of certain of the agreements between IAE and the Debtors.

15. On December 23, 2025, the Court entered an *Order (I) Approving the Restructuring Term Sheet with the IAE Parties, (II) Authorizing and Approving Entry Into Definitive Documents and GTE Agreements, and (III) Granting Related Relief* [ECF No. 634] pursuant to which the Court approved the Restructuring Term Sheet and the proposed Bankruptcy Settlement detailed therein.

16. Pursuant to the Court-approved Bankruptcy Settlement, IAE and the Debtors entered into a Settlement Agreement and into various amendments to the agreements between IAE and the Debtors. None of the transactions executed in accordance with the Bankruptcy

Settlement in any way modified the confidentiality provisions contained within the agreements between IAE and the Debtors.

## ARGUMENT

17. While the Data Sale includes certain protections for protected consumer personal data and for the Debtors' privileged materials, it fails to include similar protections for, or any restriction on the disclosure of, proprietary and confidential commercial data and information. However, such proprietary and confidential commercial data and information must be protected to avoid causing significant and potentially irreparable harm to the Debtors' commercial counterparties. And the reality of this case is that a failure to protect such proprietary and confidential commercial data and information will leave those counterparties without meaningful recourse given the Debtors' wind-down and liquidation.

18. Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate…." 11 U.S.C. § 363(b)(1) (emphasis added).

19. Sale of the IAE Proprietary Information is prohibited as IAE (or third parties who have granted IAE the right to share their information on a confidential basis with IAE's customers) owns the IAE Proprietary Information (or certain information and data contained within the IAE Proprietary Information). Such IAE-owned assets are not property of the Debtors' bankruptcy estate and are not available for the Debtors to transfer to Google pursuant to Section 363(b)(1).

20. Additionally, as noted above, the IAE Proprietary Information is protected under the confidentiality provisions of the various contracts between IAE and the Debtors. Transfer of such IAE Proprietary Information to Google would violate those confidentiality provisions and

would cause significant damage to IAE's business. Given the liquidation of the Debtors' businesses, IAE would have no meaningful remedy from the Debtors for such breach of the confidentiality provisions.

21. In connection with enforcement of a confidentiality agreement, courts in New York evaluate the claims under a breach of contract theory. *See Sylmark Holdings Ltd. v. Silicone Zone Intern. Ltd.*, 783 NYS2d 758, 769 (Sup. Ct., N.Y. County 2004). Consistent with the lack of a meaningful monetary remedy, "[a] contract to retain the confidentiality of certain matters which should be kept in confidence will be enforced by injunction." *Id.* *(citing Karpinski v. Ingrasci,* 28 N.Y.2d 45 (1971); *Doe v. Roe*, 400 N.Y.S.2d 668 (Sup. Ct., N.Y. County 1977)).

22. Here, there is no question that inclusion of the IAE Proprietary Information in the Data Sale would violate the terms of the confidentiality agreements between IAE and the Debtors. In light of the foregoing, the Court should not approve the Data Sale until the Debtors to demonstrate that the Data Sale excludes IAE Proprietary Information (including any copies, modifications, or derivatives thereof). In that regard, the Court should require Spirit to implement a protocol, agreeable to IAE, for removing the IAE Proprietary Information from the assets to be sold to Google. Alternatively, the Court should enjoin the Data Sale to the extent it includes the IAE Proprietary Information.

23. To the extent applicable to the IAE Proprietary Information, IAE incorporates by reference the arguments advanced by Springshot, Inc. in the *Limited Objection of Springshot, Inc. to the Proposed Sale of the Disidentified Data* [ECF No. 1508].

## RESERVATION OF RIGHTS

**24.** IAE reserves all rights, including the right to supplement or amend this limited objection and cross-motion, to conduct discovery, and to object to the form of the proposed sale order.

## CONCLUSION

25. For the foregoing reasons, the Court should deny the Data Sale unless the IAE Proprietary Information is excluded from the sale and there are sufficient protocols in place to ensure that the IAE Proprietary Information is removed from any data transferred to Google. Alternatively, the Court should enjoin the Debtors from transferring the IAE Proprietary Information in connection with the Data Sale.

Dated at New Haven, Connecticut, this 27th day of August, 2026.

INTERNATIONAL AERO ENGINES LLC
and IAE INTERNATIONAL AERO
ENGINES AG

By: */s/ Joshua W. Cohen*
Joshua W. Cohen
Day Pitney LLP
195 Church Street, 15th Floor
New Haven, CT 06510
Telephone: (203) 752-5008
Facsimile: (203) 752-5001
E-mail: jwcohen@daypitney.com

**CERTIFICATION OF SERVICE**

The undersigned hereby certifies that on August 27, 2026, a copy of the foregoing Limited Objection of International Aero Engines LLC and IAE International Aero Engines AG to the Debtors' Proposed Sale of the Deidentified Data was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Joshua W. Cohen*