Andrew K. Glenn
Malak S. Doss
**GLENN AGRE BERGMAN & FUENTES LLP**
1185 Avenue of the Americas
22nd Floor
New York, New York 10036
Telephone: (212) 970-1600

*Counsel to micro1 Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **SPIRIT AVIATION HOLDINGS, INC., *et al.*,** | **Case No. 25-11897 (SHL)** |
| **Debtors.**[1] | **Jointly Administered** |

**NOTICE OF MICRO1 INC.'S INTENT TO SUBMIT A COMPETING AND SUPERIOR BID FOR THE DEIDENTIFIED DATA**

1. micro1 Inc. ("micro1") hereby provides notice to the United States Bankruptcy Court for the Southern District of New York (the "Court"), the above-captioned debtors and debtors in possession (collectively, the "Debtors"), and all parties in interest, of its intent to submit a competing bid for the Deidentified Data[2] in connection with the sale hearing currently scheduled for September 9, 2026 at 11:00 a.m. (the "Sale Hearing"). micro1's bid offers a 25% premium over the current Successful Bid—$12,500,000 in cash, with no financing condition, no board or investment-committee consent condition, and proof of funds concurrent with execution—while simultaneously resolving each of the pending limited objections to the proposed sale.

[1] The Debtors' names and last four digits of their respective employer identification numbers are as follows: Spirit Aviation Holdings, Inc. (1797); Spirit Airlines, LLC (7023); Spirit Finance Cayman 1 Ltd. (7020); Spirit Finance Cayman 2 Ltd. (7362); Spirit IP Cayman Ltd. (4732); and Spirit Loyalty Cayman Ltd. (4752). The Debtors' mailing address is 1731 Radiant Drive, Dania Beach, FL 33004.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the *Notice of Auction Results and Scheduled Hearing for the Deidentified Data* [Dkt. No. 1463] (the "Auction Notice").

2. On June 22, 2026, the Court entered the *Order (I)(A) Approving Bidding Procedures for Sale of the Debtors' Assets* (the "Bidding Procedures Order") [Dkt. No. 1213], approving procedures for one or more sales of the Debtors' assets free and clear of all liens, claims, encumbrances, and other interests. On August 14, 2026, the Debtors conducted a virtual Auction for the Deidentified Data and selected Google LLC as the Successful Bidder at $10,000,000 and Mercor.io Corporation as the Alternate Bidder at $7,500,000. *See* Auction Notice [Dkt. No. 1463]. The Sale Hearing was originally scheduled for August 19, 2026, and was subsequently adjourned to September 9, 2026 at 11:00 a.m. *See* Dkt. No. 1488.

3. Two limited objections have been filed. The Association of Flight Attendants-CWA, AFL-CIO ("AFA") filed a limited objection [Dkt. No. 1489] identifying a structural gap in the Sale Agreement: the deidentification framework is calibrated to consumer identifiability under the CCPA standard and does not address the confidentiality of employee records. The AFA requested that the Sale Order either exclude all flight attendant information from the Assets or, alternatively, condition the sale on protections for confidential employee data, including a segregation protocol, a Section 3(e) carve-out, a prohibition on profiling, and restrictions on onward transfer. Springshot, Inc. ("Springshot") filed a limited objection [Dkt. No. 1508] asserting that the broadly defined Assets may include intellectual property owned by Springshot under its Master Software as a Service Agreement with Spirit Airlines, Inc., and requesting that the sale be conditioned on excluding Springshot's intellectual property. The International Association of Machinists and Aerospace Workers and the Transport Workers Union of America Local 570 ("IAM" and "TWU Local 570") joined the AFA's objection [Dkt. No. 1539], noting that the concerns regarding employee data extend to all bargaining units.

## SUPERIOR ECONOMICS

4. micro1 proposes to acquire the Deidentified Data for a Purchase Price of $12,500,000, payable entirely in cash and funded from cash on hand. The bid carries no financing contingency, no board or investment-committee consent condition, and micro1 will deliver proof of funds concurrently with execution of the definitive agreement. This represents a $2,500,000 (or 25%) premium over the Successful Bid of Google LLC and a $5,000,000 premium over the Alternate Bid of Mercor.io Corporation.

5. micro1 is a Delaware corporation operating a human-data and intelligence platform for AI training. Its core business is the structuring, transformation, and quality assurance of enterprise data for machine-learning applications, including the deidentification of sensitive data at scale. micro1 has closed more than fifty data transactions in the last forty-five days. The deidentification capability that the current Sale Agreement contemplates outsourcing to a third-party Deidentification Agent is an in-house function for micro1.

6. micro1 will bear all costs of deidentification, consistent with Section 1(a)(iii) of the Sale Agreement, with no reduction in the Purchase Price, and will additionally bear the cost of any supplemental screens and the independent review described below.

## RESOLUTION OF PENDING OBJECTIONS

7. micro1's bid is designed to resolve by contract the concerns raised in each of the pending limited objections. micro1 is prepared to accept each of the following commitments as binding covenants, to be incorporated as findings and decretal provisions in the Sale Order enforceable by the Bankruptcy Court—which is the form of relief the AFA and Springshot sought in their limited objections.

