**Hearing Date and Time: 11:00 a.m.[1] on September 30, 2026**
**Objection Deadline: 4:00 p.m. on September 23, 2026**

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Tel.: (212) 450-4000
Marshall S. Huebner
Darren S. Klein
Christopher S. Robertson
Noah Z. Sosnick

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **SPIRIT AVIATION HOLDINGS, INC., *et al.*,** | **Case No. 25-11897 (SHL)** |
| **Debtors.[2]** | **Jointly Administered** |

**NOTICE OF HEARING ON MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER (I) APPROVING THE SETTLEMENT AGREEMENT AND RELEASE BETWEEN THE DEBTORS AND LUFTHANSA TECHNIK AG AND (II) GRANTING RELATED RELIEF**

**PLEASE TAKE NOTICE** that, on September 9, 2026, the above-captioned debtors and debtors in possession (the "**Debtors**") filed the *Motion of the Debtors for Entry of an Order (I) Approving the Settlement Agreement and Release Between the Debtors and Lufthansa Technik AG and (II) Granting Related Relief* (the "**Motion**").

**PLEASE TAKE FURTHER NOTICE** that a hearing (the "**Hearing**") has been scheduled for **11:00 a.m. on September 30, 2026**, before the Honorable Sean H. Lane, United States Bankruptcy Judge, in the United States Bankruptcy Court for the Southern District of New York (the "**Court**"), to consider the relief requested in the Motion.

**PLEASE TAKE FURTHER NOTICE** that the Hearing will be conducted via Zoom for Government. Parties wishing to appear at or attend the Hearing (whether "live" or "listen only") are required to register their appearance at https://ecf.nysb.uscourts.gov/cgi-bin/nysbAppearances.pl by **11:00 a.m. on September 29, 2026**. Instructions and additional

[1] All times herein and in the Motion (as defined below) are expressed in prevailing Eastern Time.

[2] The Debtors' names and last four digits of their respective employer identification numbers are as follows: Spirit Aviation Holdings, Inc. (1797); Spirit Airlines, LLC (7023); Spirit Finance Cayman 1 Ltd. (7020); Spirit Finance Cayman 2 Ltd. (7362); Spirit IP Cayman Ltd. (4732); and Spirit Loyalty Cayman Ltd. (4752). The Debtors' mailing address is 1731 Radiant Drive, Dania Beach, FL 33004.

information about the Court's remote attendance procedures can be found at https://www.nysb.uscourts.gov/ecourt-appearances. The Court will circulate by email the Zoom link to the Hearing to those parties who properly made an electronic appearance prior to the Hearing.

**PLEASE TAKE FURTHER NOTICE** that the Hearing may be continued or adjourned from time to time by an announcement of the adjourned date or dates at the Hearing or a later hearing or by filing a notice with the Court.

**PLEASE TAKE FURTHER NOTICE** that responses or objections to the relief requested at the Hearing shall be (a) in writing, in English, and in text-searchable format, (b) filed with the Court electronically, and (c) served on the Debtors and the Notice Parties (as defined in the Motion) so as to be received no later than **4:00 p.m. on September 23, 2026** (the "**Objection Deadline**"), in each case, in accordance with the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**"), the Court's *Order Implementing Certain Notice and Case Management Procedures* [ECF No. 61], and the Court's Chambers' Rules (available at https://www.nysb.uscourts.gov/content/judge-sean-h-lane), to the extent applicable.

**PLEASE TAKE FURTHER NOTICE** that all objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted upon default.

**PLEASE TAKE FURTHER NOTICE** that, if no responses or objections are timely filed and served with respect to the Motion, the Debtors may, on or after the Objection Deadline, submit to the Court an order, substantially in the form of the proposed order attached to the Motion, under certification of counsel or certification of no objection, which order may be entered by the Court without further notice or opportunity to be heard.

**PLEASE TAKE FURTHER NOTICE** that copies of the Motion and any other document filed publicly in the above-captioned proceedings are available free of charge at https://dm.epiq11.com/SpiritAirlines.

Dated: September 9, 2026
New York, New York

DAVIS POLK & WARDWELL LLP

By: *\/s/ Noah Z. Sosnick*

450 Lexington Avenue
New York, NY 10017
Tel.: (212) 450-4000
Marshall S. Huebner
Darren S. Klein
Christopher S. Robertson
Noah Z. Sosnick

*Counsel to the Debtors and Debtors in Possession*

**Hearing Date and Time: 11:00 a.m. on September 30, 2026**
**Objection Deadline: 4:00 p.m. on September 23, 2026**

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Tel.: (212) 450-4000
Marshall S. Huebner
Darren S. Klein
Christopher S. Robertson
Noah Z. Sosnick

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **SPIRIT AVIATION HOLDINGS, INC., *et al.*,** | **Case No. 25-11897 (SHL)** |
| **Debtors.[1]** | **Jointly Administered** |

**MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER (I) APPROVING THE SETTLEMENT AGREEMENT AND RELEASE BETWEEN THE DEBTORS AND LUFTHANSA TECHNIK AG AND (II) GRANTING RELATED RELIEF**

Spirit Aviation Holdings, Inc. and its subsidiaries (collectively, the "**Debtors**"), each of which is a debtor and debtor in possession in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), hereby file this *Motion of the Debtors for Entry of an Order (I) Approving the Settlement Agreement and Release between the Debtors and Lufthansa Technik AG and (II) Granting Related Relief* (this "**Motion**"). This Motion is supported by the *Declaration of Pedro Motta in Support of (I) the LHT Settlement Motion and (II) the Sealing Motion* (the "**Motta**

---

[1] The Debtors' names and last four digits of their respective employer identification numbers are as follows: Spirit Aviation Holdings, Inc. (1797); Spirit Airlines, LLC (7023); Spirit Finance Cayman 1 Ltd. (7020); Spirit Finance Cayman 2 Ltd. (7362); Spirit IP Cayman Ltd. (4732); and Spirit Loyalty Cayman Ltd. (4752). The Debtors' mailing address is 1731 Radiant Drive, Dania Beach, FL 33004.

**Declaration**") filed contemporaneously herewith and incorporated herein by reference. In further support of this Motion, the Debtors respectfully state as follows:

## Relief Requested

1. By this Motion, and pursuant to sections 362, 363, 503, 507 and 105(a) of title 11 of the United States Code (the "**Bankruptcy Code**") and rules 6004 and 9019 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "**Proposed Order**"), (a) approving the Settlement Agreement and Release (together with all exhibits, side letters, annexes, and schedules attached thereto, the "**Settlement Agreement**") between the Debtors and Lufthansa Technik AG ("**LHT**") attached to the Proposed Order as Exhibit 1 and (b) granting related relief.[2]

## Jurisdiction and Venue

2. The United States Bankruptcy Court for the Southern District of New York (the "**Court**") has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference M-431*, dated January 31, 2012 (Preska, C.J.).

3. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b). The Debtors confirm their consent to the entry of a final order by the Court in connection with this Motion.

4. Venue of the Chapter 11 Cases and related proceedings is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

[2] For the avoidance of doubt, this Motion provides an overview of the Settlement Agreement and various terms thereof. Any summary or recitation of the settlement terms is not intended to displace or supersede the actual terms of the Settlement Agreement.

## Background

5. On August 29, 2025 (the "**Petition Date**"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Chapter 11 Cases are being jointly administered, for procedural purposes only, pursuant to Bankruptcy Rule 1015(b), as ordered by the Court [ECF No. 35].

6. On September 17, 2025, the United States Trustee for the Southern District of New York (the "**U.S. Trustee**") appointed an Official Committee of Unsecured Creditors (the "**Committee**") pursuant to section 1102 of the Bankruptcy Code [ECF No. 117].

7. Additional information about the events leading up to the Petition Date and the Debtors' businesses, affairs, capital structure, and prepetition indebtedness can be found in the *Declaration of Fred Cromer in Support of the Chapter 11 Proceedings and First Day Pleadings* [ECF No. 19] (the "**First Day Declaration**").[3]

8. On May 8, 2026, the Bankruptcy Court entered the *Order (I) Authorizing the Debtors to Wind Down Operations, (II) Approving the Debtors' Use of Cash Collateral and Amendments to the DIP Credit Agreement and Final DIP Order, (III) Authorizing Modification or Termination of the Debtors' Employee Programs, (IV) Approving Wind-Down Incentive and Retention Plan, (V) Approving Modification of Contract Rejection Procedures, (VI) Approving Non-Fleet Assets Sale Procedures, (VII) Approving Non-Fleet Assets Abandonment Procedures, (VIII) Approving the Use of Certain Third-Party Contractors, (IX) Approving Protections for Certain Persons Implementing the Wind-Down, (X) Enforcing an Administrative Stay, (XI) Authorizing the Preemption of Applicable Laws and Ordinances for the Debtors to Effectuate the*

---

[3] Capitalized terms used but not defined herein shall have the meanings set forth in the First Day Declaration or the Settlement Agreement, as applicable.

*Wind-Down, (XII) Authorizing the Debtors to Take Any and All Actions Necessary to Implement the Wind-Down, and (XIII) Granting Related Relief* [ECF No. 1048] (the "**Wind-Down Order**").

