Sean A. O'Neal
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Counsel to Google LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>SPIRIT AVIATION HOLDINGS, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 25-11897 (SHL)<br><br>Jointly Administered |

**GOOGLE LLC'S PRELIMINARY RESPONSE**
**TO CONSUMER PRIVACY OMBUDSMAN'S REPORT**
**IN SUPPORT OF THE PROPOSED SALE OF THE DEIDENTIFIED DATA**

Google LLC ("Google") hereby submits this preliminary response (this "Preliminary Response") to the *Consumer Privacy Ombudsman Report to the Court* [ECF No. 1581] (the "CPO Report"), submitted by Lucy L. Thomson, in her capacity as consumer privacy ombudsman (the "Ombudsman") regarding the sale of the Deidentified Data described in the *Notice of Auction Results and Scheduled Hearing for the Deidentified Data* [ECF No. 1463] (the "Notice of Sale").[2] In support of this Preliminary Response, Google states as follows:

---

[1] The Debtors' names and last four digits of their respective employer identification numbers are as follows: Spirit Aviation Holdings, Inc. (1797); Spirit Airlines, LLC (7023); Spirit Finance Cayman 1 Ltd. (7020); Spirit Finance Cayman 2 Ltd. (7362); Spirit IP Cayman Ltd. (4732); and Spirit Loyalty Cayman Ltd. (4752). The Debtors' mailing address is 1731 Radiant Drive, Dania Beach, FL 33004.

[2] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the Notice of Sale, or, if not defined in the Notice of Sale, in the *Order (I)(A) Approving Bidding Procedures for Sale of the Debtors' Assets, (B) Authorizing the Potential Selection of Stalking Horse Bidder(s), (C) Approving Bid Protections, (D) Scheduling Auction(s) for, and Hearing(s) to Approve, the Sale of the Debtors' Assets, (E) Approving the Form and Manner of Notices of Sale, Auction(s), and Sale Hearing(s), and (F) Approving the Assumption and Assignment Procedures* [ECF No. 1213] (the "Bidding Procedures Order").

## PRELIMINARY RESPONSE[3]

1. The Ombudsman's role under the Bankruptcy Code is to advise the Court regarding applicable law and circumstances in the event a debtor seeks to sell the personally identifiable information of consumers (such data, "Consumer Data").[4] However, the proposed sale of Deidentified Data is not, and never has been, a sale of Consumer Data.

2. Indeed, the Sale Agreement expressly excludes from purchase any personally identifiable information or personal data. Moreover, the databases that the Debtors have represented to Google as primarily containing Consumer Data are completely outside the scope of the transaction, such that they will not be provided to Google in any form, even deidentified form.[5] Further, the Sale Agreement requires that any potential incidental Consumer Data contained within the in-scope databases will be rigorously and thoroughly deidentified by an independent third-party agent *before* any transfer to Google.[6] Through this deidentification process, incidental Consumer Data will be removed, transformed, or otherwise altered in a manner that prevents reidentification of particular individuals. The certified completion of this deidentification is, and always has been, a closing condition under the Sale Agreement, meaning that the sale only occurs and thus data is only transferred to Google, if and when the data is deidentified (meaning it no longer contains personally identifiable information or personal data).[7]

---

[3] Google intends to supplement this Preliminary Response prior to the hearing to consider approval of the Sale Agreement in order to more fully address the CPO Report and other concerns raised by parties in interest.

[4] *See* 11 U.S.C. § 363(b)(1)(B) (confining the role of a consumer privacy ombudsman only to a sale of "personally identifiable information" of consumers); 11 U.S.C. § 332(a)–(b) (stating that a consumer privacy ombudsman's role is to provide information to the court in connection with a hearing regarding the sale of personal information under section 363(b)(1)(B)).

[5] *See* Sale Agreement, Ex. A (designating Spirit's consumer data as expressly "Not Included").

[6] Sale Agreement § 1(a)(ii). Google and the Debtors have agreed that, although Google will bear the cost of the third-party agent's services, such agent will be an independent party selected by the Debtors.

[7] Sale Agreement § 3(c).

3. As the Ombudsman acknowledges, applicable privacy laws are clear that deidentified data is not personally identifiable information or personal data, and the process proposed by the Debtors "is thoughtful and designed to meet the latest professional standards available."[8] This third-party deidentification process prevents the transfer of incidental Consumer Data to Google. Because this sale is conditioned on such deidentification, and because Spirit's consumer-focused databases or enterprise databases that may disproportionately include Consumer Data are in any event not part of the transaction, such that they will not be provided to Google in any form, even deidentified form, it is clear that this sale falls outside the scope of the Ombudsman's role under the Bankruptcy Code.[9]

4. In an abundance of caution, to further implement the intent of the sale, and prior to the filing of the CPO Report, Google agreed to exclude from the scope of the transaction additional databases that the Ombudsman considered may disproportionately contain Consumer Data. These additional excluded databases are the PNR/Transaction data and the Refunds, Inflight/Onboard Purchases, Timecard Information and WiFi Sales datasets, which are described in the CPO Report.[10] Contrary to the CPO Report, this was not an offer to "narrow the types of personal data items to be included in the sale to reduce the likelihood that the data can be reidentified."[11] It was a means of excluding datasets that may contain Consumer Data from the scope of transaction altogether (meaning that, like the databases that the Debtors have represented to Google as

---

[8] *See* CPO Report at 8 ("Privacy laws provide that the deidentified data is no longer considered PII."); *id.* at 21 ("The Successful Bid expressly incorporates the three requirements set forth under [the California Consumer Privacy Act deidentification standard], and will require an independent third party to conduct the deidentification based upon industry standards and practice.").

[9] Similarly, the CPO Report does not articulate how a sale of only deidentified enterprise data (which is not personal data of consumers) could be contrary to Spirit's privacy policy, which states that if another company acquires "our company, business, or assets," Spirit will share information with that company. *See* CPO Report at 5, n. 5.

[10] These databases are described in the CPO Report as among the "systems that might include customer data." CPO Report at 6, n. 7.

[11] CPO Report at 5.

primarily containing Consumer Data, the data from these additionally excluded databases will not be part of the transaction and thus will not be provided to Google in any form, even deidentified form); all in furtherance of Google's goal of not purchasing any Consumer Data in the first place.

5. Since the conclusion of the Auction and the filing of the Notice of Sale, Google has been working diligently with the Debtors and other interested parties to address the concerns of parties who have filed formal objections and who have provided informal feedback. Google intends to respond to such objections at a later date prior to the hearing to approve the sale, and Google will continue to engage with the Debtors and other parties in interest to provide clarity regarding the deidentification process and the scope of the assets contemplated for sale.

Dated: September 9, 2026
New York, New York

*/s/ Sean A. O'Neal*

Sean A. O'Neal
CLEARY GOTTLIEB STEEN &
HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Counsel to Google LLC*