### A. AFA and IAM/TWU Local 570 Objections — Employee Data Protections

8. To address the concerns raised by the AFA, the IAM, and TWU Local 570, micro1 commits to the following protections, which extend to all bargaining units and all former Spirit employees (not solely flight attendants), thereby fully resolving both the AFA's limited objection [Dkt. No. 1489] and the IAM/TWU Local 570 joinder [Dkt. No. 1539]:

a. **Exclusion of Sensitive Employment Content**. The Debtors shall exclude from the Assets all disciplinary, investigatory, grievance and arbitration, medical, leave and accommodation, EEO, and union or collective-bargaining material. micro1 will request a carve-out from Section 3(e) of the Sale Agreement permitting these removals, and waives in advance any price adjustment, walk right, material adverse effect claim, indemnity claim, or Section 6(a) title-representation claim arising from such removals.

b. **Prohibition on Re-Association**. A flat prohibition on re-association of the Deidentified Data with any individual, not limited to intentional association, with affirmative technical controls.

c. **Prohibition on Profiling**. No use of the Assets to profile, score, evaluate, or draw conclusions about any individual Spirit employee or identifiable subgroup, or in connection with any employment decision or labor-relations matter.

d. **Restrictions on Onward Transfer**. Onward transfer of the Assets shall be limited to named AI-laboratory customers under written confidentiality and no-re-association obligations no less protective than micro1's own. No transfer of employment-related material to airlines, airline-services companies, staffing or

background-check providers, people-analytics vendors, or labor-relations consultancies. The Assets shall not be sold or transferred to any Chinese entity.

e. **Independent Review**. micro1 will conduct the deidentification of the Assets using its proprietary tools and processes. A Data Review Ombudsman, selected by the Debtors, reasonably acceptable to the objecting parties, and approved by the Court, shall receive a sample of one percent of the deidentified Assets before any further onward transfer. All costs shall be borne by micro1.

f. **Data Residency and Retention**. All storage of the Assets shall be in the United States, with staged delivery into a segregated, access-logged United States environment and destruction of raw employment records following processing.

g. **Advance Waiver**. micro1 waives any and all price-adjustment, walk-right, material adverse effect, indemnity, and title-representation claims arising from data removed pursuant to the protocols described herein. This waiver is what permits the estate to grant the objectors' requested relief without exposing the Debtors to post-closing claims by the buyer—a structural problem under the existing Sale Agreement, which covenants at Section 3(e) that no portion of the Assets has been deleted, modified, or removed.

h. **Affected Employees**. micro1 will provide former Spirit employees with free access to its AI training and re-skilling curriculum and preferential consideration for paid annotation and data-transformation work on the micro1 platform.

**B. Springshot Objection — Field-of-Use Restriction**

9. To address the concerns raised by Springshot, micro1 commits to a field-of-use restriction: micro1 will not develop, market, or operate an airline operations orchestration or execution product, and will not license or transfer the operational corpus to any person for that purpose. micro1 operates no aviation business, no consumer advertising or profiling business, and no product line adjacent to any Spirit vendor. micro1 will enter into a direct stipulation with Springshot making this covenant enforceable through injunctive relief, with notice and cure.

**PROCEDURAL BASIS FOR CONSIDERATION**

10. The Bidding Procedures Order expressly reserves to the Debtors, in consultation with the Consultation Parties, broad authority to "extend the deadlines set forth herein," "waive the terms and conditions set forth herein with respect to Potential Bidders," and "modify these Bidding Procedures and implement additional procedural rules that the Debtors determine, in their discretion and in consultation with the Consultation Parties, will better promote the goals of the Bidding Process and discharge the Debtors' fiduciary duties." Bidding Procedures Order [Dkt No. 1213], Ex. A (Bidding Procedures) § 10. The Bidding Procedures further provide that the Debtors 'shall have the right to deem a bid a Qualified Bid even if such bid does not conform to one or more of the requirements' of the Bidding Procedures. *Id.* § 2.

11. A sale under Section 363(b)(1) of the Bankruptcy Code requires an "articulated business justification' considering 'all salient factors pertaining to the proceeding." *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983). The same authority that permits the Court to approve a sale permits approval on terms. *See* 11 U.S.C. Sections 105(a), 363(e). Here, the business justification is straightforward: micro1's bid delivers a 25% premium in cash consideration while simultaneously resolving each of the pending

objections—eliminating the cost, delay, and appellate risk of a contested sale hearing. Recovery is price multiplied by the probability of closing, less the cost of delay. A bid that arrives with stipulations in hand and agreed decretal language for the Sale Order is worth more to creditors than a bid that arrives with those objections live, contested at a hearing, and exposed to appeal.

12. The adjourned Sale Hearing on September 9, 2026 provides the appropriate forum for the Court and the Debtors to consider micro1's bid. micro1 is available, and intends, to meet with the Debtors and their advisors, and with counsel to each of the objecting parties, at any time before the Sale Hearing to negotiate definitive documentation and stipulations of non-objection.

[*Remainder of page intentionally left blank.*]

Dated: September 3, 2026
New York, New York

Respectfully submitted,

**GLENN AGRE BERGMAN & FUENTES LLP**

*/s/ Andrew K. Glenn*
Andrew K. Glenn
Malak S. Doss
1185 Avenue of the Americas
22nd Floor
New York, New York 10036
Telephone: (212) 970-1600
Email: aglenn@glennagre.com
mdoss@glennagre.com

*Counsel to micro1 Inc.*