## Preliminary Statement

9. On or about October 1, 2004, Spirit and LHT entered into that certain Agreement on Technical Services (Agreement No. 10834) (the "**Service Agreement**"), pursuant to which LHT has historically provided Spirit with maintenance, repair, overhaul, component, material pool, exchange and related aviation services. Among other things, LHT positioned certain LHT owned parts at Spirit's facility in Florida which were made available for exchange or other use to support Spirit's operation (the "Identified Home Base Parts" defined in the Settlement Agreement). As of the Petition Date and on a post-petition basis, the parties had various outstanding disputes under the Service Agreement, including with respect to amounts owed for services and parts, annual rate reconciliation adjustments, LHT's retention of a Spirit-owned engine as security for claimed amounts, and tariff-related payments. *See* Motta Decl. ¶ 4. Since nearly the outset of these cases, the Debtors and LHT engaged in negotiations to settle fully and finally any and all claims, disputes arising under the Service Agreement or otherwise. *See* Motta Decl. ¶ 4.

10. These negotiations culminated in the Settlement Agreement. The Settlement Agreement resolves all outstanding disputes between Spirit and LHT arising under the Service Agreement, including disputes relating to the outstanding balance claimed by LHT as of May 2, 2026 of approximately $23,292,216.42 (on an aggregate basis), as well as disputes relating to LHT's retention of a Spirit-owned IAE V2500 engine (ESN V18453) (the "**Spirit Engine**") and approximately $2,111,223 in tariffs paid by Spirit to LHT.

11. The settlement embodied in the Settlement Agreement includes the following key terms, among others:

- Spirit shall pay to LHT a cash settlement payment of $2,500,000.00 (the "**Settlement Payment**").

- LHT shall be allowed an administrative expense claim in the amount of $13,813,873.37.

- Spirit waives any claim or right to seek a refund of approximately $2,111,223 in tariffs previously paid by Spirit to LHT. In addition, LHT shall retain, and Spirit shall waive and release any claim to (i) a $300,000.00 downpayment and (ii) a $96,191.14 overpayment, each held by LHT under the Service Agreement, and none of such amounts shall be credited or offset against any amounts owed by Spirit to LHT under the Settlement Agreement or otherwise.

- Upon LHT's receipt of the Settlement Payment in full and the Identified Home Base Parts, LHT shall release and ship the Spirit Engine to Spirit, at Spirit's sole cost and expense (prepaid by Spirit to LHT at or prior to Closing).

- Spirit will return to LHT the 23 Identified Home Base parts identified on Schedule 2.a to the Settlement Agreement. Each of Spirit and LHT hold additional parts of the other in connection with the Service Agreement. All of these other parts in each such Party's possession (the "**Retained Parts**") shall be retained by the possessing Party, with ownership transferring automatically on the Effective Date (as defined in the Settlement Agreement). Pursuant to the Parts Exchange Letter Agreement (which is fully incorporated into the Settlement Agreement and attached thereto as Schedule 1) the Parties have agreed to formalize this exchange, with no cash payment due from either Party in respect of the Retained Parts.

- The Parties will mutually release each other of all claims or causes of actions involving the Disputes. The mutual releases do not release (i) any rights and obligations of the Parties under the Settlement Agreement, or (ii) any rights of Spirit and its assignees and obligations of LHT in respect of warranties given under the Service Agreement in respect of services rendered and parts supplied by LHT prior to the Effective Date.

12. The Settlement Agreement, if approved, will further the Debtors' goal of effecting a value maximizing liquidation of the Debtors' estates. Specifically, the Settlement Agreement permits Spirit to retain valuable equipment and to reacquire the Spirit Engine, each of which are valuable assets that may be monetized by the Debtors, in exchange for the Settlement Payment and allowance of the agreed-upon administrative expense claim. Accordingly, and for the reasons set forth herein, the Debtors submit that the Motion should be granted and the Settlement Agreement should be approved.

## <u>Basis for Relief</u>

### A. The Court Should Approve the Settlement of Claims Under Bankruptcy Rule 9019

13. By this Motion, the Debtors seek approval of the Settlement Agreement between the Debtors and LHT. The Debtors and LHT engaged in good-faith negotiations at arm's length, which led to the Settlement Agreement that settles potentially costly disputes with LHT and provides the Debtors with valuable equipment and property, including the Spirit Engine. *See* Motta Decl. ¶ 7.

14. A court should exercise its discretion to approve the settlement "in light of the general public policy favoring settlements." *In re Hibbard Brown & Co.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998). Indeed, courts in this district have made clear that "[a]s a general matter, 'settlements and compromises are favored in bankruptcy as they minimize costly litigation and further parties' interests in expediting the administration of the bankruptcy estate.'" *In re Republic Airways Holdings, Inc.*, 2016 WL 2616717, No. 16-10429 (SHL) at *3 (Bankr. S.D.N.Y. May 4, 2016) (citing *In re Dewey & LeBouef LLP*, 478 B.R. 626, 640 (Bankr. S.D.N.Y. 2012)); *see also Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 455 (2d Cir. 2007) (stating that settlements "help clear a path for the efficient administration of the bankrupt estate").

15. Under Bankruptcy Rule 9019 and governing case law, a court should approve a compromise or settlement where it makes an independent determination that the compromise or settlement is fair and equitable, reasonable, and in the best interests of the debtor's estate. *See, e.g., In re Republic Airways*, 2016 WL 2616717 at *3; *see also In re Genesis Glob. Holdco, LLC,* 2023 WL 6543250, at *5 (Bankr. S.D.N.Y. Oct. 6, 2023); *Ionosphere Clubs, Inc. v. Am. Nat'l Bank & Trust Co. of Chicago (In re Ionosphere Clubs, Inc.)*, 156 B.R. 414, 426 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994); *Nellis v. Shugrue*, 165 B.R. 115, 122–23 (S.D.N.Y. 1994). In so

doing, a court may consider the opinions of the trustee or debtor in possession that the settlement is fair and equitable. *See id.*; *see also In re Purofied Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993).

16. In assessing whether to approve a settlement, a court need not decide the issues of law and fact raised by the settlement, but rather should "canvass the issues and see whether the settlement fall[s] below the lowest point in the range of reasonableness." *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983) (alteration in original) (citations and quotations omitted). Put differently, "the court need not conduct a 'mini-trial' to determine the merits of the underlying litigation." *In re Purofied Down Prods.*, 150 B.R. at 522. In this regard, "[t]he 'reasonableness' of [a] settlement depends upon all factors, including probability of success, the length and cost of the litigation, and the extent to which the settlement is truly the product of 'arms-length' bargaining, and not fraud or collusion." *In re Ionosphere Clubs, Inc.*, 156 B.R. at 428.

17. Courts in the Second Circuit have described the following seven interrelated factors that a bankruptcy court should consider in exercising its discretion under Rule 9019: (1) the balance between the litigation's possibility of success and the settlement's future benefits; (2) the likelihood of complex and protracted litigation, with its attendant expense, inconveniences, and delay; (3) the paramount interest of the creditors; (4) whether other parties in interest affirmatively support the proposed settlement; (5) the nature and breadth of releases to be obtained by officers and directors; (6) whether the competency and experience of counsel support the settlement; and (7) the extent to which the settlement is the product of arm's-length bargaining. *See In re Iridium Operating LLC*, 478 F.3d 452, 462 (2d Cir. 2007); *see also Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 292 (2d Cir. 1992); *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 427 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994). When assessing a global settlement of claims, "[t]he

appropriate inquiry is whether the [s]ettlement [a]greement is **in its entirety** appropriate for the [] estate." *In re Ionosphere Clubs*, 156 B.R. at 430 (emphasis added).

18. The Debtors respectfully submit that the *Iridium* factors weigh overwhelmingly in favor of approval of the settlements and compromises contained in the Settlement Agreement, satisfying the range of reasonableness test and settlement standard described above. As to the first and second *Iridium* factors, the likelihood of success on the merits of claims against LHT – which would require costly litigation at a time when preserving costs is of the utmost important – is speculative and uncertain. *See* Motta Decl. ¶ 8. Weighing the uncertainty of success on the merits against the value provided by the compromise, the Debtors believe that the transactions, settlement and compromise of claims and disputes contained in the Settlement Agreement is highly favorable to the Debtors and their estates. *See* Motta Decl. ¶ 8. On the third factor, the settlement benefits the interest of creditors by providing the Debtors with valuable monetizable property, which will enable the Debtors to materially advance the goal of liquidating their assets and distributing amounts to their creditors. *See* Motta Decl. ¶ 8. The fifth factor weighs in favor of approval of the Settlement Agreement, as the release of Spirit's directors and officers is limited to certain claims held by LHT and its related parties, and therefore, the nature and breadth of the release is appropriately limited. And the sixth and seventh factors indisputably weigh in favor of approval, as the transactions contained in the Settlement Agreement is the product of arm's-length bargaining amongst parties represented by highly experienced counsel. *See* Motta Decl. ¶ 7.

19. Moreover, viewed in its entirety, the settlement of claims and disputes is entirely appropriate and is far above the lowest range of reasonableness. *See* Motta Decl. ¶ 8. Accordingly, the Debtors respectfully request that the Court approve the Settlement Agreement.

## **Waiver of Bankruptcy Rules 6004(a) and 6004(h)**

20. To implement successfully the relief sought herein, the Debtors request that the Court find that notice of the Motion is adequate under Bankruptcy Rule 6004(a) under the circumstances. The Debtors also request that, to the extent applicable to the relief requested in this Motion, the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[u]nless the court orders otherwise, an order authorizing the use, sale, or lease of property (other than cash collateral) is stayed for 14 days after the order is entered." Fed. R. Bankr. P. 6004(h). As described above, the relief requested in this Motion is necessary for the Debtors to operate their businesses without interruption and to preserve and maximize value for their estates and parties in interest. Accordingly, the Debtors respectfully submit that ample cause exists to justify the (a) finding that the notice requirements under Bankruptcy Rule 6004(a) have been satisfied and (b) waiving of the 14-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

## **Notice**

21. Notice of this Motion will be provided to the following parties (or their counsel) (collectively, the "**Notice Parties**"): (a) the U.S. Trustee; (b) the Committee; (c) the Ad Hoc Committee of Senior Secured Noteholders; (d) LHT; and (e) any other party that is entitled to notice under the Court's *Order Implementing Certain Notice and Case Management Procedures* [ECF No. 61]. A copy of this Motion and any order entered in respect thereto will also be made available on the Debtors' case information website located at https://dm.epiq11.com/SpiritAirlines. Based on the circumstances surrounding this Motion and the nature of the relief requested herein, the Debtors respectfully submit that no other or further notice is required.

*[Remainder of page intentionally left blank]*

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other and further relief as the Court deems just and proper.

Dated: September 9, 2026
New York, New York

DAVIS POLK & WARDWELL LLP

*/s/ Noah Z. Sosnick*
450 Lexington Avenue
New York, NY 10017
Tel.: (212) 450-4000
Marshall S. Huebner
Darren S. Klein
Christopher S. Robertson
Noah Z. Sosnick

*Counsel to the Debtors and Debtors in Possession*

# Exhibit A

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:**<br><br>**SPIRIT AVIATION HOLDINGS, INC.,** ***et al.*****,**<br><br>**Debtors.**[1] | **Chapter 11**<br><br>**Case No. 25-11897 (SHL)**<br><br>**Jointly Administered** |

**ORDER (I) APPROVING THE SETTLEMENT AGREEMENT AND RELEASE BETWEEN THE DEBTORS AND LUFTHANSA TECHNIK AG AND <u>(II) GRANTING RELATED RELIEF</u>**

Upon the motion (the "**Motion**")[2] of Spirit Aviation Holdings, Inc. and its direct and indirect subsidiaries (collectively, the "**Debtors**"), each of which is a debtor and debtor in possession in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), for entry of an order (this "**Order**") pursuant to sections 105(a), 503, 507 and 553 of the Bankruptcy Code, and Bankruptcy Rules 6004 and 9019, (a) approving the Settlement Agreement attached hereto as **<u>Exhibit 1</u>**, and (b) granting related relief, as set forth more fully in the Settlement Agreement, Motion and Motta Declaration; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference M-431*, dated January 31, 2012 (Preska, C.J.); and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157; and the Court having found that it may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue of the Chapter 11 Cases and

---

1 The Debtors' names and last four digits of their respective employer identification numbers are as follows: Spirit Aviation Holdings, Inc. (1797); Spirit Airlines, LLC (7023); Spirit Finance Cayman 1 Ltd. (7020); Spirit Finance Cayman 2 Ltd. (7362); Spirit IP Cayman Ltd. (4732); and Spirit Loyalty Cayman Ltd. (4752). The Debtors' mailing address is 1731 Radiant Drive, Dania Beach, FL 33004.

2 Unless defined herein, all defined terms shall have the meanings ascribed to them as contained in the Motion or the Settlement Agreement.

related proceedings being proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to the Notice Parties, such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and the Court having reviewed and considered the Motion, the Motta Declaration and the First Day Declaration; and the Court having determined that the legal and factual bases set forth in the Motion and the Motta Declaration and at the Hearing establish just cause for the relief granted herein; and the Court having found that the relief requested in the Motion represents a sound exercise of the Debtors' business judgment, and is in the best interests of the Debtors, their creditors, their estates, and all other parties in interest; and all objections and reservations of rights filed or asserted in respect of the Motion, if any, having been withdrawn, resolved, or overruled with prejudice; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1. The Motion is granted as set forth herein.

2. The Settlement Agreement, attached hereto has **Exhibit 1**, and all the terms and conditions thereof, and all the transactions and agreements contemplated thereby or embodied therein are hereby approved pursuant to Bankruptcy Rule 9019(a) in all respects and (a) represent a valid exercise of the Debtors' business judgment, (b) are supported by reasonable consideration, and (c) are fair and equitable and in the best interest of the Debtors' estates.

3. The Debtors are authorized to (i) execute and deliver all documentation, necessary to implement and effectuate the terms and conditions of the Settlement

Agreement and this Order, (ii) comply with all obligations and make all payments provided for in the Settlement Agreement, and (iii) take any additional actions as are reasonably necessary or appropriate to implement and effectuate the settlement and the transactions outlined in the Settlement Agreement, it being the intent of this Court that the terms set forth in the Settlement Agreement be approved in their entirety, and the failure to specifically describe or include any provision of the Settlement Agreement in the Motion or this Order shall not diminish or impair the effectiveness of such provision.

4. LHT shall be and is granted an allowed Pre-Wind Down Administrative Expense Claim (as defined in the *Order (I) Setting a Bar Date for Filing Proofs of Claim for Pre-Wind Down Administrative Expense Claims against the Debtors, (II) Establishing Pre-Wind Down Administrative Expense Claims Procedures, and (III) Granting Related Relief* [ECF 1215]) in the amount of $13,813,873.37 pursuant to sections 503 and 507 of the Bankruptcy Code.

5. The automatic stay imposed under section 362(a) of the Bankruptcy Code, to the extent applicable, is hereby modified and lifted to permit the parties to enter into, amend, or modify (as applicable) the Settlement Agreement and any amendments and/or modifications thereto.

6. The Settlement Agreement, and the other transaction instruments, agreements, and documents related thereto may be modified, amended, or supplemented by the parties thereto in a writing signed by the parties thereto, and in accordance with the terms thereof, without further order of the Court.

7. No prepetition or postpetition payment made by the Debtors to LHT, or any setoff or application of proceeds of letters of credit by, or any lien granted to, LHT,

including, without limitation, any payments or transfers made by the Debtors to LHT under any instrument or agreement by and between the Debtors and LHT, or pursuant to this Order (including administrative expense claims) allowed or granted under this Order shall be stayed, restrained, voidable, avoidable, or recoverable under the Bankruptcy Code or any applicable law (including, without limitation, under sections 502(d), 544, or 547 through 550 of the Bankruptcy Code or under any applicable state Uniform Voidable Transactions Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or similar statute or common law), or subject to any contest, attack, rejection, defense, avoidance, reduction, setoff, recoupment, recharacterization, or subordination (whether equitable, contractual, or otherwise), disallowance, impairment, claim, counterclaim, cross-claim, or any other challenge under the Bankruptcy Code, any other order of the Court or applicable law, or regulation by any person or entity.

8. Notwithstanding any subsequent appointment of any trustee(s) under any chapter of the Bankruptcy Code, this Order and the terms and conditions of the Settlement Agreement shall be binding in all respects upon, and shall inure to the benefit of, the Debtors, their estates, and their creditors, their respective affiliates, successors, and assigns, including any subsequently appointed trustee, and any affected third parties, including, but not limited to, LHT, its affiliates, and subsidiaries.

9. LHT shall be entitled to the protections afforded under section 363(m) of the Bankruptcy Code with respect to all of the transactions set forth in the Settlement Agreement or as otherwise provided for herein.

10. Notice of the Motion is adequate under Bankruptcy Rule 6004(a). Notwithstanding the provisions of Bankruptcy Rule 6004(h), this Order shall be immediately effective and enforceable upon its entry.

11. The Debtors are authorized to take, or refrain from taking, any action necessary or appropriate to implement and effectuate the terms of, and the relief granted in, this Order without seeking further order of the Court.

12. During the pendency of the Chapter 11 Cases or the conversion thereof, this Court shall retain exclusive jurisdiction over any and all matters arising from or related to the implementation, interpretation, and enforcement of this Order and the Settlement Agreement.

Dated: ________________, 2026
New York, New York

_______________________________________
THE HONORABLE SEAN H. LANE
UNITED STATES BANKRUPTCY JUDGE

# Exhibit 1

## Settlement Agreement

# SETTLEMENT AGREEMENT AND RELEASE

This *Settlement Agreement and Release* (this "Agreement") is made and entered into as of 4 September, 2026, by and among SPIRIT AIRLINES, LLC ("Spirit"), debtor in possession, and LUFTHANSA TECHNIK AG ("LHT"). Spirit and LHT are referred to as the "Parties" or, individually, as a "Party", and it is intended by the Parties hereto to settle fully and finally any and all claims, disputes and/or differences between them, as set forth more fully below.

## I. Recitals

This Agreement is entered into with reference to the following recitals:

1. On or about October 1, 2004, the Parties entered into an *Agreement on Technical Services (Agreement No. 10834)* (comprehensively, the "Service Agreement") which consists of a certain *General Terms Agreement* (the "GTA"), multiple *Attachments* and *Annexes* covering distinct maintenance service lines including among others (i) the *Component Maintenance Services Attachment*, (ii) the *Material Pool Attachment*, and (iii) the *Home Base Attachment* (collectively, the "Original Attachments"), and thirty-nine amendments and multiple side letters including a certain *Amended and Restated Component Maintenance Service Agreement* entered into as of December 15th, 2025 (the "December 2025 Amendment").

2. As more fully described in Article 7.1 of the GTA, LHT and Spirit are required to perform a reconciliation for the prior calendar year that will result in a retroactive MCPH-C/MCPOH rate adjustment for the prior calendar year if any one or more of the Flight Hours (Fleet Average), Hour to Cycle Ratio (Fleet Average) or Fleet Size (as each of those terms are defined in the GTA), fall outside of the range of the defined assumptions set forth in the GTA with the reconciled rate adjustment thereafter settled and paid to the appropriate Party (generally, the "Flight Hour Balancing").

3. On or about August 29, 2025 (the "Petition Date"), Spirit voluntarily filed petitions for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq*. (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), which has proceeded on a jointly-administered basis under the case captioned *In re Spirit Aviation Holdings, Inc.*, Case No. 25-11897 (generally, the "Chapter 11 Case").

4. As of Petition Date, LHT claims that Spirit owed at least US$22,527,940.77 (on an aggregate basis, the "Outstanding Balance") which included (i) at least US$15,280,809.37 for services and parts purchased by Spirit and provided by LHT and (ii) at least US$7,247,131.40 for the prepetition portion of the 2025 Flight Hour Balancing, and is registered by LHT's timely filed proofs of claim, numbers 10273 and 10276 (together, the "LHT POCs"). Post-petition and in the ordinary course of business, the Parties entered into the December 2025 Amendment which amended and restated the terms and conditions for Spirit to obtain component services from LHT and, amongst other things, provided for a US$6,000,000 payment by Spirit to LHT credited against the Outstanding Balance.

5. Pursuant to the terms of the Service Agreement, LHT accomplished services on a Spirit-owned IAE V2500 engine (ESN V18453) (the "Spirit Engine"). Spirit paid for

such services in full in accordance with the Service Agreement. Nevertheless, LHT has retained possession of the Spirit Engine as security for payment of other unrelated amounts claimed to be due to LHT from Spirit under the Service Agreement.

6. Prior to the date of this Agreement, Spirit paid LHT approximately US$2,100,000 in tariffs (the "Tariffs") for which Spirit has requested a refund from LHT, while LHT asserts that Spirit owes LHT approximately US$300,000 on account of Tariffs.

NOW, THEREFORE, in consideration of the mutual covenants contained herein and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties covenant and agree as follows:

## II. Settlement Terms

**Section 1. Bankruptcy Court Approval; Closing**:

a. **Bankruptcy Court Approval.** This Agreement is subject to approval by the Bankruptcy Court and shall only be effective on the first Business Day (the "Effective Date") following the entry of an order approving this Agreement that is not subject to stay. Spirit will prepare and file a pleading with the Bankruptcy Court seeking approval of this Agreement (which may be in the form of a notice of presentment, stipulation and agreed order, or motion, as agreed between Spirit and LHT in accordance with applicable Bankruptcy Court rules).

b. **Closing.** The closing of the transactions contemplated by this Agreement (the "Closing") shall take place on the date that is five (5) Business Days after the Effective Date (the "Closing Date"). At or after the Closing: (i) Spirit shall pay to LHT the Settlement Payment in accordance with Section 2.c; (ii) LHT shall release and ship the Spirit Engine to Spirit in accordance with Section 2.e; (iii) Spirit shall make the Identified Home Base Parts available to LHT in accordance with Section 2.a; and (iv) the Parties shall complete all other deliverables required to be completed by such Party under this Agreement. Subject to and following Bankruptcy Court approval, time is of the essence with respect to the occurrence of the Closing.

c. **Business Day.** "Business Day" means any day other than a Saturday, Sunday, or a day on which banking institutions are authorized or required by applicable law to be closed in each of Fort Lauderdale, Florida and Hamburg, Germany.

d. **Effect of Non-Approval.** If the Bankruptcy Court does not enter an order approving this Agreement, then: (i) this Agreement shall automatically terminate and be null and void ab initio and of no further force or effect; (ii) no Party shall have any obligation to perform, and shall not be deemed to have waived any right by not performing, any term of this Agreement; (iii) the Parties' respective rights, claims, and defenses with respect to the Disputes shall be fully preserved in all respects as if this Agreement had never been executed, and any amounts paid or property delivered by either Party in anticipation of the Closing shall be promptly returned to the paying or delivering Party; and (iv) each Party shall bear its own costs and expenses incurred in connection with this Agreement and the Bankruptcy Court documentation for approval thereof.

**Section 2. Resolution of Disputes**. In valid consideration for resolution of all disputes among the Parties as generally summarized in the Recitals, including, without limitation, the payment of

the Settlement Payment (collectively, the "Disputes"), the Parties agree to the following terms and conditions as of the Effective Date or as otherwise expressly provided:

a. **Return of Homebase Parts**. The Parties have identified 23 Home Base parts identified on Schedule 2.a (the "Identified Home Base Parts") which Spirit will make available to LHT for retrieval at the Closing at Spirit's facility located at 650 SW 34th St Suite 101, Fort Lauderdale, FL 33315, USA. All Identified Home Base Parts will be returned to LHT in their "AS-IS" condition without any warranty or guarantee, other than there will have been no liens on such parts arising by or through Spirit. Spirit makes no other warranty, express or implied, in respect of the condition or documentation of such parts.

b. **Retention of Additional Parts**. Except as to the Identified Home Base Parts which shall be returned to LHT in accordance with Section 2.a, each Party shall, with effect at Closing, retain possession of any and all other parts of the other party which are presently in their possession or control and/or which may otherwise be discovered or become in their possession or control (the "Retained Parts"), with ownership of such parts transferring automatically and without further act to the Party in possession on the Effective Date. Other than with respect to the Identified Home Base Parts to be returned by Spirit under Section 2.a, neither Party shall have any obligation to locate, return, purchase, or make any cash buyout or other payment to the other for any Retained Parts or other parts that are not located or not in such Party's possession, and each Party's retention of the Retained Parts in its respective possession shall fully and finally satisfy the Parties' respective obligations with respect to all parts stored, retained, repaired and/or maintained under the Service Agreement or otherwise on or prior to the date of this Agreement. All Retained Parts are in their "AS-IS, WHERE IS" condition without any warranty or guarantee, other than there will have been no liens on such parts arising by or through the Party releasing its respective Retained Parts. Neither Party makes any other warranty, express or implied, in respect of the title, condition or documentation of such Retained Parts. The Parties shall execute a Parts Exchange Side Letter Agreement documenting the value of the Retained Parts.

c. **Payment to LHT**. At the Closing, Spirit shall pay to LHT US$2,500,000.00 (the "Settlement Payment"). Such payment shall be made in immediately available funds by wire transfer to the following account:

Citibank N.A., New York, U.S.A.
Account: 40 652 003
ABA/Bank Code: 021 000 089
SWIFT: CITIUS33

d. **Waiver of Tariff Refund Claims**. Spirit waives any claim or right to seek a refund or repayment of any Tariffs paid to LHT.

e. **Release of Spirit Engine**. Upon LHT's receipt of the Settlement Payment in full and the Identified Home Base Parts, LHT shall release and ship to Spirit, at Spirit's sole cost and expense which shall be prepaid by Spirit to LHT at or prior to Closing, the Spirit Engine. The Spirit Engine will be returned to Spirit F.C.A. (Incoterms 2020) at LHT's facility located in Weg beim Jäger 193, 22335 Hamburg, Germany (the "Return Location") to a location advised by Spirit prior to the Effective Date. Prior to the Closing Date, LHT shall have installed the Spirit Engine

on a suitable and approved engine transportation stand. Spirit will use commercially reasonable efforts to locate and deliver the engine transportation to the Return Location prior to the Effective Date. At the time of release, LHT shall deliver to Spirit, together with the Spirit Engine, all engine logbooks, technical records, trace documentation, and, to the extent applicable, an FAA Form 8130-3 airworthiness release certificate in LHT's possession or control relating to the Spirit Engine and its most recent service performed under the Service Agreement, all in accordance with the terms of the Service Agreement. The Spirit Engine shall be returned free and clear of any lien, claim, or right of retention of LHT or any other party claiming by or through LHT. All warranties applicable to the services rendered and parts supplied to the Spirit Engine under the Service Agreement shall remain in full force and effect from the date of return of the Spirit Engine to Spirit.

f. **Allowance of Administrative Expense Claims**. On the Effective Date, LHT shall be allowed an administrative expense claim in the amount of US$13,813,873.37.

g. **No Offset of Prior Payments**. LHT shall be entitled to maintain for itself, and Spirit shall waive and release any claim to, each of (i) the US$300,000.00 downpayment and (ii) the US$96,191.14 overpayment held by LHT under the Consumable and Expandable Supply Attachment to the GTA, and such amounts shall not be credited or offset against any amounts owed or payable by Spirit to LHT under this Agreement or for any other reason.

h. **Mutual Releases.** In consideration of the global settlement of all Disputes, the Parties shall exchange mutual releases as more specifically provided in Section 3 of this Agreement.

i. **Open Exchange Parts**. Neither Party shall have any obligation to return, exchange, or buy out any open exchange parts, exchange units, or exchange obligations outstanding as between the Parties as of the Effective Date, and any and all such obligations are fully and finally resolved, satisfied, and extinguished as of the Effective Date.

j. **Continuation of Commercial Relationship; Future Services**. The Parties intend to normalize their commercial relationship following the Effective Date subject to and in accordance with the wind-down operations order and budgets approved by the Bankruptcy Court [ECF No. 1048] (the "Wind Down Operations Order"). Any future maintenance, repair, overhaul, component, material pool, or related services to be provided by LHT to Spirit shall be provided pursuant to the terms of the Service Agreement, provided that Spirit agrees and shall be required to prepay for any such services and LHT shall not be required to provide any services to the extent the cost thereof exceeds amounts budgeted in the Approved Wind Down Budget (as defined in the Wind Down Operations Order).

**Section 3. Mutual Releases**:

a. **Release of LHT**: With effect at and from Closing, Spirit, on behalf of itself and each of its past, present and future parents, divisions, subdivisions, companies, subsidiaries, affiliates, departments, managers, independent managers, licensees, sublicensees, trustees, creditors, partners, joint venturers, principals, officers, stockholders, directors, members, employees, agents, representatives, attorneys, predecessors, successors, assigns, assignees, heirs, executors and administrators (collectively, the "Spirit Release Parties") hereby unconditionally

and irrevocably remises, releases, and forever discharges each of the LHT parties and each of their respective past, present and future parents, divisions, subdivisions, companies, subsidiaries, affiliates, departments, managers, licensees, sublicensees, trustees, creditors, partners, joint venturers, principals, officers, stockholders, directors, members, employees, agents, representatives, attorneys, predecessors, successors, assigns, assignees, heirs, executors and administrators (collectively, the "LHT Release Parties") of and from any and all existing or potential claims, demands, damages, debts, promises, agreements, judgments, liabilities, accounts, obligations, costs, expenses, liens, actions, suits, and causes of action of any kind and nature whatever, whether now known or unknown, suspected or unsuspected, liquidated or unliquidated, including without limitation any and all claimed or unclaimed statutory damages, compensatory damages, consequential damages, interest, costs, expenses and fees (including reasonable or actual attorneys' fees), set offs, offsets, or recoupment of deposits, down-payments, or over-payments, payments, refunds, repayments, or reimbursements relating to any customs or tariffs including any amounts received by LHT from any government, import, export, or customs authorities paid to or received by LHT, and any claims or causes of action arising under Chapter 5 of the Bankruptcy Code and any similar or other equitable remedies under state or federal law which were or could have been raised in, arise out of, relate to, or in any way, directly or indirectly, involve the Disputes.

b. **Release of the Spirit Parties**: With effect at and from Closing, LHT, on behalf of itself and each of the respective LHT Release Parties hereby unconditionally and irrevocably remises, releases, and forever discharges each Spirit Release Party of and from any and all existing or potential claims, demands, damages, debts, promises, agreements, judgments, liabilities, accounts, obligations, costs, expenses, liens, actions, suits, and causes of action of any kind and nature whatever, whether now known or unknown, suspected or unsuspected, liquidated or unliquidated, including without limitation any and all claimed or unclaimed statutory damages, compensatory damages, consequential damages, interest, costs, expenses and fees (including reasonable or actual attorneys' fees), set offs, offsets, or recoupment of deposits, down-payments, or over-payments, payments, refunds, repayments, or reimbursements relating to any customs or tariffs including any amounts received by Spirit from any government, import, export, or customs authorities paid to or received by Spirit, which were or could have been raised in, arise out of, relate to, or in any way, directly or indirectly, involve the Disputes.

c. **Limitations on Releases**: Notwithstanding anything set forth in this Section 3, nothing in this Agreement shall release (i) any rights and obligations of the Spirit Release Parties or the LHT Release Parties under this Agreement, nor (ii) any rights of Spirit and its assignees and obligations of LHT in respect of warranties given under the Service Agreement in respect of services rendered and parts supplied by LHT prior to the Effective Date.

d. **Covenant Not to Sue**: The Parties agree not to cause claims to be made in any court or other forum against each other for any matter within the scope of the releases contained herein.

## III. Representations and Warranties By the Parties

The Parties expressly represent and warrant that they have the legal power, right and authority to enter into and perform this Agreement and all other documents or instruments to be executed by such Party in connection with this Agreement. The Parties hereto have obtained

all internal consents as required by their respective operating agreements to enter into this Agreement and consummate the transactions contemplated hereby, and in connection therewith, the individuals executing this Agreement and the instruments referenced herein on behalf of any Party to this Agreement have the legal power, right, and actual authority to bind such Party to the terms and conditions hereof and thereof. The Parties acknowledge that Spirit's authority is contingent on Bankruptcy Court approval as provided in Article II, Section 1.a.

**IV. Miscellaneous**

a. **Adequate Consideration**. The consideration received in connection with this Agreement is fair, adequate, and substantial, and it consists only of the terms set forth in this Agreement.

b. **Further Assurances**. Each Party agrees to take all reasonable steps necessary to effectuate the terms of this Agreement.

c. **No Admission of Liability**. Each Party understands and agrees that this Agreement and the settlement provided for herein, are intended to compromise disputed claims and defenses, to avoid litigation and to buy peace, and that this Agreement and the settlement provided for herein shall not be construed or viewed as an admission by the Parties or Releasees of liability or wrongdoing, such liability being expressly denied. This Agreement, and the settlement provided for herein, shall not be admissible in any lawsuit, administrative action, or any judicial or administrative proceeding if offered to show, demonstrate, evidence or support a contention that any of the Parties or Releasees acted illegally, improperly, or in breach of law, contract, or proper conduct.

d. **Waiver**. The failure of a Party to demand performance of any act under this Agreement shall not be construed as a waiver of that Party's right to demand, at any subsequent time, such performance.

e. **Tax Treatment and Consequences**. The Parties each agree that if it is later determined by the Internal Revenue Service or any other taxing body that taxes of any type should have been paid in connection with any benefit they receive pursuant to this Agreement, said Party will be solely responsible for paying such taxes. The Parties make no representation or warranty regarding the legal effect or tax consequences of this Agreement, or of any such filing or reporting by them. Each Party further expressly acknowledges that he/she/it neither received nor relied upon any tax advice from another Party or their representatives and attorneys.

f. **Choice of Law / Continuing Jurisdiction**. This Agreement shall be construed with, and all disputes shall be controlled by, the United States Bankruptcy Code, and where applicable, laws of the State of New York without regard to its choice of law rules. The Bankruptcy Court shall have continuing jurisdiction to enforce, modify, or vacate this Agreement.

g. **No Interpretation of Captions or Headings**. The captions and headings within this Agreement are for ease of reference only and are not intended to create any substantive meaning or to modify the terms and clauses either following them or contained in any other provision of this Agreement.

h. **Severability**. If any provision of this Agreement or the application thereof is held invalid by a court, arbitrator, or government agency of competent jurisdiction, the Parties agree that such a determination of invalidity shall not affect other provisions or applications of this Agreement which can be given effect without the invalid provisions and thus shall remain in full force and effect or application.

i. **Neutral Interpretation and Counterparts**. The Parties shall be deemed to have cooperated in the drafting and preparation of this Agreement. Hence, any construction to be made of this Agreement shall not be construed against any Party. This Agreement may be executed in counterparts and each executed counterpart shall be effective as the original. All faxed, emailed, or electronic signatures affirming this Agreement constitute an original signature.

j. **Integration / Single Agreement**. This Agreement constitutes a single, integrated, written contract expressing the entire understanding and agreement between the Parties, and the terms of this Agreement are contractual and not merely recitals. There is no other agreement, written or oral, expressed or implied between the Parties with respect to the subject matter of this Agreement and the Parties declare and represent that no promise, inducement or other agreement not expressly contained in this Agreement has been made conferring any benefit upon them or upon which they have relied in any way. The terms and conditions of this Agreement may not be contradicted by evidence of any prior or contemporaneous agreement, and no extrinsic evidence may be introduced in any judicial proceeding to interpret this Agreement.

k. **Amendments to the Agreement.** This Agreement shall not be altered, amended, or modified by oral representation made before or after the execution of this Agreement. All amendments or changes of any kind must be in writing, executed by all Parties.

l. **No Assignment.** The Parties represent and warrant that they have not sold, transferred, conveyed, assigned, or otherwise disposed of any right, title, or interest in any of the Disputes released herein to any person or entity, and that they are not aware of any other person or entity who may have or who has asserted or can assert a right, title, or interest in any of the Disputes covered by this Agreement.

m. **Confidentiality**. The Parties to this Agreement hereby agree and covenant that they shall forever keep confidential and refrain from disclosing to anyone or any entity the terms of this Agreement and/or the negotiations that led to the execution of this Agreement. This provision shall not prohibit disclosure of the terms of this Agreement in such cases where reasonably necessary and on a completely confidential basis, to their own officers, directors, insurers and their reinsurers, accountants, auditors, lenders, tax advisors, attorneys, and taxing authorities (but only to the extent necessary to comply with law). The Parties further agree that, in the event that either is compelled, by a valid subpoena, court order, or order of other governmental agencies, to disclose the terms of this Agreement and/or the negotiations that led to the execution of this Agreement, such party shall, unless prohibited by applicable law, give written notice to the other Party to this Agreement at least fourteen (14) days prior to such compelled disclosure, or if such notice is not practical under the circumstances, the soonest notice reasonably practicable, to enable the other Party to apply for a protective order, or other appropriate relief, to keep such information confidential, and that upon compliance with this notice provision, said compelled disclosure shall not be a breach of this Agreement. The Parties acknowledge and agree that (i) this Agreement may

be disclosed in whole or in part in connection with Spirit's obligation to seek Bankruptcy Court approval as provided in Article II, Section 1.a., and (ii) the obligations set forth in this paragraph survive this Agreement.

n. **Advice of Counsel.** Each Party to this Agreement acknowledges that it has had the benefit of advice of competent legal counsel or the opportunity to retain such counsel with respect to its decision to enter into this Agreement. The individuals whose signatures are affixed to this Agreement in a personal or representative capacity represent that they are competent to enter into this Agreement and are doing so freely and without coercion by any other Party or non-party hereto.

o. **Successors.** This Agreement shall inure to the benefit of the respective heirs, successors, and assigns of the Parties and each and every one of the Releasees shall be deemed to be intended third-party beneficiaries of this Agreement.

p. **Attorneys' Fees.** Unless otherwise expressly set forth herein, each of the Parties shall bear its own attorneys' fees, costs, and expenses in connection with the matters set forth in this Agreement, including, but not limited to, the negotiation and preparation of this Agreement.

[*Signature Page Follows*]

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement, each by its duly authorized representative(s), on the date set forth below.

Hamburg, Germany

For and on behalf of
**Lufthansa Technik, AG**

| | | |
|---|---|---|
| Signature | Signiert von: Volker Menges E188D241E3C84AC... | Signiert von: 6C0598829CCB4E0... |
| Name | Volker Menges | Klaus Wachholz |
| Date | 04-Sep-2026 \| 23:40:26 MESZ | 04-Sep-2026 \| 15:09:51 MESZ |
| Title | VP Legal, Compliance, Foreign Trade & ESG | VP Finance & Accounting |

For and on behalf of
**Spirit Airlines, LLC**

| | | |
|---|---|---|
| Signature | Signed by: Pedro Motta 826426FF510F4CF... | |
| Name | Pedro Motta | |
| Date | 04-Sep-2026 \| 11:58:36 EDT | |
| Title | CFO | |

**Schedule 2.a**

*to Settlement Agreement and Release*

IDENTIFIED HOME BASE PARTS

| Part Number | Description | Quantity |
|---|---|---|
| 1020891-1 | PROBE # PROBE-SPEED N1 | 1 |
| 1021498-2 | VALVE # STARTER VALVE | 3 |
| 1022310-1 | VALVE # VALVE-OIL DAMPER ACTIVE | 1 |
| 1023247-1 | VALVE # VALVE COMBUSTOR SUPPLY | 2 |
| 2LA005414-10 | LIGHT # LIGHT EMERGENCY-OVERWING | 4 |
| 70654A010001 | ACTUATOR# ACTUATOR-FAN AIR VALVE | 1 |
| C13207DA00 | FMGC # FLT MAN. GUID. COMP./PEGASUS | 1 |
| D24006000-1 | MANIFOLD# MANIFOLD ALT. BREAKING (RH) | 1 |
| 1022280-1 | XDCR # TRANSDUCER MOTIONAL N2 | 1 |
| 70646A010001 | VALVE # BLEED PRESSURE REG. VALVE | 1 |
| 2LA456335-02 | LIGHT RH# FLOODLIGHT-WING ENGINE SCAN RH | 1 |
| 9049000-1 | EXCITER # TURBINE EXCITOR | 1 |
| E21327007 | BSCU # BRAKE & STEERING CONTROL UNIT | 1 |
| 501-1-14561-004 | STARTER # STARTER MOTOR | 2 |
| D30664-709 | SLIDE # EVACUATION SLIDE/RAFT FWD | 1 |
| 1020420-3-121 | CONTROL # CONTROL,ENGINE ELECTRONIC | 1 |

Schedule 1

Parts Exchange Letter Agreement

Lufthansa Technik

**Parts Exchange Letter Agreement between**

Lufthansa Technik AG

Weg beim Jäger 193

223303 Hamburg

Germany

- hereinafter referred to as "LHT" -

and

SPIRIT AIRLINES, LLC

1731 Radiant Drive

Dania Beach FL 33004

United States

- hereinafter referred to as "Spirit" -

- Spirit and LHT are referred to as the "Parties" or, individually, as a "Party" -

I. Recitals

This Parts Exchange Letter Agreement (this "Agreement") is entered into with reference to the following facts and recitals, which are true to the best of the Parties' knowledge and belief, and are made part of this Agreement:

1. On or about October 1, 2004, the Parties entered into an Agreement on Technical Services (Agreement No. 10834) (comprehensively, the "TSA") which consists of a certain General Terms Agreement (the "GTA"), multiple Attachments and Annexes covering distinct maintenance service lines including among others (i) the Component Maintenance Services Attachment, (ii) the Material Pool Attachment, and (iii) the Home Base Attachment (collectively, the "Original Attachments"), and thirty-nine amendments and multiple side letters including a certain Amended and Restated Component Maintenance Service Agreement entered into as of December 15th, 2025 (the "December 2025 Amendment").

2. On or about August 29, 2025 (the "Petition Date"), the Debtor voluntarily filed petitions for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), which has proceeded on a jointly-administered basis under the case captioned In re Spirit Aviation Holdings, Inc., Case No. 25-11897 (generally, the "Chapter 11 Case").

Lufthansa Technik

3. As of the date of this Agreement, the Parties entered into a SETTLEMENT AGREEMENT AND RELEASE (the "Settlement Agreement") to settle fully and finally any and all claims, disputes and/or differences between them.

4. As part of the Settlement Agreement, the Parties have agreed, amongst other things, to exchange certain parts in the respective possession of each Party by each retaining those parts that are in their possession on the date of this Agreement. This Agreement is intended to set forth the terms and conditions governing the transfer of title to such parts and effect a change in ownership thereof.

NOW, THEREFORE, in consideration of the mutual covenants contained herein and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties covenant and agree as follows:

1. Bankruptcy Court Approval:

This Agreement is a component of the Settlement Agreement which is subject to approval by the Bankruptcy Court and shall only be effective on the first business day (the "Effective Date") following the entry of an order approving the Settlement Agreement that is not subject to stay. Spirit will prepare and file a pleading with the Bankruptcy Court seeking approval of this Agreement (which may be in the form of a notice of presentment, stipulation and agreed order, or motion, as agreed between Spirit and LHT in accordance with applicable Bankruptcy Court rules).

2. Exchange of parts and delivery

2.1 Schedule 2.1 to this Agreement identifies parts currently in LHT's possession (the "Spirit-Parts"). LHT acknowledges and agrees that it has possession of the Spirit-Parts on and as of the date of this Agreement, and that Spirit shall not be required to deliver the Spirit-Parts to LHT.

2.2 Schedule 2.2 to this Agreement identifies parts currently in Spirt's possession (the "LHT-Parts"). Spirit acknowledges and agrees that it has possession of the LHT-Parts on and as of the date of this Agreement, and that LHT shall not be required to deliver the LHT-Parts to Spirt.

2.3 Each Party acknowledges and agrees that the parts lists attached hereto as Schedule 2.1 and 2.2 are complete and that the exchange of parts provided for in this Agreement shall be final at the Effective Time. Each Party also acknowledges and agrees that neither Party will have any further obligation or liability to exchange or account for any additional parts in connection with the Settlement Agreement except as provided for in Section 2.a of the Settlement Agreement with respect to the Identified Home Base Parts which Spirit shall return to LHT as provided for in the Settlement Agreement.

2.4 At the Effective Time, the parts identified on Schedules 2.1 and 2.2 shall be deemed exchanged on the terms set forth in this Agreement such that LHT shall take ownership of

Lufthansa Technik

the Spirt-Parts and Spirt shall take ownership of the LHT-Parts. For purposes of this Agreement, the "Effective Time" is the date and time at which the Parties agree to consummate the exchange of parts, which shall be effected by the exhange of emails between the Parties.

3. [redacted] Exchange

3.1 [redacted].

3.2 [redacted].

3.3 The Parties agree that upon consummation of the exchange of the Spirit-Parts and LHT-Parts, the value of the Spirit-Parts and the LHT-Parts shall be fully and automatically, on a collective basis, set off against each other as mutual consideration under this Agreement. No cash payment shall be due or payable by either Party to the other in respect of the Spirit-Parts or the LHT-Parts, and each Party's obligations with respect to such consideration shall be deemed fully satisfied upon the effectiveness of such set-off.

4. Title

4.1 Title to the Spirit-Parts shall pass to LHT upon the Effective Time. Spirit warrants that it is the lawful owner of the Spirit-Parts with good title thereto; the Spirit-Parts are free from any third parties' rights and encumbrances; and that Spirit has good and lawful right to transfer title of the Spirit-Parts.

4.2 Title to the LHT-Parts shall pass to Spirit upon the Effective Time. LHT warrants that it is the lawful owner of the LHT-Parts with good title thereto; the LHT-Parts are free from any third parties' rights and encumbrances; and that LHT has good and lawful right to transfer title of the LHT-Parts.

4.3 EXCEPT AS EXPRESSLY PROVIDED IN THIS SECTION 4, EACH OF THE SPIRIT-PARTS AND LHT-PARTS SHALL BE EXCHANGED AND TRANSFERRED IN "AS IS, WHERE IS, WITH ALL FAULTS" CONDITION AT THE EFFECTIVE TIME AND EACH PARTY MAKES NO WARRANTIES, GUARANTEES, OR REPRESENTATIONS OF ANY KIND, EITHER EXPRESS OR IMPLIED, STATUTORY OR OTHERWISE, TO THE OTHER THAT SHALL SURVIVE EXCHANGE OR TRANSFER OF SUCH PARTS EXCEPT THE WARRANTY OF TITLE. EACH PARTY WAIVES, RELEASES AND RENOUNCES ALL WARRANTIES, OBLIGATIONS AND LIABILITIES OF THE OTHER, EXPRESS OR IMPLIED, ARISING BY LAW OR OTHERWISE, INCLUDING, BUT NOT LIMITED TO: (a) ANY WARRANTY AS TO AIRWORTHINESS, CONDITION, VALUE, DESIGN, QUALITY, DURABILITY, OPERATION, SUITABILITY, MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR USE OR PURPOSE; (b) ANY WARRANTY AS TO THE ABSENCE OF ANY INFRINGEMENT OF ANY PATENT, TRADEMARK OR COPYRIGHT; (c) ANY WARRANTY ARISING FROM COURSE OF PERFORMANCE, COURSE OF DEALING OR USAGE OF TRADE; (d) THE ACCURACY, VALIDITY, TRACEABILITY OR COMPLETENESS OF ANY PARTS DOCUMENTATION; (e) ANY OBLIGATION OR LIABILITY ARISING IN TORT, WHETHER BASED ON STRICT LIABILITY, PRODUCT LIABILITY OR THE ACTUAL OR IMPUTED NEGLIGENCE OF SUCH PARTY; (f) ANY OBLIGATION OR

LIABILITY OF EITHER PARTY TO ANY THIRD PARTY; AND (g) ANY OBLIGATION OR LIABILITY FOR LOSS OF OR DAMAGE TO ANYTHING, FOR LOSS OF USE, REVENUE, RENTAL, TAX BENEFITS, SALE OR PROFIT, OR FOR ANY OTHER DIRECT, INDIRECT, INCIDENTAL, SPECIAL, PUNITIVE OR CONSEQUENTIAL DAMAGE. NO AGREEMENT ALTERING OR EXTENDING EITHER PARTY'S LIABILITY FOR WARRANTIES SHALL BE BINDING UPON SUCH PARTY UNLESS IN WRITING AND EXECUTED BY A DULY AUTHORIZED OFFICER OF SUCH PARTY. The Parties further expressly exclude and disclaim the application of United Nations Convention on the International Sale of Goods (CISG) to the exchange of parts under this Agreement.

5. Miscellaneous

5.1. Adequate Consideration. The consideration received in connection with this Agreement is fair, adequate, and substantial, and it consists only of the terms set forth in this Agreement.

5.2. Further Assurances. Each Party agrees to take all reasonable steps necessary to effectuate the terms of this Agreement.

5.3. No Admission of Liability. Each Party understands and agrees that this Agreement and the settlement provided for herein, are intended to compromise disputed claims and defenses, to avoid litigation and to buy peace, and that this Agreement and the settlement provided for herein shall not be construed or viewed as an admission by the Parties or Releasees of liability or wrongdoing, such liability being expressly denied. This Agreement, and the settlement provided for herein, shall not be admissible in any lawsuit, administrative action, or any judicial or administrative proceeding if offered to show, demonstrate, evidence or support a contention that any of the Parties or Releasees acted illegally, improperly, or in breach of law, contract, or proper conduct.

5.4. Waiver. The failure of a Party to demand performance of any act under the Agreement shall not be construed as a waiver of that Party’s right to demand, at any subsequent time, such performance.

5.5. Tax Treatment and Consequences. The Parties each agree that if it is later determined by the Internal Revenue Service or any other taxing body that taxes of any type should have been paid in connection with any benefit they receive pursuant to this Agreement, said Party will be solely responsible for paying such taxes. The Parties make no representation or warranty regarding the legal effect or tax consequences of this Agreement, or of any such filing or reporting by them. Each Party further expressly acknowledges that he/she/it neither received nor relied upon any tax advice from another Party or their representatives and attorneys.

5.6. Choice of Law / Continuing Jurisdiction. This Agreement shall be construed with, and all disputes shall be controlled by, the United States Bankruptcy Code, and where applicable, laws of the New York without regard to its choice of law rules. The Bankruptcy Court shall have continuing jurisdiction to enforce, modify, or vacate this Agreement.

5.7. No Interpretation of Captions or Headings. The captions and headings within this Agreement are for ease of reference only and are not intended to create any substantive meaning or to modify the terms and clauses either following them or contained in any other provision of this Agreement.

5.8. Severability. If any provision of the Agreement or the application thereof is held invalid by a court, arbitrator, or government agency of competent jurisdiction, the Parties agree that such a determination of invalidity shall not affect other provisions or applications of the Agreement which can be given effect without the invalid provisions and thus shall remain in full force and effect or application.

5.9. Neutral Interpretation and Counterparts. The Parties shall be deemed to have cooperated in the drafting and preparation of this Agreement. Hence, any construction to be made of this Agreement shall not be construed against any Party. This Agreement may be executed in counterparts and each executed counterpart shall be effective as the original. All faxed, emailed, or electronic signatures affirming this Agreement constitute an original signature.

5.10. Integration / Single Agreement. This Agreement and the Settlement Agreement, together, constitute a single, integrated, written contract expressing the entire understanding and agreement between the Parties, and the terms of this Agreement are contractual and not merely recitals. There are no other agreements, written or oral, expressed or implied between the Parties with respect to the subject matter of this Agreement and the Settlement Agreement and the Parties declare and represent that no promise, inducement or other agreement not expressly contained in this Agreement or the Settlement Agreement has been made conferring any benefit upon them or upon which they have relied in any way. The terms and conditions of this Agreement may not be contradicted by evidence of any prior or contemporaneous agreement, and no extrinsic evidence may be introduced in any judicial proceeding to interpret this Agreement, except as may be set forth in the Settlement Agreement.

5.11. Amendments to the Agreement. This Agreement shall not be altered, amended, or modified by oral representation made before or after the execution of this Agreement. All amendments or changes of any kind must be in writing, executed by all Parties.

5.13. Advice of Counsel. Each Party to this Agreement acknowledges that it has had the benefit of advice of competent legal counsel or the opportunity to retain such counsel with respect to its decision to enter into this Agreement. The individuals whose signatures are affixed to this Agreement in a personal or representative capacity represent that they are competent to enter into this Agreement and are doing so freely and without coercion by any other Party or non-party hereto.

5.14. Successors. This Agreement shall inure to the benefit of the respective heirs, successors, and assigns of the Parties and each and every one of the Releasees shall be deemed to be intended third-party beneficiaries of this Agreement.

5.15. Attorneys' Fees. Unless otherwise expressly set forth herein, each of the Parties shall bear its own attorneys' fees, costs, and expenses in connection with the matters set forth in the Agreement, including, but not limited to, the negotiation and preparation of this Agreement.

[SIGNATURE PAGE FOLLOWS]

Lufthansa Technik

IN WITNESS WHEREOF the parties hereto have entered into this Agreement the day and year first above mentioned.

For and on behalf of

**Lufthansa Technik AG**

Signiert von:
Signature: Volker Menges
E188D241E3C84AC...

Date: 04-Sep-2026 | 23:40:26 MESZ

Name: Volker Menges

Title: VP Legal, Compliance, Foreign Trade & ESG

Signiert von:
Signature: [signature]
6C0598829CCB4E0...

Date: 04-Sep-2026 | 15:09:51 MESZ

Name: Klaus Wachholz

Title: VP Finance & Accounting

**Spirit Airlines, LLC**

Signed by:
Signature: Pedro Motta
826426FF510F4CF...

Date: 04-Sep-2026 | 11:58:36 EDT

Name: Pedro Motta

Title: CFO

Lufthansa Technik

SCHEDULE 2.1 – Spirit-Parts

| Part Number | Description | Quantity |
|---|---|---|
| 1020897-2 | SENSOR # SENSOR OIL DEBRIS | 1 |
| 1029816 | SOLENOID# SOLENOID AY-ELECTRICAL BUFFER | 1 |
| 1312B0000-02 | VALVE # VALVE-BYPASS | 2 |
| 14330-004C1 | TOILET # TOILET ASSY L/H | 2 |
| 14330-514-207 | TOILET # TOILET ASSY-LH | 1 |
| 14401-085 | SEPARATR# WATER SEPARATOR | 1 |
| 144-171-000-031 | VIB PICK# VIBRATION PICK UP | 3 |
| 16844-000 | COOLER # COOLER IDG OIL COOLER | 1 |
| 1700667D | GAPCU # GROUND AUX. POWER CONTROL UNIT | 2 |
| 17300G11 | VALVE # FUEL DIVERT AND RETURN VALVE | 1 |
| 1777MK2 | ACTUATOR# ACTUATOR MASTER LPC BLEED | 1 |
| 1806B0000-02 | VALVE # VALVE-FLOW CONTROL | 1 |
| 1806D0000-01 | VALVE # VALVE-FLOW CONTROL | 1 |
| 2000013-03-001 | HARNESS # HARNESS ASSY CAPT | 1 |
| 200301E00000309 | SFCC # SLAT AND FLAP CONTROL COMPUTER | 1 |
| 20499006 | FILTER # FILTER OZONE | 1 |
| 2607MK3 | ACTUATOR# ACTUATOR VARIABLE STATOR VANE | 1 |
| 2695A0000-01 | SENSOR # SENSOR-PRESSURE PACK INLET | 2 |
| 3214-31 | BAT-PACK# BATTERY PACK-EMERGENCY LIGHT | 8 |
| 33600105-2 | FIRE EXT# FIRE EXTINGUISHER | 3 |
| 34100005-1 | FIRE EXT# FIRE EXTINGUISHER 378 Cu / In | 2 |
| 341F010000 | THERMOST# THERMOSTAT-SOLENOID | 1 |
| 341F020000 | THERMOST# THERMOSTAT-SOLENOID | 1 |
| 3552AAAWAACXCD | POCA # PORTABLE OXYGEN CYL. 11CU/FT | 1 |
| 367-359-005 | ICU # IGGS-CONTROLLER UNIT FTIS | 1 |
| 4203503 | MOTOR # MOTOR HYD FLAP SLAT DRIVE UNIT | 1 |
| 4A7110B | PUMP # PUMP & FILTER AY OIL PRESSURE | 1 |
| 5009913G | PUMP # PUMP FUEL LP/HP | 1 |
| 503CA04F2-02Y00 | CONTACTR# CONTACTOR-THREE POLE | 1 |
| 512090-1 | IGN LEAD# IGNITER LEAD | 1 |
| 55022001-11 | COOLER # COOLER OIL FUEL COOLED | 1 |
| 568-1-27202-007 | PUMP-FUE# PUMP FUEL BOOST A320 | 1 |
| 5913667-3 | GENERATR# GENERATOR-APU | 1 |
| 622-5136-801 | DRV WXR # WXR ANTENNA PEDESTAL DUAL | 1 |
| 6713D080000 | VALVE # HIGH PRESSURE REGULATING VALVE | 1 |
| 6773F010000 | VALVE # HIGH PRESSURE REGULATING VALVE | 1 |
| 70649A010001 | VALVE # VALVE FAN AIR | 4 |

Lufthansa Technik

| | | |
|---|---|---|
| 727-1154-02 | LIGHT AY# LIGHT AY WING POSITION-GREEN | 1 |
| 727-1213-03 | LIGHT AY# LIGHT-RETRACTABLE LANDING | 2 |
| 727-1215-01 | LIGHT # LIGHT-TAKE OFF HLGN | 1 |
| 755C0000-01 | REHEATER# REHEATER-AIR CONDITIONING SYS | 1 |
| 767669B | ADAPTER # IDG QAD ADAPTER | 1 |
| 772292 | IDG # INTEGRATED DRIVE GENERATOR | 1 |
| 790425A8 | STARTER # STARTER PNEUMATIC | 1 |
| 790425A8 | STARTER # STARTER PNEUMATIC | 1 |
| 790425A9 | STARTER # STARTER PNEUMATIC | 6 |
| 790425A9 | STARTER # STARTER PNEUMATIC | 4 |
| 8000281Y00 | LIGHT # LGHT-RNWY TRNOFF FLDLIGHT LED | 1 |
| 8000960Y00 | LIGHT RH# FLOODLIGHT-WING ENGINE SCAN RH | 1 |
| 8055515-4501 | PRINTER # DATA PRINTER PTA-45B | 1 |
| 822-0990-003 | XCVR HFS# TRANSCEIVER-HF COMM HFS-900D | 1 |
| 89794077 | OXYBOTTL# OXYGEN CYLINDER 77,1 CU/FT | 1 |
| 9024-15704-03 | VALVE # PRESS CONTROL SAFETY VALVE | 1 |
| 909012-02-01 | FDU # FIRE DETECTION UNIT | 1 |
| 9632500-7001 | CONTROL # CTRL LEVER WASTE WATER VALVE | 1 |
| A88004-003 | VALVE # SERVO VALVE SPOILER CONTR INBD | 1 |
| AR4714-7 | STRIKE # STRIKE AY-ELECTRICALLY OPERATE | 2 |
| B397BAM0623 | FAC # FLIGHT AUGMENTATION COMPUTER | 1 |
| C12848CA01 | RMP # RADIO MANAGEMENT PANEL | 1 |
| C20464002 | SENSOR # TEMPERATURE SENSOR BRAKE | 2 |
| C24736100-1 | SRVCNTRL# SERVO CONTROL UNIT | 1 |
| CT141-1 | VALVE # VALVE-CHECK | 1 |
| D05000 | VALVE # VALVE FILL AND DRAIN | 1 |
| D06A00 | VALVE # VALVE FILL AND DRAIN | 1 |
| D1876-5000A | COOLER # COOLER BRG NO4 AIR COOLER | 1 |
| E03A00 | VALVE # FIRE SHUT-OFF VALVE ASSY | 1 |
| HTE200002-1 | ACTUATOR# ACTUATOR VALVE SINGLE MOTOR | 1 |
| J172ABM01 | ACCLRMTR# ACCELEROMETER UNIT VERTICAL | 1 |
| LR48230F | PUMP # PUMP ASSY OIL-MAIN | 1 |
| PPC1100-00 | SMOKIE # SMOKE DETECTOR CARGO COMP | 1 |
| RCF6708 | REGULATR# REGULATOR-XMTR-PRESS.OXYGEN | 1 |
| TY1540-24 | HCU # HYDRAULIC CONTROL UNIT (V2500) | 1 |
| VFT210B00 | VALVE # SKIN AIR VALVE AE VENT | 1 |
| VT442-2 | INDICATR# INDICATOR WATER QUANTITY | 1 |
| Z014H000333B | CIDS DIR# CIDS DIRECTOR | 1 |
| Z064H000033B | OBRM # ON BOARD REPLACEABLE MODULE | 1 |
| 9632501-2001 | CABLE CONTROL ASSY | 1 |
| 402MFD1-1 | DATALINK CONTROL DISPLAY-DCDU | 1 |

Lufthansa Technik

| | | |
|---|---|---|
| 1806D0000-01 | VALVE-FLOW CONTROL | 1 |
| 2607MK3 | ACTUATOR VARIABLE STATOR VANE | 1 |
| TAAI3-402040-02 | SHROUD REAR EQUIPPED F/O | 1 |
| 3214-31 | BATTERY PACK-EMERGENCY LIGHT | 1 |
| VFT300B00 | VALVE-SKIN AIR | 1 |
| MXP801-11 | CREW OXYGEN MASK STOWAGE BOX | 2 |
| PGA0105W | STANDBY COMPASS | 1 |
| 745-2010-503 | MOUNT FW# MOUNT AY ENGINE FWD (V25) | 2 |
| 740-2011-505 | Beam FWD Mount (V25) | 1 |

Lufthansa Technik

SCHEDULE 2.2 – LHT-Parts

| Partnumber | Description | Quantity |
|---|---|---|
| 088256-04644 | ACCUMLTR# ACCUMULATOR HYD BRAKE | 1 |
| 1018278 | SENSOR # SENSOR-PRESS,OIL FILTER DIFFER | 2 |
| 1020888-3 | SENSOR # SENSOR-TEMPERATURE,AIR,TCORE | 1 |
| 1020890-2 | HARNESS # WIRING HARNESS-EGT&T3 | 3 |
| 1020911-1 | PROBE AY# PROBE ASSY-TEMP EXHAUST GAS | 2 |
| 1020924-1 | VALVE # VALVE-BLEED,HPC | 1 |
| 1020925-3 | VALVE # VALVE ASSY-BLEED AIR,CHECK,ECS | 1 |
| 1020941-1 | VALVE # VALVE ASSY-FUEL TANK RETURN | 2 |
| 1020945-1 | SOLENOID# SOLENOID AY-ELECTRICAL BUFFER | 3 |
| 1022280-1 | XDCR # TRANSDUCER MOTIONAL N2 | 1 |
| 1022281 | SENSOR # SENSOR AY-PRESSURE FUEL FILTER | 1 |
| 1721429B | STARTER # ENGINE STARTER | 1 |
| 1777MK2 | ACTUATOR# ACTUATOR MASTER LPC BLEED | 1 |
| 2056C0000-02 | PLENUM # PLENUM CHAMBER-AIR COOLING SYS | 3 |
| 2056D0000-01 | PLENUM # PLENUM CHAMBER-AIR COOLING SYS | 3 |
| 20791-13AD | CPC # CABIN PRESSURE CONTROLLER | 1 |
| 30030-000 | EGTPROBE# PROBE, EGT THERMOCOUPLE | 1 |
| 3860864-1 | CLUTCH # STARTER CLUTCH | 1 |
| 3888058-5 | EXCITER # IGNITION EXCITER | 1 |
| 472088-1 | FIRE EXT# FIRE EXTINGUISHER | 2 |
| 49-170-11 | SFCC # SLAT AND FLAP CONTROL COMPUTER | 1 |
| 5860017-144 | VALVE # ACTUATOR VALVE HPT / LPT ACC | 1 |
| 600611-00-601 | CONTRLLR# CONTROLLER-HEAT | 1 |
| 70645A020001 | VALVE # VALVE-BLEED HPC | 1 |
| 70646A010001 | VALVE # BLEED PRESSURE REG. VALVE | 1 |
| 753D0000-01 | HEATEXCH# PRIMARY HEAT EXCHANGER | 8 |
| 754D0000-01 | HEATEXCH# MAIN HEAT EXCHANGER | 2 |
| 756A0000-06 | CONDENSR# CONDENSER PACK AIR COND | 6 |
| 767584M | GCU # GENERATOR CONTROL UNIT | 1 |
| 786073-1-0 | PROTECTR# FLAME ARRESTOR | 1 |
| 822-2763-020 | XCVR # TRANSCEIVER-VHF | 3 |
| 92285A020000 | SENSOR # SENSOR-BLEED PRESSURE | 1 |
| C12850AC03 | FCU # FLIGHT CONTROL UNIT | 1 |
| C82LL0010 | VALVE # VALVE-DRAIN HYDRAULIC SYSTEM | 1 |
| G4000VSVA04 | ACTUATOR# ACTUATOR VARIABLE STATOR VANE | 1 |